No. 23-60069

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO
CREEK POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS
ENERGY, LLC; MIDLOTHIAN ENERGY, LLC; OAK GROVE
MANAGEMENT COMPANY LLC; WISE COUNTY POWER
COMPANY, LLC; ASSOCIATION OF ELECTRIC COMPANIES OF
TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS
OIL & GAS ASSOCIATION,**

Petitioners,

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, Administrator, United States Environmental
Protection Agency,**

Respondents.

---

**TEXAS INDUSTRY PETITIONERS'
OPPOSED MOTION TO STAY FINAL ACTION
OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY**

---

March 3, 2023

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Abrams, Michael R., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Association of Electric Companies of Texas (Petitioner)

  The Association of Electric Companies of Texas ("AECT") represents electric generators, transmission & distribution utilities, fully-integrated utilities and retail electric providers that span Texas. Its members generate power from diverse resources, including natural gas, coal, wind and solar, plus investments in energy storage.

- Balch & Bingham LLP (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Baker Botts L.L.P. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Barber, Julia B. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- BCCA Appeal Group (Petitioner)

  BCCA Appeal Group is a Texas non-profit corporation whose mission is to support the goals of environmental protection and a strong economy. Its members own and operate industrial facilities in Texas. The Group was formed from the Business Coalition for Clean Air. The Group played a key role in the successful attainment strategies that have achieved real and sustained progress

on air quality goals in Texas. BCCA Appeal Group continues to evaluate and pursue regulatory decisions that are based on sound science and achieve environmental and air quality goals while maintaining a strong economy.

- Brookfield Asset Management Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

- Coleto Creek Power, LLC (Petitioner)

- Cole, Williams F., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Davis, Bill, Deputy Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Ennis Power Company, LLC (Petitioner)

- Garland, Merrick B., Attorney General, United States Department of Justice (Counsel for Respondents)

- Gidiere, P. Stephen III (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Hays Energy, LLC  (Petitioner)

- Kelly, Daniel J. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Vice President and Deputy General Counsel for Vistra Corp.)

- Kim, Todd, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice (Counsel for Respondents)

- Kuryla, Matthew L. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Lee, Jin Hyung (Counsel for Respondents)

- Luminant Generation Company LLC (Petitioner)

- Mazzara, Joseph N., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Midlothian Energy, LLC (Petitioner)

- Mitchell, David W. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Counsel, Environmental for Vistra Corp.)

- Moore, C. Grady III (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Moore, Stephanie Zapata (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Executive Vice President and General Counsel for Vistra Corp.)

- Nance, Earthea (Regional Administrator for Respondent United States Environmental Protection Agency)

- Oak Grove Management Company LLC (Petitioner)

- Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Paxton, Ken, Attorney General of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Prieto, Jeffrey M. (General Counsel for Respondent United States Environmental Protection Agency)

- Regan, Michael S., Administrator, United States Environmental Protection Agency (Respondent)

- State of Texas (Petitioner)

- Stone, Judd, Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Streett, Aaron M. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Texas Chemical Council (Petitioner)

  The Texas Chemical Council ("TCC") represents approximately 70 companies who own or operate more than 200 manufacturing and research facilities across the state of Texas. Its members have invested more than $150 billion in physical assets in the state, directly employ more than 75,000 Texans, and indirectly employ over 500,000 Texans. The Texas chemical industry represents the #1 non-energy Texas export with over $45 billion in exports annually and pays more than $1.5 billion in state and local taxes each year.

- Texas Commission on Environmental Quality (Petitioner)

- Texas Oil & Gas Association (Petitioner)

  The Texas Oil & Gas Association ("TXOGA") is a statewide trade association representing every facet of the Texas oil and gas industry including small independents and major producers. Collectively, the membership of TXOGA produces in excess of 80 percent of Texas' crude oil and natural gas, operates over 80 percent of the state's refining capacity, and is responsible for the vast majority of the state's pipelines. In fiscal year 2022, the oil and natural gas industry supported 443,000 direct jobs and paid $24.7 billion in state and local taxes and state royalties, funding schools, roads and first responders.

- The Vanguard Group, Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

- United States Environmental Protection Agency (Respondent)

- Vistra Asset Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Corp. (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Intermediate Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Operations Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Webster, Brent, First Assistant Attorney General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

- Wise County Power Company, LLC (Petitioner)


Respectfully submitted,


s/ P. Stephen Gidiere III
*Counsel for Luminant Petitioners*

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

TABLE OF CONTENTS ....................................................................................... vi

TABLE OF AUTHORITIES ............................................................................... vii

LIST OF EXHIBITS IN APPENDIX................................................................... xi

GLOSSARY .......................................................................................................... xii

INTRODUCTION................................................................................................... 1

BACKGROUND...................................................................................................... 4

I.     Statutory and Regulatory Background.......................................................... 4

II.    Texas's State Implementation Plan .............................................................. 5

    A.     The 2015 Ozone NAAQS..................................................................... 5

    B.     Texas's Interstate Transport SIP ........................................................ 6

    C.     EPA Region 6's Determinations Regarding Texas's SIP ................. 8

    D.     EPA's Final Disapproval ..................................................................... 9

III.   EPA's Federal Implementation Plan for Texas ......................................... 9

STANDARD OF REVIEW .................................................................................. 10

ARGUMENT ......................................................................................................... 11

I.     Petitioners Are Likely to Succeed on the Merits...................................... 11

    A.     EPA's Disapproval Is Unlawful Because EPA Failed to Defer to Texas's Approach to Complying with the Clean Air Act......................... 11

    B.     EPA's Disapproval Is Unlawful Because it Is Based on Non-Statutory Factors................................................................................. 13

    C.     EPA's Rejection of Texas's Weight-of-Evidence Analysis Is Unlawful ............................................................................................. 15

    D.     EPA's Use of "Ballpark Estimates" to Reject Texas's SIP Was Arbitrary and Capricious ................................................................... 16

II.    Petitioners Will Suffer Irreparable Harm Absent a Stay ........................ 18

III.   The Balance of Harms and the Public Interest Favor a Stay .............. 21

CONCLUSION...................................................................................................... 21

CERTIFICATE OF CONFERENCE ................................................................. 24

CERTIFICATE OF COMPLIANCE ................................................................. 25

CERTIFICATE OF SERVICE ............................................................................ 26

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*BCCA Appeal Grp. v. EPA,*
   355 F.3d 817 (5th Cir. 2003) ........................................................................ 4

*Burgess v. Fed. Deposit Ins. Corp.,*
   871 F.3d 297 (5th Cir. 2017) ...................................................................... 18

*Burlington Truck Lines v. United States,*
   371 U.S. 156 (1962) ..................................................................................... 17

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor,*
   45 F.4th 846 (5th Cir. 2022) ...................................................................... 11

*Enter. Int'l Inc. v. Corp. Estatal Petrolera Ecuatoriana,*
   762 F.2d 464 (5th Cir. 1985) ...................................................................... 18

*EPA v. EME Homer City Generation, L.P.,*
   572 U.S. 489 (2014) ....................................................................................... 4

*Fla. Power & Light Co. v. Costle,*
   650 F.2d 579 (5th Cir. 1981) ................................................................. 4, 16

*La. Envtl. Action Network v. EPA,*
   382 F.3d 575 (5th Cir. 2004) ...................................................................... 16

*Luminant Generation Co. LLC v. EPA,*
   675 F.3d 917 (5th Cir. 2012) ............................................... 1, 4, 11, 12, 13

*Motor Vehicle Mfrs. Ass'n v. State Farm,*
   463 U.S. 29 (1983) ................................................................................. 11, 17

*Nken v. Holder,*
   556 U.S. 418 (2009) ..................................................................................... 10

*North Carolina v. EPA,*
   531 F.3d 896 (D.C. Cir. 2008) .................................................................... 14

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ................................................................................. 13

*Sierra Club v. Ga. Power Co.*,
  180 F.3d 1309 (11th Cir. 1999) ........................................................... 21

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) .......................................................*passim*

*Texas v. EPA*,
  983 F.3d 826 (5th Cir. 2020) .......................................................... 4, 15

*Tex. Oil & Gas Ass'n v. EPA*,
  161 F.3d 923 (5th Cir. 1998) ............................................................... 11

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ............................................................................. 18

*Train v. Nat. Res. Def. Council, Inc.*,
  421 U.S. 60 (1975) ........................................................................... 5, 12

*Union Elec. Co. v. EPA*,
  427 U.S. 246 (1976) ............................................................................... 4

## Federal Statutes

42 U.S.C. §7401(a)(3) .................................................................................. 4

42 U.S.C. §7409 ........................................................................................... 4

42 U.S.C. §7410(a) ..................................................................................... 16

42 U.S.C. §7410(a)(1) .................................................................................. 5

42 U.S.C. §7410(a)(2) ...................................................................... 3, 13, 16

42 U.S.C. §7410(a)(2)(D)(i) ........................................................................ 5

42 U.S.C. §7410(a)(2)(D)(i)(I) .......................................................... 13, 14

42 U.S.C. §7410(c)(1) .................................................................................. 9

42 U.S.C. §7410(c)(1)(B) ............................................................................. 9

42 U.S.C. §7505a ......................................................................................... 14

**Federal Regulations**

40 C.F.R. §51.308 ....................................................................................... 14

40 C.F.R. §§51.1300-51.1318 .................................................................... 14

40 C.F.R. Part 51, App. W, §1.a ................................................................ 17

40 C.F.R. §97.810 ....................................................................................... 21

**Federal Register**

80 Fed. Reg. 65,292 (Oct. 26, 2015) ............................................................ 5

81 Fed. Reg. 296 (Jan. 5, 2016) ................................................................... 2

82 Fed. Reg. 1,733 (Jan. 6, 2017) ........................................................... 5, 6

87 Fed. Reg. 9,798 (Feb. 22, 2022) ....................................................*passim*

87 Fed. Reg. 20,036 (April 6, 2022) ..............................................9, 10, 19

88 Fed. Reg. 9,336 (Feb. 13, 2023) .....................................................*passim*

**Miscellaneous**

Fed. R. App. P. 18(a)(2) ............................................................................... 1

Consent Decree, *Sierra Club v. Regan*, No. 3:22-cv-1992 (N.D. Cal. Jan. 24,
      2023) ...................................................................................................... 1

EPA, *Infrastructure SIP Requirements and Guidance*, *available at*
      https://www.epa.gov/air-quality-implementation-
      plans/infrastructure-sip-requirements-and-guidance        ("EPA
      Infrastructure SIP Guidance") .............................................................. 5

EPA, *NO$_X$ Control Retrofit Cost Tool Fleetwide Assessment Proposed CSAPR 2015 NAAQS*, No. EPA-HQ-OAR-2021-0668-0113 (Apr. 5, 2022), *available at* https://www.regulations.gov/document/EPA-HQ-OAR-2021-0668-0113 ("EPA Control Cost Assessment") ...................... 10

EPA Region 6, *2015 8-Hour Ozone Transport SIP Proposal Technical Support Document* (Feb. 2022) ("Region 6 Texas TSD") .................................... 8, 15, 17, 18

EPA, *Regulatory Impact Analysis for Proposed Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard*, EPA-452/D-22-001 at 4-1 (Feb. 2022) ("RIA") .............................................................................................. 10

Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)* (Mar. 27, 2018), *available at* https://tinyurl.com/4x2pp8u8 ("2018 Transport Guidance") ............................................................. 6

Memorandum from Stephen D. Page, Director, Office of Air Quality Planning and Standards, *Guidance on Infrastructure State Implementation Plan (SIP) Elements under Clean Air Act Sections 110(a)(1) and 110(a)(2)* (Sept. 13, 2013), *available at* https://tinyurl.com/2p8c7885 ("Page Memo") ............................................................................................. 5

TCEQ, *Transport State Implementation Plan (SIP) Revision for the 2015 Ozone National Ambient Air Quality Standards (NAAQS)*, Docket No. 2017-1762-SIP (Aug. 8, 2018), *available at* https://tinyurl.com/yc53rkrf ("Texas SIP") ........................................................................... 6, 7, 8, 21

## <u>LIST OF EXHIBITS IN APPENDIX</u>

<u>Exhibit</u>                                                                                                <u>Page Number</u>
                                                                                                         <u>in Appendix</u>

TCEQ, *Transport State Implementation Plan (SIP) Revision for the 2015 Ozone
    National Ambient Air Quality Standards (NAAQS)*, Docket No. 2017-
    1762-SIP (Aug. 8, 2018) ("Texas SIP") .................................................................... 1

EPA, Proposed Rule, *Air Plan Disapproval; Arkansas, Louisiana, Oklahoma,
    and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone
    National Ambient Air Quality Standards*, 87 Fed. Reg. 9,798 (Feb. 22,
    2022) ..................................................................................................................... 148

EPA Region 6, *2015 8-Hour Ozone Transport SIP Proposal Technical Support
    Document* (Feb. 2022) ("Region 6 Texas TSD") .................................................. 187

EPA, Final Rule, *Air Plan Disapprovals; Interstate Transport of Air Pollution for
    the 2015 8-Hour Ozone National Ambient Air Quality Standards*, 88 Fed.
    Reg. 9,336 (Feb. 13, 2023) .................................................................................... 288

Declaration of Dwayne W. "Woody" Rickerson, Vice President of System
    Planning & Weatherization, Electric Reliability Council of Texas
    (ERCOT) ("Rickerson Decl.") ............................................................................. 338

Declaration of Kenneth C. Price, Chief Operating Officer, Lower
    Colorado River Authority ("Price Decl.") ........................................................... 344

Declaration of Dudley Zahn, Vice President, NRG Energy, Inc. ("Zahn
    Decl.") .................................................................................................................. 353

Declaration of Randall J. Talley, Vice President, Solid Fuels and
    Environmental Trading, Vistra Corp. ("Talley Decl.") ...................................... 363

Declaration of Jacob Krautsch, Senior Director of Environmental, Energy
    Transfer LP ("Krautsch Decl.") ........................................................................... 389

## **GLOSSARY**

| | |
|---|---|
| **CAA or the Act** | Clean Air Act |
| **EPA** | United States Environmental Protection Agency |
| **ERCOT** | Electric Reliability Council of Texas |
| **FIP** | Federal Implementation Plan |
| **MW** | Megawatts |
| **NAAQS** | National Ambient Air Quality Standards |
| **NO$_X$** | Nitrogen Oxides |
| **ppb** | Parts per billion |
| **SIP** | State Implementation Plan |
| **TCEQ** | Texas Commission on Environmental Quality |
| **Texas Industry Petitioners** | Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Council, Texas Oil & Gas Association, Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC |

Pursuant to Federal Rule of Appellate Procedure 18(a)(2), Texas Industry Petitioners respectfully move the Court to stay the U.S. Environmental Protection Agency's ("EPA") final action disapproving the State of Texas's Clean Air Act State implementation plan ("SIP") published on February 13, 2023. *See* 88 Fed. Reg. 9,336, 9,359-60 (Feb. 13, 2023).[1]

## INTRODUCTION

This case concerns EPA's latest attempt to usurp the State of Texas's authority under the Clean Air Act's cooperative federalism framework and force billions of dollars of unnecessary costs on Texas's energy infrastructure. Texas spent years developing its plan to address the Act's interstate transport requirements for the new 2015 ozone National Ambient Air Quality Standards ("NAAQS"). Because Texas's plan complies with the Act, EPA had one job: approve it. EPA had other plans—a *federal* implementation plan ("FIP") filled with its own policy preferences. But this Court's precedent draws a clear line: "With regard to implementation, the Act confines the EPA to the ministerial function of reviewing [state plans] *for consistency with the Act's requirements.*" *Luminant Generation Co. LLC v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (emphasis added). EPA has stepped over that line here in judging Texas's plan, basing its disapproval on *non-statutory* factors—like EPA's "4-Step" method for developing

---

[1] Moving first before the agency would be impracticable given the imminent harm caused by EPA's disapproval, *see* Fed. R. App. P. 18(a)(2)(A)(i), and would be futile given EPA's agreement with Sierra Club to finalize a federal plan by March 15, 2023. *See* Consent Decree at 4, *Sierra Club v. Regan*, No. 3:22-cv-1992 (N.D. Cal. Jan. 24, 2023).

federal plans found nowhere in the statute or duly-promulgated regulations—and second-guessing the State's weighing of admittedly relevant factors to assess downwind contribution. This is familiar territory for this Court. *See Texas v. EPA*, 829 F.3d 405, 424-36 (5th Cir. 2016) (granting stay of EPA disapproval of visibility/regional haze portion of Texas's interstate transport plan[2]). As before, EPA's actions here are unlawful, and its disapproval of Texas's plan should be stayed and ultimately vacated.

EPA's disapproval triggers a federal plan that EPA predicts will drive Texas power plants to shut down, thus risking the reliability of the Texas power grid. In this latest chapter, EPA targets many of the same power plants as before—efforts that were stopped by this Court's timely intervention. *Id.* at 433-36 (holding Petitioners would be irreparably harmed absent a stay where EPA's action "impose[d] $2 billion in costs on power companies, businesses, and consumers"). Now, EPA extends its reach to other Texas business sectors to impose the same types of unnecessary costs that threaten economic development and growth in the State. This harm is imminent—EPA says its new mandates will take effect *this summer* and instructed companies to begin costly expenditures *now* to meet its aggressive compliance schedule.

---

[2] EPA's SIP disapproval that this Court stayed in the Texas Regional Haze case included EPA's disapproval of the visibility portion of Texas's interstate transport SIP addressing ozone. *See* 81 Fed. Reg. 296, 296 (Jan. 5, 2016) ("EPA is also disapproving portions of several separate infrastructure SIP revisions submitted by Texas … regarding interference with other states' programs for visibility protection (*interstate visibility transport*) triggered by the issuance of the … 1997 ozone NAAQS[.]") (emphasis added).

Undeterred, EPA has raised the stakes with its legal position here. Not only does it disregard the Clean Air Act's cooperative federalism framework, EPA now openly contends that the Supreme Court and this Court's precedent reinforcing that framework does not bind EPA because it is either outdated or simply does not apply to interstate transport. *See* 88 Fed. Reg. at 9,367-68 ("[EPA deference] to state choices" under "the *Train-Virginia* line of cases" is "inappropriate in the context of addressing interstate pollution" and "pre-date" the Act's 1990 amendments). But the interstate transport requirements are part of the same statutory provision as other State plan requirements, *see* 42 U.S.C. §7410(a)(2), and there is no indication in the statutory text or otherwise that Congress intended to upend the normal order for interstate transport. This Court applies the same standard of review whether or not interstate transport is involved. *See Texas*, 829 F.3d at 411-12 (applying *Train* and its progeny to EPA disapproval of Texas interstate transport plan).

Because Petitioners are likely to succeed on the merits of their challenge to EPA's disapproval, have demonstrated irreparable and immediate injury if a stay is not granted, and have shown that the balance of harms and the public interest weigh in favor of a stay, the motion for stay should be granted.

## BACKGROUND

### I.     Statutory and Regulatory Background

The Clean Air Act "establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 821-22 (5th Cir. 2003). "Congress chose a balanced scheme of state-federal interaction to implement the goals of the Act." *Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 581 (5th Cir. 1981). Within this framework, "air pollution prevention … is the primary responsibility of States and local governments." 42 U.S.C. §7401(a)(3).

For its part, EPA's job is to set NAAQS for certain pollutants, including ozone.[3] *See id.* §7409(a)-(b). After EPA does so, States develop SIPs to implement the NAAQS and demonstrate compliance "with the Act's requirements." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 507 (2014). The statute provides "each state 'wide discretion in formulating its plan' for achieving the air quality standards set by EPA." *Texas*, 829 F.3d at 411 (quoting *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976)).

EPA's role in reviewing SIPs is narrow and limited. "With regard to implementation, the Act confines the EPA to the ministerial function of reviewing [state plans] for consistency with the Act's requirements." *Luminant*, 675 F.3d at 921.

---

[3] Ground-level ozone ($O_3$) is not emitted directly by human activities but is formed when nitrogen oxides ($NO_X$) and volatile organic compounds (VOCs) react in the atmosphere with sunlight. *See Texas v. EPA*, 983 F.3d 826, 830 (5th Cir. 2020).

EPA may not substitute its own judgment for that of the State, nor can it lawfully disapprove a SIP based on non-statutory factors. *Texas*, 829 F.3d at 426-28. Only if the SIP does not meet a statutory requirement "may [EPA] devise and promulgate a specific plan of its own." *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975).

The statutory provision at issue here is the "interstate transport" provision, 42 U.S.C. §7410(a)(2)(D)(i), which contains four "prongs" that States must address— 1) "significant contribution"; 2) "interference with maintenance"; 3) "prevention of significant deterioration"; and 4) "protection of visibility." *See* Page Memo at 30-35 (listing the four prongs of the "interstate pollution transport" provision, 42 U.S.C. §7410(a)(2)(D)(i)); *see also* EPA Infrastructure SIP Guidance (listing the four "Interstate transport" prongs of 42 U.S.C. §7410(a)(2)(D)(i)).

## II.    Texas's State Implementation Plan

### A.    The 2015 Ozone NAAQS

In 2015, EPA lowered the ozone NAAQS to 70 ppb, 80 Fed. Reg. 65,292 (Oct. 26, 2015), triggering a deadline of October 1, 2018, for States to submit their SIPs. 42 U.S.C. §7410(a)(1). EPA did not promulgate regulations containing requirements that States must follow in addressing the interstate transport provision in their SIPs.

Instead, over one year later, in January 2017, EPA published modeling data "intended to help inform state efforts to address interstate transport with respect to the 2015 ozone NAAQS." 82 Fed. Reg. 1,733, 1,735 (Jan. 6, 2017). EPA explained "that

states may rely on this or other appropriate modeling, data or analyses to develop approvable Good Neighbor SIPs." *Id.*

EPA also issued a guidance memorandum (not regulations) in March 2018 that explained that States *could* "us[e] EPA's analytical approach" from EPA's prior FIPs, "somewhat different analytical approaches within these steps," "or alternative frameworks." 2018 Transport Guidance at 3. EPA explained that States "may supplement the information provided in this memorandum with any additional information that they believe is relevant." *Id.* at 6.

## B.     Texas's Interstate Transport SIP

TCEQ adopted its plan and timely submitted it to EPA on August 17, 2018. *See* 87 Fed. Reg. 9,798, 9,824 (Feb. 22, 2022). TCEQ's plan includes regional photochemical modeling of Texas emissions and analysis of the impact on ozone concentrations in downwind States. *Id.* at 9,825. TCEQ used the same model as EPA had in its 2017 modeling—the Comprehensive Air Quality Model with Extensions (CAMx). Texas SIP at 3-4.

TCEQ also "us[ed] a framework similar to EPA's 4-Step framework [for FIPs]," 87 Fed. Reg. at 9,824, but "with several key improvements," Texas SIP at 3-1. ***First***, using CAMx modeling, TCEQ identified monitors in other States that were projected in 2023 either to be in nonattainment ("nonattainment monitors") or have maintenance issues ("maintenance monitors"). TCEQ used EPA's method to identify nonattainment monitors, *id.* at 3-37, but for maintenance monitors TCEQ used the *most*

*recent* three-year design value as the base case for its modeling (*i.e.*, the 2012-2014 period) instead of EPA's *maximum* and outdated three-year design value (*i.e.*, 2009-2011, 2010-2012, or 2011-2013). *Id.* at 3-39.[4] TCEQ found that the most recent data "reflect[s] the current state of ozone concentrations [and] the impact of any maintenance plans that are in place to prevent local emissions from causing an area to slip back into nonattainment." *Id.* at 3-42.

**Second**, TCEQ identified monitors potentially linked to Texas emissions using the contribution threshold recommended in EPA's guidance—one percent of the NAAQS or 0.7 ppb. *Id.* at 3-2. If TCEQ's modeling predicted a Texas contribution at or above 0.7 ppb, the monitor was identified for further review. *Id.* at 3-3.

**Finally**, TCEQ conducted a multi-factor weight-of-evidence analysis to determine whether Texas emissions significantly contribute to nonattainment or interfere with maintenance at the identified monitors. *Id.* at 3-47 to 3-50. Because "[i]nterstate transport is a complex problem," TCEQ considered "factors relevant to the ozone conditions at the [downwind] monitors," including "design value trends, the meteorological conditions that lead to high ozone formation at the monitor, and the number of days with elevated ozone." *Id.* at 3-50. Based on these factors, TCEQ found

---

[4] "A design value is a statistic that describes the air quality status of a given location relative to the level of the NAAQS." 87 Fed. Reg. at 9,800 n.8.

that Texas emissions do not contribute significantly to nonattainment or interfere with maintenance of the 2015 ozone NAAQS in those areas.  *Id.* at 3-50 to 3-76.

### C.    EPA Region 6's Determinations Regarding Texas's SIP

On February 22, 2022—*after* EPA's 18-month statutory deadline to act passed—EPA's Region 6 proposed to disapprove Texas's SIP as to prongs 1 and 2 of the interstate transport requirement.  *See* 87 Fed. Reg. at 9,798.  Region 6 found that because TCEQ used different analytical approaches than EPA, Texas's plan "does not meet the State's interstate transport obligations."  *Id.* at 9,834.  Region 6's determinations that formed the basis for the disapproval were set out in a Texas-only Technical Support Document.  *See* Region 6 Texas TSD.

***First***, the Region determined that TCEQ's use of the most recent three-year period (2012-2014) to identify downwind maintenance monitors "is less likely to successfully identify maintenance receptors than the EPA method."  *Id.* at 11.  ***Second***, Region 6 determined that "TCEQ's modeling underestimates future ozone levels" in 2023 as compared to Region 6's "ballpark estimate" for 2023.  87 Fed. Reg. at 9,829; Region 6 Texas TSD at 38-41.  ***Third***, Region 6 determined that TCEQ's multi-factor weight-of-evidence analysis was not sufficiently "compelling" to "counter" "EPA's [one-percent] contribution methodology" from EPA's FIPs.  87 Fed. Reg. at 9,833-34; Region 6 Texas TSD at 78.

### D. EPA's Final Disapproval

On February 13, 2023, EPA published its final disapproval of Texas's SIP. 88 Fed. Reg. at 9,359-60. EPA's Texas disapproval was published in a consolidated notice that included disapprovals of eighteen other States' SIPs, which explained that each was judged "in light of the facts and circumstances of each particular state's submission" and "the contents of each individual state's submission were evaluated on their own merits." *Id.* at 9,337, 9,340, 9,354. As to Texas's SIP, EPA's disapproval is based on the determinations by Region 6. *Id.* at 9,359-60.

## III. EPA's Federal Implementation Plan for Texas

EPA's disapproval of Texas's SIP is the statutory prerequisite to EPA's authority to issue a FIP. 42 U.S.C. §7410(c)(1)(B). Although EPA is to issue a FIP "within 2 years *after*" it disapproves a SIP, *id.* §7410(c)(1), here, EPA issued a proposed FIP *before* it disapproved Texas's SIP, *see* 87 Fed. Reg. 20,036 (April 6, 2022). EPA intends to finalize the FIP by March 15, 2023. *See supra* note 1.

EPA's forthcoming FIP will restrain operations of Texas power plants starting in May 2023 by imposing new emission reductions for nitrogen oxides ($NO_X$). 87 Fed. Reg. at 20,040, 20,099-20,101. These reductions are implemented in two phases. In the first, in May 2023, Texas's $NO_X$ emissions budget will be reduced to 38,284 tons—a 27% reduction from the current budget. *Id.* at 20,044. In the second, EPA would further reduce Texas's budget in 2026 to 21,946 tons—a 58% reduction. *Id.* This reduction is based largely on EPA's assumption that over 30 Texas generating units

would install costly new emissions control equipment (called selective catalytic reduction ("SCR") controls) that would be operational by 2026. *Id.* at 20,089; Rickerson Decl. ¶17 (12,281 MW of Texas generation required to install SCR). The cost to install this additional equipment is estimated by EPA to be approximately $40 to $332 million *per unit. See* EPA Control Cost Assessment ("SCR_horz" and "SCR_gas_horz" tabs).

EPA modeled the impact of its proposed FIP on the Texas power grid. *See* RIA at App. 3-B & Ch. 4. For the ERCOT region in Texas, EPA's proposed-rule modeling predicted that generating units totaling approximately 15,000 MW of capacity will not operate in 2023 and that the bulk of these units will permanently shut down. *See* Rickerson Decl. ¶¶23, 32; Price Decl. ¶11; Talley Decl. ¶36.

## STANDARD OF REVIEW

This Court considers four factors in deciding whether to stay agency action pending review: (1) likelihood of success on the merits, (2) irreparable harm to the movant, (3) balance of the harms between the petitioner and respondent, and (4) whether relief would serve the public interest. *Texas*, 829 F.3d at 424 (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

**<u>ARGUMENT</u>**

**I.    Petitioners Are Likely to Succeed on the Merits**

Petitioners will succeed on the merits.  Under the Clean Air Act, this Court will invalidate EPA's action if it is "not permitted by the statute" or is "arbitrary [or] capricious[.]"  *Texas*, 829 F.3d at 425-26; *see also Luminant*, 675 F.3d at 925 (standard of review of Clean Air Act actions mirrors standards under Administrative Procedure Act).  Agency action "is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983)); *see Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 856 (5th Cir. 2022) (this Court's review of agency action is "not toothless"; rather, "it has serious bite" (internal quotations and citations omitted)).

**A.    EPA's Disapproval Is Unlawful Because EPA Failed to Defer to Texas's Approach to Complying with the Clean Air Act**

This Court's precedent setting out the respective roles of States and EPA in the SIP process extends back over four decades.  Consistently, this Court has held that "the Clean Air Act limits EPA to a deferential role," that EPA must accord "deference" to "Texas's application of the [Act's] statutory factors," and that EPA acts *ultra vires* when

11

it disapproves a SIP based on requirements "not found in the Act." *Texas*, 829 F.3d at 428 (citing, *inter alia*, *Florida Power & Light*). In recent years, the Court has further corrected EPA's "misapprehension" of "its authorized role in the SIP-approval process," noting that "EPA does not possess *any* 'discretionary authority'" at the SIP stage and that "[*o*]*nly* the [S]tates enjoy discretion in implementing the dictates of the CAA." *Luminant*, 675 F.3d at 928 n.8 (emphases added).

EPA has not gotten the message. Look no further than the SIP disapproval here, where EPA says that it "believe[s] that deviation from a *nationally consistent approach* to ozone transport"—*i.e.*, EPA's policy preferences embodied in its FIP—"must be *substantially justified* and have a well-documented basis that is consistent with [the Act] and relevant case law." 88 Fed. Reg. at 9,340 (emphases added). Thus, EPA disapproved Texas's SIP because it "deviat[ed] from" EPA's "nationally consistent approach" in a way that was not "substantially justified" in EPA's view. *See id.* And EPA candidly states, contrary to the Supreme Court and this Court's repeated admonitions, that it "disagrees that it is obligated to defer to [S]tates' choices in the development of good neighbor SIP submissions." *Id.* at 9,375; *contra Texas*, 829 F.3d at 428 (EPA "failed to defer to Texas's application of the [Act's] statutory factors" in interstate visibility transport SIP). And that it does not play a "secondary" role at the SIP stage. 88 Fed. Reg. at 9,367; *contra Train*, 421 U.S. at 79 (EPA "is relegated by the Act to a secondary role"). It even says that the Supreme Court and this Court's precedents mandating EPA's deference to Texas's approach are "particularly

inappropriate in the context of addressing interstate pollution," 88 Fed. Reg. at 9,367, even though these cases interpret the *same* provision of the Act—42 U.S.C. §7410(a)(2). *See Texas*, 829 F.3d at 411 (applying *Train*, *Union Electric*, *Florida Power & Light*, and *Luminant* precedent to EPA disapproval of Texas interstate visibility transport SIP). These pure legal errors led EPA astray and alone warrant stay and ultimate vacatur. *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) (agency action "may not stand if the agency has misconceived the law").

### B.    EPA's Disapproval Is Unlawful Because it Is Based on Non-Statutory Factors

EPA's disapproval is also unlawful because EPA did not limit its review of Texas's plan "for consistency with the Act's requirements." *Luminant*, 675 F.3d at 921.

A prime example is EPA's rejection of Texas's approach to "maintenance" monitors—not based on any *statutory* requirement, but based on Region 6's determination that TCEQ's approach in its *State* plan was not the same as EPA's approach in *federal* plans. 88 Fed. Reg. at 9,359-60 (citing 87 Fed. Reg. at 9,824-29 ("TCEQ also used a different methodology than the EPA to identify monitors projected to be maintenance receptors in 2023.")). EPA claimed that TCEQ did not "give[] meaning to the CAA's instruction" regarding "interfering with the maintenance of the NAAQS in another state." 87 Fed. Reg. at 9,826. But the statutory language does not give *any* "instruction" on *how* to identify maintenance monitors. *See* 42 U.S.C. §7410(a)(2)(D)(i)(I). Instead, the statute simply requires the State to give meaning to

*both* prongs. *See id.* ("contribute significantly to nonattainment in, *or* interfere with maintenance") (emphasis added); *see also North Carolina v. EPA*, 531 F.3d 896, 910 (D.C. Cir. 2008) ("[§7410(a)(2)(D)(i)(I)] is written in the disjunctive").

EPA concedes that TCEQ's methodology meets this requirement. 87 Fed. Reg. at 9,825 (TCEQ separately identified receptors "projected to be in nonattainment" *or* "projected to have problems attaining and maintaining the 2015 ozone NAAQS"); *id.* Table TX-1 (showing both nonattainment and maintenance monitors). And by accounting for the *most recent* emission reductions resulting from maintenance plans issued by the downwind States, TCEQ's methodology gives full meaning to the "maintenance" prong of the statutory requirement.[5]

Nor do EPA regulations require any particular methodology for identifying maintenance monitors. EPA issued regulations establishing SIP requirements for some aspects of the 2015 ozone NAAQS, but they do *not* include requirements for interstate transport, much less for identifying "maintenance" monitors. *See* 40 C.F.R. §§51.1300-51.1318. EPA also issued regulations establishing requirements for SIPs as to prong 4 of the interstate transport provision (visibility/regional haze), *see Texas*, 829 F.3d at 412 (discussing 40 C.F.R. §51.308), but EPA has not done so for prongs 1 or 2. Because neither the statute nor EPA's duly-promulgated regulations require EPA's preferred

---

[5] A "maintenance" area is an area previously designated as nonattainment but now in attainment and subject to a maintenance plan issued by its home State. *See* 42 U.S.C. §7505a.

"maintenance" methodology, EPA's disapproval on that basis was unlawful. *Id.* at 429 ("Given the absence of a regulation or statute requiring [EPA's preferred approach] . . . EPA's disapproval . . . was arbitrary and capricious.").

### C.    EPA's Rejection of Texas's Weight-of-Evidence Analysis Is Unlawful

EPA also unlawfully rejected Texas's weight-of-evidence approach to determining "significant contribution" based on Region 6's determination that TCEQ's approach was not consistent with EPA's bright-line one-percent threshold from prior FIPs. *See* 87 Fed. Reg. at 9,831-34. But, as this Court has already held, EPA's "one-percent threshold" is non-statutory and "does not appear in the text of [the interstate transport] provision." *Texas*, 983 F.3d at 839. And, this Court has also found that a multi-factor weight-of-evidence test, as Texas used here, is consistent with the statute and a reasonable method of assessing downwind contribution to ozone nonattainment, given the complex nature of ozone transport. *See id.* at 839-40 ("EPA has successfully used a multi-factor balancing test to assess [ozone] attainment designations for years.").

EPA's disapproval turns cooperative federalism on its head. EPA claims that Texas's SIP did not provide "substantial evidence that counters . . . the contribution analysis using EPA's [one-percent] contribution methodology." Region 6 Texas TSD at 78. And EPA says it would impose the one-percent threshold absent a "compelling policy reason to adopt" a different one. 88 Fed. Reg. at 9,374. But the Clean Air Act does not require Texas to "counter[]" EPA's preferred approach with "substantial

15

evidence," nor does it authorize EPA to judge a SIP based on a FIP.  EPA must defer to SIPs that comply with the Act, not reject SIPs merely because they do not identify a "compelling" reason to deviate from EPA's non-statutorily-mandated approach.

EPA's approach of comparing Texas's SIP to prior FIPs—as opposed to statutory requirements—is unlawful.  The question whether EPA can use a one-percent threshold *in a FIP* is fundamentally different from the question whether such a threshold can serve as the default presumption for judging *a SIP*.  EPA's review of SIP revisions is cabined and delineated by 42 U.S.C. §7410(a).  *Fla. Power & Light Co.*, 650 F.2d at 586-87 (explaining statutory standards for EPA review of SIPs).  That provision lists the statutory requirements for SIPs.  42 U.S.C. §7410(a)(2).  Notably absent from the list is any requirement that a SIP conform to the requirements of a FIP developed by EPA.  *Id.*  Because EPA's disapproval "relied on factors which Congress has not intended it to consider" (*i.e.*, EPA's FIP), the disapproval is unlawful and must be vacated.  *La. Envtl. Action Network v. EPA*, 382 F.3d 575, 582 (5th Cir. 2004) (internal quotations and citation omitted).

### D.    EPA's Use of "Ballpark Estimates" to Reject Texas's SIP Was Arbitrary and Capricious

EPA's rejection of Texas's air quality modeling was arbitrary and capricious.  TCEQ performed its modeling using the most up-to-date version of the same model that EPA had used—the CAMx model—and *more recent* emissions data than EPA had used.  87 Fed. Reg. at 9,825.  EPA did not dispute that TCEQ used the correct model,

nor did it find that TCEQ violated any modeling protocols in EPA's regulations that "provide[] air quality modeling techniques that should be applied to State Implementation Plan (SIP) submittals." 40 C.F.R. Part 51, App. W, §1.a.

Nevertheless, EPA disapproved Texas's SIP because the Region determined that "TCEQ's modeling is likely underestimating future ozone [levels]." Region 6 Texas TSD at 41; 88 Fed. Reg. at 9,359 (citing Region 6 Texas TSD). To make that determination, the Region did not assess TCEQ's modeling for compliance with EPA's modeling regulations. Instead, it compared Texas's modeling results to a "ballpark estimate" of 2023 ozone conditions. Region 6 Texas TSD at 40. But Region 6 conceded that its "ballpark estimate" was "*not as exact* as developing new modeling"; "*not usable* in any other CAA action"; and not even "*a defensible basis* on which to reach any conclusions regarding future air quality conditions." *Id.* at 40 & n.23 (emphases added).

These concessions render EPA's disapproval unlawful. EPA's factual findings must be "supported by substantial evidence." *Texas*, 829 F.3d at 425. To withstand review, EPA "must examine the relevant data and *articulate a satisfactory explanation* for its action including a '*rational* connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962) (emphases added)). By basing its disapproval on a "ballpark estimate" that was admittedly not "a defensible basis" for "any conclusions regarding future air quality

17

conditions," Region 6 Texas TSD at 40 & n.23, EPA utterly failed to meet that standard here.

## II.    Petitioners Will Suffer Irreparable Harm Absent a Stay

Petitioners will be irreparably harmed absent a stay.  As this Court has explained, "[w]hen determining whether injury is irreparable, 'it is not so much the magnitude but the irreparability that counts[.]'"  *Texas*, 829 F.3d at 433-34 (quoting *Enter. Int'l Inc. v. Corp. Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)).  Where "[n]o mechanism . . . exists for the [movant] to recover the compliance costs they will incur," the irreparable harm requirement is met.  *Id.* at 434; *see Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017) ("An injury is 'irreparable' . . . if it cannot be undone through monetary remedies." (internal citations and alterations omitted)).  "Indeed, 'complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.'"  *Texas*, 829 F.3d at 433 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and in the judgment)) (emphasis in original).

Here, EPA's unlawful disapproval—which triggers EPA's imminent FIP—is presently causing an array of irreparable harms, including: **1)** costs of equipment and engineering for new SCR—Price Decl. ¶¶26-27, Talley Decl. ¶29, Zahn Decl. ¶¶15-17; **2)** insufficient allowance allocations for critical summer 2023 operations—Zahn Decl. ¶18; Talley Decl. ¶23, Price Decl. ¶19; **3)** dramatically increased allowance prices—Price Decl. ¶¶28-31, Talley Decl. ¶¶18-19; **4)** expenditures to optimize existing equipment

for 2023 ozone season—Zahn Decl. ¶¶20-22, Talley Decl. ¶¶20-22; and **5)** and altered and irreversible trading decisions and market disruption—Talley Decl. ¶25; Price Decl. ¶28. These harms flow from EPA's SIP disapproval—without the disapproval, there would be no FIP. 88 Fed. Reg. at 9,361 ("[T]he state[] and the EPA [must] assure that necessary emissions reductions are achieved ... by the 2023 ozone season[.]"); 87 Fed. Reg. at 20,058 (EPA "will not finalize a FIP for [Texas] unless and until the EPA formally finalizes disapproval[] of [its] SIP"); *Texas*, 829 F.3d at 425 (considering, for stay motion, "injury" that "flow[s] from the [FIP]" "because EPA only has the power to promulgate a [FIP] if it disapproves the [SIP]").

The harms will accelerate in the coming months. EPA has instructed companies to begin work "now" on the installation of billions of dollars of emissions control equipment to meet EPA's compliance schedule. 87 Fed. Reg. at 20,101. Construction of the new equipment involves massive expenditures, extensive coordination, and long lead-times for planning, design, engineering, procurement, permitting, and actual construction. Talley Decl. ¶30 ($1.2 billion for new SCRs); Price Decl. ¶¶26-27 (over $723 million for new SCRs); Zahn Decl. ¶17 (over $1 billion for new SCRs). These expenditures cannot be recovered from EPA or ratepayers, Talley Decl. ¶¶26, 31; Zahn Decl. ¶¶9-10, 24, and will force unit retirements according to EPA, Rickerson Decl. ¶¶32, 36; Price Decl. ¶11; Talley Decl. ¶36. The harms extend beyond the electricity sector. Krautsch Decl. §III (over $57-$118 million additional costs for natural-gas pipeline company). Thus, just as before, "[t]he tremendous costs of the emissions

19

controls impose a substantial financial injury on the petitioner power companies which, in this circuit, 'may also be sufficient to show irreparable injury.'" *See Texas*, 829 F.3d at 433 (internal citation omitted).

Further, the Electric Reliability Council of Texas ("ERCOT")—the independent system operator that manages the power grid for 26 million customers in Texas—has determined that EPA's disapproval will endanger the reliability of the ERCOT grid in the summer of 2023—another form of irreparable harm. Rickerson Decl. ¶37. ERCOT has concluded that, under EPA's projections for the summer of 2023, the likelihood that ERCOT would "need[] to direct firm load-shedding would be 77 times greater than it would be without the reduction of capacity." *Id.* ¶25. With "load-shedding," customers are disconnected "from the power grid in order to avoid a system-wide blackout." *Id.* ¶18. Beyond 2023, ERCOT concludes that the "loss of thermal capacity" expected from the retirement of units mandated by EPA to install costly SCR ("as much as 10,800 MW of capacity") "could have catastrophic consequences for the electric grid in 2026," including "an approximately nine times greater risk of having insufficient generation to meet demand in 2026[.]" *Id.* ¶¶32, 35. Even before 2026, "ERCOT anticipates that the mandate that owners of certain units must install SCR technology by 2026 could lead to retirement of coal- and gas-fired generating units prior to 2026." *Id.* ¶36. These impacts constitute additional irreparable harm. *See Texas*, 829 F.3d at 433 (forced retirement of 8,400 MW of capacity justified stay).

### III.    The Balance of Harms and the Public Interest Favor a Stay

The remaining factors favor a stay.  The public interest in maintaining air quality will be protected during a stay.  As Texas demonstrated in its SIP, emissions from Texas do not contribute significantly to nonattainment or interfere with maintenance of the 2015 ozone NAAQS in downwind areas, and facilities in Texas are subject to myriad emission control requirements that will not be impacted by a stay.  Texas SIP at 7-1. Texas power plants will remain subject to federally-enforceable $NO_X$ reductions.  *See* 40 C.F.R. §97.810.   And EPA itself concedes "that ozone levels generally trend downward," even without the further reductions EPA is mandating.  87 Fed. Reg. at 9,827.

On the other hand, if a stay is not granted, there is a substantial risk to the economic viability of Texas power plants and the reliability of the electricity grid in Texas in the critical summer months.  Rickerson Decl. ¶¶17-18, 29, 32, 36.  For this reason alone, a stay is warranted.  *See Sierra Club v. Ga. Power Co.*, 180 F.3d 1309, 1311 (11th Cir. 1999) ("[A] steady supply of electricity during the summer months, especially in the form of air conditioning to the elderly, hospitals and day care centers, is critical.").

### <u>CONCLUSION</u>

For these reasons, the Court should stay EPA's disapproval and prohibit EPA from taking any action in reliance on that disapproval pending conclusion of these proceedings.

Dated: March 3, 2023

Respectfully submitted,

s/ P. Stephen Gidiere III
P. Stephen Gidiere III
C. Grady Moore III
Julia B. Barber
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

Stephanie Z. Moore
Executive Vice President & General Counsel
Daniel J. Kelly
Senior Vice President & Deputy General
Counsel
David W. Mitchell
Senior Counsel, Environmental
VISTRA CORP.
6555 Sierra Drive
Irving, Texas 75039

*Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC*

<u>s/ Aaron M. Streett</u>
Aaron M. Streett
Matthew L. Kuryla
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522
aaron.streett@bakerbotts.com

*Counsel for Petitioners Association of Electric Companies of Texas, BCCA Appeals Group, Texas Chemical Council, and Texas Oil & Gas Association*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Fifth Circuit Rule 27.4, the undersigned counsel conferred with the counsel for the other parties regarding this motion.  Counsel for Respondent has stated that Respondents oppose the motion.  Counsel for State Petitioners has stated that State Petitioners consent to the motion.

Dated: March 3, 2023

s/ P. Stephen Gidiere III
*Counsel for Luminant Petitioners*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel states that this motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 5,188 words, excluding the items allowed to be excluded pursuant to Fed. R. App. P. 32(f), as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface in 14-point Garamond font.

The undersigned counsel also certifies that, pursuant to paragraph A(6) of this Court's ECF Filing Standards, (1) any required privacy redactions have been made in compliance with 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: March 3, 2023

s/ P. Stephen Gidiere III
*Counsel for Luminant Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 3rd day of March, 2023.

s/ P. Stephen Gidiere III
*Counsel for Luminant Petitioners*
