No. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

―――――――――

STATE OF TEXAS, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

―――――――――

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

―――――――――

**RESPONDENTS' OPPOSED MOTION TO TRANSFER THE PETITION
FOR REVIEW TO THE D.C. CIRCUIT OR DISMISS BASED ON
IMPROPER VENUE**

―――――――――

                                        TODD KIM
                                        *Assistant Attorney General*

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN          JIN HYUNG LEE
DANIEL P. SCHRAMM                  *U.S. Department of Justice*
   *Office of the General Counsel*    *Environment and Natural Resources*
   *U.S. Environmental Protection*       *Division*
      *Agency*                         *P.O. Box 7611*
   *Washington, DC*                   *Washington D.C. 20044-7611*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STATE OF TEXAS, et al.,

    Petitioners,

       v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

    Respondents.

No. 23-60069

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Respondents, as

governmental parties, need not furnish a certificate of interested persons.


Date: March 15, 2023

         */s/ Jin Hyung Lee*
         JIN HYUNG LEE
         U.S. Department of Justice
         Environment & Natural Resources
         Division
         Environmental Defense Section
         P.O. Box 7611
         Washington, D.C. 20044
         (202) 514-2640
         jin.hyung.lee@usdoj.gov

         *Counsel for Respondents*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION .............................................................................1

BACKGROUND ...............................................................................2

    A.    National Ambient Air Quality Standards ...............................2

    B.    The Clean Air Act's Venue Provisions ................................4

    C.    EPA's Disapproval of SIPs Addressing the Good Neighbor
         Provision for the 2015 Ozone NAAQS.................................5

ARGUMENT ......................................................................................8

    A.    The Final Rule is Nationally Applicable................................9

    B.    EPA Properly Made and Published a Finding that the Final
         Rule was Based on a Determination of Nationwide Scope or
         Effect. ................................................................................13

CONCLUSION.................................................................................19

CERTIFICATES OF COMPLIANCE....................................................20

CERTIFICATE OF SERVICE ............................................................21

# TABLE OF AUTHORITIES

## CASES

*ATK Launch Systems, Inc. v. EPA*,
  651 F.3d 1194 (10th Cir. 2011) ..........................................................10

*Chevron U.S.A. Inc. v. EPA*,
  45 F.4th 380 (D.C. Cir. 2022) ...................................................................9

*Dalton Trucking, Inc. v. EPA*,
  808 F.3d 875 (D.C. Cir. 2015) ..................................................................9

*EME Homer City Generation, L.P. v. EPA*,
  795 F.3d 118 (D.C. Cir. 2015) ..................................................................5

*EPA v. EME Homer City Generation, L.P.*,
  572 U.S. 489 (2014) ..............................................................................3, 5

*Gen. Motors Corp. v. United States*,
  496 U.S. 530 (1990) ...................................................................................3

*Michigan v. EPA*,
  213 F.3d 663 (D.C. Cir. 2000) ..................................................................5

*Midwest Ozone Group v. EPA*,
  No. 21-1146, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023)....................5

*New York v. EPA*,
  781 F. App'x 4 (D.C. Cir. 2019) ...............................................................5

*NRDC v. Thomas*,
  838 F.2d 1224 (D.C. Cir. 1988) ..............................................................11

*S. Ill. Power Coop. v. EPA*,
  863 F.3d 666 (7th Cir. 2017) ............................................................10, 11

*Texas v. EPA* (*2011 Texas*),
  No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) ..................8, 10, 12, 16

*Texas v. EPA* (*2016 Texas*),
  829 F.3d 405 (5th Cir. 2016)......................................................4, 9, 11, 13, 14, 15

*Texas v. EPA* (*2017 Texas*),
  706 F. App'x 159 (5th Cir. 2017) ...................................................................9, 10

*Texas v. EPA* (*2020 Texas*),
  983 F.3d 826 (5th Cir. 2020)........................................................................10, 13

*Westar Energy v. EPA*,
  608 F. App'x 1 (D.C. Cir. 2015) ...........................................................................5

*Wisconsin v. EPA*,
  938 F.3d 303 (D.C. Cir. 2019) ..............................................................................5

## **STATUTES**

42 U.S.C. §§ 7401-7671q ...........................................................................................1

42 U.S.C. § 7401(b)(1)................................................................................................2

42 U.S.C. § 7409(b)(1)................................................................................................3

42 U.S.C. § 7410(a)(1)............................................................................................3, 5

42 U.S.C. § 7410(a)(2)(D)(i)(I) .............................................................................1, 3

42 U.S.C. § 7410(c)(1)................................................................................................4

42 U.S.C. § 7410(k)(3)................................................................................................3

42 U.S.C. § 7607(b)(1)............................................... 2, 4, 7, 8, 9, 11, 12, 16

## **FEDERAL REGISTER**

41 Fed. Reg. 56767 (Dec. 30, 1976) ................................................16

76 Fed. Reg. 48208 (Aug. 8, 2011)..................................................5

80 Fed. Reg. 65292 (Oct. 26, 2015)................................................5

81 Fed. Reg. 74504 (Oct. 26, 2016)................................................6

86 Fed. Reg. 23054 (Apr. 30, 2021) ...............................................6

87 Fed. Reg. 9798 (Feb. 22, 2022).................................................7

88 Fed. Reg. 9336 (Feb. 13, 2023) ........................... 1, 3, 6, 7, 9, 10, 13, 14, 15, 16

**INTRODUCTION**

Because air pollutants heed no state boundaries, the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. §§ 7401-7671q, requires states to ensure that their emissions do not significantly contribute to the air quality problems of other states (the "Good Neighbor" or "Interstate Transport" Provision), *id.* § 7410(a)(2)(D)(i)(I). States submit plans addressing the Good Neighbor Provision to the U.S. Environmental Protection Agency for review, and those plans may be approved only if they comply with the provision's requirements. *Id.* § 7410(a)(1), (k)(3). For the latest ozone air quality standards, EPA evaluated each state's plan to address the Good Neighbor Provision, reasonably determined that 21 states' plans failed to comply with the said provision, and issued a final rule disapproving them. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336, 9338 (Feb. 13, 2023) ("Final Rule").

Various Petitioners petitioned for review of the Final Rule in this Court. Respondents U.S. Environmental Protection Agency and Michael S. Regan, Administrator of the U.S. Environmental Protection Agency (collectively, "EPA"), now move to transfer these petitions to the D.C. Circuit or, alternatively, dismiss the petitions for improper venue.

Because the Final Rule is a final action issued under the Act, it's circuit-selection provision, 42 U.S.C. § 7607(b)(1), determines the proper venue for petitions for review of the Final Rule.  Under § 7607(b)(1), petitions for review of actions that are "nationally applicable" or that EPA found and published are based on determinations of "nationwide scope or effect" may be filed only in the D.C. Circuit.

The Final Rule may be challenged only in the D.C. Circuit.  To address the nationwide problem of interstate pollution, EPA, in one action, applied a uniform national approach to evaluate each state's plan and ensure equity among states. The Final Rule is plainly "nationally applicable."  Alternatively, the Final Rule is based on an express determination of "nationwide scope or effect," and EPA made and published a finding that it is based on such a determination.  Accordingly, the petitions for review of the Final Rule were improperly filed in this Court and must be transferred to the D.C. Circuit or dismissed.[1]

## BACKGROUND

### A.     National Ambient Air Quality Standards

The Clean Air Act seeks to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare."  42 U.S.C.

---

[1] Based on discussions with Petitioners' counsel, EPA's counsel expects Petitioners will file an opposition to this motion.

§ 7401(b)(1).  To that end, the Act controls air pollution through a system of shared federal and state responsibility.  *See Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990).  The Act directs EPA to set National Ambient Air Quality Standards ("NAAQS") for widely occurring pollutants, including ozone. The NAAQS establish permissible concentrations of those pollutants in the ambient air.  42 U.S.C. § 7409(b)(1).  Within three years after the promulgation or revision of a NAAQS, each state must prepare a state implementation plan ("SIP") for EPA's review, "which provides for the implementation, maintenance, and enforcement" of the NAAQS within the state.  *Id.* § 7410(a)(1).

SIPs addressing new or revised NAAQS must, among other requirements, comply with the Good Neighbor Provision and prohibit emissions from within the state that "contribute significantly to nonattainment" or "interfere with maintenance" of the NAAQS in other states.  *Id.* § 7410(a)(2)(D)(i)(I).  The Good Neighbor Provision addresses the plain fact that air pollutants do not heed state boundaries.  Often—and especially in the case of ozone—pollutants generated by upwind sources cross multiple state boundaries, leaving downwind states to bear the brunt of addressing their states' unsafe air quality resulting from other states' emissions.  *EPA v. EME Homer City Gen., L.P.*, 572 U.S. 489, 496 (2014); Final Rule, 88 Fed. Reg. at 9339-40.

3

If a SIP submission does not comply with the Good Neighbor Provision, EPA may not approve it.  42 U.S.C. § 7410(k)(3).  Instead, it must disapprove the submission and promulgate a federal plan to fill the gaps in the SIP.  *Id.* § 7410(c)(1).

## B.     The Clean Air Act's Venue Provision

When a petitioner seeks review of an EPA final action taken pursuant to the CAA, such as a SIP disapproval, 42 U.S.C. § 7607(b)(1) makes venue exclusive in a single court of appeals.  To determine which circuit court, the Act classifies final actions into three categories.  First, a challenge to a "nationally applicable" EPA action "may be filed only in the" D.C. Circuit.  *Id.*  Second, a petition for review of an EPA final action "which is locally or regionally applicable may be filed only in the" court of appeals for the appropriate regional circuit.  *Id.*  Third, if, however, the locally or regionally applicable action "is based on a determination of nationwide scope or effect and if in taking such action the Administrator [of EPA] finds and publishes that such action is based on such a determination," then any petition for review "may be filed only in the" D.C. Circuit.  *Id.*; *see also Texas v. EPA* (*2016 Texas*), 829 F.3d 405, 418 (5th Cir. 2016).  Thus, Congress, which has plenary authority to determine venue in the inferior federal courts, determined in § 7607(b)(1) to assign venue to challenges to EPA actions taken under the CAA

based exclusively on the nature of EPA's "final action."  *See* 42 U.S.C.

§ 7607(b)(1).

### C.    EPA's Disapproval of SIPs Addressing the Good Neighbor Provision for the 2015 Ozone NAAQS

On October 1, 2015, EPA revised the ozone NAAQS, lowering the

permissible concentration of ozone in the ambient air.  National Ambient Air

Quality Standards for Ozone, 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 ozone

NAAQS").  This revision in turn required each state to submit a SIP within three

years to implement, attain, and enforce the 2015 ozone NAAQS.  *See* 42 U.S.C.

§ 7410(a)(1).  To evaluate whether the SIP submissions covered by the Final Rule

met states' obligations under the Good Neighbor Provision, EPA reviewed each

submission using a 4-step interstate transport framework.

EPA has used iterations of the same 4-step framework to evaluate

compliance with the Good Neighbor Provision for prior ozone NAAQS.[2]  *See,*

*e.g.,* Federal Implementation Plans: Interstate Transport of Fine Particulate Matter

and Ozone and Correction of SIP Approvals, 76 Fed. Reg. 48208 (Aug. 8, 2011)

---

[2] Additionally, the Supreme Court and D.C. Circuit have reviewed and upheld this framework as being consistent with the requirements of the Good Neighbor Provision. *EME Homer City Generation, L.P.,* 572 U.S. 489 (2014); *Midwest Ozone Group v. EPA*, No. 21-1146, __ F.4th __, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023); *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019); *New York v. EPA*, 781 F. App'x 4 (D.C. Cir. 2019); *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015); *Westar Energy, Inc. v. EPA*, 608 F. App'x 1, 3 (D.C. Cir. 2015); *see Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000).

(addressing the 1997 ozone and 2006 fine particulate matter NAAQS); Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74504 (Oct. 26, 2016) (addressing the 2008 ozone NAAQS); Revised CSAPR Update for the 2008 Ozone NAAQS, 86 Fed. Reg. 23054 (Apr. 30, 2021) (addressing the 2008 ozone NAAQS).  EPA applies this "nationally uniform" approach for evaluating each state's impact on downwind states' air quality because addressing interstate transport of ozone requires national consistency to avoid inequitable results among states.  Final Rule, 88 Fed. Reg. at 9337-38, 9339-40.

The 4-step transport framework proceeds as follows: (1) identify nonattainment and maintenance "receptors," which are air quality monitoring sites that are projected to have problems attaining or maintaining the NAAQS, respectively; (2) identify upwind states that impact air quality problems in downwind states sufficiently such that the states are considered "linked"; (3) identify any necessary emissions reductions to eliminate each upwind state's significant contribution to nonattainment or interference with maintenance of the NAAQS at the locations identified in Step 1; and (4) adopt permanent and enforceable measures needed to achieve those emissions reductions.  *Id.* at 9338.

To evaluate SIP submissions for the 2015 ozone NAAQS under this 4-step framework, EPA relied on "a common core of nationwide policy judgments and technical analysis concerning the interstate transport of pollutants throughout the

6

continental U.S." to identify nonattainment and maintenance receptors and quantify upwind states' contributions to ozone air quality problems downwind. *See id.* at 9380.  EPA also gave full consideration to any alternative approach states proposed in their submissions and evaluated them with an eye to ensuring national consistency.  *See id.* at 9338, 9381.  Upon evaluation, EPA proposed to disapprove SIP submissions from 23 states, including Texas, for failure to meet the Good Neighbor Provision, and ultimately finalized its disapproval for 21 states that span eight of the ten EPA Regions and ten federal judicial circuits.  *Id.* at 9337.  In the Final Rule, EPA stated that under § 7607(b)(1), any petition for judicial review must be filed in the D.C. Circuit because the rule is nationally applicable, or, in the event a court determined the Final Rule to be locally or regionally applicable, because EPA made and published a finding that the Final Rule is based on a determination of nationwide scope or effect.  *Id.* at 9380.[3]

On February 14, 2023, Petitioners petitioned for review of the Final Rule. *See* Tex. Pet., ECF Doc. No. 1-1; Tex. Utils. Pet., ECF Doc. No. 3-1; Tex. Indus.

---

[3] In proposing to disapprove Texas's and several other states' SIPs, EPA previewed that it anticipated its final action would be nationally applicable, or, to the extent the final action was regionally or locally applicable, would be based on a determination of nationwide scope or effect within the meaning of § 7607(b)(1). Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9798, 9835 & n.113 (Feb. 22, 2022).

Grp. Pet., ECF Doc. No. 5-1.[4]  Thus far, petitions for review of the Final Rule have also been filed in the Sixth, Eighth, and Tenth Circuits,[5] and EPA intends to file similar motions to transfer to the D.C. Circuit or dismiss those petitions, as well.

## ARGUMENT

The CAA's venue provision is unambiguous—when a petitioner seeks review of a final action that is "nationally applicable," or a final action that is locally or regionally applicable but for which EPA makes and publishes a finding that the action is based on a determination of "nationwide scope or effect," it must bring its challenge in the D.C. Circuit.  42 U.S.C. § 7607(b)(1).  Accordingly, this Court is not the proper forum for these petitions for review.  The Final Rule is "nationally applicable," and even if the Court concludes it is not, EPA made and published a finding that the Final Rule is "based on a determination of nationwide scope or effect."  *Id.*  Therefore, these petitions should be transferred[6] to the D.C.

---

[4] On March 9, 2023, the Public Utility Commission of Texas and the Railroad Commission of Texas petitioned for review of the Final Rule, which is part of the same docket.  Tex. PUC Pet., ECF Doc. No. 44-1.

[5] *See* Petition for Review, *Kentucky v. EPA*, No. 23-3216 (6th Cir. Mar. 13, 2023); Petition for Review, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023); Petition for Review, *Utah v. EPA*, No. 23-9509 (10th Cir. Feb. 13, 2023); Petition for Review, *Pacificorp v. EPA*, No. 23-9512 (10th Cir. Feb. 24, 2023); Petition for Review, *Oklahoma v. EPA*, No. 23-9514 (10th Cir. Mar. 2, 2023).

[6] If the Court concludes that the D.C. Circuit is the proper forum for the petitions for review, it may transfer them.  *See Texas v. EPA* (*2011 Texas*), No. 10-60961, 2011 WL 710598, at *1 (5th Cir. Feb. 24, 2011).

Circuit or dismissed[7] because this Court is not the proper forum.

### A.    The Final Rule is Nationally Applicable.

A petition for review that challenges a "nationally applicable" EPA final action under the CAA may be filed "*only* in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1) (emphasis added); *see also 2016 Texas*, 829 F.3d at 418. Whether an action is "nationally applicable" is a narrow inquiry based on "the face of the rulemaking, rather than [on] its practical effects." *Texas v. EPA* (*2017 Texas*), 706 F. App'x 159, 163 (5th Cir. 2017) (quoting *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015)). This inquiry "turns on the legal impact of the action as a whole." *2016 Texas*, 829 F.3d at 419 (citation omitted).

On its face, the Final Rule is nationally applicable. The Final Rule applies a "nationally consistent 4-step interstate transport framework" to evaluate plans submitted by states across the country, disapproving SIPs from 21 states throughout eight of the ten EPA Regions and ten federal judicial circuits. Final Rule, 88 Fed. Reg. at 9380; *see 2011 Texas*, 2011 WL 710598, at *3 (transferring

---

[7] While this Court has concluded that the circuit-selection provision in 42 U.S.C. § 7607(b)(1) is not jurisdictional, *2016 Texas*, 829 F.3d at 418, the Court still may dismiss the petitions for improper venue, *see, e.g.*, *Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 382 (D.C. Cir. 2022). Notably, Petitioners may cure any potential prejudice from dismissal by filing petitions for review in the proper venue before the sixty-day deadline of April 14, 2023. *See* Final Rule, 88 Fed. Reg. at 9381.

petition challenging an EPA action notifying 13 states that their SIPs were inadequate based on "the ordinary meaning of the statute's text"); *see also, e.g.*, *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1200 (10th Cir. 2011) (transferring challenge to an action designating portions of 18 states as failing to comply with a NAAQS because it employed a single uniform regulatory approach across many states nationwide); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (transferring challenge to an action "of broad geographic scope containing air quality attainment designations covering 61 geographic regions across 24 states," which was "promulgated pursuant to a common, nationwide analytical method"). As in these prior cases, the D.C. Circuit is the only appropriate venue to challenge the Final Rule.[8]

It makes no difference that Petitioners purport to challenge the effects of the Final Rule only as applied to Texas's SIP. Tex. Pet. at 2; Tex. Utils. Pet. at 1-2; Tex. Indus. Grp. Pet. at 1-2; Tex. PUC Pet. at 2. To reiterate, the question here is whether the action itself is nationally applicable, not whether the nature and scope

---

[8] The broad scope of this action (affecting 21 states nationwide) makes it easily distinguishable from other challenged actions that this Court has declined to transfer to the D.C. Circuit. *Cf. 2016 Texas*, 829 F.3d at 410 (addressing an action affecting only Texas and a narrow part of Oklahoma); *2017 Texas*, 706 F. App'x at 163-64 (addressing an action affecting three areas all within Texas); *Texas v. EPA* (*2020 Texas*), 983 F.3d 826, 833 (5th Cir. 2020) (addressing an action affecting only four counties in Texas).

of the arguments raised, or relief sought, by a petitioner are nationally applicable.

*See 2016 Texas*, 829 F.3d at 419 (explaining that the "question of applicability turns on the legal impact of the action *as a whole*" (emphasis added)); *see also S. Ill. Power Coop.*, 863 F.3d at 668 (holding that venue is proper in the D.C. Circuit for a challenge to a nationally applicable rule despite the localized nature of the petition for review). A contrary approach for what constitutes an action of "national applicability" would needlessly complicate the venue analysis and create difficult line-drawing problems. *See NRDC v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988) (rejecting the argument that the de facto scope of regulation is controlling for purposes of determining venue under § 7607(b)(1) and noting that, otherwise, the "choice of the correct forum might raise complex factual and line-drawing problems," which would be "a complication of the jurisdictional test [that] would waste time and serve little purpose"). Even if the nature of Petitioners' challenges were relevant to the question of forum (which it is not), the merits arguments that Petitioners could make in this case would be inextricably intertwined with arguments applicable to challenges to all other SIP disapprovals in the Final Rule because the disapprovals were based on a common EPA rationale and methodology. *See infra* n.10 (citing several examples from the Final Rule where EPA disapproved SIP submissions based on the same rationale).

At bottom, by filing the petitions for review in this Court, Petitioners invite multiple circuits to concurrently review the merits of the same legal interpretation, policy decisions, and analytical methodology that EPA applied in a consistent way, in a single agency action, to SIPs across the United States.  In doing so, courts may well reach inconsistent outcomes on matters of interstate pollution where the imperative for consistent treatment of states is particularly compelling.  *See infra* Argument B (explaining that the concurrent petitions for review of the Final Rule in other regional circuits raise a high risk of inconsistent outcomes).  This is precisely the result that Congress sought to avoid in enacting § 7607(b)(1).  *See 2011 Texas*, 2011 WL 710598, at *4 (concluding that "Congress intended the D.C. Circuit to review matters on which national uniformity is desirable" as a means to take advantage of the D.C. Circuit's "administrative law expertise" and facilitate "the orderly development of the basic law under the Act" and because "[c]entralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results" (citations and internal quotation marks omitted)).

In sum, the Final Rule is nationally applicable and challenges to the rule may be filed only in the D.C. Circuit.

### B. EPA Properly Made and Published a Finding that the Final Rule Is Based on a Determination of Nationwide Scope or Effect.

If this Court concludes that the Final Rule is locally or regionally applicable, the petitions for review nonetheless must be transferred or dismissed because the Final Rule is based on a determination of nationwide scope or effect and EPA made and published a finding that the Final Rule was based on such a determination. *See 2016 Texas*, 829 F.3d at 420; Final Rule, 88 Fed. Reg. at 9380-81.[9]

When this Court independently inquires into whether EPA's action is based on a determination of nationwide scope or effect, the Court "merely asks whether the scope or effect of the determination is nationwide"—i.e., whether "the justifications the agency gives for the action" are "based on" a determination of nationwide scope or effect. *2016 Texas*, 829 F.3d at 419. Here, EPA properly found that its justifications for the Final Rule are based on a determination of nationwide scope or effect. EPA explained that ozone transport presents a "collective collaboration" challenge in which many smaller contributors across a broad region combine to generate a downwind air quality problem. Final Rule, 88 Fed. Reg. at 9340, 9342. Given the "interdependent nature of interstate pollution

---

[9] Where an action is based on a determination of nationwide scope or effect, EPA has unreviewable discretion to decide whether to publish a finding to that effect. *2020 Texas*, 983 F.3d at 834-35.

transport," the justifications for EPA's disapproval of the SIP submissions were
based on a "common core of nationwide policy judgments and technical analysis
concerning the interstate transport of pollutants throughout the continental U.S,"
which involved applying "the same, nationally consistent 4-step interstate transport
framework for assessing obligations for the 2015 ozone NAAQS that it has applied
in other nationally applicable rulemakings." *Id.* at 9380; *see 2016 Texas*, 829 F.3d
at 421 n.24 (expressly recognizing that an action on many states' SIPs applying a
nationwide regulation would be one based on a determination of nationwide scope
or effect). When states, including Texas, argued for the use of alternative
approaches or datasets, EPA evaluated them "with an eye to ensuring national
consistency and avoiding inconsistent or inequitable results." Final Rule, 88 Fed.
Reg. at 9381. For example, EPA avoided inconsistent results with its consistent
assessment of multiple states' use of Texas's definition of maintenance receptor,
which EPA found to be inadequately justified and legally and technically flawed.

*Id.* at 9359.[10]  Thus, EPA's determination (i.e., the justifications it gave for

disapproving 21 SIP submissions) has nationwide scope or effect.

The Final Rule is therefore unlike EPA's SIP disapproval in *2016 Texas*.

There, this Court determined that "EPA based its disapproval of the Texas and

Oklahoma SIPs . . . on a number of intensely factual determinations [that] . . . all

related to the particularities of the emissions sources in Texas and the confluence

of factors impacting visibility at two locations in Texas and one in southwest

Oklahoma." *2016 Texas*, 829 F.3d at 421.  Conversely, in the Final Rule, EPA's

disapproval of the 21 deficient SIPs is based on a nationally consistent approach to

the CAA's mandate concerning interstate transport of ozone pollution and EPA's

evaluation of each SIP under this framework to ensure consistent and equitable

results among upwind states and between upwind and downwind states.  *See* Final

Rule, 88 Fed. Reg. at 9381.  Because EPA's action disapproving the 21 SIPs

---

[10] The Final Rule is replete with examples where EPA's bases for disapproving the SIP submissions had nationwide scope or effect. *See, e.g.*, Final Rule, 88 Fed. Reg. at 9372 (finding legally and technically inadequate the argument from Alabama, Arkansas, Kentucky, Michigan, Mississippi, Nevada, and Oklahoma that guidance for the Prevention of Significant Deterioration permitting program is applicable to the Good Neighbor Provision); *id*. at 9378 (finding legally inadequate the arguments related to international emissions and relative contribution from Arkansas, California, Illinois, Indiana, Kentucky, Michigan, Missouri, Ohio, Utah, and West Virginia); *id.* at 9354-60 (finding common analytic problems with the reliance on back trajectories to discount linkages by Alabama, Arkansas, California, Indiana, Kentucky, Louisiana, Texas, and West Virginia).

identified in the Final Rule is based on a determination of nationwide scope or effect under 42 U.S.C. § 7607(b)(1), the proper venue for Petitioners' challenge is the D.C. Circuit.

This outcome promotes the principles underlying § 7607(b)(1) and reflects Congress's goal of "centraliz[ing] review of national SIP issues in the D.C. Circuit" to ensure uniformity and avoid inconsistent results. *See 2011 Texas*, 2011 WL 710598, at *4, n.41 (quoting ADMIN. CONFERENCE OF THE U.S., RECOMMENDATIONS ON JUDICIAL REVIEW UNDER THE CLEAN AIR ACT, 41 Fed. Reg. 56767, 56769 (Dec. 30, 1976) (Comment No. 1 of G. William Frick)). As detailed above, national uniformity is especially important here because of the interdependent nature of interstate pollution transport, the national interpretation of the Good Neighbor Provision, the common core of nationwide policy judgments and technical analyses that EPA applied in evaluating the submitted SIPs, and the high risk of inequitable results among upwind states and between upwind and downwind states should litigation proceed in multiple regional circuits. Final Rule, 88 Fed. Reg. at 9380-81.

Indeed, the concurrent petitions for review of the Final Rule in the Sixth, Eighth, and Tenth Circuits illustrate the imminent risk of inconsistent results if

these cases are not all transferred to the D.C. Circuit or dismissed.[11]  In the Final

Rule, EPA disapproved SIPs based on a determination that has nationwide scope or

effect.  *See, e.g.*, *supra* n.10.  Consequently, these petitions require multiple circuit

courts to evaluate the same question—whether EPA acted unlawfully in resolving

similar or even identical arguments raised by multiple states about how to address

the problem of interstate pollution transport.  Indeed, Petitioners and the State of

Utah broadly make the same arguments in their respective motions to stay the Final

Rule pending review in their regional circuit courts.  *Compare* Tex. Indus. Stay

Mot., ECF Doc. No. 32-1, at 13-16 (arguing that EPA exceeded its authority by

rejecting Texas's methodology and arbitrarily and capriciously rejected Texas's

"weight-of-evidence" approach for determining whether Texas was linked to

downwind states); *with* Utah Stay Mot., No. 23-9509 (10th Cir.), ECF Doc. No.

010110823083, at 12-21 (arguing that EPA exceeded its authority by rejecting

Utah's methodology and that EPA arbitrarily and capriciously rejected Utah's

"weight-of-evidence" approach for determining whether Utah was linked to

downwind states).  This high risk of inconsistent results on matters that pertain to

interstate pollution implicating SIPs from 21 states and downwind pollution

---

[11] *See supra* n.5.  As noted above, EPA plans to move to transfer or dismiss these
petitions as well.

impacts that span coast to coast confirms that EPA's Final Rule is based on a determination of nationwide scope or effect.

In sum, the Final Rule may be reviewed only by the D.C. Circuit because the Final Rule is based on a determination of nationwide scope or effect and EPA made and published a finding that the Final Rule was based on such a determination.

## CONCLUSION

For the foregoing reasons, the petitions for review of the Final Rule should

be transferred to the D.C. Circuit or dismissed for improper venue.

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:

ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

*/s/ Jin Hyung Lee*_____
JIN HYUNG LEE
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2640
jin.hyung.lee@usdoj.gov

March 15, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 4,157 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.

Dated: March 15, 2023                    */s/ Jin Hyung Lee*
                                          JIN HYUNG LEE

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's Opposed Motion to Transfer the Petition for Review to the D.C. Circuit or Dismiss Based on Improper Venue on all registered counsel through the Court's electronic filing system (CM/ECF).

Dated: March 15, 2023

*/s/ Jin Hyung Lee*
JIN HYUNG LEE