NO. 23-60069

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO
CREEK POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS
ENERGY, LLC; MIDLOTHIAN ENERGY, LLC; OAK GROVE
MANAGEMENT COMPANY LLC; WISE COUNTY POWER
COMPANY, LLC; ASSOCIATION OF ELECTRIC COMPANIES OF
TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION
OF TEXAS; AND RAILROAD COMMISSION OF TEXAS; STATE OF
MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY; STATE OF
LOUISIANA; AND LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents.*

---

**MOTION FOR LEAVE TO INTERVENE
BY SIERRA CLUB, AIR ALLIANCE HOUSTON, AND
DOWNWINDERS AT RISK**

---

_/s/ Joshua D. Smith_
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

_Counsel for Sierra Club_

_/s/ Kathleen L. Riley_
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G. St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

_Counsel for Sierra Club, Air Alliance Houston, and Downwinders at Risk_

Filed: March 27, 2023

NO. 23-60069

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO
CREEK POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS
ENERGY, LLC; MIDLOTHIAN ENERGY, LLC; OAK GROVE
MANAGEMENT COMPANY LLC; WISE COUNTY POWER
COMPANY, LLC; ASSOCIATION OF ELECTRIC COMPANIES OF
TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION
OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF
MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY; STATE OF
LOUISIANA; AND LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents*.

---

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following

listed persons and entities as described in the fourth sentence of Fifth

i

Circuit Local Rule 28.2.1 have an interest in the outcome of this case.

These representations are made in order that the judges of this court

may evaluate possible disqualification or recusal.

1.   <u>Petitioners</u>: State of Texas; Texas Commission on
     Environmental Quality; Luminant Generation Company
     LLC; Coleto Creek Power, LLC; Ennis Power Company,
     LLC; Hays Energy, LLC; Midlothian Energy, LLC; Oak
     Grove Management Company LLC; Wise County Power
     Company, LLC; Association of Electric Companies of Texas;
     BCCA Appeal Group; Texas Chemical Council; Texas Oil &
     Gas Association; Mississippi Power Company; State of
     Mississippi and Mississippi Department of Environmental
     Quality; Southern Company; State of Louisiana and
     Louisiana Department of Environmental Quality; Vistra
     Asset Company LLC; Vistra Corp.; Vistra Intermediate
     Company LLC, Vistra Operations Company LLC (Parent
     company of Petitioners Luminant Generation Company LLC,
     Coleto Creek Power, LLC, Ennis Power Company, LLC,
     Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove
     Management Company LLC, and Wise County Power
     Company, LLC).

2.   <u>Counsel for Petitioners State of Texas and Texas
     Commission on Environmental Quality</u>: Ken Paxton,
     Attorney General of Texas; Michael R. Abrams, Assistant
     Solicitor General; Williams F. Cole, Assistant Solicitor
     General; Bill Davis, Deputy Solicitor General; Joseph N.
     Mazzara, Assistant Solicitor General; Judd Stone, Solicitor
     General; Brent Webster, First Assistant Attorney General,
     all with the Office of the Attorney General for the State of
     Texas.

3.   <u>Counsel for Petitioners Luminant Generation Company LLC
     and Luminant Mining Company LLC</u>: P. Stephen Gidiere
     III; Julia B. Barber; C. Grady Moore III, Susan Scaggs

Stutts, and Shawn S. Shurden with Balch & Bingham, LLP; Stephanie Z. Moore, Daniel J. Kelly, and David W. Mitchell.

4.  <u>Counsel for Petitioners Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Council, Texas Oil & Gas Association</u>: Baker Botts L.L.P; Matthew L. Kuryla; Aaron M. Streett.

5.  <u>Counsel for Petitioner State of Mississippi and Department of Environmental Quality</u>: Lynn Fitch, Attorney General; Justin Matheny, Deputy Solicitor; Whitney H. Lipscomb, Deputy Attorney General all with the State of Mississippi Office of the Attorney General.

6.  <u>Counsel for Petitioner State of Louisiana and Louisiana Department of Environmental Quality</u>: Jeff Landry, Attorney General; Joseph S. St. John, Deputy Solicitor General; Elizabeth B. Murrill, Solicitor General; Machelle Hall, Assistant Attorney General with the Louisiana Department of Justice; Courtney J. Burdette and Jill C. Clark with the Louisiana Department of Environmental Quality.

7.  <u>Respondents</u>: United States Environmental Protection Agency; Michael S. Regan, Administrator, U.S. Environmental Protection Agency; David Gray, Acting Regional Administrator, Region 6, U.S. Environmental Protection Agency; Daniel Blackman, Regional Administrator, Region 4, U.S. Environmental Protection Agency; Earthea Nance, Regional Administrator.

8.  <u>Counsel for Respondents United States Environmental Protection Agency and Michael S. Regan</u>: Merrick Garland, Attorney General of the U.S. Department of Justice; Jin Hyung Lee with the U.S. Department of Justice Environment & Natural Resources Division; Todd Kim, Assistant Attorney General; Jeffrey M. Prieto.

9.  <u>Proposed-Intervenors</u>: Sierra Club is a non-profit organization that maintains open membership invitation to

organizations, businesses, individuals, and the public in general. Accordingly, Sierra Club consists of many individual members.

Air Alliance Houston is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters in Houston, Texas. Air Alliance Houston works to reduce air pollution in the Houston region to protect public health and environmental integrity through research, education, and advocacy.

Downwinders at Risk is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters located in Dallas, Texas. Downwinders at Risk is a diverse grassroots citizens group dedicated to protecting public health and the environment

Neither Sierra Club, Air Alliance Houston, nor Downwinders at Risk have any parent companies; and no publicly-held company owns a 10% or greater interest in Sierra Club, Air Alliance Houston, or Downwinders at Risk.

10.  <u>Counsel for Proposed-Intervenors</u>: Joshua Smith and Zachary Fabish with Sierra Club; Kathleen L. Riley and Seth L. Johnson, with Earthjustice.

Respectfully submitted,

*/s/ Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
415.977.5560 (phone)
joshua.smith@sierraclub.og

## MOTION FOR LEAVE TO INTERVENE
## BY SIERRA CLUB, AIR ALLIANCE HOUSTON, AND
## DOWNWINDERS AT RISK

Under Federal Rules of Appellate Procedure 15(d) and 27, and

Fifth Circuit Local Rule 15.5, Sierra Club, Air Alliance Houston, and

Downwinders at Risk (collectively, the "Proposed-Intervenors") move to

intervene in support of Respondents U.S. Environmental Protection

Agency and Administrator Michael S. Regan (collectively "EPA") in the

above-captioned proceeding. EPA, the Texas State Petitioners,[1] the

Mississippi State Petitioners,[2] the Louisiana State Intervenors,[3] the

Texas Industry Petitioners, [4] and Mississippi Power Company

represented that they cannot consent without reviewing the motion,

and reserve their right to respond.

---

[1] The "Texas State Petitioners" are the State of Texas, the Texas Commission on Environmental Quality, the Public Utility Commission of Texas, and the Railroad Commission of Texas.
[2] The "Mississippi State Petitioners" are the State of Mississippi and the Mississippi Department of Environmental Quality.
[3] The "Louisiana State Petitioners" are the State of Louisiana and the Louisiana Department of Environmental Quality.
[4] The "Texas Industry Petitioners" are Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, Wise County Power Company, LLC, Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Counsel, and Texas Oil & Gas Association.

# INTRODUCTION

Proposed-Intervenors move to intervene in challenges to a single EPA Clean Air Act rule that applies to 21 states, spanning seven different EPA regions and nine federal circuits. Consistent with Supreme Court precedent, the national rule applies a uniform framework of policy judgments and technical methods to address the problem of interstate ozone pollution, and disapproves or partially disapproves 21 state Clean Air Act plan submissions that failed to adequately reduce their respective contributions to harmful downwind ozone pollution. 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("Disapproval Rule"). As a result of that national rule, each of the 21 states (or EPA, if the states fail to act) must develop and implement lawful plans to reduce their contributions to harmful interstate ozone pollution.

Despite the Clean Air Act's mandate to "centralize review of 'national'" state implementation plan issues in the D.C. Circuit Court of Appeals,[5] Petitioners challenged the rule in this Court seeking to vacate

---

[5] *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (transferring challenges to a multistate state implementation plan rule to the D.C. Circuit under 42 U.S.C. 7607(b)).

or stay implementation of EPA's rule, either as to Texas or nationally.[6] The States of Arkansas, Kentucky, Oklahoma, and Utah and other industry petitioners separately filed challenges to the same Disapproval Rule in the Eighth, Sixth, and Tenth Circuits; and Utah and industrial petitioners also filed motions to stay the rule.[7]

The Proposed-Intervenors have substantial interests that may be impaired by the disposition of this case. First, Proposed-Intervenors' members live, work, and recreate in areas across the country where EPA has determined that air quality is unhealthy to breathe. EPA's Disapproval Rule disapproved 21 different states' do-nothing plans and will thus lead to either revised state plans or a federal plan to reduce emissions from those 21 states that contribute to harmful levels of interstate ozone pollution, thereby benefiting Proposed-Intervenors' members who live in areas of the country that fail to meet or maintain

---

[6] *See* Texas Pet'rs' Mot. to Stay Final Action at 20; Texas Industry Pet'rs' Mot. to Stay Final Action at 21.

[7] On March 16, 2023, the Tenth Circuit issued an order abating all judicial proceedings in the consolidated cases, including the Utah and industry petitioners' stay motions, pending resolution of EPA's Motion to Transfer that case to the D.C. Circuit. Order, *Utah v. EPA*, No. 23-9509 (10th Cir. Mar. 16, 2023) (consolidated with Case Nos. 23-9512, 23-9514, 23-9520, 23-9521).

the national ozone standard. Any court order setting aside or delaying the implementation of the Disapproval Rule would prolong Proposed-Intervenors' members' exposure to levels of ozone pollution that endangers their health and welfare.

Second, Proposed-Intervenors have protectable interests in upholding EPA's Disapproval Rule. As explained more fully below, EPA issued the challenged Disapproval Rule only after environmental groups, including Proposed-Intervenors, filed a lawsuit to compel the agency to fulfill its then-overdue and mandatory obligation under the Clean Air Act to take final action on state ozone plan submissions. *See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021). An order vacating or delaying EPA's national rule would impair Proposed-Intervenors' members right to ensure that the 21 states subject to EPA's Disapproval Rule (or, if the states fail to issue a lawful plan, EPA) fully implement the Clean Air Act. *See generally* 42 U.S.C. §§ 7604, 7410(c)(1), (k).

Finally, Proposed-Intervenors have an interest in ensuring the uniform interpretation and application of the Clean Air Act's mandate to address interstate pollution. By filing for review in this Court and

seeking to stay the Disapproval Rule, either as to Texas or nationally, Petitioners ignored the Clean Air Act's judicial review provision mandating that nationally applicable actions, as well as locally applicable actions for which EPA has issued a determination of nationwide scope and effect, "may be filed only" in the D.C. Circuit. 42 U.S.C. § 7607(b)(1); *see also Texas v. EPA*, 2011 WL 710598, at *3 (holding the Clean Air Act "evinces a clear congressional intent to centralize review of … matters on which national uniformity is desirable," and transferring Texas's challenge to a SIP rule for thirteen states to the D.C. Circuit) (citation and quotation marks omitted); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (concluding (that an EPA action designating air quality nonattainment "areas across 24 states—from New York to Hawaii—and promulgated pursuant to a common, nationwide analytical method," was nationally applicable and transferring to the D.C. Circuit); *ATK Launch Systems, Inc. v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011) (transferring petitions for review of EPA designations to the D.C. Circuit even though the petitions challenged the designations of only two counties).

5

The Disapproval Rule is, on its face, nationally applicable; alternatively, EPA reasonably found and published its finding that the rule is "based on a determination of nationwide scope or effect." 88 Fed. Reg. at 9,381. Venue in this Court is therefore improper, and any ruling staying or vacating the Disapproval Rule would upend Proposed-Intervenors' and the public's interest in "centralizing judicial review of national rules in the D.C. Circuit." *S. Ill. Power Coop.*, 863 F.3d at 673. Because Proposed-Intervenors filed timely and no other party adequately represents their interests, the Court should grant the motion for intervention.

## BACKGROUND

## I.     OZONE POLLUTION HARMS HUMAN HEALTH AND THE ENVIRONMENT.

Ground-level ozone forms when volatile organic compounds and nitrogen oxides react together in sunlight. 83 Fed. Reg. 25,776, 25,777 (June 4, 2018). These ozone precursor pollutants are emitted by many different types of sources, including fossil fuel-burning power plants, refineries, industrial facilities, and motor vehicles. *Id.*

Ozone is dangerous to human health and the environment. Exposure to ground-level ozone pollution, even for short periods of time,

can have significant human health impacts, including asthma attacks and cardiovascular and respiratory failure, leading to increased hospitalizations and premature death.[8] Children, the elderly, and adults with asthma are particularly at risk.[9]

## II.    THE CLEAN AIR ACT REQUIRES STATES AND EPA TO ADDRESS INTERSTATE POLLUTION.

To address the significant health threats caused by ozone pollution, the Clean Air Act requires EPA to establish and periodically revise National Ambient Air Quality Standards to protect public health and welfare from ozone's harmful effects. 42 U.S.C. § 7409(b), (d)(1). Pursuant to that mandate, in 2015, EPA issued a revised standard for ozone that is more protective of human health than the previous standard, and promises significant public health benefits. 80 Fed. Reg. 65,292 (Oct. 26, 2015).

EPA's issuance of the revised ozone standard triggered a series of statutory deadlines for states and EPA. Relevant here, within three years of any revision of the standards, each state must submit for EPA

---

[8] 80 Fed. Reg. 65,292, 65,308 (Oct. 26, 2015); EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, at 2-20 to -24, tbl.2-1 (Feb. 2013), EPA Docket No. EPA-HQ-OAR-2008-0699-0405.
[9] *See* 80 Fed. Reg. at 65,310.

7

review a state implementation plan ("SIP") "which provides for the implementation, maintenance, and enforcement" of the NAAQS. 42 U.S.C. § 7410(a)(1).

Among other requirements, each SIP must ensure that pollution from the state does not cause or contribute significantly to nonattainment, or interfere with the maintenance of the NAAQS, in any other state. 42 U.S.C. § 7410(a)(2)(D)(i)(I). That requirement, commonly referred to as the Clean Air Act's "Good Neighbor" provision, is intended to address the fact that air pollution does not respect state boundaries, and that pollution from upwind states often causes or exacerbates dangerous air quality in downwind states. *EPA v. EME Homer City Gen., L.P.*, 572 U.S. 489, 496 (2014).

EPA must then review and either approve or disapprove each state's complete plan "[w]ithin 12 months," based on whether the plans satisfy the Act's requirements. 42 U.S.C. § 7410(k)(2), (3); *see also* 42 U.S.C. § 7410(a)(2)(D)(i)(I). If EPA disapproves a state's plan EPA must issue a federal plan "any time within 2 years," unless the state corrects its plan and the Administrator approves the corrected plan. 42 U.S.C. § 7410(c)(1)(B), (k)(1)(B)-(C).

### III.    EPA FAILED TO TIMELY AND ADEQUATELY ADDRESS CROSS-STATE POLLUTION UNDER THE 2015 OZONE STANDARD.

Despite the Clean Air Act's deadlines, EPA failed to timely review and approve or disapprove 32 state ozone plans. To compel the agency to fulfill its statutory duty, Proposed-Intervenors and other organizations filed a citizen suit to compel the agency to act. *Downwinders at Risk, et al. v. Regan*, 4:21-cv-03551-DMR. As a result of a consent decree resolving that case, EPA was required to take final action approving or disapproving 20 of those state plans by January 31, 2023.[10] *See* Consent Decree and Notice of Stipulated Extension of Consent Decree Deadline, *Downwinders at Risk, et al. v. Regan*, 4:21-cv-03551-DMR (N.D. Cal. Jan. 12, 2022 and Dec. 8, 2022).

On February 13, 2023, EPA published the national Disapproval Rule at issue, disapproving 21 states' plan submissions, including plans submitted by Texas, Mississippi, and Louisiana. 88 Fed. Reg. 9,336 (Feb. 13, 2023). As EPA explained in the final rule, in evaluating

---

[10] EPA must take final action on submissions from Arizona, Tennessee, and Wyoming by December 15, 2023. Stipulated Extension, No. 4:21-03551-DMR (N.D. Cal. Jan. 30, 2023). EPA took action on the nine other states originally at issue.

whether each state plan adequately addressed its downwind pollution impacts, EPA applied the same four-step analytical framework that the agency used to evaluate compliance with the Good Neighbor provision under prior ozone standards. The Supreme Court has upheld that approach, reasoning that a nationally uniform analytical and technical framework is necessary to an "efficient and equitable" solution to the problem of interstate pollution. *EME Homer City Generation, L.P.*, 572 U.S. at 519.

Applying that four-step framework to every state in the country, EPA determined that the 21 states subject to the Disapproval Rule failed to properly address their pollution impacts to other states. Specifically, each of the 21 states subject to the Disapproval Rule failed to include any "permanent and enforceable emissions controls" in their submissions, as required under the Clean Air Act. *See, e.g.*, 88 Fed. Reg. at 9,358-60. Several states, including Texas, submitted flawed air quality modeling that departed from EPA's national guidance and failed to identify ozone contributions to other states, and improperly redefined regulatory and technical terms to avoid pollution reduction measures. As a result of EPA's disapproval action, EPA must promulgate federal

plans to reduce these states' cross-state pollution, unless the agency approves a revised state plan submission first. *See* 42 U.S.C. § 7410(c)(1)(a).

## IV.  MULTIPLE CHALLENGES TO THE SAME DISAPPROVAL RULE ARE PENDING IN MULTIPLE COURTS.

On February 13, 2023, Utah filed a petition for judicial review of EPA's Disapproval Rule in the Tenth Circuit. *State of Utah v. EPA*, No. 23-9509 (10th Cir. Feb. 13, 2023). Utah industry petitioners filed subsequent petitions on February 24, and March 15. *PacifiCorp, et al. v EPA*, No. 23-9512 (10th Cir. Feb. 24, 2023); *Utah Associated Municipal Power Systems v. EPA*, No. 23-9520 (10th Cir. Mar. 15, 2023).

On February 14, Texas and Texas Industry Petitioners filed petitions for judicial review of EPA's Disapproval Rule in this Court. Case No. 23-60069.

The next day, on February 15, Arkansas filed a petition for review in the Eighth Circuit. *State of Arkansas, et al. v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023). On March 20, East Texas Electric Company has moved to intervene in the Eighth Circuit challenge.

11

On March 2, Oklahoma filed another petition in the Tenth Circuit. *State of Oklahoma, et al. v. EPA*, No. 23-9514 (10th Cir. Mar. 2, 2023). And on March 16, Oklahoma Gas and Electric filed a separate petition for review, *Oklahoma Gas & Electric v. EPA*, No. 23-9521 (10th Cir. Mar. 16, 2023).

On March 13, Kentucky filed a petition for review in the Sixth Circuit. *Kentucky v. EPA*, No. 23-216 (6th Cir. Mar. 13, 2023). On March 17, the Kentucky Energy and Environment Cabinet filed a separate petition for review. *Kentucky Energy and Environment Cabinet v. EPA*, No. 23-3225 (6th Cir. Mar. 17, 2023).

On March 16, Mississippi also filed a petition for review in this Court. Case No. 23-60069. On March 17, Mississippi Power Company filed a separate petition. *Id.* Louisiana then filed for review on March 20, 2023. *Id.*

Thus, despite the Clean Air Act's directive to centralize judicial review of national rules in the D.C. Circuit, the same Disapproval Rule that addresses 21 states throughout the country is now pending judicial review in four different circuits. The deadline for filing petitions for review of the Disapproval Rule is April 14, 2023.

12

Meanwhile, on March 3, 2023, the Texas State and Texas Industry Petitioners each moved to stay the Disapproval Rule pending judicial review. The Texas Industry Petitioners seek an order "stay[ing] EPA's disapproval and prohibit EPA from taking any action in reliance on that disapproval pending conclusion of these proceedings." Texas Industry Pet'rs' Mot. to Stay at 21. Additionally, on March 7 and March 15, Utah and Utah industry petitioners moved to stay the rule in the Tenth Circuit.[11]

## ARGUMENT

A motion for leave to intervene need only "contain a concise statement of the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d). Although Rule 15 does not specify a standard for intervention, the Fifth Circuit considers two factors in determining whether a party may intervene: (1) "the statutory design of the act"; and (2) "the policies underlying intervention pursuant to [Federal Rule of Civil Procedure 24]." *Texas v. U.S. Dep't of Energy* ("*Texas v. DOE*"), 754 F.2d 550, 551 (5th Cir. 1985) (citation omitted).

---

[11] As noted, the Tenth Circuit abated proceedings, pending resolution of EPA's motion to transfer to the D.C. Circuit. Order, *Utah v. EPA*, No. 23-9509 (10th Cir. Mar. 16, 2023).

Here, both factors weigh in favor of intervention. First, the Clean
Air Act specifically provides for citizen group participation in the
implementation and maintenance of the NAAQS. Second, the policies
underlying Federal Rule of Civil Procedure 24 support Proposed-
Intervenors' intervention. Moreover, granting intervention is consistent
with this Court's rulings in similar cases where citizen groups
intervened to defend EPA rules against state and industry challenges.[12]
The Court should do the same here.

## I.    PROPOSED-INTERVENORS HAVE CONCRETE INTERESTS IN PROTECTING THEIR STATUTORY RIGHTS UNDER THE CLEAN AIR ACT.

Citizens have a defined statutory role in implementing the Clean
Air Act, which supports Proposed-Intervenors' intervention. *Natural
Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 699-700 (D.C. Cir. 1974).
This includes the right to compel agency action unlawfully withheld, 42

---

[12] *See* Order, *Texas v. EPA*, No. 18-60606 (5th Cir. Oct. 15, 2018) (ozone
nonattainment designations); *See, e.g., Texas v. EPA*, No. 17-60088 (5th
Cir. Mar. 23, 2017) ($SO_2$ nonattainment designations); Order, *Texas v.
EPA*, No. 16-60118 (5th Cir. Mar. 28, 2016) (EPA's regional haze plan);
Order, *Southwestern Electric Power Co. v. EPA*, No. 15-60821 (5th Cir.
Dec. 30, 2015) (Clean Water Act rule); *see also Texas v. EPA*, 690 F.3d
670 (5th Cir. 2012); *Galveston-Houston Ass'n for Smog Prevention v.
EPA*, 289 F. App'x 745 (5th Cir. 2008); *BCCA Appeal Group v. EPA*, 355
F.3d 817 (5th Cir. 2003).

14

U.S.C. § 7604(a)(2); the right to participate in subsequent rulemaking,

*id.* § 7607(d)(5), 5 U.S.C. § 553(c); and judicial challenges to any final

action, *id.* § 7607(b)(1); Fed. R. App. P. 15(d).

Because of the significant public health and environmental

impacts of ozone pollution, Proposed-Intervenors have worked for years

in the Clean Air Act rulemaking processes and judicial proceedings

leading up to the Disapproval Rule, including:

- *The Original Cross-State Air Pollution Rule. See* Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (and consolidated cases) (D.C. Cir. Oct. 12, 2011).

- *The Cross-State Air Pollution Rule Update. See* Order, *Wisconsin v. EPA*, No 16-1406 (and consolidated cases) (D.C. Cir. Jan. 31, 2017); *see also Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019).

- *The Cross-State Air Pollution Rule Close-Out.* Brief of Citizen Petitioners, *New York v. EPA*, No. 19-1019 (and consolidated cases) (D.C. Cir. Apr. 19, 2019); *see also New York v. EPA*, 781 F. App'x 4, 7 (D.C. Cir. 2019).

- *The Revised Cross-State Air Pollution Rule Update. See* Complaint, *Downwinders at Risk, et al.*, No. 20-cv-00349 (D.D.C. Feb. 7, 2020); *New Jersey*, 475 F. Supp. 3d at 308; *see also Midwest Ozone Group v. EPA*, No. 21-1146, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023).

- *The Disapproval Rule. See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021).

In fact, EPA issued the Disapproval Rule in response to Proposed-Intervenors lawsuit to compel the agency to fulfill its Clean Air Act obligations to ensure that the states adequately address their harmful downwind air pollution. *See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021); *see also* Complaint, *State of New York, et al. v. Regan*, 1:21-ccv-00252-ALC (S.D.N.Y. Jan. 12, 2021). As "participant[s]" in the legal proceedings that led to the Disapproval Rule, Proposed-Intervenors have been "intimately involved with the issues before the reviewing court," *Texas v. DOE*, 754 F.2d at 552, and should therefore be allowed to intervene in support of EPA's final rule.

## II.    FEDERAL RULE OF CIVIL PROCEDURE 24 FAVORS INTERVENTION.

Proposed-Intervenors satisfy each of the liberally-construed requirements for intervention. *See Entergy Gulf States Louisiana, L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016).

### A.    The Motion is Timely.

Proposed-Intervenors' Motion is filed "promptly" after the Petitioners filed successive petitions for review on February 14, March 16, and March 17, 2023; and more than "14 days prior to the due date of

the brief of the party supported by the intervenor." Fifth Circuit Rule

15.5. The Court has not yet established a briefing schedule, and

therefore Proposed-Intervenors' participation will not delay the

proceedings or prejudice any party.

### B. Proposed-Intervenors Have Protectable Interests in Upholding EPA's National Disapproval Rule.

Proposed-Intervenors have "direct, substantial, and legally

protectable" interests in upholding EPA's Disapproval Rule. *Texas v.*

*DOE*, 754 F.2d at 552.

First, Proposed-Intervenors and their members have protectable

interests in ensuring states or EPA implement required Clean Air Act

plans reducing ozone pollution that impairs their use and enjoyment of

their own property, nearby recreation opportunities, and their

communities. *See Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 317-19

(D.C. Cir. 2011) (organization whose members lived in nonattainment

areas and asserted that pollution levels adversely affected their health

and forced them to reduce time spent outside demonstrate protectible

interest). As reflected in the attached declarations, Proposed-

Intervenors' members live, work, recreate, and breathe in areas of the

country with unhealthy levels of smog, which EPA has determined is

caused, in part, by sources in Texas, Mississippi, and Louisiana. *See* 88
Fed. Reg. 9,356-60; 42 U.S.C. § 7409(b)(1) (EPA's ozone standard must
be set at levels "requisite to protect the public health.").[13] For example,
Downwinders at Risk and Sierra Club member Misti O'Quinn and her
young children, who live near Dallas, Texas, in an area that fails to
meet the ozone standard, suffer from severe asthma and other
respiratory illness. She avoids taking her family outdoors on high ozone
days.[14] Likewise, Proposed-Intervenors members and their families—
who reside or work in Illinois, Missouri, New Mexico, Texas, Wisconsin,
and other states that have poor air quality exacerbated by Texas,
Mississippi, and Louisiana pollution—are forced to stay indoors on poor

---

[13] *See* EPA-HQ-OAR-2021-0663-083 at 243, 256, 366-67 (Texas
contributes to nonattainment in Illinois, Wisconsin, and New Mexico;
Louisiana contributes to nonattainment in Dallas and Houston; and
Mississippi contributes to nonattainment in Houston); EPA-HQ-OAR-
202-0663-0070 (state-by-state impacts to nonattainment and
maintenance receptors); *see also* O'Quinn Dec. ¶¶ 4-8 (lives and works
in Dallas-Fort Worth); Mannchen Decl. ¶¶ 2-4 (lives in Houston);
Hadayia ¶¶ 2-6 (same); Owens Decl. ¶¶ 2-5 (lives in Wisconsin; works
and visits Illinois); Lewis Decl. ¶¶ 2-5 (same); Reyes Decl. ¶¶ 3-10 (lives
in New Mexico nonattainment area).
[14] O'Quinn Decl. ¶¶ 12-15.

air quality days, or avoid engaging in outdoor activities like gardening, going to the farmer's market, hiking, biking, and sightseeing.[15]

EPA's Disapproval Rule ultimately will require states (or, if the states fail to correct their plans, EPA) to develop and implement lawful plans addressing interstate ozone from 21 states, including Texas, Louisiana and Mississippi, which causes or contributes to unhealthy ozone levels and harms Proposed-Intervenors' members. Thus, EPA's national Disapproval Rule will benefit Proposed-Intervenors' members. Conversely, Petitioners' challenges seek to vacate the Disapproval Rule, effectively allowing each state to continue to do nothing to eliminate their contribution to interstate pollution, and would therefore harm Proposed-Intervenors' members. *See Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) ("breathing and smelling polluted air" suffices to demonstrate injury in fact); *see also Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 317-18 (D.C. Cir. 2015) (finding a protectable interest

---

[15] *See, e.g*, Owen Decl. ¶¶ 11-13; Wiley Decl. ¶¶ 8-10; O'Quinn Decl. 5-6, 10-11; Mannchen ¶¶ 5-7; Lewis Decl. ¶¶ 7-8; Hadayia ¶ 2; Wiley Decl. ¶¶ 5-10; Reyes Decl. ¶¶ 9-12.

supporting intervention where a party would benefit from agency action).[16]

Second, as organizations dedicated to protecting public health and the environment, Proposed-Intervenors have an interest in ensuring that the Clean Air Act is properly implemented.[17] "[C]oncern for enforcing the statutory scheme" can provide grounds for intervention. *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992). Moreover, Proposed-Intervenors have a protectable interest in the "even and consistent" interpretation and implementation of the Clean Air Act's

---

[16] A proposed intervenor need not show Article III standing where, as here, they do not seek relief that is different than that which is sought by a party with standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). If a movant has Article III standing, however, the party is "deemed to have a sufficiently substantial interest to intervene" under the Rule 24 interest test. *Meek v. Metro. Dade County*, 985 F.2d 1471, 1480 (11th Cir. 1993).

Here, the attached declarations establish Proposed-Intervenors' standing. Proposed-Intervenors' members suffer injury to their health, recreational, and aesthetic interests, caused by excess ozone pollution, which would be redressed, in part, by the Disapproval Rule and statutorily-mandated pollution reductions that would be required of the 21 states subject to the rule. Proposed-Intervenors' interests are germane to their organizations' purposes. Fashho Decl. ¶¶ 5, 6-9.

[17] *See* Levenshus Decl. ¶ 2; Hadayia ¶¶ 2-4.

20

procedural and substantive requirements. *Halogenated Solvents Indus. Alliance v. Thomas*, 783 F.2d 1262, 1265 (5th Cir. 1986).

Finally, Proposed-Intervenors have a substantial interest in defending and implementation of the consent decree Proposed-Intervenors successfully litigated to obtain, which requires EPA to take final action on the interstate ozone transport plans submitted by Texas, Mississippi, and Louisiana. Consent Decree, *Downwinders at Risk, et al. v. Regan*, 4:21-cv-03551-DMR (Jan. 12, 2022). In sum, Proposed-Intervenors have an "interest" in this litigation within the meaning of Rule 15(d).

### C.    The Disposition of the Action May Impair Sierra Club's Interests.

Under Rule 24, a proposed intervenor has a "minimal burden" to demonstrate "the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344, 346 n.2 (5th Cir. 2014) (citation omitted).

The disposition of this litigation may impair each of Proposed-Intervenors' protectible interests. First, Proposed-Intervenors interests in reducing ozone pollution may be impaired because the Petitioners ultimately seek to vacate or delay EPA's Disapproval Rule, thereby

prolonging Proposed-Intervenors' members exposure to unhealthy levels of pollution, and "remov[ing]" the health, environmental, and aesthetic "benefit[s]" expected from implementation of EPA's rule. *See Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 312, 317-18 (intervention warranted where petitioners' challenge would "remove" the "benefit[s]" of the rule).

Second, Proposed-Intervenors' interest in the "even and consistent" interpretation and implementation of the CAA may also be impaired. *Halogenated Solvents,* 783 F.2d at 1265; *Texas v. EPA*, 2011 WL at 710598, at *4 ("piecemeal review of national issues in the regional courts, ... risks potentially inconsistent results"). By filing for review and seeking to stay the Rule—whether as to Texas or in its entirety—in this Court,[18] Petitioners ignored the Clean Air Act's judicial review provisions requiring centralized review of nationally applicable rules, 42 U.S.C. § 7607(b)(1), and they seek to upend EPA's

---

[18] *See* Texas Pet'rs' Mot. to Stay Final Action at 20 ("The Court should stay, pending review, the part of the Final Rule that disapproves Texas's SIP."); Texas Industry Pet'rs' Mot. to Stay Final Action at 21 ("the Court should stay EPA's disapproval and prohibit EPA from taking any action in reliance on that disapproval pending conclusion of these proceedings.").

attempt to address the national problem of interstate pollution in a uniform and equitable way. *EME Homer City Generation, L.P.,* 572 U.S. at 519, 524.

In addition, EPA's Disapproval Rule relies on and applies the same policy judgments and analytical methodology to all 21 states subject to the rule. 88 Fed. Reg. at 9,380. Accordingly, any court order setting aside the rule could result in a patchwork of potentially conflicting, circuit-specific requirements for addressing the national problem of interstate smog pollution. *See S. Ill. Power Coop.*, 863 F.3d at 674 ("Overlapping, piecemeal, multicircuit review of a single, nationally applicable EPA rule is potentially destabilizing to the coherent and consistent interpretation and application of the Clean Air Act.").

Finally, the disposition of this case would impair Proposed-Intervenors' interest in implementing the consent decree that required EPA to take action approving or disapproving the states' various interstate ozone pollution plans. The Disapproval Rule is the product of that litigation, and a court order vacating or staying the national rule would effectively negate or delay the implementation of the court

ordered consent decree Proposed-Intervenors successfully litigated to obtain.

### D.    No Existing Party Adequately Represents Proposed-Intervenors' Interests.

Proposed-Intervenors also satisfy the "minimal burden" of demonstrating that the existing parties' interests "may not align precisely," and therefore "might" not adequately represent their interests. *Brumfield v. Dodd*, 749 F.3d 339, 345-46 (5th Cir. 2014); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 n.10 (1972). Petitioners plainly do not represent Proposed-Intervenors' interests because they seek to vacate EPA's Disapproval Rule.

EPA's representation "may be" inadequate for several reasons. First, EPA initiated the underlying SIP disapproval rulemaking only after Proposed-Intervenors sued EPA to force the agency to satisfy its statutory duties under the Clean Air Act. *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021). Proposed-Intervenors filed suit against EPA precisely because the agency has failed to represent their interests in securing timely and lawful action addressing interstate pollution plans submitted by the states. 42 U.S.C. § 7410(a)(2)(D), (k). Even with EPA's issuance of the Disapproval Rule,

Proposed-Intervenors and the agency are adversely situated because

EPA has yet to fulfill its statutory and consent decree obligations to

approve or disapprove *all* state plan submissions.[19] The government

cannot adequately represent Proposed-Intervenors' interests "in view of

the prior lengthy litigation by these [Proposed-Intervenors] against the"

EPA "and the necessity of a court order to force" EPA to issue the

designations that Petitioners challenge. *Safari Club Int'l v. Salazar*,

281 F.R.D. 32, 42 (D.D.C. 2012); *see also Entergy*, 817 F.3d at 205

(inadequate representation where the agency "significantly delayed"

issuing the challenged decision).

Second, courts have concluded that a party's representation "may"

be inadequate where, as here, the existing governmental entity has an

obligation to balance multiple, conflicting public interests and not just

the proposed intervenor's private interests. *Brumfield*, 749 F.3d at 345;

*see also WildEarth Guardians v. Nat'l Parks Serv.*, 604 F.3d 1192, 1200

(10th Cir. 2010) ("Where a government agency may be placed in the

---

[19] EPA must finalize action on plan submissions from Arizona,
Tennessee, and Wyoming by December 15, 2023. Stipulated Extension,
No. 4:21-03551-DMR (N.D. Cal. Jan. 30, 2023).

position of defending both public and private interests," "the burden of showing inadequacy of representation is satisfied.").

Here, Proposed-Intervenors likely will make different arguments than EPA. Proposed-Intervenors have, for example, urged EPA to consider actual, monitored ozone levels particularly when EPA's modeling appears to underpredict ozone nonattainment problems.[20] And Proposed-Intervenors have historically disagreed with EPA on critical elements of its administration of the Clean Air Act's framework to reduce ozone pollution, including interstate ozone pollution. *See Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019); *New York v. EPA*, 781 F. App'x 4, 7 (D.C. Cir. 2019). Where, as here, a proposed intervenor's interests are "related, but not identical," governmental representation "may be inadequate" and intervention is warranted. *Brumfield*, 749 F.3d at 345; *see also Crossroads Grassroots Pol'y Strategies,* 788 F.3d at 314 ("doubtful friends may provide dubious representation.").

Finally, Proposed-Intervenors submit that they "may also be likely to serve as a vigorous and helpful supplement to EPA's defense." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977).

---

[20] *See* EPA-HQ-OAR-2020-0272-0147; EPA-HQ-OAR-2021-0668-0758.

Proposed-Intervenors have a long history of effective and informative advocacy in administrative and judicial proceedings regarding interstate ozone pollution. Moreover, Proposed-Intervenors are likely to offer a different perspective because their members are adversely impacted by ozone pollution in a way that EPA is not.[21] In short, Proposed-Intervenors cannot rely on EPA to make all arguments that Proposed-Intervenors believe should be advanced to protect their members' interests.

***

Proposed-Intervenors satisfy the elements for intervention of right. Alternatively, Proposed-Intervenors meet the requirements for permissive intervention because they will assert defenses that share questions of law and fact with Petitioners' challenges, including whether the rule is supported by the agency's record. Fed R. Civ. P. 24(b)(1).

## CONCLUSION

The Court should grant Proposed-Intervenors motion to intervene in each of the petitions filed under Case No. 23-60069.

---

[21] *See* attached declarations.

Respectfully submitted,

*/s/ Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560 (phone)
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

*/s/ Kathleen L. Riley*
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G. St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Sierra Club, Air Alliance
Houston, and Downwinders at Risk*

## CERTIFICATE OF CONFERENCE

Pursuant to Fifth Circuit Rule 27.4, counsel for Sierra Club conferred with counsel for the other parties in this case, who represented that they cannot consent without reviewing the motion, and reserve their right to respond.

Dated: March 27, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned counsel states that this motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 5,138 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated: March 27, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: March 27, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

## CERTIFICATE OF SERVICE

On this 27th day of March, 2023 a true and correct copy of the foregoing Motion For Leave To Intervene By Sierra Club, Air Alliance Houston, and Downwinders at Risk was filed with the electronic case filing ("ECF") system of the U.S. Court of Appeals for the Fifth Circuit, which will provide electronic notice to counsel of record.

*/s/ Joshua Smith*
Joshua Smith