No. 23-60069

# In the United States Court of Appeals for the Fifth Circuit

**STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,**

*Petitioners,*

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency,**

*Respondents.*

## TEXAS PETITIONERS' JOINT RESPONSE TO RESPONDENTS' MOTION TO TRANSFER OR DISMISS

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Abrams, Michael R., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Association of Electric Companies of Texas (Petitioner)

  The Association of Electric Companies of Texas ("AECT") represents electric generators, transmission & distribution utilities, fully-integrated utilities and retail electric providers that span Texas. Its members generate power from diverse resources, including natural gas, coal, wind and solar, plus investments in energy storage.

- Balch & Bingham LLP (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Petitioner Mississippi Power Company)

- Baker Botts L.L.P. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Barber, Julia B. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- BCCA Appeal Group (Petitioner)

  BCCA Appeal Group is a Texas non-profit corporation whose mission is to support the goals of environmental protection and a strong economy. Its members own and operate industrial facilities in Texas. The Group was formed from the Business Coalition for Clean Air. The Group played a key role in the successful attainment strategies that have achieved real and sustained progress on air quality goals in Texas. BCCA Appeal Group continues to evaluate and pursue regulatory decisions that are based on sound science and achieve environmental and air quality goals while maintaining a strong economy.

- Blackman, Daniel (Region 4 Administrator, United States Environmental Protection Agency)

- Brookfield Asset Management Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

- Burdette, Courtney J., Executive Counsel, Louisiana Department of Environmental Quality (Counsel for Petitioner Louisiana Department of Environmental Quality)

- Clark, Jill C., General Counsel, Louisiana Department of Environmental Quality (Counsel for Petitioner Louisiana Department of Environmental Quality)

- Coleto Creek Power, LLC (Petitioner)

- Cole, William F., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Davis, Bill, Deputy Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Ennis Power Company, LLC (Petitioner)

- Fitch, Lynn, Attorney General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Garland, Merrick B., Attorney General, United States Department of Justice (Counsel for Respondents)

- Gidiere, P. Stephen III (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Hall, Machelle, Assistant Attorney General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Hays Energy, LLC (Petitioner)

- Kelly, Daniel J. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Vice President and Deputy General Counsel for Vistra Corp.)

- Kim, Todd, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice (Counsel for Respondents)

- Kuryla, Matthew L. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Landry, Jeff, Attorney General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Lee, Jin Hyung, Trial Attorney, United States Department of Justice, Environment & Natural Resources Division, Environmental Defense Section (Counsel for Respondents)

- Lipscomb, Whitney H., Deputy Attorney General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Louisiana Department of Environmental Quality (Petitioner)

- Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

iii

- Luminant Generation Company LLC (Petitioner)

- Matheny, Justin L., Deputy Solicitor General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Mazzara, Joseph N., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- McPhee, Shae, Deputy Solicitor General, Louisiana Department of Justice, Office of the Attorney General (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Midlothian Energy, LLC (Petitioner)

- Mississippi Department of Environmental Quality (Petitioner)

- Mississippi Power Company (Petitioner)

- Mitchell, David W. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Counsel, Environmental for Vistra Corp.)

- Moore, C. Grady III (Counsel for Mississippi Power Company)

- Moore, Stephanie Zapata (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Executive Vice President and General Counsel for Vistra Corp.)

- Murrill, Elizabeth B., Solicitor General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Nance, Earthea (Regional Administrator for Respondent United States Environmental Protection Agency)

- Oak Grove Management Company LLC (Petitioner)

- Office of the Attorney General for the State of Louisiana (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Paxton, Ken, Attorney General of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Prieto, Jeffrey M. (General Counsel for Respondent United States Environmental Protection Agency)

- Public Utility Commission of Texas (Petitioner)

- Railroad Commission of Texas (Petitioner)

- Regan, Michael S., Administrator, United States Environmental Protection Agency (Respondent)

- Shurden, Shawn (Counsel for Petitioner Mississippi Power Company)

- Southern Company (Parent Company of Petitioner Mississippi Power Company)

- State of Louisiana (Petitioner)

- State of Mississippi (Petitioner)

- State of Texas (Petitioner)

- St. John, Joseph S., Deputy Solicitor General, Louisiana Department of Justice, Office of the Attorney General (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Stone, Judd, Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Streett, Aaron M. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Stutts, Susan Scaggs (Counsel for Petitioner Mississippi Power)

- Texas Chemical Council (Petitioner)

  The Texas Chemical Council ("TCC") represents approximately 70 companies that own or operate more than 200 manufacturing and research facilities across the State of Texas. Its members have invested more than $150 billion in physical assets in the State, directly employ more than 75,000 Texans, and indirectly employ over 500,000 Texans. The Texas chemical industry represents the #1 non-energy Texas export with over $45 billion in exports annually and pays more than $1.5 billion in state and local taxes each year.

- Texas Commission on Environmental Quality (Petitioner)

- Texas Oil & Gas Association (Petitioner)

  The Texas Oil & Gas Association ("TXOGA") is a statewide trade association representing every facet of the Texas oil and gas industry including small independents and major producers. Collectively, the membership of TXOGA produces in excess of 80 percent of Texas' crude oil and natural gas, operates over 80 percent of the state's refining capacity, and is responsible for the vast majority of the state's pipelines. In fiscal year 2022, the oil and natural gas industry supported 443,000 direct jobs and paid $24.7 billion in state and local taxes and state royalties, funding schools, roads and first responders.

- The Vanguard Group, Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

- United States Environmental Protection Agency (Respondent)

- Vistra Asset Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Corp. (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Intermediate Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Operations Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Webster, Brent, First Assistant Attorney General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Wise County Power Company, LLC (Petitioner)

Respectfully submitted.

/s/ P. Stephen Gidiere III

*Counsel for Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF CONTENTS .................................................................................... viii

TABLE OF AUTHORITIES ............................................................................... ix

GLOSSARY ...................................................................................................... xiii

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................2

I.     Statutory and Regulatory Background ...........................................................2

II.    Texas's Ozone Interstate Transport SIPs .....................................................2

      A.    Texas's SIP for the 2008 ozone NAAQS .............................................2

      B.    Texas's SIP for the 2015 ozone NAAQS .............................................4

      C.    EPA Region 6's determinations regarding Texas's SIP ......................6

      D.    EPA's disapproval of Texas's SIP ........................................................7

STANDARD OF REVIEW ......................................................................................8

ARGUMENT ...........................................................................................................9

I.     The Motion to Transfer Should Be Denied. .................................................9

      A.    EPA's disapproval of Texas's SIP is a "locally or regionally applicable" action. ................................................................................9

      B.    The core determinations in EPA's Texas-only final action do not have nationwide scope or effect. ................................................16

II.    The Motion to Dismiss Should Be Denied. ................................................19

III.   Alternatively, the Motion Should Be Carried with the Case. ......................19

CONCLUSION ......................................................................................................20

CERTIFICATE OF SERVICE ..............................................................................23

CERTIFICATE OF COMPLIANCE .....................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*,
    810 F.3d 335 (5th Cir. 2016) ................................................................19

*ATK Launch Sys., Inc. v. EPA*,
    651 F.3d 1194 (10th Cir. 2011) ..........................................................13

*Azar v. Allina Health Servs.*,
    139 S. Ct. 1804 (2019)........................................................................17

*Brown Express, Inc. v. United States*,
    607 F.2d 695 (5th Cir. 1979) ..............................................................10

*Chevron U.S.A., Inc. v. EPA*,
    45 F.4th 380 (D.C. Cir. 2022)............................................................19

*EPA v. EME Homer City Generation*, *L.P.*,
    572 U.S. 489 (2014)..............................................................................2

*Fla. Power & Light Co. v. Costle*,
    650 F.2d 579 (5th Cir. Unit B June 1981).......................................2, 18

*Luminant Generation Co. v. EPA*,
    675 F.3d 917 (5th Cir. 2012) ..............................................................15

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005)............................................................................14

*Texas v. EPA*,
    No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011)....................12, 13, 15

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ............. 1, 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18

*Union Elec. Co. v. EPA*,
   427 U.S. 246 (1976) ................................................................18

*U.S. Steel Corp. v. EPA*,
   595 F.2d 207 (5th Cir. 1979) .................................................10, 11, 12

*W. Oil & Gas Ass'n v. EPA*,
   633 F.2d 803 (9th Cir. 1980) ................................................12

## Federal Statutes

42 U.S.C. § 7409(a)-(b) .............................................................2

42 U.S.C. § 7410(a)(2)(D)(i) .......................................................2

42 U.S.C. § 7410(k)(5) .............................................................18

42 U.S.C. § 7607(b)(1) .........................................................1, 8, 16, 17

## Federal Register

64 Fed. Reg. 35,714 (July 1, 1999) ..............................................13

73 Fed. Reg. 16,436 (Mar. 27, 2008) ..........................................2, 13

80 Fed. Reg. 65,292 (Oct. 26, 2015) ..........................................4, 13

81 Fed. Reg. 296 (Jan. 5, 2016) .................................................3

81 Fed. Reg. 53,284 (Aug. 12, 2016) ...........................................3

81 Fed. Reg. 62,375 (Sept. 9, 2016) ............................................3

87 Fed. Reg. 9,798 (Feb. 22, 2022) .....................................4, 5, 6, 7, 12, 17

87 Fed. Reg. 24,300 (Apr. 25, 2022) ..........................................10

88 Fed. Reg. 9,336 (Feb. 13, 2023) ........................ 1, 7, 8, 12, 13, 14, 15, 16, 17, 18

**Miscellaneous**

EPA, *Infrastructure SIP Requirements and Guidance*, *available at* https://www.epa.gov/air-quality-implementation-plans/infrastructure-sip-requirements-and-guidance ("EPA Infrastructure SIP Guidance") .............................................................................2

EPA Region 6, *2015 8-Hour Ozone Transport SIP Proposal Technical Support Document* (Feb. 2022) ("Region 6 Texas TSD") .............6, 7, 16, 17

Federal Rule of Appellate Procedure 15(a)(2)(C) ...................................11

Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)* (Mar. 27, 2018), *available at* https://tinyurl.com/4x2pp8u8 ("2018 Transport Guidance") ...............................4, 10

Memorandum from Stephen D. Page, Director, Office of Air Quality Planning and Standards, *Guidance on Infrastructure State Implementation Plan (SIP) Elements under Clean Air Act Sections 110(a)(1) and 110(a)(2)* (Sept. 13, 2013), *available at* https://tinyurl.com/2p8c7885 ("Page Memo") .............................................2

Order, *Calumet Shreveport Refining, L.L.C. v. EPA*, No. 22-60266 (5th Cir. Oct. 21, 2022) .................................................................10, 19

Order, *Wynnewood Refining Co., L.L.C. v. EPA*, No. 22-60425 (5th Cir. Nov. 16, 2022) .............................................................................19

Pet. for Review, *Sierra Club v. EPA*, No. 16-60755 (5th Cir. Nov. 7, 2016) .......................................................................................3

Pet. for Review, *State of Utah v. EPA*, No. 23-9509 (10th Cir. Feb. 13, 2023) ......................................................................................................11

TCEQ, *SIP Revision: 2008 Ozone Infrastructure and Transport* (Dec. 5, 2012), *available at* https://tinyurl.com/732y52mc ..................................2, 3

TCEQ, *Transport State Implementation Plan (SIP) Revision for the 2015 Ozone National Ambient Air Quality Standards (NAAQS)*, Docket No. 2017-1762-SIP (Aug. 8, 2018), *available at* https://tinyurl.com/yc53rkrf ("Texas Ozone Transport SIP")................4, 5, 6

# **GLOSSARY**

| | |
|---|---|
| **CAA or the Act** | Clean Air Act |
| **EPA** | United States Environmental Protection Agency |
| **FIP** | Federal implementation plan |
| **NAAQS** | National ambient air quality standard(s) |
| **ppb** | Parts per billion |
| **SIP** | State implementation plan |
| **State Petitioners** | State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas |
| **TCEQ** | Texas Commission on Environmental Quality |
| **Texas Industry Petitioners** | Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Council, Texas Oil & Gas Association, Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC |
| **Texas Petitioners** | Collectively, State Petitioners and Texas Industry Petitioners |

## INTRODUCTION

The Court should deny EPA's motion to dismiss or transfer to the D.C. Circuit. The petitions for review filed by Texas Petitioners challenge EPA's action disapproving a provision of Texas's SIP—a "locally or regionally applicable" action for which venue is proper "only" in this Court under 42 U.S.C. § 7607(b)(1). *Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016). Indeed, EPA acknowledged that ozone transport between States—the issue underpinning Texas's SIP—is "regional [in] nature," and EPA's Regional Office for Texas thus determined the approvability of Texas's SIP. 88 Fed. Reg. 9,336, 9,374, 9,359-60 (Feb. 13, 2023). Under this Court's precedent, EPA cannot subvert the plain meaning of section 7607(b) by packaging its action on Texas's SIP in an omnibus Federal Register notice with other SIP disapprovals. The "default presumption" is that review of SIP disapprovals is proper only in regional circuits, *Texas*, 829 F.3d at 419, and EPA has not overcome that presumption.

Although EPA leans on the "nationwide scope or effect" "exception" to the "default presumption" of review, *see id.*, that exception does not apply here. The Court decides that issue *de novo* without deference to EPA's self-serving characterizations, and the record reflects that the "core determinations" in EPA's action were "a number of intensely factual determinations" made by EPA's Regional Office "related to the particularities" of Texas's SIP. *Id.* at 421 & n.23. There is therefore no basis for transfer or dismissal of the petitions.

# BACKGROUND

## I.      Statutory and Regulatory Background

"Congress chose a balanced scheme of state-federal interaction to implement the goals of the [Clean Air] Act." *Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 581 (5th Cir. Unit B June 1981). Under this scheme, EPA sets NAAQS for certain pollutants, including ozone. *See* 42 U.S.C. § 7409(a)-(b). States then develop SIPs to implement the NAAQS and demonstrate "compliance with the Act's requirements." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 507 (2014).

At issue here is the Act's "interstate transport" provision, 42 U.S.C. § 7410(a)(2)(D)(i), which contains four "prongs" that States must address—1) "significant contribution"; 2) "interference with maintenance"; 3) "prevention of significant deterioration"; and 4) "protection of visibility." *See* Page Memo at 30-35 (listing the four prongs of the "interstate pollution transport" provision, 42 U.S.C. § 7410(a)(2)(D)(i)); *see also* EPA Infrastructure SIP Guidance (listing the four "Interstate transport" prongs of 42 U.S.C. § 7410(a)(2)(D)(i)). This case implicates prongs 1 and 2, often called the Act's "good neighbor" provisions.

## II.     Texas's Ozone Interstate Transport SIPs

### A.      Texas's SIP for the 2008 ozone NAAQS

This is not the first case in this Court about interstate transport under the ozone NAAQS. In 2008, EPA revised those NAAQS downward from 80 ppb to 75 ppb. 73 Fed. Reg. 16,436 (Mar. 27, 2008). In 2012, Texas revised its SIP to address the interstate-transport requirements as to the new NAAQS. TCEQ, *SIP Revision: 2008*

*Ozone Infrastructure and Transport* (Dec. 5, 2012), *available at* https://ti-nyurl.com/732y52mc. EPA's actions on Texas's SIP were published in three Federal Register notices. 81 Fed. Reg. 296, 302 (Jan. 5, 2016) (disapproval as to prong 4); 81 Fed. Reg. 53,284 (Aug. 12, 2016) (disapproval as to prongs 1 and 2); 81 Fed. Reg. 62,375 (Sept. 9, 2016) (approval as to prong 3).

EPA's actions generated three cases in this Court, two of which remain pending. Texas and TCEQ filed a petition for review (No. 16-60670) of EPA's disapproval as to prongs 1 and 2. EPA raised no objection to venue in that case, and it remains pending; after opening merits briefs were filed, the case was held in abeyance for EPA's action on Texas's interstate-transport SIP for the 2015 NAAQS (the subject of this case). *See* No. 16-60670, Docs. 97, 104-2.

Separately, Sierra Club filed a petition for review (No. 16-60755) of EPA's approval as to prong 3. Sierra Club asserted that "[j]urisdiction and venue for this petition are proper in this Court under 42 U.S.C. § 7607(b)[.]" Pet. for Review, *Sierra Club v. EPA*, No. 16-60755 (5th Cir. Nov. 7, 2016). Sierra Club later voluntarily dismissed its petition.

Texas, Luminant Generation Company LLC, and others filed petitions for review (No. 16-60118, consolidated) of EPA's disapproval as to prong 4. The Court denied EPA's motion to transfer the petitions to the D.C. Circuit and granted petitioners' motion to stay the rule. *Texas*, 829 F.3d at 411, 435-36. That case remains pending.

3

### B.     Texas's SIP for the 2015 ozone NAAQS

EPA again lowered the ozone NAAQS in 2015 from 75 to 70 ppb, creating an October 1, 2018, deadline for SIP revisions addressing interstate transport. 80 Fed. Reg. 65,292 (Oct. 26, 2015). EPA did not promulgate nationally-applicable regulations containing requirements that States must follow in addressing "good neighbor" obligations under the new ozone NAAQS. Instead, EPA issued a guidance memorandum (not regulations) in March 2018 explaining that States *could* "us[e] EPA's analytical approach" from EPA's prior FIPs, "somewhat different analytical approaches within these steps," "or alternative frameworks." 2018 Transport Guidance at 3. EPA's memorandum "recommend[ed] that states reach out to EPA Regional offices and work together to accomplish the goal of developing, submitting, and reviewing approvable SIPs." *Id*. at 6.

On August 8, 2018, TCEQ timely adopted its SIP to address all four interstate-transport prongs for the 2015 ozone NAAQS, *see* Texas Ozone Transport SIP, and on August 17, 2018, submitted its SIP to EPA, 87 Fed. Reg. 9,798, 9,824 (Feb. 22, 2022). Consistent with EPA's guidance, TCEQ used its own alternative approach to developing its SIP. TCEQ conducted regional photochemical modeling of Texas sources and their impact on ozone concentrations in downwind States. *Id*. at 9,825. Based on regional considerations, TCEQ's modeling used 2012 as a base year (instead of 2011, as EPA had in prior modeling) because "2011 was a meteorologically anomalous year for Texas and surrounding states as it was the hottest year on record and the single-worst drought year recorded in Texas since 1895." Texas Ozone Transport SIP at 3-6.

TCEQ also "us[ed] a framework similar to EPA's 4-Step framework," 87 Fed. Reg. at 9,824, but with three "key improvements," Texas Ozone Transport SIP at 3-1.

*First*, using modeling, TCEQ identified monitors in other States that were projected in 2023 either to be in nonattainment ("nonattainment monitors") or have maintenance issues ("maintenance monitors"). To identify maintenance monitors, TCEQ used the most recent three-year design value as the base case for its modeling (*i.e.*, the 2012-2014 period) instead of EPA's maximum and outdated three-year design value (*i.e.*, 2009-2011, 2010-2012, or 2011-2013). *Id.* at 3-39; *see* 87 Fed. Reg. at 9,800 n.8 (explaining that a "design value is a statistic that describes the air quality status of a given location relative to the level of the NAAQS."). TCEQ found that the most recent data "reflect[s] the current state of ozone concentrations [and] the impact of any maintenance plans that are in place to prevent local emissions from causing an area to slip back into nonattainment." Texas Ozone Transport SIP at 3-42.

*Second*, TCEQ identified monitors potentially linked to Texas emissions using the threshold recommended in EPA's guidance: one percent of the NAAQS, or 0.7 ppb. *Id.* at 3-2. If TCEQ's modeling predicted a Texas contribution at or above 0.7 ppb, the monitor was identified for further review. *Id.* at 3-3.

*Finally*, TCEQ conducted a multi-factor weight-of-evidence analysis to determine downwind contribution from Texas sources. *Id.* at 3-47 to 3-50. Because "[i]nterstate transport is a complex problem," TCEQ considered "factors relevant to the ozone conditions at the [downwind] monitors," including "design value trends,

the meteorological conditions that lead to high ozone formation at the monitor, and the number of days with elevated ozone." *Id*. at 3-50. Based on those factors, TCEQ found that Texas emissions do not contribute significantly to nonattainment or interfere with maintenance in downwind areas. *Id*. at 3-50 to 3-76.

## C.    EPA Region 6's determinations regarding Texas's SIP

In 2022, EPA's Region 6—which covers Arkansas, Louisiana, New Mexico, Oklahoma, and Texas—published its proposed disapproval of Texas's SIP as to prongs 1 and 2 of the interstate-transport provision. *See* 87 Fed. Reg. at 9,798. The proposal was signed by the Regional Administrator for Region 6 and appeared in a Federal Register notice that included proposed disapprovals for three other States in Region 6. *See id*. at 9,835. Region 6's notice explained that "all public comments, including comments on the EPA's air quality modeling[,] should be submitted *in the Regional docket for this action*, Docket ID No. EPA-R06-OAR-2021-0801. Comments are not being accepted in [the Headquarters] Docket." *Id*. at 9,806 n.45 (emphasis added).

Region 6 explained that the determinations that formed the basis for the disapproval were provided in a Texas-only Technical Support Document authored by Region 6's "Lead Regional Air Quality Modeler." Cover Page, Region 6 Texas TSD. *First*, Region 6 determined that TCEQ's use of the most recent three-year period (2012-2014) to identify downwind maintenance monitors "is less likely to successfully identify maintenance receptors than the EPA method." *Id*. at 11. *Second*, Region 6 determined that "TCEQ's modeling underestimates future ozone levels" in 2023 as compared to Region 6's "ballpark estimate" for 2023. 87 Fed. Reg. at 9,829;

*see* Region 6 Texas TSD at 38-41. *Third*, Region 6 determined that TCEQ's multi-factor weight-of-evidence analysis was not sufficiently "compelling" to "counter" "EPA's [one-percent] contribution methodology" from EPA's FIPs. 87 Fed. Reg. at 9,833-34; Region 6 Texas TSD at 78.

### D.    EPA's disapproval of Texas's SIP

Earlier this year, EPA published a final rule that included its disapproval of Texas's SIP revision, as had been proposed by Region 6. 88 Fed. Reg. at 9,359-60. The disapproval was published in a Federal Register notice that included disapprovals of 18 other States' SIPs, which had been proposed in 12 separate notices from 8 different EPA Regional Offices. *Id*. at 9,337. Yet this Federal Register notice did not address all state "good neighbor" SIPs for the 2015 ozone NAAQS. EPA "deferr[ed] action" on Tennessee's and Wyoming's SIPs. *Id*. at 9,337. And, previously, EPA had taken action on the "good neighbor" SIPs from 23 States and the District of Columbia, in 20 separate Federal Register notices. *Id*. at 9,362.

EPA's notice explained that "the contents of each individual state's submission were evaluated on their own merits." *Id*. at 9,354. As EPA explained, individual "states may be able to establish alternative approaches to addressing their interstate transport obligations for the 2015 ozone NAAQS that vary from a nationally uniform framework" (as Texas had done) and that each such SIP would be judged "in light of the facts and circumstances of each particular state's submission." *Id*. at 9,340. Further, EPA explained that the consolidated Federal Register notice provided only "a brief, high level overview of the SIP submissions and the EPA's evaluation and key bases for disapproval" and that "[t]he full basis for the EPA's disapprovals is

available in [the] relevant [regional office] *Federal Register* notifications of proposed disapproval for each state, in the technical support documents informing the proposed and final action, and in the responses to comments[.]" *Id*. at 9,354; *see also id*. at 9,343 ("Our evaluation of the states' analyses was generally set forth in the [regional office] proposals[.]").

As to Texas's SIP in particular, EPA's final disapproval references and relies on Region 6's determinations for disapproval, as articulated in the Region's proposed denial and the Region 6 Texas TSD authored by the Region's Lead Regional Modeler. *See id*. at 9,359-60. EPA Headquarters did not issue a revised or additional technical support document for Texas, nor did EPA headquarters conduct new technical analysis expanding on the work that Region 6 did.

## STANDARD OF REVIEW

This Court decides venue under 42 U.S.C. § 7607(b)(1) *de novo*. *Texas*, 829 F.3d at 420-21. Thus, it is the Court's role to determine the appropriate category in that provision for a particular EPA action, without deferring to EPA's position or findings. *Id*. The Court's "independent assessment" encompasses both 1) the "applicability of the [final] action" (*i.e.*, whether it is "nationally applicable," and therefore subject to challenge only in the D.C. Circuit, or "locally or regionally applicable," and thus subject to challenge in a regional court of appeals), and 2) the scope and effect of the "the core determinations in the action" (*i.e.*, whether they are "nationwide"). *Id*. at 419-21. When EPA disapproves a SIP, that action is presumptively "locally or regionally applicable," and EPA bears the burden of establishing that its

action is "nationally applicable" or is based on a determination that has "nationwide scope or effect." *Id.*

## ARGUMENT

## I.    The Motion to Transfer Should Be Denied.

Under this Court's precedent, EPA's "action" in this case—its disapproval of prongs 1 and 2 of Texas's interstate transport SIP—is a "locally or regionally applicable" final action that is not based on a determination that has "nationwide scope or effect." Thus, venue is proper only in this Court, not the D.C. Circuit.

### A.    EPA's disapproval of Texas's SIP is a "locally or regionally applicable" action.

"Interpreting [section 7607(b)(1)] requires close attention to detail," which "begin[s] by defining the significant statutory terms." *Id.* at 419. Chief among those terms, and the starting point for determining proper venue, is the agency "action" at issue. "The 'action' is the rule or other final action taken by the agency that the petitioner seeks to prevent or overturn." *Id.* Here, that "action" is EPA's disapproval of Texas's SIP submission.

EPA's motion to transfer proceeds from the mistaken premise that the "action" here is EPA's Federal Register notice compiling its separate disapprovals of 19 separate SIPs. Mot. 1, 9-10. But EPA's Texas disapproval did not become a "nationally applicable" action just because it was published in a Federal Register notice alongside other state-specific disapprovals. Were it otherwise, EPA could manipulate the Act's venue provision by selectively choosing to publish SIP disapprovals individually or in combination with others. Congress did not give EPA that power.

It instead made venue depend on the substance of an EPA action, not its packaging. *See, e.g., Texas*, 829 F.3d at 415 (concluding that EPA's disapproval of Texas's prong 4 interstate-transport SIP was "locally or regionally applicable" where "EPA also, in the same rulemaking, disapproved Oklahoma's plan"); *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 218 (5th Cir. 1979) (vacating EPA designations for areas in Alabama published in a multi-state Federal Register notice); Order, *Calumet Shreveport Refining, L.L.C. v. EPA*, No. 22-60266 (5th Cir. Oct. 21, 2022) (granting reconsideration of a transfer order where the challenged EPA Clean Air Act actions were included in a Federal Register notice that also addressed "over 30 small refineries across the country . . . located within 18 states in 7 of the 10 EPA regions and in 8 different Federal judicial circuits," 87 Fed. Reg. 24,300, 24,301 (Apr. 25, 2022)).

This Court, not EPA, must determine the character of the final action for purposes of venue without regard to EPA's self-serving labels. *Texas*, 829 F.3d at 421; *see also Brown Express, Inc. v. United States*, 607 F.2d 695, 700 (5th Cir. 1979). Here, EPA disapproved Texas's individual SIP based on Region 6's assessment of the unique features of Texas's plan. EPA's motion suggests that the agency would prefer the latitude to establish a nationwide program for interstate transport through the disapproval of SIPs and the promulgation of FIPs. But under Congress's design, SIPs and FIPs are state-specific, and States have the latitude to craft individualized SIPs. Indeed, EPA's prior guidance acknowledged that fact. *See* 2018 Transport Guidance at 3.

EPA not only misdescribes the challenged action but also misstates the petitions challenging that action. EPA claims that "Petitioners petitioned for review of

the Final Rule in this Court." Mot. 1. Not so. Rather, Texas Petitioners sought review of only that part of EPA's Federal Register notice addressing EPA's Texas disapproval. *See* Docs. 1-1, 3-1, 5-1, 44-1. It is EPA's disapproval of Texas's SIP, and not any other action, that "the petitioner[s] seek[] to prevent or overturn," and it is that action that the Court should consider in deciding EPA's motion. *Texas*, 829 F.3d at 419. Such a limited challenge is expressly authorized by Federal Rule of Appellate Procedure 15(a)(2)(C) and is hardly unusual. *See, e.g., U.S. Steel Corp.*, 595 F.2d at 210.

EPA is thus wrong that judicial review must occur only in the D.C. Circuit to prevent "inconsistent outcomes." Mot. 12. Although other petitions for review have been filed in other regional courts of appeals, none of those petitions involves EPA's disapproval of the Texas SIP, and all are similarly limited to EPA's SIP disapprovals for States other than Texas. *See, e.g.*, Pet. for Review, *State of Utah v. EPA*, No. 23-9509 (10th Cir. Feb. 13, 2023). The same is true of the latest petitions for review that the Clerk docketed under this cause number: they solely challenge the Louisiana and Mississippi SIP disapprovals and have no connection to the Texas-specific action that petitioners challenge here. Docs. 52-1, 58-1, 63-1. All those other pending cases, including those in this Court, confirm that SIP disapprovals are "locally or regionally applicable" EPA actions for which venue is proper "only" in the regional court of appeals. *Texas*, 829 F.3d at 419 (citing cases).

And despite EPA's concerns, the courts of appeals are experienced in minimizing conflicting decisions and considering the views of sister circuits, even when reviewing different parts of the same Federal Register notice. This Court's *U.S. Steel*

decision is a prime example. *See, e.g.*, 595 F.2d at 210. Other courts of appeals reviewed EPA's actions for other States published in the same multi-state Federal Register notice, *see W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 807 (9th Cir. 1980), and they did so while minimizing "conflicting results" among circuits, *id*. at 808; *see also id.* at 811 ("We agree with the reasoning of the Third and Fifth Circuits.").

Furthermore, contrary to EPA's claim (at 11), "the merits arguments that Petitioners could make in this case" are irrelevant to the venue analysis. The question of applicability "turns on the legal impact" of EPA's action, *Texas*, 829 F.3d at 419, and "the location of the persons or enterprises that the action regulates." *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) (cleaned up). Texas's SIP and EPA's action on it involve only the regulation of Texas emission sources and have legal consequences only for Texas and Texas facilities. Apart from EPA's choice to publish the final disapproval alongside those of other States, every aspect of EPA's Texas SIP disapproval is regional or local. The disapproval was proposed by EPA's Regional Office, was based exclusively on analysis by Region 6's Lead Regional Modeler, was compiled in a regional docket, and cited only the Region's unique Texas-specific rationale for disapproval. *See supra* pp. 7-8. EPA directed public comments on the disapproval to the Regional Office, 87 Fed. Reg. at 9,806 n.45, and, even in the final disapproval, directed parties to the Regional Office's "evaluation" as the basis for disapproval, 88 Fed. Reg. at 9,343.

But even accepting EPA's construct and considering all 21 SIP actions published in the same notice, EPA's action was not "nationally applicable." The statutory phrase "nationally applicable" has a plain meaning: applicable to the nation, not

some subset thereof. EPA promulgates many regulations that apply to the entire nation—such as the NAAQS (*national* ambient air quality standards). *See*, *e.g.*, 80 Fed. Reg. 65,292 (Oct. 26, 2015) (promulgating 2015 ozone NAAQS); 73 Fed. Reg. 16,436 (Mar. 27, 2008) (promulgating 2008 ozone NAAQS); 64 Fed. Reg. 35,714 (July 1, 1999) (promulgating a national regional-haze rule establishing guidelines for all States); *see also Texas*, 829 F.3d at 412 (discussing the national regional-haze rule). This is not one of them. Here, in fact, EPA's consolidated notice addresses only a minority subset of "good neighbor" SIPs for the 2015 ozone NAAQS. EPA separately acted on the interstate-transport SIPs from 23 other States and the District of Columbia in 20 separate Federal Register notices. 88 Fed. Reg. at 9,362. And EPA "deferr[ed] action" on Tennessee's and Wyoming's SIPs, so those will come later. *Id*. at 9,337.

Thus, notwithstanding EPA's assertion otherwise (at 9-10), this case is not like *Texas v. EPA* (2011), in which this Court concluded in an unpublished opinion that an EPA rule "applie[d] to *all states* whose implementation plans d[id] not apply the Act's [prevention-of-significant-deterioration] program to greenhouse-gas-emitting sources" and was thus a "nationally applicable" action. 2011 WL 710598 at *3. Nor is this case like *ATK Launch Sys., Inc. v. EPA*, in which the Tenth Circuit found that the challenged rule applied, on its face, to "every state and territory" and was thus "nationally applicable." 651 F.3d 1194, 1198-1200 (10th Cir. 2011). Even considering EPA's Federal Register notice as a whole, that notice applies only to a minority of States and certainly not "every state and territory" required to comply with the "good neighbor" provision.

13

EPA's remaining arguments that this is a "nationally applicable" action fare no better. EPA claims that its action on Texas's SIP is nationally applicable because EPA "applie[s] a 'nationally consistent 4-step interstate transport framework' to evaluate plans submitted by states across the country." Mot. 9 (citing 88 Fed. Reg. at 9,380). But again, "[t]he question of applicability turns on *the legal impact* of the action," not EPA's reasoning. *Texas*, 829 F.3d at 419 (emphasis added). Here, the legal impact of EPA's action is in Texas. EPA's action triggers a statutory obligation and deadline for EPA to "fill the gap" in Texas's SIP, which EPA has done in the form of emission limitations *on Texas sources*. *See* Texas Industry Petitioners' Mot. to Stay, Doc. 32-1 at 9-10 (discussing emission limitations on Texas sources resulting from disapproval).

EPA's "nationally consistent" and "uniform legal interpretation" argument also proves too much. Surely, EPA applies the same legal interpretation of key provisions of the Act in determining whether each SIP is approvable. To do otherwise would be arbitrary and capricious. *See, e.g.*, *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("Unexplained inconsistency" of the application of a statute is a reason for finding that application "to be an arbitrary and capricious change."). The fact that EPA applied the same legal standards to take different discrete actions does not mandate review in the D.C. Circuit. *See Texas*, 829 F.3d at 423. EPA even conceded that individual "states may be able to establish alternative approaches . . . that vary from a nationally uniform framework" and that each such SIP would be judged "in light of the facts and circumstances of each particular state's submission." 88 Fed. Reg. at 9,340.

Finally, EPA's argument (at 12) that its Texas disapproval is nationally applicable because it involves "matters of interstate pollution" misses the mark. For one thing, it is contrary to the record here, in which EPA itself characterizes ozone transport as "regional [in] nature." 88 Fed. Reg. at 9,374 (explaining the "regional nature of the collective contribution problem with respect to ozone"). EPA's post hoc turnabout should be rejected on that basis alone. *See Luminant Generation Co. v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012). But even beyond that, EPA's new position is contrary to this Court's instruction that applicability does not turn upon "where the effects of the action are felt." *Texas,* 2011 WL 710598 at *3. Thus, the fact that Texas's SIP and EPA's disapproval evaluated the impact of Texas emissions on areas outside of Texas is irrelevant to the venue analysis.

If EPA were correct, its actions on interstate-transport SIPs would never be reviewable in regional circuits. That would not just be contrary to this Court's precedent and the plain text of the Act, but it would also contradict how Texas's own SIPs have been adjudicated. As explained above, a trio of cases involving EPA's actions on Texas's interstate-transport SIP for the prior ozone NAAQS was filed in this Court. In one of those cases (involving visibility—prong 4), this Court denied EPA's motion to transfer. *Texas*, 829 F.3d at 419-24. And in another of those cases (No. 16-60670, involving the "good neighbor" prongs at issue here—prongs 1 and 2), EPA raised no objection to venue, undermining its present argument (at 12) that interstate-transport issues must be resolved by the D.C. Circuit because only that court, according to EPA, has the requisite "administrative law expertise."

**B.    The core determinations in EPA's Texas-only final action do not have nationwide scope or effect.**

EPA's Texas disapproval is not based on a determination that has nationwide scope or effect. To apply the "nationwide scope or effect" "exception" to the "default presumption" of review in this Court, the Court "must answer two questions: (1) is the action based on a determination that has nationwide scope or effect; and (2) did the Administrator publish an adequate finding?" *Texas*, 829 F.3d at 419-20. Although EPA claimed in its action here that "the CAA reserves to the EPA complete discretion whether to invoke the exception in [42 U.S.C. § 7607(b)(1)(ii)]," 88 Fed. Reg. at 9,380, this Court has squarely rejected that assertion, *Texas*, 829 F.3d at 420. As the Court has explained, section 7607(b)(1) "looks to the 'determination' that the challenged action is 'based on'"; "[t]hese determinations are the justifications the agency gives for the action and they can be found in the agency's explanation of its action." *Id.* at 419 (quoting 42 U.S.C. § 7607(b)(1)). "[T]he relevant determinations are those that lie at the core of the agency action. Merely peripheral or extraneous determinations are not relevant[.]" *Id*.

Here, in the action itself, EPA identified the "core determinations" for its disapproval of the Texas SIP, and they are not "of nationwide scope or effect." *Id*. EPA disapproved Texas's SIP based on Region 6's evaluation of the "individual" attributes of Texas's SIP. 88 Fed. Reg. at 9,354; *see also id.* at 9,343. Specifically, Region 6 determined that TCEQ's use of the most recent three-year period (2012-2014) to identify downwind maintenance monitors "is less likely to successfully identify maintenance receptors than the EPA method," Region 6 Texas TSD at 11; that

"TCEQ's modeling underestimates future ozone levels" in 2023, 87 Fed. Reg. at 9,829; and that TCEQ's multi-factor weight-of-evidence analysis was not sufficiently "compelling" to "counter" "EPA's [one-percent] contribution methodology," *id*. at 9,833-34; *see* Region 6 Texas TSD at 78. These are exactly the type of "intensely factual determinations" that, under this Court's precedent, do not have nationwide scope or effect. *Texas*, 829 F.3d at 421. Just as in *Texas*, "[t]hese determinations all related to the particularities of the emission sources in Texas" and their alleged impact on downwind air quality. *Id*.

EPA claims that the "nationwide scope or effect" exception applies because EPA applied "the same, nationally consistent 4-step interstate transport framework for assessing obligations for the 2015 ozone NAAQS that it has applied in other nationally applicable rulemakings." Mot. 14 (quoting 88 Fed. Reg. at 9,380). But no binding EPA regulations identify requirements for "good neighbor" SIPs, *see supra* p. 4, and thus EPA could not have applied or interpreted any such regulations in judging Texas's SIP. And EPA claimed that it judged Texas's SIP based on its own "individual" "merits." 88 Fed. Reg. at 9,354.

Nor does EPA's desire for "national uniformity" trump the statutory presumption. The legislative history cited by EPA (at 16) is muddled at best, and it could of course not overcome the clear language of section 7607(b) directing SIP cases to the regional courts of appeals. 42 U.S.C. § 7607(b)(1) (providing that a challenge to "any implementation plan under section 7410 of this title . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit"); *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019)

(confirming that "legislative history is not the law"). And the statute does not mandate "national uniformity" among SIPs. Mot. 16. In fact, it calls for just the opposite. "Congress chose a balanced scheme of state-federal interaction to implement the goals of the Act." *Fla. Power & Light*, 650 F.2d at 581. Under that scheme, "each state [is given] 'wide discretion in formulating its plan' for achieving the air quality standards set by EPA." *Texas*, 829 F.3d at 411 (quoting *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976)). That is just as true for "interstate transport" as it is for other SIP requirements. *See* Texas Industry Petitioners' Mot. to Stay, Doc. 32-1 at 3. And if a SIP does not ultimately achieve its objective (for example, to adequately address "downwind" contribution), the statutory remedy is a "SIP call" by EPA, requiring *the State* to address the shortcoming. *See* 42 U.S.C. § 7410(k)(5). That is how the statute is supposed to work.

Finally, EPA insists (at 16-17) that there is "imminent risk of inconsistent results if these cases are not all transferred to the D.C. Circuit." But as discussed above, Texas Petitioners here are challenging only EPA's disapproval of Texas's SIP, not its disapproval of Utah's SIP or any other State's SIP. *See supra* pp. 10-11. If the Court finds that EPA unlawfully disapproved of Texas's unique weight-of-evidence approach, but the Tenth Circuit finds that EPA lawfully disapproved of Utah's different approach, those separate holdings will stand on their own and cause no conflict for EPA or anyone else. The courts of appeals are perfectly capable of judging "each individual state's submission … on [its] own merits," as EPA claims to have done. 88 Fed. Reg. at 9,354.

## II.    The Motion to Dismiss Should Be Denied.

EPA's alternative request for outright dismissal, relegated to a footnote, is waived for insufficient briefing. *See Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016). Moreover, under *Texas*, the venue provision is not jurisdictional, and EPA acknowledges as much. *See* Mot. 9 n.7. EPA supports its request for dismissal with reference to *Chevron U.S.A., Inc. v. EPA*, 45 F.4th 380 (D.C. Cir. 2022), but that case is inapposite. There, the D.C. Circuit dismissed the petitions because a petition was brought in the Ninth Circuit and dismissal "enabl[ed] its Ninth Circuit action to proceed"; the Court did not hold that a protective petition in the alternative circuit was required. *Id.* at 388.

## III.    Alternatively, the Motion Should Be Carried with the Case.

The record before the Court is sufficiently developed to deny EPA's motion outright at this stage. But if the Court disagrees, it may elect to carry the motion with the case, as it did recently when EPA grouped local actions into one final rule and made unsupported nationwide-scope findings. *See* Order, *Calumet Shreveport Refining, L.L.C. v. EPA*, No. 22-60266 (5th Cir. Oct. 21, 2022) (staying the rule while carrying a transfer motion with the case); Order, *Wynnewood Refining Co., L.L.C. v. EPA*, No. 22-60425 (5th Cir. Nov. 16, 2022) (same).

## CONCLUSION

EPA's motion to dismiss or transfer should be denied or, alternatively, carried with the case.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

/s/ Bill Davis
BILL DAVIS
Deputy Solicitor General
Bill.Davis@oag.texas.gov

MICHAEL R. ABRAMS
WILLIAM F. COLE
JOSEPH N. MAZZARA
Assistant Solicitors General

*Counsel for State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas*

/s/ P. Stephen Gidiere III
P. Stephen Gidiere III
Julia B. Barber
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

Stephanie Z. Moore
Executive Vice President & General Counsel
Daniel J. Kelly
Senior Vice President & Deputy General Counsel
David W. Mitchell
Senior Counsel, Environmental
VISTRA CORP.
6555 Sierra Drive
Irving, Texas 75039

*Counsel for Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC*

/s/ Aaron M. Streett
Aaron M. Streett
Matthew L. Kuryla
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522
aaron.streett@bakerbotts.com

*Counsel for Association of Electric Companies of Texas, BCCA Appeals Group, Texas Chemical Council, and Texas Oil & Gas Association*

## CERTIFICATE OF SERVICE

On March 27, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Trend Micro and is free of viruses.

/s/ P. Stephen Gidiere III
*Counsel for Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC*

## CERTIFICATE OF COMPLIANCE

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,167 words, excluding the parts of the document exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

/s/ P. Stephen Gidiere III
*Counsel for Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC*