NO. 23-60069

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO
CREEK POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS
ENERGY, LLC; MIDLOTHIAN ENERGY, LLC; OAK GROVE
MANAGEMENT COMPANY LLC; WISE COUNTY POWER
COMPANY, LLC; ASSOCIATION OF ELECTRIC COMPANIES OF
TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION
OF TEXAS; AND RAILROAD COMMISSION OF TEXAS; STATE OF
MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY; STATE OF
LOUISIANA; AND LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents*.

---

**MOTION OF PROPOSED INTERVENORS SIERRA CLUB,
DOWNWINDERS AT RISK, AND AIR ALLIANCE HOUSTON
FOR LEAVE TO FILE A RESPONSE IN OPPOSITION TO THE
MOTIONS FOR STAY**

/s/ Joshua D. Smith
Joshua D. Smith
Rose Monahan
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

/s/ Kathleen L. Riley
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Sierra Club,
Downwinders at Risk, and Air
Alliance Houston*

Filed: March 27, 2023

NO. 23-60069

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO
CREEK POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS
ENERGY, LLC; MIDLOTHIAN ENERGY, LLC; OAK GROVE
MANAGEMENT COMPANY LLC; WISE COUNTY POWER
COMPANY, LLC; ASSOCIATION OF ELECTRIC COMPANIES OF
TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION
OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF
MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY; STATE OF
LOUISIANA; AND LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents*.

---

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following

listed persons and entities as described in the fourth sentence of Fifth

i

Circuit Local Rule 28.2.1 have an interest in the outcome of this case.

These representations are made in order that the judges of this court

may evaluate possible disqualification or recusal.

1.  <u>Petitioners</u>: State of Texas; Texas Commission on Environmental Quality; Luminant Generation Company LLC; Coleto Creek Power, LLC; Ennis Power Company, LLC; Hays Energy, LLC; Midlothian Energy, LLC; Oak Grove Management Company LLC; Wise County Power Company, LLC; Association of Electric Companies of Texas; BCCA Appeal Group; Texas Chemical Council; Texas Oil & Gas Association; Mississippi Power Company; State of Mississippi and Mississippi Department of Environmental Quality; Southern Company; State of Louisiana and Louisiana Department of Environmental Quality; Vistra Asset Company LLC; Vistra Corp.; Vistra Intermediate Company LLC, Vistra Operations Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC).

2.  <u>Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality</u>: Ken Paxton, Attorney General of Texas; Michael R. Abrams, Assistant Solicitor General; Williams F. Cole, Assistant Solicitor General; Bill Davis, Deputy Solicitor General; Joseph N. Mazzara, Assistant Solicitor General; Judd Stone, Solicitor General; Brent Webster, First Assistant Attorney General, all with the Office of the Attorney General for the State of Texas.

3.  <u>Counsel for Petitioners Luminant Generation Company LLC and Luminant Mining Company LLC</u>: P. Stephen Gidiere III; Julia B. Barber; C. Grady Moore III, Susan Scaggs

Stutts, and Shawn S. Shurden with Balch & Bingham, LLP; Stephanie Z. Moore, Daniel J. Kelly, and David W. Mitchell.

4. <u>Counsel for Petitioners Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Council, Texas Oil & Gas Association</u>: Baker Botts L.L.P; Matthew L. Kuryla; Aaron M. Streett.

5. <u>Counsel for Petitioner State of Mississippi and Department of Environmental Quality</u>: Lynn Fitch, Attorney General; Justin Matheny, Deputy Solicitor; Whitney H. Lipscomb, Deputy Attorney General all with the State of Mississippi Office of the Attorney General.

6. <u>Counsel for Petitioner State of Louisiana and Louisiana Department of Environmental Quality</u>: Jeff Landry, Attorney General; Joseph S. St. John, Deputy Solicitor General; Elizabeth B. Murrill, Solicitor General; Machelle Hall, Assistant Attorney General with the Louisiana Department of Justice; Courtney J. Burdette and Jill C. Clark with the Louisiana Department of Environmental Quality.

7. <u>Respondents</u>: United States Environmental Protection Agency; Michael S. Regan, Administrator, U.S. Environmental Protection Agency; David Gray, Acting Regional Administrator, Region 6, U.S. Environmental Protection Agency; Daniel Blackman, Regional Administrator, Region 4, U.S. Environmental Protection Agency; Earthea Nance, Regional Administrator.

8. <u>Counsel for Respondents United States Environmental Protection Agency and Michael S. Regan</u>: Merrick Garland, Attorney General of the U.S. Department of Justice; Jin Hyung Lee with the U.S. Department of Justice Environment & Natural Resources Division; Todd Kim, Assistant Attorney General; Jeffrey M. Prieto.

9. <u>Proposed-Intervenors</u>: Sierra Club is a non-profit organization that maintains open membership invitation to

organizations, businesses, individuals, and the public in general. Accordingly, Sierra Club consists of many individual members.

Air Alliance Houston is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters in Houston, Texas. Air Alliance Houston works to reduce air pollution in the Houston region to protect public health and environmental integrity through research, education, and advocacy.

Downwinders at Risk is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters located in Dallas, Texas. Downwinders at Risk is a diverse grassroots citizens group dedicated to protecting public health and the environment

Neither Sierra Club, Air Alliance Houston, nor Downwinders at Risk have any parent companies; and no publicly-held company owns a 10% or greater interest in Sierra Club, Air Alliance Houston, or Downwinders at Risk.

10. <u>Counsel for Proposed-Intervenors</u>: Joshua Smith and Zachary Fabish with Sierra Club; Kathleen L. Riley and Seth L. Johnson, with Earthjustice.

Respectfully submitted,

*/s/ Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
415.977.5560 (phone)
Joshua.smith@sierraclub.org

## MOTION FOR LEAVE TO FILE
## A RESPONSE TO THE MOTIONS TO STAY

Proposed-Intervenors Sierra Club, Downwinders at Risk, and Air Alliance Houston, and Downwinders at Risk respectfully move for leave to file the attached response in opposition to the motions filed by the Texas State Petitioners[1] and Texas Industry Petitioners[2] to stay the U.S. Environmental Protection Agency ("EPA") action at issue in this case ("Stay Motion"). In support of the Motion, Proposed-Intervenors state:

1.     This case involves petitions for review filed by Texas, Louisiana, Mississippi, and several power plants and industrial sources in two states, challenging a single EPA rule disapproving Clean Air Act state implementation plans for 21 states, *Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality*

---

[1] The "Texas State Petitioners" are the State of Texas, the Texas Commission on Environmental Quality ("TCEQ"), the Public Utility Commission of Texas, and the Railroad Commission of Texas.
[2] The "Texas Industry Petitioners" are Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, Wise County Power Company, LLC, Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Counsel, and Texas Oil & Gas Association.

*Standards*, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("Disapproval Rule").

EPA disapproved all 21 state implementation plans, in part, because

each of the state plans failed to require emission reductions necessary

to eliminate each respective state's contribution to harmful interstate

ozone pollution.

2.    On February 14, 2023, Texas State Petitioners and Texas

Industry Petitioners filed petitions for judicial review of EPA's

Disapproval Rule in this Court. Case No. 23-60069. On March 16,

Mississippi also filed a petition for review in this Court. Case No. 23-

60069. The next day, on March 17, Mississippi Power Company filed a

separate petition. *Id.* Louisiana then filed for review on March 20, 2023.

*Id.*

3.    Meanwhile, on March 3, 2023, the Texas State Petitioners

and the Texas Industry Petitioners each filed motions to stay the

Disapproval Rule, seeking, alternatively, to stay the Disapproval Rule

as to Texas or in its entirety. *See* Texas Pet'rs' Mot. to Stay Final Action

at 20 ("The Court should stay, pending review, the part of the Final

Rule that disapproves Texas's SIP."); Texas Industry Pet'rs' Mot. to

Stay Final Action at 21 ("the Court should stay EPA's disapproval and

prohibit EPA from taking any action in reliance on that disapproval pending conclusion of these proceedings.").

4.     Concurrent with this Motion for Leave, Proposed-Intervenors are timely filing a Motion for Leave to Intervene in each of the petitions for review filed in the above-captioned case.

5.     As explained in detail in their Motion for Leave to Intervene, Proposed-Intervenors are non-profit organizations, with tens of thousands of members in Texas, Louisiana, Mississippi, and the other states subject to the Disapproval Rule, and dedicated to protecting public health and the environmental from the impacts of harmful ozone pollution.

6.     To further their interests in reducing ozone pollution in Texas, Louisiana, and Mississippi, as well as harmful ozone pollution that travels from those states downwind to other states, Proposed-Intervenors have worked for years in the Clean Air Act rulemaking processes and judicial proceedings leading up to the Disapproval Rule, including, among others:

- *The Original Cross-State Air Pollution Rule. See* Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (and consolidated cases) (D.C. Cir. Oct. 12, 2011).

- *The Cross-State Air Pollution Rule Update. See* Order, *Wisconsin v. EPA*, No 16-1406 (and consolidated cases) (D.C. Cir. Jan. 31, 2017); *see also Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019).

- *The Cross-State Air Pollution Rule Close-Out.* Brief of Citizen Petitioners, *New York v. EPA*, No. 19-1019 (and consolidated cases) (D.C. Cir. Apr. 19, 2019); *see also New York v. EPA*, 781 F. App'x 4, 7 (D.C. Cir. 2019).

- *The Revised Cross-State Air Pollution Rule Update. See* Complaint, *Downwinders at Risk, et al.*, No. 20-cv-00349 (D.D.C. Feb. 7, 2020); *New Jersey*, 475 F. Supp. 3d at 308; *see also Midwest Ozone Group v. EPA*, No. 21-1146, 2023 WL 2337782 (D.C. Cir. Mar. 3, 2023).

- *The Disapproval Rule. See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021).

7.     EPA issued the Disapproval Rule in response to Proposed-Intervenors' lawsuit to compel the agency to fulfill its Clean Air Act obligations to ensure that the states adequately address their harmful downwind air pollution. *See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021); *see also* Complaint, *State of New York, et al. v. Regan*, 1:21-ccv-00252-ALC (S.D.N.Y. Jan. 12, 2021).

8.     Thus, Proposed-Intervenors have protectable aesthetic, recreational, health, cultural, and environmental benefits interests in this case.  The outcome of this case will determine whether EPA must

4

allow Texas, Louisiana, Mississippi, and the 18 other states subject to the rule to continue doing nothing to eliminate their contribution to interstate pollution, prolonging Proposed-Intervenors' members' exposure to unhealthy air. Proposed-Intervenors also have a strong interest in the uniform and consistent interpretation and national application of the requirements of the Clean Air Act, including the Act's requirement that each state eliminate pollution that significantly contributes to unhealthy air in other states, or interferes with downwind states' ability to meet air quality standards.

9. Proposed-Intervenors were not parties to this case when the Texas State and Texas Industry Petitioners moved to stay the Disapproval Rule. Thus, Proposed-Intervenors were not served with the Stay Motions, and were not immediately aware that the Texas State and Industry Petitioners sought to stay the rule, either as to Texas or in its entirety. *See* Texas Pet'rs' Mot. to Stay Final Action at 20; Texas Industry Pet'rs' Mot. to Stay Final Action at 21.

10. On March 8, 2023, the Court issued an order extending the deadline to file a response to the motions for stay pending appeal in this case to March 27, 2023.

5

11.    Proposed-Intervenors respectfully request that the Court allow the filing of the accompanying proposed response and exhibits so that it may contribute to the Court's deliberations concerning the Motions to Stay. The Texas Industry Petitioners apparently move to stay the national Disapproval Rule in its entirety. Texas Industry Pet'rs' Mot. to Stay Final Action at 21 ("the Court should stay EPA's disapproval and prohibit EPA from taking *any* action in reliance on that disapproval pending conclusion of these proceedings") (emphasis added). In any event, given that several states adopted methodologies for evaluating downwind pollution that were identical or similar to Texas's, the Motions to Stay raise significant legal and factual issues that could affect the implementation of the national rule. *See, e.g.*, 88 Fed. Reg. at 9,359 (noting Ohio and Oklahoma adopted Texas's methodology for identifying maintenance receptors); *id.* at 9,369 (disapproving all 21 state plans because "no state provided any enforceable emission control strategies"). Proposed-Intervenors respectfully submit that consideration of the accompanying response will assist the Court in the resolution of those legal and factual issues in a consistent and efficient manner.

12.    Pursuant to Fifth Circuit Rule 27.4, Proposed-Intervenors have consulted with counsel for the other parties in this case. EPA, the Texas State Petitioners, the Mississippi State Petitioners,[3] the Louisiana State Intervenors,[4] the Texas Industry Petitioners, and Mississippi Power Company represented that they cannot consent without reviewing the motion, and reserve their right to respond.

For the foregoing reasons, Proposed-Intervenors request leave to file the accompanying Response in Opposition to the Motions for Stay of the Final Rule.

Respectfully submitted,

*s/ Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560 (phone)
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446

---

[3] The "Mississippi State Petitioners" are the State of Mississippi and the Mississippi Department of Environmental Quality.
[4] The "Louisiana State Petitioners" are the State of Louisiana and the Louisiana Department of Environmental Quality.

zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

*/s/ Kathleen L. Riley*
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Sierra Club, Air Alliance
Houston, and Downwinders at Risk*

## CERTIFICATE OF CONFERENCE

Pursuant to Fifth Circuit Rule 27.4, Proposed-Intervenors have consulted with counsel for the other parties in this case. EPA, the Texas State Petitioners, the Mississippi State Petitioners, the Louisiana State Intervenors, the Texas Industry Petitioners, and Mississippi Power Company represented that they cannot consent without reviewing the motion, and reserve their right to respond.

Dated: March 27, 2023

_s/ Joshua Smith_
Joshua Smith
Counsel for Sierra Club

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned counsel states that this motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 1,275 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated: March 27, 2023

*s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

# CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: March 27, 2023

*s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

# CERTIFICATE OF SERVICE

On this 27th day of March, 2023 a true and correct copy of the foregoing Motion of Proposed Intervenors Sierra Club, Downwinders at Risk, and Air Alliance Houston for Leave to File a Response in Opposition to the Motions for Stay was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Fifth Circuit, which will provide electronic notice to counsel of record.

*/s/ Joshua Smith*
Joshua Smith

NO. 23-60069

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO
CREEK POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS
ENERGY, LLC; MIDLOTHIAN ENERGY, LLC; OAK GROVE
MANAGEMENT COMPANY LLC; WISE COUNTY POWER
COMPANY, LLC; ASSOCIATION OF ELECTRIC COMPANIES OF
TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION
OF TEXAS; AND RAILROAD COMMISSION OF TEXAS; ; STATE OF
MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA;
AND LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents*.

---

**RESPONSE IN OPPOSITION
TO THE MOTIONS TO STAY THE FINAL RULE**

*/s/ Joshua D Smith*
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

/s/ Kathleen L. Riley
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G. St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Sierra Club,
Downwinders at Risk, and Air
Alliance Houston*

Filed: March 27, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................i

TABLE OF AUTHORITIES.............................................................ii

INTRODUCTION........................................................................1

STANDARD OF REVIEW ..............................................................5

ARGUMENT .............................................................................5

  I. MOVANTS ARE NOT LIKELY TO SUCCEED ON THE
    MERITS..............................................................................5

    A.  Venue does not lie in this Court. .......................................6

    B.  EPA is Not Required to Defer to Texas's Incorrect
        Determination that Texas does Not Significantly
        Contribute to Air Quality Problems in Other States. ........8

    C.  Movants Cannot Show Any Infirmity in EPA's Evaluation
        of the "Interference-with-Maintenance" Prong. ...............11

    D.  Movants' Other Arguments Fail......................................15

  II.  MOVANTS WILL NOT SUFFER IRREPARABLE
    HARM. ............................................................................17

  III. A STAY WOULD HARM OTHER PARTIES AND THE
    PUBLIC INTEREST. ..........................................................23

CONCLUSION ........................................................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMIT ....................................................................................34

CERTIFICATIONS UNDER ECF FILING STANDARDS ...........35

CERTIFICATE OF SERVICE ......................................................36

# TABLE OF AUTHORITIES

**Cases**

*Alcoa, Inc. v. EPA,*
No. 04-1189, 2004 WL 2713116 (D.C. Cir. Nov. 24, 2004) ................... 7

*ATK Launch Systems, Inc. v. EPA,*
651 F.3d 1194 (10th Cir. 2011) ........................................................ 6, 7

*Barnhart v. Peabody Coal Co.,*
537 U.S. 149 (2003) ............................................................................ 16

*Chaplaincy of Full Gospel Churches v. England,*
454 F.3d 290 (D.C. Cir. 2006) ........................................................... 18

*Duke Power v. Carolina Env't Study Gr.,*
438 U.S. 59 (1978).............................................................................. 28

*EME Homer City Generation, L.P. v. EPA,*
795 F.3d 118 (D.C. Cir. 2015) ...................................................... 12, 13

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
762 F.2d 464 (5th Cir. 1985) ............................................................... 5

*EPA v. EME Homer City Generation, L.P.,*
572 U.S. 489 (2014) ........................................................ 8, 15, 16, 20

*La. Dept. of Envtl. Quality v. EPA,*
730 F.3d 446 (5th Cir. 2013)............................................................... 16

*Luminant Generation Co. v. EPA,*
675 F.3d 917 (5th Cir. 2012) ............................................................. 10

*Michigan v. EPA,*
213 F.3d 663 (D.C. Cir. 2000) ....................................................... 9, 15

*Nat'l Ass'n of Farmworkers Orgs. v. Marshall,*
628 F.2d 604 (D.C. Cir. 1980) ........................................................... 28

*North Carolina v. EPA,*
531 F.3d 896 (D.C. Cir 2008) ............................................................ 11

*Pierce v. SEC,*
786 F.3d 1027 (D.C. Cir. 2015) ......................................................... 14

*S. Ill. Power Coop. v. EPA,*
863 F.3d 666 (7th Cir. 2017)............................................................... 6

ii

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) ................................................ 7, 10, 20, 21

*Texas v. EPA,*
    983 F.3d 826 (5th Cir. 2020) ...................................................... 6, 15, 16

*Texas v. EPA,*
    No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) .................. 6, 7

*Train v. Nat. Res. Def. Council, Inc.,*
    421 U.S. 60 (1975) ......................................................................................... 8

*Westar Energy, Inc. v. EPA,*
    608 F. App'x 1 (D.C. Cir. 2015) ........................................................ 9, 11

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ........................................................................ 5, 17, 22

*Wis. Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985) ..................................................... 17, 19, 21

*Wisconsin v. EPA,*
    938 F.3d 303 (D.C. Cir. 2019) .......................................................... 12, 17

## Statutes

42 U.S.C. § 7409 ................................................................................................. 1

42 U.S.C. § 7410 ................................................................... 2, 7, 14, 21, 28

42 U.S.C. § 7607 ......................................................................................... 6, 19

## Regulations

80 Fed. Reg. 65,291 (Oct. 26, 2015) ............................................................ 2

88 Fed. Reg. 9,336 (Feb. 13, 2023) ........................ 1, 2, 3, 4, 5, 7, 8, 11, 14

## Other Authorities

EPA, 2015 Ozone NAAQS Interstate Transport SIP Disapprovals –
    Response to Comment Document, Document ID No. EPA-HQ-OAR-
    2021-0663-0083 ..................................................................................... 13, 14

U.S. EPA, Data File with 2016v3 Ozone Design Values and
    Contributions, Document ID No. EPA-HQ-OAR-2021-0663-0070 ..... 26

Sierra Club, Air Alliance Houston, and Downwinders at Risk (collectively, the "Environmental Intervenors") file this response in opposition to the Texas State Petitioners'[1] and Texas Industry Petitioners'[2] (collectively, "Movants") motions to stay EPA's final action, *Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards*, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("Disapproval Rule").

## INTRODUCTION

Under the Clean Air Act, EPA is required to set and periodically revise National Ambient Air Quality Standards ("NAAQS") for various criteria air pollutants, including ground-level ozone, at levels "requisite to protect the public health." 42 U.S.C. § 7409(b)(1). Once a new NAAQS is set, each state is obligated to "adopt and submit to" EPA a state implementation plan ("SIP") that, among other things, contains

---

[1] The "Texas State Petitioners" are the State of Texas, the Texas Commission on Environmental Quality, the Public Utility Commission of Texas, and the Railroad Commission of Texas.

[2] The "Texas Industry Petitioners" are Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, Wise County Power Company, LLC, Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Counsel, and Texas Oil & Gas Association.

"adequate provisions" to "prohibit[] . . . any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will contribute significantly to nonattainment in, or interfere with maintenance by, any other State"–the so-called "Good Neighbor Provision." *Id.* §§ 7410(a)(1), 7410(a)(2)(D)(i)(I). Once EPA receives a SIP, it is obligated to approve or disapprove the SIP based on whether "it meets all of the applicable requirements" of the Clean Air Act, including the Good Neighbor requirement. *Id.* § 7410(k)(3).

In 2015, EPA finalized a new health-based National Ambient Air Quality Standard ("NAAQS") for ground-level ozone of 70 parts per billion, triggering states' obligation to prepare and submit SIPs. *See* 80 Fed. Reg. 65,291 (Oct. 26, 2015). Many (although not all) states submitted SIPs concerning the Good Neighbor requirement, and on February of this year, EPA issued a single rule disapproving (in whole or in part) 21 SIPs. 88 Fed. Reg. 9,336.[3]

---

[3] The Disapproval Rule addressed SIP submittals from Alabama, Arkansas, California, Illinois, Indiana, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Jersey, New York, Ohio, Oklahoma, Texas, Utah, West Virginia, and Wisconsin. 88 Fed. Reg. at 9,338.

In this national Disapproval Rule, EPA applied the same "4-step framework" to assess the SIPs' adequacy in meeting the Good Neighbor Provision requirement:

(1) Identify monitoring sites that are projected to have problems attaining and/or maintaining the NAAQS;

(2) identify states that impact those air quality problems in other (i.e., downwind) states sufficiently such that the states are considered "linked" and therefore warrant further review and analysis;

(3) identify the emissions reductions necessary, applying a multifactor analysis, to eliminate each linked upwind state's significant contribution to nonattainment or interference with maintenance of the NAAQS in downwind states; and

(4) *adopt permanent and enforceable measures needed to achieve those emissions reductions*.

88 Fed. Reg. at 9,338 (emphasis added).[4] Using a nationwide ozone transport modeling analysis, EPA concluded that each of the 21 states' pollution emissions were "linked" to monitors in downwind states that were either projected to have attainment or maintenance problems with

---

[4] EPA has used this 4-step framework for good neighbor requirements with many prior NAAQS: the 1997 ozone NAAQS, the 1997 fine particle NAAQS, the 2006 fine particle NAAQS, and the 2008 ozone NAAQS. *See* Disapproval Rule, 88 Fed. Reg. at 98,338.

the NAAQS, or for which 2021 and 2022 real-world monitor data

*showed* problems with attaining the standard. 88 Fed. Reg. at 9,353-54.

**Figure 1: EPA's Ozone Transport Linkage Map**



EPA found that Texas contributed to unsafe ozone levels across

state lines at 20 different locations, including a "contribution [of] 4.74

ppb to Dona Ana County, New Mexico." 88 Fed. Reg. at 9,359. However,

Texas's SIP—like all of the 21 SIPs EPA disapproved— "included *no*

*permanent and enforceable emissions controls*," and thus did nothing to

4

address Texas's cross-state air pollution or fulfill the Good Neighbor requirement. 88 Fed. Reg. at 9,360 (emphasis added). Despite Texas's do-nothing plan being correctly disapproved, Movants now seek a stay of the Disapproval Rule.

## STANDARD OF REVIEW

A stay is "an extraordinary and drastic remedy," only available if Movants can carry the "heavy burden" of making a strong showing that (1) they are likely to succeed on the merits; (2) they will be irreparably injured by the challenged action absent a stay; (3) issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) the public interest supports a stay. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20-21 (2008).

## ARGUMENT

## I.    MOVANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

Movants fail to carry their heavy burden of demonstrating that EPA's Disapproval Rule is likely arbitrary, capricious, not in accordance

with law, or in excess of EPA's statutory authority. *Texas v. EPA*, 983

F.3d 826, 836 (5th Cir. 2020).

### A.    Venue does not lie in this Court.

Movants are unlikely to succeed because Movants have filed their

challenges in the wrong court. The Clean Air Act dictates that

challenges to nationally applicable actions "may be filed only" in the

U.S. Court of Appeals for the District of Columbia Circuit. 42 U.S.C. §

7607(b)(1); *see, e.g.*, *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3

(5th Cir. Feb. 24, 2011) (unpublished) (transferring Texas's petition for

review of EPA's call for thirteen states over seven federal circuits to

revise their state plans to the D.C. Circuit); *ATK Launch Systems, Inc.

v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011); *S. Ill. Power Coop. v.

EPA,* 863 F.3d 666 (7th Cir. 2017). Similarly, challenges to regionally

applicable actions that EPA finds are based on a determination of

nationwide scope and effect, and for which EPA publishes such a

finding, "may be filed only" in the D.C. Circuit. 42 U.S.C. § 7607(b)(1).

The Disapproval Rule is nationally applicable because, on its face,

"the legal impact of the action as a whole" applies to all 21 states–

spanning the entire continental U.S.–whose plans improperly failed to

6

eliminate emissions that significantly contribute to nonattainment in other states. *Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016); *Texas v. EPA*, 2011 WL 710598, at *3 ("This far-flung collection of states comprises no "region" of which we are aware."); *ATK Launch Systems*, 651 F.3d at 1197 (recognizing that national applicability turns on the "face" of the action, not "the effects complained of or petitioner's challenge," and holding that EPA's action designating 31 nonattainment areas across the country, including areas with no local or regional connection to each other was nationally applicable."); *see* 42 U.S.C. § 7410(a)(2)(D).

Even if the Disapproval Rule were not nationally applicable, EPA reasonably found and published a finding that the rule is "based on a determination of 'nationwide scope or effect,'" with venue accordingly lying only in the D.C. Circuit. 88 Fed. Reg. at 9,380; see *Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116, at *1 (D.C. Cir. Nov. 24, 2004) (unpublished). Consistent with Supreme Court precedent, the Disapproval Rule applies a uniform framework of policy judgments and technical methods to disapprove 21 state plans that each failed to include measures to reduce interstate ozone. The rule is also based on

EPA's nationwide determination that Texas's approach to identifying

monitors that struggle to maintain the standard—which at least two

states outside this Circuit, Ohio and Oklahoma, adopted and relied

upon—was flawed. *See* 88 Fed. Reg. at 9,358-59. Because EPA's

determination of nationwide scope and effect was reasonable, venue

belongs in the D.C. Circuit, and a stay of the rule in this Court would be

improper.

> **B.    EPA is Not Required to Defer to Texas's Incorrect
> Determination that Texas does Not Significantly
> Contribute to Air Quality Problems in Other States.**

Industry Petitioners argue that the national Disapproval Rule is

unlawful because EPA "failed to defer to Texas's approach in complying

with the Clean Air Act," Industry Mot. 11-13, but this misapprehends

the structure of the Act. While states enjoy discretion in developing

state implementation plans, EPA is responsible for setting the air

quality goals that each SIP must attain. *See Train v. Nat. Res. Def.

Council, Inc.*, 421 U.S. 60, 79 (1975). The Good Neighbor Provision is no

different. *See EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489,

513 (2014) ("the Good Neighbor Provision delegates authority *to EPA*"

to determine the amounts of pollution that contribute significantly to

downwind air quality problems) (emphasis added). Here, just because Texas incorrectly concluded that it was not contributing significantly to downwind air quality problems does not mean that EPA must accord any deference to that erroneous determination.

The precise argument advanced by Industry Petitioners was rejected more than two decades ago in *Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000). The petitioners in *Michigan* relied on *Train* to argue EPA's decision to promulgate emission reduction targets for the states under the Good Neighbor Provision "impermissibly intrude[d] on the statutory right of the states to fashion their SIP submissions in the first instance." *Id.* at 686. The Court disagreed, explaining that "[w]hile the states have considerable latitude in fashioning SIPs, the [Clean Air Act] nonetheless subjects the States to strict minimum compliance requirements and gives EPA the authority to determine a state's compliance with the requirements." *Id.* at 687 (quoting *Union Elec. Co. v. EPA*, 427 U.S. 246, 256-57 (1976)). Subsequent cases have reaffirmed that "EPA has the authority to determine whether SIPs comply with" the Good Neighbor Provision. *Westar Energy, Inc. v. EPA*, 608 F. App'x 1, 3 (D.C. Cir. 2015).

Neither *Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) nor *Luminant Generation Co. v. EPA*, 675 F.3d 917 (5th Cir. 2012) conflicts with *Michigan*. Each case quotes *Train* for the proposition that states are "at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation" *so long as* "the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air." *Texas*, 829 F.3d at 411 (quoting *Train*, 421 U.S. at 79); *accord Luminant*, 675 F.3d at 921 (quoting same language). Unlike the present situation, in those cases, this Court found that Texas's SIP was consistent with the air quality goals established by EPA. *See Texas*, 829 F.3d at 426 (EPA likely exceeded its statutory authority by "disapproving the Texas and Oklahoma reasonable progress goals *even though the goals complied with the Clean Air Act's standard*.") (emphasis added); *Luminant*, 675 F.3d at 930 (holding that EPA acted unlawfully in disapproving a SIP revision where EPA's action was not "necessary to safeguard the NAAQS").

Here, Texas's SIP does not include *any* measures to achieve compliance with the "strict minimum compliance requirements" established by the Good Neighbor Provision. Accordingly, EPA properly

10

determined that the SIP was not approvable. *See Westar Energy*, 608 F. App'x at 3 ("EPA acted well within the bounds of its delegated authority when it disapproved of Kansas's proposed SIP" for failure to comply with the Good Neighbor Provision).

### C. Movants Cannot Show Any Infirmity in EPA's Evaluation of the "Interference-with-Maintenance" Prong.

In the Disapproval Rule, EPA noted that Texas "advocated for use of its own definition of maintenance receptors and modeling," and explained that EPA determined that Texas's approach was "inadequately justified and legally and technically flawed." 88 Fed. Reg. at 9,359.

Contrary to Petitioners' argument that EPA lacks authority to disapprove a SIP on that basis, Industry Mot. 15, or that EPA arbitrarily changed its approach, Texas Mot. 12-13, Congress entrusted EPA with the authority to determine how much a state must reduce its pollution in order to prevent interference with downwind maintenance. *See North Carolina v. EPA*, 531 F.3d 896, 910 (D.C. Cir 2008) ("*EPA must give effect to both provisions*") (emphasis added); *contra* Industry Mot. 13-14 (citing *North Carolina* for the proposition that "*the State*"

must give meaning to both prongs). The D.C. Circuit has repeatedly upheld EPA's approach to identifying maintenance receptors against state and industry challenges. *See Wisconsin v. EPA*, 938 F.3d 303, 325 (D.C. Cir. 2019)*; EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 136 (D.C. Cir. 2015) (Kavanaugh, J.). And Texas's contention (Texas Mot. 13-14) that EPA "changed course" in the October 2018 memorandum is based on a flagrant misreading of that memorandum. EPA did not instruct states "to use receptors located in areas where ozone has been trending downward since 2011" (*contra* Texas Mot. 13); rather, EPA indicated that states could *eliminate* those monitors from further consideration under the maintenance prong in certain circumstances.[5]

In any event, EPA provided a rational explanation for rejecting the methodology Texas and other states used for identifying maintenance receptors—i.e., those areas that may struggle to maintain the NAAQS. To identify those areas, EPA has long recommended

---

[5] *See* Oct. 2018 Memorandum at 4 ("EPA believes that states may, in some cases, eliminate a site as a maintenance receptor if the site is currently measuring clean data" if, *inter alia*, "ozone concentrations have been trending downward at the site since 2011" and "emissions are expected to continue to decline").

developing a future design value[6] for each monitor based on the

*maximum* three-year design value over a five-year period. EPA, 2015

Ozone NAAQS Interstate Transport SIP Disapprovals – Response to

Comment Document, Document ID No. EPA-HQ-OAR-2021-0663-0083,

at 227 ("RTC"). For the base year 2011, for example, a state would use

the maximum design value from 2009-2011, 2010-2012, or 2011-2013. If

that value exceeds the NAAQS, the receptor is considered a

maintenance receptor. Instead of following that approach, however,

Texas evaluated only the most recent three-year period, regardless of

the maximum value. EPA reasonably concluded that Texas's approach

failed to account for the "effects of inter-annual variability in ozone

conducive meteorology" over the relevant timeframe, making "it appear

that an area is closer to attaining the NAAQS than . . . if more typical

meteorological conditions had occurred." RTC at 227. EPA applied that

same approach in the Cross-State Air Pollution Rule, which was upheld

in *EME Homer City Generation, L.P. v. EPA,* 795 F.3d 118, 136 (D.C.

Cir. 2015).

---

[6] A design value is a statistic that describes the air quality status of a given location relative to the level of the NAAQS.

13

Even if there was some flaw in EPA's approach to identifying maintenance receptors, EPA reasonably disapproved Texas's plan. Indeed, *using Texas's own methodology*, Texas emissions exceeded the significant contribution threshold for several downwind maintenance monitors and nonattainment areas. *See* RTC at 243-24. The Good Neighbor Provision requires Texas to prohibit in-state emissions "in amounts which . . . contribute significantly to nonattainment in, *or* interfere with maintenance" of the NAAQS in any other State. 42 U.S.C. § 7410(a)(2)(D)(i) (emphasis added). Thus, EPA was required to disapprove Texas's SIP if it failed to comply with *either* prong of the statute. *North Carolina,* 531 F.3d at 910 (the provision is "written in the disjunctive"). EPA found that Texas's SIP failed to satisfy *both* requirements. 88 Fed. Reg. at 9,359 ("Texas is projected to be linked above 1 percent of the NAAQS to one nonattainment receptor and nine maintenance-only receptors" as well as ten other receptors that are not attaining the NAAQS). Because the SIP failed to eliminate Texas's significant contribution to downwind nonattainment, the SIP disapproval must be upheld. *See Pierce v. SEC*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) ("It is well understood in administrative law that a

14

reviewing court will uphold an agency action resting on several independent grounds if any of those grounds validly supports the result.").

### D.  Movants' Other Arguments Fail.

The remainder of Movants' arguments are similarly without merit. First, Texas State Petitioners argue that it was improper for EPA to use data, specifically emissions data from 2014 to 2018, that were not available at the time Texas submitted its SIP. Texas Mot. 17. But, as the Supreme Court has explained, the Clean Air Act "does not require EPA to furnish upwind States with information *of any kind* before disapproving a good neighbor SIP." *Homer City*, 572 U.S. at 510 (emphasis added); *see also Michigan*, 213 F.3d at 674 (holding that EPA was entitled to rely on modeling that it made available on the Internet six weeks prior to the final rule).

Second, Industry Petitioners cite *Texas v. EPA*, 983 F.3d 826, 839 (5th Cir. 2020) for the proposition that this one-percent threshold "does not appear in the text" of the Good Neighbor Provision. Industry Mot. 15. But that case simply stands for the proposition that EPA's interpretation of the Good Neighbor Provision significance threshold

15

had "no bearing on" how EPA designates nonattainment areas, 983 F.3d at 839; it does not cast any doubt on EPA's use of that threshold to determine significant contribution. *Id.* at 839 n.6. In any event, the Supreme Court has upheld EPA's one-percent threshold. *Homer City*, 572 U.S. at 524.

Third, Movants suggest that EPA's Disapproval Rule was improper because EPA missed its deadline for action. *See, e.g.,* Texas Mot. 17; Industry Mot. 8. Yet, failure to meet a statutory deadline does not deprive a federal agency of the authority to act, unless there is clear Congressional intent to the contrary. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003) (noting that the Court does not "construe[] a provision that the Government 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later."); *La. Dept. of Env't Quality v. EPA*, 730 F.3d 446, 449 (5th Cir. 2013). There is no indication in the Clean Air Act that Congress intended to deprive EPA's authority to act after missing a deadline.

Notably, Texas's alleged harm from EPA's delay is that the agency used updated ozone data to disapprove Texas's submission. Texas Mot. 17. Yet, Texas does not argue that the 2014-2018 ozone data is

16

inaccurate or otherwise invalid; instead, Texas's argument appears to be that EPA should be barred from acting on the best available science when reviewing SIPs. That argument is without merit. *Wisconsin,* 938 F.3d at 321-22 (rejecting Delaware's claim that EPA was bound to 2011 data—the year States' SIPs were due to EPA—when issuing a final rule in 2016 based on projected NOx emission rates in 2017).

## II.    MOVANTS WILL NOT SUFFER IRREPARABLE HARM.

The Texas State and Industry Intervenors allege harms from a *separate* agency action not actually before this Court. Industry Mot. 18-19. Texas State Petitioners also attempt to argue that the Disapproval Rule "disrupts" the Clean Air Act's cooperative federalism mandate. Texas Mot. 18. These conclusory allegations fail to establish the imminent and concrete irreparable injury necessary for a stay of the Disapproval Rule. *Winter*, 555 U.S. at 22 (A preliminary injunction is an "extraordinary remedy" that "will not be issued simply to prevent the possibility of some remote future injury.").

None of Movants' purported economic or reliability harms "directly result" from the Disapproval Rule. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (The movant must show concrete,

imminent, and substantial harm "will directly result from the action

which the movant seeks to enjoin."). Indeed, Movants' declarations

make clear that each of those speculative harms are not the result of

the Disapproval Rule, but of a *separate* agency action that is not

actually before the Court. Rickerson Decl. ¶¶ 2, 14, 37 (EPA's "*proposed*

FIP" "*could* lead" to reliability concerns) (emphasis added); Price Decl.

¶¶ 10, 28 (emission allowances "*may* not" be available under EPA's

"*proposed*" FIP) (emphasis added); Zahn Decl. ¶¶ 5, 16 (The "*proposed*

FIP, *if* adopted and upheld," could impose requirements that "*may* not

be possible") (emphasis added).[7] Movants' statements underscore the

fundamental defect in the stay motions: their burden is to show that the

Disapproval Rule they are challenging *in this action* will cause

irreparable harm of "discrete injury that is of such *imminence* that

equitable relief is urgently necessary." *Chaplaincy of Full Gospel

Churches v. England*, 454 F.3d 290, 298 (D.C. Cir. 2006) (denying

---

[7] Texas Industry Petitioners' misrepresent the record. The Electric
Reliability Council of Texas ("ERCOT") has *not* "determined that *EPA's
disapproval* will endanger" reliability. Industry Mot. 20 (emphasis
added). ERCOT's declarant asserts that such harms, if they ever occur,
"*could* result" from EPA's separately "*proposed FIP,*" Rickerson Decl.
¶¶2, 37 (emphasis added), which, again, is not before this Court.

injunctive relief where a Navy employment policy only reduced opportunities for possible promotions, and review of subsequent non-promotion decisions was available) (emphasis in original). Pointing to some other rule that they may (or may not) challenge in some other court, at some other time, does not show harm—let alone imminent irreparable harm—as direct result of the Disapproval Rule. *Wis. Gas Co.*, 758 F.2d at 674.

Recent events highlight the speculative nature of Movants' alleged harms. In the prepublication version of the Good Neighbor Plan—which EPA issued after Petitioners moved to stay the Disapproval Rule—EPA "made several adjustments to the proposed emissions reduction requirements for power plants—reflecting input received from grid operators across the country and other stakeholders."[8] To the extent Movants are actually harmed by that separate, national rule, they may consider challenging it in another action before the appropriate court. 42 U.S.C. § 7607(b). Because "corrective relief" for Movants' alleged

---

[8] EPA's "Good Neighbor" Plan Cuts Ozone Pollution – Overview Fact Sheet, *at* https://www.epa.gov/system/files/documents/2023-03/Final%20Good%20Neighbor%20Rule%20Fact%20Sheet_0.pdf (last visited March 26, 2023).

harms is available through a challenge to EPA's separate federal plan, a stay of the Disapproval Rule is not appropriate. *Texas v. EPA*, 829 F.3d at 434; *cf. Homer City,* 572 U.S. at 507 (concluding that petitioners may challenge a FIP where the "gravamen of the State respondents' challenge is not [] EPA's disapproval of any particular SIP," but the subsequent federal plan).

Movants' selective editing of *Texas v. EPA* is misleading. 829 F.3d at 425; Industry Mot. 19. Movants' quoted language relates to the Court's discussion of the likelihood of success on the merits, not irreparable harm. In any event, *Texas v. EPA* case does not relieve Movants of their burden of demonstrating irreparable harm directly resulting from the challenged Disapproval Rule. There, EPA disapproved a Texas Regional Haze SIP and imposed a final federal plan requiring source-specific pollution controls as part of the *same* final agency action. The Court found that "compliance with the Final Rule" at issue could directly "cause[]" irreparable economic harm, and granted a stay. *Texas v. EPA*, 829 F.3d at 434. Here, the Movants' own declarations make clear that the Disapproval Rule itself does not actually impose any costs or cause any harm.

Citing *Texas v. EPA*, 829 F.3d at 433, the Texas State Petitioners also suggest that the Disapproval Rule could cause irreparable harm by "disrupt[ing] cooperative federalism" but they fail to explain how that is so. Texas Mot. 18. Nor can they. *Texas v. EPA* did not conclude that EPA's disapproval of a SIP disapproval results irreparable harm as a matter of law; indeed, the Clean Air Act explicitly directs EPA to disapprove inadequate state plans. 42 U.S.C. § 7410(c)(1), (k)(3). To the contrary, in *Texas v. EPA*, the Court found harm because the state submitted sworn declarations alleging that EPA's action in that case harmed state agencies' "ability" to fulfill their "regulatory function[s]." *See* Texas Mot. for Stay at 18, *Texas v. EPA*, No. 16-60118 (filed Mar. 17, 2016), ECF Doc. 00513428276. There is no such evidence of harm here, and bare assertions of theoretical harm to "cooperative federalism" is insufficient to warrant a stay. *Wis. Gas Co.*, 758 F.2d at 674.

Movants' alleged harms are additionally riddled with uncertainty. Movants admit that any timeline and costs for complying with the proposed FIP are uncertain. Price Decl. ¶ 28; Zahn Decl. ¶ 16; Krautsch Decl. at 2-3 (timelines for compliance "remain uncertain," and costs of

21

compliance "cannot yet be ascertained"); Talley Decl. ¶ 25 (there is no "knowing with certainty what . . . allocations in 2025 and future years will be"). These allegations are insufficient to show the concrete, imminent harm necessary to warrant a stay. *Winter*, 555 U.S. at 22.

Finally, Movants' speculation about future plant closures and reliability issues is similarly insufficient: Movants do not actually identify any plants imminently at risk of retirement as a result of the proposed FIP. *See, e.g.*, Rickerson Decl. ¶¶ 2, 37 ("proposed FIP" "could result" in retirements). Additionally, Movants have a history of claiming that EPA's Good Neighbor plans would compromise reliability,[9] yet they do not cite a single instance where implementation of any pollution trading plan has actually caused adverse reliability impacts. The gap between Movants' repeated rhetoric and reality is further reason why their alleged reliability harms are insufficient to warrant a stay.

---

[9] *See, e.g.*, Texas Motion for Stay of Cross State Air Pollution Rule at 15, *Texas v. EPA*, Case No. 11-1338 (D.C. Cir. filed Sept. 22, 2011) (alleging rolling blackouts as a result of Good Neighbor Plan predecessor), ECF Doc. 1331220.

## III.    A STAY WOULD HARM OTHER PARTIES AND THE PUBLIC INTEREST.

A stay would harm Proposed-Intervenors' members and the public, because it would further delay pollution reductions necessary to attaining the 2015 Ozone NAAQS. Every state plan disapproved in the Disapproval Rule failed to include permanent and enforceable reductions in ozone-causing NOx pollution *despite* EPA determinations that the states contributed toward harmful levels of ground-level ozone in downwind states. Staying the Disapproval Rule would retain in place not only Texas's do-nothing plan, but the similar do-nothing plans submitted by *twenty* other states. Accordingly, a stay of the Disapproval Rule would cause substantial harm to Proposed-Intervenors' members and members of the public who live, work, and recreate in areas burdened with unhealthy levels of ground-level ozone pollution.

NOx emissions generally increase ozone concentrations in the ambient air.[10] Ground-level ozone, is a corrosive air pollutant that

---

[10] *See* EPA, "Ground-level Ozone Basics," https://www.epa.gov/ground-level-ozone-pollution/ground-level-ozone-basics#formation (last visited Feb. 26, 2023).

inflames the lungs, constricts breathing, and likely kills people.[11] Ozone causes and exacerbates asthma attacks, emergency room visits, hospitalizations, and other serious health harms.[12] Ozone-induced health problems can force people to change their ordinary activities, requiring children to stay indoors and forcing people to take medication and miss work or school.[13]

Ozone can harm healthy adults, but others are even more vulnerable.[14] Because their respiratory tracts are not fully developed, children are especially vulnerable to ozone pollution, particularly when they have elevated respiratory rates, as when playing outdoors.[15] People with lung disease and the elderly also have heightened vulnerability[16]

---

[11] *See* 80 Fed. Reg. 65,292, 65,308 (Oct. 26, 2015); EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, at 2-20 to -24, tbl.2-1 (Feb. 2013) (EPA-HQ-OAR-2008-0699-0405) ("Science Assessment").

[12] *See, e.g.*, EPA, Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards, at 3-18, 3-26 to -29, 3-32 to -35 (Aug. 2014) (EPA-HQ-OAR-2008-0699-0404) ("Policy Assessment"); Science Assessment at 2-16 to -18, 2-20 to -24, tbl.2-1.

[13] *See, e.g.*, Policy Assessment at 4-12.

[14] *See* 80 Fed. Reg. at 65,310.

[15] *See, e.g.*, Policy Assessment at 3-81 to -83.

[16] *See* 80 Fed. Reg. at 65,310.

People with asthma suffer greater impacts from ozone exposure and are more vulnerable at lower levels of exposure.[17]

Exposure to ozone does not just harm the public generally, but as explained in the concurrently-filed Motion to Intervene, it harms Proposed-Intervenors' members' ability to enjoy daily life. *See, e.g.*, Mot. to Intervene 17-19 and Attached Declarations (Owen Decl. ¶¶ 11-13; Wiley Decl. ¶¶ 8-10; O'Quinn Decl. ¶¶ 5-6, 10-11; Mannchen ¶¶ 5-7; Lewis Decl. ¶¶ 7-8; Hadayia ¶ 2; Wiley Decl. ¶¶ 5-10; Reyes Decl. ¶¶ 9-12).

Texas's emissions cause such harm, contributing significant ozone pollution to downwind states, including multiple parts per billion ("ppb") to ozone levels in Illinois (2.37-2.39 ppb), Indiana (2.14-2.36 ppb), Kansas (2.45-3.51 ppb), Minnesota (2.14 ppb), Missouri (2.00-5.75 ppb), Nebraska (2.03-2.13 ppb), New Mexico (2.17-4.74 ppb), and Oklahoma (4.47-7.67 ppb), and as much as 8.37 ppb to Louisiana. *See*

---

[17] *Id.* at 65,311, 65,322.

U.S. EPA, Data File with 2016v3 Ozone Design Values and Contributions, Document ID No. EPA-HQ-OAR-2021-0663-0070.[18]

Similarly, Texas emissions contribute towards more than 1% of the NAAQS[19] in many downwind areas with 2021 or 2022 monitored ozone design values ("DV"), or 2023 modeled DVs, above the NAAQS:[20]

***Table 1: Texas Contributions to Downwind State Ozone (ppb)***[21]

| Monitor ID | State and County | Texas Contribution | 2021 4th High | 2022 4th High | Modeled 2023 DV |
|---|---|---|---|---|---|
| | | | | | |

---

[18] Texas's *own* ozone modeling, based on prior, outdated data, nonetheless *also* showed large contributions to ozone concentrations in downwind states. 87 Fed. Reg. 9,798, 9,825 (Feb. 22, 2022).

[19] In the Disapproval Rule, as in three prior multistate ozone transport-related rulemakings, EPA regards 1% of the NAAQS as the "appropriate threshold" for assessing interstate pollution impacts, 88 Fed. Reg. at 9.342, an approach that has been upheld by the Supreme Court. *See Homer City, L.P.*, 572 U.S. at 524.

[20] Over six million people live in the downwind state ozone nonattainment areas to which Texas contributes significantly: Cook County, Illinois; Porter County, Indiana; Allegan and Muskegon Counties, Michigan; Dona Ana County, New Mexico; Lake County, Ohio; and Kenosha, Racine, and Sheboygan Counties, Wisconsin. *See* EPA, Greenbook, 8-Hour Ozone (2015) Nonattainment Areas by State/County/Area, https://www3.epa.gov/airquality/greenbook/jncty.html (last visited March 24, 2023).

[21] Highlighted-bold values exceed the 70 ppb NAAQS. Data taken from U.S. EPA, Data File with 2016v3 Ozone Design Values and Contributions, Document ID No. EPA-HQ-OAR-2021-0663-0070 and 88 Fed. Reg. at 9,351-52, tbls. III.B-1 through III.B-3.

| | | | | | |
|---|---|---|---|---|---|
| 170311601 | IL Cook | 0.78 | **72** | **71** | 64.5 |
| 390850003 | OH Lake | 0.78 | **72** | **76** | 64.6 |
| 551170006 | WI Sheboygan | 1.03 | | | **73.6** |
| 170314201 | IL Cook | 1.05 | | | **71.5** |
| 170310001 | IL Cook | 1.09 | | | **71.9** |
| 181270024 | IN Porter | 1.32 | **72** | **73** | 64.6 |
| 170310076 | IL Cook | 1.33 | | | **70.4** |
| 350153001 | NM Eddy | 1.38 | | | **70.2** |
| 170310032 | IL Cook | 1.4 | **77** | **72** | 69.8 |
| 2621210039 | MI Muskegan | 1.52 | **75** | **82** | 68.4 |
| 550590019 | WI Kenosha | 1.54 | | | **71.7** |
| 551010020 | WI Racine | 1.57 | | | **71.5** |
| 3600500003 | MI Allegan | 1.68 | **78** | **73** | 67.4 |
| 550590025 | WI Kenosha | 1.82 | **72** | **71** | **70.7** |
| 550590025 | WI Kenosha | 1.83 | | | **70.7** |
| 350151005 | NM Eddy | 1.91 | | | **74.1** |

| 170317002 | IL Cook | 1.95 | | | **71.3** |
|---|---|---|---|---|---|
| 350250008 | NM Lea | 2.17 | | | **72.2** |
| 350130022 | NM Dona Ana | 3.59 | | | **72.4** |
| 350130008 | NM Dona Ana | 3.83 | **79** | **78** | 66.3 |
| 350130021 | NM Dona Ana | 4.74 | | | **72.1** |

A stay of the Disapproval Rule would perpetuate the *status quo* in which Texas continues to do nothing to address its significant contribution to ozone problems across at least five other states. *See* 42 U.S.C. § 7410(c)(1). Accordingly, these harms in the form of excess pollution would continue under a stay. *See, e.g.*, *Duke Power v. Carolina Env't Study Gr.*, 438 U.S. 59, 74 (1978) ("emission of non-natural radiation into appellees' environment would also seem a direct and present injury"); *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980) (holding that the public interest in avoiding public health harms from pollution outweighed economic burden on petitioner). The stay motion should be denied.

## CONCLUSION

The Court should deny the motions to stay EPA's Disapproval Rule.

Respectfully submitted,

*/s/ Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560 (phone)
joshua.smith@sierraclub.org

*Counsel for Sierra Club*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned counsel states that this motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 5,190 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated: March 27, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

34

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: March 27, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

**CERTIFICATE OF SERVICE**

On this 27th day of March, 2023, a true and correct copy of the foregoing Response in Opposition to the Motions to Stay the Final Rule was filed with the electronic case filing ("ECF") system of the U.S. Court of Appeals for the Fifth Circuit, which will provide electronic notice to counsel of record.

*/s/ Joshua Smith*
Joshua Smith