No. 23-60069

# In the United States Court of Appeals
# for the Fifth Circuit

STATE OF TEXAS, ET AL,

*Petitioners,*

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL S. REGAN,
ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents,*

## STATE OF LOUISIANA'S OPPOSED MOTION TO STAY

JEFF LANDRY
 Attorney General
ELIZABETH B. MURRILL (LA 20685)
 *Solicitor General*
JOSEPH S. ST. JOHN (LA 36682)
 *Deputy Solicitor General*
MACHELLE HALL (LA 31498)
 *Assistant Attorney General*

LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
hallm@ag.louisiana.gov

Courtney J. Burdette (LA 30564)
  *Executive Counsel*
Jill C. Clark, Bar (LA 33050)
  *General Counsel*
LOUISIANA DEPT. OF
 ENVIRONMENTAL QUALITY

Office of the Secretary, Legal Division
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302
Tel: (225) 219-3985
Courtney.Burdette@la.gov
Jill.Clark@la.gov
Counsel for State of Louisiana

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Petitioner is a governmental party and as such does not need to furnish a certificate of interested persons.

/s/ *Joseph S. St. John*
Joseph S. St. John
*Counsel of Record for State of Louisiana*

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ................................................... iii

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION...................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND...........................................3

    I.   Statutory and regulatory framework ...........................................3

        A.   The Act's "good neighbor"provision ..................................4

    II.   Procedural History ...................................................................6

        A.   EPA issues guidance for SIP revisions................................6

        B.   Louisiana's State Implementation Plan ..............................7

        C.   EPA's proposed disapproval of Louisiana's SIP ...............8

        D.   EPA Final Rule disapproving Louisiana's SIP..................10

ARGUMENT ....................................................................................10

    I.   PETITIONER IS LIKELY TO SUCCEED ON THE MERITS. ................10

        A.   EPA's wholesale change in its modeling violated core administrative law principles of fair notice and respecting reliance interests. .........12

        B.   By repeatedly changing the modeling after Louisiana's SIP submission, EPA relied on factors Congress did not intend it to consider and undermined the cooperative federalism inherent in the CAA. ....................................................................................13

    II.   THE OTHER STAY FACTORS ALSO FAVOR A STAY .......................16

CONCLUSION ....................................................................................17

CERTIFICATE OF SERVICE ...............................................................19

CERTIFICATE OF CONFERENCE.........................................................20

CERTIFICATE OF COMPLIANCE .........................................................21

# TABLE OF AUTHORITIES

## Cases

*Alabama Ass'n of Realtors v. HHS,*
    141 S. Ct. 2485 (2015)..........................................................................16

*Allina Health Servs. v. Sebelius*,
    746 F.3d 1102 (D.C. Cir. 2014)..........................................................12

*BCCA Appeal Grp. v. EPA,*
    355 F.3d 817 (5th Cir. 2003) ................................................................3

*Christopher v. Smithkline Beecham Corp.*,
    567 U.S. 142, 132 S. Ct. 2156 (2012)............................................ 11, 12

*DHS v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020)........................................................................12

*EPA v. EME Homer City Generation) L.P.*,
    572 U.S. 489 (2014) ........................................................................4, 12

*FCC v. Prometheus Radio Project*,
    141 S. Ct. 1150 (2021)........................................................................10

*Fla. Power & Light Co. v. Costle*,
    650 F.2d 579 (5th Cir.1981) ...............................................................14

*Luminant Generation Co. v. EPA*,
    675 F.3d 917 (5th Cir. 2012) ....................................................... 1, 3, 13

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989)............................................................................11

*Michigan v. EPA*,
    576 U.S. 743 (2015)............................................................................11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)........................................................................ 11, 15

*Tate Access Floors, Inc. v. Interface Architecture Res. Inc.*,
　279 F.3d 1357 (Fed. Cir. 2002) .............................................................17

*Texas v. Biden*,
　10 F.4th 538 (5th Cir. 2021) ................................................................13

*Texas v. EPA*,
　690 F.3d 670 (5th Cir. 2012) ..................................................................4

*Texas v. EPA*,
　829 F.3d 405 (5th Cir. 2016) ................................................ 4, 5, 16, 17

*Train v. Nat. Res. Def. Council, Inc.*,
　421 U.S. 60 (1975) ...................................................................................3

*Union Elec. Co. v. EPA*,
　427 U.S. 246 (1976) .................................................................................3

*Univ. of Texas M.D. Anderson Cancer Ctr. v. United States Dep't of Health &*
　*Hum. Servs.*,
　985 F.3d 472 (5th Cir. 2021) ........................................................ 11, 15

*Veasey v. Abbott*,
　870 F.3d 387 (5th Cir. 2017) ................................................................17

## Statutes

5 U.S.C. § 706(2)(A) ...............................................................................10

42 U.S.C. § 7410(a)(1) ..............................................................................6

42 U.S.C. § 7410(a)(2)(D)(i) ...............................................................5, 15

42 U.S.C. § 7410(a)(2)(D)(i)(I) ................................................................5

42 U.S.C. § 7410(c)(1) ..............................................................................4

42 U.S.C. § 7410(k)(2) ..........................................................................4, 14

42 U.S.C. § 7410(k)(3) ..........................................................................4, 14

42 U.S.C. § 7410(k)(1)(B) ...........................................................................4

**Other Authorities**

Air Plan Disapproval; Arkansas, Louisiana, Oklahoma & Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone Nat'l Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022)..........................................................8

Fed. Implementation Plan Addressing Regl. Ozone Transport for the 2015 Ozone Nat'l Ambient Air Quality Standard, 87 Fed. Reg. 20,036, 20,054 (Apr. 6, 2022)....5

Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards," 88 Fed. Reg. 9,336 (Feb. 13, 2023) ................... 1, 2, 12, 17

Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)* at 2 (Mar. 27, 2018)............... 7, 9, 12, 13

Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292 (Oct. 26, 2015) ..........................................................................................................................6

**Rules**

Fed. R. App. P. 18(a)(2)(A)(i)......................................................................1

Fed. R. App. P. 18(a)(2)(C) .........................................................................1

**Regulations**

40 C.F.R. § 52.02(a) ....................................................................................4

Pursuant to Rule 18 of the Federal Rules of Appellate Procedure, petitioner the State of Louisiana moves for a stay pending review of the final rule challenged by its petition in this action, the disapproval by the U.S. Environmental Protection Agency ("EPA") of Louisiana's State Implementation Plan ("SIP"), part of "Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards," 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("Final Rule").[1] Seeking a stay from EPA would be impractical given that EPA has already issued a final Federal Implementation Plan ("FIP") for Louisiana based on the Final Rule on March 15, 2023, which is pending publication in the Federal Register. *See* Fed. R. App. P. 18(a)(2)(A)(i); *infra* Part II. Louisiana's only recourse is with the Court as Louisiana faces irreparable harm if the Final Rule is not immediately stayed. All parties were provided notice of this motion on March 27, 2023—respondents oppose it and intend to file a response; the State of Texas petitioners, the Luminant petitioners, the AECT petitioners, and Mississippi Power take no position; the other petitioners did not respond. *See* Fed. R. App. P. 18(a)(2)(C).

---

[1] A copy of the EPA's Final Rule and supporting exhibits are included in the sequentially-numbered Appendix to this motion, with pinpoint citations ("App. at ##") provided in this motion.

1

## INTRODUCTION

The Final Rule is an arbitrary and capricious exercise of the authority granted to the EPA by the Clean Air Act ("CAA") and should be immediately stayed. Louisiana's SIP met all statutory and regulatory requirements, and EPA was required to approve it under the CAA. Instead, EPA violated basic administrative law principles, including fair notice and reliance interests, by judging the SIP using analysis and models developed long after Louisiana submitted its SIP, and even after EPA was required to act by the CAA. EPA disregarded the basic structure and timelines imposed by the CAA and undermined the cooperative federalism that animates it.

Beyond being likely to succeed on the merits, Louisiana will likely suffer immediate and irreparable harm from EPA's Final Rule. Unless this Court grants a stay, the soon-to-be-published FIP premised on the disapproval of Louisiana's SIP will likely cause electric grid instability, an accelerated loss of electric generation capacity, large jumps in electricity prices, and even load shedding. Finally, the EPA clearly upsets the cooperative federalism framework of the CAA as discussed more fully below. For all these reasons, the balance of harms and public interest also weigh heavily in favor of a stay while the legality of the Final Rule is reviewed by the Court

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Statutory and regulatory framework

The Clean Air Act is an "experiment in cooperative federalism" that "establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012). While the federal government sets national ambient air quality standards ("NAAQS"),[2] the States "bear 'the primary responsibility' for implementing those standards" by developing and implementing SIPs to enforce the NAAQS. *Id. (quoting BCCA Appeal Grp. v. EPA,* 355 F.3d 817, 821-22 (5th Cir. 2003)).

The CAA gives states "wide discretion in formulating its plan" for achieving the air quality standards set by EPA. *Union Elec. Co. v. EPA,* 427 U.S. 246, 250 (1976). "[S]o long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation." *Train v. Nat. Res. Def. Council, Inc.,* 421 U.S. 60, 79 (1975). Therefore, the EPA's role is largely confined "to the ministerial function of reviewing SIPs for consistency with the Act's requirements." *Luminant,* 675 F.3d

---

[2] NAAQS that set maximum allowable concentrations for pollutants that are harmful to public health and welfare. 42 U.S.C. §§ 7408(a), 7409(a). Every five years, EPA must revise each NAAQS as appropriate. *Id.* § 7409(d)(1). An area that meets a NAAQS is called an "attainment" area; an area that does not is a "nonattainment" area. *Id.* § 7407(d)(1)(A)(i)-(ii); *see id.* § 7501(2).

at 921. The CAA mandates that the EPA "shall approve such a [state implementation plan] as a whole if it meets all of the applicable requirements of this chapter." 42 U.S.C. § 7410(k)(3). Stated differently, if a SIP meets the statutory requirements, "EPA *must* approve it." *Texas v. EPA*, 690 F.3d 670, 676 (5th Cir. 2012) (emphasis added); *see* 42 U.S.C. § 7410(k)(3)("the Administrator *shall* approve [a SIP] as a whole if it meets all of the applicable requirements of this chapter" (emphasis added)); 40 C.F.R. § 52.02(a). "Only if the state has not complied with the requirements of the [Act] does EPA assume the role of primary regulator by drafting a [FIP]." *Texas*, 829 F.3d at 412; *see* 42 U.S.C. § 7410(c)(1). The EPA's FIP is "to fill all or a portion of a gap…in a State implementation plan." 42 U.S.C. § 7602.

The cooperative federalism of the CAA extends even to timing. The CAA requires the EPA to determine whether a submitted SIP meets the minimum criteria for completeness. 42 U.S.C. § 7410(k)(1)(B). The CAA further provides that once the EPA makes its completeness finding, EPA "shall act" on the SIP within 12 months—either approving or disapproving it. *Id.* § 7410(k)(2)-(3).

## A.    The Act's "good neighbor" provision

The Act enumerates several substantive requirements for SIPs. *Id.* § 7410(a)(2). Relevant here is the Act's "good neighbor" provision, which requires "upwind States to reduce emissions to account for pollution exported beyond their

4

borders." *EPA v. EME Homer City Generation) L.P.*, 572 U.S. 489, 499 (2014). The text of this provision requires that a SIP "contain adequate provisions" prohibiting emissions that "will contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]." 42 U.S.C. § 7410(a)(2)(D)(i)(I). The next subsection requires a SIP to prohibit emissions that will "interfere with measures required to be included" in other States' SIPs "to prevent significant deterioration of air quality or to protect visibility." *Id.* § 7410(a)(2)(D)(i)(II); *see Texas*, 829 F.3d at 411 (involving action taken under subsection (a)(2)(D)(i)(II)).

    To evaluate whether a SIP satisfies the good-neighbor provision, EPA has created a four-step process through its FIPs. As relevant here, the first step is "[i]dentifying downwind receptors that are expected to have problems attaining the NAAQS (nonattainment receptors) or maintaining the NAAQS (maintenance receptors)." Fed. Implementation Plan Addressing Regl. Ozone Transport for the 2015 Ozone Nat'l Ambient Air Quality Standard, 87 Fed. Reg. 20,036, 20,054 (Apr. 6, 2022) (proposed rule). The process involves gathering historical data from down-wind monitors and using modeling to assess future air-quality problems. *Id.* The second step is "determining which upwind states are 'linked' to these identified down- wind receptors based on a numerical contribution threshold." *Id.* Under EPA's preferred approach, a State that contributes more than one percent of the

NAAQS to a downwind State is "linked" to that State. *Id.* The third step, for any State "linked to downwind air quality problems," is "identifying upwind emissions on a statewide basis that significantly contribute to downwind nonattainment or interfere with downwind maintenance of the NAAQS, considering cost- and air quality-based factors." *Id.* The fourth step, for any upwind State "found to have emissions that significantly contribute  to nonattainment or interfere with maintenance of the NAAQS in any downwind state," is "implementing the necessary emissions reductions through enforceable measures." *Id.*

## II.    Procedural History

On October 1, 2015, EPA revised the NAAQS for ozone, a ground-level pollutant. Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292 (Oct. 26, 2015). It replaced the preexisting ozone NAAQS of 0.075 parts per million (ppm) with a more stringent 0.070 ppm. NAAQS for Ozone. *Id.* at 65,293-65,294. This revision triggered Louisiana's statutory obligation to revise its SIP. 42 U.S.C. § 7410(a)(1).

### A.    EPA issues guidance for SIP revisions

In 2018, EPA issued several guidance memoranda regarding states' SIP revisions.  The March 2018 guidance memorandum was designed to "assist states in their efforts to develop good neighbor SIPs for the 2015 ozone NAAQS." Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and

Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)* at 2 (Mar. 27, 2018) ("March 2018 Memo," attached as **Exhibit A** to the Appendix). The memorandum included "EPA's air quality modeling data" with "newly available contribution modeling results." *Id.* at 1. To carry out the modeling of future ozone emissions, EPA recommended that States use historical data gathered from the years 2009-2013. *Id.* at 6. EPA reassured States that they could "supplement the information provided in this memorandum with any additional information that they believe is relevant" and "choose to use other information to identify nonattainment and maintenance receptors relevant to development of their good neighbor SIPs." *Id.*

EPA issued additional guidance memoranda in August and October 2018. 88 Fed. Reg. at 9339.

## B. Louisiana's State Implementation Plan

On November 13, 2019, the Louisiana Department of Environmental Quality ("LDEQ") submitted a SIP addressing the Louisiana's interstate transport of air pollution ("SIP," attached as **Exhibit B** to the Appendix). Louisiana SIP's use a 3-Step alternative framework that covered EPA's first and second steps. SIP at 12. Relying on the March 2018 Memo, Louisiana took up EPA's invitation to "states to use th[at] data to develop SIPs to assure that emissions within their

7

jurisdictions do not contribute significantly to nonattainment or interfere with maintenance of the 2015 ozone standards in other states." SIP at 5. It also used the EPA's later-provided data for 2014-2016 ozone contributions. *Id.* Louisiana's SIP concluded that the emissions from Louisiana did not contribute significantly to nonattainment or interfere with maintenance of the NAAQs in other states. SIP at 12–14. EPA issued a completeness finding on November 14, 2019.

### C.    EPA's proposed disapproval of Louisiana's SIP

On February 22, 2022, well over a year after EPA was statutorily required to act on Louisiana's SIP, EPA proposed a combined disapproval of Texas's, Oklahoma's, Louisiana's, and Arkansas's SIPs. Air Plan Disapproval; Arkansas, Louisiana, Oklahoma & Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone Nat'l Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022) (attached as **Exhibit C** to the Appendix). In the interim, EPA had comprehensively changed its modeling:

> The 2016-based meteorology and boundary conditions used in the modeling [were] available through the 2016v1 platform, which was used for the Revised CSAPR Update (proposed in November of 2020, 85 FR 68964). The updated emissions inventory files used in the [2022] modeling were publicly released September 21, 2021, for stakeholder feedback, and have been available on [EPA's] website since that time. The CAMx modeling software that the EPA used . . . was released by the model developer, Ramboll, in December 2020. On January 19, 2022, [EPA] released on [its] website and notified a wide range of stakeholders of the availability of both the modeling results for 2023 and 2026 (including contribution data) along with many key underlying input files.

88 Fed. Reg. at 9,366.

In proposing to reject Louisiana's SIP, EPA relied upon its 2016v2 modeling platform, a refinement of the 2016v1 modeling platform that was also not released until after Louisiana submitted its SIP. 87 Fed. Reg. at 9,800, 9,819. This modeling substantially changed Louisiana's contribution to ozone in Texas. For instance, by the EPA's own calculations, Louisiana's contribution to Brazoria/Galveston non-attainment area went from 3.80 parts per billion (ppb) under the March 2018 Memo to 7.03 ppb under the 2016v2 model. 87 Fed. Reg. at 9,811, 9,813. EPA also criticized Louisiana's SIP for only analyzing "emission reductions where there was a 'consistent and persistent' pattern of contribution" and its air-quality-only analysis in order to refute such a pattern, and EPA determined that Louisiana's SIP failed "to analyze emissions from the sources and other emissions activity from within Louisiana to determine whether its contributions were significant." 87 Fed. Reg. at 9,814. EPA concluded that Louisiana's SIP failed "to contain the necessary provisions to eliminate emissions that will contribute significantly to nonattainment or interfere with the maintenance of the 2015 ozone NAASQ in any other state." 87 Fed. Reg. at 9,816.

Louisiana submitted comments regarding the proposed disapproval on April 24, 2022. ("Comments," attached as **Exhibit D** to the Appendix). Louisiana pointed out multiple defects, including that the 2016v2 model was not peer-

9

reviewed, was based on modeling done after the SIP deadline, and lead to anomalous results, such as a higher ozone contribution in the future despite ozone precursors dropping. *Id.* at 2.

**D.    EPA Final Rule**Error! Bookmark not defined. **disapproving Louisiana's SIP**

On February 13, 2023, more than two years after its statutory deadline to act, EPA published a final disapproval of Louisiana's SIP. 88 Fed. Reg. at 9,336. EPA relied upon a further revision of its modeling, 2016v3, in disapproving Louisiana's SIP. 88 Fed. Reg. at 9,356. This model further increased Louisiana's purported ozone contributions—in Brazoria/Galveston, now to 9.51 ppb. 88 Fed. Reg. at 9,353, 9,356. Otherwise, it largely reiterated its prior analysis. *Id.*

## ARGUMENT

In deciding whether to grant a stay, courts are to consider the likelihood that the applicant will succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) the balance of the harms to other parties, and (4) the public interest. Each factor favors a stay here.

## I.    PETITIONER IS LIKELY TO SUCCEED ON THE MERITS.

The EPA's Final Order is reviewed under the Administrative Procedure Act ("APA") and is to be held unlawful or set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A). This standard requires that such an action be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A court "must set aside any action premised on reasoning that fails to account for 'relevant factors' or evinces 'a clear error of judgment.'" *Univ. of Texas M.D. Anderson Cancer Ctr. v. United States Dep't of Health & Hum. Servs.*, 985 F.3d 472, 475 (5th Cir. 2021) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)); *see also Michigan v. EPA*, 576 U.S. 743, 750 (2015).

Moreover, agencies must generally give notice of conduct the agency "prohibits or requires" and cannot "surprise" a party by penalizing it for "good-faith reliance" on the agency's prior positions. *Christopher v. Smithkline Beecham Corp.*, 567 U.S. 142, 156–57, 132 S. Ct. 2156, 2167–68 (2012). When an agency changes course, it must take into account "serious reliance interests" its "longstanding policies may have engendered" along with "alternatives that are within the ambit of the existing policy." *Id.* at 1913 (cleaned up).

11

EPA's repeated change in the basic modeling assumptions it used to judge Louisiana's SIP makes its disapproval of the same arbitrary and capricious in several ways.

### A. EPA's wholesale change in its modeling violated core administrative law principles of fair notice and respecting reliance interests.

EPA's March 2018 guidance memorandum included "EPA's air quality modeling data" with the "goal" of "assisting states' efforts to develop good neighbor SIPs." March 2018 Memo at 1–2. Louisiana justifiably relied on this modeling put forward by EPA at the time of its SIP submission. EPA's change to using a completely different modeling platform that was not available at the time of Louisiana's submission to assess Louisiana's SIP, which also nearly tripled Louisiana's purported ozone contribution, is precisely the type of "unfair surprise" that the Supreme Court has repeatedly warned against. *Christopher*, 567 U.S. at 156-57; *see also Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1108 (D.C. Cir. 2014) (discussing how agencies may not "pull a surprise switcheroo"). EPA was also "required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020). EPA did no such thing.

At most, the Final Rule merely hints that no state should have had any reliance interests. It notes that the Supreme Court has held that EPA is not

required to issue guidance to states regarding their good neighbor obligations. 87

Fed. Reg. at 9364 (citing *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489,

508–510). But that says nothing to negate EPA's obligation to analyze reliance

when it *does* issue guidance, as here. The Final Rule also contends that the states

should have been monitoring D.C. Circuit litigation, considering and even

predicting the results, *see id.* at 9364, though it fails to explain why those cases

required any changes in modeling given that EPA ended up using the same 2023

analytic year in the Final Rule as it did in its guidance memoranda, *see id.* at 9341,

9364. Finally, it also asserts that the guidance memoranda "made clear" that SIP

submissions would be "carefully reviewed against" the "technical information

available to the EPA at the time it would take" a final action. *Id.* at 9368. If this is

meant to suggest that the memoranda foreshadowed that the final rulemaking on

the SIPs would use post-submission data, it is wrong—they did no such thing. *See*

March 2018 Memo at 1–2, 6–7. In any event, none of these squarely addresses

Louisiana's reasonable reliance on EPA's guidance. And because EPA did not

even consider reliance interests, its decision is necessarily arbitrary and capricious

because it could not properly weigh them. *Texas v. Biden*, 10 F.4th 538, 555 (5th

Cir. 2021).

**B. By repeatedly changing the modeling after Louisiana's SIP submission, EPA relied on factors Congress did not intend it to consider and undermined the cooperative federalism inherent in the CAA.**

13

Under the "cooperative federalism" of the CAA, states have "wide discretion in formulating" their SIPs, and EPA is confined "to the ministerial function of reviewing SIPs for consistency with the Act's requirements." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (noting that 42 U.S.C. § 7410(k)(3) mandates that the EPA "shall approve" a SIP "if it meets all of the applicable requirements"); *see also Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 587 (5th Cir.1981) ("The great flexibility accorded the states under the Clean Air Act is ... illustrated by the sharply contrasting, narrow role to be played by EPA."). The ministerial nature of EPA's function is reinforced by timing: once EPA determines that a submitted SIP meets the minimum criteria for completeness, EPA "shall act on the submission" (approving or disapproving it) with 12 months. 42 U.S.C. § 7410(k)(2).

This statutory scheme simply does not allow EPA to do what it did. EPA is without statutory authority to delay a decision on a SIP beyond the one year it is allotted for a decision. It is thus certainly without authority to use time beyond that to not only continue to develop criteria for a decision, but also to continue to gather more information that was unavailable to a state when it submitted its SIP to judge the same. Given EPA's determination of completeness for Louisiana's SIP on November 14, 2019, Comments at 1, EPA had until November 14, 2020 to render a final decision. Almost every relevant development of EPAs' model

14

occurred after that deadline. The "2016-based meteorology and boundary conditions used in the modeling" were available in the 2016v1 platform proposed in November 2020, "updated emissions inventory files used in the current modeling were publicly released" in September 2021, and the modeling software EPA used was not even publicly until December 2020. 88 Fed. Reg. at 9366. The 2016v2 and 2016v3 platforms further followed these developments, and incorporated data as late as 2021.

EPA's only response is incredulity that EPA could be "prohibited from taking rulemaking action using the best information available to it at the time it takes such action." *Id.* Yet that turns the relevant inquiry—whether EPA has "relied on factors which Congress has not intended it to consider," *State Farm*, 463 U.S. at 4—on its head. If there were any doubt, in defining a specific time period in which to make a decision, Congress clearly cabined EPA's ability to delay its decision making to continuously collect new information and revise its work. EPA has transgressed those hard bounds.

Moreover, EPA's argument is "premised on reasoning that fails to account for 'relevant factors,'" *Univ. of Texas*, 985 F.3d at 475, because it ignores the basic framework of the statute. EPA's role is not to continuously refine its analysis for a point of decision years later. It is simply to ensure that, with regard to the good neighbor obligations, a state's SIP "contain[s] *adequate* provisions" to fulfill

15

those obligations. 42 U.S.C. § 7410(a)(2)(D)(i) (emphasis added). If EPA were allowed to blow past the statutory deadlines, prepare modeling with entirely different information than that available to the states, and then judge their SIPs accordingly, EPA would have essentially arbitrary discretion to reject the states' plans and substitute its own federal plans. That is the opposite of the "ministerial function" Congress has provided.

## II.   THE OTHER STAY FACTORS ALSO FAVOR A STAY

Louisiana will suffer various forms of irreparable injury absent a stay, harming Louisiana's citizens and impairing its economy and sovereignty. As explained above, EPA's disapproval of Louisiana's SIP and its substitution of its own FIP "would disrupt the system of cooperative federalism enshrined in the Clean Air Act," which is an irreparable harm." *Texas v. EPA,* 829 F.3d 405, 433 (5th Cir. 2016). Imposition of the FIP will also likely drastically reduce electrical generation capacity, strain remaining sources, result in large price spikes for electricity, threaten electric grid stability, and increase the need for load shedding. MISO Comments on Proposed FIP at 3–9 (June 21, 2022) (attached as **Exhibit E** to the Appendix). Such "plant closures, the threat of grid instability and potential brownouts" also and "alone constitute irreparable injury." *Texas*, 829 F.3d at 434. "[S]ubstantial financial injury" may also be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Id.*; *see also*

*Alabama Ass'n of Realtors v. HHS,* 141 S. Ct. 2485, 2489 (2015).

By contrast, EPA will suffer no harm if its disapproval of Louisiana's SIP is stayed pending review. EPA's multi-year delay in disapproving Louisiana's SIP belies any claim it may make to urgency. *See Tate Access Floors, Inc. v. Interface Architecture Res. Inc*., 279 F.3d 1357, 1364 (Fed. Cir. 2002) (identifying the absence of a threat to public health as a significant factor favoring a preliminary injunction). And as Louisiana's SIP demonstrated, its emissions do not significantly contribute to nonattainment or interfere with maintenance of the 2015 ozone NAAQS. The balance of the harms tips sharply toward entering a stay.

The public interest also favors a stay. When, as here, a state seeks a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017)(per curiam). A well-functioning electric grid and "ready access to affordable electricity" is obviously in the public interest, *Texas*, 829 F.3d at 435, moreso than EPA's interest in immediate effect of its disapproval.

## CONCLUSION

The Court should stay the EPA's Final Rule that disapproves Louisiana's SIP, pending an adjudication of the petition for review.

17

Respectfully Submitted,

**JEFF LANDRY**
  **Attorney General**

/s/ *Joseph S. St. John*

ELIZABETH B. MURRILL (LA 20685)
  *Solicitor General*
JOSEPH S. ST. JOHN (LA 36682)
  *Deputy Solicitor General*
MACHELLE HALL (LA 31498)
  *Assistant Attorney General*
LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
hallm@ag.louisiana.gov

Courtney J. Burdette (LA 30564)
  *Executive Counsel*
Jill C. Clark, Bar (LA 33050)
  *General Counsel*
LOUISIANA DEPT. OF
  ENVIRONMENTAL QUALITY
Office of the Secretary, Legal Division
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302
Tel: (225) 219-3985
Courtney.Burdette@la.gov
Jill.Clark@la.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2023, a true and correct copy of the foregoing has been served on all parties in accordance with the Appellate Rules of Civil Procedure, via the Court's CM/ECF system.

s/ *Joseph S.  St. John*
Joseph S. St. John

## CERTIFICATE OF CONFERENCE

On Marcy 27, 2023, the undersigned counsel for the State of Louisiana emailed with counsel for respondents. The respondents oppose the relief sought in this motion and intend to file a response.

s/ *Joseph S.  St. John*
Joseph S. St. John

**CERTIFICATE OF COMPLIANCE**

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,987 words, excluding the parts of the document exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

s/ *Joseph S.  St. John*
Joseph S. St. John