No. 23-60069

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS, ET AL,

*Petitioners,*

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

—————

## STATE OF LOUISIANA'S RESPONSE TO EPA'S MOTION TO TRANSFER OR DISMISS

—————

Courtney J. Burdette (LA 30564)
*Executive Counsel*
Jill C. Clark, Bar (LA 33050)
 *General Counsel*
LOUISIANA DEPT. OF
 ENVIRONMENTAL QUALITY
Office of the Secretary, Legal
Division
P.O. Box 4302
Baton Rouge, Louisiana 70821
Tel: (225) 219-3985
Courtney.Burdette@la.gov
Jill.Clark@la.gov

JEFF LANDRY
 Attorney General
ELIZABETH B.MURRILL (LA 20685)
 *Solicitor General*
JOSEPH S. ST. JOHN (LA 36682)
 *Deputy Solicitor General*
MACHELLE HALL (LA 31498)
 *Assistant Attorney General*
LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
hallm@ag.louisiana.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................ii

TABLE OF AUTHORITIES ....................................................................iv

INTRODUCTION .................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..................................1

   I.   Statutory and Regulatory Framework .......................................1

   II.   Procedural History.....................................................................3

       A.     Louisiana's State Implementation Plan .............................3

       B.   EPA's proposed disapproval of Louisiana's SIP...................4

       C.   EPA Final Rule disapproving Louisiana's SIP ....................6

       D.   Louisiana's Petition for Review...........................................7

LEGAL STANDARD..............................................................................7

ARGUMENT .........................................................................................8

   I.   THERE IS NO BASIS TO TRANSFER THIS CASE. ..................................8

       A.   The Final Rule is a "locally or regionally applicable" action..................................................................................8

       B.   EPA's disapproval of Louisiana's SIP is not based on a determination of nationwide scope or effect. ......................17

   II.   TO THE EXTENT EPA SEEKS DISMISSAL, THAT SHOULD BE DENIED. ..................................................................................24

CONCLUSION.....................................................................................25

CERTIFICATE OF SERVICE .................................................................26

CERTIFICATE OF COMPLIANCE ......................................................27

# TABLE OF AUTHORITIES

**Cases**

*Am. Rd. & Transp. Builders Ass'n v. EPA*,
  705 F.3d 453 (D.C. Cir. 2013) ........................................................ 10, 22

*ATK Launch Sys., Inc. v. EPA*,
  651 F.3d 1194 (10th Cir. 2011) ............................................................ 10

*BCCA Appeal Grp. v. EPA*,
  355 F.3d 817 (5th Cir. 2003) .................................................................. 2

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
  345 F.3d 347 (5th Cir. 2003) ................................................................ 24

*Chevron U.S.A., Inc. v. EPA*,
  45 F.4th 380 (D.C. Cir. 2022) .............................................................. 25

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ............................................................................... 22

*EPA v. EME Homer City Generation L.P.*,
  572 U.S. 489 (2014) ................................................................................. 2

*Luminant Generation Co. v. EPA*,
  675 F.3d 917 (5th Cir. 2012) ............................................................ 2, 11

*Texas v. EPA*,
  706 F. App'x 159 (5th Cir. 2017) .................................................... 11, 16

*Texas v. EPA*,
  No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) .............. 12, 23

*Texas v. United States EPA*,
  829 F.3d 405 (5th Cir. 2016) ........................................................ passim

*U.S. Steel Corp. v. U.S.*,
  595 F.2d 207 (5th Cir. 1979) ................................................................ 14

*Union Elec. Co. v. EPA,*
  427 U.S. 246 (1976)..................................................................2

*W. Oil & Gas Ass'n v. EPA,*
  633 F.2d 803 (9th Cir. 1980)..............................................17

**Statutes**

42 U.S.C. § 7410 ................................................................2, 3, 9

42 U.S.C. § 7410(a)(1).............................................................3

42 U.S.C. § 7410(a)(2).............................................................2

42 U.S.C. § 7410(a)(2)(D)(i)(I) ..............................................2

42 U.S.C. § 7410(b)(1).............................................................9

42 U.S.C. § 7607 ............................................................. passim

42 U.S.C. § 7607(b)(1)............................................... 1, 7, 8, 22

**Other Authorities**

Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292
  (Oct. 26, 2015)........................................................................3

## INTRODUCTION

The Court should deny the motion to transfer or dismiss Louisiana's Petition for Review ("Motion") brought by the Environmental Protection Agency ("EPA"). EPA's denial of Louisiana's state implementation plan ("SIP") is a locally or regionally applicable action for which venue is only proper in this Court. 42 U.S.C. § 7607(b)(1). EPA cannot overcome the presumption that challenges to SIP disapprovals are properly heard in the appropriate geographic court of appeals—here, this Court. EPA's packaging some SIP disapprovals together—while not including others and SIP approvals—and using a common framework for its (not the individual state's) evaluation does not create a nationally applicable final action. It also does not mean that the SIP disapprovals are based on a core determination of nationwide scope or effect. There is no basis to transfer or dismiss the Petition.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.  Statutory and Regulatory Framework

The Clean Air Act ("CAA") is an "experiment in cooperative federalism" that "establishes a comprehensive program for controlling

and improving the nation's air quality through state and federal regulation." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012). The federal government sets national ambient air quality standards ("NAAQS"), but the States "bear 'the primary responsibility' for implementing those standards" by developing and implementing SIPs to enforce the NAAQS. *Id.* (quoting *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 821-22 (5th Cir. 2003)). The CAA gives states "wide discretion in formulating its plan" for achieving the air quality standards set by EPA. *Union Elec. Co. v. EPA,* 427 U.S. 246, 250 (1976).

The CAA provides elements that are required to be addressed in SIPs. *Id.* § 7410(a)(2). The SIPs relevant here addressed the CAA's "good neighbor" or "interstate transport" obligation, which requires "upwind States to reduce emissions to account for pollution exported beyond their borders." *EPA v. EME Homer City Generation L.P.*, 572 U.S. 489, 499 (2014). That obligation, in relevant part here, requires that a SIP "contain adequate provisions" prohibiting emissions that "will contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]." 42 U.S.C. § 7410(a)(2)(D)(i)(I).

## II.    Procedural History

On October 1, 2015, EPA revised the NAAQS for ozone, a ground-level pollutant. Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292 (Oct. 26, 2015). It replaced the preexisting ozone NAAQS of 0.075 parts per million (ppm) with a more stringent 0.070 ppm. NAAQS for Ozone. *Id.* at 65,293-65,294. This revision triggered Louisiana's statutory obligation to revise its SIP. 42 U.S.C. § 7410(a)(1).

In 2018, EPA issued several guidance memoranda regarding states' SIP revisions. The March 2018 Memorandum stated that States could use EPA's four-step analytical framework from prior federal implementation plans, "somewhat different analytical approaches within these steps," "or alternative frameworks." *See* Dkt. No. 112-2, Exhibit A.

### A.    Louisiana's State Implementation Plan

On November 13, 2019, the Louisiana Department of Environmental Quality submitted a SIP addressing Louisiana's interstate transport of air pollution.  Dkt. No. 112-2, Exhibit B. Louisiana's SIP used a 3-Step alternative framework that covered EPA's first and second steps.  *Id.* at 12.  Louisiana performed a variety of analyses, including looking at Hybrid Single Particle Lagrangian

3

Integrated Trajectory (HYSPLIT) back trajectories, which showed that the impact from Louisiana was insignificant to overall attainment and that more ozone detected in Louisiana originates in Texas rather than the reverse; Louisiana also examined seasonal weather and surface wind patterns, which showed that most air in Texas came from the Gulf of Mexico during ozone season. *Id.* at 12-17. Louisiana's SIP concluded that the emissions from Louisiana did not contribute significantly to nonattainment or interfere with maintenance of the NAAQs in other states (primarily Texas), including because there was no "persistent and consistent" pattern of contribution on days with elevated ozone. *Id.* at 12, 18. EPA issued a completeness finding on November 14, 2019. *See* Dkt. No. 112-1 at 8.

### B.   EPA's proposed disapproval of Louisiana's SIP

On February 22, 2022, EPA's Region 6—which covers Arkansas, Louisiana, New Mexico, Oklahoma, and Texas—published its proposed disapproval of Louisiana's SIP. Dkt. No. 112-2, Exhibit C. The proposal was signed by the Regional Administrator for Region 6 and appeared in a Federal Register notice that included proposed disapprovals for three other States in Region 6. See *id.* at 9,835. Region 6's notice explained that

4

"all public comments, including comments on the EPA's air quality modeling[,] should be submitted in the Regional docket for this action, Docket ID No. EPA-R06-OAR-2021-0801. Comments are not being accepted in [the Headquarters] Docket." *Id.* at 9,806 n.45.

EPA's Region 6 criticized Louisiana's SIP on multiple grounds, including for only analyzing "emission reductions where there was a 'consistent and persistent' pattern of contribution" and its "air-quality-only analysis in order to refute such a pattern." *Id.* at 9,814. It also criticized Louisiana's SIP for examining "large-scale weather patterns," including "seasonal weather patterns" and "surface wind directions," that were not "specifically conducive to ozone formation." *Id.* at 9,815. And it determined that Louisiana's SIP failed "to analyze emissions from the sources and other emissions activity from within Louisiana to determine whether its contributions were significant." *Id.* at 9,814. EPA's Region 6 concluded that Louisiana's SIP failed "to contain the necessary provisions to eliminate emissions that will contribute significantly to nonattainment or interfere with the maintenance of the 2015 ozone NAASQ in any other state." *Id.* at 9,816.

Louisiana submitted comments regarding the proposed disapproval on April 24, 2022. Dkt. No. 112-2, Exhibit D. Louisiana pointed out multiple defects, including that the air pollution model EPA relied on was significantly different than the model EPA provided Louisiana; that different model was not peer-reviewed; the new modelling was performed after the SIP deadline; and the new modelling lead to anomalous results, such as a higher ozone contribution in the future despite ozone precursors dropping. *Id.* at 2.

### C.   EPA Final Rule disapproving Louisiana's SIP

On February 13, 2023, EPA published a final disapproval of Louisiana's SIP. Dkt. No. 63, Exhibit A (88 Fed. Reg. 9,336). The same Final Rule also contained disapprovals of 18 other SIPs. It also deferred action on two additional SIPs (Tennessee's and Wyoming's), noted that it was finalizing partial approvals and partial disapprovals of two other SIPs (Minnesota's and Wisconsin's), and further noted that it had previously approved SIPs for 24 other jurisdictions in separate notices.

The Final Rule explained that "the contents of each individual state's submission were evaluated on their own merits." 88 Fed. Reg. at 9,354. Although EPA applied its 4-step framework, it again explained

6

that states could "establish alternative approaches" and that each such SIP would be judged "in light of the facts and circumstances of each particular state's submission." *Id.* at 9,340. The Final Rule contained only "a brief, high level overview of the SIP submissions and the EPA's evaluation and key bases for disapproval" and noted that the "full basis" was available in the respective EPA regional proposed disapprovals and related documents. *Id.* at 9,354. The Final Rule largely reiterated the prior analysis by EPA region 6. *Id.* at 9,356.

### D.   Louisiana's Petition for Review

On March 20, 2023, Louisiana filed its Petition for Review, which was consolidated with the others in this action. Dkt. No. 63. EPA had previously moved to transfer Texas's petition. Dkt. No. 50. Louisiana now responds.

## LEGAL STANDARD

This Court determines the proper venue for the Petition under 42 U.S.C. § 7607(b)(1) *de novo*. *Texas v. United States EPA*, 829 F.3d 405, 420–21 (5th Cir. 2016). The statute provides three categories of actions, which determine venue: (1) "nationally applicable" actions that must be filed in or transferred to the D.C. Circuit; (2) "locally or regionally

7

applicable" actions that must be filed in the Court of Appeals for the appropriate geographic circuit; or (3) locally or regionally applicable actions that are "based on a determination of nationwide scope or effect" and for which EPA finds and publishes that such action is based on such a determination, which must be filed in the D.C. Circuit. *Id.* at 419; *see also* 42 U.S.C. § 7607(b)(1). The Court must make an "independent assessment" of both the "applicability of the [final] action" and whether the action is based on a "core" determination of nationwide scope or effect. *Texas*, 829 F.3d at 421.

## ARGUMENT

I.   **THERE IS NO BASIS TO TRANSFER THIS CASE.**

Louisiana's petition challenged the Final Rule's disapproval of its SIP.  Under the statute, this is a "locally or regionally applicable" action that is not based on a determination of nationwide scope or effect.  It was appropriately filed in this Court.

### A. The Final Rule is a "locally or regionally applicable" action.

The venue statute strongly favors considering SIP disapprovals "locally or regionally applicable" actions, and nothing requires Louisiana's disapproval to be deemed otherwise.  The presumption of

non-national applicability is evident from the text of the two applicability provisions. The first lists challenges to many national standards—but not anything done under 42 U.S.C. § 7410 (providing for SIPs)—that must be filed in the D.C. Circuit. 42 U.S.C. § 7410(b)(1). The only way EPA can argue that a SIP disapproval should fall under this category is through the residual clause that captures "any other nationally applicable regulations promulgated, or final action taken, by the [EPA]." *Id.* By contrast, the second category, which directs litigation to the appropriate geographic circuit, specifically mentions implementation plans and § 7410. *Id.* Its residual clause captures disapprovals, including SIP disapprovals: "any other final action of the [EPA] . . . (including any denial or disapproval by the [EPA] under [the subchapter including 7410]) which is locally or regionally applicable." *Id.*

Given this statutory structure, there is no need to ever consider SIP disapprovals to fall under the "nationally applicable" residual clause that is far divorced from the directive regarding implementation plans. A SIP disapproval only makes sense as "locally" applicable—EPA's disapproval of a state's plan only ever "applies" to that state. The "legal impact" of the "action," *Texas*, 829 F.3d at 419, is on the state—Louisiana's SIP

9

disapproval binds no one else. Other circuits have used language suggesting this straightforward conclusion. *See Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013) (describing a SIP rulemaking as a "prototypical 'locally or regionally applicable' action"); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011) (describing a SIP as a "purely local action" or "an undisputably regional action"). And while this Court has suggested in a footnote that the "statutory text places review of SIP approvals or disapprovals in the regional circuits while providing an exception for review of a small subset of those actions in the D.C. Circuit"—meaning that a small subset of disapprovals might be "nationally applicable"—this description was not part of the holding (because the parties agreed that the action was "locally or regionally applicable"). *Texas*, 829 F.3d at 419 & n.16. This complex statute can be simply resolved by recognizing that a SIP disapproval is locally or regionally applicable.

EPA nevertheless argues that the Final Rule as a whole is "nationally applicable" because it used a "nationally consistent 4-step interstate transport framework" to evaluate SIPs in different EPA regions and judicial circuits. Motion at 9. EPA's argument fails at

10

multiple points.

To begin, EPA cannot redefine the relevant "action" upon which applicability hinges as something other than the SIP disapproval because this Court has already addressed that question. "The 'action' is the rule or other final action taken by the agency that the petitioner seeks to prevent or overturn," and for a SIP disapproval that is "EPA's final rule disapproving" a SIP. *Texas*, 829 F.3d at 419. Louisiana's challenge is to the SIP disapproval. Dkt. No. 63. The "legal impact of the action" upon which applicability turns, *Texas*, 829 F.3d at 419, is on the state whose SIP is disapproved.

That the Final Rule used EPA's "4-step framework" changes nothing. This is true even looking only at "the face of the rulemaking," as EPA urges. Motion at 9 (quoting *Texas v. EPA*, 706 F. App'x 159, 163 (5th Cir. 2017)). The Final Rule itself precludes any argument by EPA that the "final action" is the adoption of the framework. That term has the same meaning as "final agency action" under the Administrative Procedure Act. *Luminant Generation Co. v. EPA*, 757 F.3d 439, 441 (5th Cir. 2014). Such an action must not be interlocutory and must determine rights or obligations (or have legal consequences). *Id.* Yet the Final Rule,

like the March 2018 Memo, takes pains to clarify that the 4-step framework bound no one. Dkt. No. 63-1 at 9,388. The Final Rule asserts that states retained "flexibility in developing analytical methods within this framework (and may also attempt to justify an alternative framework altogether)." *Id.* Where states used alternative approaches, the Final Rules claims to have "evaluated those analyses on their merits" and found aspects of even some alternative approaches acceptable. *Id.* Louisiana relied on this flexibility and used a 3-step alternative framework. 87 Fed. Reg. at 9,811.

Under this system, there was no one that the 4-step framework "regulates." *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011). So the "location" where it regulates cannot be the entire nation. *See id.* By the same token, the 4-step framework was not "nationally applicable" according to the Final Rule because it applied nowhere—any state was purportedly free to substitute its own in its determination and none were regulated by it. If the 4-step framework was enough, then EPA could manufacture venue in the D.C. Circuit by adopting the most trivial of common procedures—which are hard to do without given that using inconsistent procedures from state-to-state

12

would result in its own challenge.

The mere use of a common framework does not render the Final Rule anything like the "nationally applicable" actions specifically listed in the statute, which set national, binding standards for air quality, emissions, or pollution control. 42 U.S.C. § 7607. Those include the 2015 *national* ambient air quality standard for ozone. *Id.* The Final Rule, by contrast, only makes binding determinations at the level of each state's SIP, and it purports to evaluate them individually. Dkt. No. at 9,354. Even the underling analysis used to disapprove Louisiana's SIP was performed at the level of EPA region. *See supra* p. 5. The character of the final action is not nationally applicable.

EPA's recitation of the number of states, circuits, and EPA regions involved also makes no difference in the analysis—and EPA gives no coherent argument as to how it should. EPA's argument amounts to asserting that by combining SIP disapprovals (each of which is necessarily limited to the respective state), it can create a "nationally applicable" Final Rule. But EPA has previously agreed that a combined SIP disapproval crossing circuit lines is not thereby "nationally applicable," and this Court confirmed that it was "locally or regionally

applicable" and did not transfer it. *Texas*, 829 F.3d at 418–19, 422–23. Given that some EPA regions cross circuit boundaries (including Region 6, which includes Louisiana, Oklahoma, and Arkansas, *see* Dkt. No. 63-1 at 9,337—representing three judicial circuits), that also cannot be the rule because it would convert obviously "regional" actions into national ones. Combining SIP disapprovals across EPA regional lines should not fare differently, including because some single judicial circuits include multiple EPA regions. This Court has also found it had jurisdiction under § 7607(b) when reviewing a challenge to designations in Alabama even though the rulemaking made designations for states across the country and in multiple EPA regions. *See U.S. Steel Corp. v. U.S.*, 595 F.2d 207, 212–13 (5th Cir. 1979) (addressing rulemaking in 43 Fed. Reg. 40,412).

But, most basically, a multi-regional set of SIP disapprovals still does not apply to the entire nation, only state-by-state for those states included. Here, not even the majority of states were included—EPA had already separately approved 24 jurisdictions SIPs, and in the Final Rule it deferred action on SIPs for Tennessee and Wyoming and stated it was finalizing partial approvals and partial disapprovals of SIPs for

Minnesota and Wisconsin.  88 Fed. Reg. at 9,354.  There is no sense in which the Final Rule is nationally applicable.

If EPA were free to determine at what level an action disapproving SIPs was applicable based on whether it consolidated certain SIP disapprovals, it could freely manipulate venue without regard to the underlying character of its action.  For instance, if combining SIP disapprovals across regions was enough, it could determine whether a challenge must be filed in this Court or the D.C. Circuit simply by deciding whether to include Louisiana with its neighbor Mississippi because they are in two different EPA regions, Dkt. No. 63-1 at 9,337—even though they are both in the same judicial circuit and both purportedly contribute ozone to the same county in Texas, 88 Fed. Reg. at 9,356–57.  This would render the statute's conferring power on the courts to "make an independent assessment of the applicability of the action" largely a nullity.  *See Texas*, 829 F.3d at 418.

EPA raises policy concerns that not counting the Final Rule as one of "national applicability" would "needlessly complicate the venue analysis and create difficult line-drawing problems" and would threaten "inconsistent outcomes on matters of interstate pollution."  Motion at 10–

15

11.  But its argument is the one that creates confusion, including about when any non-binding framework is significant enough to make the rule one of national applicability or when enough states are added together to equal the same.

EPA's arguments about what amount to "practical effects" run counter to its own admonition to ignore those.  Motion at 9 (quoting *Texas*, 706 F. App'x at 163).  That a rule affects "interstate pollution" is also not enough because even a single state "good neighbor" SIP by definition concerns that.  And the harm of inconsistent outcomes is minimized here—according to the face of the Final Rule, challenges will rise or fall based on EPA's individualized analysis of the adequacy of each SIP.  The possibility for inconsistency is better addressed at the level of determination below in any event because SIP approvals or disapprovals can only be "consistent" or not based on common determinations.  To the extent inconsistency is a meaningful concept for applicability, it is not controlling because under the statutory framework; different judicial circuits can evaluate SIPs for two neighboring states in the same EPA region.  And other circuits take pains to minimize inconsistency, as they did in reviewing the same rulemaking at issue in *U.S. Steel*.  *See W. Oil*

*& Gas Ass'n v. EPA*, 633 F.2d 803, 808, 811 (9th Cir. 1980). There is no nationally applicable action on which uniformity is uniquely desirable or where the D.C. Circuit's "administrative law expertise" is necessary.

### B.    EPA's disapproval of Louisiana's SIP is not based on a determination of nationwide scope or effect.

Though the Final Rule disapproving Louisiana's SIP is "locally or regionally applicable," EPA also argues that it must still be transferred because it is "based on a determination of nationwide scope or effect." Motion at 13. But this Court has already addressed similar SIP disapprovals and found that they are not, and nothing in this case changes that result.

In a prior *Texas v. EPA* case challenging a final rule disapproving SIPs of Texas and Oklahoma, this Court explained how the provision works. The "determinations" are "the justifications the agency gives for the action" that are "found in the agency's explanation of its action" and give "the reason the agency takes the action that it does." *Texas,* 829 F.3d at 419. But because what matters is the determination that the action is "based on," the relevant one is that which "lie[s] at the core of the agency action," and the EPA should identify it. *Id.* Those that are "[m]erely peripheral or extraneous" are not relevant to the inquiry. *Id.*

The court must ask whether that core determination is of "nationwide scope or effect"—a similar inquiry to the scope of a final action's applicability. *Id.* at 420. In that case, the Court held that EPA based its disapproval of the SIPs on "a number of intensely factual determinations." *Id.* at 421. Indeed, it further noted that "the SIP process is generally highly factbound and particular to the individual state," and nothing there was exceptional. *Id.* at 421 n.24.

Here too EPA based its disapprovals (at least on the face of the Final Rule) on fact-bound determinations particular to the individual states. According to the Final Rule, "each individual state's submission" was evaluated on its "own merits." Dkt. No. 63-1 at 9,354; *see also id.* at 9,343. EPA justified Louisiana's SIP disapproval based on a variety of specific flaws that EPA asserted were in its SIP, including that the SIP did not have "an adequate Step 3 analysis"; "included an insufficient evaluation of additional emissions control opportunities"; had "technical flaws" in its "'consistent and persistent' claims, assessment of seasonal weather patterns, surface wind directions, and back trajectory analysis"; and "included no permanent and enforceable controls." Dkt. No. 63-1 at 9,356. These are very much like the "intensely factual determinations"

18

described by the *Texas* Court.  *See Texas,* 829 F.3d at 421 n.23.

EPA argues that its 4-step framework suffices for a determination with nationwide effect because it used the framework to evaluate the SIPs "with an eye to ensuring national consistency and avoiding inconsistent or inequitable results."  Motion at 14 (quoting 88 Fed. Reg. at 9,381).  As already discussed, the 4-step framework did not (on the face of the Final Rule) regulate anyone, so it did not "determine" anything with regard to any state because each was free to use alternative frameworks, as Louisiana did.  Therefore, the SIP disapproval could also not have been "based" on the framework because the Final Rule asserts that the framework did not control the outcome.  Similarly, and as with applicability, the scope or effect is not "nationwide" because the 4-framework did not control even a single state, and it neither covered the nation nor brought about any result.  *See Texas*, 829 F.3d at 420 n.20 & n.21.  To assume otherwise would be to assume that EPA acted contrary to its representations in guidance documents and its rulemaking, and even that would accomplish nothing for this facial analysis of the Final Rule.

19

Beyond the 4-step framework itself, EPA points to a variety of "determinations" that it made in the course of evaluating states' SIPs that it argues were part of its "eye to ensuring national consistency" and had nationwide scope or effect. It discusses only one example, that the Final Rule took issue with Texas's definition of "maintenance receptor." Motion at 14. That was irrelevant to Louisiana's SIP disapproval. EPA relegates the remainder to a footnote, where it asserts that the "Final Rule is replete with examples where EPA's bases for disapproving the SIP submissions had nationwide scope or effect." Motion at 15 n.10. EPA makes no argument for how any of these were at the "core of the agency action." Each example affected only a portion of the states' SIPs and formed only a small part of the analysis for disapproval—EPA has no basis to argue that they even largely controlled the outcome.

The only footnote example relevant to Louisiana is that EPA found "common analytic problems with the reliance on back trajectories to discount linkages." *Id.* EPA criticized Louisiana for use of HYSPLIT back trajectory analyses generally, but for other states that used those trajectories (including Arkansas and Texas), EPA took issue with specific parameters each used. Dkt. No. 63-1 at 9809 n.55, 9815, 9832. EPA did

not draw any categorical conclusions about back trajectory analysis—indeed, it confirmed EPA uses them to test "plausibility"—but simply concluded that for Louisiana, the analysis "did not provide evidence that was contrary to the conclusions of the EPA's photochemical modeling analyses." *Id.* at 9,815. That falls far short of a "determination" of nationwide scope or effect. And that back trajectory analysis was part of other related analyses (Louisiana's determination that the contribution must be "consistent and persistent" and its "assessment of seasonal weather patterns" and "surface wind directions") for which EPA criticized Louisiana and no other state. Dkt. No. at 9,356. The back trajectory analysis cannot be the core determination that the disapproval is "based on" when there were many related and unrelated determinations unique to Louisiana upon which the SIP disapproval hinged.

EPA's argument also sweeps too broadly. That EPA sought to treat issues that arose in more than one SIP consistently does not transform them into nationwide determinations. EPA has made a similar argument before in the context of smaller collections of SIP disapprovals—that the determinations made for some SIPs would provide precedential guidance for others—and courts have rejected it. *Texas*, 829 F.3d at 423 (citing

21

*Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 456 (D.C. Cir. 2013)). There is no reason that combining more SIP disapprovals—and still the minority of states—into the same Final Rule should change the result.[1] As this Court noted, "[a]ll SIPs are likely informed by EPA's assessment of SIPs from other states," and it would "reverse § 7607(b)(1)'s presumption" of review in regional circuits if the determinations made for a minority of SIP approvals were "necessarily g[iven] nationwide scope or effect." *Id.* Indeed, were EPA to act inconsistently by reaching opposite results on the same facts, especially in the same rulemaking, such unexplained inconsistency would be grounds for holding the action to be arbitrary and capricious. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016).

EPA's policy arguments are no more convincing in this context. Regarding uniformity, the statute itself, as interpreted by this Court, suffices and there is no need for separate consideration. To the extent

---

[1] This is all the more true because EPA has also argued before that it can act without uniformity between regions because SIP approvals or disapprovals depend on factual context. *Texas*, 829 F.3d at 423. Crediting purported consistency amongst SIP disapprovals that EPA chose to join together would only further its ability to manipulate venue.

Congress had a goal of "'centraliz[ing] review of national SIP issues in the D.C. Circuit' to ensure uniformity and avoid inconsistent results," Motion at 16 (citing *Texas*, 2011 WL 710598, at *4, n.41), it did so by specifying that the "national SIP issues" that justify consolidation in the D.C. Circuit are only those "core" determinations that actually determine the result of approval or disapproval.  There are no such "national SIP issues" here.  There is no special rationale for uniformity when EPA asserts that states could use alternatives to the 4-step framework.  The only other purported national issue affecting Louisiana's SIP disapproval, the back trajectory analysis, was not even resolved uniformly between states because it depended on their individual parameters and use of it.  By contrast, elevating singular issues like those to venue-controlling status would allow EPA to freely manipulate venue by claiming a common resolution of similar issues amongst SIPs, no matter how ancillary.  And it would disrespect the cooperative federalism of the CAA and the statutory design of the venue provision, including its presumption that SIP issues will be resolved in the geographic circuit of the state affected.

As above, the interstate nature of the good neighbor provision and

SIPs addressing it cannot control because it would justify treating even an individual SIP without nationwide determinations as though it was based on them, contrary to the statutory design. Similarly, the risk of inconsistent and inequitable results is low in the context of SIP disapprovals, where EPA purportedly based each disapproval on a myriad of context-specific determinations. EPA has not identified any purportedly nationwide determinations that were individually or collectively determinative such that an adverse finding would result justify the opposite result (approval), so it is difficult to see how it thinks consistency of outcome would be dramatically improved merely by resolving those issues the same way in the same court. There is no compelling reason to treat this collection of SIP disapprovals differently than the mine run of them.

## II.     TO THE EXTENT EPA SEEKS DISMISSAL, THAT SHOULD BE DENIED.

EPA's request for dismissal is subordinated to a footnote and therefore waived. *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003). This Court has already determined that § 7607 is a venue statute and not jurisdictional (which EPA acknowledges, Motion at 9 n.7.) and that the appropriate remedy for a petition filed in the

wrong circuit is transfer. *Texas*, 829 F.3d at 418, 420. EPA gives no reason for the harsh remedy of dismissal rather than transfer other than that if the Court acts swiftly the states could still file in the D.C. Circuit. Because Louisiana has not filed in the D.C. Circuit, its citation of *Chevron U.S.A., Inc. v. EPA*, 45 F.4th 380 (D.C. Cir. 2022) is inapposite.

## CONCLUSION

For all of these reasons, the Court deny EPA's motion to dismiss or transfer Louisiana's Petition.

Dated: April 3, 2023                    Respectfully Submitted,

                                        JEFF LANDRY
                                         Attorney General

                                        /s/ *Joseph S. St. John*
Courtney J. Burdette (LA 30564)         ELIZABETH B.MURRILL (LA 20685)
*Executive Counsel*                      *Solicitor General*
Jill C. Clark, Bar (LA 33050)           JOSEPH S. ST. JOHN (LA 36682)
 *General Counsel*                       *Deputy Solicitor General*
LOUISIANA DEPT. OF                      MACHELLE HALL (LA 31498)
 ENVIRONMENTAL QUALITY                   *Assistant Attorney General*
Office of the Secretary, Legal          LOUISIANA DEPT. OF JUSTICE
Division                                909 Poydras Street, Suite 1850
P.O. Box 4302                           New Orleans, LA 70112
Baton Rouge, Louisiana 70821            Tel: (225) 485-2458
Tel: (225) 219-3985                     murrille@ag.louisiana.gov
Courtney.Burdette@la.gov                stjohnj@ag.louisiana.gov
Jill.Clark@la.gov                       hallm@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2023, a true and correct copy of the foregoing has been served on all parties in accordance with the Appellate Rules of Civil Procedure, via the Court's CM/ECF system.

*/s/ Joseph S. St. John*
JOSEPH S. ST. JOHN
*Counsel of Record for*
*Petitioners the State of Louisiana and*
*the Louisiana Department of*
*Environmental Quality*

26

# CERTIFICATE OF COMPLIANCE

This filing complies with Rule 27(a)(3) because it contains 4,852 words, excluding the parts that can be excluded. This filing also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Century Schoolbook font.

Dated:  April 3, 2023

*/s/Joseph S. St. John*
Joseph S. St. John
*Counsel of Record for*
*Petitioners the State of Louisiana*
*and the Louisiana Department of*
*Environmental Quality*