No. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO CREEK POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS ENERGY, LLC; MIDLOTHIAN ENERGY, LLC; OAK GROVE MANAGEMENT COMPANY LLC; WISE COUNTY POWER COMPANY, LLC; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency,

Respondents.

**TEXAS INDUSTRY PETITIONERS'
REPLY IN SUPPORT OF MOTION TO STAY FINAL ACTION
OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY**

April 10, 2023

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i
TABLE OF AUTHORITIES ........................................................................................ ii
LIST OF EXHIBITS IN APPENDIX ........................................................................ iv
GLOSSARY ..................................................................................................................... v
ARGUMENT ................................................................................................................... 1
I.      The Texas Stay Motions Should Be Decided by May 1 ........................... 1
II.     Petitioners Are Likely to Succeed on the Merits ....................................... 1
        A.    In *EME Homer*, the Supreme Court Confirmed That Texas—Not EPA—Is Delegated the Discretion to Apply the Good Neighbor Provision in its SIP ........................................................................ 2
        B.    EPA May Not Lawfully Superimpose its "4-Step" Framework on Texas's SIP ................................................................................... 3
        C.    Texas's Application of the "Maintenance" Prong Tracks the Statute ...... 4
        D.    EPA Unlawfully Rejected TCEQ's Weight-of-Evidence Approach ........ 5
        E.    EPA's Use of "Ballpark Estimates" Was Arbitrary and Capricious ......... 8
III.    Petitioners Will Suffer Irreparable Harm Absent a Stay ........................... 8
IV.    The Balance of Harms and the Public Interest Favor a Stay ............................. 10
CONCLUSION ............................................................................................................. 11
CERTIFICATE OF COMPLIANCE ....................................................................... 13
CERTIFICATE OF SERVICE ................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*EME Homer City Generation, L.P. v. EPA*,
   696 F.3d 7 (D.C. Cir. 2012) .......................................................................... 7, 9

*EME Homer City Generation, L.P. v. EPA*,
   795 F.3d 118 (D.C. Cir. 2015) ....................................................................... 3, 6

*EPA v. EME Homer City Generation, L.P.*,
   572 U.S. 489 (2014) ...................................................................................... 2, 3

*Exelon Wind 1, L.L.C. v. Nelson*,
   766 F.3d 380 (5th Cir. 2014) ............................................................................ 4

*Luminant Generation Co. v. EPA*,
   675 F.3d 917 (5th Cir. 2012) ......................................................................... 3, 4

*Midwest Ozone Grp. v. EPA*,
   61 F.4th 187 (D.C. Cir. 2023) ........................................................................... 7

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
   463 U.S. 29 (1983) ............................................................................................ 8

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ............................................................................................ 3

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ................................................................... 1, 4, 10

*Texas v. EPA*,
   983 F.3d 826 (5th Cir. 2020) ............................................................................ 6

*Univ. of Tex. M.D. Anderson v. U.S. Dep't of Health & Human Servs.*,
   985 F.3d 472 (5th Cir. 2021) ............................................................................ 6

**Federal Statutes**

42 U.S.C. §7410(c)(1)(B) ........................................................................................ 8

42 U.S.C. §7505a ................................................................................................. 4

**Federal Regulations**

40 C.F.R. §97.810(a)(2) ................................................................................... 10

**Federal Register**

87 Fed. Reg. 9,798 (Feb. 22, 2022) .............................................................. 4, 10

88 Fed. Reg. 9,336 (Feb. 13, 2023) ................................................................... 6

**Miscellaneous**

EPA, *Federal "Good Neighbor Plan"* (Mar. 15, 2023), *available at* https://tinyurl.com/2k2e3nwb) ("Final FIP") ....................................... 1

EPA Region 6, *2015 8-Hour Ozone Transport SIP Proposal Technical Support Document* (Feb. 2022) ("Region 6 Texas TSD") ................................... 7, 8

Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (D.C. Cir. Dec. 30, 2011) ........................................................................................ 3

Order Granting Stay, *R.J. Reynolds Vapor Co. v. FDA*, No. 23-60037 (5th Cir. Mar. 23, 2023) ................................................................................ 10

TCEQ, *Transport State Implementation Plan (SIP) Revision for the 2015 Ozone National Ambient Air Quality Standards (NAAQS)*, Docket No. 2017-1762-SIP (Aug. 8, 2018), *available at* https://tinyurl.com/yc53rkrf ("Texas SIP") ................................................................................. 4, 5, 6

# LIST OF EXHIBITS IN APPENDIX

**Exhibit**                                                                       **Page Number in Appendix**

Supplemental Declaration of Dwayne W. "Woody" Rickerson, Vice President of System Planning & Weatherization, Electric Reliability Council of Texas (ERCOT) (Apr. 7, 2023) ("Rickerson Supp.") .......................... 1

Declaration of Kenneth C. Price, Chief Operating Officer, Lower Colorado River Authority (Apr. 6, 2023) ("Price Decl.") ....................... 4

Supplemental Declaration of Dudley Zahn, Vice President, NRG Energy, Inc. (Apr. 10, 2023) ("Zahn Supp.") ....................................................... 13

Supplemental Declaration of Randall J. Talley, Vice President, Solid Fuels and Environmental Trading, Vistra Corp. (Apr. 10, 2023) ("Talley Supp.") ............................................................................................................ 21

Declaration of Jacob Krautsch, Senior Director of Environmental, Energy Transfer LP (Apr. 10, 2023) ("Krautsch Decl.") .................................. 31

Declaration of Kevin Pollo, Vice President of Energy Supply & Market Operations, CPS Energy (Apr. 7, 2023) ("Pollo Decl.") ....................... 36

# **GLOSSARY**

| | |
|---|---|
| **CAA or the Act** | Clean Air Act |
| **EPA** | United States Environmental Protection Agency |
| **ERCOT** | Electric Reliability Council of Texas |
| **FIP** | Federal Implementation Plan |
| **NAAQS** | National Ambient Air Quality Standards |
| **NO$_X$** | Nitrogen Oxides |
| **SIP** | State Implementation Plan |
| **TCEQ** | Texas Commission on Environmental Quality |
| **Texas Industry Petitioners** | Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Council, Texas Oil & Gas Association, Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC |

# ARGUMENT

## I. The Texas Stay Motions Should Be Decided by May 1

The Court should not delay ruling on Texas Petitioners' stay motions based on EPA's claim that "Compliance will not start on May 1, 2023." Doc. 179 at 34 ("Opp."). That is a ruse. The Final FIP provides that Texas facilities "will begin participating in" the more stringent "Group 3 trading program on May 1, 2023, regardless of the rule's effective date." Final FIP at PDF p. 420. Thus, even with EPA's promise to later "prorate[]" budgets (at 34)—which will not redress Petitioners' harm (*infra* at pp. 8-10)—a ruling—or at least an administrative stay—before May 1 is necessary to maintain the status quo and prevent EPA from imposing the new Group 3 provisions.

Nor does EPA's venue motion mean that "Movants are not entitled to relief of any kind." Opp. at 2. This Court is the proper venue. Doc. 102 at 1. Even with EPA's venue objection, this Court unquestionably has jurisdiction and the "power to consider the motion for a stay." *Texas v. EPA*, 829 F.3d 405, 418 (5th Cir. 2016). Accordingly, this Court's practice has been to decide stay motions before, or alongside, venue motions. *See, e.g.*, *id.*; Doc. 102 at 19 (citing cases). EPA gives no justification for a different approach here.

## II. Petitioners Are Likely to Succeed on the Merits

For multiple independent reasons, Petitioners are likely to succeed on the merits.

### A. In *EME Homer*, the Supreme Court Confirmed That Texas—Not EPA—Is Delegated the Discretion to Apply the Good Neighbor Provision in its SIP

EPA defends its Texas SIP disapproval based almost entirely on its selective reading of the Supreme Court's decision in *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489 (2014), which involved challenges by Texas and others to an EPA good neighbor *FIP*—the "Transport Rule." Opp. at 2-5, 17, 25, 29, 37. EPA contends that "the Supreme Court discerned in the Good Neighbor Provision 'a delegation of authority to EPA to select from reasonable options[,]' and upheld as reasonable the very framework for evaluating state plans that EPA employed in this rule [*i.e.*, EPA's '4-Steps']." Opp. at 2.

Not so. *EME Homer* dealt exclusively with EPA's promulgation of *federal* implementation plans, not SIPs. *See EME Homer*, 572 U.S. at 503. EPA's antecedent SIP disapprovals, which had largely gone "unchallenged," were not even before the Supreme Court. *Id.* at 503 n.11, & 507 ("[The] State respondents' challenge is not that EPA's disapproval of any particular SIP was erroneous."). Thus, *EME Homer* does not help EPA here.

Quite the opposite, the Supreme Court confirmed that, for SIPs, the "delegation of authority" that EPA claims for itself (at 2) runs to the State, not EPA. The Supreme Court explained that its references to "EPA's task" in issuing FIPs should be construed to refer to States in the SIP context because "the Good Neighbor Provision is initially directed to upwind States." *EME Homer*, 572 U.S. at 514 & n.15. *EME Homer* is thus

2

consistent with this Court's precedent that, at the SIP stage, "[o]nly the [S]tates enjoy discretion in implementing the [Act]." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 928 n.8 (5th Cir. 2012). Because EPA "misconceived the law" on this crucial point, its disapproval "may not stand" and should be stayed (just as the Transport Rule was stayed in *EME Homer*[1]). *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943).

### B. EPA May Not Lawfully Superimpose its "4-Step" Framework on Texas's SIP

Because *EME Homer* did not concern SIPs, it is irrelevant that, according to EPA (at 17-18), "[t]he Supreme Court has held that EPA's 4-step framework provides a permissible and workable approach for implementing these [good neighbor] requirements." While EPA's framework may (or may not) be permissible for a particular FIP, Texas has the discretion to adopt a *different* "permissible and workable" approach under its statutory SIP authority.

The Supreme Court confirmed as much by holding that Texas was delegated the authority to address interstate transport in the first instance in a SIP *without* "EPA's input." *EME Homer*, 572 U.S. at 509-10 ("When Congress elected to make EPA's input a prerequisite to state action under the Act, it did so expressly," but it did not "include[] a similar direction in [the good neighbor] section."). Thus, in exercising its independent

---

[1] It should not be lost here that the D.C. Circuit **granted** Texas's motion to stay the Transport Rule, *see* Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (D.C. Cir. Dec. 30, 2011), after which Texas **prevailed** on the merits of its argument that EPA's FIP unlawfully over-controlled Texas sources. *See EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 129 (D.C. Cir. 2015).

statutory authority under 42 U.S.C. §7410(a), Texas may interpret and apply the good neighbor provision and select the "permissible and workable" approach for its SIP, no less than EPA may for FIPs. *Luminant*, 675 F.3d at 928 n.8; *see also Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 394-95 (5th Cir. 2014) (deferring to Texas PUC implementation of federal statute).

*EME Homer*, then, does not provide the statutory hook that EPA seeks. Without that hook, it is left empty-handed. Since EPA has no good neighbor regulations that bind States (Doc. 32-1 at 14), this case is not only "comparable" (at 19) to the Texas Regional Haze case—where this Court stayed EPA's disapproval of Texas's SIP in the "absence of a regulation or statute requiring [EPA's preferred approach]"—it is on all fours. *Texas*, 829 F.3d at 429.

### C. Texas's Application of the "Maintenance" Prong Tracks the Statute

EPA's disapproval claimed that TCEQ failed to "give[] meaning to the CAA's instruction" regarding "interfering with maintenance" (87 Fed. Reg. 9,798, 9,826 (Feb. 22, 2022)), but its brief now accepts that "the Act provides no [such] instruction." Opp. at 25. And EPA's brief ignores entirely the statutory provision that "gives meaning" to the term "maintenance"—42 U.S.C. §7505a—which TCEQ used to identify "maintenance" monitors. Texas SIP at 3-42. Because TCEQ's approach was consistent

with that statutory provision (Doc. 32-1 at 6-7, 14)—a point that EPA does not contest—EPA could not legally disapprove it.

EPA insists that it disapproved Texas's method "because it failed to comport with [*North Carolina v. EPA*]." Opp. at 26. Yet EPA does not dispute that Texas's SIP did, in fact, give both prongs independent effect and separately identified both "nonattainment" and "maintenance" receptors. Doc. 32-1 at 14. And it cites nothing in *North Carolina* or elsewhere for its contention (at 27) that using "the latest three years" of data means that Texas's SIP did not account for variability or independently identify maintenance monitors, which Texas's SIP unquestionably did. *See* Texas SIP at 3-39–3-42.

### D. EPA Unlawfully Rejected TCEQ's Weight-of-Evidence Approach

EPA contends that it lawfully disapproved Texas's SIP based on "Texas's failure to 'conduct an adequate Step 3 analysis.'" Opp. at 20. But TCEQ was not required to, and did not, conduct a "Step 3 analysis" under EPA's rigid framework. *See* Texas SIP at 3-2.

EPA's actual disagreement is with TCEQ's "weight-of-evidence approach to determining 'significant contribution'" (at 20) instead of blindly applying EPA's bright-line one-percent threshold. Contrary to its litigating position (at 20), EPA *does* "use[] the 1% contribution threshold to define 'significance.'" In EPA's own words: "If a state's contribution value does not equal or exceed the threshold of 1 percent of the NAAQS . . . the state does not contribute significantly to nonattainment or interfere

5

with maintenance of the NAAQS in the downwind states." *See* 88 Fed. Reg. 9,336, 9,342 (Feb. 13, 2023). It is not simply "a screening threshold" (at 20)—in reality, a one-percent contribution establishes definitively, for EPA, that "th[e] upwind State [has] 'contributed significantly.'" *EME Homer*, 795 F.3d at 125. As EPA's brief concedes (at 21), that is why EPA rejected out-of-hand Texas's approach of further evaluating the "significance" of its contribution to downwind receptors with a modeled one-percent linkage.

EPA tries to side-step that issue in this Court because the "one-percent threshold does not appear in the text of [the interstate transport] provision," *Texas v. EPA*, 983 F.3d 826, 839 (5th Cir. 2020), and thus cannot be imposed on Texas. And because TCEQ's weight-of-evidence approach is consistent with the statute and a reasonable method of assessing downwind contribution to ozone nonattainment, *see id.* at 839-40, EPA is left with no valid basis for its disapproval. Indeed, TCEQ was simply following an approach that EPA had *approved* for other States. Texas SIP at 3-59 & n.28 (relying on EPA approval of Nevada good neighbor SIP); *see also Univ. of Tex. M.D. Anderson v. U.S. Dep't of Health & Human Servs.*, 985 F.3d 472, 479 (5th Cir. 2021) ("It is a bedrock principle of administrative law that an agency must 'treat like cases alike.'").

As a last resort, EPA's brief claims that the "*actual* reason" for its disapproval was that Texas's "'weight-of-evidence' analysis was technically flawed" (at 22)—despite having argued just two pages earlier that "EPA's basis for disapproval [was]

6

not the flaws EPA identified in Texas's data, modeling, and methodology" (at 20). Notwithstanding counsel's post hoc conflicting characterizations, the actual reason that EPA gave *in the record* for rejecting TCEQ's weight-of-evidence analysis was not any technical flaws, but rather EPA's technical *judgment* that TCEQ had not provided "substantial evidence that counters . . . the contribution analysis using EPA's [one-percent] contribution methodology." Region 6 Texas TSD at 77-78.

But EPA cites no support for its authority to disapprove Texas's SIP based on EPA's different technical judgment about the same data. TCEQ is delegated the authority under the Act to make its own technical judgments in the SIP context, and reviewing courts properly look to the technical judgment of "the agency to which [the job] was delegated"—here, TCEQ. *See Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 192 (D.C. Cir. 2023). EPA identifies no modeling protocols that TCEQ did not follow. And TCEQ is widely-recognized as an authoritative source on complex photochemical modeling of interstate transport of emissions. *Id.* at 190 n.2 (citing TCEQ on photochemical modeling); *see also EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 49 & n.13 (D.C. Cir. 2012) ("State air quality divisions are no strangers to complex air quality and meteorological modeling of interstate transport of emissions." "To cite one example: the State of Texas." (Rogers, J, dissenting)), *rev'd on other grounds*, 572 U.S. 489 (2014). There is no basis for second-guessing TCEQ's technical expertise here.

7

E. **EPA's Use of "Ballpark Estimates" Was Arbitrary and Capricious**

EPA does not dispute that it judged the accuracy of Texas's photochemical modeling against "ballpark estimates" that its own Regional Modeler concluded were not "a defensible basis on which to reach any conclusions regarding future air quality conditions." Region 6 Texas TSD at 40 & n.23. Simply renaming them now as "bounding assumptions" (at 29) does not cure EPA's clear error or provide a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (internal quotations and citation omitted).

## III. Petitioners Will Suffer Irreparable Harm Absent a Stay

EPA's argument that Petitioners have not demonstrated irreparable harm rests on two claims: 1) EPA's disapproval "does not require Movants to do *anything* and thus itself effects no irreparable harm"; and 2) "Movants' harm allegations focus on the *proposed* FIP, . . . which is materially different from the Final FIP." Opp. at 30-31. Both are wrong.

First, EPA's disapproval directly causes Texas Industry Petitioners' irreparable harm because it is the sole source of EPA's authority to impose its FIP, which it has now done. 42 U.S.C. §7410(c)(1)(B). Contrary to EPA's claim (at 31), Texas Petitioners need not also seek review of EPA's not-yet-published FIP. That exact question has been asked and answered. As Judge Rogers explained in her dissent in *EME Homer*: "If Georgia, Kansas, Ohio wish to avoid enforcement of the Transport Rule FIPs because they contend EPA's SIP disapprovals were in error, the proper course is to

8

seek a stay of EPA's disapprovals in their [separate] pending cases; if granted, a stay would eliminate the basis upon which EPA may impose FIPs on those States." *EME Homer*, 696 F.3d at 44 n.6 (Rogers, J. dissenting). That is what Texas Petitioners have done here.

Second, the Final FIP is substantially the same as the proposed FIP and produces the same harms. Rickerson Supp. ¶¶4, 6 ("imminent harm to the reliability of the ERCOT grid" and four times greater likelihood of load shed in summer 2023 under Final FIP); Pollo Decl. ¶¶5, 30 (millions of dollars in unrecoverable costs in next six months for municipally-owned utility); Talley Supp. ¶¶4, 11-12 (insufficient allowance allocations for summer 2023 and increased allowance costs); Price Decl. ¶¶26-31 (installation of SCR and increased allowance cost); Zahn Supp. ¶9 (costs in 2023 for SCR); Krautsch Decl. §III.A.1 (over $34-40 million for pipeline company).

These harms occur even according to EPA's own declarant, who establishes that the Final FIP, like the proposal: **1)** allocates Texas units *fewer* allowances than under the current Group 2 program, even under a "prorated" "transitional" budget (*compare* Birnbaum Decl. ¶77, Tbl.1 (42,758 tons), *with* Doc. 32-2 at 368, ¶10 (52,301 tons)); **2)** requires Texas units to "optimiz[e] existing post-combustion controls" "starting in 2023," "requir[ing] increased frequency or quantity of delivered chemical reagents" (Birnbaum Decl. ¶¶28, 44); **3)** is based on costly new SCR, the "engineering studies, conceptual design, schedule, specifications, and cost estimates" for which must be conducted now (*id.* ¶51); **4)** has altered company trading decisions through an

9

"allowance price signal" causing companies to "maintain or increase" their allowance holdings instead of trading (*id.* ¶56); **5)** has resulted in higher allowances prices "reflect[ing] market participants anticipating a final regulation similar to the [proposed]" (*id.* ¶65); **and 6)** will cause "retail electricity prices" to rise (*id.* ¶59).

Conceding these harms, EPA argues instead that the "emissions reductions through the Final FIP are 'readily achievable'" "within two months or less." Opp. at 33, 35; *see also* Birnbaum Decl. ¶¶45, 47. But achievability is not the standard. What EPA does not explain is how any of these costs can be recovered or actions undone when its disapproval of Texas's SIP is later found unlawful. Here, "[n]o mechanism . . . exists for the [movant] to recover the compliance costs they will incur," *Texas*, 829 F.3d at 433-34, nor is there any "suggestion [that Texas Petitioners] could overcome the [EPA's] sovereign immunity to recover costs," Order Granting Stay, *R.J. Reynolds Vapor Co. v. FDA*, No. 23-60037, at 15-16 (5th Cir. Mar. 23, 2023).

**IV.  The Balance of Harms and the Public Interest Favor a Stay**

While EPA's brief claims that a "stay w[ill] leave no law on the books to address [Texas's] harmful emissions" (at 36), its own declarant concedes that "[a]ll the Texas units that will participate in the [new] Trading Program already participate in another CSAPR trading program." Birnbaum Decl. ¶20. Thus, even with a stay, Texas power plants will remain subject to federally-enforceable $NO_X$ reductions that are "on the books," *see* 40 C.F.R. §97.810(a)(20), and ozone levels will continue to "trend downward," 87 Fed. Reg. at 9,827.

**CONCLUSION**

For these reasons and those in Texas Petitioners' stay motions, the Court should stay EPA's disapproval and prohibit EPA from taking any action based on it, including reducing the current Group 2 allowance allocations to Texas facilities or moving them to the Group 3 program, pending the conclusion of these proceedings.

Dated: April 10, 2023

Respectfully submitted,

s/ P. Stephen Gidiere III
P. Stephen Gidiere III
Julia B. Barber
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

Stephanie Z. Moore
Executive Vice President & General Counsel
Daniel J. Kelly
Senior Vice President & Deputy General Counsel
David W. Mitchell
Senior Counsel, Environmental
VISTRA CORP.
6555 Sierra Drive
Irving, Texas 75039

*Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC*

s/ Aaron M. Streett
Aaron M. Streett
Matthew L. Kuryla
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522
aaron.streett@bakerbotts.com

*Counsel for Petitioners Association of Electric Companies of Texas, BCCA Appeals Group, Texas Chemical Council, and Texas Oil & Gas Association*

# **CERTIFICATE OF COMPLIANCE**

The undersigned counsel states that this reply complies with Fed. R. App. P. 27(d)(2)(C) because it contains 2,599 words, excluding the items allowed to be excluded pursuant to Fed. R. App. P. 32(f), as counted by a word processing system and, therefore, is within the word limit. This reply also complies with typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface in 14-point Garamond font.

The undersigned counsel also certifies that, pursuant to paragraph A(6) of this Court's ECF Filing Standards, (1) any required privacy redactions have been made in compliance with 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: April 10, 2023

s/ P. Stephen Gidiere III
*Counsel for Luminant Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 10th day of April, 2023.

s/ P. Stephen Gidiere III  
*Counsel for Luminant Petitioners*
