No. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

STATE OF TEXAS, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' RESPONSE IN OPPOSITION TO LOUISIANA'S
MOTION TO STAY THE FINAL RULE**

———————————

TODD KIM
*Assistant Attorney General*

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN          JIN HYUNG LEE
DANIEL P. SCHRAMM                    *U.S. Department of Justice*
  *Office of the General Counsel*        *Environment and Natural Resources*
  *U.S. Environmental Protection*          *Division*
    *Agency*                            *P.O. Box 7611*
  *Washington, DC*                      *Washington D.C. 20044-7611*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STATE OF TEXAS, et al.,

    Petitioners,

       v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

    Respondents.

No. 23-60069

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Respondents, as

governmental parties, need not furnish a certificate of interested persons.


Date: April 17, 2023

                        */s/ Jin Hyung Lee*
                        JIN HYUNG LEE
                        U.S. Department of Justice
                        Environment & Natural Resources
                        Division
                        Environmental Defense Section
                        P.O. Box 7611
                        Washington, D.C. 20044
                        (202) 514-2640
                        jin.hyung.lee@usdoj.gov

                        *Counsel for Respondents*

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION ............................................................................. 1

BACKGROUND ............................................................................... 3

    I.     Statutory Background ........................................................... 3

    II.    Implementation of the Good Neighbor Provision ................. 4

    III.   Procedural History .............................................................. 5

          A.    EPA's Evaluation and Disapproval of Louisiana's, and Twenty Other States', Good Neighbor Submissions for the 2015 Ozone NAAQS ............................................. 5

          B.    EPA's Federal Good Neighbor Plan for the 2015 Ozone NAAQS .................................................................. 9

          C.    Litigation Over the Final Rule .................................. 10

ARGUMENT ................................................................................. 11

    I.     The Motion Should be Denied on Venue Grounds or Transferred to the D.C. Circuit .......................................... 11

    II.    Louisiana is Not Entitled to a Stay ....................................... 13

          A.    Louisiana is Unlikely to Succeed on the Merits. ...................... 13

               1.    Louisiana's Own Chosen Modeling, Methodology, and Analyses Did Not Support its Conclusion that Louisiana Need Not Reduce its Emissions ..................... 14

               2.    EPA Appropriately Considered Updated Air Quality Data in Disapproving Louisiana's SIP Submission ..................................................... 16

B.    Louisiana Has Shown No Irreparable Harm Absent a
      Stay...............................................................................19

C.    The Balance of Equities and The Public Interest Disfavor
      a Stay.............................................................................22

CONCLUSION ...............................................................................24

CERTIFICATES OF COMPLIANCE.........................................................25

CERTIFICATE OF SERVICE ...............................................................26

# TABLE OF AUTHORITIES

**Cases**

*BCCA Appeal Grp. v. EPA*,
  355 F.3d 817 (5th Cir. 2003) .................................................................14

*EPA v. EME Homer City Generation, L.P.*,
  572 U.S. 489 (2014) ....................................................... 1, 3, 4, 22, 23

*Gen. Motors Corp. v. United States*,
  496 U.S. 530 (1990) ...................................................................................3

*Long Island Care at Home, Ltd. v. Coke*,
  551 U.S. 158 (2007) .................................................................................17

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ....................................................... 19, 21

*Maybelline Co. v. Noxell Corp.*,
  813 F.2d 901 (8th Cir. 1987) ...............................................................12

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) .................................................................................11

*Midwest Ozone Grp. v. EPA*,
  61 F.4th 187 (D.C. Cir. 2023) .................................................................4

*Nasdaq Stock Mkt. LLC v. SEC*,
  998 F.3d 1006 (D.C. Cir. 2021)............................................................21

*Nken v. Holder*,
  556 U.S. 418 (2009) ....................................................................... 11, 22

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*,
  760 F.2d 312 (D.C. Cir. 1985)...............................................................12

*Oklahoma v. EPA*,
  723 F.3d 1201 (10th Cir. 2013).............................................................18

*RMS of Ga., LLC v. EPA*,
  No. 21-14213, 2023 WL 2925109 (11th Cir. Apr. 13, 2023) ..............13

*Sambrano v. United Airlines, Inc.*,
    No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022)...................................21

*Sampson v. Murray*,
    415 U.S. 61 (1974) ......................................................................................21

*Sierra Club v. EPA*,
    671 F.3d 955 (9th Cir. 2012) ........................................................................17

*Sierra Club v. EPA*,
    939 F.3d 649 (5th Cir. 2019) ........................................................................13

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ................................................................. 13, 19

*Winter v. NRDC*,
    555 U.S. 7 (2008) ................................................................................. 21, 22

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985)............................................................... 19, 20

*Wisconsin v. EPA*,
    938 F.3d 303 (D.C. Cir. 2019)........................................................ 4, 5, 17, 18

**Statutes**

42 U.S.C. § 7401(b)(1)......................................................................................3

42 U.S.C. § 7408............................................................................................1, 3

42 U.S.C. § 7410(a) ..........................................................................................3

42 U.S.C. § 7410(a)(1)....................................................................................1,5

42 U.S.C. § 7410(a)(2)(D)(i) ....................................................................... 5. 17

42 U.S.C. § 7410(a)(2)(D)(i)(I) ........................................................ 1, 4, 17, 23

42 U.S.C. § 7410(c)(1)....................................................................................4, 9

42 U.S.C. § 7410(k)(3)....................................................................................1, 4

42 U.S.C. § 7604(a)(2)......................................................................................18

42 U.S.C. § 7607(b)(1)........................................................................21

**Regulations**

76 Fed. Reg. 48208 (Aug. 8, 2011)...................................................4

80 Fed. Reg. 65292 (Oct. 26, 2015)..................................................5

81 Fed. Reg. 74504 (Oct. 26, 2016)..................................................4

86 Fed. Reg. 23054 (Apr. 30, 2021) ................................................4

87 Fed. Reg. 20036 (Apr. 6, 2022) ................................................21

87 Fed. Reg. 9798 (Feb. 22, 2022) ........................................ 6, 8, 9, 14, 16

88 Fed. Reg. 9336 (Feb. 13, 2023) ................................................. passim

## INTRODUCTION

Pursuant to the Clean Air Act's ("CAA" or "Act") "Good Neighbor Provision," 42 U.S.C. § 7410(a)(2)(D)(i)(I), states must ensure that their emissions of ozone precursors, which travel great distances, do not significantly contribute to other states' air-quality problems, *see EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 495-96 (2014). States were required to submit for EPA's review Good Neighbor plans after EPA revised the national air quality standards for ozone. *See* 42 U.S.C. §§ 7408-7409; 7410(a)(1), (k)(3). Twenty-one states, including Louisiana, covered in the action under review (the "Final Rule") submitted plans claiming they need not reduce their emissions contributing to downwind states' ozone air-quality problems, and EPA reasonably determined that those plans failed to comply with the Good Neighbor Provision. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336, 9338 (Feb. 13, 2023) (Ex. 1).

Governmental and non-governmental entities from twelve states petitioned for review of the Final Rule in six regional circuit courts. Several, including Louisiana, moved to stay the Final Rule.

Louisiana's motion should be denied.  At the outset, Louisiana is not entitled to relief because venue is improper.  *See* ECF No. 50.  The Court should resolve this threshold issue before any stay motion.

Regardless, Louisiana is not entitled to a stay.

First, Louisiana's challenge is unlikely to succeed.  Louisiana's chosen modeling and methodology showed that Louisiana contributes to nonattainment and interferes with maintenance of the national ozone standards in Texas, a conclusion reinforced by EPA's updated modeling.  Thus, the choice of modeling, which is the basis for Louisiana's only merits-based argument, is irrelevant here.  Moreover, EPA reasonably determined that Louisiana's conclusion that it need not reduce its emissions was unsupported and inconsistent with the Good Neighbor Provision.

Second, Louisiana established no irreparable harm from the Final Rule— which does not require Louisiana to do *anything*.  Nor is Louisiana irreparably harmed from the federal plan that the Act compels EPA to promulgate in the states' place. That plan is a separate, not-yet-effective action not under review here.  Regardless, Louisiana misapprehends that federal plan and cites comments on the *proposed* plan, which EPA addressed in that separate final action.

Third, the balance of harms and the public interest disfavor a stay. Louisiana's ozone contributions are among the highest of any upwind state.

Depriving EPA of authority to address Louisiana's harmful emissions while this litigation proceeds would harm the health and welfare of millions of people in Texas impacted by Louisiana's pollution.

## BACKGROUND

### I.    Statutory Background

The Act seeks "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401(b)(1). To that end, the Act controls air pollution through a system of shared federal and state responsibility. *See Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). The Act tasks EPA to establish, periodically review, and, if appropriate, revise National Ambient Air Quality Standards ("NAAQS"), which limit the concentration of certain pollutants in the ambient air. 42 U.S.C. §§ 7408-7409. Once EPA sets new or revised NAAQS, states must propose for EPA's review state implementation plans ("SIPs") that, as relevant here, implement and enforce the NAAQS. *Id.* § 7410(a).

Many states have problems attaining and maintaining NAAQS due, in part, to pollution transported from other states. *EME Homer*, 572 U.S. at 496. This is particularly true for ozone, which is formed by pollutants that travel great distances. *Id.* at 496-97. The Good Neighbor Provision addresses interstate pollution transport by requiring each SIP to prohibit emissions that "contribute

significantly to nonattainment . . . or interfere with maintenance" of the NAAQS in downwind states.  42 U.S.C. § 7410(a)(2)(D)(i)(I).

EPA reviews states' submissions and must disapprove a SIP that does not comply with the Good Neighbor Provision.  *Id.* § 7410(k)(3).  EPA's disapproval of a SIP triggers EPA's duty to promulgate a federal implementation plan ("FIP") for the state.  *Id.* § 7410(c)(1).  States or sources within that state are not required to take any action because of EPA's disapproval.  *Id.*

## II.    Implementation of the Good Neighbor Provision

EPA has interpreted the Good Neighbor Provision over decades in several rulemakings.[1]  Courts, including the Supreme Court, have consistently upheld the 4-step framework EPA developed for evaluating and defining Good Neighbor obligations as consistent with the Act and "permissible, workable, and equitable." *EME Homer*, 572 U.S. at 524; *see also, e.g.*, *Midwest Ozone Grp. v. EPA*, 61 F.4th 187 (D.C. Cir. 2023); *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019).

Under this framework, Good Neighbor obligations are determined by:

> (1) identifying downwind nonattainment or maintenance "receptors" (i.e., sites that will not attain or will struggle to maintain, respectively, the NAAQS);

---

[1] *See, e.g.*, Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals, 76 Fed. Reg. 48208 (Aug. 8, 2011); Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74504 (Oct. 26, 2016); Revised CSAPR Update for the 2008 Ozone NAAQS, 86 Fed. Reg. 23054 (Apr. 30, 2021).

(2) identifying upwind states whose pollution is linked to those downwind receptors above a contribution threshold;

(3) evaluating whether the linked states "significantly" contribute to downwind states' nonattainment or interfere with their maintenance of the NAAQS by assessing potential cost-effective emissions reduction opportunities to determine what contribution amount is "significant"; and

(4) implementing necessary emissions reductions through enforceable control strategies.

*See Wisconsin*, 938 F.3d at 310-11.

## III. Procedural History

### A. EPA's Evaluation and Disapproval of Louisiana's, and Twenty Other States', Good Neighbor Submissions for the 2015 Ozone NAAQS

In 2015, EPA revised the ozone NAAQS to protect public health and welfare. National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 ozone NAAQS"). Each state then had to submit SIPs to implement and enforce the new standard, including a plan to meet its Good Neighbor obligation as expeditiously as practicable. *See* 42 U.S.C. § 7410(a)(1), (a)(2)(D)(i); *Wisconsin*, 938 F.3d at 313-20.

In March 2018, EPA issued a memorandum to provide modeling projections of ozone levels and contributions in 2023 based on 2011 data inventories ("2011-based modeling") that could aid states in the development of their Good Neighbor submissions for the 2015 ozone NAAQS. U.S. EPA, INFORMATION ON THE

INTERSTATE TRANSPORT STATE IMPLEMENTATION PLAN SUBMISSIONS FOR THE 2015 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS UNDER CLEAN AIR ACT SECTION 110(A)(2)(D)(I)(I) (Mar. 27, 2018) ("March 2018 Memo") (Ex. 5). The information included in that memorandum "[wa]s not a final determination regarding states' obligations under the good neighbor provision" and "[a]ny such determination would be made through notice-and-comment rulemaking." *Id.* at 2.

Louisiana submitted its SIP for the 2015 ozone NAAQS to EPA in 2019. *See* Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9798, 9811 (Feb. 22, 2022) ("Proposed Rule") (Ex. 2). Louisiana's submission followed a methodology similar to EPA's 4-step framework and used 2011-based modeling. S*ee* LA. DEP'T OF ENV'T QUALITY, INTERSTATE TRANSPORT STATE IMPLEMENTATION PLAN 2015 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS (NAAQS) (Nov. 8, 2019) ("LDEQ Submission") (Ex. 3), 3.1. First, Louisiana identified nonattainment and maintenance receptors likely to exist in 2023 using EPA's methodology and EPA's 2011-based modeling. *Id.* at 3.1, 3.2. Then, applying a 1 part per billion ("ppb") contribution threshold, Louisiana identified five projected nonattainment and maintenance receptors in Texas impacted by Louisiana's emissions. *Id.* at 3.1, 3.2. Lastly, Louisiana considered whether its emissions to those receptors were

significant by assessing whether "a persistent and consistent pattern" of contribution existed (i.e., that Louisiana impacts Texas's air quality on multiple high ozone days in identified linkages). *Id.* at 3.1. Louisiana used various air quality analyses to determine no such pattern existed, concluding that it had no obligation to reduce its emissions under the Good Neighbor Provision. *Id.* at 3.1, 3.2, 6.1, 7.

EPA's assessment of Louisiana's SIP, along with others addressing Good Neighbor obligations for the 2015 ozone NAAQS, was delayed while EPA addressed the D.C. Circuit's remand of EPA's FIP addressing the Good Neighbor Provision for an earlier ozone NAAQS. *See* Final Rule, 88 Fed. Reg. at 9365.

During this time, EPA updated its 2023 modeling projections to a 2016-based modeling platform, with input from states and other stakeholders. *Id.* at 9339. This updated 2016-based modeling followed the same approach to projecting 2023 air quality and contribution levels as the 2011-based modeling, but incorporated updated emissions data and new meteorological data to improve the accuracy of the projections. *See id.* at 9339, 9341-42; March 2018 Memo at 4-5. EPA used this 2016-based modeling (relying on the most recent data available as of the proposed and then final rules) and its nationally consistent, judicially upheld, 4-step framework to evaluate Good Neighbor submissions in the Final Rule to ensure an efficient and equitable approach to addressing interstate pollution. Final

7

Rule, 88 Fed. Reg. at 9339-43, 9390.  EPA also evaluated any alternative modeling, methodology, and analysis submitted by states, but assessed them with an eye towards ensuring national consistency to determine whether the alternatives supported the state's conclusion regarding its Good Neighbor obligations. *Id.* at 9354, 9381.

In evaluating Louisiana's submission, EPA determined that Louisiana's chosen 2011-based modeling and contribution threshold showed that Louisiana would be linked to downwind receptors in Texas.  That conclusion was further supported by EPA's 2016-based modeling.  Proposed Rule, 87 Fed. Reg. at 9812-14; *see also* Final Rule, 88 Fed. Reg. at 9356.  Advancing to Step 3, EPA disagreed with Louisiana that there must be a "persistent and consistent" pattern to demonstrate "significant" contribution, but observed that, even if required, Louisiana's chosen contribution methodology already showed that this pattern existed between its emissions and linked receptors.  Proposed Rule, 87 Fed. Reg. at 9814-15; U.S. EPA, 2015 OZONE NAAQS INTERSTATE TRANSPORT SIP DISAPPROVALS – RESPONSE TO COMMENTS (RTC) DOCUMENT (Jan. 31, 2023) ("RTC") (Ex. 4), 350-54.  EPA further found technical shortcomings in Louisiana's additional analyses and determined that they did not adequately support Louisiana's conclusion that it has no Good Neighbor obligation for the 2015 ozone NAAQS.  Proposed Rule, 87 Fed. Reg. at 9815-16; RTC at 363-65.

Consequently, EPA determined that Louisiana's submission did not comply with the Good Neighbor Provision, Proposed Rule, 87 Fed. Reg. at 9815-16, and disapproved Louisiana's SIP, Final Rule, 88 Fed. Reg. at 9338.  For similar reasons, EPA disapproved 20 other states' Good Neighbor SIPs.  *Id.*  While all states covered by the Final Rule were found to be linked to one or more downwind receptors at Step 2, none proposed to do anything to prohibit their emissions from significantly contributing to nonattainment or interfering with maintenance of the NAAQS in downwind states.  *Id.* at 9343 n.43.

### B.    EPA's Federal Good Neighbor Plan for the 2015 Ozone NAAQS

EPA's disapproval triggered its statutory duty to promulgate a FIP to address the Good Neighbor Provision in those states whose submissions were disapproved. 42 U.S.C. §7410(c)(1).  On March 15, 2023, the EPA Administrator signed the Federal Good Neighbor Plan for the 2015 Ozone National Ambient Air Quality Standards ("Final FIP") to resolve states' Good Neighbor obligations for the 2015 ozone NAAQS.  Declaration of Rona Birnbaum ("Birnbaum Decl.") (Ex. 6) ¶ 6. The Final FIP relies on EPA's 4-step framework to eliminate significant contribution to downwind states as expeditiously as practicable.  Birnbaum Decl. ¶¶ 8, 15.  The Final FIP's effective date is tied to the rule's publication in the *Federal Register*, which has not yet occurred.  *Id.* ¶¶ 21-22.

9

## C.    Litigation Over the Final Rule

Here, entities in Texas,[2] Mississippi,[3] and Louisiana[4] (collectively, "Petitioners") petitioned for review of the Final Rule.  Three motions remain pending: (1) EPA's motion to transfer each petition to the D.C. Circuit or dismiss them based on improper venue ("Venue Motion"), ECF Nos. 50, 70; (2) several Texas-based Petitioners' ("Texas Movants") motions to stay the Final Rule as it relates to Texas, Tex. Stay Mot., ECF No. 31; Tex. Indus. Stay Mot., ECF No. 32-1; and (3) Louisiana's motion to stay the Final Rule as it relates to Louisiana, Mot., ECF No. 112.

Numerous entities have also petitioned for review in the Fourth, Sixth, Eighth, Tenth, and Eleventh Circuits.[5]  EPA has filed similar venue motions throughout the circuits, which remain pending.  And similar stay motions have

---

[2] Tex. Pet., ECF No. 1-1; Tex. Utils. Pet., ECF No. 3-1; Tex. Indus. Grp. Pet, ECF No. 5-1; Tex. PUC Pet., ECF No. 44-1; Tex. Lehigh Pet., ECF No. 221-1.

[3] Miss. Pet., ECF No. 52-1; Miss. Power Pet., ECF No. 58-1.

[4] La. Pet., ECF No. 63-1; Entergy Pet., ECF No. 213-1; La. Indus. Grp. Pet., ECF No. 216-1.

[5] *See, e.g.*, Petition for Review, *West Virginia v. EPA*, No. 23-1418 (4th Cir. Apr. 14, 2023); Petition for Review, *Kentucky v. EPA*, No. 23-3216 (6th Cir. Mar. 13, 2023); Petition for Review, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2022); Petition for Review, *Utah v. EPA*, No. 9509 (10th Cir. Feb. 13, 2023); Petition for Review, *Alabama v. EPA*, No. 23-11173 (11th Cir. Apr. 13, 2023).

been filed and remain pending in the Eighth and Tenth Circuits,[6] although the

Tenth Circuit has abated all proceedings until EPA's venue motion is resolved.

*See, e.g.*, Minute Order, *PacifiCorp v. EPA*, No. 23-9512, (10th Cir. Mar. 16,

2023), ECF No. 10984083.

## ARGUMENT

Louisiana's motion should be denied.  First, venue is improper.  Second,

Louisiana fails to make a "clear showing" that the "extraordinary and drastic

remedy" of a stay is warranted.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

All four factors that courts consider when determining whether a stay is

warranted—(1) strong likelihood of success on the merits, (2) irreparable injury to

movant absent a stay, (3) substantial injury to non-movants, and (4) the public

interest—weigh against a stay.  *See Nken v. Holder*, 556 U.S. 418, 433 (2009).

## I.    The Motion Should be Denied on Venue Grounds or Transferred to the D.C. Circuit.

Motions to stay any portion of the Final Rule should be determined by the

D.C. Circuit.  As detailed below and in EPA's Venue Motion at 5-7, EPA

disapproved each state's submission on similar grounds to ensure consistency

nationwide.  Based on this commonality, along with the interdependent nature of

---

[6] *See, e.g.*, Ark. Stay Mot., *Arkansas v. EPA*, No. 23-1320 (8th Cir. Mar. 31, 2023);
Utah Stay Mot., *Utah v. EPA*, No. 23-9509 (10th Cir. Mar. 7, 2023), ECF No.
10981771.

interstate transport pollution and using a common core of knowledge and analysis to evaluate the submissions, EPA disapproved 21 submissions in a single action. *See* Final Rule, 88 Fed. Reg. at 9380-81.  The Final Rule is therefore nationally applicable or based on a determination of nationwide scope or effect and is challengeable only in the D.C. Circuit.

It is prudent to determine venue now, deferring consideration of the stay motions, as the Tenth Circuit is doing, because venue is "inextricably bound up with the remedial decision" of whether a stay should issue.  *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 315 (D.C. Cir. 1985) (quotation omitted); *see also Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 902-03 (8th Cir. 1987) (vacating preliminary injunction on venue grounds).  Whether Louisiana is likely to succeed on the merits turns in part on the law in the forum where Congress has directed merits to be decided.

Indeed, the stay motions currently filed in 3 circuits introduce the possibility of significant inconsistencies among regions, because movants raise the same or similar arguments and EPA's reasons for disapproving movants' SIP submissions are grounded in the same analytical approach.  Thus, while each stay movant contends that it challenges EPA's disapproval of only its individual SIP submission, EPA applied the same, nationally consistent technical analysis, legal

interpretation, and policy judgment to each state to avoid inconsistent and inequitable results among upwind states and between upwind and downwind states.

It is therefore imperative and efficient to have one court evaluate these arguments requesting preliminary relief.  Consistent with the Act's unambiguous terms, this Court should transfer or dismiss the petitions for review, along with the related stay motions, to the D.C. Circuit.  *See RMS of Ga., LLC v. EPA*, -- F.4th --, 2023 WL 2925109, at *5 (11th Cir. Apr. 13, 2023) (concluding EPA action to be nationally applicable and transferring pending motion to intervene for the D.C. Circuit to decide).

## II.    Louisiana is Not Entitled to a Stay.

### A.    Louisiana is Unlikely to Succeed on the Merits.

To make a clear showing of a strong likelihood of success on the merits, Louisiana must demonstrate that the Final Rule is likely "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *Texas v. EPA* (*2016 Texas*), 829 F.3d 405, 424-25 (5th Cir. 2016) (quotation omitted).  This standard is "narrow" and satisfied so long as EPA engages in "reasoned decisionmaking" and provides a "rational connection between the facts found and the choice made."  *Sierra Club v. EPA*, 939 F.3d 649, 664 (5th Cir. 2019) (quotation omitted).  Particular deference is owed when EPA's decision "is based

upon its evaluation of complex scientific data within its technical expertise." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 824 (5th Cir. 2003).

The gravamen of Louisiana's merits arguments—that EPA unlawfully used new modeling that was not available to Louisiana when it submitted its SIP, Mot. at 12-16—misconstrues EPA's disapproval of Louisiana's SIP.   Louisiana's chosen modeling showed that its emissions are linked to downwind receptors in Texas, and EPA's updated modeling (on which EPA lawfully relied) reinforced this finding.  Because either modeling shows the same result, Louisiana's argument proves nothing.

> **1.    Louisiana's Own Chosen Modeling, Methodology, and Analyses Did Not Support its Conclusion that Louisiana Need Not Reduce its Emissions.**

As Louisiana admits, its chosen 2011-based modeling shows that its emissions contribute well over its chosen 1 ppb threshold of ozone pollution to downwind receptors in Texas.  *See id.* at 9 (conceding that the 2011-based modeling projected Louisiana to contribute 3.80 ppb to a receptor); Proposed Rule, 87 Fed. Reg. at 9811-12 (highest contribution of 4.72 ppb).  Regardless of whether EPA reasonably updated its modeling to account for the best available data or reasonably considered that modeling in its Final Rule, Louisiana's own submission contained the necessary information to establish that the state was linked—well

above the contribution threshold—to downwind receptors.  So, Louisiana's argument is a moot point.

Given this linkage, under EPA's framework, Louisiana would be expected to consider emissions reductions.  Final Rule, 88 Fed. Reg. at 9343.  Instead, Louisiana, like Arkansas and Texas, sought to discount the significance of its emissions by assessing whether there was a "persistent and consistent pattern" of contribution.  LDEQ Submission at 3.1; *see also* Final Rule, 88 Fed. Reg. at 9355; EPA's Tex. Stay Opp. at 21.  EPA gave due consideration to these arguments.  But as with Texas's, Louisiana's chosen methodology already demonstrated such a pattern—it confirmed that Louisiana impacts Texas's air quality on multiple high ozone days.  *See* EPA's Tex. Stay Opp. at 21; RTC 351.  Louisiana's reliance on additional technical analyses to discount its emissions' significance was unsupportable.  *See* Proposed Rule, 87 Fed. Reg. at 9815-16; RTC at 363-65.

Thus, Louisiana's chosen modeling and methodology showed that the state contributed to unacceptably high ozone levels in Texas, and EPA reasonably disapproved Louisiana's SIP for relying on technically inadequate analyses to conclude its contribution was not "significant" and proposing to do nothing to reduce its emissions.  Final Rule, 88 Fed. Reg. at 9353-54, 9356.  Because EPA's updated modeling was unnecessary to its disapproval of Louisiana's SIP, Louisiana cannot succeed on the merits of its lone argument—that EPA cannot consider

updated air quality information.  Louisiana's stay motion should be denied on this basis alone.

### 2.    EPA Appropriately Considered Updated Air Quality Data in Disapproving Louisiana's SIP Submission.

Nonetheless, even if this Court evaluates the merits of Louisiana's arguments, they fall short.

*First*, Louisiana invokes "reliance interests" on EPA's 2011-based modeling, which Louisiana utilized in its SIP submission.  Mot. at 12-13.  This argument is premised on layers of factual misstatements.  As explained *supra* Argument II.A.1, EPA's disapproval of Louisiana's SIP was not based on Louisiana's choice of modeling.

Moreover, the March 2018 Memo expressly notified states that the 2011-based modeling results were not themselves determinative of the approvability of any SIP: while states may use "the information in th[e] memorandum and the associated air quality analysis data . . . to inform the development of the[ir] SIPs, the information [wa]s not a final determination regarding states' obligations under the good neighbor provision."  March 2018 Memo at 2; *see also* Proposed Rule, 87 Fed. Reg. at 9801; Final Rule, 88 Fed. Reg. at 9340.

Further, the 2016-based modeling projections of air quality and contribution levels in 2023 were not "completely different" from the 2011-based projections, and was not a change of EPA's "prior position[]."  *See* Mot. at 11, 12; Final Rule

88 Fed. Reg. at 9339, 9341-42; March 2018 Memo at 4-5.  Nor did EPA

"unfair[ly] surprise" Louisiana with the 2016-based modeling, *see* Mot. at 12

(quotation omitted), as Louisiana had the opportunity to, and did, comment on that

modeling.  *See* Final Rule, 88 Fed. Reg. at 9365-67; RTC at 50-51, 216-17; *see*

*also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170-71 (2007)

(holding that an ability to comment in rulemaking was "unlikely" to create "unfair

surprise").

    *Second,* Louisiana argues that the Act's statutory scheme prohibits EPA

from considering data unavailable to states when they submitted their SIPs.  Mot.

at 13-16.  No case law or statutory provision supports Louisiana's proposition.  *See*

*id.*  In fact, the Act does not prohibit EPA from using the most accurate, up-to-date

data to evaluate Good Neighbor SIP submissions, even if that data was not

available when a state submitted its SIP.  *See* EPA's Tex. Stay Opp. at 22-23.

EPA has reasonably interpreted the Good Neighbor Provision as forward-looking

based on the statute's use of the future tense "will," and the D.C. Circuit has held

that it would be "anomalous" to hold EPA to the air quality information of the past.

*Wisconsin*, 938 F.3d at 321-22 (quoting 42 U.S.C. § 7410(a)(2)(D)(i)).  Thus,

EPA's reliance on the most accurate data upholds, rather than undermines, its duty

to act reasonably—indeed, reliance on outdated data may well risk arbitrariness.

*Cf. Sierra Club v. EPA*, 671 F.3d 955, 967-68 (9th Cir. 2012) (finding it arbitrary

and capricious for EPA to not consider newly available emissions data in
evaluating a SIP).

Louisiana, like Texas, suggests EPA's delay in finalizing the Final Rule
prohibits EPA from using the most accurate data to evaluate SIP submissions. *See*
Mot. at 14-15; Tex. Stay Mot. at 16-17; EPA's Tex. Stay Opp. at 23-25.  That
argument fails:  Louisiana's submission would have been denied even if earlier
data had been used, *see supra* Argument II.A.1; and the Act provides only one
remedy for EPA's failure to meet a duty to act by a date certain—a court-ordered
deadline to address the relevant obligation, *see* 42 U.S.C. § 7604(a)(2); *Oklahoma
v. EPA*, 723 F.3d 1201, 1223-24 (10th Cir. 2013) (holding that EPA does not lose
authority to act for missing a deadline imposed by the Act).  In other words, under
the Act's cooperative federalism framework, if EPA fails to timely act on a SIP
submission, a statutory remedy exists, but not the remedy that Louisiana seeks.
Louisiana's suggestion that cooperative federalism prohibits EPA from using the
latest data if it is delayed in acting on a SIP submission would, in fact, prevent
EPA from carrying out its duty to approve only those SIP submissions that are
consistent with the Good Neighbor Provision.  *See Wisconsin*, 938 F.3d at 321-22;
Final Rule, 88 Fed. Reg. at 9366-68; RTC 60-62 (discussing how statutory purpose
and rulemaking procedures would be frustrated if EPA were prohibited from
considering updated information in evaluating a SIP's compliance with the Good

Neighbor Provision).  Seeking to punish untimeliness by divorcing EPA's

subsequent action from the best and most current data is illogical and only

compounds, not ameliorates, any administrative error in achieving the Act's goal

of protecting public health and the environment.

        Therefore, Louisiana cannot succeed on the merits of its claim that EPA

unlawfully disapproved its SIP by using modeling not available when it was

submitted.  EPA reasonably determined that Louisiana's plan to do nothing—when

under either modeling, Louisiana's contributions are strikingly high and its

justifications technically flawed—was inconsistent with the Good Neighbor

Provision.

### B.    Louisiana Has Shown No Irreparable Harm Absent a Stay.

        To establish irreparable harm, Louisiana must demonstrate an injury that is

"both certain and great," i.e., "actual and not theoretical." *Wis. Gas Co. v. FERC*,

758 F.2d 669, 674 (D.C. Cir. 1985); *see also Louisiana v. Biden*, 55 F.4th 1017,

1034 (5th Cir. 2022) (explaining that "speculative" harm is not irreparable).  Such

harm must be imminent and substantial, and not reparable through the normal

course of judicial review.  *2016 Texas*, 829 F.3d at 434.  Louisiana identifies no

such harm.

        The Final Rule does not require Louisiana to do *anything* and thus effects no

irreparable harm.  *See* Final Rule, 88 Fed. Reg. at 9364 ("[T]his action to

disapprove SIP submissions itself will not impose any requirements or penalties on any state."). For this reason, Louisiana relies on harm it may experience from the not-yet-published FIP to support its irreparable harm argument. Mot. at 16.[7] Louisiana has standing to challenge the Final Rule (in the proper forum) in part because it is a condition precedent for the FIP. But any harm Louisiana may experience from the Final FIP is not irreparable, because it is not "certain and great." *Wis. Gas Co.*, 758 F.2d at 674.

Once the FIP is published (and before it takes effect 60 days later), Louisiana may petition to review that final action and relatedly move for a stay if it believes the FIP to be independently unlawful and causing irreparable harm. Louisiana has not asserted that the Final FIP is incontestable in its own right, such that the state could not challenge—and move to stay—the FIP in separate litigation. At least unless and until Louisiana so asserts, it has not carried its burden to show that harm traceable to the FIP is *ir*reparable absent a stay in *this*

---

[7] The only alleged harm directly associated with the Final Rule is Louisiana's contention that its sovereignty will be harmed. Mot. at 16. This just repackages Louisiana's merits argument and is certainly not "irreparable," since the Court may issue an appropriate remedy if it finds in Louisiana's favor on the merits.

case.[8] *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate . . . relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable injury." (citation omitted)); *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, *8 (5th Cir. Feb. 17, 2022) (reiterating the principle that irreparable harm "asks whether the [movant] . . . has *no* adequate legal remedy" (quotation omitted & emphasis added)).

Regardless, Louisiana's harm allegations focus on the *proposed* FIP, 87 Fed. Reg. 20036 (Apr. 6, 2022), which materially differs from the Final FIP, rendering its allegations speculative. *See Louisiana*, 55 F.4th at 1034; *Winter v. NRDC*, 555 U.S. 7, 23 (2008) (explaining that harm is irreparable only if it is a "near certainty"). To support its harm arguments, Louisiana submits MISO's Comments on the proposed FIP, which expressed concerns about the FIP's potential impact on grid reliability. *See* Mot. at 16. But those concerns were alleviated by alterations in the Final FIP, which ensure the FIP will not "disrupt[] the reliable operation of the bulk power grid." Birnbaum Decl. ¶¶ 36-42; *see also id.* ¶¶ 52, 57-58

---

[8] Louisiana is foreclosed from attacking the merits of the Final FIP in its reply because this Court lacks jurisdiction over this separate, not-yet-published action. *See* 42 U.S.C. § 7607(b)(1) (providing that petitions for review can only be filed "within sixty days from the date notice of such promulgation . . . appears in the Federal Register"); *Nasdaq Stock Mkt. LLC v. SEC*, 998 F.3d 1006, 1007 (D.C. Cir. 2021) (mem.).

(explaining that emissions reductions through the Final FIP are "readily achievable" and "designed so as not to threaten resource adequacy or otherwise degrade electric system reliability in any state or region").

Louisiana's other alleged harms paint an inaccurate and unsubstantiated picture of the Final FIP. Louisiana states that the FIP will "result in large price spikes for electricity," Mot. at 16; however, the FIP's "effect on retail electricity prices . . . [is] projected to be small," Birnbaum Decl. ¶ 59. Louisiana also does not explain how the Final FIP will result in "load shedding," "brown-outs," or "plant closures" in Louisiana or elsewhere. Mot. at 16; *see* Birnbaum Decl. ¶¶ 33, 52-60.

Because Louisiana has not shown it will suffer irreparable harm from the Final Rule, relying instead on inaccurate and otherwise reparable alleged harms relating to a separate EPA action, its stay motion should be denied.

### C.    The Balance of Equities and The Public Interest Disfavor a Stay.

Louisiana has failed to show that the "balance of equities tips in [its] favor," or that a stay is "in the public interest." *Winter*, 555 U.S. at 20. These factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Congress passed the Good Neighbor Provision to address the intractable problem of upwind states' emissions significantly contributing to air-quality problems in downwind states. *See EME Homer*, 572 U.S. at 497-99. Louisiana's

22

contributions to receptors are among the highest of any state. *See* Final Rule, 88 Fed. Reg. at 9353-54. Louisiana does not dispute this, yet it proposed to do *nothing* to limit its emissions. *See supra* Argument II.A.1.

Staying the Final Rule would ensure the absence of both a state or a federal Good Neighbor plan for Louisiana, delaying EPA's efforts to effectuate Congress's directive for upwind states to lower emissions as expeditiously as practicable and harming the health and welfare of millions of citizens impacted by Louisiana's pollution. *See* Birnbaum Decl. ¶¶ 9-15. Further, staying the Final Rule as it relates to Louisiana would result in inequities, impeding downwind states affected by Louisiana's emissions from attaining the NAAQS, and effectively letting Louisiana "reap[] the benefits of the economic activity causing the pollution without bearing all the costs," contrary to Congress's intent. *EME Homer*, 572 U.S. at 495.

Given that Louisiana is not irreparably harmed by the Final Rule, and that Louisiana's failure to address its significant contributions to downwind areas is occurring now, the balance of harms weighs heavily in favor of enabling EPA to protect the health and welfare of the many continuing to suffer from poor air quality.

## CONCLUSION

Louisiana's stay motion should be denied or transferred, along with this

petition, to the D.C. Circuit.

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:

ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

*/s/ Jin Hyung Lee*
JIN HYUNG LEE
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2640
jin.hyung.lee@usdoj.gov

April 17, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 5,149 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.

Dated: April 17, 2023

*/s/ Jin Hyung Lee*
JIN HYUNG LEE

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's response in opposition to Louisiana's motion to stay the Final Rule on all registered counsel through the Court's electronic filing system (CM/ECF).


Dated: April 17, 2023

/s/ Jin Hyung Lee
JIN HYUNG LEE