No. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————

STATE OF TEXAS, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————

**RESPONDENTS' CONSOLIDATED REPLY
IN SUPPORT OF MOTION TO TRANSFER VENUE
OR DISMISS BASED ON IMPROPER VENUE**

———————

TODD KIM
*Assistant Attorney General*

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
*Office of the General Counsel*
*U.S. Environmental Protection*
*    Agency*
*Washington, DC*

JIN HYUNG LEE
*U.S. Department of Justice*
*Environment and Natural Resources*
*    Division*
*P.O. Box 7611*
*Washington D.C. 20044-7611*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | |
|---|---|
| STATE OF TEXAS, et al., | |
| Petitioners, | |
| v. | No. 23-60069 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Respondents. | |

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Respondents, as

governmental parties, need not furnish a certificate of interested persons.

Date: April 17, 2023

/s/ Jin Hyung Lee
JIN HYUNG LEE
U.S. Department of Justice
Environment & Natural Resources
Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-2640
jin.hyung.lee@usdoj.gov

*Counsel for Respondents*

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................ i

INTRODUCTION ................................................................. ii

ARGUMENT ....................................................................2

    I.    The Final Rule is Nationally Applicable............................................. 2

    II.    EPA Properly Made and Published a Finding that the Final Rule Is Based on a Determination of Nationwide Scope or Effect. ............... 11

    III.    EPA Did Not Waive Its Dismissal Argument.................................... 16

    IV.    The Court Should Decide EPA's Venue Motion at the Motions Panel Stage. ................................................................. 16

CONCLUSION ................................................................17

CERTIFICATES OF COMPLIANCE.....................................19

CERTIFICATE OF SERVICE ............................................20

# <u>TABLE OF AUTHORITIES</u>

## CASES

*ATK Launch Sys., Inc. v. EPA,*
  651 F.3d 1194 (10th Cir. 2011) ...........................................................3, 5, 7, 8, 12

*Def. Distributed v. Bruck,*
  30 F.4th 414 (5th Cir. 2022) ..........................................................................14, 17

*Midwest Ozone Group v. EPA,*
  61 F.4th 187 (D.C. Cir. 2023) ..................................................................................9

*NAACP v. FPC,*
  425 U.S. 662 (1976)...............................................................................................3, 4

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
  138 S. Ct. 617 (2018) .................................................................................................4

*RMS of Ga., LLC v. EPA,*
  -- F.4th --, 2023 WL 2925109 (11th Cir. Apr. 13, 2023) ......................................3

*Sierra Club v. EPA,*
  47 F.4th 738 (D.C. Cir. 2022)...................................................................................8

*S. Ill. Power Coop. v. EPA,*
  863 F.3d 666 (7th Cir. 2017) ..........................................................................1, 2, 3, 5

*Texas v. EPA (2011 Texas),*
  No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) ........................1, 5, 6, 7

*Texas v. EPA (2016 Texas),*
  829 F.3d 405 (5th Cir. 2016) ...................................................1, 3, 8, 12, 14, 16

*Texas v. EPA,*
  706 F. App'x 159 (5th Cir. 2017) ...........................................................................3

*U.S. Steel Corp. v. EPA,*
  595 F.2d 207 (5th Cir. 1979) ....................................................................................8

*Westar Energy, Inc. v. EPA*,
   608 F. App'x 1 (D.C. Cir. 2015) ............................................................6

*W. Va. Chamber of Comm. v. Browner*,
   No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998)....................................6, 7

*Woodson v. Surgitek, Inc.*,
   57 F.3d 1406 (5th Cir. 1995) .............................................................16

## STATUTES

28 U.S.C. § 1391(e)(1)......................................................................4

33 U.S.C. § 1369(b)(1)......................................................................4

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...........................................................1

42 U.S.C. § 7607(b)(1)...............................................................4, 5, 17

## FEDERAL RULES OF APPELLATE PROCEDURE

Federal Rule of Appellate Procedure 15(a)(2)(C) ...........................................4

## FEDERAL REGISTER

70 Fed. Reg. 25162 (May 12, 2005) .........................................................7

86 Fed. Reg. 23054 (Apr. 30, 2021) ........................................................9

87 Fed. Reg. 9545 (Feb. 22, 2022) ........................................................11

87 Fed. Reg. 9798 (Feb. 22, 2022) ........................................................11

87 Fed. Reg. 24300 (Apr. 25, 2022) .......................................................17

87 Fed. Reg. 34873 (June 8, 2022) ........................................................17

88 Fed. Reg. 9336 (Feb. 13, 2023) ............................... 1, 2, 3, 7, 8, 9, 11, 12, 13, 15

## INTRODUCTION

To address the nationwide problem of interstate ozone pollution, EPA applied a uniform national approach to disapprove "Good Neighbor" state implementation plan ("SIP") submissions from 21 states that failed to properly address their impacts on other states' air-quality problems as required by the Clean Air Act's ("CAA" or the "Act") Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I). Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336 (Feb. 13, 2023) ("Final Rule"). EPA chose to do so in a single, cohesive action because the states' submissions presented similar shortcomings and because doing so avoided inequitable, piecemeal approaches to an interdependent, interstate pollution problem. EPA's choice to order its administrative docket in this fashion lies within the Agency's sound discretion.

Petitioners' venue arguments fail because they turn not on what EPA actually did or said in the Final Rule, but instead on arguments related to the relief that Petitioners seek. As the Act and case law make clear, whether a final action is "nationally applicable" turns on the "legal impact of the action as a whole," not the nature of a petitioner's challenge. *Texas v. EPA* (*2016 Texas*), 829 F.3d 405, 419 (5th Cir. 2016) (citing *Texas v. EPA* (*2011 Texas*), No. 10-60961, 2011 WL 710598, *3 (5th Cir. Feb. 24, 2011)); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666,

671 (7th Cir. 2017).  On its face, the Final Rule is "nationally applicable," disapproving the Good Neighbor submissions of 21 states throughout eight EPA regions and ten federal judicial circuits.  Final Rule, 88 Fed. Reg. at 9380.

Alternatively, the Final Rule is "based on a determination of nationwide scope or effect" because EPA applied nationwide policy judgments and technical analyses in evaluating each covered state's reasons for why it need not do anything to reduce its emissions impact on downwind states and disapproved each of those submissions on similar grounds.  *Id.*  EPA also made and published its finding that the Final Rule is based on a determination of nationwide scope or effect.  *Id.*

Because the Final Rule is nationally applicable or, alternatively, based on a determination of nationwide scope or effect and EPA made and published a finding that it is based on such a determination, the petitions for review of the Final Rule are proper in only the D.C. Circuit.  This Court should decide that issue now, as the Tenth Circuit is doing with like petitions, rather than carry the issue with the case.

## ARGUMENT

### I.     The Final Rule is Nationally Applicable.

On its face, the Final Rule applies a "nationally consistent 4-step interstate transport framework" to disapprove Good Neighbor submissions for the 2015 ozone NAAQS from 21 states throughout eight of the ten EPA regions and ten

federal judicial circuits.  Final Rule, 88 Fed. Reg. at 9380.  For this reason, the
Final Rule is plainly nationally applicable.

Petitioners urge the Court to consider each SIP disapproval as a separate
local or regional action, because each individual petitioner challenges the Final
Rule only as to individual state plans.  *See* Tex. Resp. at 9, 11; La. Resp. at 11, 18;
Miss. Resp. at 11, 18-19.  But as courts, including this one, have consistently held,
it is the nature of the EPA action, as a whole, that dictates the proper venue.
Venue Mot. at 9-10; *Texas v. EPA*, 706 F. App'x 159, 163-64 (5th Cir. 2017); *2016
Texas*, 829 F.3d at 419; *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1197 (10th
Cir. 2011); *S. Ill. Power*, 863 F.3d at 671; *RMS of Ga., LLC v. EPA*, -- F.4th --,
2023 WL 2925109, at *3 (11th Cir. Apr. 13, 2023) (holding that the phrase
nationally applicable "describes the regulations promulgated, or final action
taken, not the nature of the petition for review" (internal quotation marks and
citation omitted)).

That Petitioners may have preferred EPA to issue standalone SIP
disapprovals, and that EPA could have done so, are irrelevant to this Court's venue
analysis (and, for the reasons explained *infra* Argument II, would not have made
sense).  Congress crafted an action-focused venue provision in the CAA, such that
EPA's discretionary choices about how to order its docket influence the
appropriate forum for challenges to those actions.  *See NAACP v. FPC*, 425 U.S.

662, 668 (1976) (reiterating the "general proposition" that agencies have discretion to determine how to shape their regulatory actions). Had Congress wanted prospective petitioners to be able to choose where to file or wanted forum to be determined based on the specific issues raised in a petition for review, Congress would have crafted such a system. *See, e.g.,* 28 U.S.C. § 1391(e)(1) (general venue statute authorizing suit in judicial district where plaintiff resides and judicial district where substantial events giving rise to claim occurred); 33 U.S.C. § 1369(b)(1) (authorizing Clean Water Act suit in regional circuits where petitioner resides or transaction affected business). Congress did not do so when it enacted § 7607(b)(1), and this choice reinforces that venue determinations must be based exclusively on the nature of the Final Rule, rather than on the issues raised by Petitioners in their individual petitions for review. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632-33 (2018) (determining Congress's intent on the Clean Water Act's venue provision by focusing on the statute's plain language, regardless of policy considerations).

Petitioners ignore this clear congressional choice by arguing that Federal Rule of Appellate Procedure 15(a)(2)(C) authorizes their limited challenges to a portion of the Final Rule. Tex. Resp. at 11; Miss. Resp. at 11 n.6. But Rule 15 sets forth criteria that all petitions for review must meet, says *nothing* about venue, and is thus irrelevant. In this case, § 7607(b)(1) expressly addresses venue, and

that provision unambiguously ties venue to the nature of the action being challenged, not to the nature and scope of Petitioners' challenges.

Likewise, Louisiana erroneously contends that § 7607(b)(1) considers SIP disapprovals to always be local or regional actions. La. Resp. at 9-10.[1] Section 7607(b)(1) provides that a "denial or disapproval by the Administrator under subchapter I… *which is locally or regionally applicable*" may be filed only in the appropriate regional circuit, but it does not state that every such denial or disapproval is locally or regionally applicable. Moreover, § 7607(b)(1)'s broad catch-all provision for "*any other* nationally applicable . . . final action" denotes that a challenge to a nationally applicable action, such as the one here, must be heard in the D.C. Circuit. *See 2011 Texas*, 2011 WL 710598, at *3; *ATK Launch*, 651 F.3d at 1200;[2] *S. Ill. Power*, 863 F.3d at 671. On its face, the Final Rule disapproves 21 Good Neighbor SIPs, not one individual SIP, and is thus nationally

---

[1] Louisiana appears to inadvertently reference § 7410(b)(1), instead of § 7607(b)(1), as the CAA's venue selection provision. La. Resp. at 9.

[2] Misleadingly, Louisiana also cites *ATK Launch*, 651 F.3d at 1199, for the proposition that EPA action taken on a SIP submission is a "purely local action." La. Resp. at 10. There, the Tenth Circuit was merely summarizing a Seventh Circuit case, which has since been expressly overturned, *see S. Ill. Power*, 863 F.3d 666. Indeed, *ATK Launch* explains that an EPA action "appl[ying] the same standard to every state," like the Final Rule, is properly challenged in the D.C. Circuit, regardless of the nature of each petitioner's challenge. 651 F.3d at 1199.

applicable.[3]  *See 2011 Texas*, 2011 WL 710598, at \*4 (explaining that "the

legislative history of the Act indicates that [the phrase 'locally or regionally

applicable'] was intended to apply only to review of the approval or promulgation

of implementation plans *which run only to one air quality control region*" (internal

quotation marks and citation omitted)).

Petitioners contend that, even on the face of the Final Rule as a whole, the

Rule is not nationally applicable because it does not apply to all fifty states.  Tex.

Resp. at 12-13; La. Resp. at 14.  But "[a]n EPA rule need not span from 'sea to

shining sea' to be nationally applicable."  *2011 Texas*, 2011 WL 710598, at \*5

(quoting *W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998 WL 827315,

at \*7 (4th Cir. Dec. 1, 1998)).  For this reason, courts have consistently held that

similar EPA actions applying a uniform approach to many (but not all) states

across the country are nationally applicable and therefore challengeable only in the

D.C. Circuit.  *See* Venue Mot. at 9-10.  Contrary to Petitioners' argument that EPA

provides "no coherent" position on when a final action is nationally applicable, La.

Resp. at 13-14; *see also* Miss. Resp. at 13-15, EPA's approach here is consistent

with its prior actions addressing Good Neighbor SIP obligations for numerous

---

[3] Even actions challenging *single* Good Neighbor SIP disapprovals have been
brought in the D.C. Circuit.  *See, e.g., Westar Energy, Inc. v. EPA*, 608 F. App'x 1
(D.C. Cir. 2015) (challenge to EPA's disapproval of Kansas's Good Neighbor
SIP).

states, *see, e.g.*, *W. Va. Chamber of Comm.*, 1998 WL 827315, at *2, 6-7 (rejecting

petitioners' argument that only those rules that impact the entire country are

nationally applicable and transferring challenge to EPA's action finding 22 states'

interstate ozone transport SIPs inadequate based on EPA's "common legal

interpretation" and common analysis); 70 Fed. Reg. 25162, 25316 (May 12, 2005)

(finding final action defining Good Neighbor obligations for states to be nationally

applicable or based on a determination of nationwide scope or effect because it

applies to 28 states and "is based on a common core of factual findings and

analyses concerning the transport of pollutants between the different [s]tates

subject to it").

Texas's attempts to distinguish this case from *2011 Texas* and *ATK Launch*

miss the mark.  *See* Tex. Resp. at 13.  In those cases, the EPA actions at issue

applied a uniform, nationwide standard to a subset of states that did not meet the

relevant standard.  *See 2011 Texas*, 2011 WL 710598, at *3 (action applicable to

13 states' plans that did not meet requirements was nationally applicable); *ATK*

*Launch*, 651 F.3d at 1200 (action applying same standard to 31 areas across the

entire country was nationally applicable); Venue Mot. at 9-10.  Similarly, the Final

Rule constitutes a national interpretation of the Good Neighbor Provision's

mandates, as applied to 21 states whose SIPs are not compliant with the relevant

standards.  Final Rule, 88 Fed. Reg. at 9362 (explaining that EPA "[e]mploy[ed] a

nationally consistent approach" and applied the same policy judgments "on the 2015 ozone NAAQS good neighbor SIP submissions . . . reflect[ing] consistency with relevant good neighbor case law and past agency practice implementing the good neighbor provision"). Therefore, "any challenge thereto belongs in the D.C. Circuit." *ATK Launch*, 651 F.3d at 1200.

Relatedly, Petitioners rely on *2016 Texas*, 829 F.3d 405, *Sierra Club v. EPA*, 47 F.4th 738 (D.C. Cir. 2022), *U.S. Steel Corp. v. EPA*, 595 F.2d 207 (5th Cir. 1979), and *Calumet Shreveport Refining, L.L.C. v. EPA*, No. 22-60266 (5th Cir.), to argue that the Final Rule is not nationally applicable. Tex. Resp. at 10; Miss. Resp. at 12-13; La. Resp. at 13-14. These cases are distinguishable or irrelevant. *2016 Texas* addressed an action affecting only two locations within Texas and a narrow part of Oklahoma, 829 F.3d at 410, and *Sierra Club* similarly regarded an EPA action affecting two Texas metropolitan areas, 47 F.4th at 744. *U.S. Steel* is inapposite as it addressed jurisdiction; the Act's venue provision was not an issue in the case. 595 F.2d at 212. And *Calumet* is simply irrelevant because this Court has not yet determined the appropriate venue for that case. *See* Order, *Calumet*, No. 22-60266, ECF No. 120-2 (Oct. 21, 2022).

Petitioners also argue that the Final Rule is not nationally applicable by taking EPA's characterization of the Rule as "regional [in] nature" out of context and contending that the Final Rule has legal consequences for only their specific

state.  Tex. Resp. 12, 15; Miss. Resp. at 13 (quoting Final Rule, 88 Fed. Reg. at

9374).  EPA, as it has consistently done in other nationally applicable rules, used

the term "regional" to describe the nature of ozone pollution because it crosses

state borders and affects large portions of the United States.  Final Rule, 88 Fed.

Reg. at 9340, 9372; *see, e.g.*, Revised CSAPR Update, 86 Fed. Reg. 23054, 23063

(Apr. 30, 2021) ("Studies have established that ozone formation, atmospheric

residence, and transport occur *on a regional scale* (i.e., thousands of kilometers)

over much of the eastern U.S.") (emphasis added) (upheld by the D.C. Circuit in

*Midwest Ozone Group v. EPA*, 61 F.4th 187 (D.C. Cir. 2023))).  As clearly shown

below,[4] EPA's action on each covered state's SIP submission has consequences

beyond each state's borders (and beyond any arbitrary "local or regional" line

Petitioners seek to draw) due to the interstate nature of ozone pollution:

---

[4] EPA, Interstate Pollution Linkages Under the Good Neighbor Plan, *available at*
https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs#maps.



*See also* NMED Amicus Br. at 9-10, ECF No. 150 (noting that New Mexico receives significant ozone contribution from states in multiple circuits). In short, although nationally applicable rules no doubt have impacts that can be felt locally, this is not a reason to ignore Congress's directive that challenges to these actions be decided in the D.C. Circuit.

Similarly, Petitioners' insistence that EPA's Regional Offices were the decisionmakers because the proposed rules were signed by Regional Administrators does not move the needle. *See* Tex. Resp. at 6-7; Miss. Resp. at 6-7; La. Resp. at 4-6. The action being challenged here—the Final Rule—was

signed by the Administrator of the EPA. *See* Final Rule, 88 Fed. Reg. at 9381.

Further, Petitioners discount the myriad ways in which the proposed rules were

coordinated at a national level to implement a nationally applicable final action.

For example, every proposal (1) relied on modeling files and supporting

documents developed by Headquarters and placed in a single Headquarters docket,

EPA-HQ-OAR-2021-0663; (2) included verbatim text explaining EPA's analytical

approach with only minor organizational variations, *compare* 87 Fed. Reg. 9798,

9799-9803 (Feb. 22, 2022) (Arkansas, Louisiana, Oklahoma, and Texas) *with* 87

Fed. Reg. 9545, 9546-52 (Feb. 22, 2022) (Alabama, Mississippi, and Tennessee);

and (3) indicated that EPA contemplated finalizing these proposals in a single final

action, *see, e.g.*, 87 Fed. Reg. at 9835 n.113. EPA embarked on a nationally

organized effort to address these SIPs in a coordinated fashion throughout the

entire rulemaking process.

Because, on its face, the Final Rule applies to 21 states across the country, it

is nationally applicable. Petitioners' challenges must be heard in the D.C. Circuit.

## II. EPA Properly Made and Published a Finding that the Final Rule Is Based on a Determination of Nationwide Scope or Effect.

Even if this Court determines that the Final Rule is locally or regionally

applicable, venue remains proper in the D.C. Circuit because the Final Rule is

based on a determination of nationwide scope or effect and EPA so found when it

published the Final Rule. As Petitioners concede, the Act "gives the Administrator

the discretion to move venue to the D.C. Circuit by publishing [such] a finding

declaring the Administrator's belief that the action is based on [such] a

determination." *2016 Texas*, 829 F.3d at 419-20.  EPA made and published such a

finding—that its action, the Final Rule, is based on such a determination.  Final

Rule, 88 Fed. Reg. at 9380-81.  Thus, Mississippi's argument that EPA failed to do

so with respect to each state lacks merit.  *See* Miss. Resp. at 19.

Petitioners allege that EPA improperly "manipulate[d]" the Act's venue

provision by taking a single action here.  Tex. Resp. at 9; La. Resp. at 15; *see also*

Miss. Resp. at 11 & n.5.  EPA did no such thing.  The Final Rule is no "mere

amalgamation" of local determinations, and instead evinces EPA's reasoned

decision to order its docket to efficiently address together like SIP submissions on

interstate transport, which required EPA to examine complex, interwoven, and

overlapping linkages between and among multiple states.[5]  *See ATK Launch*, 651

F.3d at 1200; Final Rule, 88 Fed. Reg. at 9340, 9342, 9380-81.  As explained

*supra* Argument I, doing so is well within EPA's discretionary authority granted

by Congress.  While states, including Texas, Louisiana, and Mississippi, may have

used alternative datasets and approaches (Tex. Resp. at 16-17; La. Resp. at 18-21;

---

[5] Indeed, this Court takes similarly efficient actions, consolidating petitions for
review, such as the ones here, when they challenge the same agency action, as they
are expected to raise substantially overlapping issues.

Miss. Resp. at 16-17), EPA evaluated them through a national lens, to "ensur[e]" national consistency and avoid[] inconsistent or inequitable results," Final Rule, 88 Fed. Reg. at 9381.

Petitioners' portrayal of their SIP submissions as "unique" (Tex. Resp. at 16-18; La. Resp. at 21; *see also* Miss. Resp. at 16-17) ignores the reality that the states covered by the Final Rule relied on identical or similar modeling, methodologies, and analyses to attempt to discount their significant contribution to nonattainment or interference with maintenance of downwind states' NAAQS.  Venue Mot. at 14-15 & n.10.  For example, Arkansas (which petitioned for review of the Final Rule in the Eighth Circuit), Louisiana, and Texas made the same "consistent and persistent pattern" argument to discount their emissions' impact to downwind states' NAAQS attainment, and EPA rejected these identical arguments on a consistent basis.  *See* Final Rule, 88 Fed. Reg. at 9355, 9356, 9359.  Mississippi, along with Alabama (which petitioned for review of the Final Rule in the Eleventh Circuit), Arkansas, Kentucky (which petitioned for review of the Final Rule in the Sixth Circuit), Michigan, and Nevada, as well as Oklahoma and Utah (which petitioned for review of the Final Rule in the Tenth Circuit) all attempted to rely on guidance from the separate CAA permitting program to argue that 1 ppb was an appropriate contribution threshold, which EPA uniformly rejected.  *See id.* at 9354-59, 9372.  Given that covered states provided overlapping reasons for concluding

13

that they did not need to address their impacts on downwind states' ozone levels, EPA's determination as to each state's approach has nationwide scope or effect.

Consequently, EPA's Final Rule materially differs from EPA's action in *2016 Texas*, in which this Court held that EPA's action on two SIPs and a FIP was not based on a determination of nationwide scope or effect. 829 F.3d at 421. The EPA action in *2016 Texas* "related to the particularities" of just three locations in two neighboring states and imposed obligations only in Texas, *id.*, while here, EPA's core determinations—which addressed technical analyses and legal and policy arguments employed by numerous states implicating downwind receptors nationwide, *see supra* Argument I; Venue Mot. at 13-15—are of nationwide scope or effect. Thus, the Final Rule is based on a determination of nationwide scope or effect and does not just "provide guidance to future" SIP submissions. *2016 Texas*, 829 F.3d at 423.

Further, this Court need look no further than EPA's oppositions to the Texas Petitioners' and Louisiana's stay motions filed in this Court, and Arkansas's stay motion filed in the Eighth Circuit, which illustrate how keeping petitions for review of the Final Rule in regional circuits risks inconsistencies among courts and inconsistent treatment of downwind states. *See Def. Distributed v. Bruck*, 30 F.4th 414, 429 (5th Cir. 2022) (recognizing courts' "uniform[] . . . aversion" to having "two courts [to] engage in the work of one" because it raises "serious concerns

about duplication of judicial resources" and "the consistency of rulings"). Texas Petitioners, Louisiana, and Arkansas all sought to discount their emissions by arguing that contribution must exhibit a "persistent and consistent pattern," and EPA uniformly determined that such an argument was technically flawed. *See* Final Rule, 88 Fed. Reg. at 9355, 9356, 9359; *see also* EPA Tex. Stay Opp. at 21, ECF No. 148; EPA La. Stay Opp. at 15, ECF No. 223-1; *see generally* Ark. Stay Mot., ECF No. 5260845 (arguing that EPA unlawfully disapproved its SIP submission without addressing the fact that EPA determined that Arkansas's attempt to discount its emissions' impact on downwind states using the same "persistent and consistent pattern" argument was technically flawed). Louisiana, Texas, and Arkansas also make virtually identical arguments in their stay motions that EPA could not evaluate their Good Neighbor obligations using new modeling that was not available to them when they submitted their SIPs, to which EPA has already provided a single, uniform response in the Final Rule. La. Stay Mot. at 12-13, ECF No. 112; Tex. Stay Mot. at 13-14, ECF No. 31; Ark. Stay Mot. at 10-16; Final Rule, 88 Fed. Reg. at 9365-67. EPA's action in disapproving multiple states' SIPs was guided by maintaining national consistency and fairness among and between states; thus, keeping these petitions for review in the regional circuit courts risks inconsistent rulings on the same or similar issues. Separate decisions

from the regional circuit courts on the states' specific stay arguments could similarly lead to inconsistent rulings.

Therefore, even if the Court were to determine that the Final Rule is local or regional in nature (which it is not), it is still challengeable only in the D.C. Circuit. *See 2016 Texas*, 829 F.3d at 419 n.16 ("[T]he statutory text places review of SIP approvals and disapprovals in the regional circuits while providing an exception for review of a small subset of those actions in the D.C. Circuit.").

## III.    EPA Did Not Waive Its Dismissal Argument.

Petitioners assert that EPA has waived its dismissal argument, despite EPA's numerous statements that it is moving the Court to either transfer or dismiss the petitions. *See, e.g.,* Venue Mot. at 1, 2, 9, 19. This ignores the fact that, incident to Article III of the Constitution, "federal courts are vested with the inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (quotation omitted). This includes the power to dismiss cases. *Id.* Petitioners' assertions aside, EPA has not waived the Court's power to take appropriate action here. *See, e.g.,* Venue Mot. at 1, 2, 9, 19.

## IV.    The Court Should Decide EPA's Venue Motion at the Motions Panel Stage.

Given Petitioners' pending stay motions before this Court, EPA respectfully requests that this Court decide EPA's Venue Motion at the motions stage and do so

prior to deciding Petitioners' stay requests.  The multiple petitions and stay motions pending in different regional courts raise a high risk of piecemeal litigation, may well produce inconsistent holdings*, see supra* Argument II, and wastes judicial resources.  *Cf. Def. Distributed*, 30 F.4th at 429, 431 (declining to transfer certain claims, which would "require[] two courts to engage in the work of one, prompting serious concerns about duplication of judicial resources, the consistency of rulings, and litigation costs").[6]  To avoid this result, the Tenth Circuit has abated stay motions and other proceedings until EPA's Venue Motion is resolved.  *See, e.g.*, Minute Order, *PacifiCorp v. EPA*, No. 23-9512 (10th Cir.), ECF No. 10984083.  These petitions for review and the related stay motions should be decided by one court, in the proper forum—the D.C. Circuit.

## CONCLUSION

For the reasons presented in EPA's Venue Motion, and the foregoing reasons, the Court should transfer the petitions for review to the D.C. Circuit or dismiss them.

---

[6] This risk is playing out in petitions for review of EPA's final actions on small refinery exemption petitions, 87 Fed. Reg. 24300 (Apr. 25, 2022); 87 Fed. Reg. 34873 (June 8, 2022).  As a result of court decisions deferring ruling on EPA's venue motions until the merits stage, the merits and proper venue of EPA's final actions are now being briefed simultaneously in three different courts (the Fifth, Eleventh, and D.C. Circuits), upending the statutory scheme Congress intended in § 7607(b)(1).  *See, e.g.*, *Calumet*, No. 22-60266 (5th Cir.); *Hunt Ref'g Co. v. EPA*, No. 22-12535 (11th Cir.); *Sinclair Wyo. Ref'g Co. v. EPA*, No. 22-1073 (D.C. Cir.).

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:

ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

*/s/ Jin Hyung Lee*
JIN HYUNG LEE
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2640
jin.hyung.lee@usdoj.gov

April 17, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(C) and the Court's April 10, 2023 order, ECF No. 202, because it contains 3,997 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 4,000 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.


Dated: April 17, 2023              */s/ Jin Hyung Lee*
                                   JIN HYUNG LEE

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's consolidated reply in support of its Motion to Transfer the Petition for Review to the D.C. Circuit or Dismiss Based on Improper Venue on all registered counsel through the Court's electronic filing system (CM/ECF).


Dated: April 17, 2023

*/s/ Jin Hyung Lee*
JIN HYUNG LEE