NO. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS *et al.*,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents.*

**REPLY OF SIERRA CLUB, AIR ALLIANCE HOUSTON, AND
DOWNWINDERS AT RISK IN SUPPORT OF RESPONDENT
EPA'S MOTION TO TRANSFER OR DISMISS**

*/s/ Joshua D. Smith*
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001

*/s/ Kathleen L. Riley*
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

*Counsel for Sierra Club, Air Alliance Houston, and Downwinders at Risk*

Filed: April 17, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITES ..............................................................ii

INTRODUCTION...........................................................................1

ARGUMENT .................................................................................2

   I.  Petitioners Cannot Dictate Venue By Purporting To
      Challenge Only State-specific aspects of the Rule. ................2

   II. Petitioners Mischaracterize EPA's Findings. .......................10

CONCLUSION ............................................................................14

# TABLE OF AUTHORITES

## CASES

*Alabama v. Regan*,
   No. 23-11173 (11th Cir. Apr. 13, 2023)........................................................5

*Arkansas, et al. v. EPA*,
   No. 23-1320 (8th Cir. Feb. 16, 2023) ...........................................................5

*ATK Launch Sys., Inc. v. EPA*,
   651 F.3d 1194 (10th Cir. 2011) .....................................................................7

*Calumet Shreveport Refining, L.L.C. v. EPA*,
   No. 22-60266 (5th Cir. Oct. 21, 2022)........................................................13

*EPA v. EME Homer City Gen., L.P.*,
   572 U.S. 489 (2014) ......................................................................................7

*Kentucky v. EPA*,
   No. 23-3216 (6th Cir. Mar. 13, 2023) ..........................................................5

*Missouri v. EPA*,
   No. 23-1719 (8th Cir. Apr. 14, 2023) ...........................................................5

*Nat. Res. Def. Council, Inc. v. Thomas*,
   838 F.2d 1224 (D.C.Cir.1988) ......................................................................7

*Oklahoma v. EPA*,
   No. 23-1103 (D.C. Cir. Apr. 14, 2023) .........................................................5

*Oklahoma, et al. v. EPA*,
   No. 23-9514 (10th Cir. Mar. 2, 2023) ...........................................................5

*S. Ill. Power Coop. v. EPA*,
   863 F.3d 666 (7th Cir. 2017) .......................................................... 7, 10, 17

*Texas v. EPA*,
   No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011)..... 5, 7, 8, 11, 12

*Texas v. EPA*,
   No. 17-60088 (5th Cir. filed Apr. 13, 2017).............................................12

*Texas v. EPA*,
   No. 23-60069 (5th Cir. Feb. 14, 2023) .........................................................5

*Texas v. EPA*,
   706 F. App'x 159 (5th Cir. 2017) ...........................................................6, 11

*Texas v. EPA,*
 829 F.3d 405 (5th Cir. 2016) ........................................................ 6, 10, 13, 15

*U.S. Steel Corp. v. EPA,*
 595 F.2d 207 (5th Cir. 1979) ........................................................................13

*Utah v. EPA,*
 No. 23-1102 (D.C. Cir. Apr. 14, 2023) ...........................................................5

*Utah v. EPA*, No. 23-9509
 (10th Cir. Feb. 13, 2023) ...............................................................................5

*West Virginia v. EPA,*
 No. 23-1418 (4th Cir. Apr. 14, 2023) .............................................................5

*Wyoming v. EPA,*
 No. 23-9529 (10th Cir. Apr. 5, 2023) .............................................................5

## STATUTES

42 U.S.C. § 7410 ................................................................................................8, 14

42 U.S.C. § 7607 .............................................................................................. 10, 16

## REGULATIONS

88 Fed. Reg. 9,336 (Feb. 13, 2023) .............................. 7, 8, 9, 12, 14, 15, 16, 17

# INTRODUCTION

Despite the Clean Air Act's mandate to "centralize review of national [state implementation plan] issues" in the U.S. Court of Appeals for the D.C. Circuit,[1] eleven states and several industry petitioners have filed purportedly state-specific challenges to the same Disapproval Rule in the Fourth,[2] Fifth,[3] Sixth,[4] Eighth,[5] Tenth,[6] and Eleventh Circuits.[7]  Oklahoma and Utah have also filed petitions for review in the D.C. Circuit.[8] Thus, the *same* EPA rule is now pending in

---

[1] *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (transferring challenges to an EPA rule determining that 13 states' state implementation plans were inadequate to the D.C. Circuit) (cleaned up).

[2] *West Virginia v. EPA*, No. 23-1418 (4th Cir. Apr. 14, 2023).

[3] *See Texas v. EPA*, No. 23-60069 (5th Cir. Feb. 14, 2023), and consolidated cases.

[4] *See Kentucky v. EPA*, No. 23-3216 (6th Cir. Mar. 13, 2023), and consolidated cases.

[5] *Arkansas, et al. v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023); *Missouri v. EPA*, No. 23-1719 (8th Cir. Apr. 14, 2023).

[6] *Utah v. EPA*, No. 23-9509 (10th Cir. Feb. 13, 2023); *Oklahoma, et al. v. EPA*, No. 23-9514 (10th Cir. Mar. 2, 2023); *see also Wyoming v. EPA*, No. 23-9529 (10th Cir. Apr. 5, 2023), and consolidated cases.

[7] *Alabama v. Regan*, No. 23-11173 (11th Cir. Apr. 13, 2023).

[8] *Utah v. EPA*, No. 23-1102 (D.C. Cir. Apr. 14, 2023); *Oklahoma v. EPA*, No. 23-1103 (D.C. Cir. Apr. 14, 2023).

seven different circuits, raising an obvious potential for inconsistent interpretation and application of the Act.

Ignoring that reality, Petitioners make two basic arguments against centralized review in the D.C. Circuit. First, contrary to settled law, Petitioners insist that venue lies here because they are challenging only parts of EPA's action that are "locally or regionally applicable." Second, Petitioners mischaracterize EPA's rule, and argue that EPA's action is somehow not "based on determinations of nationwide scope and effect." Petitioners' arguments lack merit.

## ARGUMENT

### I. PETITIONERS CANNOT DICTATE VENUE BY PURPORTING TO CHALLENGE ONLY STATE-SPECIFIC ASPECTS OF THE RULE.

Petitioners insist that EPA's Disapproval Rule is a "package" of "separate" state implementation plan ("SIP") disapprovals, and that they each challenge only state-specific disapprovals that "have no connection." Texas Resp. 1, 11; Mississippi Resp. 2; Louisiana Resp. 1. Petitioners are wrong.

First, every court that has studied the Clean Air Act's venue provision, 42 U.S.C. § 7607(b)(1), has concluded that applicability turns on the face of the rule "*as a whole*," *Texas v. EPA,* 829 F.3d 405, 419

(5th Cir. 2016) (emphasis added). The scope of "petitioner's challenge has *no role*" in determining venue. *Texas v. EPA*, 706 F. App'x 159, 164 (5th Cir. 2017) (emphasis added); *see also S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 674 (7th Cir. 2017) ("A petition-centric method for determining venue . . . is flatly inconsistent with the actual terms of § 7607(b)(1)."). Petitioners' attempt to dictate venue by "limit[ing]" these consolidated cases to the purportedly "local" "aspect[s]" of the Disapproval Rule (Texas Resp. 12) is directly contrary to that well-settled precedent.[9]

Second, contrary to Petitioners' assertions, (Texas Resp. 11; Mississippi Resp. 1), EPA's SIP disapprovals are connected. Applying a uniform, "efficient and equitable" analytical framework and updated national air quality modeling, EPA found that all 21 states subject to

---

[9] *See also Texas v. EPA*, 2011 WL 710598, at *3 (concluding that EPA action finding thirteen SIPs failed to satisfy the Act was nationally applicable, despite Texas's challenge to only "local . . . aspect[s] of the rule"); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1198-99 (10th Cir. 2011) (holding that national applicability turns on the face of the rule, not "the manner in which a petitioner frames his challenge," and concluding that EPA's rule designating 31 counties across the country as being in nonattainment was nationally applicable, despite the petitioner's challenge to only one area); *Nat. Res. Def. Council, Inc. v. Thomas,* 838 F.2d 1224, 1249 (D.C. Cir. 1988) (looking at face of rule, rather than practical effect, in determining national applicability).

the Disapproval Rule contribute to unhealthy levels of ozone in other

states. 88 Fed. Reg. 9,336, 9,339-41, 9,362 (Feb. 13, 2023) (citing *EPA v.*

*EME Homer City Gen., L.P.*, 572 U.S. 489, 496 (2014)).

### States Significantly Contributing to Downwind Ozone Problems[10]



Despite those impacts, none of the 21 states (shaded in the image

above) included in their SIPs any enforceable control strategies to

reduce their emissions, as required by the Act, 42 U.S.C. §

7410(a)(2)(D)(i)(I). 88 Fed. Reg. at 9,358-60, 9,369. Thus, just like the

rule in *Texas v. EPA*, 2011 WL 710598 at *3, where EPA concluded that

---

[10] EPA, Good Neighbor Plan for 2015 Ozone NAAQS, *available at* https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs (last visited April 17, 2023); *see also* 88 Fed. Reg. at 9,353-54.

13 SIPs were inadequate because they failed to implement required provisions of the Act, EPA disapproved "all" the SIPs that failed to include adequate provisions to eliminate their contribution to ozone problems in other states. 88 Fed. Reg. at 9,339/2.

The Disapproval Rule also applied the same "4-step framework" and several uniform policy and technical judgments to assess the adequacy of the SIPs at issue. Thirteen states, for example, relied on similarly (and in some cases, identically) flawed methodologies to conclude that they did not contribute to downwind ozone problems. *Id.* at 9,373/2. Other states, including Texas, Ohio, and Oklahoma, relied on the *same* flawed methodology for identifying monitoring receptors that are in danger of failing to meet the ozone standard. *Id.* at 9,340, 9,358-59. And other states, including Alabama, Arkansas, Indiana, Kentucky, Louisiana, Texas, and West Virginia, improperly relied on back-trajectory modeling in an attempt to discount ozone transport linkages. *Id.* at 9,354-56, 9,360. Thus, on the face of the rule, EPA's rationales for disapproving Texas's, Mississippi's, and Louisiana's SIPs

are inextricably interrelated and apply to the disapproval of SIPs across the country.[11]

Third, Petitioners essentially argue that the Disapproval Rule is 21 separate actions, subject to review in at least nine regional circuit courts. Such an approach would "utterly defeat[]" the Act's "obvious aim of centralizing judicial review of national rules in the D.C. Circuit." *S. Ill. Power Coop.*, 863 F.3d at 673.

Petitioners' other arguments are similarly flawed. Louisiana attempts to make a textual case for adopting a *per se* rule that all SIP "disapprovals" are "locally or regionally applicable," simply because Section 7607(b)(1) "mentions" such actions in the same sentence. Louisiana Resp. 8-10. But the statute does not say that *all* SIP actions are locally applicable. Instead, it states that "any" SIP action or "any other action . . . *which is* locally or regionally applicable" may be filed only in the regional circuits. 42 U.S.C. § 7607(b)(1) (emphasis added). In other words, only a SIP disapproval "which is" actually locally or

---

[11] Petitioners' argument that EPA's disapproval as to Texas, Louisiana, and Mississippi have "no connection" to each other, Texas Resp. 11, is further belied by the fact that their petitions have been consolidated without objection.

6

regionally applicable may be challenged in a regional circuit. Moreover, this Court has recognized that SIP actions *can* be "nationally applicable." *Texas*, 829 F.3d at 419 & n.16.

Petitioners speculate that a finding that the Disapproval Rule is "nationally applicable" would allow EPA to "manipulate" the Act's venue provision by simply "packaging" individual disapprovals together. Texas Resp. 1, 9-10; Louisiana Resp. 15. But, as discussed, the Disapproval Rule cannot credibly be described as a hodgepodge of unrelated actions; and Petitioners do not (and cannot) credibly claim EPA's decision to disapprove those SIPs in one action was illegitimate.[12]

Petitioners also argue that regulations cannot be nationally applicable if they apply only to a "subset"—"not even a majority"—of the states. Texas Resp. 12-13; Louisiana Resp. 14. But as discussed, *supra* at 3 n.9, this Court and others have concluded that EPA rules (including SIP rules) do not need to implicate even a majority of states to be nationally applicable. Like the SIP action in *Texas*, 2011 WL

---

[12] Even if the Disapproval Rule was a series of separate actions (it is not), this Court has recognized that where local rules are grouped together in a single published action, "transfer might well be appropriate." *Texas*, 706 F. App'x 159 at 164.

710598 at *3, 5, which applied to 13 states spanning seven EPA regions and federal circuits, the Disapproval Rule applies to 21 states from California to Texas to Minnesota to Connecticut—a "far-flung collection of states [that] comprises no "region" of which we are aware." *Id.* at *3, 5 (An "EPA rule need not span from 'sea to shining sea' to be nationally applicable.") (cleaned up). In any event, EPA did, in fact, apply the same analytical framework and methodology to "all states," and concluded that 21 states unlawfully failed to eliminate their contributions to violations of the ozone standard downwind. 88 Fed. Reg. at 9,339.

Petitioners contend that the SIP disapprovals must be regionally applicable because EPA Regional Staff analyzed, signed, and compiled comments and support documents for each of the "proposed" rules. Tex. Resp. 6-7, 12; Mississippi Resp. 1. 7. But, as the Texas Petitioners argued in a different venue dispute, "the statute does not delineate venue based on *proposed* rules—only 'final action.'" *See* Texas Resp. in Opp. to EPA Mot. to Dismiss at 11, *Texas v. EPA*, No. 17-60088 (5th Cir. filed Apr. 13, 2017), ECF 00513952278 (emphasis in original) (arguing that EPA's final Texas-only nonattainment designations were not

8

nationally applicable, even though EPA *proposed* the designations as part of a nationally applicable rule). Here, EPA's *final* Disapproval was published in a single action that applies to 21 states, spanning seven EPA regions and nine federal circuits; it is nationally applicable. *Cf. Texas v. EPA*, 2011 WL 710598, at *4.

Finally, it is irrelevant whether this Court has reviewed different, plainly state- or region-specific SIP actions. Texas Resp. 2-3, 10; Louisiana Resp. 14. EPA has not argued that *every* SIP action is nationally applicable. Nor has EPA argued that every SIP rule governing multiple states is nationally applicable. In *Texas*, 829 F.3d 405, for example, EPA did not claim the disapproval of Texas's and Oklahoma's implementation plans was nationally applicable, so the Court's observation that it was regionally applicable does not mandate the same result here. *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 218 (5th Cir. 1979), involved the delineation between "direct review in the courts of appeals of certain EPA actions" and actions reviewable "only in the district courts," so the Court had no occasion to determine the contours of nationally applicable action. And the Court's order in *Calumet Shreveport Refining, L.L.C. v. EPA*, No. 22-60266 (5th Cir. Oct. 21,

2022), does not hold that venue in that case is proper here, but simply deferred the venue question to the merits panel.

In short, nothing in the Act precludes EPA from disapproving SIPs in a uniform and nationally applicable action when warranted. Here, EPA was confronted with 21 SIPs that unlawfully failed to do anything to address their interstate ozone impacts, even though national modeling and analysis demonstrated that each state contributed significantly to poor air quality in other states. *See* 42 U.S.C. § 7410(a)(2)(D)(i)(I). Accordingly, EPA reasonably disapproved those plans as part of a single, nationally applicable rule.

## II.    PETITIONERS MISCHARACTERIZE EPA'S FINDINGS.

Even if the Disapproval Rule could be characterized as locally applicable (it cannot be), EPA reasonably found that the rule was based on at least four determinations of nationwide scope and effect. First, as the Mississippi and Louisiana Petitioners concede (Mississippi Resp. 7; Louisiana Mot. to Stay 9), the rule is "based" on the agency's national modeling showing that all 21 states at issue contribute to unhealthy levels of ozone in other states, but unlawfully failed to reduce emissions. 88 Fed. Reg. at 9,343-46. Second, EPA determined that a state's ozone

10

contribution in excess of one percent of the NAAQS (i.e., 0.70 parts per billion ("ppb")) is "significant," rejecting several states' one ppb alternative threshold. *Id.* at 9,373. Third, EPA determined that Texas's alternative methodology for identifying "maintenance receptors" (i.e., areas of the country at risk of failing air quality), which Ohio and Oklahoma explicitly adopted, was inadequately justified. *Id.* at 9,359. Finally, EPA rejected the theory, advanced by Arkansas, Louisiana, and Texas, that ozone contributions must be "consistent and persistent" to qualify as significant. *Id.* at 9,355-56, 9,360. Because those determinations "lie at the core" of the Disapproval Rule, *Texas*, 829 F.3d at 420, EPA reasonably determined that the rule was nationwide in scope and effect.

In an attempt to avoid that conclusion, Petitioners advance several failing arguments. First, the fact that EPA evaluated each SIP on its "own merits" (Texas Resp. 18), does not preclude a determination of nationwide scope and effect. *Every* SIP decision involves an evaluation of intensely factual issues. But here, numerous states relied on the same or similarly flawed methodologies to find that they did not contribute to harmful downwind ozone, and to avoid taking measures to

11

reduce pollution. The agency determined, based on national modeling, that all 21 states contributed to downwind ozone nonattainment, yet they unlawfully failed to address those impacts. That determination is nationwide in scope and effect.

Second, Mississippi suggests without basis that EPA must make a particularized nationwide scope and effect determination "specifically" with respect to each SIP. Mississippi Resp. 19. But nothing in the text of 42 U.S.C. § 7607(b)(1) or the relevant case law requires that EPA must make such a formalistic finding for each and every SIP in a given rule.

Finally, Petitioners discount the risk of inconsistent results, Texas Resp. 18; Mississippi Resp. 15; Louisiana Resp. 24, but the *very same* determinations of nationwide scope and effect are pending before multiple circuits. Several states, for example, including Missouri, Mississippi, Texas, and Utah, among others, contend that EPA's revised national modeling—upon which Mississippi and Louisiana concede the Disapproval Rule is "based"—overpredicts ozone impacts. *See* EPA, Response to Comment Document ("RTC") at 135-80, EPA-HQ-OAR-2021-0663-0083. Other states, including Arkansas, Kentucky,

Louisiana, Oklahoma, and Utah, all argued against EPA's one percent threshold for determining significant contribution, in favor of a one ppb threshold. 88 Fed. Reg. at 9,373; RTC at 295-300. Similarly, Oklahoma and Ohio both explicitly adopted Texas's flawed "alternative maintenance receptor" methodology. *Id.* at 9,359. And EPA determined that other states, including Alabama, Arkansas, Indiana, Kentucky, Louisiana, Texas, and West Virginia, all improperly relied on simplistic back-trajectories to discount ozone transport linkages. *Id.* at 9,354-56, 9,360. EPA also rejected Arkansas's, Louisiana's, and Texas's theory that any ozone contribution must be "persistent and consistent" to warrant regulation. *Id.* at 9,355-56, 9,360; RTC at 350. Those determinations are each nationwide in scope and effect, and they are now at play in seven different circuits. Inconsistent resolution of any of those determinations could call into question the entirety of the Disapproval Rule, "utterly defeating" the Act's obvious goal of centralized, consistent review of national issues. *S. Ill.*, 863 F.3d 673.[13]

---

[13] Even if the Texas, Louisiana, and Mississippi SIP Disapprovals could be evaluated in a vacuum (they cannot be), any order "stay[ing] EPA's disapproval and prohibit[ing] EPA from taking any action in reliance on that disapproval" (Texas Industry Mot. to Stay at 21) could effectively

## CONCLUSION

The Court should grant EPA's motion to dismiss or transfer.

Respectfully submitted,

/s/ *Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560 (phone)
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

/s/ *Kathleen L. Riley*
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

---

implicate the entirety of the rule because, as discussed, EPA's bases for disapproving all 21 state plans are inextricably intertwined.

*Counsel for Sierra Club, Air Alliance*
*Houston, and Downwinders at Risk*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned counsel states that this Reply in Support of Motion to Transfer or Dismiss complies with Fed. R. App. P. 27(d)(2)(C) because it contains 2,566 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated: April 17, 2023

/s/ Joshua Smith
Joshua Smith
Counsel for Sierra Club

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: April 17, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

# CERTIFICATE OF SERVICE

On this 17th day of April, 2023 a true and correct copy of the foregoing **Reply in Support of Motion to Transfer or Dismiss** By Sierra Club, Air Alliance Houston, and Downwinders at Risk was filed with the electronic case filing ("ECF") system of the U.S. Court of Appeals for the Fifth Circuit, which will provide electronic notice to counsel of record.

*/s/ Joshua Smith*
Joshua Smith