No. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

STATE OF TEXAS, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' SURREPLY IN OPPOSITION
TO TEXAS MOVANTS' MOTIONS TO STAY**

———————————

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
*Office of the General Counsel*
*U.S. Environmental Protection*
　*Agency*
*Washington, DC*

TODD KIM
　*Assistant Attorney General*

JIN HYUNG LEE
　*U.S. Department of Justice*
　*Environment and Natural Resources*
　　*Division*
　*P.O. Box 7611*
　*Washington D.C. 20044-7611*

The new arguments and additional evidence, by way of six supplemental declarations,[1] submitted by Texas and Texas Industry Groups ("Texas Movants") in their Replies in Support of their Motions to Stay the Final Rule ("Replies"), ECF Nos. 197, 203, do not establish that the Texas Movants will suffer irreparable harm as a result of the Final FIP.

As an initial matter, any harm Texas Movants may experience from the Final FIP is not irreparable, because it is not "certain and great." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Once the Final FIP is published, Texas Movants may petition to review that final action and relatedly move for a stay in the proper forum if they believe the FIP to be unlawful and causing irreparable harm. Texas Movants have not asserted that the Final FIP is incontestable in its own right, such that they could not challenge—and move to stay—the FIP in separate litigation. At least unless and until Texas Movants so assert, they have not carried their burden to show that the harm traceable to the FIP is *ir*reparable absent a stay in *this* case. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate . . . relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (citation

---

[1] Both Texas and the Texas Industry Groups cite to and attach the same supplemental declaration from Dwayne W. "Woody" Rickerson ("Rickerson Supp. Decl."). Texas Industry Groups also cite to and attach five additional supplemental declarations.

omitted)); *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *8 (5th Cir. Feb. 17, 2022) (reiterating the principle that irreparable harm "asks whether the [movant] . . . has *no* adequate legal remedy" (quotation omitted & emphasis added)).

Moreover, the supplemental declarations do not change the fact that the Final FIP is designed to "achieve emissions reductions required by the good neighbor provision of the Clean Air Act," while being "readily achievable" and "feasible and cost-effective." EPA Stay Opp., ECF No. 179, Ex. 8, Birnbaum Decl. ¶¶ 6, 42, 52. For this reason, Stay Movants' statements and declarations suffer from the same maladies as their prior declarations, as they "are riddled with inaccuracies and analytic errors." *See* EPA Stay Opp. at 33. For example, Texas Movants contend that the Final FIP could force "load shedding" in 2023. Rickerson Supp. Decl. ¶¶ 6-7. But as evident from the Birnbaum Declaration, the Final FIP for Texas provides an amount of allowances *greater than* its 2021 and 2022 reported emissions. *See id.* ¶¶ 70-76 & Table 1 (demonstrating that Texas's 2023 budget plus starting bank is 52,694 tons, while Texas power plants' reported 2022 emissions were 44,950 tons). And these figures do not include the availability of allowances from the interstate market. *Id.* ¶ 72. Texas Movants do not explain how or why load shedding would occur given the availability of

adequate allowances for compliance even if emissions were held constant, and their blanket statements should therefore be rejected.[2]

Additionally, several of the Texas Movants' declarants compare Texas's historical emissions and its likely allocations in 2023-2027 to argue that its power plants will have a shortage of allowances. *See* Zahn Supp. Decl. ¶ 11; Price Supp. Decl. ¶ 21; Pollo Decl. ¶¶ 20-21. As an initial matter, declarants' arguments demonstrate a fundamental misunderstanding of the purpose of an emissions trading program. A central tenet of trading programs is that, over the course of implementation, there will be fewer allowances than baseline levels—ultimately, this is needed to ensure emissions reductions required by the Clean Air Act are achieved. *See* Birnbaum Decl. ¶ 6. Moreover, the declarants cherry-picked particular units' allocations rather than assessed allocations to their fleets as a whole, much less the budget as a whole (which is the true determinant of stringency within a trading program). *See id.* ¶¶ 30, 32, 53. And contrary to Texas Movants' declarants' misrepresentations, unit-level allocations do not serve as unit-specific emissions limitations, because sources that need more allowances can

---

[2] These load-shedding concerns are also speculative and cannot form the basis of irreparable harm. *See* Rickerson Supp. Decl. ¶ 6 ("While it is possible that banked or remaining allowances may be available, I do not believe that can be concluded with certainty."); *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022).

purchase allowances from other sources with surpluses. *See id.* ¶¶ 26, 30.[3] These are all facts that Texas Movants understand well, as EPA has successfully operated similar trading programs for over 25 years, including in Texas, *id.* ¶¶ 20, 24.[4]

Texas Movants also make much of the fact that the Final FIP will prorate 2023 budgets based on the rule's effective date, causing uncertainty. *See* Pollo Decl. ¶¶ 23-25; Zahn Supp. Decl. ¶ 13; Talley Decl. ¶¶ 8, 14. Although there is a bit of uncertainty associated with prorating, there is no downside to Texas or its industries as a result of that uncertainty—budgets will *increase* (and thus compliance burdens will decrease) as a result of any delay in the FIP's effective date beyond May 1, 2023. Birnbaum Decl. ¶¶ 35.b, 41.b, 54-55.

Finally, Texas Movants contend that the Final FIP will require them to expend substantial compliance costs while the merits of the Final Rule are being litigated. *See, e.g.*, Pollo Decl. ¶ 30, Krautsch Supp. Decl. § III. But the program

---

[3] Texas Industry Groups also misrepresent the Birnbaum Declaration, stating that high allowance prices incentivize sources not to sell allowances. Texas Indus. Reply at 9-10 (citing Birnbaum Decl. ¶ 56). The Birnbaum Declaration says no such thing. *See generally* Birnbaum Decl.

[4] Relatedly, several declarants misleadingly suggest that allowance prices remain elevated. *See* Price Supp. Decl. ¶ 28; Talley Decl. ¶ 11; Pollo Decl. ¶ 32. But in fact, allowance prices have trended *downward* since FIP finalization. The subscription service cited at Birnbaum Decl. ¶ 65 now reports allowance prices around $10,000/ton in the last several weeks, down about 33% from prior to the pre-publication release of the Final FIP and 80% lower than declarants' claims that allowances might cost $50,000/ton.

has already been designed to allow sufficient time to plan and prepare for compliance in the later years of the program, Birnbaum Decl. ¶¶ 48-49, and costs associated with compliance in later years do not constitute imminent and substantial irreparable injury during the pendency of judicial review, *see A.O. Smith Corp. v. FTC*, 530 F.2d 515, 527 (3d Cir. 1976) ("Any time a corporation complies with a government regulation that requires corporation action, it spends money and loses profits; yet it could hardly be contended that proof of such an injury, alone, would satisfy the requisite for a preliminary injunction."). Further, compliance burdens associated with the Final FIP are similar to those previously upheld in comparable transport rulemakings. Birnbaum Decl. ¶¶ 46-47, 60. In any case, these are precisely the types of record-based allegations that are properly assessed during judicial review of the Final FIP itself, not the Final Rule that has been challenged here.

## CONCLUSION

For the reasons explained above, and for those presented in EPA's Stay Opposition, Texas Movants have not established irreparable harm and are not otherwise entitled to a stay. EPA respectfully requests that the Court deny Texas Movants' motions to stay the Final Rule or, alternatively, transfer the motion to the D.C. Circuit.

                                  Respectfully submitted,

                                  TODD KIM
                                  Assistant Attorney General

Of Counsel:                        */s/ Jin Hyung Lee*
                                  JIN HYUNG LEE

ROSEMARY HAMBRIGHT KABAN   U.S. Department of Justice
DANIEL P. SCHRAMM               Environment and Natural Resources Division
U.S. Environmental Protection Agency   Environmental Defense Section
Office of General Counsel           P.O. Box 7611
Washington, DC                    Washington, D.C. 20044-7611
                                  (202) 514-2640
                                  jin.hyung.lee@usdoj.gov

April 18, 2023

# CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 1,236 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.

Dated: April 18, 2023                     */s/ Jin Hyung Lee*
                                          JIN HYUNG LEE

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's surreply in opposition to Texas Movants' motions to stay the Final Rule on all registered counsel through the Court's electronic filing system (CM/ECF).

Dated: April 18, 2023

                                          */s/ Jin Hyung Lee*
                                          JIN HYUNG LEE