No. 23-60069

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS, ET AL,

*Petitioners*,

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents*,

**STATE OF LOUISIANA'S REPLY IN SUPPORT OF ITS OPPOSED MOTION TO STAY**

JEFF LANDRY
  Attorney General
ELIZABETH B. MURRILL (LA 20685)
  *Solicitor General*
JOSEPH S. ST. JOHN (LA 36682)
  *Deputy Solicitor General*
MACHELLE HALL (LA 31498)
  *Assistant Attorney General*
LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
hallm@ag.louisiana.gov

COURTNEY J. BURDETTE (LA 30564)
 *Executive Counsel*
JILL C. CLARK (LA 33050)
 *General Counsel*
LOUISIANA DEPT. OF
 ENVIRONMENTAL QUALITY
Office of the Secretary, Legal Division
P.O. Box 4302
Baton Rouge, LA 70821-4302
Tel: (225) 219-3985
Courtney.Burdette@la.gov
Jill.Clark@la.gov

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Petitioner is a governmental party and as such does not need to furnish a certificate of interested persons.

/s/ *Joseph S. St. John*
Joseph S. St. John
*Counsel of Record for State of Louisiana*

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ................................................. iii

TABLE OF AUTHORITIES ...................................................................... v

INTRODUCTION ................................................................................. 1

ARGUMENT ...................................................................................... 2

    I.    THE STAY SHOULD BE DECIDED BEFORE VENUE IF APPROPRIATE ................. 2

    II.    LOUISIANA IS ENTITLED TO A STAY PENDING APPEAL .................................. 2

        A.    Louisiana is likely to succeed on the merits. ...................................... 2

            1.    There are live disputes over the significance of Louisiana's ozone contributions. ........................................................ 2

            2.    The modeling changes mattered. ............................................... 4

            3.    EPA's modeling changes violated principles of fair notice and consideration of reliance. ..................................................... 5

            4.    EPA's actions violate the cooperative federalism of the CAA. ..... 7

        B.    The other factors support a stay ...................................................... 10

CONCLUSION ................................................................................... 11

CERTIFICATE OF SERVICE ................................................................. 13

CERTIFICATE OF COMPLIANCE ........................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*DHS v. Regents of the Univ. of Ca.*,
140 S. Ct. 1891 (2020)..................................................................................4, 7

*Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158 (2007).........................................................................................7

*Luminant Generation Co. v. EPA*,
675 F.3d 917 (5th Cir. 2012) .......................................................................1, 7

*Michigan v. EPA*,
576 U.S. 743 (2015).........................................................................................4

*R.J. Reynolds Vapor Co. v. FDA*,
Nos. 23-60037, 23-60128, 2023 WL 2852634 (5th Cir. Mar. 23, 2023) ..............6

*Wisconsin v. EPA,*
938 F.3d 303 (2019)....................................................................................8, 10

*Texas v. EPA*,
829 F.3d 405 (5th Cir. 2016) .................................................................. 1, 10, 11

*Wages & White Lion Invs., LLC v. FDA*,
16 F.4th 1130 (5th Cir. 2021) .....................................................................6, 7

*Wages & White Lion Invs., LLC v. FDA*,
58 F.4th 233 (5th Cir. 2023) ..........................................................................6

*Whitman v. Am. Trucking Associations*,
531 U.S. 457 (2001).........................................................................................8

**Statutes**

42 U.S.C. § 7410(a)(1).....................................................................................4

42 U.S.C. § 7410(k)(5).....................................................................................4

**INTRODUCTION**

The Clean Air Act (CAA) gives states the primary responsibility for implementing National Ambient Air Quality Standards (NAAQS) in an exercise of cooperative federalism. It "confines [EPA] to the ministerial function of reviewing" State Implementation Plans (SIPs) for consistency with the CAA's requirements. *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012). This structure "indicates a congressional preference that states, not EPA, drive the regulatory process." *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016). It is the *State*— not EPA—that Congress intended to ensure compliance with NAAQS in the first instance.

But when EPA reviewed Louisiana's good neighbor SIP for the 2015 ozone NAAQS, it inverted this statutory scheme. After delaying long past the statutory deadline, EPA disapproved Louisiana's SIP based on data that was gathered and a model that was revised after Louisiana submitted its SIP. EPA acted as if the SIP was just a first draft, not the work of a sovereign that it was to check for compliance. In doing so, EPA also violated basic administrative law principles of fair notice and consideration of reliance interests.

In its Opposition to Louisiana's Motion to Stay, EPA does not answer these charges. It argues that changes to data and modeling made no difference and were not expressly prohibited. Opp. 17-19. But the changes were integral to EPA's final

disapproval, made practical differences, were inconsistent with its guidance, and were contrary to the CAA. Because EPA cannot overcome the irreparable harm to Louisiana and the other factors favor a stay on the final rule, this Court should not delay in staying the final rule.

## ARGUMENT

### I.   THE STAY SHOULD BE DECIDED BEFORE VENUE IF APPROPRIATE.

In the Opposition, EPA argues that venue should be decided before the stay motion. It cites cases considering venue alongside an interlocutory appeal, but this Court has two separate motions pending: the Motion to Stay and the Motion to Transfer. If the transfer motion requires further time, Louisiana respectfully requests that the Court decide its motion to stay without delay. There is irreparable harm, and Louisiana should obtain relief in the interim.

### II.   LOUISIANA IS ENTITLED TO A STAY PENDING APPEAL.

#### A.   Louisiana is likely to succeed on the merits.

##### 1.   There are live disputes over the significance of Louisiana's ozone contributions.

EPA contends that Louisiana admitted its "chosen methodology" shows that "its emissions contribute well over its chosen 1 ppb threshold of ozone pollution to downwind receptors in Texas" and "already demonstrated" a "persistent and consistent pattern" of ozone contribution to Texas. Opp. at 8. Not so. Although

Louisiana considered EPA's data, it reached conclusions at odds with EPA's subsequent conclusions based on its own technical analysis and methodology. Louisiana started with the two areas with non-compliant monitors for which EPA identified a greater than 1 ppb contribution then performed further analysis—including back trajectory analysis—to demonstrate that Louisiana's contribution was insignificant. EPA disagrees with Louisiana's analysis, specifically as to basic questions of how much of a pattern of contribution must be demonstrated. Opp. at 14-15. But EPA cannot simply assume the merit of discounting Louisiana's analysis to leave only EPA's methodology—that just assumes the conclusion.

EPA further argues that its updated modeling made no difference because Louisiana's SIP would have been denied under previous modeling. Opp. at 14-15. But EPA has not established that. EPA changed its modeling multiple times. Mot. at 15. The Final Rule disapproved Louisiana's SIP based on the 2016v3 modeling platform. 88 Fed. Reg. at 9,339. EPA never stated that its final conclusions would hold if it had relied on the 2016v2 modeling in its 2022 proposed SIP disapproval, much less modeling data from the March 2018 Memorandum (released before and without the 2016v1 modeling platform). Indeed, EPA avoided relying on those previous efforts in its Final Rule out of concern that other courts might disapprove. *See* 88 Fed. Reg. at 9,366. It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked."

3

*DHS v. Regents of the Univ. of Ca.*, 140 S. Ct. 1891, 1907 (2020) (citing *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).  If it was unlawful for EPA to use later modeling that was not available to Louisiana, EPA has no fallback position to bolster its disapproval.

### 2.     The modeling changes mattered.

As discussed in the Motion to Stay, EPA's actions undermined the CAA's cooperative federalism by scrapping Louisiana's SIP on grounds that did not exist when Louisiana designed a plan to govern itself. Opp. at 14-16. The 60-day comment period for the proposed SIP disapproval in no way equals the three years that the CAA provides to prepare SIPs. 42 U.S.C. § 7410(a)(1). Although Louisiana raised objections and highlighted the inequity of EPA relying on a twice-revised modeling platform that was unavailable when Louisiana submitted its SIP, EPA provided Louisiana no opportunity to reasonably address EPA's concerns, even though statute allows for plan revisions.  *See* 42 U.S.C. § 7410(k)(5).  Louisiana certainly had no chance to comment on EPA's further revisions in the 2016v3 modeling platform, first announced in the Final Rule.  *See* 88 Fed. Reg. 9,339.

EPA's changes made a practical difference. EPA's revisions repeatedly increased Louisiana's purported ozone contribution to non-compliant monitors. EPA also added *new* non-compliant receptors to which Louisiana purportedly contributed. For instance, Louisiana's highest contribution was to the Brazoria/Galveston area.

The March 2018 Memorandum data modeled Louisiana's contribution to the Brazoria receptor at 3.80 parts ppb, but this increased to 7.03 ppb under the 2016v2 platform. 87 Fed. Reg. at 9,811–13. The nearby Galveston receptor was originally not included because it was projected to be in compliance. However, the Final Rule modeled the Galveston receptor to be out of compliance in the 2016v3 platform; Louisiana's contribution was 9.51 ppb. 88 Fed. Reg. at 9,356. That effectively represented a 250% increase over the data Louisiana had to prepare its SIP. Such substantial changes robbed Louisiana of the ability to consider, in the first instance, what analysis was appropriate to address its potential contributions, including for those larger purported values.

Even if Louisiana had fully accepted EPA's March 2018 Memorandum data, followed EPA's Step 3 analysis, and sufficiently abated its purported contribution to Brazoria, that still might not have sufficient in EPA's eyes—it would not have taken into account additional contribution under the latest modeling. Louisiana had no reason to tailor any reduction regarding Galveston, and EPA would still have faulted Louisiana for that. In short, the changes significantly impacted Louisiana's ability to do what EPA required.

### 3.    EPA's modeling changes violated principles of fair notice and consideration of reliance.

The Final Rule did not consider reliance, rendering it arbitrary and capricious. *See* Mot. at 12–13. In the Opposition, EPA now argues that Louisiana should not

have relied on the March 2018 Memorandum because the data in it was not itself determinative of SIP approvability. Opp. at 16. But the information was "not a final determination" because that "determination would be made through notice-and-comment rulemaking." March 2018 Memo at 2. Indeed, the Memorandum stated that "EPA's goal in providing this information [was] to assist states' efforts to develop" their SIPs and the information and data in the memorandum "could be used to inform" their development. *Id.* Even the Final Rule effectively concedes that the modeling data was intended to be relied upon as guidance. *See* 88 Fed. Reg. at 9,340. There was no indication that EPA would later change its modeling.

This Court has recently stayed Food and Drug Administration denials relating to e-cigarette products on similar grounds. *See R.J. Reynolds Vapor Co. v. FDA*, 2023 WL 2852634 (5th Cir. Mar. 23, 2023); *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130 (5th Cir. 2021); *see also Wages & White Lion Invs., LLC v. FDA*, 58 F.4th 233 (5th Cir. 2023) (vacating contrary opinion and granting rehearing en banc).

Similar to EPA's recommended reliance on its then-available data, FDA in *Reynolds* indicated that companies were not expected to collect new data. *See Reynolds*, 2023 WL 2852634 at *1. FDA denied applications as inadequate because they lacked the data the companies were told was unnecessary to collect. *Id.* at *4-5. This "surprise switcheroo" disregards principles of fair notice and consideration

of reliance interests, and is arbitrary and capricious.[1] *See id.* at *2–4, n.6; *Wages &*

*White Lion*, 16 F.4th at 1138–39. Here, EPA judged Louisiana's SIP with data

gathered and modeling done after submission and it is made worse by EPA's failure

to reasonably consider alternatives to ameliorate the unfairness, *see Regents*, 140 S.

Ct. at 1913, including issuing a SIP call to give states a chance to consider new data

and modeling. Instead, EPA waited until the end of the process to reject that idea as

causing too much delay. 88 Fed. Reg. at 9,365.

### 4.    EPA's actions violate the cooperative federalism of the CAA.

Finally, EPA argues that it has discretion to revise data and modeling after

SIP submission simply because "[n]o case law or statutory provision" explicitly says

otherwise. Opp. at 17. EPA relies on its arguments against Texas and does not

seriously engage with Louisiana's arguments that show EPA's position is untenable.

Mot. at 14–16. The CAA gives states primary responsibility for NAAQS

implementation and "confines the EPA to the ministerial function of reviewing SIPs

for consistency" with the CAA. *Luminant*, 675 F.3d at 921. EPA's insistence that

it can rely on data and modeling from long after SIP submission would make sense

---

[1] In *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007), long-contested interpretations of a regulation were at issue, and notice-and-comment rulemaking occurred before the relevant conduct; thus, it does not support EPA's position that notice and comment rulemaking precludes unfair surprise. Opp. at 17.

if SIPs were intended as a preliminary draft. Opp. at 17. But it is wholly inconsistent with EPA's actual role of merely checking states' work within one year of the SIP's submission. The statute need not expressly preclude EPA's practice for it still to be a factor that Congress did not intend EPA to consider, particularly because it contravenes the CAA framework. *See, e.g.*, *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 464–69 (2001).

Moreover, EPA's theory that *Wisconsin v. EPA* requires EPA to look at the most recent data is also wrong. Opp. at 16. The Court in *Wisconsin* considered whether EPA should have relied on earlier data or future projections, not whether EPA must take into account data and modeling after SIPs are submitted. *Wisconsin v. EPA,* 938 F.3d 303 (D.C. Cir. 2019). Indeed, that Court refused to consider states' arguments that EPA wrongfully delayed acting on SIP submissions to gather data so it could reject them because the states had challenged only the FIP. *Id.* at 335–36.

EPA also misconstrues Louisiana's Motion as arguing that EPA's delay "prohibits" it from using later data. Opp. at 18. To clarify, Louisiana argues that EPA acted contrary to the statutory design, not that it should be punished for delay.[2] The delay does, however, demonstrate how unnecessary EPA's actions were. The reasonable course in the event of a delay would have been for EPA to use the data

---

[2] EPA essentially asserts that it was very busy after two 2019 D.C. Circuit cases until 2021. Opp. at 7; 87 Fed. Reg. at 9,365.

and modeling it already had to efficiently and timely evaluate SIPs, which it did that in its approval of SIPs starting in 2018. 87 Fed. Reg. at 9,365 n.286. But for SIPs it disapproved, EPA analyzed new data and multiple rounds of modeling long after the statutory deadline, reaching its final disapproval two years later and long after it could have given a chance to states to update their SIPs. *See* Mot. at 14–15. This underscores how EPA's actions are contrary to the statutory design.

EPA also argues that Louisiana's only remedy was to bring a suit to force EPA to act. Opp. at 18. But Louisiana's challenge is not a timing issue—it goes to the lawfulness of the disapproval because a citizen suit would not practically allow a state to stop EPA from evaluating a state's SIP on an unlawful basis.

Ultimately, under EPA's view, the only practical way for Louisiana to assure approval was to anticipate that later data and modeling *might* project contributions several times larger than what EPA predicted in 2018 for new receptors and to commit to actions potentially far more onerous than required by the statute under any data or modeling at the time of its SIP submission. EPA was free to continue to collect data for years, use a new modeling platform, and choose assumptions that wildly increased Louisiana's purported ozone contributions. And as long as EPA's scientific analysis appeared reasoned and rational—even if Louisiana's was too—EPA could reject the SIP and impose its own plan on Louisiana. *See* Opp. at 13–14. That is simply not how the cooperative federalism required by the CAA works.

9

**B.      The other factors support a stay.**

While EPA admits that any harms from the Federal Implementation Plan (FIP) flow from the SIP disapproval because the latter is a statutory prerequisite, it argues that Louisiana still must wait to challenge the FIP. Opp. at 20.  Notably, EPA does not explain how Louisiana could stop harms flowing from the FIP based on a challenge to the unlawfulness of EPA's SIP disapproval except through its Motion. EPA would almost certainly argue that such a challenge is not allowed in litigation over the FIP.  *See Wisconsin*, 938 F.3d at 335–36.  The challenge should be dealt with here.

EPA relies on the declaration submitted in its opposition to Texas's motion to rebut the evidence of irreparable harm provided by Louisiana. Opp. at 9; Ex. 6. That declaration does not even mention Louisiana, much less specifically respond to Louisiana's evidence, and it provides only generalized reassurances about the FIP. *See* Ex. 6.  EPA also dismisses the harms to Louisiana's sovereignty in a footnote, but this Court takes seriously "the inversion of the federalism principles enshrined" in the CAA.  *Texas*, 829 F.3d at 434.  No later order can repay Louisiana for losing its power to govern during this litigation.  Moreover, EPA admitted in the Birnbaum Declaration that there are substantial costs to implementing the FIP's emission controls. Opp., Ex. 6 §§ 9, 13.  It has also argued that not staying the SIP disapproval would improve the "health and welfare of millions of citizens impacted by

Louisiana's pollution" by allowing those controls to go into effect. Opp. at 23. It cannot also argue that the SIP disapproval has no practical effects or that Louisiana will not have to "spend significant resources enforcing compliance" with the FIP, another irreparable harm. *Texas*, 829 F.3d at 433.

In response to the balance of harms and the public interest factors, EPA focuses on its CAA role of protecting air quality. Opp. at 22-23. EPA ignores that CAA prioritizes states and gives states the primary implementation responsibility, EPA is only a backstop. Congress has made protecting state sovereignty a critical interest. And although EPA laments "delay" to its environmental protection efforts, it does not address its own years-long delay caused by the unlawful conduct challenged here. *See* Opp. The EPA's delay cannot establish that it is in the public interest to invade state sovereignty, and the Motion to Stay should be granted.

## CONCLUSION

The Court should stay, pending review, the portion of EPA's Final Rule that disapproves Louisiana's SIP.

Respectfully Submitted,

**JEFF LANDRY**
 **Attorney General**

/s/ *Joseph S. St. John*
ELIZABETH B. MURRILL (LA 20685)
 *Solicitor General*
JOSEPH S. ST. JOHN (LA 36682)
 *Deputy Solicitor General*
MACHELLE HALL (LA 31498)
 *Assistant Attorney General*
LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
hallm@ag.louisiana.gov

Courtney J. Burdette (LA 30564)
 *Executive Counsel*
Jill C. Clark, Bar (LA 33050)
 *General Counsel*
LOUISIANA DEPT. OF
 ENVIRONMENTAL QUALITY
Office of the Secretary, Legal Division
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302
Tel: (225) 219-3985
Courtney.Burdette@la.gov
Jill.Clark@la.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, a true and correct copy of the foregoing has been served on all parties in accordance with the Appellate Rules of Civil Procedure, via the Court's CM/ECF system.

/s/ *Joseph S. St. John*
Joseph S. St. John

**CERTIFICATE OF COMPLIANCE**

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,599 words, excluding the parts of the document exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

/s/ *Joseph S. St. John*
Joseph S. St. John