No. 23-60069

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; ENTERGY LOUISIANA, L.L.C.; LOUISIANA CHEMICAL ASSOCIATION; MID-CONTINENT OIL AND GAS ASSOCIATION; LOUISIANA ELECTRIC UTILITY ENVIRONMENTAL GROUP, L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP,

*Petitioners,*

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

## MISSISSIPPI PETITIONERS' OPPOSED JOINT MOTION TO STAY

**C. Grady Moore III**
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
(205) 251-8100
gmoore@balch.com

**Bradley A. Ennis**
**Susan Scaggs Stutts**
BALCH & BINGHAM LLP
1310 25th Avenue
Gulfport, MS 39501
(228) 864-9900

**Shawn S. Shurden**
*General Counsel*
MISSISSIPPI POWER COMPANY
2992 West Beach Boulevard
Gulfport, MS 39502
(228) 229-0915

*Counsel for Petitioner Mississippi Power Company*

**Lynn Fitch**
  *Attorney General of Mississippi*
**Whitney H. Lipscomb**
  *Deputy Attorney General*
**Justin L. Matheny**
  *Deputy Solicitor General*
STATE OF MISSISSIPPI OFFICE OF THE
ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

**Mithun Mansinghani**
LEHOTSKY KELLER COHN LLP
629 W. Main St.
Oklahoma City, OK 73102
(512) 693-8350
mithun@lkcfirm.com

**Michael B. Schon**
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave NW
Washington, DC 20001
(512) 693-8350
mike@lkcfirm.com

*Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality*

## CERTIFICATES OF INTERESTED PERSONS

No. 23-60069

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; ENTERGY LOUISIANA, L.L.C.; LOUISIANA CHEMICAL ASSOCIATION; MID-CONTINENT OIL AND GAS ASSOCIATION; LOUISIANA ELECTRIC UTILITY ENVIRONMENTAL GROUP, L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP,

*Petitioners,*

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

Under Circuit Rule 28.2.1, Petitioners State of Mississippi and Mississippi Department of Environmental Quality need not furnish a certificate of interested persons because they are governmental parties.

/s/ Justin L. Matheny
*Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality*

i

The undersigned counsel of record for Mississippi Power Company certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Abrams, Michael R., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Association of Electric Companies of Texas (Petitioner)

- Baake, David R. (Counsel for *Amicus Curiae* New Mexico Environmental Department)

- Baake Law, LLC (Counsel for *Amicus Curiae* New Mexico Environment Department)

- Balch & Bingham LLP (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Petitioner Mississippi Power Company)

- Baker Botts L.L.P. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Barber, Julia B. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- BCCA Appeal Group (Petitioner)

- Berge, Megan H. (Counsel for Petitioner Texas Lehigh Cement Company, LP)

- Blackman, Daniel (Region 4 Administrator, United States Environmental Protection Agency)

- Brookfield Asset Management Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

- Burdette, Courtney J., Executive Counsel, Louisiana Department of Environmental Quality (Counsel for Petitioner Louisiana Department of Environmental Quality)

- Clark, Jill C., General Counsel, Louisiana Department of Environmental Quality (Counsel for Petitioner Louisiana Department of Environmental Quality)

- Coleto Creek Power, LLC (Petitioner)

- Cole, William F., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Davis, Bill, Deputy Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Diaz, Daria Burgess (Counsel for Petitioner Louisiana Public Service Commission)

- Ennis, Bradley A. (Counsel for Mississippi Power Company)

- Ennis Power Company, LLC (Petitioner)

- Entergy Louisiana, L.L.C. (Petitioner)

- Fitch, Lynn, Attorney General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Garland, Merrick B., Attorney General, United States Department of Justice (Counsel for Respondents)

- Gidiere, P. Stephen III (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Hall, Machelle, Assistant Attorney General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Harbourt, Maureen N. (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group LLC)

- Hays Energy, LLC (Petitioner)

- Jezouit, Debra J. (Counsel for Petitioner Entergy Louisiana, L.L.C.)

- Kelly, Daniel J. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Vice President and Deputy General Counsel for Vistra Corp.)

- Kim, Todd, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice (Counsel for Respondents)

- Kean Miller LLP (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group LLC)

- Kollmeyer, Josiah, M. (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group LLC)

- Kuryla, Matthew L. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Landry, Jeff, Attorney General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Lee, Jin Hyung, Trial Attorney, United States Department of Justice, Environment & Natural Resources Division, Environmental Defense Section (Counsel for Respondents)

- Lee, Joshua (Counsel for Petitioner Entergy Louisiana, L.L.C.)

- Lehotsky Keller Cohn LLP (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Lipscomb, Whitney H., Deputy Attorney General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Little, Mark (Counsel for Petitioner Texas Lehigh Cement Company, LP)

- Louisiana Chemical Association (Petitioner)

- Louisiana Department of Environmental Quality (Petitioner)

- Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Louisiana Electric Utility Environmental Group, L.L.C. (Petitioner)

- Louisiana Mid-Continent Oil and Gas Association (Petitioner)

- Luminant Generation Company LLC (Petitioner)

- Mansinghani, Mithun (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Matheny, Justin L., Deputy Solicitor General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Mazzara, Joseph N., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- McPhee, Shae, Deputy Solicitor General, Louisiana Department of Justice, Office of the Attorney General (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Midlothian Energy, LLC (Petitioner)

- Mississippi Department of Environmental Quality (Petitioner)

- Mississippi Power Company (Petitioner)

- Mitchell, David W. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Counsel, Environmental for Vistra Corp.)

- Moore, C. Grady III (Counsel for Mississippi Power Company)

- Moore, Stephanie Zapata (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Executive Vice President and General Counsel for Vistra Corp.)

- Murrill, Elizabeth B., Solicitor General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Nance, Earthea (Regional Administrator for Respondent United States Environmental Protection Agency)

- New Mexico Environment Department (*Amicus Curiae*)

- Oak Grove Management Company LLC (Petitioner)

- Office of the Attorney General for the State of Louisiana (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Paxton, Ken, Attorney General of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Prieto, Jeffrey M. (General Counsel for Respondent United States Environmental Protection Agency)

- Public Utility Commission of Texas (Petitioner)

- Railroad Commission of Texas (Petitioner)

- Regan, Michael S., Administrator, United States Environmental Protection Agency (Respondent)

- Rucinski, Lauren (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group, LLC)

- Schon, Michael B. (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

- Shelton, Dana M. (Counsel for Petitioner Louisiana Public Service Commission)

- Shurden, Shawn (Counsel for Petitioner Mississippi Power Company)

- Southern Company (Parent Company of Petitioner Mississippi Power Company)

- State of Louisiana (Petitioner)

- State of Mississippi (Petitioner)

- State of Texas (Petitioner)

- St. John, Joseph S., Deputy Solicitor General, Louisiana Department of Justice, Office of the Attorney General (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

- Stone, Judd, Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Stone Pigman Walther Wittmann (Counsel for Petitioner Louisiana Public Service Commission)

- Streett, Aaron M. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

- Stutts, Susan Scaggs (Counsel for Mississippi Power Company)

- Texas Chemical Council (Petitioner)

- Texas Commission on Environmental Quality (Petitioner)

- Texas Lehigh Cement Company, LP (Petitioner)

- Texas Oil & Gas Association (Petitioner)

- The Vanguard Group, Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

- United States Environmental Protection Agency (Respondent)

- Vistra Asset Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Corp. (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Intermediate Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Vistra Operations Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

- Webster, Brent, First Assistant Attorney General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of

Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas)

- Wise County Power Company, LLC (Petitioner)

Respectfully submitted,

*/s/ C. Grady Moore III*

*Counsel for Petitioner Mississippi Power Company*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF CONTENTS ................................................................................ xi

TABLE OF AUTHORITIES ........................................................................... xii

INTRODUCTION .........................................................................................1

BACKGROUND ...........................................................................................2

   I.   Statutory Framework ...................................................................2

   II.   Procedural History ......................................................................3

       A.   EPA issues the 2015 Ozone NAAQS and guidance for
           state implementation plans. ................................................3

       B.   Mississippi submits a state implementation plan in
           reliance on EPA's guidance. ................................................5

       C.   EPA disapproves Mississippi's state plan years after the
           deadline, based on new modeling and policy
           preferences. ....................................................................7

STAY STANDARD .....................................................................................10

ARGUMENT .............................................................................................10

   I.   Mississippi Petitioners are likely to succeed on the merits...............10

       A.   EPA may not disapprove state plans that comply with
           the Clean Air Act based on EPA's own policy
           preferences. ..................................................................11

       B.   EPA unlawfully disapproved Mississippi's plan based
           on non-statutory factors ..................................................13

   II.   The remaining factors also favor a stay. .......................................20

CONCLUSION ..........................................................................................22

CERTIFICATE OF CONFERENCE .................................................................24

CERTIFICATE OF SERVICE ........................................................................25

CERTIFICATE OF COMPLIANCE ................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Encino Motorcars, LLC v. Navarro*,
 579 U.S. 211 (2016).........................................................19

*Luminant Generation Co. v. EPA*,
 675 F.3d 917 (5th Cir. 2012)........................................3, 12

*Nken v. Holder*,
 556 U.S. 418 (2009).........................................................10

*Sierra Club v. EPA*,
 356 F.3d 296 (D.C. Cir. 2004).......................................18

*Texas v. EPA*,
 23-60069, slip op. (5th Cir. May 1, 2023) .................*passim*

*Texas v. EPA*,
 690 F.3d 670 (5th Cir. 2012)..........................................12

*Texas v. EPA*,
 829 F.3d 405 (5th Cir. 2016)....................................2, 10, 11, 12

*Thunder Basin Coal Co. v. Reich*,
 510 U.S. 200 (1994).........................................................21

*Train v. Nat. Res. Def. Council, Inc.*,
 421 U.S. 60 (1975)......................................................2, 12

*Union Elec. Co. v. EPA*,
 427 U.S. 246 (1976)..............................................2, 11, 13, 15

*Veasey v. Abbott*,
 870 F.3d 387 (5th Cir. 2017)..........................................21

**Statutes**

42 U.S.C. § 7401 ..................................................................11

42 U.S.C. § 7407 ..................................................................11

42 U.S.C. § 7408 ....................................................................2

42 U.S.C. § 7409 ....................................................................2

42 U.S.C. § 7410 .............................................................*passim*

42 U.S.C. § 7607 ..................................................................10

**Other Authorities**

80 Fed. Reg. 65,291 (Oct. 26, 2015) .................................3, 4, 5

81 Fed. Reg. 59,876 (Aug. 31, 2016).....................................19

87 Fed. Reg. 9,545 (Feb. 22, 2022) .................................*passim*

87 Fed. Reg. 20,036 (April 6, 2022) ...................................9, 20

88 Fed. Reg. 9,336 (Feb. 13, 2023) ..........................9, 13, 16, 17

*2016v2 DVs State Contributions*, EPA-HQ-OAR-2021-0663-0021
    (Feb. 22, 2022), bit.ly/3NJoEo9..........................................8

*2016v3 DVs State Contributions*, EPA-HQ-OAR-2021-0663-0070
    (Feb. 13, 2023), bit.ly/44GEDcs.....................................9, 15

EPA, *Air Quality Modeling Technical Support Document* (Dec.
    2016), bit.ly/3LIohcd ........................................................3

EPA-R04-OAR-2021-0841-0017 (April 22, 2022), bit.ly/3M588xv ...................9

Mississippi 2015 Ozone Infrastructure SIP Prongs 1 and 2, EPA-
    R04-OAR-2021-0841-0009, bit.ly/3HKMkED .........................5, 6, 7

Tsirigotis, *Analysis of Contribution Thresholds for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions* (Aug. 31, 2018), bit.ly/3oGcXUB ...................................................................................4

Tsirigotis, *Considerations for Identifying Maintenance Receptors for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions* (October 19, 2018), bit.ly/3HfTosR .........................................................................4

Tsirigotis, *Information on the Interstate Transport State Implementation Plan* (Mar. 27, 2018), bit.ly/3HjQ2Fk.....................................3

INTRODUCTION

This Court ruled that EPA's actions to disapprove the state implementation plans of Texas and Louisiana should be stayed pending judicial review because EPA's actions were likely unlawful, will cause irreparable harm to those States and their industries, and the balance of equities favors a stay. The same holds true with respect to EPA's disapproval of Mississippi's state implementation plan. Accordingly, as it did with Texas and Louisiana, this Court should stay EPA's disapproval of Mississippi's plan.

In disapproving Mississippi's state-specific implementation plan, EPA "exceeded its authority under the [Clean Air Act] by giving undue weight to non-statutory factors." *Texas v. EPA*, 23-60069, slip op. at 14 (5th Cir. May 1, 2023) ("Stay Order"). EPA rejected Mississippi's multi-factor approach, including the State's use "of a higher contribution threshold than 1 percent of the NAAQS" in analyzing the areas affected by Mississippi emissions, despite no statutory requirement for a lower threshold. *Id.* at 17. EPA likewise "failed to defer" to Mississippi's detailed analysis of downwind ozone air quality in 2023. *Id.* And, just like with Louisiana and Texas, EPA "based its [disapproval] in part on policies and modeling data developed *after*" EPA's statutory review period ended. *Id.* at 18. By rejecting Mississippi's state plan, EPA has moved ahead with a federal plan for Mississippi that mandates immediate emissions reductions. To prevent immediate irreparable harm from EPA's unlawful actions, this Court should stay the disapproval of Mississippi's plan pending final resolution of this action.

## BACKGROUND

### I.  Statutory Framework

The Clean Air Act is based on "cooperative federalism," *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016) ("*Texas 2016*"), where the EPA sets "National Ambient Air Quality Standards ('NAAQS') for pollutants," including ozone, and states are responsible for implementing them. Stay Order at 3 (citing 42 U.S.C. §§ 7408, 7409). The Act gives each state primary responsibility to develop its own "state implementation plan" to meet statutory requirements, including the Act's "Good Neighbor" provision, which requires states to address in-state emissions that "contribute significantly" to neighboring states' failure to meet or maintain the NAAQS. 42 U.S.C. § 7410(a)(1)-(2). EPA's role is to review plans for consistency with the Act's requirements. *Id.* § 7410(k)(1)-(3). EPA "shall approve" a State's plan within 18 months if it meets the statutory requirements. *Id*.

This statutory structure means that "[e]ach State is given wide discretion in formulating its plan." *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976). Accordingly, "so long as the ultimate effect of a state's choice of emission limitations is compliance with" the "general requirements" of the Act, the state may implement "whatever mix of emissions limitations [is] best suited to its particular situation." *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79-80 (1975). EPA "is relegated by the Act to a secondary role" in reviewing these plans. *Id.* at 79. EPA performs solely "the ministerial function of reviewing

[state plans] for consistency with the Act's requirements." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012).

## II.  Procedural History

### A.  EPA issues the 2015 Ozone NAAQS and guidance for state implementation plans.

In 2015, EPA issued an updated NAAQS for ozone, which lowered the standard from 75 parts per billion ("ppb") to 70 ppb. NAAQS for Ozone, 80 Fed. Reg. 65,291, 65,293-94 (Oct. 26, 2015). To help States develop their implementation plans, EPA issued several rounds of guidance.

First, in December 2016, EPA released "air quality modeling" that "projected 2023 ozone concentrations" at various sites across the country (the "December 2016 Model").[1] EPA intended this modeling to help upwind states "quantify projected interstate contributions from emissions" to "downwind states." *Id.*

Second, EPA issued guidance memos on March 27, 2018, August 31, 2018, and October 19, 2018. The March memo identified "potential flexibilities in analytical approaches for developing a good neighbor [state plan]."[2]

The August guidance specified additional flexibilities in determining what level of emissions from a state "contribute significantly" (a term

---

[1] EPA, *Air Quality Modeling Technical Support Document*, at 1 (Dec. 2016), bit.ly/3LIohcd.

[2] Tsirigotis, *Information on the Interstate Transport State Implementation Plan*, at 1–2, A-2. (Mar. 27, 2018), bit.ly/3HjQ2Fk.

undefined by the Act) to another state's attainment issues.[3] After analyzing different potential thresholds of emissions to use in determining what contributions may be significant, EPA found that a threshold of 1 percent of the NAAQS (0.7 ppb) was "generally comparable" to a "1 ppb threshold." *Id.* at 4. EPA explained that, unlike other potential thresholds analyzed, there are only slight differences in the number of emissions sources accounted for in a 1 percent as compared to a 1 ppb threshold. *Id.* EPA therefore stated it may be "reasonable and appropriate for states to use a 1 ppb threshold, as an alternative to a 1 percent threshold," while developing their plans to identify and prohibit significant cross-state contributions. *Id.*

Finally, the October memo identified even more "potential flexibilities" states could use in their plans.[4] EPA set forth considerations that could "justify exclusion of a [downwind] monitoring site" from the list of sites which a state might be considered to have affected. *Id.* Specifically, states "may, in some cases, eliminate a site as a maintenance receptor if the site is currently measuring clean data" (i.e., the data show the site actually is in attainment of the NAAQS). *Id.* If a state relied on this flexibility, EPA expected the state

---

[3] Tsirigotis, *Analysis of Contribution Thresholds for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions*, at 2 (Aug. 31, 2018), bit.ly/3oGcXUB.

[4] Tsirigotis, *Considerations for Identifying Maintenance Receptors for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions*, at 4 (October 19, 2018), bit.ly/3HfTosR.

to include information showing that (1) "meteorological conditions in the area of the monitoring site were conducive to ozone formation during the period of clean data," (2) "ozone concentrations" (and "ozone precursor emissions") have "been trending downward at the site since 2011," and (3) "emissions are expected to continue to decline in the upwind and downwind states out to the attainment date." *Id.* To assist with that analysis, EPA provided States with data on ozone concentrations for 2011 through 2017 and on temperature conditions during those years (because ozone is formed in warmer conditions). *Id.* at 4-5.

### B. Mississippi submits a state implementation plan in reliance on EPA's guidance.

Mississippi relied on EPA's guidance to develop its state implementation plan. *See* Mississippi 2015 Ozone Infrastructure SIP Prongs 1 and 2, EPA-R04-OAR-2021-0841-0009, bit.ly/3HKMkED ("Mississippi State Plan").

Fulfilling § 7410(a)(2)(D)(i)(I)'s requirement, Mississippi analyzed whether emissions from the State would "contribute significantly to nonattainment in … any other State." EPA's December 2016 Model—the latest model available at the time Mississippi submitted its plan—identified only one potential downwind nonattainment site where Mississippi was projected to contribute more than one percent of the NAAQS: 0.79 ppb to the Deer Park air quality monitor (a "receptor") in Harris County, Texas. *Id.* at 4.

Mississippi considered whether its 0.79 ppb contribution was "significant" under the Good Neighbor provision, ultimately determining that it was not. Mississippi relied on EPA's August 2018 guidance stating that using a 1 ppb threshold would be "reasonable and appropriate." *Id.* at 6. Mississippi further noted that EPA previously set the "Significant Impact Level" for new power plants—*i.e.*, the level at which a new plant may contribute to a state's ozone concentrations and avoid additional complex modeling analysis—at 1 ppb. *Id.* at 5-6. Setting a lower "significant contribution" threshold for the Good Neighbor provision than for new power plants would, Mississippi observed, be an inconsistent use of nearly identical terms. After applying the 1 ppb threshold, Mississippi determined it would not "significantly contribute to the nonattainment of the 2015 Ozone Standard in another state." *Id.* at 5.

Alternatively, Mississippi explained that it would reach the same conclusion whether it used a 1 ppb or 1 percent contribution threshold. Applying the factors and data supplied by EPA in its October 2018 guidance, *see supra* 4-5, Mississippi explained that the Deer Park receptor had been measuring ozone levels less than 70 ppb in 2015, 2016, and 2017, thus showing as "clean" under the 2015 ozone NAAQS, Mississippi State Plan at 7-9. EPA's own data (attached to the October 2018 memo) showed that in two of those years—2015 and 2016—the temperatures had been "above average," and in 2017 the temperatures were "near normal," which means conditions were conducive to ozone formation. *Id.* at 7. EPA's data likewise showed that

ozone concentrations in Deer Park had been trending down, from 83 ppb in 2011 to 68 ppb in 2017. *Id.* at 8. The same was true of ozone and precursor emissions in both Texas and Mississippi generally. *Id.* at 8-9. And due to "national and regional emissions trends" and "current regulations," Mississippi expected precursor emissions "to continue to decline." *Id.* at 9. Thus, regardless of which significant contribution threshold it applied, Mississippi projected that the Deer County receptor would be in attainment with the 2015 NAAQS. *Id.* The Act, therefore, required no further modifications to the suite of robust emissions standards already in effect in Mississippi.

## C. EPA disapproves Mississippi's state plan years after the deadline, based on new modeling and policy preferences.

Because Mississippi submitted its state plan on September 3, 2019, EPA was statutorily required to finalize action on it no later than March 3, 2021. 42 U.S.C. § 7410(k)(1)-(2). But EPA did not even propose to act until February 22, 2022, when it proposed disapproval. 87 Fed. Reg. 9,545 (Feb. 22, 2022).

This delay greatly prejudiced Mississippi. EPA based its proposed disapproval on new modeling and data—a model called "2016v2"—that it developed *after* Mississippi submitted its plan and *well after* the deadline for EPA to approve or disapprove the plan. *Id.* at 9,548. The 2016v2 modeling projected that Mississippi *would not* significantly contribute to nonattainment in the Deer Park receptor in Harris County, Texas—the only receptor EPA's original December 2016 Model had linked to Mississippi. *Id.* at 9,557. Rather, EPA's new modeling anointed three new receptors: Houston

Bayland Park in Harris County, Texas, Manvel Croix Park in Brazoria County, Texas, and Denton Airport in Denton County, Texas. *Id.* EPA's new model projected Mississippi to contribute to those receptors 1.04 ppb, .92 ppb, and 1.14 ppb, respectively.

Beyond this new modeling, EPA also rejected Mississippi's multi-factor analysis and reliance on the "flexibilities" EPA had previously given states. First, EPA refused to honor Mississippi's 1 ppb significant contribution threshold. *Id.* at 9,557. EPA asserted a newfound belief that "allowing for alternative … thresholds may … raise[] substantial policy … concerns," and EPA announced a new preference: a uniform "national ozone transport policy" with a single, "stringent" threshold. *Id.* at 9,551.

EPA likewise rejected Mississippi's elimination of the Deer Park receptor—even though EPA's new modeling agreed that Deer Park would be in attainment in 2023, just as Mississippi had projected. *Id.* at 9,556; *see also 2016v2 DVs State Contributions*, EPA-HQ-OAR-2021-0663-0021 (Feb. 22, 2022), bit.ly/3NjoEo9. EPA argued that Mississippi focused solely on temperature, rather than also considering other "meteorological indicators," when EPA's own data from the October 2018 memo focused solely on temperature variations. 87 Fed. Reg. at 9,556; October 2018 Memo at A-2-3, A-5-22. And despite "acknowledg[ing] the general downward trends" in ozone emissions, EPA argued that its updated modeling (which, again, did not project Deer Park to be in nonattainment, and which EPA relied on for all other

purposes) meant that there was not "sufficient justification to eliminate the Deer Park monitor as a maintenance receptor." 87 Fed. Reg. at 9,556.

On April 6, 2022, before the public comment period on EPA's proposed disapproval of Mississippi's state plan had closed, EPA proposed to subject Mississippi to a federal implementation plan. 87 Fed. Reg. 20,036 (April 6, 2022). Meanwhile, Mississippi submitted comments on EPA's proposed disapproval, pointing out its many defects, including problems with the EPA's new 2016v2 modeling. Comment Submitted by Mississippi Department of Environmental Quality, EPA-R04-OAR-2021-0841-0017 (April 22, 2022), bit.ly/3M588xv.

EPA issued a final rule disapproving Mississippi's plan on February 13, 2023. 88 Fed. Reg. 9,336, 9,357 (Feb. 13, 2023). EPA's Mississippi-specific decision relied entirely on the assessment provided in the February 2022 proposed disapproval. *Id.* at 9,358. In the final rule, EPA announced yet *another* new model (labeled "2016v3"). *Id.* at 9,343. Using that model, EPA concluded, for the first time, that Mississippi would significantly contribute to nonattainment in Galveston, Texas. *2016v3 DVs State Contributions*, EPA-HQ-OAR-2021-0663-0070 (Feb. 13, 2023), bit.ly/44GEDcs. The 2016v3 modeling also projected Mississippi to contribute to Bayland Park in Harris County, Texas, and Denton Airport in Denton County, Texas, at levels over 0.7 ppb but less than 1 ppb. *Id.* But the 2016v3 model now projected that Mississippi would only contribute 0.53 ppb to the Brazoria County receptor

9

and that the old Deer Park receptor would be in attainment with the NAAQS in 2023. *Id.*

To protect against irreparable harm, Petitioners now ask this Court for a stay pending merits review of their challenge.

## STAY STANDARD

In deciding whether to grant a stay, courts consider whether petitioners are "likely to succeed on the merits," if they "will be irreparably injured absent a stay," whether a stay "will substantially injure the other parties interested in the proceeding," and "the public interest." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation and quotations omitted).

## ARGUMENT

### I.  Mississippi Petitioners are likely to succeed on the merits.

"The Clean Air Act permits a reviewing court to invalidate any action taken by EPA that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Texas 2016*, 829 F.3d at 425 (quoting 42 U.S.C. § 7607(d)(9)). Because the Act mandates approval of a state plan that complies with statutory requirements, EPA exceeds its statutory authority if it disapproves a state plan that is based on a state's reasonable interpretation of the Act's state plan provisions and a state's non-arbitrary decisions and policy judgments. *See* Stay Order at 16-17.

Here, EPA unlawfully denied Mississippi's plan based on disagreements over reasonable policy judgments within the statutory framework, like

whether the significant contribution screening threshold should be 0.7 ppb or 1 ppb and whether Mississippi's technical analysis of a downwind site's future ozone projections must discount some factors and account for others. EPA compounded that error by basing its disapproval on new modeling and guidance developed *after* EPA's deadline to complete its review of Mississippi's plan, which both robbed the State of its statutory primacy in crafting an implementation plan and constituted an arbitrary and capricious reason to disapprove the plan. Accordingly, Mississippi Petitioners are likely to succeed on the merits of their challenge to EPA's disapproval of Mississippi's plan.

### A. EPA may not disapprove state plans that comply with the Clean Air Act based on EPA's own policy preferences.

As this Court recently stated, "Congress gave the States 'primary' authority" to formulate their state plans to address interstate pollution. Stay Order at 3 (quoting 42 U.S.C. §§ 7401(a)(3), 7407(a)). Under the statute, "states, not EPA, drive the regulatory process." *Texas 2016*, 829 F.3d at 411. EPA "shall approve" the plan "if it meets all of the applicable requirements" of the Act. 42 U.S.C. § 7410(k)(3). And "[t]he mandatory 'shall' makes it quite clear that the Administrator is not to be concerned with factors other than those specified." *Union Elec. Co.*, 427 U.S. at 257.

Because the Act expressly delegates to states, not EPA, primary authority to develop implementation plans, the State's reasonable implementation of and non-arbitrary judgments with respect to its plan are owed deference.

11

*Texas 2016*, 829 F.3d at 428 ("[T]he Clean Air Act limits EPA to a deferential role" and "EPA must defer" to a state's choices so long as they "comply with the Act."); Stay Order at 16 (rejecting the idea that states must "substantially justify" their analysis to the agency). "EPA may not run roughshod over the procedural prerogatives that the Act has reserved to the states." *Texas v. EPA*, 690 F.3d 670, 675 (5th Cir. 2012) (citation omitted). Such deference to states is necessary given that Congress "left to the States considerable latitude in determining specifically how the [NAAQS] would be met." *Train*, 421 U.S. at 87.

"The great flexibility accorded the states under the Clean Air Act is … illustrated by the sharply contrasting, narrow role to be played by EPA." *Luminant*, 675 F.3d at 921 (citation omitted). EPA "shall approve" a state's plan so long as it is consistent with the statute. *Id.* at 922 (citing 42 U.S.C. § 7410(k)(3)); *see also* Stay Order at 4 (same). The "wide discretion" given to States means that "[t]he Clean Air Act confines EPA's role in implementing air quality standards 'to the ministerial function of reviewing [state plans] for consistency with the Act's requirements.'" *Texas 2016*, 829 F.3d at 411 (citations omitted).

EPA's disapproval of a state plan must thus be strictly limited to circumstances where the plan violates the Clean Air Act's text. *See Luminant*, 675 F.3d at 926 (The Act "leaves the agency no discretion to do anything other than ensure that a state's submission meets the [the Act's] requirements."). EPA "plainly" is "relegated by the Act to a secondary role" where it has "no

authority to question the wisdom of a State's choices." *Train*, 421 U.S. at 79. Neither EPA nor federal courts are permitted "to reject a State's legislative choices in regulating air pollution." *Union Elec. Co.*, 427 U.S. at 269.

### B. EPA unlawfully disapproved Mississippi's plan based on non-statutory factors.

Just like it did with Texas's and Louisiana's state plans, EPA repeatedly "exceeded its 'ministerial' role" in reviewing the specifics of Mississippi's plan. Stay Order at 15.

### 1. EPA improperly required Mississippi to "substantially justify" any deviation from EPA's preferred approach.

Despite promising Mississippi could adopt "alternative approaches" best suited to its particular situation, as is consistent with the Act, EPA ultimately demanded Mississippi justify any divergence from EPA's preferred non-statutory "analytical methods, policy judgments, and interpretation[s]." 88 Fed. Reg. at 9,337-38. EPA's decision to "subject[ Mississippi's] submission[] to a range of factors 'not found in the Act'" was unlawful. Stay Order at 15 (quoting *Texas 2016*, 829 F.3d at 428).

Take Mississippi's decision to use 1 ppb instead of 0.7 ppb (one percent of the 70 ppb NAAQS) as the threshold for analyzing whether in-state emissions are contributing significantly to nonattainment in downwind states. "[T]he text of the [Clean Air Act] does not require EPA to adopt a one-percent threshold." *Id.* at 17 (quoting *Texas v. EPA*, 983 F.3d 826, 839 (5th Cir. 2020)). And "EPA did not promulgate any regulations" defining a threshold

13

either. *Id.* at 5. States are free to adopt reasonable alternative thresholds, as EPA expressly recognized in the August 2018 memo.

Even though Mississippi did not need to "'substantially justif[y]' that decision to the Agency," it did so anyway. *Id.* at 16. For example, it pointed to EPA's determination that new power plants do not significantly impact a state's ability to meet the NAAQS standard so long as they contribute less than 1 ppb. *See* Mississippi State Plan at 5-6. If contributions from new power plants of less than 1 ppb are not significant, linguistic consistency means it must at least be reasonable for Mississippi to conclude the same contributions from existing plants are not significant either. Further, Mississippi relied on EPA's guidance memo, which had already substantially justified the use of a 1 ppb threshold. *See* August 2018 Memo, *supra* n.3, at 4.

Yet EPA rejected Mississippi's use of that threshold, and as this Court has already ruled, that rejection was likely unlawful. Stay Order at 16-17 (EPA likely acted unlawfully when it failed to defer to Louisiana's "application of a higher contribution threshold than 1 percent of the NAAQS" (citation omitted)). EPA freely admitted its disapproval was based on its own "policy consistency and practical implementation concerns." 87 Fed. Reg. at 9,551; *see also id.* (expressing concern about "significant equity and consistency problems among states" if alternative thresholds were allowed); *id.* (arguing that "national ozone transport policy" is undermined by "less stringent thresholds"). EPA's own national policy preferences are unlawful bases on which to disapprove a state's implementation plan—a subject on which

Congress gave to states, not EPA, the policymaking role. *Union Elec. Co.*, 427 U.S. at 269; *see also* Stay Order at 16-17. At the very least, given the substantial justifications provided by Mississippi, in addition to the justifications provided by EPA's earlier guidance, EPA's conclusion was arbitrary and capricious.

EPA's rejection of Mississippi's analysis of the Deer Park receptor was likewise based on factors "nowhere to be found in the Good Neighbor Provision." *Id.* at 15; *see also id.* at 17 (holding that EPA similarly failed to defer to Texas's "definition of maintenance receptors" (citation omitted)). Mississippi's analysis was consistent with EPA's own October 2018 memo, which explained that states had discretion to exclude a downwind receptor showing "clean data" (*i.e.*, in attainment of the NAAQS). *See supra* 4-5. Mississippi explained that meteorological data and emissions trends in Mississippi and Texas confirmed the Deer Park receptor would be in attainment in 2023, and indeed, EPA now projects the same. *See supra* 6-8. EPA's most recent modeling projects that Deer Park will be in attainment in 2023. *See 2016v3 DVs State Contributions, supra*, bit.ly/44GEDcs.

Contrary to its own modeling, EPA claimed Mississippi did not provide "sufficient justification to eliminate the Deer Park monitor as a maintenance receptor." 87 Fed. Reg. at 9,556. This was not based on the text of the Clean Air Act, which offers "no definition of 'maintenance.'" Stay Order at 17 (citing § 7410(a)(2)(D)(i)(I)). Rather, EPA faulted Mississippi for addressing only temperature data (the only meteorological data provided in the October 2018

memo) and not every other possible meteorological factor that could impact ozone formation, as well as for not incorporating data that did not yet exist when Mississippi submitted its plan for public comment. 87 Fed. Reg. at 9,556. EPA also faulted Mississippi for relying on factors EPA wanted to discount, like the overall "downwards trends" in emissions, even though EPA's own new modeling incorporated those same trends. *Id.*

EPA thus exceeded its statutory authority because its rationale for disapproving Mississippi's state plan had nothing to do with the "applicable [statutory] requirements." 42 U.S.C. § 7410(k)(3). Mississippi's plan offered a reasoned explanation for why the State complied with the statutory requirements. EPA simply prefers its policy over Mississippi's. But that "approach inverts the [Clean Air Act] and 'reflects a misapprehension by EPA of its authorized role in the [state plan] approval process.'" Stay Order at 16 (quoting *Luminant*, 675 F.3d at 928 n.8). The Agency does not have statutory authority to reject Mississippi's plan based on its own views about "national ozone transport policy," even if EPA believes its policy can improve the practical implementation and uniformity of ozone regulation. 88 Fed. Reg. at 9,373.

At the very least, EPA acted arbitrarily and capriciously. When EPA issues "guidance and modeling data—like it did in [March, August, and October] 2018—it must take due account of the State's 'serious reliance interests' before 'chang[ing] course.'" Stay Order at 21 (quoting *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020)). EPA's new emphasis on a

16

"national ozone transport policy," 88 Fed. Reg. at 9,373, with no room for the flexibilities it had previously promised States, "move[d] the administrative goalpost" without fair warning or any consideration of Mississippi's reliance interests, Stay Order at 20. As this Court has already ruled, that was likely unlawful.

### 2. EPA unlawfully based its disapproval on new modeling issued after Mississippi's statutory deadline to submit its plan.

Alternatively, EPA relied on new modeling that revealed new "links" between Mississippi and downwind receptors not addressed in Mississippi's plan. But EPA's reliance on modeling unavailable to Mississippi when it submitted its plan only underscores why EPA's disapproval is unlawful.

As this Court has already held, EPA likely acted unlawfully "when it based its disapproval[] in part on policies and modeling data developed *after*" Mississippi had submitted its plan and "*after* the EPA's statutory deadline to act had expired." Stay Order at 18. EPA was statutorily required to act on Mississippi's state plan by March 3, 2021 at the very latest. 42 U.S.C. § 7410(k)(1)-(2). "Instead of rendering a timely decision, the EPA slow-walked … beyond [the Act's] statutory deadline—finally acting on February 13, 2022." Stay Order at 19. And when it finally did act to propose disapproval, EPA "relied upon various significant changes to its modeling data that it adopted long *after* the statutory deadline." *Id.*

This "surprise switcheroo" violated Mississippi's statutory prerogatives. *Id.* at 19-20 (citation omitted). EPA's original December 2016 Model linked Mississippi to one receptor—in Deer Park—and the state plan thus explained why Mississippi emissions would not significantly contribute to nonattainment at that receptor. *See supra* 5-7. But when EPA "ignored its statutory deadline" and "used that extra time to … develop new modeling," Mississippi's unsurprising focus on Deer Park became EPA's basis to disapprove its plan. Stay Order at 21. EPA's new modeling identified new receptors and projected contribution levels, based on new data. *See supra* 7-8. Mississippi had no notice of these new receptors while developing its state plan, much less an opportunity to account for them in the plan. Yet EPA proposed to disapprove Mississippi's plan for failure to address them anyway. *See* 87 Fed. Reg. at 9,557-58. And then it finalized that disapproval based on yet *another* new model that identified yet *another* new set of receptors to which Mississippi will allegedly significantly contribute. *See supra* 9.

That cannot be squared with the Act's "system of cooperative federalism." Stay Order at 21. For States to truly "have broad authority to determine the methods and particular … strategies" they will use to comply with the Clean Air Act, the validity of their plans cannot depend on compliance with EPA's constantly moving *post-hoc* targets. *Id.* at 3 (quoting *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 822 (5th Cir. 2003)). States must act on the best information about their emissions available to them at the time they submit their plans. *See Sierra Club v. EPA*, 356 F.3d 296, 308 (D.C. Cir. 2004). If EPA can

disapprove state plans based on modeling and data developed after its statutory review period has expired, States will *never* be able to guarantee a successful submission, no matter how faithfully they adhere to both the statute and EPA's then-existing guidance and data. "EPA could easily flout the [Act's] deadlines with impunity, then leverage that disregard to summarily reject [plans] based on the States' failure to consider information that only became available after the []submission deadline." Stay Order at 21-22. And that would "transform the EPA's statutory role from that of a 'ministerial' overseer to one of a freewheeling dictatorial regulator." *Id.* at 22.

At the very least, "EPA's decision to consider after-the-statutory deadline information" was arbitrary and capricious. *See id.* at 21. Mississippi relied on the modeling available at its submission deadline—the only data available. Indeed, EPA has a "longstanding policy" of only "requiring states to use the most current emission estimate models available at the time of SIP development."[5] But EPA cast aside that longstanding policy without providing any "good reasons" for changing course, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citation omitted), much less accounting for Mississippi's "serious reliance interests," Stay Order at 21 (citation omitted). Mississippi has thus made a strong showing that EPA's action was unlawful and that it is likely to succeed on the merits.

---

[5] *Approval and Promulgation of Air Quality State Implementation Plans; California; San Joaquin Valley*, 81 Fed. Reg. 59,876, 59,878 n.15 (Aug. 31, 2016).

## II.  The remaining factors also favor a stay.

Absent a stay, Mississippi will suffer irreparable harm. First, "allowing the Final [state plan denial] to stand pending the appeal would disrupt the system of cooperative federalism enshrined in the Clean Air Act." *Id.* at 23 (quoting *Texas 2016*, 829 F.3d at 433). Mississippi will fall under the federal implementation plan EPA plans to publish any day, thus denying the State its "preferred system of emissions controls and reductions." *Id.* at 22; *see also* Exhibit A, Wells Decl. ¶ 24.

Second, "regulated entities," including in Mississippi, have "already commenced compliance efforts or will soon be required to do so" to satisfy the federal plan. Stay Order at 22; *see also* Wells Decl. ¶¶ 24, 37; 87 Fed. Reg. 20,101. To "achieve the unit-by-unit reductions" that EPA requires, Mississippi Power will have to take "immediate action" to either install costly "new NOx controls," buy expensive emissions "allowances from other parties," or "shift[] generation to more expensive units." Exhibit B, Smith Decl. ¶¶ 12-13, 22. Mississippi, too, will have to immediately commence a "time consuming and resource intensive" permitting process as it begins "planning and preparing to permit the new controls associated with the FIP for any affected facilities." Wells Decl. ¶ 37. Indeed, as soon as the FIP becomes effective, Mississippi sources will have to unnecessarily cut emissions from current levels by thousands of tons in 2023 and 2024.  Smith Decl. ¶¶ 11-12 (explaining Mississippi Power will have to buy allowances or cut emissions by 24.6% in 2023).

As with Texas and Louisiana, those aggressive reductions mean regulated entities will "be forced to [incur significant] compliance costs." Stay Order at 23; Smith Decl. ¶¶ 14, 19, 24 (estimating over $700 million in emissions control costs EPA identified for Mississippi Power Company alone). "The costly requirements of the [federal plan]" mean that, rather than implement "economically unfeasible" controls, some power plants in Mississippi will likely "shut[] down operations prematurely," Wells Decl. ¶ 28, or "reduce operation of the plants and units affected," Smith Decl. ¶¶ 12, 22. Those "reductions in power generation will … lead to grid instability." Wells Decl. ¶ 29. That "will strain [Mississippi's] power grid[]," especially because "the [federal plan] will become operative in the middle of the summer 2023 peak load conditions." Stay Order at 23; Wells Decl. ¶ 29; *see also* Smith Decl. ¶¶ 26-29. And these increased "compliance and operational costs" will impact the supply of "affordable, reliable energy." Smith Decl. ¶ 26.

"These harms are undoubtedly irreparable." Stay Order at 23. "[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part).

By contrast, a stay will not harm EPA or the public. *See Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (when a State seeks a stay, "its interest and harm merge with that of the public"). "[T]he EPA's multi-year delay in disapproving [Mississippi's state plan] undercuts any claim that time is of the essence." Stay Order at 24. Plus, emissions in Texas and

Mississippi have been on a "downward trend." Wells Decl. ¶ 42. And given "the public's interest in ready access to … a steady supply of electricity during the summer months," a stay is more than warranted. Stay Order at 24 (citations omitted).

## CONCLUSION

The Court should stay, pending review, EPA's disapproval of Mississippi's state implementation plan.

Respectfully submitted,

/s/ C. Grady Moore III

**C. Grady Moore III**
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
(205) 251-8100
gmoore@balch.com

**Bradley A. Ennis**
**Susan Scaggs Stutts**
BALCH & BINGHAM LLP
1310 25th Avenue
Gulfport, MS 39501
(228) 864-9900

**Shawn S. Shurden**
*General Counsel*
MISSISSIPPI POWER COMPANY
2992 West Beach Boulevard
Gulfport, MS 39502

/s/ Justin L. Matheny

**Lynn Fitch**
 *Attorney General of Mississippi*
**Whitney H. Lipscomb**
 *Deputy Attorney General*
**Justin L. Matheny**
 *Deputy Solicitor General*
STATE OF MISSISSIPPI OFFICE OF THE
ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

**Mithun Mansinghani**
LEHOTSKY KELLER COHN LLP
629 W. Main St.
Oklahoma City, OK 73102
mithun@lkcfirm.com
(512) 693-8350

(228) 229-0915

*Counsel for Mississippi Power Company*

**Michael B. Schon**
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave NW
Washington, DC 20001
mike@lkcfirm.com
(512) 693-8350

*Counsel for State of Mississippi and Mississippi Department of Environmental Quality*

## CERTIFICATE OF CONFERENCE

Counsel for Mississippi Petitioners conferred with counsel for all other parties. The Respondents oppose the motion. The other Petitioners take no position.

/s/ Justin L. Matheny

Justin L. Matheny

### CERTIFICATE OF SERVICE

On May 11, 2023, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ *Justin L. Matheny*
Justin L. Matheny

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,178 words, excluding the parts of the motion exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Justin L. Matheny*
Justin L. Matheny