# Exhibit B

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | |
|---|---|
| STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; ENTERGY LOUISIANA, L.L.C.; LOUISIANA CHEMICAL ASSOCIATION; MID-CONTINENT OIL AND GAS ASSOCIATION; LOUISIANA ELECTRIC UTILITY ENVIRONMENTAL GROUP, L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP, <br><br>Petitioners, <br><br>v. <br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency, <br><br>Respondents. | No. 23-60069 |

**DECLARATION OF MICHAEL SMITH**

1. My name is Michael Smith, I am the Vice President and Senior Production Officer at Mississippi Power Company. As the Vice President and Senior Production Officer, I am responsible for all Mississippi Power Company generating plants. I am providing this declaration

in support of the State of Mississippi and the Mississippi Power Company's ("MPC") Joint Motion to stay the U.S. Environmental Protection Agency's (EPA) disapproval of Mississippi's interstate transport state implementation plan (SIP) for the 2015 ozone National Ambient Air Quality Standards (NAAQS), which is causing irreparable harm to MPC's operations, as described below. This declaration is based on my personal knowledge of facts and analysis conducted by me and my staff.

2.   I graduated from Auburn University in 1990 with a bachelor's degree in electrical engineering. I began working as an engineer in the Power Generation Engineering department at Gulf Power Company in Pensacola, Florida. After this initial assignment, I worked in several engineering and team leader roles at Gulf Power's Plant Smith. In 2004, I was named the Operations and Maintenance Manager of Mississippi Power's Chevron Cogenerating Plant. Subsequently, in 2006 I was named the Plant Manager of Mississippi Power's Chevron Cogenerating Plant. In 2008, I was named the Planning and Engineering Manager at Georgia Power's Plant Branch. In 2010, I was named the Maintenance Manager of Georgia Power's Plant Scherer. In 2014, I was named Plant Manager of Gulf Power's Plants Smith and Scholz. In 2018, I was named the General Manager of Power Generation for Gulf Power Company. In 2019, I was named the Plant Manager of Mississippi Power's Plant Daniel. In 2022, I was elected by the Mississippi Power Company Board of Directors as the Vice President of Generation and Senior Production Officer. In that capacity, I am responsible for all Mississippi Power generating plants.

### MPC'S OPERATIONS IN THE STATE OF MISSISSIPPI

3.   MPC is a wholly-owned subsidiary of Southern Company, serving the southeastern portion of Mississippi. MPC delivers 191,000 customers safe, reliable, and affordable electricity service generated from a full portfolio of energy resources, comprising solar, fossil, nuclear, and hydro-electric generation plants.

4. MPC is a vertically integrated, regulated utility that not only produces electricity but also ensures the safe, reliable, and affordable transmission and distribution of that electricity to our customers.

5. MPC owns and/or operates over 3,500 megawatts of installed generation capacity in Mississippi. MPC employs approximately 995 full-time employees. MPC spends approximately $1.12 billion annually in the form of taxes, fuel, maintenance, and other operating and capital expenditures, and its impact on gross state product and gross domestic product is substantial.

## MISSISSIPPI'S SIP TO ADDRESS THE 2015 OZONE NAAQS

6. In October 2015, EPA revised the primary and secondary ozone NAAQS to establish a new 8-hour standard of 70 parts per billion (ppb). Under the Clean Air Act, the State of Mississippi was required to submit a revised SIP to address the 2015 ozone NAAQS. As part of this obligation, Mississippi was required to ensure that its SIP contained adequate provisions to prohibit nitrogen oxides (NOx) emitted from facilities in Mississippi from contributing significantly to nonattainment in, or interference with maintenance by, any other state with respect to the revised NAAQS. This is commonly referred to as the "good neighbor" provision. Mississippi submitted a SIP revision to address its "good neighbor" obligation for the 2015 ozone NAAQS to EPA on September 3, 2019.

7. To support Mississippi's SIP revision, Mississippi conducted a multi-factor analysis and found that Mississippi sources do not significantly contribute to nonattainment in, or interfere with maintenance by, any other state of the 2015 ozone standard. Accordingly, Mississippi's SIP submittal did not require any further reductions in $NO_X$ emissions from sources in Mississippi. However, sources in Mississippi would continue to be subject to various $NO_X$ limits, including

EPA's Cross-State Air Pollution Rule ozone season $NO_X$ Group 2 Trading Program and associated budget.

8. EPA was required to take *final action* to approve or disapprove Mississippi's SIP within 18 months of receipt of Mississippi's complete SIP revision. EPA did not meet that statutory deadline, publishing its proposed disapproval of Mississippi's SIP on February 22, 2022. Despite Mississippi's legally and technically defensible SIP addressing the interstate transport requirements for the 2015 ozone NAAQS, EPA explained that new modeling, not available at the time Mississippi's SIP was submitted, suggested emissions from Mississippi could affect ozone concentrations in Texas. On February 13, 2023, EPA finalized its disapproval of Mississippi's SIP. If EPA had approved Mississippi's SIP, sources in Mississippi would continue to be subject to their existing $NO_X$ limitations but no additional reductions would be required. Instead, because EPA has disapproved Mississippi's SIP, EPA's Federal Implementation Plan (FIP), which was signed on March 15, 2023, applies to Mississippi.

## EPA'S FIP FOR MISSISSIPPI

9. Prior to issuing its final disapproval of Mississippi's SIP, EPA proposed a FIP to address the State's "good neighbor" obligation. EPA has now signed its final FIP, and that FIP moves sources in the State of Mississippi from the existing ozone season $NO_X$ Group 2 Trading Program into the Group 3 Trading Program. Under the Group 3 Trading Program, EPA has established initial budgets for the 2023 ozone season which began May 1, 2023, and EPA will implement further reductions in 2024 and the following years. Under the FIP, each MPC unit must hold allowances equal to its ozone season $NO_X$ emissions. The Group 3 state emissions budgets will be cut beginning in 2023. The overall Group 3 budget for 2023 is 208,119 tons, and by 2026 the budget will be reduced to 151,329 tons.

10. EPA's new Group 3 budget for the State of Mississippi represents a significant reduction from Mississippi's actual ozone season emissions in 2022. In addition to this restriction, EPA's FIP differs in key respects from the suite of current requirements applicable to electric generating units (EGUs) in Mississippi. Specifically, EPA's FIP includes unit-specific backstop daily emission rates, a self-ratcheting allowance budget updating process known as "Dynamic Budgeting," secondary emission limits, and an annual cap on banked allowances. Additionally, currently banked Group 2 allowances held by MPC and other Mississippi generators will be "converted" to Group 3 allowances at a currently unknown discount ratio, resulting in a significant reduction in the allowance banks held by operators. EPA suggests the cut will invalidate 85% of banked allowances. These features phase in over time, but will further limit MPC operations and, particularly the cuts in and caps on banking, will require MPC to begin planning now for compliance during and beyond the 2023 ozone season budget.

**EPA'S DISAPPROVAL OF MISSISSIPPI'S SIP IS CAUSING IMMEDIATE AND IRREPARABLE HARM TO MISSISSIPPI POWER**

11. Under EPA's FIP, which Mississippi will be subject to because of EPA's disapproval of Mississippi's SIP, MPC will be allocated 24.6% fewer allowances in 2023 than is necessary in order for MPC to simply continue operating as it has in recent years. And MPC's shortfall will continue to grow in 2024, 2025, and beyond.

12. A summary of the allowance allocations for MPC as a whole and for certain specific units compared to the actual emissions of those units is provided in the tables below.

**MPC Fleet-Wide Actual Emissions and Upcoming Allocations**

| Actual Emissions 2022 | Pro-Rated Allocation 2023 | Shortfall | Allocation 2024 | Shortfall | Allocation 2025 | Shortfall |
|---|---|---|---|---|---|---|
| 4,366.8 | 3,317 | 1,050 | 2,371 | 1,996 | 2,366 | 2,001 |

**MPC Plant Daniel Units 1 and 2 Actual Emissions and Upcoming Allocations**

| Actual Emissions 2022 | Pro-Rated Allocation 2023 | Shortfall | Allocation 2024 | Shortfall | Allocation 2025 | Shortfall |
|---|---|---|---|---|---|---|
| 2,392.9 | 1,755 | 638 | 1,381 | 1,012 | 1,378 | 1,015 |

Given these shortfalls in allowance allocations, MPC has three options in order to ensure compliance under the Group 3 Trading Program: cut emission rates by installing the new $NO_X$ controls such as those EPA envisions in the FIP (which cannot be accomplished in time to address the 2023 or 2024 ozone season shortfalls); buy additional allowances from other parties if available; or shift generation away from affected units to other, higher-cost units. Each of these options requires planning and decision-making beginning now. Indeed, as a result of EPA's SIP disapproval, MPC is harmed because it has already been required to commit resources to understand the implications of EPA's new obligations for Mississippi and to take immediate planning and decision-making steps, including training plant personnel to ensure compliance with EPA's FIP. Regardless, as detailed below each of the possible compliance options will impose economic harm on MPC.

**Install Costly New Controls**

13. Further reducing MPC's $NO_X$ emission rates requires investment in new or upgraded controls. EPA asserts that reductions in emission rates are possible through the installation of new controls at MPC units, and EPA is clear that sources must immediately begin to take steps in order to install such controls in a timely manner. In fact, in its FIP, EPA said that based on the timing of its proposed FIP and the final FIP, source owners "should begin engineering and financial planning… to be prepared to meet this implementation timetable." *See* Final FIP signed March 15, 2023. If EPA's disapproval of Mississippi's SIP is not stayed, MPC must continue taking steps to

ensure compliance with the reduced allocations identified by EPA for the 2023 and 2024 ozone seasons and beyond. The timelines for the installation of emission controls and the infeasibility of those timelines discussed in the Texas Industry Petitioners' Declarations aligns with MPC's own assessment of this option: immediate action must be taken in order to achieve the unit-by-unit reductions in emission rates that EPA identifies in the FIP, and even with immediate action, EPA's projections may still be infeasible. *See* Doc. 32-2 at 353, 362-63, 379-82.

14. EPA has identified several specific MPC units that should undergo improvements to reduce emission rates to the levels EPA used to generate its Group 3 budgets for Mississippi. Specifically, EPA has identified the following improvements at MPC units: SCR retrofits at Plant Daniel Units 1 and 2, and Plant Watson Unit 5 and installation of "state of the art combustion controls" at Plant Daniel Units 1 and 2. *See* EPA, *Appendix A: Final Rule State Emissions Budget Calculations and Engineering Analytics*, Tab Unit 2023, Cells 1776AM, 1776AP, 1777AP, 1814AP. According to information provided by my staff and information contained in EPA's FIP, these improvements would cost MPC over $700 million. And EPA says MPC would have to begin work to design, procure and install these controls now.

**EPA Proposed Controls for MPC Units**

| Unit | Control Type | Install Date | Estimated Cost to Install Control |
|---|---|---|---|
| Daniel Units 1 and 2 | SOA CC | 2024 | $3,828,000 (total for Units 1 and 2) |
| Daniel Units 1 and 2 | SCR | 2026 | $406,000,000 (total for Units 1 and 2) |
| Watson Unit 5 | SCR | 2026 | $300,000,000 |

7

**Buy More Allowances**

15.     Alternatively, or in combination, MPC could try to purchase more allowances from other parties to cover the shortfall caused by EPA's FIP. However, this option could be difficult and costly.

16.     First, the Group 3 state emissions budgets for all Group 3 states in 2023 will be cut by 16.2% from the budgets those states had in 2022.[1] By 2026 the budget for those states will be reduced to 139,871 tons—a decrease of 36.4% from the 2022 emissions budgets.[2] EPA calculates these reductions based largely on the installation of additional controls, but it is not clear that these controls can all be installed. *See* Doc. 32-2 at 353, 362. As a result, sufficient allowances needed to close any shortfall may not be available.

17.     Further, even if allowances are available, Group 3 allowances will be expensive. For example, in August 2022, Group 3 allowances traded as high as $50,000, in part due to uncertainty over EPA's rulemaking. Such uncertainty and volatility is likely to continue, as scarcity of allowances increases under stricter budgets.

18.     Before EPA proposed to disapprove Mississippi's SIP or proposed its FIP, MPC was part of the Group 2 program and Group 2 allowances traded at approximately $250 each prior to EPA's FIP proposal. Under EPA's FIP, MPC would become part of the Group 3 Program, and Group 3 allowances have traded between $12,500 and $15,000 during the last month, but were as high as $50,000 in 2022. Therefore, if MPC units seek to comply with the new FIP by acquiring additional allowances rather than undertaking costly installation of controls, *if allowances are even available*

---

[1] This calculation excludes from the 2023 budget Minnesota, Nevada, and Utah, which were not included in the program prior to 2023.

[2] This calculation excludes from the 2026 budget Minnesota, Nevada, and Utah, which were not included in EPA's preset state emissions budgets prior to 2023.

*in the market*, MPC's units will be required to buy allowances at a significantly higher cost as compared to the Group 2 allowances MPC might have sought to obtain in the absence of the instant SIP disapproval and corresponding FIP.

19. Based on MPC's actual emissions from 2022, the cost to acquire the allowances needed to make up the shortfall between actual emissions and MPC's allocation for the 2023 ozone season at a price of $12,500 per allowance for example, would be over $13 million and the cost to acquire allowances to make up the shortfall for the 2024 ozone season would be another almost $25 million.

20. Similarly, MPC, as operator of Plant Daniel, would have to acquire and surrender to EPA 649 allowances beyond its allocation for the current 2023 ozone season at an estimated cost of over $8 million in order to have enough allowances to operate Plant Daniel as it has operated recently.

21. If allowances are available to purchase, costs will be high, and MPC would not be reimbursed for the costs of purchased allowances by EPA if the disapproval of Mississippi's SIP is reversed. But it is not certain that allowances will even be available. MPC is concerned that the tighter state budgets, which reduce compliance options for all Group 3 parties, plus the reduction of existing Group 2 allowance banks through their conversion to Group 3 allowances, and the FIP's future recalibrations (*i.e.*, caps) of banked Group 3 allowances, will likely create liquidity issues with procuring Group 3 allowances at any price. The reduction of supply will disincentivize allowance trading because utilities will want operational assurance in the future. As a consequence, MPC may not be not in a position to rely solely on the availability of allowances to manage its shortfalls.

**Dispatch Different Units**

22. Instead of continuing work now to install expensive additional controls, or purchasing costly allowances for its 2023 operations, or in combination with these options, MPC could reduce operation of the plants and units affected by EPA's FIP and shift that generation to more expensive units in their place in order to meet electricity demand. However, dispatching different replacement units, or purchasing replacement power, also comes at a significant, irreversible added cost.

23. Southern Company's operating companies, including MPC's fleet, operate as one integrated system, known as the "Pool." The Pool is operated to achieve the highest practicable reliability of service, minimize production costs, and optimize generation assets. Accordingly, each generating unit in the Pool is dispatched economically in order of lowest marginal cost (taking into consideration fuel, O&M costs, and other factors such as allowance costs), subject to any operating limitations. Changes in environmental price signals like $NO_X$ emission allowances necessarily impact marginal cost and, therefore, a unit's ranking for economic dispatch. Units that will be subject to new Group 3 allowance prices under the FIP will see an overall increase in marginal cost, necessarily increasing their position in the dispatch stack compared to other units in the Pool not subject to Group 3 allowance prices (*e.g.*, units located in Georgia). These differences in emissions related price signals amongst units will impact how often and long each unit will run. Importantly, because the Pool is already optimized to dispatch units in the most economic manner possible, any change to that optimization will automatically be less economic and will cost more to meet demand. The impact of the FIP on these production costs is significant. Prior to the stay issued by the Fifth Circuit as to Texas and Louisiana's SIP disapprovals, Group 3 allowances cost over 5000%, or 50 times more than the pre-proposal Group 2 allowances. For

context, the Southern Company Pool will make dispatch changes to account for any impact on unit marginal costs on the order of one dollar per MWh. An allowance price of $15,000 would represent an increase of approximately 14 dollars per MWh at Plant Daniel. These increased costs will lead to significant changes in dispatching and increased reliance on more expensive resources to meet load.

24. MPC is already spending time and resources evaluating and calculating these impacts, which is, itself, additional irreversible harm imposed upon MPC as a result of being subject to EPA's FIP. Southern Company Services and MPC Generation Planning groups have begun initial analyses which have shown that backing down MPC's low-cost units and shifting generation to other, more expensive resources in 2023 alone would cost the Pool approximately $16-18 million and would cost MPC between $5 and 10 million.

25. Notably, despite the delay in the implementation of portions of the FIP until after the start of the ozone season on May 1, MPC must already begin accounting for the mismatch in current marginal pricing as compared to actual replacement cost of a Group 3 allowance. This means that the impacts to MPC's economic dispatch choices have already begun. Regardless, because unit production costs will be different under Group 2 pricing, as compared to Group 3 pricing, units will still be dispatched prior to the effective date in a manner that does not match the actual costs to those units. If Group 3 prices return to the high levels seen in 2022, this disparity could be even more significant and, again, is a cost that cannot be recouped from EPA if EPA's disapproval of the SIP is ultimately overturned. This is true despite EPA's effort to "pro-rate" state budgets for 2023 because EPA is pro-rating only the overall state budget and not individual unit allocations.

**Reliability and Other Impacts**

26. As explained above, no matter what MPC does to comply with EPA's FIP in 2023 and beyond, MPC will be forced to take measures that will increase the company's compliance and operational costs and potentially impact its ability to supply affordable, reliable energy to its customers. These added costs could place upward pressure on rates for customers.

27. Moreover, EPA's FIP will interfere with MPC's prior planning and decisions intended to ensure compliance with the existing Group 2 Trading Program. As part of its efforts to manage emissions and in order to assure future operational flexibility, MPC had been able to develop a bank of allowances through over-compliance, which would have enabled MPC to comply with future compliance periods under the Group 2 Trading Program even if generation needs exceed projections. This bank of allowances was made possible by investments and operational decisions that were previously supported by rate payers in Mississippi. EPA's decision to take away approximately 85% of MPC's bank severely undercuts the ability of MPC to rely on that bank to provide operational flexibility in 2023, 2024, and beyond.

28. This impact on operational flexibility has consequences. According to our Transmission Planning and Power Delivery Operations departments, MPC's current transmission expansion plan was not developed to accommodate a loss in operating flexibility of certain MPC units in 2023 or 2024. Therefore, significant transmission impacts are anticipated. There will be increased reliability risk to MPC's bulk electric system due to a lack of coastal generation availability options, which could lead to load shedding if MPC units on the coast are unable to generate enough power to meet customer demand. Additionally, MPC will have an increased likelihood of transmission thermal constraints due to the unavailability of generation from MPC's coastal units. We also anticipate significant changes in transmission flows due to changes in dispatch and

availability of units in the neighboring states of Louisiana and Arkansas, which may cause additional thermal constraints to MPC's system and thereby further increase the risk of load shed.

29. Therefore, MPC must take steps now to comply with near-term and long-term obligations under EPA's FIP, and sources in Mississippi would not be subject to these requirements but for EPA's disapproval of Mississippi's SIP. Even if the disapproval of Mississippi's SIP is ultimately overturned, MPC faces immediate and irreparable harm, as MPC will have undertaken significant compliance efforts and incurred costs that cannot be unwound if EPA's action is overturned.

I, Michael Smith, declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of May, 2023.

*Michael Smith*
Michael Smith
Vice President and Senior Production Officer
Mississippi Power Company