No. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

STATE OF TEXAS, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' RESPONSE IN OPPOSITION TO MISSISSIPPI
PEITITIONERS' JOINT MOTION TO STAY**

———————————

TODD KIM
*Assistant Attorney General*

*Of Counsel:*
ROSEMARY HAMBRIGHT KABAN          JIN HYUNG LEE
DANIEL P. SCHRAMM                 SARAH IZFAR
  *Office of the General Counsel*        *U.S. Department of Justice*
  *U.S. Environmental Protection*       *Environment and Natural Resources*
    *Agency*                              *Division*
  *Washington, DC*                     *P.O. Box 7611*
                                  *Washington D.C. 20044-7611*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

STATE OF TEXAS, et al.,

    Petitioners,

       v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

    Respondents.

No. 23-60069

**CERTIFICATE OF INTERESTED PERSONS**

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Respondents, as

governmental parties, need not furnish a certificate of interested persons.


Date: May 30, 2023

                 */s/ Sarah Izfar*
                 Jin Hyung Lee
                 Sarah Izfar
                 U.S. Department of Justice
                 Environment & Natural Resources
                 Division
                 Environmental Defense Section
                 P.O. Box 7611
                 Washington, D.C. 20044
                 (202) 305-0490
                 Sarah.izfar@usdoj.gov

                 *Counsel for Respondents*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................2

    I.    Statutory Background.............................................................2

    II.   Factual Background................................................................3

        A.    Implementation of the Good Neighbor Provision .....................3

        B.    2015 NAAQS and Mississippi's SIP Submission .....................6

        C.    EPA's Disapproval of Mississippi's Submission ......................7

        D.    EPA's FIP ...................................................................9

    III.   Procedural Background ........................................................10

ARGUMENT .........................................................................................11

    I.    Mississippi Is Unlikely to Succeed on the Merits................................11

        A.    EPA Acted Within Its Statutory Oversight Role. .....................12

        B.    EPA Reasonably Determined Mississippi's Submission
            Failed to Comply with the Good Neighbor Provision. .............14

        C.    EPA Reasonably Evaluated SIP Submissions Using the
            Most Accurate Data. ................................................................18

    II.   Mississippi Has Not Shown Irreparable Harm Absent a Stay. ...........21

    III.   The Balance of Equities and Public Interest Disfavor a Stay. ............24

CONCLUSION ......................................................................................25

CERTIFICATES OF COMPLIANCE.......................................................................26

CERTIFICATE OF SERVICE ..............................................................................27

# TABLE OF AUTHORITIES

## CASES

*BCCA Appeal Grp. v. EPA*,
   355 F.3d 817 (5th Cir. 2003) .................................................................12, 13, 14

*EPA v. EME Homer City Generation, L.P.*,
   572 U.S. 489 (2014)...................................................................................3, 5, 12

*Gen. Motors Corp. v. United States*,
   496 U.S. 530 (1990)...........................................................................................2

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007)..........................................................................................20

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ..........................................................................21

*Luminant Generation Co. LLC v. EPA*,
   714 F.3d 841 (5th Cir. 2013) .................................................................13, 14, 18

*Maryland v. EPA*,
   958 F.3d 1185 (D.C. Cir. 2020) .........................................................................4

*Midwest Ozone Grp. v. EPA*,
   61 F.4th 187 (D.C. Cir. 2023).............................................................................5

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)............................................................................................11

*Nken v. Holder*,
   556 U.S. 418 (2009)..........................................................................................11

*Ruckelshaus v. Monsanto Co.*,
   463 U.S. 1315 (1983)........................................................................................21

*Sampson v. Murray*,
   415 U.S. 61 (1974)............................................................................................22

*Sierra Club v. EPA*,
356 F.3d 296 (D.C. Cir. 2004) .................................................................19

*Sierra Club v. EPA*,
671 F.3d 955 (9th Cir. 2012) .................................................................19

*Sierra Club v. EPA*,
939 F.3d 649 (5th Cir. 2019) ............................................11, 12, 14, 18

*Sierra Club v. EPA*,
972 F.3d 290 (3d Cir. 2020).................................................................14

*Texas v. EPA*,
829 F.3d 405 (5th Cir. 2016) ................................................................11

*United States v. Transocean Deepwater Drilling, Inc.*, 537
F. App'x 358 (5th Cir. 2013) ...........................................................20, 21

*U.S. Navy Seals 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) .................................................................21

*Westar Energy, Inc. v. EPA*,
Nos. 11-1333, 12-1019, 2015 WL 4067382 (D.C. Cir. 2015)........................5, 14

*Winter v. NRDC*,
555 U.S. 7 (2008)................................................................................23

*Wisconsin v. EPA*,
938 F.3d 303 (D.C. Cir. 2019) ...........................................4, 5, 6, 18, 25

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ..............................................................20

## STATUTES

5 U.S.C. §§ 701-06...............................................................................11

42 U.S.C. § 7401(b)(1)............................................................................2

42 U.S.C. §§ 7407-09 ...............................................................................2

42 U.S.C. § 7410(a) ..................................................................................3

42 U.S.C. § 7410(a)(1)............................................................................24

42 U.S.C. § 7410(a)(2)(A) ...............................................................12, 13

42 U.S.C. § 7410(a)(2)(D)(i)(I) .......................... 1, 3, 4, 5, 12, 13, 16, 20

42 U.S.C. § 7410(c)(1).........................................................................3, 9

42 U.S.C. § 7410(k)(3)..........................................................3, 5, 12, 13

42 U.S.C. §§ 7501-15 ..............................................................................3

42 U.S.C. § 7502(c)(3)...........................................................................19

42 U.S.C. § 7511(a)(1)............................................................................4

42 U.S.C. § 7604(a)(2) ..........................................................................18

42 U.S.C. § 7607(b)(1)...........................................................................22

## FEDERAL REGISTER

63 Fed. Reg. 57356 (Oct. 27, 1998)..........................................................5

80 Fed. Reg. 65292 (Oct. 26, 2015)..........................................................5

81 Fed. Reg. 53284 (Aug. 12, 2016) .......................................................18

81 Fed. Reg. 59876 (Aug. 31, 2016) ..................................................18, 19

81 Fed. Reg. 74504 (Oct. 26, 2016)........................................................18

84 Fed. Reg. 24712 (May 29, 2019) ........................................................13

85 Fed. Reg. 12232 (Mar. 2, 2020) ............................................................16

86 Fed. Reg. 43960 (Aug. 11, 2021) .........................................................13

86 Fed. Reg. 67329 (Nov. 26, 2021) .........................................................19

87 Fed. Reg. 9545 (Feb. 22, 2022) .............................................8, 15, 16, 17, 19, 20

87 Fed. Reg. 60897 (Oct. 7, 2022) ..............................................................3

88 Fed. Reg. 9336 (Feb. 13, 2023) ..... 1, 5, 7, 8, 9, 12, 14, 15, 16, 17, 18, 19, 20, 21

## INTRODUCTION

Under the Clean Air Act's ("Act") "Good Neighbor Provision," 42 U.S.C. § 7410(a)(2)(D)(i)(I), states must ensure that their emissions do not significantly contribute to other states' air quality problems.  In 2015, EPA revised national air quality standards for ozone, which required states to prepare plans to attain and maintain the new standards, including Good Neighbor requirements.  Numerous states, including Mississippi, submitted plans for EPA's review that proposed *no* emissions reductions to address pollution in downwind states.  Upon careful evaluation, EPA disapproved 21 submissions for not adequately addressing their Good Neighbor obligations.  88 Fed. Reg. 9336, 9338 (Feb. 13, 2023) ("Final Rule") (Ex. 1).

Mississippi-based Petitioners' ("Mississippi") stay motion relies primarily on this Court's non-binding and state-specific order staying the Final Rule as to Texas and Louisiana.  That order (with which EPA disagrees) does not support Mississippi's belated request for such extraordinary relief.  Not only did EPA disapprove Mississippi's plan for reasons not addressed by the order, but Mississippi does not independently establish irreparable harm absent a stay.

First, Mississippi's challenge is unlikely to succeed because the record supports EPA's disapproval and should be upheld under the Administrative Procedure Act ("APA") standard of review.  Mississippi relied on EPA's

modeling, which consistently showed that Mississippi's emissions contribute to downwind ozone pollution. Under the Act, Mississippi should have analyzed whether those emissions contributions were significant.

Second, Mississippi has established no irreparable harm from the Final Rule—which does not require Mississippi to do *anything*—or from the federal plan that EPA must promulgate, which once effective will impose minimal compliance burdens for Mississippi sources before this litigation is resolved.

Third, the balance of equities and the public interest disfavor a stay, which would hamstring EPA's ability to address Mississippi's harmful emissions while litigation proceeds, leaving those downwind to suffer worse air quality and increased regulatory burdens.

## BACKGROUND

### I. Statutory Background

The Act seeks "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare," 42 U.S.C. § 7401(b)(1), and to control air pollution through a system of shared federal and state responsibility, *see Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). The Act directs EPA to establish and revise National Ambient Air Quality Standards ("NAAQS"), limiting the concentration of certain pollutants in the ambient air. 42 U.S.C. §§ 7407-09.

Once EPA sets NAAQS, states must propose state implementation plans ("SIPs") to implement and enforce the NAAQS. 42 U.S.C. § 7410(a). Under the Good Neighbor Provision, SIPs must contain "adequate provisions . . . prohibiting emissions activity . . . which will . . . contribute significantly to nonattainment in, or interfere with maintenance" of the NAAQS in downwind states. *Id.* § 7410(a)(2)(D)(i)(I).

The Act requires EPA to review states' submissions for compliance with the Act, including the Good Neighbor Provision. *Id.* § 7410(k)(3). If EPA disapproves a SIP, it must promulgate a federal implementation plan ("FIP"). *Id.* § 7410(c)(1).

Areas that do not attain the NAAQS ("nonattainment areas") are subject to attainment deadlines; failure to meet those deadlines leads to reclassification and increasingly stringent emissions-reduction requirements. 42 U.S.C. §§ 7501-15; *see* 87 Fed. Reg. 60897 (Oct. 7, 2022) (reclassifying Houston-Galveston-Brazoria nonattainment area to "Moderate" for failure to timely attain 2015 ozone NAAQS).

## II.    Factual Background

### A.    Implementation of the Good Neighbor Provision

Ozone and its precursors travel great distances, and many states have problems attaining and maintaining ozone NAAQS due to emissions from other states. *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 496-97 (2014).

The Good Neighbor Provision holds states that significantly contribute to another's pollution problem to their fair share, so that downwind states do not bear the regulatory compliance burden alone. *Wisconsin v. EPA*, 938 F.3d 303, 314 (D.C. Cir. 2019). The Provision is implemented "consistent with" the rest of the Act, including the obligation to act "as expeditiously as practicable" and no later than the statutory attainment date. 42 U.S.C. § 7511(a)(1); *Maryland v. EPA*, 958 F.3d 1185, 1203-04 (D.C. Cir. 2020).

Decades ago, EPA developed a 4-step framework that gives meaning to each critical term in the Provision to implement the Good Neighbor Provision for ozone. Response to Comments ("RTC") at 431, Ex. 2. Under that framework, EPA or a state, if it chooses, would: (1) identify downwind "nonattainment" and "maintenance" receptors (*i.e.*, monitoring sites that "will" not attain the NAAQS or struggle to maintain the NAAQS in a future year), *Wisconsin*, 938 F.3d at 325; (2) quantify upwind "contrib[utions]" to those downwind receptors by analyzing "emissions," *id*. at 311; (3) evaluate the amount of "contribut[ion]" that is "significant[]" or "interfere[s]" with "maintenance" through a multifactor analysis, including cost-effectiveness, *id*. at 322-23; and (4) ensure the plan contains adequate provisions "prohibiting" significant emissions, *id*. at 311. *See also* 42 U.S.C. § 7410(a)(2)(D)(i), quoted throughout *Wisconsin*). For Step 2, EPA has consistently determined an upwind state is linked to a receptor, and subject to

4

further analysis, at Step 3, if its emissions contribute an amount of 1% or more of the NAAQS (0.70 parts per billion ("ppb") for the 2015 NAAQS) to that receptor. *Wisconsin*, 938 F.3d at 311.

EPA has applied this general framework for decades,[1] and courts, including the Supreme Court, have consistently upheld the framework as "permissible, workable, and equitable." *EME Homer*, 572 U.S. at 524; *see also*, *Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 189 n.1 (D.C. Cir. 2023); *Westar Energy, Inc. v. EPA*, Nos. 11-1333, 12-1019, 2015 WL 4067382, *3-4 (D.C. Cir. 2015).

While many states, including Mississippi, largely follow this framework, EPA does not require states to do so. Regardless of the approach states take, the Act obligates EPA to independently evaluate whether a submission contains "adequate provisions" to comply with the Good Neighbor Provision. 42 U.S.C. §§ 7410(a)(2)(D)(i)(I); 7410(k)(3). Because many small upwind contributions combine to generate downwind ozone problems, EPA applies "a consistent set of policy judgments across all states" and evaluates alternative approaches to ensure consistency and equity. Final Rule at 9338-40, 9342.

---

[1] *See, e.g.*, 63 Fed. Reg. 57,356 (Oct. 27, 1998); Final Rule at 9338, 9361 n.246 (listing prior rulemakings).

## B.    2015 NAAQS and Mississippi's SIP Submission

In 2015, EPA strengthened the ozone NAAQS, 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 NAAQS") to 70 ppb, which required each state to submit a plan to meet its Good Neighbor obligations "as expeditiously as practicable." *See Wisconsin*, 938 F.3d at 313-20.

In March, August, and October of 2018, EPA issued three memoranda to provide modeling results and other information that could aid states in developing their plans ("2018 Memoranda"). *See* Exs. 3, 4, 5. Each memorandum stated that final determinations regarding states' obligations would go through later notice-and-comment rulemaking based on relevant facts and circumstances. *See, e.g.*, October Memo 1-2.

Mississippi filed its Good Neighbor submission on September 3, 2019. *See* Ex. 6 ("Submission"). Mississippi applied Steps 1 and 2 of EPA's 4-step framework and declined to proceed to Steps 3 and 4, concluding that, by the year 2023, it would not significantly contribute to nonattainment or interfere with maintenance of the NAAQS in downwind states. *Id*. at 3-9.

Mississippi used EPA's modeling projections based on 2011 data ("2011-based modeling") to conclude that it would contribute 0.79 ppb to one

nonattainment receptor in Texas ("Deer Park"),[2] which was greater than 1% of the NAAQS (0.70 ppb).  *Id.* at 4-5.

Mississippi argued the nonattainment receptor would not struggle to maintain the 2015 NAAQS by 2023, citing the October Memo.  That memo suggested states could potentially exclude a maintenance receptor if certain criteria indicated that ozone levels were highly likely to remain below the NAAQS at that location.  October Memo 1.

Mississippi also sought to eliminate the Deer Park linkage, citing the August Memo.  That memo provided that, depending on the "facts and circumstances underlying a particular SIP," it may be reasonable to apply a higher contribution threshold of 1 ppb, but "air agencies should consider whether the recommendations in this guidance are appropriate for each situation."  August Memo at 1. Mississippi provided none of the technical analysis contemplated by the August Memo.  Instead, Mississippi referenced EPA guidance for an unrelated CAA permitting program.  Submission at 5-6.

## C.    EPA's Disapproval of Mississippi's Submission

EPA's assessment of 2015 NAAQS Good Neighbor SIPs was delayed while it addressed a remand of another Good Neighbor rule for the 2008 ozone NAAQS. Final Rule at 9365.  During this time, EPA updated its modeling projections for

---

[2] Located in the Houston-Galveston-Brazoria nonattainment area.

2023 from a 2011-based to a 2016-based platform, with input from states. *Id*. at 9339. This modeling followed the same approach as the 2011-based modeling but incorporated updated emissions and meteorological data. *Id*. at 9339, 9341-42.

Consistent with its practice and Mississippi's approach, EPA evaluated Mississippi's Submission using the 4-step framework. *Id*. at 9338. EPA explained that Mississippi had identified Deer Park as a nonattainment receptor and improperly relied upon the October Memo to exclude Deer Park because the Memo addressed maintenance receptors, not nonattainment receptors. 87 Fed. Reg. 9545, 9555 (Feb. 22, 2022) ("Proposal") (Ex. 7). EPA further explained that the October Memo contemplated excluding those receptors where emissions were consistently trending downward, but Mississippi had ignored 2018 monitoring data available to Mississippi before its Submission date, showing ozone levels exceeding the NAAQS at Deer Park. *Id*. at 9556. And EPA found that Mississippi had not offered any technical justification for using a 1 ppb contribution threshold instead of 0.70 ppb (1% of the NAAQS). *Id.* at 9557. Lastly, EPA's 2016-based modeling identified linkages to multiple receptors in Texas. *Id.* at 9558. Mississippi commented on EPA's proposed disapproval but did not provide another submission. *See generally* RTC at 72, 121, 186, 233-34.

In February 2023, EPA finalized its disapproval. Final Rule at 9338, 9357-58. In a final round of modeling that incorporated public comments, results again

identified Mississippi as linked to receptors in Texas.  Further, monitored ozone levels through 2022 indicated even greater ozone problems than EPA's modeling suggested.  *Id.* at 9349.  EPA ultimately determined that Mississippi was linked to eleven receptors in Texas, *id*. at 9357-58.

Thus, each round of modeling linked Mississippi to one or more receptors in the Houston-Galveston-Brazoria nonattainment area in Texas and showed that Mississippi was contributing to ozone levels in those areas.  EPA explained that the slight differences in receptors identified in each round meant that Mississippi's emissions were substantial enough to link the State to that downwind area, even under varying metrological conditions in different modeling versions.  *Id*. at 9367.  Because the record reflected that Mississippi was contributing to ozone levels at nonattainment and maintenance receptors in Texas, but the State did not analyze that contribution for significance, EPA disapproved the Submission.  *See id*. at 9357-58; 9365-66.

### D.  EPA's FIP

The Final Rule triggered EPA's duty to promulgate a FIP.  42 U.S.C. §7410(c)(1).  On March 15, 2023, EPA signed a FIP for 23 states ("Final FIP").  Declaration of Rona Birnbaum ("Birnbaum Decl.") (Ex. 8) ¶¶ 6-8.  The Final FIP establishes cost-effective emissions control requirements through a trading program for power plants, similar to long-running programs in which Mississippi's

9

plants already participate, and through conventional control measures for certain, high-emitting units in other industries. *Id.* ¶¶ 9-14, 18-21, 44, 50-51. The Final FIP phases in emissions reductions in alignment with statutory attainment dates, at an achievable pace. *Id.* ¶¶ 16, 45-54, 70-81.

The Final FIP will take effect 60 days after publication in the *Federal Register*, which has not occurred. *Id.* ¶¶ 22-23. EPA anticipates an effective date in August, at which point Mississippi power plants will begin participation in the trading program for the remainder of the ozone season, which ends September 30. *Id.*

## III.  Procedural Background

Numerous states and interested parties have challenged the Final Rule.[3] EPA moved to transfer venue to the D.C. Circuit. Several petitioners in this and other courts moved to stay the Final Rule.

In this Court, a divided motions panel issued an unpublished, non-precedential, and non-binding order denying EPA's venue transfer motion and granting the motions to stay the Final Rule as it relates to Texas and Louisiana.

---

[3] *See, e.g.*, *West Virginia v. EPA*, No. 23-1418 (4th Cir.); *Kentucky v. EPA*, No. 23-3216 (6th Cir.); *Arkansas v. EPA*, No. 23-1320 (8th Cir.); *Nev. Cement Co. v. EPA*, No. 23-682 (9th Cir.); *Utah v. EPA*, No. 23-9509 (10th Cir.); *Alabama v. EPA*, No. 23-11173 (11th Cir.); *Utah v. EPA*, Nos. 23-1102, *et al.* (D.C. Cir.) (consolidated).

ECF No. 269 ("*Texas* Order"). After the *Texas* Order was issued, Mississippi

moved to stay the Final Rule. ECF No. 304.

## ARGUMENT

Mississippi fails to meet its burden to establish a stay is warranted under the

four factors. Mississippi fails to show (1) a strong likelihood of success on the

merits, (2) irreparable injury absent a stay, and that (3) the balance of equities, and

(4) the public interest weigh in favor of a stay. *See Nken v. Holder*, 556 U.S. 418,

433 (2009). EPA respectfully disagrees with the *Texas* Order's findings and

reserves the right to renew both its venue and merits arguments in proceedings as

to all Petitioners in this Court before a merits panel. In any event, outside of the

venue question, the (flawed) reasoning in the *Texas* Order does not map onto

Mississippi's stay request, which this Court should deny.

## I.    Mississippi Is Unlikely to Succeed on the Merits.

To assess likelihood of success, the APA's (5 U.S.C. §§ 701-06) standard of

review applies, which affords great deference to agency decisionmaking. *Motor

Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983). Mississippi must make a clear showing that the Final Rule is likely

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

the law." *Texas v. EPA*, 829 F.3d 405, 424-25 (5th Cir. 2016) (quotation omitted).

EPA must simply engage in "reasoned decisionmaking" and provide a "rational

connection between the facts found and the choice made." *Sierra Club v. EPA*, 939 F.3d 649, 664 (5th Cir. 2019) (quotation omitted). Particular deference is owed when EPA's decision "is based upon its evaluation of complex scientific data within its technical expertise." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 824 (5th Cir. 2003).

Mississippi fails to make this showing. Rather than refute EPA's careful reasoning, Mississippi mischaracterizes the Act's cooperative-federalism framework to diminish EPA's statutory obligation to review SIPs for compliance with the Act and to dismiss the Good Neighbor Act's forward-looking analysis. *See* Mot. 10-16. Mississippi further mischaracterizes its Submission, the 2018 Memoranda, and the administrative record. *Id*. 5-7.

### A. EPA Acted Within Its Statutory Oversight Role.

SIPs *must* comply with the Good Neighbor Provision. 42 U.S.C. § 7410(a)(2)(D)(i)(I). EPA may approve a SIP submission *only* "if it meets all of the [Act's] applicable requirements." *Id.* § 7410(k)(3).

For Good Neighbor SIPs, EPA must assess whether the submission contains "adequate provisions" to eliminate significant contributions to ozone levels in downwind states, and EPA's framework for evaluating compliance is consistent with its longstanding, statutorily based approach. *See supra* Background II.A; *EME Homer*, 572 U.S. at 514-15, 518, 524; Final Rule at 9338. This framework is

no different from other tests that EPA has developed to evaluate SIPs, and similarly grounded in the text of the Act. *See*, *e.g.*, *BCCA*, 355 F.3d at 840 (upholding EPA's three-part test for determining whether enforceable commitments were "appropriate" under § 7410(a)(2)(A)).

Mississippi misunderstands what it means for states to drive the regulatory process under the Act. Mot. 11-13. While states enjoy wide discretion in *formulating* SIPs, including proposing "enforceable emission limitations and other control measures," 42 U.S.C. § 7410(a)(2)(A), the Act requires EPA to ensure that SIPs meet the Act's statutory requirements, *id.* § 7410(k)(3). EPA must therefore determine whether SIPs contain, *inter alia*, "necessary or appropriate" "control measures" and "adequate provisions." *Id.* § 7410(a)(2)(A), (a)(2)(D)(i)(I). These determinations necessarily require independent evaluation, statutory interpretation, and supplemental technical analyses by EPA as the expert agency. *Luminant Generation Co. LLC v. EPA*, 714 F.3d 841, 856-57 (5th Cir. 2013). EPA routinely makes such determinations. *See, e.g.*, 86 Fed. Reg. 43960 (Aug. 11, 2021) (approving Good Neighbor SIPs based in part on EPA's independent analyses of monitoring data and publicly available modeling); 84 Fed. Reg. 24712, 24714 (May 29, 2019) (approving nonattainment plan based in part on EPA's supplemental modeling).

Although this Court has previously characterized EPA's role as "ministerial," *Luminant*, 714 F.3d at 846, even then, the Court deferred to EPA's independent review. *See also Sierra Club*, 939 F.3d at 663-64; *BCCA Appeal Grp.*, 355 F.3d at 832. Nothing in the Act requires EPA's evaluation of a SIP to be wholly deferential; this would contravene the plain language of the Act, and courts have faulted EPA for doing so. *See Sierra Club v. EPA*, 972 F.3d 290 (3d Cir. 2020) (vacating EPA's unjustified approval of SIP). In the context of the Good Neighbor Provision, deferring to a state's SIP submission could be particularly inappropriate in evaluating compliance with Good Neighbor obligations to *other* States.

## B.    EPA Reasonably Determined Mississippi's Submission Failed to Comply with the Good Neighbor Provision.

Consistent with its statutory role, EPA carefully considered Mississippi's Submission and completed its own technical analysis. Final Rule at 9357, 9366. EPA ultimately concluded that the Submission did not comply with the Good Neighbor Provision, a determination well within EPA's oversight authority and likely to be upheld. *See Westar*, 2015 WL 4067382 at 3-4 (upholding EPA disapproval of Good Neighbor SIP); RTC at 424-32.

To start, multiple factors distinguish Mississippi's Submission from Texas's and Louisiana's submissions addressed by the *Texas* Order. For example, Mississippi did not claim to provide an alternate framework for evaluating Good

Neighbor obligations, and its submission post-dated the 2018 Memoranda. *See generally* Submission.

Under any modeling, Mississippi's attempts to dismiss its contribution to ozone problems in Texas were inconsistent with the text of the Good Neighbor Provision and EPA's judicially upheld interpretation. None of Mississippi's arguments to the contrary is persuasive: EPA made no policy change from the 2018 Memoranda; its updated modeling simply confirmed that Mississippi's emissions contribute to Texas's ozone problems. Even under Mississippi's chosen 2011-based modeling, Mississippi's Submission should have been disapproved, *see* RTC at 60.

Mississippi identified one nonattainment receptor in Texas, Deer Park, to which it contributed more than 1% of the 2015 NAAQS. Submission at 5. Under EPA's framework, Mississippi next would have been expected to consider potential emissions reduction opportunities. Final Rule at 9343. Instead, Mississippi rejected the Step 1 and Step 2 results, claiming that: (1) Deer Park was not a receptor per the October Memo; and (2) even if it were, Mississippi was not linked because its contribution was less than 1 ppb, per the August Memo. Mot. 13-17. Neither claim was technically supportable.

Mississippi incorrectly interprets and applies the October Memo. That Memo was specific to *maintenance* receptors, October Memo at 1, and Mississippi

had identified the Deer Park receptor as a *nonattainment* receptor. Submission at 5. Even if applicable, Mississippi's exclusion of the Deer Park receptor was technically deficient. *See* Proposal at 9555-56. The October Memo allowed for potential exclusion from consideration of a maintenance receptor if "ozone concentrations have been trending downward." October Memo at 4. But Mississippi ignored available 2018 data, which showed that ozone concentrations had risen and exceeded the NAAQS at Deer Park. Submission at 12; Proposal at 9556.

Thus, EPA's rejection of Mississippi's analysis was neither a policy choice nor change, *cf.* Mot. 16-17, but an application of the October Memo's criteria. *See* Final Rule at 9370. Mississippi's other argument—that EPA's rejection of its analysis was based on non-statutory factors—is also meritless. *See supra* Argument I.A (explaining EPA developed framework to give meaning to the Good Neighbor Provision). Simply put, EPA's analytical approach, which the Supreme Court has approved, directly effectuates the Act's requirement that SIPs limit emissions that "contribute significantly to nonattainment in, or interfere with maintenance by, any other State." 42 U.S.C. § 7410(a)(2)(D)(i)(I). Mississippi's unjustified exclusion of Deer Park directly conflicts with this statutory requirement.

EPA also reasonably determined that Mississippi's application of a 1 ppb contribution threshold, instead of 0.70 ppb (1% of the NAAQS), was technically unsupported. Proposal at 9557. The August Memo provided that states must adequately support using the higher 1 ppb contribution threshold, August Memo at 1, which EPA has interpreted as needing receptor- and state-specific analysis. *See*, *e.g.*, 85 Fed. Reg. 12232, 12237-38 (Mar. 2, 2020). But Mississippi provided *no* technical analysis. Proposal at 9557; Final Rule at 9357-58.

Instead, Mississippi pointed to EPA guidance that 1 ppb can be used as a "significant impact level" in a different CAA program. Submission at 6-7. EPA explained, however, that the guidance was inapt and applies in a different regulatory context—for areas already attaining the NAAQS. Proposal at 9557; Final Rule at 9372. And that guidance was not to be used to deny contribution or to allow sources to avoid emissions-control requirements. *Id.*

Mississippi incorrectly asserts that EPA's rejection of its 1 ppb threshold was based on unlawful policy change. Mot. 14-15. The plain language of the August Memo and EPA's consistent application of it make clear—there was no policy change. EPA's concerns for recognizing alternative thresholds going forward, *see* Final Rule at 9373-75, reflect EPA's broader thinking and do not amount to a policy change in the Final Rule. *See, e.g.*, RTC at 295-97 (considering August Memo). Even if it did, EPA's policy choices need only "conform to

minimal standards of rationality," *Luminant*, 714 F.3d at 850, and EPA's concern for consistent application of a single threshold, which best effectuates the Act's Good Neighbor requirements across all states, satisfies this standard.

Mississippi's Submission was disapprovable under its chosen 2011-based modeling and the 2018 Memoranda.

### C.    EPA Reasonably Evaluated SIP Submissions Using the Most Accurate Data.

This Court need not address Mississippi's criticism of EPA's review of updated air quality data, Mot. 17.  *See Sierra Club*, 939 F.3d at 687 (upholding EPA's SIP approval based on state's chosen modeling without reaching merits of EPA's modeling).  But if considered, this argument falls short.

Nothing in the Act prohibits EPA from considering the most accurate, up-to-date data to evaluate Good Neighbor obligations, and EPA consistently considers such data.  *See, e.g.*, 81 Fed. Reg. 53284, 53284-86 (Aug. 12, 2016); 81 Fed. Reg. 74504, 74507 (Oct. 26, 2016).  It would be "anomalous" for EPA to ignore more reliable data, as the Good Neighbor Provision focuses on air-quality conditions in a *future* year, here 2023.[4]  *Wisconsin*, 938 F.3d at 321-22; Final Rule at 9366.  EPA's reliance on the most accurate data upholds its duty to act reasonably whereas

---

[4] Mississippi's allegation of delay is irrelevant.  Mot. 17-19.  Only one remedy exists for EPA's failure to meet a nondiscretionary duty to act in time: a court-ordered deadline.  *See* 42 U.S.C. § 7604(a)(2).

accepting inaccurate, outdated data risks arbitrariness.  *See Sierra Club v. EPA*, 671 F.3d 955, 967-68 (9th Cir. 2012) (finding arbitrary and capricious EPA's failure in SIP review to consider newly available data).

Mississippi mistakenly relies on *Sierra Club v. EPA*, 356 F.3d 296 (D.C. Cir. 2004) and EPA's actions in other contexts to argue that EPA's "longstanding policy" requires limiting its analysis to modeling "available at the time of SIP development," Mot. 19 (quoting 81 Fed. Reg. 59876, 59878 n.15 (Aug. 31, 2016)). No such "longstanding policy" exists.  *See, e.g.*, 86 Fed. Reg. 67329, 67332 (Nov. 26, 2021) ("[I]t would be inappropriate for the EPA to ignore monitoring data that clearly establish, as a factual matter, that the [state's] attainment demonstration failed to provide for attainment.").

Also, the case and federal action that Mississippi reference address a different CAA requirement that states incorporate a "*current* inventory of *actual* emissions" in nonattainment plans.  42 U.S.C. § 7502(c)(3) (emphasis added); RTC 61.  By contrast, the Good Neighbor Provision requires analyzing whether emissions "will" contribute to another state's ozone problem, which is a forward-looking analysis.  The data Mississippi had available *and* the additional data EPA considered were both relevant.

EPA committed no "surprise switcheroo."  *See* Mot. 18 (quotation omitted). The text accompanying the 2011-based modeling contained multiple caveats and

did not provide that using the 2011-based modeling would guarantee EPA's approval of a SIP submission.  March Memo at 1-4; Proposal at 9556; Final Rule at 9340.  The 2016-based modeling released at proposal and refined at final in response to comments (including from Mississippi, *see* Mot. 9; RTC at 121, 186-87, 365-66) identified Mississippi as linked to receptors in the Houston-Galveston-Brazoria nonattainment area in 2023, Proposal at 9557, and reinforced EPA's determination that Mississippi potentially "contribute[s] significantly to nonattainment in, or interfere[s] with maintenance" of the NAAQS in Texas.  42 U.S.C. § 7410(a)(2)(D)(i)(I); Proposal at 9557-58; Final Rule at 9367; RTC at 201; *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170-71 (2007) (holding that an ability to comment in rulemaking was "unlikely" to create "unfair surprise").

Under any version of EPA modeling, and reinforced by the most up-to-date monitoring data, Mississippi is contributing to air quality problems in Texas. There was no "switch[]" in EPA's ultimate determination, nor can Mississippi claim "surprise" by the updated modeling's results.

If the Court considers this argument (which it need not), Mississippi cannot succeed on the merits here.

## II.    Mississippi Has Not Shown Irreparable Harm Absent a Stay.

Mississippi fails to carry its burden of establishing irreparable harm absent a stay.  Irreparable harm must be "both certain and great," *i.e.*, "actual and not theoretical," *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), nor "speculative," *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022).  The *Texas Order* cannot establish irreparable harm as to Mississippi, as the propriety of a stay "is dependent upon the circumstances of the particular case," *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013) (quotation omitted), and each petitioner bears its own burden.

Mississippi's three-month delay in moving to stay blunts its "claim of urgency and counsels against the grant of a stay."  *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983).  Indeed, Mississippi describes no compliance efforts it has made nor any harm that it is actually incurring or will incur in the near future, *before* this litigation may be resolved.  *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 352–53 (5th Cir. 2022) (requiring showing irreparable harm during the pendency of appeal).  Its vague allegations of "disruption" to the cooperative-federalism framework are insufficient to find irreparable harm for the reasons explained *supra* Argument I.A.  Moreover, the FIP preserves choice, Birnbaum Decl. ¶ 81 (the FIP "does not require or mandate any specific pollution control

installation"), and Mississippi may always replace the FIP with a SIP that complies with the Act. Final Rule at 9362.

The State's failure to make such a showing is unsurprising. The Final Rule imposes no obligations on Mississippi or Mississippi sources. Final Rule at 9364. Any alleged harm instead stems from the Final FIP, which also requires nothing of the *State*. *Cf.* Mot. 20-21. And, the Final FIP has not taken effect. Through 2025, the Final FIP will encourage Mississippi power plants to run their *existing* pollution controls and make modest "combustion control" upgrades at a single plant—comparable to strategies successfully implemented under recent rules. Birnbaum Decl. ¶¶ 45-49. This is not irreparable harm. Moreover, Mississippi has an adequate remedy under the law and has not shown that harm traceable to the FIP is *irreparable* absent a stay in *this* case: it may challenge and seek to stay the Final FIP.[5] *See Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Mississippi generally describes potential compliance costs associated with the Final FIP, Mot. 20-21, but provides no specifics of impending irreparable harm. For example, the Smith Declaration claims that Mississippi Power must install expensive controls at two plants by 2026 or 2027, Smith Decl. ¶¶ 12-14, 22, but one is already slated for retirement in 2027, and all plants have options for

---

[5] Mississippi cannot attack the merits of the FIP here. This Court lacks jurisdiction to review that separate action. *See* 42 U.S.C. § 7607(b)(1).

22

compliance under the trading program that may not require installing new controls if uneconomical.  Birnbaum Decl. ¶¶ 80-81.  Further, those costs are years away; Mississippi's challenge will be resolved well before.

Even if Mississippi's alleged harms were imminent, they are not certain. Mississippi alleges vague and unsubstantiated concerns about the proposed FIP's potential impact on grid reliability.  But the Final FIP will not "disrupt[] the reliable operation of the bulk power grid,"  Birnbaum Decl. ¶ 43; *see also id*. ¶¶ 59-60, 79; and its effect on retail electricity prices is projected to be 0 % in 2023 and negligible through 2025.  *Id.* ¶ 61.

Mississippi asserts that the FIP will require sources to install new emissions controls, buy allowances, or shift generation to more expensive units.  But Mississippi ignores that its recent emissions are already less than the allowances that will be available for compliance in 2023—even accounting for the conversion of its current allowances for use in the new program.  Birnbaum Decl. ¶¶ 70-78. Even if Mississippi sources chose to purchase allowances, concerns about high prices are speculative; allowance prices *decreased* after EPA released the prepublication copy of the FIP and are trading at a fraction of the prices Mississippi cites.  *Id.* ¶¶ 63-69.  This kind of erroneous speculation is not irreparable harm.

### III.    The Balance of Equities and Public Interest Disfavor a Stay.

Mississippi glosses over the remaining factors and fails to show "that the balance of equities tips in [its] favor, and that a[] [stay] is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The Good Neighbor Provision addresses the intractable problem of upwind states' emissions significantly contributing to downwind states' pollution problems.  Yet Mississippi proposed to do *nothing* to limit its emissions.

A stay would leave no law on the books to address these harmful emissions, hamstring EPA's efforts to implement the FIP, and undermine Congress's directive for upwind states to lower emissions as expeditiously as practicable.  A stay would also harm the health and welfare of those who live in downwind states, Birnbaum Decl. ¶¶ 10-16; and lead to inequitable results, impeding downwind states from attaining the NAAQS, while Mississippi "reaps the benefits . . . without bearing all the costs," *EME Homer*, 572 U.S. at 495.

Mississippi's concerns about grid reliability are groundless, *supra* Argument II, and past delay does not justify more delay on matters of important public health protection.[6]  Indeed, further delay contravenes the Act's requirements.  *See supra*

---

[6] Even Mississippi contributed to delay; its Submission, due in 2018, was not submitted until September 2019.  *See* 42 U.S.C. § 7410(a)(1).

24

Background II.A.  Nor has prior delay prejudiced Mississippi, as the updated modeling was not dispositive to EPA's disapproval, *see supra* Argument I.B.

Mississippi incurs no harm, but the impacts of its failure to address its role in poor air quality are occurring now, affecting millions of citizens and imposing unfair regulatory burden on those downwind.  *See Wisconsin*, 938 F.3d at 314. These factors weigh heavily in favor of denying Mississippi's stay motion.

## CONCLUSION

Mississippi's stay motion should be denied.

Respectfully submitted,

TODD KIM
Assistant Attorney General

Of Counsel:

*/s/ Sarah Izfar*
JIN HYUNG LEE
SARAH IZFAR
ROSEMARY HAMBRIGHT KABAN        U.S. Department of Justice
DANIEL P. SCHRAMM               Environment and Natural Resources Division
U.S. Environmental Protection Agency   Environmental Defense Section
Office of General Counsel        P.O. Box 7611
Washington, DC                   Washington, D.C. 20044-7611
                                 (202) 305-0490
                                 Sarah.izfar@usdoj.gov

May 30, 2023

## CERTIFICATES OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A), because it contains 5,197 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings, block quotes, and footnotes.

Dated: May 30, 2023

<i>/s/ Sarah Izfar</i><br>
SARAH IZFAR

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing EPA's response in opposition to the motion for stay of the Final Rule on all registered counsel through the Court's electronic filing system (CM/ECF).

Dated: May 30, 2023

*/s/ Sarah Izfar*
SARAH IZFAR