NO. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS, *et al.*,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents.*

**RESPONSE OF SIERRA CLUB, AIR ALLIANCE HOUSTON,
AND DOWNWINDERS AT RISK IN OPPOSITION TO
LOUISIANA'S MOTION TO STAY THE FINAL RULE**

*/s/ Joshua D Smith*
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor

*/s/ Kathleen L. Riley*
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

*Counsel for Sierra Club,
Downwinders at Risk, and Air
Alliance Houston*

Filed: April 17, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................i

TABLE OF AUTHORITIES...............................................ii

INTRODUCTION.........................................................2

STANDARD OF REVIEW .................................................4

ARGUMENT .............................................................4

   I. LOUISIANA IS NOT LIKELY TO SUCCEED ON THE
      MERITS.............................................................4

      A. Venue does not lie in this Court. ........................5

      B. Louisiana Contributes Multiple Parts Per Billion of Cross-
         State Ozone Pollution According to Louisiana's Own
         Assessment, EPA's 2018 Guidance, and EPA's Proposed
         and Final Disapproval Rule Modeling...............................7

      C. Louisiana Cannot Cite Any Authority Prohibiting EPA
         From Developing the Record After a SIP Submission .....10

      D. Louisiana Does Not Have "Reliance Interests" That EPA
         Was Required to Address in the Disapproval Rule...........12

   II. LOUISIANA WILL NOT SUFFER IRREPARABLE HARM.
      ...................................................................14

   III. A STAY WOULD HARM OTHER PARTIES AND THE
       PUBLIC INTEREST. .............................................17

CONCLUSION ..........................................................21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMIT ...................................................................1

CERTIFICATIONS UNDER ECF FILING STANDARDS .............2

CERTIFICATE OF SERVICE ...........................................3

# TABLE OF AUTHORITIES

## CASES

*Alcoa, Inc. v. EPA,*
  No. 04-1189, 2004 WL 2713116 (D.C. Cir. Nov. 24, 2004) ................... 7

*Allina Health Servs. v. Sebelius,*
  746 F.3d 1102 (D.C. Cir. 2014) ........................................... 13

*ATK Launch Systems, Inc. v. EPA,*
  651 F.3d 1194 (10th Cir. 2011) ......................................... 5, 6

*Chaplaincy of Full Gospel Churches v. England,*
  454 F.3d 290 (D.C. Cir. 2006) ............................................ 15

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) .................................................. 12, 13

*DHS v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020) ................................................... 13

*Downwinders At Risk et al. v. Regan,*
  No. 21-cv-3551 (N.D. Cal. Jan. 12, 2022) ................................. 12

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
  762 F.2d 464 (5th Cir. 1985) .............................................. 4

*EPA v. E.M.E. Homer City Generation, L.P.,*
  572 U.S. 489 (2014) ...................................................... 21

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ....................................................... 11

*S. Ill. Power Coop. v. EPA,*
  863 F.3d 666 (7th Cir. 2017) .............................................. 5

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016) .......................................... 16, 17

*Texas v. EPA,*
  No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) ................. 5, 6

*Texas v. EPA,*
  983 F.3d 826 (5th Cir. 2020) .............................................. 5

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................. 4, 14, 16

*Wis. Gas Co. v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985) ................................................. 15, 16, 17

## STATUTES

42 U.S.C § 7607 ........................................................................ 11

42 U.S.C. § 7409 ........................................................................ 2

42 U.S.C. § 7410 .................................................... 2, 3, 17, 19

42 U.S.C. § 7602 ...................................................................... 12

42 U.S.C. § 7607 .............................................................. 5, 6, 11

42 U.S.C. § 7604 ...................................................................... 12

5 U.S.C. § 553 ........................................................................ 11

## REGULATIONS

80 Fed. Reg. 65,291 (Oct. 26, 2015)................................... 2, 18

87 Fed. Reg. 9,798 (Feb. 22, 2022) ................................. 3, 9, 14

88 Fed. Reg. 9,336 (Feb. 13, 2023) ................1, 2, 3, 6, 7, 9, 10, 12, 14, 21

Sierra Club, Air Alliance Houston, and Downwinders at Risk (collectively, the "Proposed-Intervenors") file this response in opposition to the Petitioner State of Louisiana's ("Louisiana") motion to stay EPA's final action, *Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards*, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("Disapproval Rule"). Proposed-Intervenors are a national organization and Houston- and Dallas-area organizations with longstanding, well-demonstrated interests in protecting their members and the public from ozone air pollution, which causes serious health and welfare harms. The Disapproval Rule resulted from a suit they, along with other organizations, brought in 2021 against EPA over its illegal failure to timely act on the implementation plans many states had submitted to address their contribution to downwind ozone nonattainment issues. *See, e.g.*, Complaint, *Downwinders At Risk et al. v. Regan*, No. 21-cv-3551 (N.D. Cal. filed May 12, 2021). In this response, Proposed-Intervenors add certain key points to those EPA makes in opposition to Louisiana's meritless motion.

1

## INTRODUCTION

Under the Clean Air Act, EPA is required to set and periodically revised National Ambient Air Quality Standards ("NAAQS") for various criteria air pollutants, including ground level ozone, at levels "requisite to protect the public health." 42 U.S.C. § 7409(b)(1). EPA set a new 70 parts per billion ("ppb") ozone NAAQS in 2015, 80 Fed. Reg. 65,291 (Oct. 26, 2015), triggering an obligation for states to submit state implementation plans ("SIPs") including provisions, among other things, prohibiting "any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will contribute significantly to nonattainment in, or interfere with maintenance by, any other State." 42 U.S.C. §§ 7410(a)(1), 7410(a)(2)(D)(i)(I) (the "Good Neighbor" provision). Many states, including Louisiana, submitted SIPs, and EPA ultimately disapproved 21 state SIPs in its Disapproval Rule, applying a common analytical framework and nationwide ozone transport modeling. 88 Fed. Reg. 9,336; *see also* Proposed-Intervenors Response in Opposition to the Motions to Stay the Final Rule (March 27, 2023) at 1-4.

2

EPA found that Louisiana contributed to unsafe ozone levels across state lines, including "9.51 ppb to Galveston County Texas." 88 Fed. Reg. at 9,356. Louisiana itself admits in its Motion to Stay and in its SIP submission that it contributes multiple parts per billion of ozone pollution to the Houston-Galveston-Brazoria nonattainment area. La. Mot. at 9; *see also* 87 Fed. Reg. 9,798, 9,811-12, tbl. LA-1 (Feb. 22, 2022) (ozone contributions of 3.80, 4.72, 1.71, and 1.92 to receptors in Texas were "[i]dentified by Louisiana"). Nevertheless, Louisiana failed to include *any* permanent or enforceable emissions controls in its SIP submission, doing nothing to address Louisiana's cross-state air pollution or fulfill the Clean Air Act's Good Neighbor requirement. 88 Fed. Reg. at 9,356; 42 U.S.C. §§ 7410(a)(1), 7410(a)(2)(D)(i)(I). Indeed, to the extent that Louisiana complains that EPA took too long to act on Louisiana's SIP submittal, Louisiana never attempted to enforce EPA's deadline. La. Mot. at 14-16.[5] Instead, Proposed-Intervenors did. *See*

---

[5] Nor would such an action be proper before this Court. *See* 42 U.S.C. § 7604(a)(2) ("any person may commence a civil action . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary" in which instance "*[t]he district courts* shall have jurisdiction") (emphasis added).

*Downwinders At Risk et al. v. Regan*, No. 21-cv-3551 (N.D. Cal.) Despite

Louisiana's do-nothing plan being correctly disapproved, Louisiana now

seeks a stay of the Disapproval Rule. Its stay motion should be denied.

## STANDARD OF REVIEW

A stay is "an extraordinary and drastic remedy," only available if

Louisiana can carry the "heavy burden" of making a strong showing

that (1) it is likely to succeed on the merits; (2) it will be irreparably

injured by the challenged action absent a stay; (3) issuance of the stay

will not substantially injure the other parties interested in the

proceeding; and (4) the public interest supports a stay. *Enter. Int'l, Inc.*

*v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th

Cir. 1985); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## ARGUMENT

### I.    LOUISIANA IS NOT LIKELY TO SUCCEED ON THE MERITS.

Louisiana fails to carry its heavy burden of demonstrating that

EPA's Disapproval Rule is likely arbitrary, capricious, not in accordance

with law, or in excess of EPA's statutory authority. *Texas v. EPA*, 983

F.3d 826, 835 (5th Cir. 2020).

## A. Venue does not lie in this Court.

Louisiana is unlikely to succeed because it has filed this challenge in the wrong court. The Clean Air Act dictates that challenges to nationally applicable actions "may be filed only" in the U.S. Court of Appeals for the District of Columbia Circuit. 42 U.S.C. § 7607(b)(1); *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) (unpublished) (transferring Texas's petition for review of EPA's call for thirteen states over seven federal circuits to revise their state plans to the D.C. Circuit because it was "one small piece of a large swath of related litigation"); *see also ATK Launch Systems, Inc. v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011) ([Petitioner's] contention that EPA's case-by-case consideration of areas and boundaries transforms a national standard to a regional or local rule is ultimately unpersuasive"); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666 (7th Cir. 2017) ("there is no explicit or implicit exception for challenges to nationally applicable rules based on local or regional 'factors' or 'effects.'"). Similarly, challenges to regionally applicable actions that EPA finds are based on a determination of nationwide scope and effect, and for which

EPA publishes such a finding, "may be filed only" in the D.C. Circuit. 42 U.S.C. § 7607(b)(1).

The Disapproval Rule is nationally applicable because, on its face, "the legal impact of the action as a whole" applies to all 21 states–spanning the entire continental U.S.–whose plans improperly failed to eliminate emissions that significantly contribute to nonattainment in other states. *Texas v. EPA*, 2011 WL 710598, at *3 ("This far-flung collection of states comprises no 'region' of which we are aware."). It is the "face" of the action, not the "effects complained of or petitioner's challenge" that determines whether an action is nationally applicable. *ATK Launch Systems*, 651 F.3d at 1197 (EPA's action designating 31 nonattainment areas across the country, including areas "with no local or regional connection to each other, such as California, Pennsylvania, and Alabama," was nationally applicable).

Even if the Disapproval Rule were not nationally applicable, EPA reasonably found and published a finding that the rule is "based on a determination of 'nationwide scope or effect,'" with venue accordingly lying only in the D.C. Circuit. 88 Fed. Reg. at 9,380; see *Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL 2713116, at * 1 (D.C. Cir. Nov. 24, 2004)

(unpublished). As Louisiana effectively concedes, the Disapproval Rule

applies a uniform framework of policy judgments and technical methods

to disapprove 21 state plans that each failed to include measures to

reduce interstate ozone. *See* La. Mot. at 5-6 (describing EPA's "four-step

process"), 8-10 (describing national modeling EPA relied on in

Disapproval Rule development). The rule is also based on EPA's

nationwide determination that an attempted reliance on back-

trajectories to discount ozone transport linkages—used in the SIP

submittals of not only Louisiana but also Alabama, Arkansas, Indiana,

Kentucky, Texas, and West Virginia—was flawed. 88 Fed. Reg. at

9,354-56, 9,360. Because EPA's determination of nationwide scope and

effect was reasonable, venue belongs in the D.C. Circuit, and a stay of

the rule in this Court would be improper.

### B. Louisiana Contributes Multiple Parts Per Billion of Cross-State Ozone Pollution According to Louisiana's Own Assessment, EPA's 2018 Guidance, and EPA's Proposed and Final Disapproval Rule Modeling.

The crux of Louisiana's attempt to argue that the Disapproval

Rule is unlawful rests on the theory that EPA failed to use the 2018

EPA ozone modeling Louisiana used in its SIP submittal, La. Mot. at

12, instead of the modeling in either the proposed disapproval or the

final Disapproval Rule. However, *all* of EPA's modeling analyses—*including the 2018 modeling that Louisiana adopted in its own SIP proposal*—show significant ozone contributions from Louisiana across state lines. Not only has Louisiana failed to demonstrate a likelihood of success on the merits, Louisiana's argument demonstrates why it fails on the merits themselves.

As Louisiana admits in its own motion, in 2018 EPA projected that Louisiana contributed 3.80 parts per billion (ppb) to the Brazoria County, Texas receptor, La. Mot. at 9, in addition to contributing 3.06, 3.38, and 4.72 ppb to Harris County, Texas receptors, 1.92 ppb to Denton County, Texas, 1.71 ppb to Tarrant County, Texas, and 0.84 ppb to Sheboygan County, Wisconsin. La. Mot. Ex. A, Memorandum from Peter Tsirigotis, Attachment C, at C-2 (Mar. 27, 2018) ("Tsirigotis Memo"). All of these counties are in designated ozone nonattainment areas, and all of the Texas areas are in "severe" nonattainment.[6]

---

[6] *See* EPA, Greenbook, Current Nonattainment Counties for All Criteria Pollutants, *available at* https://www3.epa.gov/airquality/greenbook/ancl.html (last visited April 17, 2023).

Louisiana relied on this EPA modeling in its SIP submission. 87 Fed. Reg. at 9,811.

The 2016v2 modeling EPA provided in its proposed SIP disapproval projected that Louisiana's highest contribution to nonattainment and maintenance receptors was even higher, 7.03 ppb in Brazoria County, 87 Fed. Reg. at 9,813-14, tbl. LA-2, and EPA's 2016v3 modeling cited in the final Disapproval Rule projected Louisiana's highest contribution of 9.51 ppb to Galveston County. 88 Fed. Reg. at 9,356. Nonetheless, even if there was merit to Louisiana's contention that EPA is somehow precluded from regarding modeling analyses after Louisiana submitted its SIP—which there is not—even Louisiana's preferred 2018 projections that it "relied on," demonstrate that Louisiana contributed ozone pollution more than *five times* the significance threshold to a nonattainment area. La. Mot. at 9; Tsirigotis Memo at C-2.

However, despite this through line of modeling showing pollution from Louisiana contributes large amounts of ozone pollution to areas that do not attain the ozone standard, Louisiana "included *no* permanent and enforceable controls in its SIP submission" to address

that pollution. 88 Fed. Reg. at 9,356 (emphasis added). Thus, none of

the available data, including Louisiana's preferred 2018 data, support

Louisiana's contention that EPA acted arbitrarily and capriciously in

rejecting Louisiana's SIP for failure to address ozone emissions.

### C. Louisiana Cannot Cite Any Authority Prohibiting EPA From Developing the Record After a SIP Submission

Louisiana wrongly contends that the Act's deadlines and, broadly,

"cooperative federalism" somehow require the record for EPA to

consider when acting on a SIP to close upon SIP submission. *See* La.

Mot. 14-15. This contention directly contravenes the legally required

notice-and-comment process under which EPA acts on SIP submissions,

and has no basis in the Act or administrative law.

Louisiana provides no convincing authority for its position that

the record is locked once a state submits a SIP, La. Mot. at 14-15; nor

can it, as such a theory directly conflicts with the requirement that EPA

regard all information in front of it as part of the record. Far from

supporting Louisiana, *see id.* at 14-15, *State Farm* actually requires

agencies like EPA to carefully consider all evidence available when

making decisions. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut.*

10

*Auto. Ins. Co.*, 463 U.S. 29, 43, 56 (1983) (agency action is arbitrary and capricious where it "runs counter to the evidence before the agency"; vacating agency decision in one direction "every indication in the record points the other way") (internal quotes omitted). Moreover, actions like EPA approval or disapproval of a SIP must go through notice-and-comment proceedings, and the agency must respond rationally to comments. 42 U.S.C § 7607(d)(6)(C) (EPA must base promulgated rules on "information or data . . . placed in the docket *as of the date of such promulgation.*") (emphasis added); 5 U.S.C. § 553. It would severely undermine the integrity of the notice-and-comment process for the agency to ignore pertinent information that arises from a comment— indeed any EPA rulemaking that ignored relevant material developed during the notice-and-comment process would *itself* be arbitrary and capricious and contrary to the Clean Air Act.

Though Louisiana seeks (at 16) to trace out a slippery slope scenario, under which EPA "blow[s] past the statutory deadlines" and ultimately takes some action the state disagrees with, the slope actually stops almost immediately. When EPA fails to meet a legal deadline to act, the Act allows citizens and states to sue in district court. 42 U.S.C.

§ 7604(a)(2) (authorizing "any person" to sue EPA when the person alleges EPA failed to carry out nondiscretionary action); *see also id.* § 7602(e) (defining "person" to include "State"). Along with other organizations, Proposed-Intervenors filed just such a suit and won relief. *E.g.*, Consent Decree, *Downwinders At Risk et al. v. Regan*, No. 21-cv-3551 (N.D. Cal. Jan. 12, 2022). Louisiana chose not to. Its purported concern now thus rings hollow.[7]

The Clean Air Act requires EPA to review SIP submissions from states to assess whether they meet "all the applicable requirements" — including the Good Neighbor requirement—under Section 110 of the Clean Air Act, and if those SIP submissions do not, EPA must disapprove them. *See* 42 U.S.C. § 7410(k)(2) & (3).  That is what happened here.

### D. Louisiana Does Not Have "Reliance Interests" That EPA Was Required to Address in the Disapproval Rule.

Louisiana's cites to *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012), *Allina Health Servs. v. Sebelius*, 746 F.3d 1102 (D.C.

---

[7] Louisiana did not submit its SIP proposal to EPA until November 13, 2019—over a year after the October 1, 2018 deadline. *See* 88 Fed. Reg. 9,337; *id.* at 9,356.

Cir. 2014), and *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) do not establish that EPA is prohibited from considering all evidence available when evaluating SIP submissions. La. Mot. at 11-12. The facts of *SmithKline Beecham* are completely inapposite; there, the Court considered whether an agency's interpretation of its regulation provided in an amicus brief with "no opportunity for public comment" was entitled to *Auer* deference where the interpretation conflicted with "decades-long practice." 567 U.S. at 156-57. Similarly inapplicable, *Allina Health Servs.* rejected a final rule that, being a "volte-face" of the proposal, "was not a logical outgrowth of the proposed rule." 746 F.3d at 1109. Likewise, *Regents of the Univ. of Cal.* addressed agency rescission of a "longstanding policy" that afforded immigrants certainty in their immigration status, including their ability to attend school, work, and raise families, for five years. 140 S. Ct. at 1913.

None of those cases are relevant where, as here, EPA proposed disapproval of state SIPs, accepted public comments (including comments from Louisiana), and then responded to those comments when it finalized disapproval of the state SIPs. Indeed, EPA's ozone modeling was not a "surprise" to Louisiana. In 2018, Louisiana was on

notice of its significant cross-state ozone emissions, as the state acknowledged in its own SIP submission, and this continued to be true in the proposed and final Disapproval Rule. 87 Fed. Reg. at 9,311-12, tbl. LA-1; La. Mot. at 9; 88 Fed. Reg. at 9,356. Louisiana has no cognizable "reliance interests" in not being required to meet Clean Air Act obligations to resolve cross-state ozone emissions. Nevertheless, Louisiana "included *no* permanent and enforceable controls in its SIP submission." 88 Fed. Reg. at 9,356 (emphasis added).

## II.    LOUISIANA WILL NOT SUFFER IRREPARABLE HARM.

Louisiana seeks a stay to the Disapproval Rule by alleging potential harm from a *separate* agency action not actually before this Court. La. Mot. at 16. In addition, Louisiana tries to argue that the Disapproval Rule somehow "disrupt[s]" the Clean Air Act's "cooperative federalism." La. Mot. at 16. These conclusory allegations fail to establish the imminent and concrete irreparable injury necessary for a stay of the Disapproval Rule. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy") (emphasis added).

14

None of Louisiana's purported harms "directly result" from the Disapproval Rule. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (a movant must show concrete, imminent, and substantial harm "will directly result from the action which the movant seeks to enjoin."). Indeed, Louisiana cites *only* the Midcontinent Independent System Operator's ("MISO") comments on the *proposed* Federal Implementation Plan ("FIP") in its attempt to identify the required imminent and concrete harms resulting from the Disapproval Rule. La. Mot. at 16. These speculative harms are not the result of the Disapproval Rule, but of a *separate* agency action that is not even before the Court.

Louisiana's cursory statement of irreparable harm underscores the fundamental defect of the stay motion: Louisiana's burden is to show that the Disapproval Rule it is challenging *in this action* will cause irreparable harm of "discrete injury that is of such *imminence* that equitable relief is urgently necessary." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 298 (D.C. Cir. 2006) (denying injunctive relief where a Navy employment policy only reduced opportunities for possible promotions, and review of subsequent non-promotion decisions was available) (internal quotes omitted) (emphasis

in original). Pointing to another rule that Louisiana may (or may not)
challenge in some other court, at some other time, does not show
harm—let alone imminent irreparable harm—as a direct result of the
Disapproval Rule. *Wis. Gas Co. v. FERC*, 758 F.2d at 674.

But even then, Louisiana's alleged harms are riddled with
uncertainty. Louisiana does not address any changes between the
proposed and final EPA FIP that affect the harms claimed by MISO in
its comments to the *proposed* FIP. La. Mot. at 16. Louisiana likewise
does not identify any specific facilities that are at risk of retirement as a
result of the proposed or final FIP. Nor does Louisiana cite a single
instance where implementation of any pollution trading plan has
actually caused adverse reliability impacts in support of its argument
that the FIP would "threaten[] electric grid stability." *Id.* These
allegations are insufficient to show the concrete, imminent harm
necessary to warrant a stay. *Winter*, 555 U.S. at 22.

Citing *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016), Louisiana
also suggests that the Disapproval Rule could cause irreparable harm
by "disrupt[ing] . . . cooperative federalism," but fails to explain how.
La. Mot. at 16. Nor can it. *Texas v. EPA* did not conclude that EPA's

disapproval of a SIP disapproval results in irreparable harm as a matter of law; indeed, the Clean Air Act explicitly directs EPA to disapprove inadequate state plans. 42 U.S.C. § 7410(c)(1), (k)(3). Instead, in *Texas v. EPA*, the Court found harm because Texas submitted sworn declarations alleging that EPA's action in that case harmed state agencies' "ability" to fulfill their "regulatory function[s]." *See* Texas Mot. for Stay at 18, *Texas v. EPA*, No. 16-60118 (filed Mar. 17, 2016), ECF Doc. 00513428276. There is no such evidence of harm here, and a bare assertion of theoretical harm to "cooperative federalism" is insufficient to warrant a stay. *Wis. Gas Co.*, 758 F.2d at 674.

## III.   A STAY WOULD HARM OTHER PARTIES AND THE PUBLIC INTEREST.

A stay would harm Proposed-Intervenors' members and the public, because it would further delay pollution reductions necessary to attaining the 2015 Ozone NAAQS. Every state plan disapproved in the Disapproval Rule failed to include permanent and enforceable reductions in ozone-causing NOx pollution *despite* EPA determinations that the states contributed toward harmful levels of ground-level ozone in downwind states. Staying the Disapproval Rule would retain in place

17

not only Louisiana's do-nothing plan, but the similar do-nothing plans

submitted by *twenty* other states. Accordingly, a stay of the Disapproval

Rule would cause substantial harm to Proposed-Intervenors' members

and members of the public who live, work, and recreate in areas

burdened with unhealthy levels of ground-level ozone pollution.

Nitrogen oxide emissions generally increase ozone concentrations

in the ambient air.[8] Ground-level ozone, is a corrosive air pollutant that

inflames the lungs, constricts breathing, and likely kills people.[9] Ozone

causes and exacerbates asthma attacks, emergency room visits,

hospitalizations, and other serious health harms.[10] Ozone-induced

health problems can force people to change their ordinary activities,

---

[8] *See* EPA, "Ground-level Ozone Basics," *available at*
https://www.epa.gov/ground-level-ozone-pollution/ground-level-ozone-basics#formation (last visited April 17, 2023).

[9] *See* 80 Fed. Reg. 65,292, 65,308 (Oct. 26, 2015); EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, at 2-20 to -24, tbl.2-1 (Feb. 2013) (EPA-HQ-OAR-2008-0699-0405) ("Science Assessment").

[10] *See, e.g.*, EPA, Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards, at 3-18, 3-26 to -29, 3-32 to -35 (Aug. 2014) (EPA-HQ-OAR-2008-0699-0404) ("Policy Assessment"); Science Assessment at 2-16 to -18, 2-20 to -24, tbl.2-1.

requiring children to stay indoors and forcing people to take medication and miss work or school.[11]

Ozone can harm healthy adults, but others are even more vulnerable.[12] Because their respiratory tracts are not fully developed, children are especially vulnerable to ozone pollution, particularly when they have elevated respiratory rates, as when playing outdoors.[13] People with lung disease and the elderly also have heightened vulnerability[14] People with asthma suffer greater impacts from ozone exposure and are more vulnerable at lower levels of exposure.[15]

EPA's Disapproval Rule is a response to the failure of Louisiana and twenty other states to fulfil their obligations under the Clean Air Act to prevent emissions that "contribute significantly to nonattainment in, or interfere with maintenance" of the ozone NAAQS in "any other state." 42 U.S.C. § 7410(a)(2)(D)(i). That failure subjects millions of people in downwind states throughout this country to respiratory

---

[11] *See, e.g.*, Policy Assessment at 4-12.

[12] *See* 80 Fed. Reg. at 65,310.

[13] *See, e.g.*, Policy Assessment at 3-81 to -83.

[14] *See* 80 Fed. Reg. at 65,310.

[15] *Id.* at 65,311 n.37, 65,322.

health harms. Nowhere in Louisiana's motion does it even attempt to address this massive harm.

Exposure to ozone does not just harm the public generally, but as explained in Proposed-Intervenors' Motion to Intervene filed March 27, 2023, it harms Proposed-Intervenors' members' ability to enjoy daily life. *See, e.g.*, Mot. to Intervene, ECF Doc. 100-1 at 17-19; *see also* Attached Declarations, ECF Doc. 100-2 (Owen Decl. ¶¶ 11-13; Wiley Decl. ¶¶ 8-10; O'Quinn Decl. ¶¶ 5-6, 10-11; Mannchen ¶¶ 5-7; Lewis Decl. ¶¶ 7-8; Hadayia ¶ 2; Wiley Decl. ¶¶ 5-10; Reyes Decl. ¶¶ 9-12).

Louisiana's emissions cause such harm, contributing significant ozone pollution to downwind states, including multiple parts per billion to ozone levels in Alabama (2.77-3.25 ppb), Arkansas (1.14-1.15 ppb), Mississippi (3.88-4.64 ppb), Oklahoma (0.78-1.67 ppb), Tennessee (1.11-1.36 ppb), and Texas (up to 12.57 ppb). *See* EPA, Data File with 2016v3 Ozone Design Values and Contributions, EPA-HQ-OAR-2021-0663-0070.

Similarly, Louisiana's emissions contribute towards more than 1% of the NAAQS[16] in many downwind areas failing to achieve safe levels of air quality. Notably, Louisiana's ozone contributions most harm *Texas*, Louisiana's co-petitioner in this case, with over *twelve million people* living in the Texas nonattainment areas to which Louisiana contributes between 1.02 and 9.51 ppb: Bexar, Brazoria, Collin, Dallas, Denton, Galveston, Harris, Montgomery, and Tarrant counties.[17]

## CONCLUSION

The Court should deny Louisiana's motion to stay EPA's Disapproval Rule.

Respectfully submitted,

*/s/ Joshua Smith*
Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300

---

[16] EPA's Disapproval Rule, as with three prior multistate ozone transport-related rulemakings, is based on the agency's determination that 1% of the NAAQS is the "appropriate threshold" for assessing interstate pollution impacts, 88 Fed. Reg. at 9,342, an approach that has been upheld by the Supreme Court. *See EPA v. E.M.E. Homer City Generation, L.P.*, 572 U.S. 489, 524 (2014).

[17] *See* EPA, Greenbook, 8-Hour Ozone (2015) Nonattainment Areas by State/County/Area, *available at* https://www3.epa.gov/airquality/greenbook/jncty.html (last visited April 17, 2023); EPA, Data File with 2016v3 Ozone Design Values and Contributions, EPA-HQ-OAR-2021-0663-0070.

Oakland, CA 94612
(415) 977-5560 (phone)
joshua.smith@sierraclub.org

*Counsel for Sierra Club*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned counsel states that this motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 3,951 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated: April 17, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

**CERTIFICATIONS UNDER ECF FILING STANDARDS**

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: April 17, 2023

*/s/ Joshua Smith*
Joshua Smith
Counsel for Sierra Club

## CERTIFICATE OF SERVICE

On this 17th day of April, 2023, a true and correct copy of the foregoing **Response in Opposition to Louisiana's Motion to Stay the Final Rule** was filed with the electronic case filing ("ECF") system of the U.S. Court of Appeals for the Fifth Circuit, which will provide electronic notice to counsel of record.

*/s/ Joshua Smith*
Joshua Smith