No. 23-60069

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LU-
MINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.;
ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN EN-
ERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE
COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES
OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL
& GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD
COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF
ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUI-
SIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; ENTERGY
LOUISIANA, L.L.C.; LOUISIANA CHEMICAL ASSOCIATION; MID-CONTINENT
OIL AND GAS ASSOCIATION; LOUISIANA ELECTRIC UTILITY ENVIRONMEN-
TAL GROUP, L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP,

*Petitioners,*

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. RE-
GAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY,

*Respondents.*

## MISSISSIPPI PETITIONERS' JOINT REPLY IN SUPPORT OF MOTION TO STAY

C. Grady Moore III
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
(205) 251-8100
gmoore@balch.com

Bradley A. Ennis
Susan Scaggs Stutts
BALCH & BINGHAM LLP
1310 25th Avenue
Gulfport, MS 39501
(228) 864-9900

Shawn S. Shurden
*General Counsel*
MISSISSIPPI POWER COMPANY
2992 West Beach Boulevard
Gulfport, MS 39502
(228) 229-0915

*Counsel for Petitioner Mississippi Power Company*

Lynn Fitch
  *Attorney General of Mississippi*
Whitney H. Lipscomb
  *Deputy Attorney General*
Justin L. Matheny
  *Deputy Solicitor General*
STATE OF MISSISSIPPI OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main St.
Oklahoma City, OK 73102
(512) 693-8350
mithun@lkcfirm.com

Michael B. Schon
Drew F. Waldbeser
Michael Cotton
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave NW
Washington, DC 20001
(512) 693-8350
mike@lkcfirm.com

*Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality*

## TABLE OF CONTENTS

Page

Table of Contents .................................................................................i

Table of Authorities ............................................................................ ii

Introduction ........................................................................................1

Argument .............................................................................................2

    I.   Mississippi Petitioners are likely to succeed on the merits.................2

        A.  EPA misapprehends its role in the state plan review process. ............................................................................2

        B.  EPA unlawfully disapproved Mississippi's plan based on non-statutory considerations.......................................4

    II.  The remaining factors also favor a stay. ...........................10

Conclusion.........................................................................................11

Certificate of Service .........................................................................14

Certificate of Compliance ................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Dep't of Env't Conservation v. EPA,*
 540 U.S. 461 (2004) ..................................................................................2, 4

*EPA v. EME Homer City Generation, L.P.,*
 572 U.S. 489 (2014) ..................................................................................2, 3

*Luminant Generation Co. v. EPA,*
 714 F.3d 841 (5th Cir. 2013) ..........................................................................4

*Michigan v. EPA,*
 213 F.3d 663 (D.C. Cir. 2000) ........................................................................7

*New York v. EPA,*
 964 F.3d 1214 (D.C. Cir. 2020) ..................................................................8, 10

*Arkansas v. EPA,*
 No. 23-1320 (8th Cir. May 25, 2023) ..............................................................1

*Sierra Club v. EPA,*
 356 F.3d 296 (D.C. Cir. 2004) ....................................................................7, 9

*Sierra Club v. EPA,*
 939 F.3d 649 (5th Cir. 2019) ..........................................................................4

*Sierra Club v. EPA,*
 972 F.3d 290 (3d Cir. 2020). ..........................................................................4

*Texas v. EPA,*
 829 F.3d 405 (5th Cir. 2016) ..................................................................2, 4, 11

*Texas v. EPA,*
 No. 23-60069 (5th Cir. May 1, 2023) .......................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 11

*Union Elec. Co. v. EPA,*
    427 U.S. 246 (1976) .............................................................................2

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) .............................................................................3

*Westar Energy, Inc. v. EPA,*
    608 F. App'x 1 (D.C. Cir. 2015) .........................................................4

**Statutes**

42 U.S.C. § 7410 .......................................................................................6

42 U.S.C. § 7426 .....................................................................................11

42 U.S.C. § 7475 ..................................................................................5, 6

**Regulatory Authorities**

69 Fed. Reg. 21,717 (Apr. 22, 2004) ......................................................9

87 Fed. Reg. 9,545 (Feb. 22, 2022) ......................................................7, 9

87 Fed. Reg. 68,483 (Nov. 15, 2022) .....................................................9

88 Fed. Reg. 9,336 (Feb. 13, 2023) ........................................................6

88 Fed. Reg. 36,654 (June 5, 2023) ......................................................11

Ozone Design Values and Contributions Proposed Revised
    CSAPR Update spreadsheet, EPA-HQ-OAR-2020-0272-0064
    (Oct. 15, 2020) ....................................................................................9

## INTRODUCTION

EPA's response to Mississippi Petitioners' motion to stay raises only arguments already rejected by this Court and others. *See Texas v. EPA*, No. 23-60069, Doc. 269 (5th Cir. May 1, 2023) ("Stay Order"); Order, *Arkansas v. EPA*, No. 23-1320 (8th Cir. May 25, 2023). EPA admits it did not grant Mississippi *any* deference, notwithstanding unambiguous statutory text and controlling caselaw saying it must. Resp. 14. That "inverts the [Act] and reflects misapprehension by EPA of its authorized role." Stay Order 16 (citations omitted).

Mississippi reasonably selected 1 ppb as the threshold for screening "significant contributions." *Compare* Stay Order 17 *with* Stay Motion 13-15. And Mississippi used an alternative definition of "maintenance receptor" to analyze which downwind sites would have NAAQS issues. *Compare* Stay Order 17 *with* Stay Motion 15-16. Although EPA denies that its disapproval of Mississippi's state plan bears any similarities to its disapproval of Texas's and Louisiana's plan, EPA's review of all three plans contained these similar fatal flaws. As with Texas and Louisiana, EPA both unlawfully supplanted Mississippi's policy judgments with its own and unlawfully based disapproval on "modeling data developed *after*" Mississippi submitted its plan. *Compare* Stay Order 18 *with* Stay Motion 17-19. EPA's unlawful disapproval causes significant and irreparable harm to Mississippi, and this Court should stay it. *See* Stay Order 20-24.

# ARGUMENT

## I.  Mississippi Petitioners are likely to succeed on the merits.

Precedent dictates EPA must defer to the choices states make while developing their state plans. *See* Stay Order 16-17 (collecting cases); Stay Motion 11-13. EPA disagrees, which is precisely why this Court already held that "EPA acted unlawfully" in denying Texas's and Louisiana's state plan. Stay Order 17. EPA's action towards Mississippi was no less unlawful.

### A.  EPA misapprehends its role in the state plan review process.

EPA's statutory authority is limited to the "deferential role" of confirming a state plan is consistent with statute. *Texas v. EPA*, 829 F.3d 405, 428 (5th Cir. 2016) ("*Texas 2016*"). The reason is simple:  Congress delegated to states, not EPA, the power to make "legislative choices in regulating air pollution" through state plans. *Union Elec. Co. v. EPA,* 427 U.S. 246, 269 (1976). If the state's plan involves "permissible" constructions of the Good Neighbor Provision, Stay Order 15 (quoting *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 524 (2014)), and relies on legislative and policy judgments supported by a "reasoned analysis," *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 490 (2004), neither EPA nor federal courts are permitted to second guess it. *See also* Stay Order 16-17.

EPA rejects these well-defined standards, claiming "deferring to a state's" submission is "particularly inappropriate," and instead arguing this Court must defer to *EPA's* disapproval, even if the state plan was wholly reasonable. Resp. 12-14.

EPA gets the statute backwards. Congress gave states, not EPA, primary authority to craft plans that comply with reasonable interpretations of the Act. *See* Stay Order 16-17. Indeed, preceding Mississippi's submission of its state plan, EPA recognized that states could adopt "various analytical approaches" in developing their plans. C.I. HQ-3 at 3.[1] EPA did not "promulgate any regulations regarding the States' Good Neighbor obligations" here, Stay Order 5, nor does the Act contemplate such regulations, *see EME Homer*, 572 U.S. at 509. Given this, EPA may not disapprove plans simply because it disagrees with a state's reasonable interpretation, and it is certainly not entitled to deference when it does. *See United States v. Mead Corp.*, 533 U.S. 218, 230 (2001) ("[W]here it is in doubt that Congress actually intended to delegate particular interpretive authority to an agency, *Chevron* is 'inapplicable.'" (citations omitted)).

EPA's claim that it deserves deference because it is "the expert agency" likewise conflicts with the statute and caselaw. Resp. 13. Nothing in the Act indicates Congress believed EPA had more expertise than states; EPA admits "States routinely undertake technically complex air quality determinations." *EME Homer*, 572 U.S. at 539 (Scalia, J., dissenting). State plans involve "intensely factual determinations" about the "particularities of the emissions

---

[1] This reply cites to the administrative record using the location and last digits of the document ID in EPA's certified list filed April 13, 2023. Thus, document ID EPA-HQ-OAR-2021-0663-0003 is cited as "C.I. HQ-3."

sources" in the state. *Texas 2016*, 829 F.3d at 421. Congress gave states primary responsibility for promulgating plans *because* they are best suited to account for "local conditions." *Alaska Dep't of Env't Conservation*, 540 U.S. at 507 (Kennedy, J., dissenting). So if the state's plan is based "on reasoned policy decisions," EPA must approve it even if it disagrees with those decisions. *Sierra Club v. EPA*, 939 F.3d 649, 686 (5th Cir. 2019).

The cases EPA relies on to claim deference are inapposite. Resp. 14. None addressed whether a court should defer to EPA's rejection of well-reasoned state plans. *Sierra Club v. EPA* refused to defer to EPA's unreasoned approval of a state plan. 972 F.3d 290 (3d Cir. 2020). *Westar Energy, Inc. v. EPA* affirmed EPA's disapproval of a state plan that "failed to provide any analysis at all." 608 F. App'x 1, 3 (D.C. Cir. 2015). And *Luminant Generation Co. v. EPA* afforded *Chevron* deference to the agency's legal interpretation of a *federal* enforcement provision, not its disagreement with the state's reasoning respecting a state plan provision the statute delegates to the states (like the Good Neighbor Provision). 714 F.3d 841, 856-57 (5th Cir. 2013).

## B. EPA unlawfully disapproved Mississippi's plan based on non-statutory considerations.

EPA's rejection of its "secondary" role in reviewing state plans led "EPA [to] act[] unlawfully." Stay Order 17 (citation omitted). Mississippi's plan reflects the State's independent judgments: adopting a screening threshold, selecting a definition of "maintenance receptor," and holistically analyzing the

significance of contributions. *See* C.I. R4-9; *contra* Resp. 14-15 (incorrectly arguing Mississippi did not adopt "an alternate framework for evaluating Good Neighbor obligations"). Yet EPA supplanted Mississippi's detailed analysis with EPA's "own technical analysis" premised on modeling unavailable to Mississippi. Resp. 14.

### 1. Mississippi reasonably explained why its projected contribution to Deer Park was not significant.

Mississippi exercised its statutory discretion to interpret "contribute significantly" to exclude contributions under 1 ppb. Stay Motion 6, 13-14. This Court has already held EPA's refusal to defer to Louisiana's reasonable "application of [the 1 ppb] contribution threshold" was unlawful. Stay Order 17.

EPA argues that Mississippi, like Louisiana, did not provide "technical analysis" supporting the 1 ppb threshold. Resp. 17. But because EPA previously admitted that a 1 ppb screening threshold is reasonable, Mississippi was plainly reasonable in adopting this threshold itself and had no obligation to provide further justification. *See* Stay Order 16 (EPA may not require states to "substantially justif[y]" their chosen analysis); C.I. HQ-4 at 2-4 (both one percent and 1 ppb were "reasonable" thresholds). Nonetheless, Mississippi provided further analysis.

Mississippi pointed out that, under the Prevention of Significant Deterioration (PSD) program, states must confirm new power plants will not "contribute to[] air pollution in excess" of the NAAQS. 42 U.S.C. § 7475(a)(3). EPA

had recently determined that a new plant presumptively will not "contribute" to an excess of the same NAAQS at issue here if it contributes less than 1 ppb. *See* C.I. R4-9 at 5-6. So, Mississippi explained, this confirmed it was reasonable to apply the same threshold to screening Good Neighbor contributions. Stay Motion 14.

EPA labels this comparison "inapt" because the PSD program applies to "areas already attaining the NAAQS." Resp. 17. But EPA itself interprets the "maintenance" prong of the Good Neighbor Provision as also including areas currently attaining the NAAQS. 88 Fed. Reg. 9,336, 9,341-42 (Feb. 13, 2023). And EPA specifically recognized in its March 2018 memo that the PSD program was relevant for considering significant contributions under the Good Neighbor Provision. C.I. HQ-3 at A-2. EPA also makes no effort to explain why "contribute" in § 7475(a)(3) means contributions over 1 ppb, but "contribute *significantly*" in § 7410(a)(2)(D)(i)(I) must include less. Mississippi's interpretation of "contribute significantly" was at least a "permissible" way of "effectuating the … Good Neighbor Provision," and EPA should have approved it. Stay Order 15.

Mississippi also provided a "receptor- and state-specific [technical] analysis" addressing its projected 0.79 ppb link to Deer Park. *Contra* Resp. 17. Mississippi relied on EPA's October 2018 memo, which explained that states could exclude maintenance receptors "currently measuring clean data," if

meteorological and emissions data showed attainment was likely to continue. C.I. HQ-5 at 3-4. Mississippi provided data showing just that. *See* C.I. R4-9 at 7-9; *see also* Stay Motion 6-7, 15-16.

EPA now argues Mississippi improperly relied on the October 2018 memo because EPA's modeling projected Deer Park to be a "nonattainment" receptor, not a "maintenance receptor." Resp. 15. But the October 2018 memo specifically explained that "sites with projected average and maximum design values above the NAAQS," like Deer Park, are "maintenance" receptors, if they "are currently measuring clean data." C.I. HQ-5 at 3. Mississippi's reliance on this alternative "definition of maintenance receptor," Stay Order 17 (citation omitted), which EPA has recognized as legitimate, *see* 87 Fed. Reg. 9,545, 9,550, 9,555-56 (Feb. 22, 2022), was reasonable.

EPA next argues that Mississippi did not incorporate 2018 data into its analysis. Resp. 15-16. But the final 2018 data was unavailable to Mississippi when it prepared its state plan. *See Sierra Club v. EPA*, 356 F.3d 296, 308 (D.C. Cir. 2004) ("*Sierra Club 2004*") (explaining states need not incorporate data released shortly before "the States submitted their [plans]"). Nor does Mississippi's exclusion of the 2018 data matter: all of EPA's own modeling "updates" confirm Deer Park will meet the NAAQS in 2023. *See* 87 Fed. Reg. at 9,557.

At bottom, EPA's demand for "further technical justification," *id.*, amounts to an unlawful attempt to "simply throw[] the burden of persuasion onto the states," *Michigan v. EPA*, 213 F.3d 663, 683 (D.C. Cir. 2000). EPA

did not find Mississippi's ultimate conclusion—that "imperceivable" contributions from Mississippi have "no correlation" to interstate ozone formation, C.I. R4-17 at 2—was unreasonable, only that it did not match EPA's preferred technical approach. Yet EPA refuses to say what sort of technical justification it was looking for. Instead, it "just left the court and future [states] to guess at the agency's meaning." *New York v. EPA*, 964 F.3d 1214, 1217, 1223 (D.C. Cir. 2020). Especially because EPA's modeling now confirms Mississippi's analysis of Deer Park was correct, its insistence that Mississippi's plan was not approvable is baffling.

### 2.    EPA's use of new modeling was unlawful.

EPA has no persuasive response to this Court's determination that it "likely violated [the statute] when it based its … disapproval[] in part on policies and modeling data developed *after*" Mississippi submitted its plan. Stay Order 18; *see also* Stay Motion 17-19.

EPA simply repeats the already-rejected argument that "[n]othing in the Act prohibits EPA from considering" new modeling. *Compare* Resp. 18 *with* Stay Order 20. That view fails to give "due consideration to the reliance the EPA itself had engendered" in the 2016 modeling or to the Act's structure. Stay Order 20. EPA may not "summarily reject [state plans] based on the States' failure to consider information that only became available after" submission, especially because here EPA "ignored its statutory deadline." *Id.* at 20-22. EPA describes the 2016 Modeling as "inaccurate" and "outdated,"

Resp. 19, but if EPA can render state plans irrelevant by simply tweaking its model, states will *never* be able to submit approvable plans.

EPA next wrongly denies its "longstanding policy" of accepting states' use of modeling available at the time of submission. Resp. 19. In fact, EPA has repeatedly explained it should not evaluate a state's plan "based on information that was not available at the time of submittal" because "that would create a moving target." 69 Fed. Reg. 21,717, 21,727 (Apr. 22, 2004); *see also Sierra Club 2004*, 356 F.3d at 308 (noting policy was longstanding in case about forward looking provision); 87 Fed. Reg. 68,483, 68,486 (Nov. 15, 2022) (confirming that policy as recently as November 2022).

EPA's decision to "move the administrative goalpost," Stay Order 20, was deeply prejudicial to Mississippi, *contra* Resp. 19-20. Every iteration of EPA's modeling produced materially different results:

| Projected Links[2] | December 2016 Model | 2016v1 | 2016v2 | 2016v3 |
|---|---|---|---|---|
| Deer Park, Harris County | 0.79 ppb | No Link | No Link | No Link |
| Galveston County | No Link | 1.55 ppb | No Link | 1.32 ppb |
| Bayland Park, Harris County | No Link | No Link | 1.04 ppb | 0.91 ppb |

[2] *See* C.I. HQ-3 at C-2 to C-4 (Dec. 2016 Model); Ozone Design Values and Contributions Proposed Revised CSAPR Update spreadsheet, EPA-HQ-OAR-2020-0272-0064 (Oct. 15, 2020), bit.ly/3WjboZK (2016v1 model data listed on the "2023 DVs & Contributions" tab); 87 Fed. Reg. at 9,557 (2016v2 model); C.I. HQ-10 (2016v2 model); C.I. HQ-70 (2016v3 model).

| Manvel Croix Park, Brazoria County | No Link | No Link | 0.92 ppb | No Link |
| Denton County | No Link | No Link | 1.14 ppb | 0.91 ppb |

EPA argues that these shifting results are irrelevant because each iteration linked Mississippi emissions *somewhere*. Resp. 20. But the inconsistency bolsters Mississippi's more holistic approach, while EPA's reliance on ever-shifting modeling created a "constantly moving target" impossible for Mississippi to otherwise meet. *New York*, 964 F.3d at 1224. For example, Mississippi explained in comments why its state plan remained adequate even considering EPA's 2016v2 modeling. *See* C.I. R4-17 at 2. EPA would render those comments futile, because EPA relied on yet additional modeling in its final disapproval (and doubtless would again, if Mississippi submitted a revised plan). That is the definition of "unfair surprise."

## II.  The remaining factors also favor a stay.

EPA admits its federal implementation plan will impose at least *some* "compliance burdens" on Mississippi. Resp. 2. Those burdens include significant compliance costs, a resource-intensive permitting process for Mississippi, and a weakened power grid. Stay Order 23-24; Stay Motion 20-21. EPA tries to downplay those harms by claiming Mississippi's "recent emissions are already less" than what it will be allocated for 2023 in the federal plan, Resp. 23, but that is demonstrably wrong, *see* Smith Decl. ¶¶ 11-12. Moreover, EPA does not contest other harms, *see* Stay Motion 21-22, or that these harms are irreparable, *see* Stay Order 23. And "[w]hen determining

whether injury is irreparable, it is not so much the magnitude but the irreparability that counts." *Texas 2016*, 829 F.3d at 433-34 (citation omitted).

EPA argues that these harms are irrelevant because they flow from the federal implementation plan, which EPA published yesterday. Resp. 10, 22; 88 Fed. Reg. 36,654 (June 5, 2023). But this Court already held that EPA's "Final [State Plan] Denial was the statutory prerequisite for the EPA to create the Final [Federal Plan] and impose its preferred system of emissions controls" on Mississippi. Stay Order 22. And because Mississippi's imminent and irreparable harms are tied to the federal plan that will now be effective in 59 days, Mississippi timely sought this stay. *Contra* Resp. 21-22.

The balance of equities favors a stay, too. EPA falsely argues that a "stay would leave no law on the books" to address Mississippi's emissions. Resp. 24. Mississippi sources are and will remain subject to a full suite of emissions regulations. *See* C.I. R4-9 at 2. Plus, EPA's current modeling projects that Mississippi will, at most, contribute barely over 1 ppb to one county in Texas. If it turns out that emissions from Mississippi do impede Texas, the Act provides specific means to address that. *See* 42 U.S.C. § 7426(b). The implication that a stay would leave air pollution from Mississippi completely unregulated is risible.

## Conclusion

The Court should stay, pending review, EPA's disapproval of Mississippi's state implementation plan.

Respectfully submitted,

/s/ *Justin L. Matheny*

C. Grady Moore III
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
(205) 251-8100
gmoore@balch.com

Bradley A. Ennis
Susan Scaggs Stutts
BALCH & BINGHAM LLP
1310 25th Avenue
Gulfport, MS 39501
(228) 864-9900

Shawn S. Shurden
*General Counsel*
MISSISSIPPI POWER COMPANY
2992 West Beach Boulevard
Gulfport, MS 39502
(228) 229-0915

*Counsel for Mississippi Power Company*

Lynn Fitch
  *Attorney General of Mississippi*
Whitney H. Lipscomb
  *Deputy Attorney General*
Justin L. Matheny
  *Deputy Solicitor General*
STATE OF MISSISSIPPI OFFICE OF THE
ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main St.
Oklahoma City, OK 73102
mithun@lkcfirm.com
(512) 693-8350

Michael B. Schon
Drew F. Waldbeser
Michael Cotton
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave NW
Washington, DC 20001
mike@lkcfirm.com
(512) 693-8350

*Counsel for State of Mississippi and Mississippi Department of Environmental Quality*

## CERTIFICATE OF SERVICE

On June 6, 2023, this reply was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses. Fifth Circuit Rule 25.2.1 is inapplicable because this filing does not require paper copies.

*/s/ Justin L. Matheny*
Justin L. Matheny

### CERTIFICATE OF COMPLIANCE

This reply complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,588 words, excluding the parts of the reply exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Justin L. Matheny*
Justin L. Matheny