No. 23-60069

# In the United States Court of Appeals for the Fifth Circuit

———————

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; ENTERGY LOUISIANA, L.L.C; LOUISIANA CHEMICAL ASSOCIATION; MID-CONTINENT OIL AND GAS ASSOCIATION; LOUISIANA ELECTRIC UTILITY ENVIRONMENTAL GROUP, L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP,

*Petitioners*,

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

———————

**TEXAS PETITIONERS' JOINT RESPONSE TO RESPONDENTS' MOTION FOR EXTENSION OF TIME AND LEAVE TO FILE CONSOLIDATED OVERSIZED RESPONSE BRIEF**

———————

# Introduction

Respondents seek a 78-day extension of time to file their consolidated response brief, which is currently due on June 29, and leave to expand the word limit of that brief to 50,000 words. Mot. 1. Texas Petitioners partially oppose each of those requests. Texas Petitioners do not oppose a 30-day extension of time for Respondents to file their brief—*i.e.*, an extension to Monday, July 31. And Texas Petitioners do not oppose an expansion of Respondents' word limit to 40,000 words, which would allow Respondents to respond in full to the arguments that Petitioners presented in their opening briefs.

But Texas Petitioners oppose any further extension of time for Respondents to file their brief and any further expansion of Respondents' word limit. Those extraordinary requests are not adequately supported, and granting the full extension request would slow the progress of this case while Respondents seek to *expedite* D.C. Circuit litigation involving challenges to different parts of the same Federal Register notice at issue here. Respondents' motion appears to be part of a larger effort to undermine the venue determination that a motions panel of this Court announced on May 1, and this Court should not condone that conduct. If Respondents are not satisfied with the May 1 venue determination in this case, their recourse is to seek reconsideration of that decision on or before their upcoming deadline, not to drag the venue fight into merits briefing.

# ARGUMENT

## I.   An Eleven-Week Extension Is Not Warranted, Especially in the Light of Respondents' Effort to Expedite D.C. Circuit Proceedings.

**A.**  Respondents assert (at 4-5) that even a 30-day extension "is tantamount to ordering expedited briefing" and that EPA "typically requests 60 days for respondent briefs, rather than the default 30 days, to allow sufficient time for interagency drafting and review." But nothing in the Federal Rules of Appellate Procedure or this Court's rules authorizes a lengthened, "default" briefing deadline for the federal government generally or EPA specifically. *Compare* Fed. R. App. P. 31(a)(1) (making no such special provision), *with id.* R. 4(a)(1)(B), 29(a)(2), 29(b)(2), 40(a)(1) (making several other special provisions for the United States and its agencies). Under this Court's rules, "[m]ore than ordinary good cause is required for a Level 2 extension, and Level 2 extensions will be granted only under the most extraordinary of circumstances," after the movant "demonstrate[s] diligence and substantial need" and "show[s] in detail what special circumstances exist that make a Level 1 extension insufficient." 5th Cir. R. 31.4.3.2; *see also id.* R. 31.4 I.O.P. ("In general and absent the most compelling of reasons, . . . no more than 40 days extension of time will be granted in civil cases.").

Here, EPA points (at 4) to the need to ensure adequate time for "interagency review and drafting." But such concerns are hardly unique to the federal government. Lawyers for the Texas state petitioners were required to coordinate with their three state-agency clients to facilitate review of their opening brief on the merits and motions-panel briefing to ensure timely filing. Likewise, lawyers for the numerous

Texas industry petitioners coordinated with their clients to ensure timely drafting and review of all of their filings to date.

Texas Petitioners appreciate that this consolidated action involves challenges to EPA's decisions to disapprove state implementation plans ("SIPs") submitted by Texas, Louisiana, and Mississippi. But each of those disapprovals is a discrete agency action "based on a number of intensely factual determinations unique to each State." Order at 11, *Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023) (per curiam) ("*Texas 2023*"). Challenges to those separate agency actions are proceeding on the same timeline in a consolidated case not based on factual or legal overlap, but rather because *EPA* opted to package its SIP disapprovals into a single Federal Register notice, thus establishing a single statutory deadline for petitions for review of all of EPA's separate disapprovals and leading the Clerk to consolidate the various challenges to EPA's disapprovals of the three States' SIPs. EPA should not be permitted to leverage its decision to disapprove multiple SIPs on the same day in one Federal Register notice to obtain an outsized length of time to file a response brief—more than double the time that Texas Petitioners needed to file their opening briefs, without any extensions, following the Court's issuance of an amended briefing notice.

**B.**   That is not, however, the only reason that Texas Petitioners partially oppose this extension request. Before requesting an extension in this case, Respondents asked the D.C. Circuit (its preferred venue) to *expedite* merits briefing on the petitions for review at issue in *Utah v. EPA*, No. 23-1102 (lead) (D.C. Cir.), which raise challenges to different parts of the same Federal Register notice at issue here. In that

consolidated proceeding, Respondents' motion to expedite was combined with a motion to confirm venue that criticized, and effectively sought to override, the legal reasoning in this Court's May 1 ruling on venue in this case. *See* App. A at 23 ("An order by [the D.C. Circuit] confirming that it is the exclusive venue for these challenges will thus aid the regional circuits considering this question. And an order expediting merits briefing will increase the likelihood that other merits panels will have the benefit of this Court's views on both venue and the merits before they rule."); *see* Doc. 269-1. To the extent that Respondents' request for a total of 108 days to file their brief in this case—coupled with their attempt to expedite proceedings in the D.C. Circuit—is an effort to slow down proceedings in what Respondents perceive to be an unfavorable venue and speed up proceedings in what Respondents consider to be a favorable one, this Court should decline to facilitate that maneuvering.

As evidenced by their filings in the D.C. Circuit, EPA and its attorneys have the time and ability to complete briefing on an expedited schedule, and certainly with a 30-day extension. Respondents have not asked the Court to accommodate vacation schedules of their counsel. They instead ask the Court to help them deploy their resources in the way they think most advantageous for them. But the rules do not afford them that prerogative. And because the present case in this Court was filed well before the D.C. Circuit case that EPA seeks to expedite, EPA should proceed to file its brief in this Court in the normal course with no more than a 30-day extension. *Compare Texas v. EPA*, No. 23-60069 (Fifth Circuit petition docketed February 14, 2023), *with Utah v. EPA*, No. 23-1102 (D.C. Circuit petition docketed April 13, 2023).

Moreover, Respondents erroneously claim (at 7) that Texas Petitioners would not be prejudiced by an over-sized extension and unnecessary delay in resolving this case. Respondents correctly note that this Court has stayed EPA's disapproval of Texas's SIP (Doc. 269-1), which should prevent EPA from taking any action based on that disapproval. Even so, a stay is a temporary measure, and Texas Petitioners have a substantial and reasonable interest in a prompt final decision on the merits of their petitions and the lawfulness of EPA's disapproval of the Texas SIP, given the long-term compliance obligations at stake.

Further, contrary to Respondents' claim (at 7), EPA *has* "issue[d] a federal plan as to Texas." EPA's federal implemental plan ("FIP") for Texas was published in the Federal Register on June 5, 2023, notwithstanding the Court's stay order. *See* 88 Fed. Reg. 36,654 (June 5, 2023). Respondents claim (at 7) that EPA "will take action in the near future that will ensure the Good Neighbor Plan's [FIP] requirements issued to implement good neighbor obligations for the 2015 ozone NAAQS as to sources in . . .Texas [and other States] will not take effect while the stays of the SIP disapproval action with respect to those states remain in place." EPA, Notice of Forthcoming EPA Action to Address Judicial Stay Orders (June 1, 2023), https://www.epa.gov/csapr/notice-forthcoming-epa-action-address-judicial-stay-orders (App. B). But EPA has not taken such remedial action, has not revealed when it expects to do so, and has not described either the form or substance such an action may take. Given the uncertainty caused by EPA's premature publication of its FIP for Texas, Texas Petitioners have a strong interest in a prompt final resolution of this case.

## II. An Expansion to 40,000 Words Is Sufficient for Respondents' Brief, Especially Because That Brief Is Not the Place to Relitigate Venue.

**A.**  Texas Petitioners do not oppose a reasonable extension of the word limit for Respondents' brief. But an extension to 50,000 words would be excessive. The combined word count of the argument sections of the five opening briefs is approximately 33,400 words. Some of the five petitioners' arguments overlap, but even if they did not, a 40,000-word brief would allow Respondents to separately address all of those arguments using the same number of words the petitioners collectively used and have roughly 6,600 words left over for the other parts of the brief that count toward the word limit (which, in the Texas state petitioners' opening brief, totaled roughly 5,700 words). If Respondents were required to draft five separate statements of the case, an expansion beyond 40,000 words might be warranted. But they of course need, and the Court would presumably prefer, only one respondent-side statement of the case. *See* Fed. R. App. P. 28(b).

**B.**  Respondents contend (at 6-7) that additional words are needed in part because "the issue of proper venue . . . must be briefed along with EPA's defense of the Final Rule on the merits." Texas Petitioners disagree. The motions panel expressly "denied" Respondents' motion to transfer venue. *Texas 2023* at 24. If Respondents want to challenge that decision, they may seek reconsideration by their June 15, 2023, deadline to do so, *see* Fed. R. App. P. 40(a)(1); *Nat'l Parks Conservation Ass'n v. EPA*, 991 F.3d 681, 683 (5th Cir. 2021). In that event, they would presumably obtain a ruling on their reconsideration request before their response brief

is due. Condoning Respondents' effort to prolong the venue fight further, allowing it to consume part of the merits briefing, would undermine judicial economy.

## Conclusion

If it grants any of the relief that Respondents seek, the Court should make Respondents' brief due no later than July 31, 2023, and permit that brief to be no longer than 40,000 words.

Respectfully submitted.

JOHN SCOTT
Provisional Attorney General

LANORA C. PETTIT
Principal Deputy Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Bill Davis
BILL DAVIS
Deputy Solicitor General
Bill.Davis@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

MICHAEL R. ABRAMS
WILLIAM F. COLE
Assistant Solicitors General

Counsel for Petitioners State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas

/s/ P. Stephen Gidiere III

P. Stephen Gidiere III
Julia B. Barber
Balch & Bingham LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

Stephanie Z. Moore
Executive Vice President & General Counsel
Daniel J. Kelly
Senior Vice President & Deputy General Counsel
David W. Mitchell
Senior Counsel, Environmental
Vistra Corp.
6555 Sierra Drive
Irving, Texas 75039

Counsel for Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC

/s/ Aaron M. Streett
Aaron M. Streett
Matthew L. Kuryla
Baker Botts L.L.P.
910 Louisiana St.
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522
aaron.streett@bakerbotts.com

Counsel for Association of Electric Companies of Texas, BCCA Appeals Group, Texas Chemical Council, and Texas Oil & Gas Association

/s/ Megan H. Berge
Megan H. Berge
Baker Botts L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233
megan.berge@bakerbotts.com

J. Mark Little
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489

Attorneys for Texas Lehigh Cement Company LP

## CERTIFICATE OF SERVICE

On June 9, 2023, this response was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Bill Davis
BILL DAVIS

## CERTIFICATE OF COMPLIANCE

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,723 words, excluding the parts of the document exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Bill Davis
BILL DAVIS

APPENDIX A

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| STATE OF UTAH, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 23-1102 (and |
| | ) | consolidated cases) |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, et al., | ) | |
| | ) | |
| Respondents | ) | |
| _____ | ) | |

## RESPONDENT EPA'S MOTION TO CONFIRM VENUE AND TO EXPEDITE CONSIDERATION

In these consolidated cases, eight groups of petitioners challenge a final rule promulgated by the Environmental Protection Agency ("EPA") under the Clean Air Act entitled, "Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards" (the "Final Rule" or "Rule"), 88 Fed. Reg. 9336 (Feb. 13, 2023).  In that Rule, EPA applied a nationally uniform set of policies and methodologies to determine that 21 states had submitted plans that failed to comply with the Act's "Good Neighbor Provision," which requires upwind states to address air pollution that is blowing into downwind neighbor states and preventing them from meeting federal air quality standards.

Under the Clean Air Act, petitions challenging EPA rules that are either "nationally applicable" or that are locally or regionally applicable but "based upon a determination of nationwide scope or effect" made and published by EPA must be filed in the D.C. Circuit. 42 U.S.C. § 7607(b)(1). Notwithstanding this requirement, seven groups of petitioners before this Court also filed petitions challenging the Final Rule in the regional circuits and have opposed EPA's efforts to consolidate adjudication of EPA's action in this Court, undermining Congressional intent to vest this Court with exclusive review of EPA actions that affect multiple states in different regions of the country.

In consideration of this and other parties' efforts to evade the Clean Air Act's unambiguous venue provision, Respondents EPA and Michael S. Regan, Administrator (collectively, "EPA"), respectfully request that this Court issue an order confirming its view that it is the exclusive venue for challenges to the Rule. Respondents further request that this Court designate these cases for expedited consideration and direct the parties to file briefing proposals no later than 7 days after its order that will allow for oral argument by the end of 2023, consistent with Section X.D. of the Court's Handbook of Practice and Internal Procedures. These orders will effectuate Congressional intent and minimize the risk of contradictory circuit rulings on a pollution problem that, by definition, heeds neither state nor circuit boundaries.

Petitioners in case Nos. 23-1105, 23-1106, 23-1107, and 23-1115, and Deseret Generation & Transmission Co-operative (of No. 23-1112) oppose this motion. The remaining petitioners did not provide a response.

## BACKGROUND

### I.    The Clean Air Act's "Good Neighbor Provision."

The Clean Air Act seeks to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare."  42 U.S.C. § 7401(b)(1).  The Act controls air pollution through a system of shared federal and state responsibility.  *See Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990).  It directs EPA to set National Ambient Air Quality Standards ("NAAQS") for widely occurring pollutants, including ozone, which establish permissible concentrations of those pollutants in the ambient air.  42 U.S.C. § 7409(b)(1).  Each state must then prepare a state implementation plan (known as a "SIP") for EPA's review, "which provides for the implementation, maintenance, and enforcement" of the NAAQS within the state.  *Id.* § 7410(a)(1).

State plans addressing new or revised NAAQS must, among other requirements, comply with the Good Neighbor Provision, a portion of the Act that requires each state to prohibit air pollution from the state that "contribute[s] significantly to nonattainment" or "interfere[s] with maintenance" of the NAAQS in other states.  *Id.* § 7410(a)(2)(D)(i)(I).  The Good Neighbor Provision addresses

3

the plain fact that air pollutants do not heed state boundaries. Ozone-causing

pollution in particular is known to travel long distances across multiple states,

leaving downwind states to bear responsibility – absent the Good Neighbor

Provision – for poor air quality caused in part by upwind neighbors. *See EPA v.*

*EME Homer City Gen., L.P.*, 572 U.S. 489, 496 (2014); 88 Fed. Reg. at 9339-40;

*see* Fig. 1[1] (depicting interstate ozone pollution linkages in final EPA modeling).



**FIG. 1**

To ensure that all downwind areas can attain and maintain the NAAQS, the

Clean Air Act requires EPA to disapprove every state plan that does not comply

---

[1] Available at: https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs#maps.

with the Good Neighbor Provision.  42 U.S.C. § 7410(k)(3).  EPA must then

promulgate a federal implementation plan in the state's place within two years,

unless the state submits a revised plan that EPA approves.  *Id.* § 7410(c)(1).  In the

case of the Good Neighbor Provision, those federal plans have relied on broad,

national-scale approaches to ensure equity and consistency between states.  *See,

e.g.*, 76 Fed. Reg. 48,208 (Aug. 8, 2011) (Cross-State Air Pollution Rule); 81 Fed.

Reg. 74504 (Oct. 26, 2016) (CSAPR Update); Federal "Good Neighbor Plan" for

the 2015 Ozone NAAQS (signed March 15, 2023).[2]

## II.    The Clean Air Act's venue provision.

When a petitioner seeks review of an EPA final action taken pursuant to the

Clean Air Act, 42 U.S.C. § 7607(b)(1) makes venue exclusive in a single court of

appeals.  To determine which circuit court, the Act classifies final actions into

three categories.  First, a challenge to a "nationally applicable" EPA final action

"may be filed only in the" D.C. Circuit.  *Id.*  Second, a challenge to an EPA final

action "which is locally or regionally applicable may be filed only in" the court of

appeals for the appropriate regional circuit.  *Id.*  If, however, a locally or regionally

applicable action "is based on a determination of nationwide scope or effect," and

---

[2] Pre-publication version available at: https://www.epa.gov/system/files/
documents/2023-03/FRL%208670-02-OAR_Good%20Neighbor_Final_
20230314_ Signature_ADMIN%20%281%29.pdf.

EPA "finds and publishes" that it is based on such a determination, challenges to that action constitute a third category and "may be filed only in the [D.C. Circuit]." *Id.*; *see Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 386 (D.C. Cir. 2022). Venue in Clean Air Act challenges is, therefore, based exclusively on the nature of EPA's "final action." *See* 42 U.S.C. § 7607(b)(1).

## III. EPA's disapproval of state Good Neighbor plans for the 2015 ozone NAAQS.

On October 1, 2015, EPA tightened the NAAQS for ozone. 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 ozone NAAQS"). This revision in turn required each state to submit a state plan for EPA's review, establishing how the state would implement the Good Neighbor Provision. *See* 42 U.S.C. § 7410(a)(1). EPA assessed these state Good Neighbor plans through a unified review that applied "a common core of nationwide policy judgments and technical analysis" built upon this Court's Good Neighbor jurisprudence and EPA's longstanding 4-step interstate transport framework. 88 Fed. Reg. at 9380; *see also id.* at 9337-38, 9339-40. The Supreme Court and D.C. Circuit have reviewed and repeatedly upheld the 4-step framework. *See, e.g.*, *EME Homer City Gen., L.P.*, 572 U.S. 489; *Midwest Ozone Grp. v. EPA*, 61 F.4th 187 (D.C. Cir. 2023); *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019); *EME Homer City Gen., L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015).

The 4-step framework allowed EPA to make consistent judgments based on its understanding of the complex dynamics of interstate pollution. EPA also gave full consideration to any alternative approach states proposed in their submissions, with an eye to maintaining consistency and equity across states. *Id.* at 9338, 9381.

Upon evaluation, EPA disapproved state plans from 21 states for failure to meet the Good Neighbor Provision. Each of those states had concluded that it had *no* emissions that significantly contributed to downwind air pollution. 88 Fed. Reg. at 9375. In the case of these 21 states, EPA found these conclusions were unsupported and at odds with the available evidence, whether based on the states' submissions alone or supplemented by EPA's own analysis showing ozone-pollution linkages between multiple upwind and downwind states. *Id.* at 9343.[3]

The Final Rule is directly applicable within eight of the ten EPA Regions and ten federal judicial circuits. *Id.* at 9337. The Rule stated that petitions for judicial review were to be filed in the D.C. Circuit because the rule is nationally

---

[3] By contrast, EPA's subsequent federal plan, which is not at issue here, found that these 21 states could cost-effectively eliminate approximately 70,000 tons of ozone-forming pollution significantly contributing to downwind air quality problems – saving thousands of lives, improving the health of millions of Americans, and reaping net benefits in the billions of dollars. *See* https://www.epa.gov/system/files/documents/2023-03/Final%20Good%20Neighbor%20Rule%20Fact%20Sheet_0.pdf.

applicable or, in the alternative, is based on a determination of nationwide scope or effect made and published by EPA. *Id.* at 9380.

## IV.    Challenges to the Final Rule.

Following publication of EPA's action, parties filed 42 petitions for review of the Final Rule in the regional and D.C. Circuits. Of these petitions, 25 were filed by parties seeking review exclusively in the regional circuits. One petitioner, the State of Nevada, filed a challenge only in the D.C. Circuit. *See* D.C. Cir. No. 21-1113. The remaining challengers filed petitions in both the D.C. Circuit and regional circuits. Petitions are pending as follows:

- D.C. Circuit (eight petitions, Nos. 23-1102, et al.)

- Fourth Circuit (one petition, No. 23-1418)

- Fifth Circuit (ten petitions, Nos. 23-60069, et al.)

- Sixth Circuit (two petitions, Nos. 23-3216, et al.)

- Eighth Circuit (eight petitions, Nos. 23-1320, et al.)

- Ninth Circuit (one petition, No. 23-682)

- Tenth Circuit (ten petitions, No. 23-9509, et al.)

- Eleventh Circuit (two petitions, Nos. 23-11173, et al.)

For all petitions pending in the regional circuits, the United States has moved for transfer to the D.C. Circuit or, in the alternative, dismissal based on improper venue. *See also* Order of the 11th Cir., No. 23-11173, ECF 9-2 (ordering

the parties to address jurisdiction because "it appears that this court may lack jurisdiction over this appeal"). As of this filing, three circuits have acted on those motions to transfer or dismiss. In an unpublished order, a divided panel of the Fifth Circuit denied the United States' venue motions and preliminarily rejected EPA's conclusion that the Disapproval Rule is nationally applicable or based on a determination of nationwide scope or effect, but the court noted that its determinations "do not bind the merits panel." *Texas v. EPA*, 5th Cir. No. 23-60069, ECF 269-1 at 6-13, 24 (May 1, 2023). That panel also stayed the Final Rule as to Texas and Louisiana pending review on the merits. *Id.* at 24. An administrative panel of the Eighth Circuit denied without explanation the United States' venue motion with respect to one petition, *Arkansas v. EPA*, 8th Cir. No. 23-1320, ECF 5269098 (April 25, 2023), but has not yet decided motions addressing the other seven petitions. On May 9, 2023, EPA moved for reconsideration of the Eighth Circuit's order. *Id.* at ECF 5275217. The Tenth Circuit referred its venue motions to the merits panel. *State of Utah v. EPA*, 10th Cir. Nos. 23-9509, et al., ECF 010110851072 (April 27, 2023).

## ARGUMENT

The Final Rule is, by its terms, nationally applicable or, at a minimum, based upon a determination of nationwide scope or effect made and published by EPA. Congress was unequivocal that in such circumstances, venue lies exclusively in the

D.C. Circuit to avoid the risk of contradictory rulings on actions where national uniformity is desirable.  Indeed, the D.C. Circuit has already developed a significant body of case law concerning the Good Neighbor Provision implemented in the Final Rule, consistent with that Congressional intent.  As such, venue is proper only in this Court.  Nonetheless, the Rule is presently the subject of pending challenges in seven other circuits, creating a substantial risk of divergent judicial rulings that would impose contradictory obligations on EPA and create profound inequities among upwind states and between upwind and downwind states subject to a single, common Clean Air Act obligation.

For these reasons, an order confirming exclusive venue in this Circuit and expediting proceedings is warranted to ensure the regional circuits have the benefit of this Court's view, and to address the compelling public interest in ensuring the Act's air quality standards can be achieved nationwide.

## I.    By statute, challenges to the Final Rule must be adjudicated in the D.C. Circuit.

The Clean Air Act's venue provision is unambiguous: when a final action is "nationally applicable," or when EPA makes and publishes a finding that a locally or regionally applicable action is based on a determination of "nationwide scope or effect," petitioners must bring challenges in the D.C. Circuit.  42 U.S.C. § 7607(b)(1).  The Final Rule applies a national framework to a problem of interstate

pollution and is not confined to any particular locality or region. Accordingly,

challenges must be adjudicated in this Court.

### A.     The Rule is nationally applicable.

Challenges to "nationally applicable" EPA final actions under the Clean Air

Act may be filed "only" in this Court. 42 U.S.C. § 7607(b)(1); *see also Chevron*,

45 F.4th at 385-86. As all courts that have addressed the question have held,

whether an action is "nationally applicable," or instead "locally or regionally

applicable," is a narrow inquiry based on "the face of the rule, rather than its

practical effect." *Chevron*, 45 F.4th at 386. The inquiry turns on the nature of the

agency action, not the nature of a petitioner's challenge. *Am. Rd. & Transp.

Builders Ass'n v. EPA*, 705 F.3d 453, 456 (D.C. Cir. 2013).

On its face, the Final Rule is nationally applicable. The Rule applies a

uniform and nationally consistent approach to reviewing plans submitted by states

across the country, disapproving state plans from 21 states in ten federal judicial

circuits. 88 Fed. Reg. at 9380; *see ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194,

1200 (10th Cir. 2011) (transferring challenge to action pertaining to 18 states

because EPA employed a single uniform regulatory approach); *S. Ill. Power Coop.

v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (transferring challenge to action

covering 24 states that EPA "promulgated pursuant to a common, nationwide

analytical method"); *W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998

WL 827315, at *6-7 (4th Cir. Dec. 1, 1998) (transferring challenge to Good Neighbor rule finding 23 state plans "substantially inadequate" under a "common legal interpretation" and common analysis).

As the Rule explained, ozone transport presents a "collective contribution" challenge in which many smaller contributors across multiple broad regions combine to generate a downwind air quality problem.  88 Fed. Reg. at 9340, 9342; *EME Homer*, 572 U.S. at 496-97.  Given the "interdependent nature of interstate pollution transport," EPA's review of the state plans applied "a uniform legal interpretation and common, nationwide analytical methods," 88 Fed. Reg. at 9340, 9342, and employed "a consistent set of policy judgments across all states for purposes of evaluating interstate transport obligations," *id.* at 9339 – relying on the "nationally consistent 4-step interstate transport framework" this Court has upheld numerous times.  *See supra* Background III.  Even when EPA evaluated an individual state's arguments for the use of alternative approaches or data, EPA did so "with an eye to ensuring national consistency and avoiding inconsistent or inequitable results among upwind states … and between upwind and downwind states."  88 Fed. Reg. at 9381.

The broad geographic scope of the Rule, the inherently interstate nature of Good Neighbor obligations, and the necessarily national scope of technical determinations "account[ing] for the vagaries of the wind," *EME Homer*, 134 S.

Ct. at 497, make plain why this action is easily distinguishable from those instances in which this Court has concluded that EPA action was not nationally applicable. *See Sierra Club v. EPA*, 47 F.4th 738, 743 (D.C. Cir. 2022) (transferring a challenge to EPA's approval of state plan revisions that "on their face apply only to Houston and Dallas"); *Am. Rd. & Transp.*, 705 F.3d at 455-56 (dismissing a petition where EPA declined to find nationwide scope or effect for an action operative only within California). The Court in those cases referred to EPA's state plan approvals or disapprovals as "prototypical 'locally or regionally applicable' action[s]." *Id.*; *see also Chevron*, 45 F.4th at 386. That description befitted those EPA actions addressing a single state's plan to address its *intra*state emissions and its *own* air quality. But that description, and this Court's holdings, are inapt in the context of an EPA action addressing *inter*state pollution of 21 states contributing to degraded air quality in *other* states. *Cf. Am. Rd. & Transp.*, 705 F.3d at 4556; *Sierra Club*, 47 F.4th at 743; *EME Homer*, 572 U.S. at 496-97. The Clean Air Act's venue provision provides only two choices: an action can either be "nationally applicable" or "locally or regionally applicable." 42 U.S.C. § 7607(b)(1). The Rule could only reasonably be understood to fall within the former category.

It makes no difference whether a petitioner purports to challenge the effects of the Rule only as applied to its own state. The question is whether the action

13

itself is nationally applicable, not whether the nature and scope of the specific

arguments raised or relief sought are nationally applicable. *See Am. Rd.*, 705 F.3d

at 456. A contrary approach for what constitutes a "nationally applicable" action

would needlessly complicate the venue analysis and create difficult line-drawing

problems. *See NRDC v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988). And in

any event, Petitioners' preliminary filings do not reference challenges to any

narrowly local aspect of EPA's Rule, but rather allege the unlawfulness of

nationally uniform aspects of EPA's state plan analyses that must be adjudicated in

the D.C. Circuit. *See, e.g.*, Utah Stay Mot., 10th Cir. No. 23-9509, ECF Doc. No.

010110823083, at 13-14 (arguing EPA's 4-step framework is an unlawful policy

preference).

## B.  EPA also properly made and published a finding that the Rule is based on a determination of nationwide scope or effect.

If this Court concludes that the Rule is locally or regionally applicable,

venue is nonetheless proper in this Court because the Rule is "based on a

determination of nationwide scope or effect" under Section 7607(b)(1), and EPA

so found when it published the Rule. 88 Fed. Reg. at 9380-81. As this Court has

explained, "Congress … entrusted EPA with discretion to determine the proper

venue" for "locally or regionally applicable actions that are based on a

determination of nationwide scope or effect" "as the [A]gency sees fit." *Sierra

Club v. EPA*, 47 F.4th 738, 745-46 (D.C. Cir. 2022); *see ABF Freight Sys. Inc. v.*

*NLRB*, 510 U.S. 317, 324 (1993) ("When Congress expressly delegates …

authority to make specific policy determinations, courts must give the agency's

decision controlling weight unless it is arbitrary, capricious, or manifestly contrary

to the statute.").  Indeed, Congress intended "a determination of nationwide scope

and effect" – leading to "exclusive" review in the D.C. Circuit – to "includ[e] a

determination which has scope or effect *beyond a single judicial circuit*."  H.R.

Rep. 95-294, 323-24, 1977 U.S.C.C.A.N. 1077, 1402-03 (emphasis added); *see

also, e.g.*, *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24,

2011) (finding "clear congressional intent" that "piecemeal review" of national

state implementation plan issues outside the D.C. Circuit unduly "risks potentially

inconsistent results").

 That is undoubtedly the case here, where even individual state Good

Neighbor plans implicate air quality relationships between states in multiple

judicial circuits.  *See infra* Argument II.  As such, EPA's finding here was

eminently reasonable and consistent with the Clean Air Act, and, at a minimum, is

entitled to significant deference.  *See Alcoa, Inc. v. EPA*, No. 04-1189, 2004 WL

2713116 at *1 (D.C. Cir. Nov. 24, 2004) (per curiam) (declining transfer to

regional circuit because EPA "has unambiguously determined that the final action

… has nationwide scope and effect"); *Nat'l Env't Dev. Assoc.'s Clean Air Project

v. EPA*, 891 F.3d 1041, 1053 (D.C. Cir. 2018) (Silberman, J., concurring).

Moreover, as discussed above with respect to the Rule's national applicability, EPA's finding that the Final Rule has nationwide scope or effect, not merely local or regional scope or effect, was robustly supported by its application of consistent technical and policy judgments and an assessment of alternative state approaches that took account of equity concerns among states.  88 Fed. Reg. at 9381.  This is evident throughout the Rule, where common issues or arguments were resolved with a common methodology or policy.  *See, e.g.*, *id.* at 9372 (finding legally and technically inadequate seven states' argument that guidance for another permitting program is applicable to the Good Neighbor Provision); *id.* at 9378 (finding legally inadequate ten states' arguments related to international emissions and relative contribution); *id.* at 9354-60 (finding common analytic problems with the reliance on back trajectories to discount linkages by eight states).

\* \* \*

Because the Final Rule is nationally applicable or, alternatively, based on a published determination of nationwide scope or effect under Section 7607(b)(1), challenges to the Rule must be adjudicated in the D.C. Circuit.

II.    **Ongoing adjudication in multiple circuits risks substantial inequities that are both harmful to states and the public and contrary to this Court's articulation of the statutory command.**

Petitioners' decisions to file petitions in the regional circuits instead of this Court are not merely contrary to the text of the Clean Air Act's venue provision. They also introduce a substantial risk of divergent judicial rulings, which would be particularly unfortunate given the inherently interconnected problem of interstate ozone pollution.  *See EME Homer*, 572 U.S. at 496-97.  In such circumstances, states might receive differential treatment despite their common obligation, complicating not only EPA's administrative practice but introducing inequities at odds with the intent of the Good Neighbor Provision itself.

As a preliminary matter, divergent rulings could lead to different legal standards and analytical requirements in different states – potentially requiring EPA to use different modeling, data sets, and statutory interpretations when reviewing state Good Neighbor submissions that specifically address pollution flowing between states and regions.  This would be enormously disruptive for an air quality program that relies upon developing a complex, comprehensive technical understanding of how air pollutants move, interact, and are influenced by meteorological, topographical, and anthropogenic conditions across the nation.

The D.C. Circuit has for decades played a critical role in defining the legal and technical features of the Good Neighbor Provision in the context of both

federal and state plans; divergent rulings on these matters could create an

unadministrable tangle of standards and obligations at odds with this Court's

longstanding jurisprudence in this area. *See* 88 Fed. Reg. at 9361-63, 9366-68

(describing how this Court's prior holdings determined the timing and design of

the Rule); *see also supra* Background III; *Maryland v. EPA*, 958 F.3d 1185, 1203-

04 (D.C. Cir. 2020) (holding EPA acted unlawfully in allowing "significant

contribution" to continue past the first attainment date for the 2015 ozone NAAQS

in 2021); *Westar Energy, Inc. v. EPA*, 608 F. App'x 1, 3 (D.C. Cir. 2015).

Furthermore, divergent rulings would risk significant inequities among and

between downwind and upwind states. Whether a downwind state could expect

assistance from upwind neighbors in addressing air quality problems attributable to

their collective emissions would depend not on a comprehensive, consistent

understanding of ozone transport between the states, but on which states, and

circuits, are located upwind. Upwind states, meanwhile, would find their own

burdens determined by circuit-court borders rather than by the consistent

nationwide policy that the Good Neighbor Provision contemplates. *Cf. EME*

*Homer*, 572 U.S. at 496-97.

It is easy to envision a scenario where some upwind states are required to

reduce their emissions under the Good Neighbor Provision while others are not,

even where those states are contributing the *same* amount of pollution to the *same*

downwind state and have the *same* capacity to reduce their emissions cost-effectively. *Cf. id.* at 519-20. For example, EPA's modeling showed that Utah, Arizona, and California all contribute pollution to the Fort Collins, Colorado air quality receptor; if the Ninth and Tenth Circuits were to rule inconsistently on the Final Rule, some of these states might escape pollution controls even as the others were held to account. *See* "Air Quality Technical Support Document: 2015 Ozone NAAQS SIP Disapproval Final Action" at App. C, E.[4]

The problem could be even more dramatic in the context of downwind states like Wisconsin, which receives pollution from seven upwind states in four judicial circuits, or Texas, which receives pollution from nine upwind states in six judicial circuits. *Id.* Indeed, divergent rulings could create inequities within the context of a single state: states like Texas, Utah, and Nevada might well receive assistance from their upwind neighbors even as they provided no such assistance to their downwind neighbors in turn (or vice versa). *Id.* This is not an abstract concern. After a divided preliminary ruling on venue, the Fifth Circuit stayed the Rule as to Texas and Louisiana, even as states up- and downwind remain subject to the Rule and to EPA's subsequent federal plan. *See Texas v. EPA*, 5th Cir. No. 23-60069,

---

[4] Available at: https://www.regulations.gov/document/EPA-HQ-OAR-2021-0663-0085.

ECF 269-1 at 24.[5]  Congress surely did not intend that this single provision of the

Clean Air Act would dole out differential treatment of similarly situated states.

Moreover, denying or deferring the United States' motion could

unreasonably delay resolution of the central questions at issue here.  The seven

regional circuits with petitions before them are either presently considering (or

reconsidering) venue, or have preserved these issues for consideration by the

merits panels.  Several of these circuits are also considering, or have granted,

motions to stay the Rule as to particular states.  If the regional circuits conclude

that venue was proper in the D.C. Circuit, adjudication of these matters would

restart in this Court – but only after additional months of uncertainty that, paired

with potential stay orders, would unreasonably delay upwind states' satisfaction of

their air quality obligations.

This Court has repeatedly held that upwind obligations under the Good

Neighbor Provision must be satisfied on or before the Act's deadlines for

attainment of air quality standards in downwind areas.  *Wisconsin*, 938 F.3d at

312-17; *North Carolina v. EPA*, 531 F.3d 896, 912 (D.C. Cir. 2008); *see also*

*Midwest Ozone Grp.*, 61 F.4th at 193.  Where upwind compliance with the

---

[5] The Fifth Circuit motion panel's discussion of petitioners' likelihood of success
on the merits of their challenge highlights the potential for divergence from this
Court's long-settled precedents governing federal review of state plans and the
Good Neighbor Provision in particular.  *See, e.g.*, *id.* at 14-24.

Provision is delayed, downwind states are left with "the choice of flouting the [air quality] attainment deadlines or making greater [emission] reductions than the Good Neighbor Provision requires" – a choice that is "incompatible with the substance of Congress' regulatory scheme," *Wisconsin*, 938 F.3d at 316, and that leaves downwind residents to breathe dirtier air, or absorb greater costs, than equity would require.  Meanwhile, upwind states are allowed to "reap[] the benefits of the economic activity causing the pollution without bearing all the costs." *EME Homer*, 572 U.S. at 495.  Delaying resolution of these challenges can only increase these inequities.

These outcomes would be directly at odds with the principles underlying the Good Neighbor Provision, which sought to allocate responsibility fairly between upwind and downwind states.  *EME Homer*, 572 U.S. at 496-98.  They would also be directly at odds with the design of Section 7607(b)(1) and Congress's goal of "centraliz[ing] review of national [state implementation plan] issues in the D.C. Circuit" to take advantage of the D.C. Circuit's "administrative law expertise," facilitate "the orderly development of the basic law under the Act," and avoid "potentially inconsistent results."  *See, e.g.*, *Texas v. EPA*, 2011 WL 710598, at *4 (citing H.R. Rep. 95-294 at 324).  Maintaining national uniformity in the courts' treatment of the Final Rule is, thus, essential here because of the interdependent nature of interstate pollution transport, the common core of nationwide policy

21

judgments and technical analyses EPA applied in evaluating the state plans, and

the high risk of inequitable results among and between upwind and downwind

states should litigation proceed in multiple regional circuits.  88 Fed. Reg. at 9380-

81.

### III. Orders affirming that venue lies in this circuit and expediting consideration of this matter are warranted to address strongly compelling public interests.

In light of the potential consequences noted above, an order from this Court

confirming that venue lies in this circuit and an order separately expediting

consideration of these challenges are necessary to minimize the risk of

contradictory rulings.  As the pending petitions show, petitioners in the regional

circuits look to challenge national EPA policies and technical determinations

designed to maintain consistency in Good Neighbor obligations.  But under the

Act's plain text, only the D.C. Circuit has authority to review these national

questions and to resolve them, comprehensively, for *all* states to whom the Rule

applies.

While a D.C. Circuit order on venue and an expedited opinion on the merits

cannot, on their own, prevent contradictory views among the circuits, granting

Respondents' motion is vital to minimizing the attendant risks.  The D.C. Circuit's

view of both the proper venue for challenges and the merits of petitioners'

challenges, while not binding on its sister circuits, will carry special weight given

this Court's Clean Air Act expertise and its familiarity with the Good Neighbor Provision in particular.  An order by this Court confirming that it is the exclusive venue for these challenges will thus aid the regional circuits considering this question.  And an order expediting merits briefing will increase the likelihood that other merits panels will have the benefit of this Court's views on both venue and the merits *before* they rule.

The circumstances described above warrant such orders here.  While this Court grants expedition very rarely, "the public generally" and the upwind and downwind states "not before the Court, have an unusual interest in prompt disposition" of these petitions and in the unique ability of the D.C. Circuit to curb the potentially chaotic, contradictory, and inequitable consequences of petitioners' forum shopping.  *See* D.C. Cir. Handbook of Practice and Internal Procedures VIII.B.  These public and state interests are strongly compelling, so expedition is justified.[6]

Confirming venue now and expediting this matter also present the most efficient path forward.  Whether or not Petitioners choose to pursue adjudication in the regional circuits, this Court will have to rule on the validity of EPA's action

---

[6] In light of these unusual and compelling circumstances, Respondents request that venue be addressed expeditiously and in advance of merits consideration, and submit that such an order on venue would satisfy the Court's standard for publication under Circuit Rule 36(c).

eventually because at least one petitioner (State of Nevada) can argue its cause only in this circuit. *See* D.C. Cir. No. 23-1113. Orders confirming proper venue and expediting consideration of this matter in this Court will encourage harmonious outcomes in the reviewing circuits, which will in turn allow for consistency in EPA's administrative practice, maintain equity among states, and effectuate the Act's purpose of ensuring clean, healthy air across the country.

## CONCLUSION

For the reasons described above, the United States respectfully requests that this Court confirm venue is exclusive in this Court; designate these cases for expedited consideration; and order the parties to file briefing proposals no later than 7 days after the Court's order that will allow for argument by the end of 2023, consistent with Section X.D. of the Court's Handbook of Practice and Internal Procedures.[7]

DATED: May 15, 2023                Respectfully submitted,

                                   TODD KIM
                                   Assistant Attorney General

                                   */s/ Chloe H. Kolman*
                                   CHLOE H. KOLMAN
                                   ALEXANDRA L. ST. ROMAIN

---

[7] If additional petitions are transferred from the regional circuits and consolidated after this Court issues a briefing schedule, the United States proposes that motions to govern be due within 7 days addressing whether and how such petitions should be added to the existing schedule.

JIN HYUNG LEE
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C.  20044
(202) 514-9277
chloe.kolman@usdoj.gov

*Of Counsel:*

DANIEL P. SCHRAMM
ROSEMARY HAMBRIGHT KABAN
JEANHEE HONG
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, D.C.  20460

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify pursuant to Fed. R. App. P. 32(f) and (g) that this motion contains 5,185 words, excluding exempted portions, according to the count of Microsoft Word, and that this motion complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(A).

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN


## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2023, the foregoing Motion to Confirm Venue and to Expedite Consideration was electronically filed with the Clerk of the Court using the CM/ECF system, which will cause of copy of this Motion to be served upon all attorneys of record in this matter.

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN

Appendix B



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

June 1, 2023

OFFICE OF
AIR AND RADIATION

**MEMORANDUM**

**SUBJECT:**    Notice of Forthcoming EPA Action to Address Judicial Stay Orders

**FROM:**    Joseph Goffman
Principal Deputy Assistant Administrator
Office of Air and Radiation

On February 13, 2023, EPA published a final action fully or partially disapproving state implementation plans (SIPs) submitted by 21 states to address the states' obligations under Clean Air Act section 110(a)(2)(D)(i)(I), commonly referred to as the "good neighbor" provision, with respect to the 2015 national ambient air quality standards (NAAQS) for ozone. *See* "Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards," 88 Fed. Reg. 9,336 (February 13, 2023). Following that action, on March 15, 2023, EPA signed a separate final action, the "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards," establishing federal implementation plan (FIP) requirements to address the states' good neighbor obligations consistent with EPA's obligation under Clean Air Act section 110(c)(1). A pre-publication version of this rule was made available on EPA's website[1] and the rule will soon publish in the *Federal Register*. The Good Neighbor Plan's requirements are set to take effect 60 days after the date of publication.

In May 2023, the United States Courts of Appeals for the Fifth and Eighth Circuits issued orders staying, pending judicial review, EPA's SIP disapproval action with respect to the SIPs submitted by Arkansas, Louisiana, Missouri, and Texas.[2] The United States Court of Appeals for the Sixth Circuit issued an administrative stay of EPA's SIP disapproval, staying EPA's action with respect to the SIP submitted by Kentucky pending a decision on Kentucky's motion for stay pending judicial review.[3] EPA's authority to establish the Good Neighbor Plan's requirements for sources in Arkansas, Kentucky, Louisiana, Missouri, and Texas stems from the disapproval of the states' SIPs. Accordingly, in recognition of the orders staying the SIP disapproval action as to Arkansas, Kentucky, Louisiana, Missouri, and Texas, EPA will take action in the near future that will ensure the Good Neighbor Plan's requirements issued to implement good neighbor obligations for the 2015 ozone NAAQS as to sources in Arkansas, Kentucky, Louisiana, Missouri and Texas will not take effect while the stays of the SIP disapproval action with respect to those states remain in place. This forthcoming action will become effective by no later than the effective date of the Good Neighbor Plan's requirements for sources in other states.

---

1 *See* https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs.
2 *See* Unpublished Order, *Texas, et al. v. EPA, et al.*, No. 23-60069 (5th Cir. May 1, 2023) (staying SIP disapprovals for Louisiana and Texas), Unpublished Order, *Arkansas, et al. v. EPA, et al.*, No. 23-1320 (8th Cir. May 25, 2023) (staying SIP disapproval for Arkansas), and Unpublished Order, *Missouri v. EPA, et al.*, No. 23-1719 (8th Cir. May 26, 2023) and Unpublished Order, *Union Elec. Co. d/b/a Ameren Missouri v. EPA, et al.*, No. 23-1751 (8th Cir. May 26, 2023) (staying SIP disapproval for Missouri).
3 *See* Unpublished Order, *Kentucky v. EPA*, No. 23-3216 (6th Cir. May 31, 2023) (administrative stay of SIP disapproval for Kentucky).