NO. 23-60069

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY LLC; COLETO CREEK
POWER, LLC; ENNIS POWER COMPANY, LLC; HAYS ENERGY, LLC;
MIDLOTHIAN ENERGY, LLC; OAK GROVE MANAGEMENT COMPANY
LLC; WISE COUNTY POWER COMPANY, LLC; ASSOCIATION OF
ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS
CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC
UTILITY COMMISSION OF TEXAS; AND RAILROAD COMMISSION OF
TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF
ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE
OF LOUISIANA; AND LOUISIANA DEPARTMENT OF ENVIRONMENTAL
QUALITY

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
and MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency

*Respondents.*

_____

Petition for Review
U.S. Environmental Protection Agency
88 Fed. Reg. 9336, 9356 (Feb. 13, 2023)

_____

## BRIEF OF *AMICUS CURIAE* THE LOUISIANA PUBLIC SERVICE
## COMMISSION IN SUPPORT OF PETITIONERS STATE OF LOUISIANA
## AND LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,
## SEEKING TO VACATE FINAL RULE BY EPA

_____

*(Counsel listed on next page)*

4308099v.5

Kathryn Bowman
Executive Counsel
Louisiana Public Service
Commission
Galvez Building - 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana 70802
Telephone: (225) 342-9888
Email: *kathryn.bowman@la.gov*

Noel J. Darce, La. Bar No. 1813
Dana M. Shelton, La. Bar No. 24643
Daria B. Diaz, La. Bar No. 17928
Justin A. Swaim, La. Bar No. 36693
Evan P. Lestelle, La. Bar No. 39609
STONE PIGMAN WALTHER WITTMANN
L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112-4042
Telephone: (504) 581-3200
Email: *ddiaz@stonepigman.com*
*ndarce@stonepigman.com*
*dshelton@stonepigman.com*
*jswaim@stonepigman.com*
*elestelle@stonepigman.com*

*Counsel for the Louisiana Public Service Commission*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1.  **Parties:**

    a.  Petitioners:

    State of Texas

    Texas Commission on Environmental Quality

    Luminant Generation Company, L.L.C

    Coleto Creek Power, L.L.C

    Ennis Power Company, L.L.C.

    Hays Energy, L.L.C.

    Midlothian Energy, L.L.C.

    Oak Grove Management Company, L.L.C.

    Wise County Power Company, L.L.C.

    Association of Electric Companies of Texas

    BCCA Appeal Group

    Texas Chemical Council

    Texas Oil & Gas Association

    Public Utility Commission of Texas

4308099v.5

Railroad Commission of Texas

State of Mississippi

Mississippi Department of Environmental Quality

Mississippi Power Company

State of Louisiana

Louisiana Department of Environmental Quality

Entergy Louisiana, L.L.C.

Texas Lehigh Cement Company, LP

Louisiana Chemical Association

Louisiana Mid-Continent Oil and Gas Association

Louisiana Electric Utility Environmental Group, L.L.C.

b.   Respondents:

United States Environmental Protection Agency

Michael S. Regan, Administrator, United States Environmental

Protection Agency

c.   Proposed Amicus Curiae:

Louisiana Public Service Commission

d.   Amicus Curiae:

New Mexico Environment Department

4308099v.5

2. **Attorneys and Law Firms:**

    a.    Counsel for State of Texas and Texas Commission on Environmental Quality:

        Bill Davis, Michael Adams, William Francis Cole, and Joseph N. Mazzara
Office of Attorney General for the State of Texas

    b.    Counsel for Luminant Generation Company, L.L.C., Coleto Creek Power, L.L.C, Ennis Power Company, L.L.C., Hays Energy, L.L.C., Midlothian Energy, L.L.C., Oak Grove Management Company, L.L.C., and Wise County Power Company, L.L.C.:

        Philip Stephen Gidiere, III, and Julia Blair Barber
Balch & Bingham, L.L.P.

    c.    Counsel for Association of Electric Companies of Texas, BCCA Appeal Group, and Texas Chemical Council; Texas Oil & Gas Association:

        Aaron Michael Streett and Matthew Lynn Kuryla
Baker Botts, L.L.P.

    d.    Counsel for Public Utility Commission of Texas and Railroad Commission of Texas:

        Bill L. Davis of Office
Office of Attorney General for the State of Texas

    e.    Counsel for State of Mississippi; Mississippi Department of Environmental Quality:

        Justin Lee Matheny
Office of Attorney General for the State of Mississippi

        Mithun Mansinghani and Michael Benjamin Schon
Lehotsky Keller Cohn, L.L.P.

    f.    Counsel for Mississippi Power Company:

4308099v.5

Carl Grady Moore, III, Bradley Aaron Ennis, and
Susan Scaggs Stutts
Balch & Bingham, L.L.P.

g.    Counsel for State of Louisiana:

Joseph Scott St. John and Shae Gary McPhee, Jr.
Louisiana Department of Justice, Office of the Solicitor General

Machelle Rae Lee Hall
Louisiana Department of Justice

Elizabeth Baker Murrill
Office of the Attorney General for the State of Louisiana

h.    Counsel for Louisiana Department of Environmental Quality:

Joseph Scott St. John and Shae Gary McPhee, Jr.
Louisiana Department of Justice, Office of the Solicitor General

Courtney Burdette and Jill Carter Clark
Louisiana Department of Environmental Quality

Machelle Rae Lee Hall
Louisiana Department of Justice

Elizabeth Baker Murrill
Office of the Attorney General for the State of Louisiana

i.    Counsel for Entergy Louisiana, L.L.C.:

Debra Jezouit and Joshua D. Lee
Baker Botts, L.L.P.

j.    Counsel for Texas Lehigh Cement Company, LP:

Megan Heuberger Berge and Jonathan Mark Little
Baker Botts, L.L.P.

4308099v.5

k.  Counsel for Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group, L.L.C.:

Maureen Noonan Harbourt, Josiah Martin Kollmeyer, and Lauren J. Rucinski
Kean Miller, L.L.P.

l.  Counsel for United States Environmental Protection Agency and Michael S. Regan, Administrator, United States Environmental Protection Agency:

Jin Hyung Lee and Sarah Izfar
U.S. Department of Justice, Environmental & Natural Resources Division

Merrick Garland
U.S. Department of Justice

Todd Sunhwae Kim
U.S. Department of Justice, Environmental & Natural Resources Division – Appellate Section

Jeffrey Prieto
Environmental Protection Agency

m.  Counsel for New Mexico Environment Department:

David R. Baake
Baake Law, L.L.C.

n.  Counsel for Louisiana Public Service Commission:

Dana M. Shelton, Noel J. Darce, Daria B. Diaz, Justin A. Swaim, and Evan P. Lestelle
Stone Pigman Walther Wittmann L.L.C.

**3.    Entities with a Financial Interest:**

No other entities have a known financial interest in this case.

/s/ Daria B. Diaz

Daria B. Diaz
*Attorney of Record for Amicus Curiae the*
*Louisiana Public Service Commission*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................... i

TABLE OF CONTENTS ........................................................................ vii

TABLE OF AUTHORITIES ................................................................... viii

I.     INTEREST OF AMICUS CURIAE ................................................................. 1

II.    SUMMARY OF ARGUMENT ....................................................................... 3

III.   ARGUMENT ........................................................................................... 6

    A.     EPA's Regulations Exceed Its Expertise And Authority And Intrude Into The Traditional Regulatory Authority Of The Louisiana Commission ........................................................................................ 6

    B.     EPA's Regulations Will Threaten Grid Reliability ............................. 10

    C.     EPA's Regulations Will Increase the Cost of Electricity ................... 19

IV.    CONCLUSION ....................................................................................... 23

CERTIFICATE OF SERVICE ............................................................................ 24

CERTIFICATE OF COMPLIANCE ..................................................................... 25

4308099v.5

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*District of Columbia v. Train,*
  521 F.2d 971 (D.C. Cir. 1975), *vacated and remanded for
  consideration of mootness sub nom. EPA v. Brown,*
  431 U.S. 99 (1977)................................................................9

*Dixie Elec. Membership Corp. v. Louisiana Public Service Com'n,*
  441 So. 2d 1208 (La. 1983) ..............................................6

*FERC v. Electric Power Supply Ass'n,*
  577 U.S. 260 (2016)..........................................................7, 8

*Gulf States Utilities Co. v. Louisiana Public Service Comm'n,*
  578 So. 2d 71 (La. 1991), *cert. denied,* 502 U.S. 1004 (1991) ................2, 20

*Hughes v. Talen Energy Marketing, LLC,*
  578 U.S. 150 (2016)........................................................1, 2, 8

*Luminant Generation Co., L.L.C. v. E.P.A.,*
  675 F.3d 917 (5th Cir. 2012) ..............................................9

*Michigan v. EPA,*
  268 F.3d 1075 (D.C. Cir. 2001)..........................................9

*MISO Transmission Owners v. F.E.R.C.,*
  819 F.3d 329 (7th Cir. 2016) ..............................................8

*Pacific Gas & Elec. Co. v.
  State Energy Resources Conservation & Dev. Comm'n,*
  461 U.S. 190 (1983)..........................................................2, 8

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016) ..............................................9

*West Virginia v. Environmental Protection Agency,*
  142 S. Ct. 2587 (2022)......................................................6, 7

4308099v.5

**Statutes**

16 U.S.C. § 824 ....................................................................................8

42 U.S.C. § 7410 ..........................................................................*passim*

**Other Authorities**

La. Const. art. IV, § 21 .................................................................1, 2, 6

Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas;
    Interstate Transport of Air Pollution for the 2015 8-Hour Ozone
    National Ambient Air Quality Standards,
    87 Fed. Reg. 9798 (Feb. 22, 2022) ................................................10

Air Plan Disapprovals; Interstate Transport of Air Pollution for the
    2015 8-Hour Ozone National Ambient Air Quality Standards,
    88 Fed. Reg. 9336 (Feb. 13, 2023) ..........................................*passim*

Federal "Good Neighbor" Plan for the 2015 Ozone National Ambient
    Air Quality Standards,
    88 Fed. Reg. 36,654 (June 5, 2023)..............................3, 10, 11, 12

CLECO Corporate Holdings LLC, Comments on Proposed Federal
    Implementation Plan Docket EPA-HQ-OAR-2021-0668 (June
    21, 2022) ..........................................................................................22

Entergy Services, LLC Comments on Proposed Federal
    Implementation Plan Docket EPA-HQ-OAR-2021-0668 (June,
    21, 2022) ...............................................................................15, 21

MISO 2022/2023 Planning Resource Auction Results (Apr. 14, 2022) ...............16

MISO 2022/2023 Planning Resource Auction Results, Revised (May
    3, 2022) .............................................................................................16

MISO Comments on Proposed Federal Implementation Plan Docket
    EPA-HQ-OAR-2021-0668 (June 21, 2022) ..................................17

North American Electric Reliability Corporation, 2022 Long-Term
    Reliability Assessment (December 2022) ................................14, 18

4308099v.5

North American Electric Reliability Corporation, 2023 Summer
    Reliability Assessment (May 2023) ........................................................5, 16

U.S. Department of Energy, Office of Fossil Energy and Carbon
    Management, Transformative Power Systems,
    https://www.energy.gov/fecm/transformative-power-systems ...............17, 18

Regulatory Impact Analysis for Final Federal Good Neighbor Plan
    Addressing Regional Ozone Transport for the 2015 Ozone
    National Ambient Air Quality Standard EPA-452/R-23-001
    (March 2023) ...........................................................................................13, 14

4308099v.5

## I.     INTEREST OF *AMICUS CURIAE*

The Louisiana Public Service Commission (the "Louisiana Commission" or the "Commission") submits this amicus brief in support of Petitioners, the State of Louisiana and the Louisiana Department of Environmental Quality, seeking to vacate a final rule by the United States Environmental Protection Agency, 88 Fed. Reg. 9336 (Feb. 13, 2023) (the "Final Rule").[1]

The Louisiana Commission is an independent state agency that regulates the retail rates and services of the electric utilities operating in Louisiana pursuant to Article 4, Section 21 of the Louisiana Constitution of 1974. Its Commissioners are five elected officials, representing geographical districts throughout the State.[2] The Louisiana Commission exercises regulatory jurisdiction over rates charged and services provided by public utilities to Louisiana retail customers. The Commission is dedicated to serving the public interest by assuring safe, reliable service at the lowest reasonable cost.

No other Louisiana agency or federal governmental entity shares these constitutional and statutory responsibilities. "Need for new power facilities, their

---

[1] Undersigned counsel for *amicus curiae* certifies that this brief was not authored in whole or part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amicus* or its counsel has contributed money for this brief.

[2] Louisiana Public Service Commissioner Davante Lewis, representing District 3, opposed the filing of this amicus brief.

economic feasibility, and rates and services, are areas that have been characteristically governed by the States." *Hughes v. Talen Energy Marketing, LLC*, 578 U.S. 150, 154 (2016) (quoting *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 205 (1983)). The Louisiana Constitution gives the Commission broad, independent regulatory powers over public utilities. The Louisiana Supreme Court has labeled the Commission's jurisdiction over public utilities as "plenary." *Gulf States Utilities Co. v. Louisiana Public Service Comm'n*, 578 So. 2d 71, 100 (La. 1991), *cert. denied*, 502 U.S. 1004 (1991).

The Final Rule triggers the implementation of EPA's Final Implementation Plan ("FIP") in Louisiana. The central focus of this amicus brief is the effects that the Final Rule denying Louisiana's State Implementation Plan ("SIP"), if upheld, will have on retail electric rates and the reliability of electric service in Louisiana. To that end, the Louisiana Commission provides a unique and focused perspective on the Final Rule that is informed by its constitutional imperative to ensure that Louisiana ratepayers have reliable electric service, and that rates are just and reasonable.

4308099v.5

## II.   SUMMARY OF ARGUMENT

The Louisiana Commission opposes the final EPA action denying Louisiana's SIP because it will force an electric power generation resource change in Louisiana to less reliable, more expensive resources and intrude on the Louisiana Commission's authority to ensure economic and reliable electric power to serve Louisiana citizens.  EPA denied Louisiana's SIP in part based on its failure to follow a "4-step interstate transport framework" requiring that the State adopt "permanent and federally enforceable" control strategies to achieve emissions reductions or to substantially justify any deviations. If affirmed, the Final Rule denying Louisiana's SIP will trigger the implementation of a FIP in Louisiana requiring that the State implement EPA's preferred system of emissions controls. *See* Dkt. 269 at 22 (stay order by motions panel: "The Final SIP Denial was the statutory prerequisite for the EPA to create the Final FIP and impose its preferred system of emissions controls and reductions on the States.").

Specifically, the FIP imposes an emissions budget on Louisiana commensurate with the State's implementation of two emissions control measures that are expected to significantly impact retail electric rates and service areas in the Louisiana Commission's traditional regulatory sphere. First, the FIP requires electric power generation shifting including through an unpredictable dynamic budgeting process that "will reflect the balance of generation across sources reported to EPA"

- 3 -

by power plant operators. Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 36,654, 36,731 (June 5, 2023) (Generation Shifting).[3] Second, the FIP requires that power plants be retrofitted with Selective Catalytic Reduction controls. EPA recognizes that, as a result of this second requirement, "many" of the units "will likely retire instead of installing SCR." *Id.* at 36,728 (Installing New SCRs).

The Commission supports pollution control within the authority of the law. But the "Good Neighbor" provision of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I), does not give EPA the authority to require Louisiana to restructure the mix of power generation in the State from fossil fuel based sources to other sources, or to require measures designed to accelerate retirements of power plants.

Not only is the FIP expected to drive premature retirements, the Commission also expects that utilities will assert in ratemaking proceedings before the Commission that the costs of retrofits required by the FIP should be borne by Louisiana ratepayers. If those costs are ultimately passed along to consumers as rate increases, consumers will experience steeply increased costs for electric power, and disproportionate financial burdens will fall on citizens with the least means to afford

---

[3] The FIP was published in the *Federal Register* on June 5, 2023 and is effective on August 4, 2023.

4308099v.5

it. Premature retirements as a result of EPA's regulatory actions will also threaten the reliability of the already strained grid through a reduction in capacity, and could result in blackouts and load shedding events in which some consumers are cut off from the grid to preserve overall stability in times of peak demand. North American Electric Reliability Corporation, 2023 Summer Reliability Assessment, May 2023, pg. 14.[4]

The plain text of the Good Neighbor statute, which requires upwind states to take "adequate measures" to control pollution exported into downwind states, does not provide any authority for EPA to require a state to shift its generation from fossil fuel to other sources. EPA uses interstate pollution control under the Good Neighbor provision as a mechanism to regulate heavily in an area that is not within its statutory mandate: the provision of electricity to end use consumers at a retail level. EPA lacks the regulatory experience and statutory mandate to regulate in this sphere. Its actions are contrary to the electric retail regulatory imperatives to ensure that retail ratepayers are provided electricity at just and reasonable rates, and that the grid is well-functioning with adequate capacity to meet consumer demand. Those are traditional regulatory spheres left to the states. In Louisiana, such

---

[4]https://www.nerc.com/pa/RAPA/ra/Reliability%20Assessments%20DL/NERC_S RA_2023.pdf.

4308099v.5

regulatory authority lies with the Louisiana Commission, under the Louisiana Constitution. EPA's Final Rule should be vacated.

## III.   ARGUMENT

### A.   EPA's Regulations Exceed Its Expertise And Authority And Intrude Into The Traditional Regulatory Authority Of The Louisiana Commission

The Louisiana Commission has plenary regulatory authority under Louisiana law over power generating facilities and their economic feasibility, the types of generating facilities to be licensed and constructed in the state, service to Louisiana consumers, and retail sales of electricity.  "The Commission is an expert within its own specialized field . . . ." *Dixie Elec. Membership Corp. v. Louisiana Public Service Com'n*, 441 So. 2d 1208, 1211 (La. 1983).

These are areas in which EPA lacks expertise and delegated authority. As the Supreme Court noted in *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587 (2022), EPA has admitted that "'[u]nderstand[ing] and project[ing] system-wide . . . trends in areas such as electricity transmission, distribution, and storage' requires 'technical and policy expertise *not traditionally needed* in EPA regulatory development.'" *Id.* at 2612 (citation omitted; emphasis added). In that case, in invalidating EPA's Clean Power Plan rule under the major questions doctrine, the Supreme Court stated that, "[w]here an agency has no comparative expertise in making certain policy judgments, we have said, Congress presumably

would not task it with doing so." *Id.* at 2612-13 (internal quotation marks, alteration, and citation omitted).

As with its regulatory actions here, in *West Virginia*, EPA was attempting to use its regulatory authority to implement generation shifting to create "a sector wide shift in electricity production from coal to natural gas and renewables," and its "own modeling concluded" that the rule would "require the retirement of dozens of coal-fired plants . . . ." *Id.* at 2603-04. As the Supreme Court stated, "it is not plausible that Congress gave EPA the authority to adopt on its own such a regulatory scheme in Section 111(d)," a Clean Air Act provision that gives EPA authority to establish emissions caps for pollutants at a level reflecting the application of the best system of emission reduction. *Id.* at 2616.

So too here. It is also not plausible that Congress gave EPA the authority to restructure the mix of generation in Louisiana under the Good Neighbor provision of the Clean Air Act, which is meant to regulate the interstate transportation of pollution to prevent upwind states from impeding downwind states' satisfaction of ozone standards. EPA's attempted regulation violates the major questions doctrine.

Even the Federal Energy Regulatory Commission ("FERC") – the agency charged with regulating the rates charged for interstate transmission of electricity – "may not regulate either within-state wholesale sales or . . . retail sales

- 7 -

of electricity (i.e., sales directly to users)." *FERC v. Electric Power Supply Ass'n*, 577 U.S. 260, 267 (2016) ("*EPSA*") (citation omitted); *Hughes v. Talen Energy Marketing, LLC*, 578 U.S. 150, 154 (2016) ("The law places beyond FERC's power, and leaves to the States alone, the regulation of 'any other sale' – most notably, any retail sale – of electricity.") (quoting *EPSA*).

Instead, "[s]tate utility commissions," like the Louisiana Commission, "continue to oversee those transactions." *EPSA*, 577 U.S. at 267. "The States' reserved authority includes control over in-state 'facilities used for the generation of electric energy.'" *Hughes*, 578 U.S. at 154 (quoting 16 U.S.C. § 824(b)); *see also MISO Transmission Owners v. F.E.R.C.*, 819 F.3d 329, 336 (7th Cir. 2016) (noting traditional role of the states in regulating the siting and construction of transmission facilities). Congress excluded from FERC's jurisdiction, *inter alia*, "facilities used for the generation of electric energy." 16 U.S.C. § 824(b)(1).

"Need for new power facilities, their economic feasibility, and rates and services, are areas that have been characteristically governed by the States." *Hughes*, 578 U.S. at 154 (quoting *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 205 (1983)). The authority of the federal regulatory agency with expertise in regulating electricity – FERC – does not even extend to regulation of in-state generation and retail sales of electricity. EPA certainly cannot do in the field what even FERC cannot do.

Furthermore, "[t]he Clean Air Act is an 'experiment in cooperative federalism.'" *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016) (quoting *Michigan v. EPA*, 268 F.3d 1075, 1083 (D.C. Cir. 2001)). EPA's role with regard to a SIP is confined to the "ministerial function" of reviewing it for consistency with the Act's requirements. *Luminant Generation Co.*, *L.L.C. v. E.P.A.*, 675 F.3d 917, 921 (5th Cir. 2012) (citing § 7410(k)(3)). EPA cannot use the Clean Air Act to "commandeer the regulatory powers of the states." *District of Columbia v. Train*, 521 F.2d 971 (D.C. Cir. 1975), *vacated and remanded for consideration of mootness sub nom. EPA v. Brown*, 431 U.S. 99 (1977) (per curiam).

Congress has not delegated to EPA under the Good Neighbor provision the authority to force premature retirements of power plants and mandate that Louisiana shift generation of power in the State from fossil fuel-based plants to other sources of energy. Additionally, in imposing its preferred systems of emissions controls on Louisiana, EPA's regulatory actions violate the principle of cooperative federalism embodied in the Clean Air Act. Not only has EPA failed to properly defer to the State of Louisiana, but EPA also intrudes into the traditional regulatory authority of the Louisiana Commission over in-state generation of electricity and regulation of retail rates and services.

4308099v.5

**B.    EPA's Regulations Will Threaten Grid Reliability**

EPA's disapproval of Louisiana's SIP threatens power reliability in Louisiana because it will force the premature retirement of the State's current fossil fuel backbone in favor of resources with intermittent availability that cannot be deployed reliably at times of greatest need.

To approve its SIP, EPA required that Louisiana implement a "4-step interstate transport framework" through which it must adopt "permanent and federally enforceable" control strategies to achieve emissions reductions or that it substantially justify any deviations from the framework. *See* 87 Fed. Reg. 9798, 9799, 9802 (Feb. 22, 2022) (proposed disapproval of Louisiana's SIP). EPA denied Louisiana's SIP in part because "[t]he State included no permanent and enforceable controls in its SIP submission." 88 Fed. Reg. 9336, 9356 (Feb. 13, 2023).

EPA has issued FIP requirements for the more than twenty states for which EPA disapproved or partially disapproved the ozone transport SIP revisions that were submitted for the 2015 National Ambient Air Quality Standards. Louisiana is one of those states. Consequently, EPA's Final Rule will result in the application and implementation of the FIP in Louisiana.

The FIP imposes an emissions budget on Louisiana commensurate with the implementation of several control measures, including generation shifting and retrofitting power plants with Selective Catalytic Reduction ("SCR") controls. *See*

4308099v.5

88 Fed. Reg. at 36,720-732 (Identifying Control Stringency Levels). The FIP requires retrofits of SCR controls to be fully implemented in the next few years. *Id.* at 36,754 ("Emissions reductions commensurate with SCR mitigation measures for [electricity generating units] will start in 2026 and be fully implemented by 2027."); *see also id.* ("The full suite of emissions reductions is generally anticipated to take effect by the 2027 ozone season . . . .").

As for generation shifting, starting in 2026, a "dynamic" state emission budget will be calculated for Louisiana that "will reflect the balance of generation across sources reported to EPA" by power plant operators. *Id.* at 36,731 (Generation Shifting). EPA has calculated "preset budgets" from 2023 to 2029 based on fleet changes over this period, and between 2026 and 2029, the actual budget that will be implemented will reflect the greater of either the preset budget or the dynamic budget. *Id.* at 36,731-732. From 2030 onwards, Louisiana's emission budget will be set only through the dynamic budget calculation. *Id.* at 36,732.

EPA purportedly "did not identify generation shifting as a primary mitigation strategy and stringency measure on its own, but included emissions reductions from this strategy as it would be expected to occur in response to the selected emissions control stringency levels (and corresponding allowance price signals in step 4 implementation)." *Id.* at 36,731. Furthermore, "[b]ecause this rule's dynamic budget methodology applies the selected control stringency's emissions

rates to the most recently reported heat input at each affected [electric generating unit], dynamic budgeting effectively serves a similar purpose to our ex ante quantification of emissions reduction potential from generation shifting for preset budgets in prior transport rules, *i.e.*, to adequately and continuously incentivize the implementation of the emissions control strategies selected at Step 3." *Id.*

The retrofits and generation shifting required by EPA's emissions budgeting will threaten reliability of the state grid. EPA itself has recognized that as a result of the requirement to retrofit existing power plants with SCR controls, "many" of the units "will likely retire instead of installing SCR."[5] Those retirements will also apparently be taken into account by EPA in its dynamic budgeting process, which would reduce the overall emissions budget commensurate with the early retirements of those power plants.

---

[5] 88 Fed. Reg. at 36,728 (Installing New SCRs) ("In short, although EPA identified the total SCR retrofit capacity potential for today's existing fleet and does not premise any reduction requirements of incremental retirements, the announced and planned futures for these units indicates that many will likely retire instead of installing SCR."); *see also id.* at 36,771 ("To address states' obligations under the good neighbor provision, some units of course will have to take some type of action to reduce emissions, the actions taken to reduce emissions will generally have costs, and some [electric generating unit] owners will conclude that, all else being equal, *retiring a particular [electric generating unit] and replacing it with cleaner generating capacity is likely to be a more economic option* from the perspective of the unit's customers and/or owners than making substantial investments in new emissions controls at the unit.") (emphasis added).

4308099v.5

Moreover, EPA's generation shifting requirement could create further problems for the state grid by limiting the Commission's ability to allow prematurely retired "dispatchable" electricity sources, such as coal-fired plants, to be replaced with other dispatchable sources, including natural gas plants. Non-dispatchable energy (such as wind or solar) cannot be generated on demand but instead depends on fluctuating and unknown future conditions such as weather or the amount of sunlight. It is important that regulators such as the Louisiana Commission determine the appropriate mix of dispatchable and non-dispatchable energy in the State to ensure that capacity is reliable at all hours of the day and in all seasons to meet demand.

The FIP imposes unprecedented NOx reductions on the power sector by 2026, which likely will result in the shutdown of many megawatts of legacy oil and gas facilities and of any coal-fired electric generating unit greater than 100-megawatt capacity that has not installed the most expensive, state-of-the-art NOx pollution controls available. According to the Regulatory Impact Analysis issued in connection with the FIP, EPA projects the final rule will result in an additional 14 gigawatts of coal retirements nationwide—constituting a reduction of 13% of

4308099v.5

national coal capacity. EPA estimates compliance costs could hover at $1.3 billion by 2030 – a number that has been criticized as being significantly underestimated.[6]

Furthermore, the FIP does not afford time for Louisiana and other states to address the inevitable generation shortfalls, transmission constraints, and reliability ramifications that will arise due to these aggressive deadlines. The compliance deadline also does not consider the time needed for utilities to secure and make capital investments necessary to comply with the proposed rule. It does not consider the enormous cost consequences that will negatively impact the economy and electric consumers.

In its 2022 Long-Term Reliability Assessment, the North American Electric Reliability Corporation found that "[m]anag[ing] the pace of generator retirements until solutions are in place that can continue to meet energy needs and provide essential reliability services" is essential to maintaining grid reliability.[7] The FIP imposes a Hobson's choice on state regulators, regional transmission organizations, and public utilities that circumscribes their ability to effectively plan

---

[6] Regulatory Impact Analysis for Final Federal Good Neighbor Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard EPA-452/R-23-001, March 2023.

[7] Long-Term Reliability Assessment, December 2022, https://www.nerc.com/pa/RAPA/ra/Reliability%20Assessments%20DL/NERC_LTRA_2022.pdf, at pg. 7.

4308099v.5

for and address reliability concerns. The choice is to install an expensive, uneconomic retrofit and participate in a trading scheme the availability and cost of which cannot be foreseen, or to retire generation facilities that are essential to maintaining reliability. For any of these alternatives, decreased reliability and increased costs are virtually certain.

For the purpose of establishing state NOx emission budgets, starting with the 2026 ozone season, EPA's proposed FIP identifies a total of 131 generating units, with a total combined capacity of approximately 58,300 megawatts for presumed SCR retrofits.[8] Approximately 56% of this total capacity is located in just five states in the south-central US: Arkansas, Louisiana, Mississippi, Oklahoma, and Texas. As noted above, the proposed FIP would likely incentivize some of these units to accelerate existing retirement plans and retire prior to the 2026 ozone season. With such a significant concentration of such units in these five states, including the Midcontinent Independent System Operator ("MISO") South, Electric Reliability

---

[8] The number of generating units identified by EPA for retrofits was determined based on the number of coal- and oil/gas-fired electric generating units located in states where EPA proposes to presume SCR retrofits for the purpose of establishing 2026 state budgets and flagged by EPA for SCR retrofits in the worksheet "Unit 2026" found in Appendix A to EPA's Ozone Transport Policy Analysis. Comments of Entergy Services, LLC, Proposed Rule - Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard, June 21, 2022, at pg. 10, https://www.regulations.gov/document/EPA-HQ-OAR-2021-0668-0007/comment?filter=entergy.

4308099v.5

Council of Texas, and portions of the Southwest Power Pool territories, there is a significant risk of reliability issues not just in Louisiana, but throughout the region, resulting from implementation of the proposed FIP.

In the MISO South region alone, which includes parts of Louisiana, Arkansas, Mississippi, and Southeast Texas, MISO's 2022/2023 Planning Resource Auction results show that areas in MISO South have a capacity need for 2022/23, including reserves, of over 34,000 megawatts. According to the recently published Organization of MISO States-MISO capacity survey results for 2023, those same areas are projected to have slightly over 40,000 megawatts of available capacity. If, due to the FIP implementation, much of that capacity is no longer available in 2026 and beyond, there will not be sufficient capacity to serve load in MISO South absent significant investments in new capacity or retrofits.[9]

Even without the effect of the FIP, two-thirds of the country face the prospect of temporary blackouts during the hot summer months when electricity demand intensifies. Summer 2023 Reliability Assessment pgs. 11-12, *supra* footnote 4. One of the primary drivers of this risk is the premature retirement of coal-fired

---

[9] MISO 2022/2023 Planning Resource Auction Results, April 14, 2022, https://cdn.misoenergy.org/2022%20PRA%20Results624053.pdf; *see also* MISO 2022/2023 Planning Resource Auction Results, Revised May 3, 2022, https://cdn.misoenergy.org/20220420%20RASC%20Item%2004b%20 PRA%20Results%20Supplemental 624128.pdf.

4308099v.5

and natural gas power plants in favor of less dependable wind and solar power.[10] The implementation of the FIP would exacerbate this already significant risk of generation shortfalls.

Electricity grids are perhaps some of the most complex systems in modern society. The North American power grid is often considered the largest machine in the world. With variable demand from millions of homes and businesses across thousands of miles of transmission lines, Americans receive reliable power to heat and cool their homes, keep their lights on, and operate the ever-growing amount of machinery and electronics found in homes and businesses. Increasingly, Americans are also now relying on electricity to power their vehicles. The United States Department of Energy Office of Fossil Energy and Carbon Management recognizes and acknowledges that:  "[f]ossil fuels are the world's primary energy source and account for more than 60% of the electricity generated in the United

---

[10] According to MISO on the basis of EPA information in the FIP, coal and gas retirements in the MISO region will be 12,438 megawatts by 2026, and coal and gas retrofits will be 11,514 megawatts by 2026. MISO, Comments on Proposed Federal Implementation Plan Docket EPA-HQ-OAR-2021-0668, June 21, 2022, at pg. 5 and footnote 5, https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0788.

4308099v.5

States. Fossil-fueled power plants provide stability and reliability to the operation of the U.S. power grid."[11]

The FIP requires more power sector NOx control retrofits (by megawatt) in the two-year time frame of 2025-2026 than has ever been achieved in any two-year period, which could force the premature retirement of many of these vitally important fossil fuel units that serve much of the nation's baseload power need. *See* 88 Fed. Reg. at 36,656-666 (Executive Summary). National and regional reliability entities have increasingly raised concerns that premature baseload plant retirements, without adequate time to replace that generation, will further strain electric system reliability and increase costs. While the electric sector is poised to play a major role in transforming and reducing emissions in other sectors of the economy, *e.g.*, transportation using electric vehicles, the implementation of the FIP threatens grid reliability, increases the cost of electricity, and will negatively impact these efforts.

In its conclusions and recommendations section of its 2022 Long-Term Reliability Assessment, the North American Electric Reliability Corporation found that "[t]he energy and capacity risks identified in this assessment underscore the

---

[11] United States Department of Energy, Office of Fossil Fuel and Carbon Management, Transformative Power Systems, https://www.energy.gov/fecm/transformative-power-systems.

4308099v.5

need for reliability to be a top priority for the resource and system planning community of stakeholders." *See supra*, footnote 7, at pg. 7. Based on its experience regulating retail electricity, the Louisiana Commission expects that the FIP implementation will cause substantial reliability issues and pressures for electricity production and delivery on systems already experiencing stress near their limits.

### C.    EPA's Regulations Will Increase the Cost of Electricity

The FIP implementation will also increase utility rates, impacting the economy and electric utility customers. These higher costs will adversely impact all consumers, but low income and marginalized communities likely will be hit the hardest. EPA's "cost benefit" analysis overestimates the benefits and fails to account for loss of electric reliability and widespread economic costs of this proposed rule.

The FIP reduces the power plant NOx emissions budgets for Arkansas, Louisiana, Mississippi, Texas and many other states starting with the 2023 ozone season with more significant reductions in the 2026 ozone season.  This reduction is based on a presumption that coal and higher-emitting oil and gas-fired generating units will install expensive SCR NOx emission controls and place those controls in-service prior to the 2026 ozone season (May 1 – September 30).  EPA has identified a total of over 50 generating units for these pollution control retrofits by 2026 in these four states, totaling over 26,000 megawatts of capacity.

4308099v.5

These required retrofits will be costly for power plants. If a utility installs the SCR technology mandated by the proposed rule, impacted utilities will seek recovery of those costs from ratepayers, arguing that the costs of the retrofits are recoverable "prudent" investments because the retrofits were mandated by EPA. *See, e.g.*, *Gulf States Utilities Co. v. Louisiana Public Service Com'n*, 578 So. 2d 71, 84-85 (La. 1991) (adopting "prudence" standard for determining how much of a utility's investment should be included in its rate base to be borne by ratepayers, under which the utility must demonstrate that it "went through a reasonable decision making process to arrive at a course of action and, given the facts as they were or should have been known at the time, responded in a reasonable manner.") (internal quotation marks and citation omitted), *cert. denied*, 502 U.S. 1004 (1991).

Of the MISO South generating units identified by EPA for SCR retrofits, a total of 37 are owned and/or operated by Louisiana utilities, for a total impact on approximately 14,800 megawatts of capacity. Entergy Louisiana is the largest supplier of electricity in Louisiana, and EPA identified 15 of its units for SCR retrofits. All of Entergy's units are located in MISO South with approximately 9,370

megawatts of total unit capacity impacted by the proposed rule. These retrofits will cost billions of dollars.[12]

The other major regulated utility providing service to Louisiana ratepayers is South Western Electric Power Corporation ("SWEPCO"), which provides service to an area of north and central Louisiana. According to SWEPCO, one of its existing coal units, providing approximately 516 megawatts of capacity, would be significantly impacted by EPA's proposal.[13] SWEPCO's latest engineering estimate to install a SCR retrofit on that plant is $160 million. SWEPCO is a 50% co-owner, resulting in a share of the cost estimated at $80 million. In the past, SWEPCO's Louisiana customers have typically funded a 30 percent share of the costs for capital investments in SWEPCO generation facilities. Using this same approach, Louisiana ratepayers would be responsible for approximately $24 million for the retrofit of one half of one unit.

---

[12] Using EPA's own cost estimates, Entergy projects that SCR retrofits for the 15 Entergy-owned units sum to a total capital investment of approximately $2.3 billion. "Using EPA's own cost estimation methodology, . . . results in an average SCR retrofit cost effectiveness for the Entergy operating companies' fleet of over $50,000/ton of NOx removed." https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0546 at pg. 4 and Attachment A.

[13] SWEPCO provided this information to the Louisiana Commission based on SWEPCO's analysis of the Proposed Implementation Plan for Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air quality Standard EPA-HQ-OAR-2021-0668.

4308099v.5

Cleco Power is another Louisiana public utility regulated by the Louisiana Commission, that also has unregulated generation through an affiliate. It has a small customer base and some of the highest retail rates in the state. The proposed rule would impact more than 5,000 megawatts of regulated and unregulated capacity owned by Cleco Power and its unregulated affiliate. Many of Cleco's units are old. Based on its evaluation of the FIP, Cleco Power believes that EPA rule understates the level of capacity that would be affected by the implementation of the FIP. The FIP would impose significant cost risks on Cleco and its customers.[14]

As previously noted, EPA has identified 37 units that would need to be retrofitted in order to meet the proposed NOx allowances that are owned and/or operated by Louisiana Commission-jurisdictional utilities. Louisiana consumers and businesses cannot afford further increases in already rising electricity bills. Louisiana utility costs and rates have greatly increased recently due in large part to the rising cost of natural gas and major storm damage that has impacted the region over the past two years. Although the Louisiana Commission has taken steps to mitigate the impacts of these costs, such as through securitization financing that has

---

[14] CLECO Corporate Holdings LLC, Comments, Proposed Rule, <u>87 Fed. Reg. 20.036</u> (Apr. 6, 2022), Docket No. EPA-HQ-OAR-2021-0668, June 21, 2022, pgs. 4-6, https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0396.

4308099v.5

saved millions of dollars for ratepayers, costs continue to be far higher than in recent years and the implementation of the FIP likely will further increase those costs.

## IV.    CONCLUSION

For the reasons discussed herein, *amicus curiae* the Louisiana Public Service Commission respectfully requests that the Court vacate the Final Rule.

Dated:  June 6, 2023

Respectfully submitted,

*/s/ Daria B. Diaz*

Kathryn Bowman
Executive Counsel
Louisiana Public Service Commission
Galvez Building - 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana  70802
Telephone:  (225) 342-9888
Email: *kathryn.bowman@la.gov*

Noel J. Darce, La. Bar No. 1813
Dana M. Shelton, La. Bar No. 24643
Daria B. Diaz, La. Bar No. 17928
Justin A. Swaim, La. Bar No. 36693
Evan P. Lestelle, La. Bar No. 39609
    Of
STONE PIGMAN WALTHER
    WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana  70112-4042
Telephone:  (504) 581-3200
Email: *ndarce@stonepigman.com*
*dshelton@stonepigman.com*
*ddiaz@stonepigman.com*
*jswaim@stonepigman.com*
*elestelle@stonepigman.com*

*Counsel for the Louisiana Public Service Commission*

4308099v.5

## CERTIFICATE OF SERVICE

In accordance with <u>Fed. R. App. P. 25(d),</u> I hereby certify that I have caused the foregoing documents to be served on all parties or on their counsel of record through the Court's CM/ECF system on this 6th day of June, 2023.

<i>/s/ Daria B. Diaz</i>
Daria B. Diaz

4308099v.5

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of <u>Fed. R. App. P. 32(g)(1)</u> because it contains 4,911 words, excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(f)</u>.

This brief also complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)(A)</u> and the type style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

*/s/ Daria B. Diaz*
Daria B. Diaz
*Counsel for the*
*Louisiana Public Service Commission*
