NO. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS, ET AL.,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.

*Respondents*.

**BRIEF OF NEW MEXICO ENVIRONMENT DEPARTMENT
AS *AMICUS CURIAE* IN SUPPORT OF RESPONDENTS**

David R. Baake
Baake Law, LLC
2131 N. Main Street
Las Cruces, NM 88001
Telephone: (575) 343-2782
david@baakelaw.com

Bruce Baizel
New Mexico Environment Department
Harold Runnels Building
1190 St. Francis Dr., Suite N4050
Santa Fe, NM 87505
Telephone: (505) 490-5427
Bruce.Baizel@state.nm.us

*Counsel for Amicus Curiae New
Mexico Environment Department*

**SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES**

Pursuant to Local Rule 29.2, the undersigned counsel of record certifies that the following listed persons and entities have an interest in this *amicus* brief:

1. *Amicus Curiae*: New Mexico Environment Department.

2. Counsel for *Amicus Curiae*: David R. Baake of Baake Law, LLC, and Bruce Baizel, General Counsel of the New Mexico Environment Department.

Respectfully submitted,

/s/ David R. Baake

## FED. R. APP. P. 29 AND LOCAL RULE 29 STATEMENTS.

**A. Corporate Ownership.** *Amicus curiae* is an agency of the New Mexico state government, which has no parent corporation and issues no stock. *See* Fed. R. App. P. 29(a)(4)(A).

**B. Statement Regarding Authorship and Monetary Contributions.** No counsel for any party authored this brief in whole or in part, and no entity or person aside from *amicus curiae* and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

**C. Timeliness.** This brief is timely because it is filed within seven days of the Response Brief for Respondents (Doc. 397) and *amicus curiae* intends to support Respondents' position as set forth in that filing. *See* Local Rule 29.2.

<u>/s/ David R. Baake</u>

## TABLE OF CONTENTS

Statement of Interest and Summary of Argument ..................................5

Argument..................................................................................................10

A.         Venue is Not Proper in this Circuit, and Piecemeal Review is Prejudicial to Downwind States Like New Mexico ................................10

B.         Texas's Merits Arguments Are Absolutely Foreclosed by Binding Supreme Court Precedent..........................................................15

C.         EPA's Action Was Consistent with Principles of Federalism and Interstate Equity................................................................................19

D.         Granting the Texas Petitions Would Cause Serious Harm to Public Health in New Mexico................................................................22

Conclusion ..............................................................................................25

# TABLE OF AUTHORITIES

## Cases

*EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489 (2014)8,  9,  13, 17, 18, 19, 20

*Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) .................................. 17

*Luminant Generation Co. v. EPA*, 675 F.3d 917 (5th Cir. 2012) ........... 23

*State of Ga. v. Tennessee Copper Co.*, 206 U.S. 230 (1907) ............... 9, 20

*Texas v. EPA*, 2011 WL 710598 (5th Cir. Feb. 24, 2011)........................ 12

*Texas v. New Mexico*, 138 S. Ct. 954 (2018)............................................. 22

*Texas v. New Mexico*, 141 S. Ct. 509 (2020)............................................. 22

*United States v. Vargas*, 74 F.4th 673 (5th Cir. 2023) ........................... 17

*W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998)....................................................................... 12

*Westar Energy, Inc. v. EPA*, 608 F. App'x 1 (D.C. Cir. 2015) ................ 12

## Statutes

42 U.S.C. § 7410(a)(2)(D)(i) ............................................................. 6, 9, 20

42 U.S.C. § 7607(b)(1)............................................................................. 11

## Regulations

88 Fed. Reg. 9336 (Feb. 13, 2023) ................................................. 6, 11, 14

## STATEMENT OF INTEREST AND SUMMARY OF ARGUMENT

The New Mexico Environment Department ("NMED") is the environmental regulatory agency for the state of New Mexico.  NMED's mission is to protect and restore the environment and to foster a healthy and prosperous New Mexico for present and future generations. NMED works to improve air quality in the state of New Mexico and, in particular, to reduce the impact of ozone pollution on the state's residents and natural environment.

NMED is acutely interested in this case because the best available science indicates that New Mexico's air quality problems are being significantly exacerbated by emissions from Texas and other upwind states.  New Mexicans rely on the U.S. Environmental Protection Agency ("EPA") to protect them from out-of-state pollution by implementing the Good Neighbor Provision of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i).  EPA has fulfilled its statutory responsibility in the action at issue here, 88 Fed. Reg. 9336 (Feb. 13, 2023) (the "SIP Disapproval"), by disapproving state implementation plans ("SIPs") for Texas and 20 other states that failed entirely to address the serious problem of cross-state ozone pollution.

NMED respectfully makes four points in this brief.  First, NMED agrees with Respondents that Petitioners are not in the right court.  In the action under review, EPA denied 21 different states' submittals for essentially the same reason—none of these states proposed to do anything to reduce their significant contribution to interstate pollution. The question at the heart of this case—whether doing nothing is an acceptable way for states to satisfy their statutory obligation to prohibit in-state sources from contributing significantly to interstate pollution— is not one that turns on state-specific facts.  It is a question of national environmental policy: the type of question Congress intended to be addressed by the D.C. Circuit.  Because New Mexico is affected by emissions from states in three different circuits, it has a strong interest in seeing that this action is reviewed in a single court, thereby avoiding inconsistent judgments that could prejudice downwind states.

Second, each of Texas's merits arguments is absolutely foreclosed by Supreme Court precedent that is directly on point.  Texas's "fair notice" arguments are foreclosed by the Court's holding that the statute "does not require EPA to furnish upwind States with information *of any kind* about their good neighbor obligations before" disapproving a SIP

and issuing a federal implementation plan ("FIP").  *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 509 (2014) (emphasis added). Texas's attack on EPA's longstanding approach to implementing the Good Neighbor Provision—pursuant to which a contribution is treated as significant if it "(1) constitute[s] one percent of a relevant NAAQS in a nonattainment downwind State and (2) can be eliminated under the cost threshold set by the Agency"—is similarly foreclosed.  *See id.* at 518–20 (holding that this approach reflects "a permissible, workable, and equitable interpretation of the Good Neighbor Provision").  So too is Texas's contention that the SIP Disapproval conflicts with cooperative federalism.  *See id.* at 511, n.14 (invocations of "cooperative federalism" cannot justify departing from "the plain text" of the statute, which "grants EPA plenary authority" to issue a FIP "the moment EPA determines a SIP to be inadequate").  Indeed, even the dissenting justices in *Homer City* agreed that states must achieve the "air-quality benchmarks" *set by EPA* in order to avoid the imposition of a FIP.  *Id.* at 538 (Scalia, J., dissenting).

Third, it is Petitioners—not EPA—who run afoul of the principles of federalism and interstate equity at the heart of the Clean Air Act.

Each state has a sovereign interest in ensuring that its citizens "breathe pure air." *State of Ga. v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907) (Holmes, J.).  Under our federalist system, downwind states have long relied on the federal government to provide a remedy when emissions from upwind states infringe upon that sovereign interest. *See id.*  The Clean Air Act builds on this longstanding tradition by requiring each state to eliminate emissions that contribute significantly to air quality problems in downwind states, and enlisting EPA to oversee each state's compliance with that obligation.  *See Homer City*, 572 U.S. at 495.  In this case, Texas sought to arrogate to itself the authority to decide whether the inhabitants of New Mexico and other downwind states would breathe pure air.  Although Texas's own analysis showed that in-state sources contributed significantly to nonattainment in other states, Texas elected not to even consider, much less adopt, additional emission controls.  Because Texas's SIP did not "contain adequate provisions" prohibiting in-state emissions that "contribute significantly to nonattainment" or maintenance problems in "any other State," 42 U.S.C. § 7410(A)(2)(d)(i), EPA was required by law to disapprove it.

Finally, if the Texas Petitions were granted, the public health impacts in New Mexico would be severe.  Ozone pollution causes about **34 premature deaths** each year in New Mexico, along with 107 emergency room admissions and more than 250,000 missed work or school days.  Emissions from Texas are a significant cause of this ongoing harm.  In Doña Ana—New Mexico's most polluted county—Texas is responsible for more pollution than New Mexico itself.  Under any reasonable interpretation of the Good Neighbor Provision, Texas's contribution to air quality problems in New Mexico and other downwind states is significant.  Yet Texas's submission did not "contain adequate provisions" to eliminate this contribution.  EPA's action disapproving Texas's SIP was lawful and should be upheld.

# ARGUMENT

## A. Venue is Not Proper in this Circuit, and Piecemeal Review is Prejudicial to Downwind States Like New Mexico

Respondents are correct that venue for this nationally applicable action lies in the D.C. Circuit.  *See* Doc. 397 at 58–76.[1]  The Court should transfer the cases there.

Under Section 307(b)(1) of the Clean Air Act, an action taken by EPA that is "nationally applicable" or "locally or regionally applicable" but "based on a determination that has nationwide scope or effect" may be reviewed only in the D.C. Circuit.  42 U.S.C. § 7607(b)(1).  In the action under review, EPA denied *21 different states'* submittals for essentially the same reason—none of these states proposed *to do anything* to reduce their significant contribution to interstate pollution.  *See* 88 Fed. Reg. at 9,375 (noting that "no state submission that is subject of this disapproval action offered any additional control measures").  The question at the heart of this case—whether *doing nothing* is an acceptable way for states to satisfy their statutory

---

[1] The Court is not bound by the May 1, 2023 Unpublished Order.  *See* Doc. 269-1 at 24.  It can—and should—adopt Judge Douglas's persuasive dissent (*id.* at 25–30) instead.

obligation to prohibit in-state sources from contributing significantly to interstate pollution—is not one that turns on state-specific facts.  It is a question of *national* environmental policy: the type of question Congress intended to be addressed by the D.C. Circuit.

Precedent supports this conclusion.  This Court previously held that where EPA acts to implement a Clean Air Act requirement by disapproving noncompliant SIPs spanning the entire nation, that action is nationally applicable and, as such, can only be reviewed in the D.C. Circuit.  *See Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011).  Consistent with the statute, EPA's prior SIP disapprovals under the Good Neighbor Provision have been reviewed in the D.C. Circuit.  *See Westar Energy, Inc. v. EPA*, 608 F. App'x 1 (D.C. Cir. 2015) (reviewing, and upholding, EPA's disapproval of Kansas's good neighbor SIP); *W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998 WL 827315 at *6 (4th Cir. Dec. 1, 1998) (EPA action declaring 21 SIPs inadequate to address interstate pollution was properly reviewed in the D.C. Circuit because it was "not merely action on a single state implementation plan" but instead "represent[ed] a coordinated effort to

11

attack a problem that ignores state boundaries, and [was] based upon a common core of information and analysis involving 37 states").

Consolidated review is especially important in cases dealing with interstate air pollution. As the Supreme Court has explained, "[m]ost upwind States propel pollutants to more than one downwind State, many downwind States receive pollution from multiple upwind States, and some States qualify as both upwind and downwind." *Homer City*, 572 U.S. at 496–97. In light of the complex, multijurisdictional nature of the interstate pollution problem, it is critical that judicial review be consolidated in a single forum, to avoid inconsistent results that might leave downwind states without the remedy Congress intended to provide. *See Texas (2011)*, 2011 WL 710598, at *4 ("[c]entralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results.").

It is easy to imagine how different circuits could reach inconsistent results that would prejudice downwind states like New Mexico. Take the question of which set of emissions and air quality data should be used to establish linkages between upwind and downwind states. Here, EPA employed a uniform, nationwide

12

methodology for determining each state's contribution.  *See* 88 Fed. Reg.
at 9337.  As the agency updated its modeling to reflect the best
available information during the course of the rulemaking, it found that
certain states contributed greater amounts than previously modeled,
while other states contributed less.  *Compare id.* at 9367  (noting that
Tennessee and Wyoming contribute less under updated modeling) with
Louisiana Br. (Doc. 332) at 54 (updated modeling showed a greater
contribution from Louisiana).  If different aspects of the SIP
Disapproval were reviewed in different forums, the predictable result is
that each upwind state would cherry-pick data that appear to minimize
its own contribution.  Such cherry-picking would prejudice downwind
states like New Mexico.

Consider Lea County, New Mexico, which is a "maintenance"
monitor because its maximum 2023 design value exceeds the NAAQS.[2]
Lea County receives a potentially significant contribution from both

---

[2] *See* EPA, Data File with 2016v3 Ozone Design Values and
Contributions,  https://www.epa.gov/system/files/documents/2023-
01/2016v3_DVs_State_Contributions.xlsx, "2023gf Ozone
Contributions" tab [hereinafter "2016v3 Contributions Spreadsheet"],
Row 453, Column E.

California and Texas.[3]  If different aspects of the SIP Disapproval were reviewed in different courts, California and Texas (or their local industries) might advance inconsistent arguments, with each state arguing that EPA should have used a modeling scenario that showed a lower contribution from the petitioner state and a greater contribution from the state not present.  Centralized review ensures that upwind states are not able to point the finger at each other in this way, and that any challenges to EPA's methodology are resolved in a way that maintains national consistency and ensures progress towards the Clean Air Act's goal of improved air quality in downwind states.  *See also* EPA Br. (Doc. 397) at 72–74 ("It is easy to envision a scenario" where fragmented review of the SIP Disapproval Rule could lead to inconsistent and inequitable results, and providing examples).[4]

---

[3] *See id.*, Row 453, Columns I (showing a contribution of 0.71 ppb from California) and AU (showing a contribution of 2.17 ppb from Texas).

[4] Without irony, Texas Industry Petitioners argue that this case is "locally or regionally applicable," such that venue is proper in the Fifth Circuit, before going on to fault EPA for allegedly treating Texas differently from certain out-of-circuit states.  *See* Doc. 329 at 26, 45–47. NMED agrees that national consistency is important.  The way to achieve that is to have consolidated review before a single court.

In addition to the risk of inconsistent rulings, it is unfair to NMED and similarly situated parties if different aspects of the SIP Disapproval are reviewed in different courts. EPA's technical analysis demonstrates that states in three different circuits (California in the Ninth Circuit, Texas in the Fifth Circuit, and Utah in the Tenth Circuit) contribute significantly to ozone levels in New Mexico.[5] Parties with an interest in improving New Mexico's air quality should not be subjected to the burden of litigating the same issues in three different courts. Nor is this issue theoretical: Utah has filed a challenge to the SIP Disapproval in the Tenth Circuit.

To effectuate Congress' explicit preference for consolidated review of nationally significant rules, avoid inconsistent rulings, and preserve judicial economy, the Court must transfer these cases.

## B. Texas's Merits Arguments Are Absolutely Foreclosed by Binding Supreme Court Precedent

If the Court reaches the merits, it should uphold EPA's disapproval of the Texas SIP. This Court is obligated "to adhere strictly to Supreme Court precedent." *United States v. Vargas*, 74 F.4th 673,

---

[5] *See id.*, Rows 443–460, Columns I, AU, and AV.

683 (5th Cir. 2023).  It is unnecessary to quibble over whether a

particular passage in a Supreme Court decision is dicta or part of the

holding; both are binding on this Court.  *See Hollis v. Lynch*, 827 F.3d

436, 448 (5th Cir. 2016) ("we are generally bound by Supreme Court

dicta, especially when it is 'recent and detailed'").

Here, each of Texas's merits arguments is absolutely foreclosed by

*Homer City*, a Supreme Court precedent that is directly on point.  First,

Texas argues that EPA "ignored the Act's cooperative federalism" by

failing to defer to Texas's conclusion that its sources were not

contributing significantly to interstate air pollution.  *See* Doc. 328 at

21–25.  But in *Homer City*, the Supreme Court was *unanimous* in

holding that EPA is entitled to establish "air-quality benchmarks" that

states must achieve in order to avoid the imposition of a FIP.  The

majority explained that "the Good Neighbor Provision delegates

authority *to EPA*" to define the "'amounts' that push a downwind State's

pollution concentrations above the relevant NAAQS."  *Id.* at 513–14

(emphasis added).  Writing in dissent, Justice Scalia, likewise

recognized that the statute authorizes EPA to establish "numerical air-

quality benchmarks" that states must achieve.  *See id.* at 538.  As

Justice Scalia's explained, "[t]he States are to present their chosen means *of achieving EPA's benchmarks* in SIPs, and only if a SIP fails to meet those goals may the Agency" promulgate a FIP. *Id.* (emphasis added). Texas's view that it is entitled to set its *own* air quality benchmarks (by applying a non-statutory "persistent and consistent pattern of contribution" test) is foreclosed by Supreme Court precedent.

Second, Texas attacks EPA's longstanding interpretation of the Good Neighbor Provision, pursuant to which a contribution is considered "significant" if it (1) constitutes one percent of the NAAQS in a downwind State and (2) can be eliminated through the implementation of cost-effective pollution controls. *See* Doc. 328 at 25–28. But EPA held in *Homer City* that this framework reflects "a permissible, workable, and equitable interpretation of the Good Neighbor Provision." 573 U.S. at 518–23.[6] That this framework does

---

[6] Texas Industry Petitioners wrongly argue that *Homer City* "dealt exclusively with EPA's promulgation of federal implementation plans." Doc. 329 at 32. The question before the Court was how to identify "amounts" of pollution that "contribute significantly" to downwind air quality problems. That is a question that *first* arises when a state prepares its SIP. *See* EPA Br. (Doc 397) at 87. It would be absurd to require EPA to interpret the same provision differently depending on whether it is reviewing a SIP or promulgating a FIP.

not appear in the statutory text is of no moment.  The Act requires EPA to define the "amounts" of pollution that a state must eliminate to comply with its good neighbor obligations.  To do so, EPA is entitled to establish "numerical air-quality benchmarks" (such as a requirement to control contributions that exceed one percent of the NAAQS).  *See id.*, 752 U.S. at 538 (Scalia, J., dissenting).

Finally, Texas argues that it lacked "fair notice of the standards by which Texas's SIP would ultimately be evaluated."  Doc. 328 at 13. That argument is foreclosed by the Court's holding that the Clean Air Act "does not require EPA to furnish upwind States with information *of any kind* about their good neighbor obligations before a FIP issues." *Homer City*, 572 U.S. at 509 (emphasis added).  In any event, the record establishes that Texas *did* have adequate notice of the approach that EPA would use to evaluate its SIP.[7]

To read the *Homer City* decision, which is absolutely binding on this Court, is to decide this case.

---

[7] *See* 87 Fed. Reg. 9798, 9824–25 (Feb. 22, 2022) (noting that Texas's SIP purported to apply EPA's longstanding framework, including "a contribution threshold of one percent of the NAAQS (0.7 ppb)").

## C. EPA's Action Was Consistent with Principles of Federalism and Interstate Equity

It is Petitioners—not EPA—who run afoul of the principles of federalism and interstate equity at the heart of the Clean Air Act. Each state has a sovereign interest in ensuring that its citizens "breathe pure air." *Tennessee Copper*, 206 U.S. at 237. Under our federalist system, downwind states have long relied on the federal government to provide a remedy when emissions from upwind states infringe upon that sovereign interest. *See id.*

The Clean Air Act builds on this longstanding tradition by requiring each state to eliminate emissions that contribute significantly to interstate pollution, and enlisting EPA to oversee compliance with that obligation. Each state must submit a plan that "contain[s] adequate provisions" to prohibit in-state emissions that "contribute significantly to nonattainment" or maintenance problems in "any other State." 42 U.S.C. § 7410(A)(2)(d)(i). While states are free to decide *how* to reduce their significant contribution, they are not free to decide *whether* a significant contribution exists in the first place. Rather, EPA provides "air-quality benchmarks" that each state must meet. *Homer City*, 572 U.S. at 538 (Scalia, J., dissenting); *accord id.* at 513–14. If a

19

state plan is inadequate to eliminate the state's EPA-defined significant contribution, EPA *must* disapprove it. *Id.* at 495.

In this case, Texas sought to arrogate to itself the authority to decide whether the inhabitants of New Mexico and other downwind states would breathe pure air. Although Texas's *own* (deeply flawed) analysis showed that in-state sources contributed significantly to nonattainment in other states,[8] Texas elected *not to even consider* the possibility of implementing additional emission controls.[9] Worse, Texas completely ignored the tremendous impact that Texas emissions have in New Mexico.[10] EPA had a statutory obligation to deny Texas's defective SIP, thereby protecting the sovereign interests of upwind states.

---

[8] *See* 87 Fed. Reg. at 9825 (reproducing Table TX-1 from Texas's SIP, which shows that Texas sources contribute more than one-percent of the NAAQS (0.7 ppb) to 16 upwind receptors).

[9] *See id.* (noting that TCEQ's submission did not evaluate strategies for reducing emissions).

[10] Texas complains that EPA did not tell it to analyze that impact (Doc. 328 at 37), a marked departure from the main theme of Texas's brief, which is that states should "drive the regulatory process." *Id.* at 22. Texas does not explain why it could not have determined that the neighboring state of New Mexico suffers from excess ozone pollution.

When a federal agency regulates pollution occurring in one state in order to protect the sovereign interests of other states, that does not offend federalism; it effectuates it.  Texas itself frequently invokes federal jurisdiction to protect its sovereign interests in environmental disputes with its neighbors.  *See, e.g.*, *Texas v. New Mexico*, 141 S. Ct. 509 (2020) (dispute over Pecos River water); *Texas v. New Mexico*, 138 S. Ct. 954 (2018) (dispute over Rio Grande water).  As Texas recognizes, our federalist system cannot work if upriver states are allowed to decide for themselves how much water to send to downriver states.  Nor can our federalist system work if upwind states are allowed to decide how much pollution to send downwind.  Where the sovereign interests of multiple states clash, a neutral federal arbiter is needed.  Under the Clean Air Act, Congress assigned that role to EPA.

While Texas seeks refuge in the principle of cooperative federalism, cooperative federalism is not a free pass that allows states to shirk their statutory pollution control responsibilities.  As this Court has explained, "[t]he states have wide discretion in formulating their plans . . . *so long as* the as the ultimate effect of a State's choice of emission limitations is compliance with" the statutory air quality goals.

*Luminant Generation Co. v. EPA*, 675 F.3d 917, 921–22 (5th Cir. 2012)
(citations omitted; emphasis added).  Here, the "ultimate effect" of
Texas's submission was not to achieve compliance with the Good
Neighbor Provision.  Texas's SIP did not "contain *adequate* provisions"
prohibiting in-state emissions that "contribute significantly" to air
problems in "any other State."  EPA's disapproval of Texas's do-nothing
SIP was fully consistent with the Clean Air Act.

### D. Granting the Texas Petitions Would Cause Serious Harm to Public Health in New Mexico

Ozone pollution is deadly.  It is a corrosive air pollutant that
attacks the lungs and other parts of the body, contributing to
respiratory problems and cardiovascular failure.  Researchers at New
York University and the American Thoracic Society estimate that
exposure to ozone causes about **34 premature deaths** each year in
New Mexico, along with 107 emergency room admissions and more than
250,000 missed work or school days.[11]  Three New Mexico counties—
Bernalillo, Eddy, and Doña Ana—are currently violating the ozone

---

[11] *See* Marron Institute of Urban Management at New York University
and American Thoracic Society, Health of the Air Report (2021),
https://healthoftheair.org/.

NAAQS, while several others are on the verge of a violation.[12]  EPA's modeling for this rulemaking predicts that Doña Ana, Eddy, and Lea Counties will struggle to attain in 2023 and future years, meaning that these monitors are considered "maintenance" monitors.[13]

Over the past several years, New Mexico has made progress towards reducing emissions that contribute to ozone formation as part of the state's Ozone Attainment Initiative.  In 2021, for example, NMED promulgated a rule designed to slash ozone-forming emissions from the state's oil-and-gas sector.[14]  But there is a limit to what the state can accomplish on its own.  Emissions from other states—in particular, Texas—are a significant cause of the ongoing harm that New Mexicans experience.  In Doña Ana, New Mexico's most polluted county, Texas is

---

[12] EPA, 2021 Ozone Design Values (2021), https://www.epa.gov/system/files/documents/2022-05/O3_DesignValues_2019_2021_FINAL_05_25_22.xlsx.

[13] *See* 2016v3 Spreadsheet, Rows 448, 449, 452, 453, Column E.

[14] *See* NMED, Ozone Attainment Initiative, https://www.env.nm.gov/air-quality/o3-initiative/; NMED, Ozone Precursor Rule Factsheet (May 2021), https://www-archive.env.nm.gov/air-quality/wp-content/uploads/sites/2/2021/03/2021-05-06-Ozone-precursor-rule-factsheet-FINAL.pdf (noting that NMED's oil-and-gas rulemaking was projected to eliminate 21,148 tons per year of nitrogen oxides).

responsible for more pollution than New Mexico itself, contributing 4.74 parts per billion ("ppb") compared to New Mexico's own contribution of 2.87 ppb.[15]  Other New Mexico counties affected by potentially significant contributions from Texas include Lea (receiving 2.17 ppb from Texas), Eddy (receiving 1.91 ppb from Texas), and Bernalillo (receiving 0.97 ppb from Texas).[16]

The SIP Disapproval is a critical step towards reducing the harmful impact that Texas emissions have on downwind states, including New Mexico.  If the Court decides venue is proper, it should uphold EPA's decision to disapprove Texas's SIP and deny the Texas Petitions.

…

---

[15] *See* 2016v3 Contributions Spreadsheet, Row 448, Column AI (New Mexico contribution), Column AU (Texas Contribution).  The fact that Doña Ana is also impacted by international emissions does not diminish Texas's staggering contribution.  *See* EPA Br. (Doc. 397) at 206–09. NMED's modeling shows that Texas contributes almost as much to Doña Ana's ozone pollution as Mexico.  See NMED, Clean Air Act 179B Demonstration at 19 (June 2, 2021), https://www.env.nm.gov/air-quality/wp-content/uploads/sites/2/2017/02/Sunland-Park-179B-Final.pdf (nearby parts of Mexico contribute between 7.6 and 7.8 ppb, while nearby parts of Texas contribute between 5.0 and 6.9 ppb).

[16] *See* 2016v3 Contributions Spreadsheet, Rows 444, 451, 453, Column AU.

## CONCLUSION

The Court should transfer this case to the D.C. Circuit.  If it

reaches the merits, it should deny the Texas Petitions.

Respectfully submitted,

/s/ David R. Baake

David R. Baake
Baake Law, LLC
2131 N. Main Street
Las Cruces, NM 88001
Telephone: (575) 343-2782
david@baakelaw.com

Bruce Baizel
New Mexico Environment Department
Harold Runnels Building
1190 St. Francis Dr., Suite N4050
Santa Fe, NM 87505
Telephone: (505) 490-5427
Bruce.Baizel@state.nm.us

*Counsel for Amicus Curiae*
*New Mexico Environment Department*

## CERTIFICATES OF COMPLIANCE

I hereby certify that this brief complies with Fed. R. App. P. 27(d)(2)(A) because it contains 3,911 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This brief also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

I further certify that (1) all required privacy redactions have been made, Local Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document, Local Rule 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ David R. Baake

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 27.4, I hereby certify that *amicus curiae*

consulted with counsel for the other parties in this case, and all parties

consented to the filing of this brief.

/s/ David R. Baake

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2023, I electronically filed the foregoing brief with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system, which caused all case participants who are registered CM/ECF users to be served electronically.

/s/ David R. Baake