No. 23-60069

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents.*

**BRIEF FOR STATES OF NEW YORK, CONNECTICUT, ILLINOIS, MARYLAND, MASSACHUSETTS, NEW JERSEY, NEW MEXICO, PENNSYLVANIA, AND WISCONSIN; THE DISTRICT OF COLUMBIA; HARRIS COUNTY, TEXAS; AND THE CITY OF NEW YORK, NEW YORK, AS AMICI CURIAE IN SUPPORT OF RESPONDENTS**

On Petitions for Review of a Final Action of the United
States Environmental Protection Agency

BARBARA D. UNDERWOOD
 *Solicitor General*
JUDITH N. VALE
 *Deputy Solicitor General*
ELIZABETH A. BRODY
 *Assistant Solicitor General*
MORGAN A. COSTELLO
CLAIBORNE E. WALTHALL
 *Assistant Attorneys General*
 *Environmental Protection Bureau*
  *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-6167
elizabeth.brody1@ag.ny.gov

Dated: August 22, 2023

(*Additional counsel listed on signature pages.*)

## CERTIFICATE OF INTERESTED PERSONS
## Supplemental Statement Pursuant to Local Rule 29.2

*State of Texas v. EPA,*
No. 23-60069

Under the fourth sentence of Fifth Circuit Rule 28.2.1, all the signatories listed below are governmental entities and need not furnish a certificate of interested persons.

/s/ Elizabeth A. Brody
Elizabeth A. Brody
*Counsel of Record for Amici States of New York, Connecticut, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, Pennsylvania, and Wisconsin; District of Columbia; Harris County, Texas; and City of New York, New York*

# FEDERAL RULE OF APPELLATE PROCEDURE 29
Brief of an Amicus Curiae

*State of Texas v. EPA*,
No. 23-60069

Under the first sentence of Rule 29(a)(2), the signatory States below may file a brief without the consent of the parties or leave of the Court.

Under the second sentence of Rule 29(a)(2), signatories Harris County, Texas, and the City of New York, New York, state that all petitioners and respondents have consented to or do not oppose amici's filing this amicus brief.

Under Rule 29(a)(4), signatories Harris County, Texas, and the City of New York, New York, state: (i) no party's counsel authored the accompanying brief in whole or in part; (ii) neither a party nor a party's counsel contributed money that was intended to fund preparing or submitting the brief; and (iii) no person – other than the signatories of this brief – contributed money that was intended to fund preparing or submitting the brief.

   /s/ Elizabeth A. Brody
Elizabeth A. Brody
*Counsel of Record for Amici States of New York, Connecticut, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, Pennsylvania, and Wisconsin; District of Columbia; Harris County, Texas; and City of New York, New York*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION AND INTERESTS OF AMICI CURIAE .................... 1

BACKGROUND ........................................................................................ 3

    A.   Interstate Ozone Pollution and the Good Neighbor
        Provision.............................................................................. 3

    B.   State Implementation Plan Submissions from Texas,
        Mississippi, and Louisiana ................................................ 6

ARGUMENT ............................................................................................ 10

POINT I

THE CLEAN AIR ACT'S COOPERATIVE FEDERALISM FRAMEWORK
RELIES ON EPA'S SUBSTANTIVE ROLE TO PROTECT DOWNWIND
STATES FROM UPWIND POLLUTION ........................................................ 10

POINT II

EPA PROPERLY USED UPDATED MODELING TO CONFIRM
DISAPPROVAL OF THE STATE IMPLEMENTATION PLANS ........................ 21

    A.   EPA's Consideration of Updated Modeling Was
        Consistent with the Core Purpose of the Good Neighbor
        Provision............................................................................ 22

    B.   EPA's Delayed Action on SIP Submissions Does Not
        Preclude It from Considering Up-to-Date Modeling Data. ..... 25

CONCLUSION ........................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Air Pollution Control Dist. of Jefferson Cnty. v. EPA,*
    739 F.2d 1071 (6th Cir. 1984) ....................................... 14-15

*Alaska Dep't of Env't Conservation v. EPA,*
    540 U.S. 461 (2004) ...................................................... 13

*Arizona ex rel. Darwin v. EPA,*
    815 F.3d 519 (9th Cir. 2016) .................................... 10, 15, 20

*Bunker Hill Co. v. EPA,*
    572 F.2d 1286 (9th Cir. 1977) ............................................ 15

*Chemical Mfrs. Ass'n v. EPA,*
    870 F.2d 177 (5th Cir. 1989) ............................................. 22

*District Hosp. Partners, L.P. v. Burwell,*
    786 F.3d 46 (D.C. Cir. 2015) ............................................. 25

*EME Homer City Generation, L.P. v. EPA,*
    696 F.3d 7 (D.C. Cir. 2012) .............................................. 11

*Environmental Improvement Div. of the N.M. Health & Env't
    Dep't v. Marshall,*
    661 F.2d 860 (10th Cir. 1981) ....................................... 18-19

*EPA v. EME Homer City Generation, L.P.,*
    572 U.S. 489 (2014) .................................... 4-5, 10, 13, 22, 27

*Florida Power & Light Co. v. Costle,*
    650 F.2d 579 (5th Cir. Unit B 1981) ............................... 19-20

*Hearth, Patio & Barbecue Ass'n v. EPA,*
    11 F.4th 791 (D.C. Cir. 2021) ........................................... 25

*Luminant Generation Co. v. EPA,*
    675 F.3d 917 (5th Cir. 2012) ....................................... 19-20

**Cases**                                                                    **Page(s)**

*Maryland v. EPA,*
    958 F.3d 1185 (D.C. Cir. 2020) ................................................... 13, 18

*Midwest Ozone Grp. v. EPA,*
    61 F.4th 187 (D.C. Cir. 2023) ......................................................... 4

*Mississippi Comm'n on Natural Res. v. Costle,*
    625 F.2d 1269 (5th Cir. 1980) ....................................................... 19

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.
    Co.,*
    463 U.S. 29 (1983) ........................................................................ 23

*Natural Res. Def. Council, Inc. v. EPA,*
    16 F.3d 1395 (4th Cir. 1993) ......................................................... 15

*Nebraska v. EPA,*
    812 F.3d 662 (8th Cir. 2016) ............................................... 10, 15, 20

*New York v. EPA,*
    964 F.3d 1214 (D.C. Cir. 2020) ..................................................... 28

*North Dakota v. EPA,*
    730 F.3d 750 (8th Cir. 2013) .................................................... 11, 15

*Oklahoma v. EPA,*
    723 F.3d 1201 (10th Cir. 2013) ..................................................... 12

*Pharmaceutical Rsch. & Mfrs. of Am. v. Thompson,*
    362 F.3d 817 (D.C. Cir. 2004) ....................................................... 18

*Rybachek v. EPA,*
    904 F.2d 1276 (9th Cir. 1990) ....................................................... 23

*Sierra Club v. EPA,*
    294 F.3d 155 (D.C. Cir. 2002) ....................................................... 24

*Sierra Club v. EPA,*
    671 F.3d 955 (9th Cir. 2012) .................................................... 23, 25

**Cases**                                                                                          **Page(s)**

*Texas v. EPA,*
    726 F.3d 180 (D.C. Cir. 2013) ............................................................. 13

*Train v. Natural Res. Def. Council,*
    421 U.S. 60 (1975) ............................................................................. 24

*Wisconsin v. EPA,*
    938 F.3d 303 (D.C. Cir. 2019) ..................................................... 22, 24

**Laws**

42 U.S.C.
    § 1857c-5(a) (1970) ........................................................................... 14
    § 7410(a) ...................................................................... 5, 11, 18, 22
    § 7410(c) .......................................................................... 6, 17, 19
    § 7410(k) ............................................................... 5-6, 11-12, 16-18
    § 7410(*l*) ........................................................................................ 12
    § 7426(b) ....................................................................... 18, 28
    § 7604(a) ......................................................................................... 26

**Administrative Materials**

80 Fed. Reg. 65,292 (Oct. 26, 2015) ........................................................ 6

87 Fed. Reg. 9,545 (Feb. 22, 2022) .......................................................... 7

87 Fed. Reg. 9,798 (Feb. 22, 2022) ............................................... 7, 12-13

87 Fed. Reg. 64,412 (Oct. 25, 2022) ...................................................... 26

88 Fed. Reg. 9,336 (Feb. 13, 2023) ........................................... 1, 8, 21, 26

88 Fed. Reg. 36,654 (June 5, 2023) ................................................ 3, 8, 19

**Miscellaneous Authorities\***                                    **Page(s)**

Comment Letter from Att'ys Gen. (June 21, 2022),
    https://downloads.regulations.gov/EPA-HQ-OAR-2021-0668-
    0367/attachment_1.pdf ........................................................................ 5

Comments of WildEarth Guardians on EPA Ozone Transport
    Modeling in Dkt. No. EPA-R06-OAR-2021-0801 (Apr. 25,
    2022), https://downloads.regulations.gov/EPA-R06-OAR-
    2021-0801-0042/attachment_1.pdf ..................................................... 23

EPA, *Health Effects of Ozone Pollution* (last updated May 24,
    2023), https://www.epa.gov/ground-level-ozone-
    pollution/health-effects-ozone-pollution ............................................... 3

H.R. Rep. No. 95-294 (1977) .............................................................. 13-14

Karl James Simon, *The Application and Adequacy of the Clean
    Air Act in Addressing Interstate Ozone Transport*, 5 Envtl.
    Law. 129 (1998) ..................................................................................... 14

Richard L. Revesz, *Federalism and Interstate Environmental
    Externalities*, 144 U. Pa. L. Rev. 2341 (1996) ..................................... 14

S. Rep. No. 101-228 (1989) ...................................................... 4, 12-13, 16

U.S. Dep't of Energy, State of Louisiana Energy Risk Sector
    Profile (Mar. 2021),
    https://www.energy.gov/sites/default/files/2021-09/Louisiana
    Energy Sector Risk Profile.pdf ............................................................. 13

U.S. Environmental Protection Agency, 2015 Ozone NAAQS
    Interstate Transport SIP Disapprovals - Response to
    Comment Document (2023),
    https://downloads.regulations.gov/EPA-HQ-OAR-2021-0663-
    0083/content.pdf .................................................................................... 14

_____

\*All websites last visited August 22, 2023.

**Miscellaneous Authorities**[*]                                    **Page(s)**

U.S. Environmental Protection Agency, *Air Quality Modeling Technical Support Document: 2015 Ozone NAAQS SIP Disapproval Final Action* (2023), https://downloads.regulations.gov/EPA-HQ-OAR-2021-0663-0085/content.pdf...................................................................... 4

U.S. Environmental Protection Agency, Good Neighbor Plan for the 2015 Ozone NAAQS (Mar. 15, 2023), https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs ..... 8

## INTRODUCTION AND INTERESTS OF AMICI CURIAE

In this case, petitioners challenge the U.S. Environmental Protection Agency's final action disapproving state implementation plans (SIPs) for Texas, Mississippi, and Louisiana.[1] EPA disapproved these SIPs for failing to satisfy the Clean Air Act's Good Neighbor Provision, which requires upwind States' SIPs to prohibit emissions that will contribute significantly to downwind States' nonattainment of or inability to maintain the federal ozone standards.

Amici the States of New York, Connecticut, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, Pennsylvania, and Wisconsin, the District of Columbia, and Harris County, Texas and the City of New York submit this brief in support of EPA and to urge this Court to confirm EPA's action disapproving the SIPs at issue. Amici are States and local governments, including jurisdictions that are downwind of Texas, Mississippi, and Louisiana, that receive ozone-forming pollutants from upwind States. Amici have a substantial interest in reducing the amount

---

[1] *See* Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023).

of ozone pollution that upwind States transmit into Amici's jurisdictions. Amici also have a substantial interest in the full implementation of EPA's recent federal ozone transport rule, which hinges on the validity of EPA's predicate action disapproving upwind States' SIPs. Amici require the emission reductions that the Clean Air Act guarantees and that the federal rule delivers to protect their residents' health and welfare from the deleterious effects of ozone pollution, and to satisfy fast-approaching deadlines to attain or maintain federal ozone standards in their respective jurisdictions.

Amici make two main points in this brief. First, EPA does not play a "ministerial role" in reviewing SIP submissions, as petitioners contend. *See* Br. of La. Indus. Pet'rs 22. Rather, the Clean Air Act directs EPA to evaluate SIPs to determine whether they adequately prohibit interstate pollution. EPA's substantive review is critical to the Good Neighbor Provision's core purpose of protecting downwind States from pollution emitted by sources in upwind States.

Second, EPA properly used updated emissions modeling data in evaluating the SIP submissions. Consulting up-to-date information facilitates faithful implementation of the Good Neighbor Provision because

the provision prohibits pollution that will hinder downwind States' abilities to attain or maintain the federal ozone standards in future years in which attainment is measured. Accurate modeling likewise promotes the statute's goal of downwind States' attainment. Nor was EPA prohibited from using updated data here by virtue of its delay in acting on the SIP submissions.

## BACKGROUND

### A.   Interstate Ozone Pollution and the Good Neighbor Provision

Sources in upwind States generate ozone or its precursor pollutants, which, due to geography and weather patterns, travel across state lines and into downwind States, sometimes thousands of miles away. *See* 88 Fed. Reg. 36,654, 36,658 (June 5, 2023). This transported ozone negatively affects the health of residents in downwind States because elevated levels of ozone can trigger asthma, worsen bronchitis and emphysema, and cause early death. EPA, *Health Effects of Ozone Pollution* (last updated May 24, 2023). Contributions of ozone from upwind States can also prevent downwind States from meeting or maintaining

federal ozone standards in their own jurisdictions. *See Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 189 (D.C. Cir. 2023).

"Most upwind States propel pollutants to more than one downwind State," and "many downwind States receive pollution from multiple upwind States." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 496 (2014). As a result, the interstate transport of pollutants "is a major determinant of local air quality." S. Rep. No. 101-228, at 264 (1989). Indeed, collective ozone transport from upwind States is responsible for a significant portion of the ozone in Amici's jurisdictions, including as much as 57 percent of the ozone in Fairfield County, Connecticut; 28 percent of the ozone in Cook County, Illinois; and 47 to 52 percent of the ozone in Kenosha, Racine, and Sheboygan Counties, Wisconsin. *See* EPA, *Air Quality Modeling Technical Support Document: 2015 Ozone NAAQS SIP Disapproval Final Action* app. D at D-2 (2023).[2] To compensate for these upwind ozone contributions, downwind States must regulate their own in-state sources more stringently—at greater cost to these sources and often with diminishing returns on marginal pollution reduction. *See*

---

[2] For sources available online, URLs appear in the Table of Authorities.

*EME Homer City*, 572 U.S. at 519-20; Comment Letter from Att'ys Gen. 8 (June 21, 2022).

Congress enacted the Good Neighbor Provision to address this problem of transported interstate pollution. 42 U.S.C. § 7410(a)(2)(D)(i)(I). Whenever EPA promulgates or revises a federal air quality standard, such as for ozone or its precursor pollutants, the Act requires each State to submit a SIP consisting of air pollution regulations or other requirements that ensure that the State will achieve and maintain compliance with the federal standard. *See id.* § 7410(a)(1). The Good Neighbor Provision requires that each SIP submission contain "adequate provisions" to prohibit emissions within an upwind State in amounts that will contribute significantly to nonattainment, or interfere with maintenance, of federal air quality standards in a downwind State. *See id.* § 7410(a)(2)(D)(i)(I); *see also EME Homer City*, 572 U.S. at 509.

EPA uses a two-step process to review SIPs submitted by States. First, EPA must make an initial determination within sixty days, but no later than six months, about whether a SIP submission is "complete"—in other words, whether it meets the "minimum criteria" established by EPA. *See* 42 U.S.C. § 7410(k)(1)(B). If the SIP submission does not meet

5

the minimum criteria, EPA must deem the SIP incomplete and proceed as though the State had not submitted a SIP at all. *Id.* § 7410(k)(1)(C).

Second, once a SIP submission is deemed complete, *id.* § 7410(k)(2), EPA has twelve months to review the SIP submission, and must approve the SIP only "if it meets all of the applicable requirements of" the Clean Air Act, *id.* § 7410(k)(3). If EPA determines that a SIP is inadequate to prohibit harmful emissions in downwind States, EPA must disapprove it and, within two years of such disapproval, issue a federal implementation plan (FIP) to replace the inadequate SIP. *Id.* § 7410(c)(1).

## B.  State Implementation Plan Submissions from Texas, Mississippi, and Louisiana

EPA strengthened the relevant air quality standards for ozone in 2015. 80 Fed. Reg. 65,292 (Oct. 26, 2015). Around this time, EPA's modeling showed that emissions from two dozen upwind States—including Texas, Mississippi, and Louisiana ("State Petitioners")—would impair the ability of multiple downwind States to attain or maintain the federal ozone standards. Many upwind States, including State Petitioners, failed to propose corresponding emissions reductions in their SIPs. Instead, these States submitted plans that downplayed the severity of

ozone pollution in downwind States or the significance of their own contributions. *See, e.g.*, 87 Fed. Reg. 9,798, 9,811, 9,826 (Feb. 22, 2022) (describing Louisiana and Texas submissions); 87 Fed. Reg. 9,545, 9,555 (Feb. 22, 2022) (describing Mississippi submission).

EPA failed to act on these inadequate SIP submissions by mandatory deadlines in the Act. For instance, EPA failed to approve or disapprove SIPs submitted by Texas, Mississippi, and Louisiana within a year of the submissions, as required by the Act. These States did not seek to compel EPA's timely action on their SIPs. Instead, New York and other downwind States—facing a strong likelihood that they would be unable to meet their own federal ozone standards by the statutory deadline—sued EPA to obtain action on Texas's SIP submission, among others. The parties to that deadline enforcement litigation entered into a consent decree establishing new deadlines for EPA to act on the SIPs submitted by several upwind States, including Texas. *See* Consent

Decree, *New York v. Regan*, No. 1:21-cv-252 (S.D.N.Y. Nov. 15, 2021), ECF No. 38;[3] *see also* Resp. Br. for Resp'ts (EPA Br.) at 35.

EPA disapproved the SIPs of State Petitioners and eighteen other States in February 2023. 88 Fed. Reg. 9,336 (Feb. 13, 2023). Subsequently, EPA signed and then published the Good Neighbor Plan, a federal rule containing FIP requirements that substitute for the disapproved SIPs. The Plan's FIP requirements operate directly to reduce ozone-forming emissions from sources in the upwind States with disapproved SIPs. *See* EPA, Good Neighbor Plan for the 2015 Ozone NAAQS (Mar. 15, 2023); 88 Fed. Reg. 36,654.

State Petitioners filed petitions for review challenging EPA's final rule disapproving their SIPs. *See* ECF Nos. 1, 52, 63.[4] Various industry petitioners also filed petitions for review challenging the same

---

[3] Nongovernmental organizations also sued to obtain a court-ordered deadline for EPA to act on outstanding SIP submissions for State Petitioners, among others. *See* Consent Decree, *Downwinders at Risk v. Regan*, No.4:21-cv-3551 (N.D. Cal. Jan. 12, 2022), ECF No. 23. And NGOs separately sued to obtain a court-ordered deadline for EPA to promulgate FIPs for certain States. Consent Decree, *Sierra Club v. Regan*, No. 3:22-cv-01992 (N.D. Cal. Jan. 24, 2023), ECF No. 37.

[4] Unless otherwise specified, ECF numbers refer to the docket in this case, *Texas v. EPA*, No. 23-60069 (5th Cir.).

disapproval rule. *See* ECF Nos. 3, 5, 44, 58, 213, 216, 221. Petitioners moved to stay enforcement of EPA's SIP disapproval rule while their petitions for review were pending. *See* ECF Nos. 31, 32. This Court granted the stay in a nonprecedential order. *See* ECF Nos. 269, 359. EPA simultaneously moved to transfer the petitions to the D.C. Circuit, *see* ECF No. 50, which this Court denied in the same order that issued the stay, *see* ECF No. 269.[5]

---

[5] Amici agree with EPA that the proper venue for this action is the D.C. Circuit and that this Court should transfer the petitions to the D.C. Circuit or dismiss them. *See* EPA Br. 58-76.

## ARGUMENT

## POINT I

### THE CLEAN AIR ACT'S COOPERATIVE FEDERALISM FRAMEWORK RELIES ON EPA'S SUBSTANTIVE ROLE TO PROTECT DOWNWIND STATES FROM UPWIND POLLUTION

There is no merit to petitioners' contention that EPA has only a ministerial role in reviewing SIPs under the Clean Air Act. *See, e.g.*, Br. of La. Indus. Pet'rs (La. Indus. Br) 15-16, 26; Miss. Pet'rs' Joint Opening Br. (Miss Br.) 21.[6] As the Supreme Court has recognized, downwind States are "unable to achieve clean air because of the influx of out-of-state pollution they lack authority to control." *See EME Homer City*, 572 U.S. at 495. Accordingly, to protect downwind States, "EPA has substantive authority to assure that a state's proposals comply with the Act, not simply the ministerial authority to assure that the state has made *some* determination." *See Arizona ex rel. Darwin v. EPA*, 815 F.3d 519, 531 (9th Cir. 2016); *Nebraska v. EPA*, 812 F.3d 662, 667 (8th Cir. 2016).

---

[6] *See also* Opening Br. for Tex. State Pet'rs (Tex. State Br.) 19; Br. of Tex. Indus. Pet'rs (Tex. Indus. Br.) 3-4, 29-31; Br. of Appellant La. Dep't of Envtl. Quality & State of La. (La. State Br.) 33.

To fulfill its critical role of protecting downwind States from pollutants emitted in upwind States, EPA must actively review SIPs and act when SIPs are inadequate. Specifically, the Act requires EPA to determine whether a SIP "contain[s] adequate provisions" to prohibit significant cross-state emissions. *See* 42 U.S.C. § 7410(a)(2)(D)(i)(I). In doing so, EPA must calculate the level of emissions reductions needed to eliminate that State's significant contribution to nonattainment, or interference with maintenance, of federal ozone standards in downwind States. *See EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 13 (D.C. Cir. 2012) (recognizing EPA's "critical role" in "calculating each upwind State's good neighbor obligation"), *rev'd on other grounds*, *EME Homer City*, 572 U.S. 489. Accordingly, EPA's review of a SIP extends not only to whether a State considered the necessary factors, but also to whether the SIP ultimately satisfies the Good Neighbor Provision's mandate to prohibit pollution emitted in that State from significantly impairing air quality in a downwind jurisdiction. *See North Dakota v. EPA*, 730 F.3d 750, 766 (8th Cir. 2013).

Moreover, when EPA determines that a SIP is inadequate to prohibit such emissions, EPA *must* disapprove that SIP. 42 U.S.C.

§ 7410(k)(3). The Act specifies that EPA shall approve a SIP only if "it meets all of the applicable requirements of" the Clean Air Act, *id.*, which includes the Good Neighbor Provision. The Act similarly provides that EPA "shall not approve a revision of a plan if the revision would interfere with any applicable requirement" under the Act. 42 U.S.C. § 7410(*l*); *see, e.g.*, 87 Fed. Reg. at 9,834. The Act thus gives EPA no discretion to approve a SIP—or, here, a SIP revision—that is insufficient. To the contrary, the plain text of the Act confirms that while "states have the ability to create SIPs," those SIPs remain "subject to EPA review." *Oklahoma v. EPA*, 723 F.3d 1201, 1209 (10th Cir. 2013).

EPA's substantive role is critical to the Good Neighbor Provision's core purpose of protecting downwind States from pollution emitted by sources in upwind States. Absent meaningful federal requirements, upwind States would have little incentive to require in-state sources to reduce emissions for the benefit of downwind States.[7] Rather, upwind

---

[7] Louisiana misses the mark in contending (La. State Br. 1, 14) that its own air is clean. Upwind States may themselves be in attainment while substantially contributing to downwind States' nonattainment because their pollution travels downwind. *See* S. Rep. No. 101-228, at 48. For example, Louisiana has several power plants near the Texas border.

(*continued on the next page*)

States would be incentivized to allow in-state sources to emit pollution that travels out of state because upwind States would "reap[] the benefits of the economic activity causing the pollution without bearing all the costs," *EME Homer City*, 572 U.S. at 495. *See Maryland v. EPA*, 958 F.3d 1185, 1190 (D.C. Cir. 2020) (per curiam). Congress thus required EPA to play a substantive role in disapproving SIPs that fail to satisfy the Good Neighbor Provision in order to prevent upwind States from engaging in a deregulatory race to the bottom to attract industry away from other States. *See Texas v. EPA*, 726 F.3d 180, 193 (D.C. Cir. 2013) (discussing Congress's awareness of the need for EPA oversight to prevent States from competing with each other for industry through permissive pollution controls); *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 486 (2004) (same); *see also* H.R. Rep. No. 95-294, at 330 (1977); S. Rep. No. 101-228, at 289. Experience shows, moreover, that this substantive role has been critical to achieving necessary emissions

---

*See* U.S. Dep't of Energy, State of Louisiana Energy Risk Sector Profile 2 (Mar. 2021). And EPA found that Louisiana would contribute significantly to numerous monitoring locations in Texas. *See* 87 Fed. Reg. at 9,811, Table LA-1, 9,813, Table LA-2.

reductions. *See* EPA, 2015 Ozone NAAQS Interstate Transport SIP Disapprovals - Response to Comment Document 396 (2023).

Indeed, Congress has repeatedly strengthened the Good Neighbor Provision because prior versions that depended on upwind States to police their own cross-state contributions proved ineffective. *See* Richard L. Revesz, *Federalism and Interstate Environmental Externalities*, 144 U. Pa. L. Rev. 2341, 2360 (1996); *see also* Karl James Simon, *The Application and Adequacy of the Clean Air Act in Addressing Interstate Ozone Transport*, 5 Envtl. Law. 129, 142-44 (1998). In the earliest version of the Good Neighbor Provision, Congress "relied solely on intergovernmental cooperation on the part of the state governments, with no federal role."[8] Revesz, *supra*, at 2360. But relying purely on interstate cooperation was "an inadequate answer to the problem of interstate air pollution," as a House of Representatives report observed in discussing the provisions of the 1977 amendments to the Clean Air Act that strengthened the Good Neighbor Provision. H.R. Rep. No. 95-294, at 330; *see also Air Pollution*

---

[8] Specifically, the 1970 version of the Good Neighbor Provision required States to include "adequate provisions for intergovernmental cooperation" on cross-state air pollution. 42 U.S.C. § 1857c-5(a)(2)(E) (1970).

*Control Dist. of Jefferson Cnty. v. EPA*, 739 F.2d 1071, 1075 (6th Cir. 1984) (summarizing 1977 amendments to the Good Neighbor Provision).

It is unsurprising, then, that multiple courts have rejected the same arguments that petitioners advance here. For example, the Eighth Circuit rejected the argument that EPA's role "is limited to ensuring that at least minimal consideration is given to each factor," *North Dakota*, 730 F.3d at 760, and confirmed that EPA's role includes substantively reviewing SIPs, *see id.* at 760-61. *See Nebraska*, 812 F.3d at 668; *Arizona ex rel. Darwin*, 815 F.3d at 532 (rejecting argument that "EPA lacks authority substantively to review the SIP for consistency with the Act"). As these courts have explained, accepting petitioners' argument "would reduce EPA's approval of [state] implementation plan[s] to a rubber stamp"—a result that "Congress did not intend." *Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1293-94 (9th Cir. 1977); *see also Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1402 (4th Cir. 1993) (upholding EPA action that "did not merely rubber-stamp" State's submission).

Petitioners also err in arguing that the Clean Air Act gives EPA only a perfunctory role in evaluating SIPs "for compliance with the minimum requirements of the Act." Miss. Br. xi. This argument improperly

15

conflates the two distinct steps in EPA's SIP review process—each of which is set forth in a different provision of the Act. The first step in the SIP review process requires EPA, generally within sixty days of receiving a SIP submission, to review the submission for "completeness," which is defined as a determination of "whether the minimum criteria . . . have been met." *See* 42 U.S.C. § 7410(k)(1)(B); *see* Tex. State Br. 5-6 (explaining that, at this step, EPA must determine "whether a SIP is technically and administratively complete"). When EPA concludes that a SIP submission is incomplete, it proceeds as if the State failed to submit any SIP at all. *See* 42 U.S.C. § 7410(k)(1)(C).

But when EPA concludes that a SIP submission is complete, it proceeds to the second step in the SIP review process, which requires EPA to substantively review whether the submission "meets all of the applicable requirements of this chapter," *id.* § 7410(k)(3), including the Good Neighbor Provision. The Act provides EPA twelve months to make this substantive determination, *id.* § 7410(k)(2)—an extended period that Congress enacted after determining that a shorter period had "proved insufficient to allow EPA to conduct the necessary analyses," S. Rep. No. 101-228, at 21-22. If, as petitioners argue, the extent of EPA's review is

merely to confirm that a SIP "meets the minimum statutory requirements" (Miss Br. 21; *see also* La. Indus. Br. 16), the clear textual and practical distinctions between the first and second steps of the statutorily required review process would be rendered meaningless. *See also* 42 U.S.C. § 7410(c)(1).

Petitioners are mistaken in contending that EPA is authorized to conduct only a cursory review of a SIP submission in the first instance but may initiate a more searching review later if EPA calls for SIP revisions. *See* Miss. Br. 47-48. EPA may issue a SIP call at any time. 42 U.S.C. § 7410(k)(5). Petitioners' interpretation makes no sense because it would give EPA no discretion to reject an initial SIP submission but full discretion to conduct a substantive review at any later time it so chooses. Such an interpretation of the Act would improperly strip EPA's initial review of any purpose and upset States' and regulated parties' reliance interests in having EPA complete its substantive review of initial SIP submissions, and approve or disapprove them, on a schedule specified by statute.

Moreover, the statute requires EPA to make fundamentally substantive determinations whether it is approving an initial SIP

submission, issuing a SIP call, or taking any other action involving the Good Neighbor Provision—that is, whether a State or source's emissions significantly contribute to downwind States' inability to attain or maintain the federal air quality standards. *See id.* § 7410(a)(2)(D)(i)(I), (k)(3); *id.* § 7426(b). And "any evaluation under the Good Neighbor Provision requires time-intensive research and analysis assessing air quality problems in the . . . downwind state, the cause of those problems in upwind states, and the cost-effectiveness of possible solutions." *Maryland*, 958 F.3d at 1197. Nothing in the text, structure, or history of the Clean Air Act requires EPA to blind itself to substantive deficiencies in a SIP submission in the first instance, while empowering EPA to take later actions based on those same deficiencies.

Finally, there is no merit to petitioners' argument that EPA's substantive review of SIPs usurps States' authority or upsets the Act's cooperative federalism structure. Disagreement is an inevitable feature of any oversight scheme in which Congress directs a federal agency to independently review States' implementation of a federal law. *See, e.g.*, *Pharmaceutical Rsch. & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 822 (D.C. Cir. 2004) (federal review of state Medicaid plans); *Environmental*

*Improvement Div. of the N.M. Health & Env't Dep't v. Marshall*, 661 F.2d 860, 862-63 (10th Cir. 1981) (federal review of state occupational-safety-and-health plans); *Mississippi Comm'n on Natural Res. v. Costle*, 625 F.2d 1269, 1275-76 (5th Cir. 1980) (federal review of state water-quality standards). Moreover, where EPA disapproves a State's SIP, the Act clearly entitles that State to submit a revised SIP that can satisfy the Good Neighbor Provision—something State Petitioners have not done here. *See* 42 U.S.C. § 7410(c)(1); *see also* 88 Fed. Reg. at 36,838-39.

EPA's substantive review of State Petitioners' SIPs fully accords with cooperative federalism principles. Although States enjoy latitude in crafting SIPs (*see* Miss. Br. 6), that latitude exists with regard to implementation—namely, selecting the measures used to meet the federal air quality standards in their respective jurisdictions. *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (upholding State's authority to craft permitting regulations for smaller stationary sources); *see also Florida Power & Light Co. v. Costle*, 650 F.2d 579, 588 (5th Cir. Unit B 1981) (upholding State's authority to issue a high-sulfur fuel variance for an electric utility). But such implementation latitude is cabined by an important limiting principle: the ultimate effect of a State's

19

choices must satisfy the Act's requirements, including the Good Neighbor Provision. *See Luminant Generation*, 675 F.3d at 921; *Florida Power & Light*, 650 F.2d at 587. And it is EPA's role under the Act to determine whether States' SIP submissions ultimately satisfy the Act's requirements. *Arizona ex rel. Darwin*, 815 F.3d at 531; *Nebraska*, 812 F.3d at 667.

Here, EPA properly fulfilled its role, and did not invade any State Petitioner's role, within the Act's cooperative federalism structure. No State Petitioner proposed to implement *any* emission-reduction measures to meet its respective obligations under the Good Neighbor Provision. Thus, State Petitioners exercised no implementation choices for EPA to displace. Further, as EPA properly determined, the ultimate effect of those choices (or lack thereof) violated the Act's requirement that SIPs contain adequate measures to prohibit significant interstate pollution.

## POINT II

### EPA PROPERLY USED UPDATED MODELING TO CONFIRM DISAPPROVAL OF THE STATE IMPLEMENTATION PLANS

Contrary to petitioners' contentions, EPA properly consulted updated modeling data that was unavailable when State Petitioners first prepared their SIPs. *See* Miss. Br. 43-54, Tex. State Br. 34-39; La. State Br. 42-47. As an initial matter, EPA evaluated each SIP submission "based on the merits of the arguments put forward in each SIP" and did not disapprove any SIP based solely on the updated modeling. 88 Fed. Reg. at 9,366. Moreover, the updated modeling did not prejudice State Petitioners because all versions of the model—including the model that State Petitioners had access to when they submitted their SIPs— consistently identified the same county (or counties) in downwind States to which State Petitioners contributed ozone, and State Petitioners contend that their SIPs were approvable under any version of the modeling.[9] Because the updated modeling was not outcome-

---

[9] Specifically, every version of the modeling linked Texas, Mississippi, and Louisiana to at least one receptor in the same nonattainment area—which usually consists of a single county. *See* EPA Br. 37. Moreover, the one State Petitioner that conducted technical evaluations

*(continued on the next page)*

determinative, EPA's use of that modeling cannot provide a basis for granting the petitions here. *See* EPA Br. 185-86; *see, e.g.*, *Chemical Mfrs. Ass'n v. EPA*, 870 F.2d 177, 202 (5th Cir.), *clarified on reh'g on other grounds*, 885 F.2d 253 (5th Cir. 1989). In any event, for the reasons discussed below, EPA's consideration of updated modeling was lawful and appropriate.

## A.    EPA's Consideration of Updated Modeling Was Consistent with the Core Purpose of the Good Neighbor Provision.

The Clean Air Act delegates authority to EPA to confirm that upwind States' SIPs do not hinder downwind States' future attainment of the federal air quality standards. *EME Homer City*, 572 U.S. at 513-14. To accomplish this task, EPA must understand the amounts of pollution that *will* significantly contribute to downwind air quality problems by statutory nonattainment deadlines—a necessarily forward-looking calculation. 42 U.S.C. § 7410(a)(2)(D)(i)(I); *see also Wisconsin v. EPA*, 938 F.3d 303, 309 (D.C. Cir. 2019). In fulfilling this statutory

---

based on the updated modeling during the notice-and-comment period still maintained that it had no good-neighbor obligations. *See* Miss. Br. 15, 51-54.

mandate, EPA must consider this "important aspect of the problem" it is charged with addressing. *See Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Here, in evaluating State Petitioners' SIPs for compliance with the Good Neighbor Plan, EPA properly considered, among other things, "available updated emissions inventory data" that more accurately reflected conditions on the ground at the time of decision. *See Sierra Club v. EPA*, 671 F.3d 955, 967 (9th Cir. 2012) (finding arbitrary and capricious EPA's use of older emissions data when updated data was readily available). And petitioners' argument would have undermined EPA's ability to consider current and reliable information received during the notice-and-comment period, *see Rybachek v. EPA*, 904 F.2d 1276, 1286 (9th Cir. 1990), including comments indicating that EPA's modeling did not accurately project that certain of Amici's monitors would have difficulty meeting the federal ozone standards in future years, *see, e.g.*, Comments of WildEarth Guardians on EPA Ozone Transport Modeling in Dkt. No. EPA-R06-OAR-2021-0801, at 1-4 (Apr. 25, 2022) (citing recent ozone measurements at monitors in New Mexico).

State Petitioners' argument that EPA must review SIP submissions by considering only data available at the time of submission would elevate the importance of procedural SIP submission deadlines above the Clean Air Act's substantive attainment goals and deadlines. "Unlike the various deadlines by which the states must submit proposals, the attainment deadlines are central to the regulatory scheme." *Sierra Club v. EPA*, 294 F.3d 155, 161 (D.C. Cir. 2002) (quotation and alteration marks omitted); *see Wisconsin*, 938 F.3d at 322; *see also Train v. Natural Res. Def. Council*, 421 U.S. 60, 66-67 (1975). Setting a fixed cutoff date for EPA's consideration of air quality modeling based on a procedural step would invert this statutory structure, hobbling both EPA's evaluation of SIPs and downwind States' attainment and maintenance efforts. Indeed, the D.C. Circuit has rejected a similar argument that EPA should have used modeling that dated from a 2011 SIP submission deadline when setting emissions-reduction obligations for the 2017 ozone season. *See Wisconsin*, 938 F.3d at 322.

**B.    EPA's Delayed Action on SIP Submissions Does Not Preclude It from Considering Up-to-Date Modeling Data.**

Petitioners argue that EPA's delay in acting on their SIP submissions was prejudicial and should bar EPA from considering more accurate data when it was eventually compelled to act. *See, e.g.*, Tex. State Br. 37; Miss. Br. 50; La. State Br. 18, 44-45. But agencies "do *not* have free rein to use inaccurate data" and "cannot *ignore* new and better data." *District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 56-57 (D.C. Cir. 2015). Indeed, an agency "stands on shaky legal ground [by] relying on significantly outdated data," *Sierra Club*, 671 F.3d at 966 (remanding SIP approval), and "reliance on old data without meaningful comment on the significance of more current compiled data" is arbitrary and capricious, *id.* at 968. Conversely, an agency acts "responsibly by taking account of . . . more recent analysis" and "by considering . . . newer data." *Hearth, Patio & Barbecue Ass'n v. EPA*, 11 F.4th 791, 808 (D.C. Cir. 2021).

EPA's delay in acting on State Petitioners' SIPs does not alter either EPA's statutory duty under the Clean Air Act to prevent significant contribution to downwind States or longstanding principles of administrative law. Moreover, EPA's delay here was due in part to EPA's

25

need to address multiple, simultaneous judicial orders that remanded prior interstate ozone rules to the agency for reconsideration—and was not animated by any pretextual or sinister motive. *See* 88 Fed. Reg. at 9,365. And EPA did not surprise State Petitioners with the updated modeling when it finalized the SIP disapprovals in February 2023, but instead made the updated modeling available to States through a series of *Federal Register* notices beginning in October 2020. EPA Br. 31-33. Indeed, one State Petitioner in this litigation (Mississippi) used the revised updated modeling in its comments on this rulemaking to argue that, even under the newer version of the modeling, that State did not significantly contribute ozone to downwind States. *See* Miss. Br. 15, 51-54. And other States submitted revised SIPs based on the updated modeling. *See, e.g.,* 87 Fed. Reg. 64,412, 64,419-20 (Oct. 25, 2022) (Alabama).

Petitioners' other arguments regarding EPA's delay in acting on their SIP submissions are also meritless. The Clean Air Act provides a single remedy for delay—a court order compelling EPA to act—not an order estopping EPA from considering more recent scientific data at the time of decision. *See* 42 U.S.C. § 7604(a)(2). Petitioners never sought that

available remedy to enforce the statutory deadline by compelling EPA to act. Rather, it was downwind States and others, including several Amici here, who brought deadline enforcement litigation to compel EPA's action on several SIP submissions, including Texas's. *See* Consent Decree, *New York*, No. 1:21-cv-252.

Nor were petitioners harmed by the delay. To the contrary, the delay allowed sources in Texas, Mississippi, and Louisiana to continue to emit pollution in violation of the Good Neighbor Provision for years beyond the time when SIPs should have limited such pollution. As a result, petitioners have "reap[ed] the benefits of the economic activity causing the pollution without bearing all the costs," *EME Homer City*, 572 U.S. at 495, while downwind States' "ability to achieve and maintain satisfactory air quality [was] hampered by the steady stream of infiltrating pollution," *id.* at 496. This Court should reject State Petitioners' transparent attempt to buy even more time, when necessary emissions reductions still have not occurred eight years after the 2015 ozone standards were promulgated, to the detriment of downwind States.

Petitioners are also incorrect in contending (Miss. Br. 48) that any disadvantage to downwind States from the use of stale data in evaluating

upwind SIPs could be remedied by downwind States seeking relief through section 126(b) of the Act—which allows a State or local subdivision to petition EPA to directly regulate a specific upwind stationary source or sources, such as a power plant, that emits any air pollutant in violation of the Good Neighbor Provision. *See* 42 U.S.C. § 7426(b). Section 126(b) is a complement to, not a substitute for, the implementation of the Good Neighbor Provision through SIPs—or, as necessary, FIPs. *See New York v. EPA*, 964 F.3d 1214, 1218 (D.C. Cir. 2020) ("Section 126(b) . . . creates an *additional* mechanism for enforcing the Good Neighbor Provision." (emphasis added)). Primary implementation of the Good Neighbor Provision occurs under section 110(a)(2)(D)(I)(i), the section at issue in this litigation, under which upwind States have the statutory responsibility to submit SIPs that satisfy their Good Neighbor Provision obligations at the start, and EPA has the statutory responsibility to review those SIPs and to disapprove them if they fail to do so. By contrast, section 126(b) provides an optional mechanism for a downwind State to seek an individualized remedy. Petitioners' reading would turn the Act on its head, placing the burden to evaluate an upwind State's compliance

with the Good Neighbor Provision on downwind States, rather than on upwind States and EPA.

## CONCLUSION

This Court should deny the petitions.

Dated:  New York, New York
        August 22, 2023

                                        Respectfully submitted,

                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*
                                        BARBARA D. UNDERWOOD
                                          *Solicitor General*
MORGAN A. COSTELLO                      JUDITH N. VALE
CLAIBORNE E. WALTHALL                     *Deputy Solicitor General*
  *Assistant Attorneys General*
  *Environmental Protection Bureau*     */s/Elizabeth A. Brody*[10]
                                        ELIZABETH A. BRODY
                                        *Assistant Solicitor General*

                                        Office of the Attorney General
                                        28 Liberty Street, 23rd Floor
                                        New York, NY 10005
                                        (212) 416-6167
                                        elizabeth.brody1@ag.ny.gov

(*Counsel listing continues on next page.*)

---

[10] Counsel for the State of New York certifies that the other parties listed in the signature blocks consent to this filing.

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
100 West Randolph Street
Chicago, IL 60601

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 St. Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
  *Attorney General*
  *State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87504

MICHELLE A. HENRY
  *Attorney General*
  *Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

JOSHUA L. KAUL
  *Attorney General*
  *State of Wisconsin*
17 West Main Street
Madison, WI 53703

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, DC 20001

CHRISTIAN MENEFEE
  *County Attorney*
  *Harris County, Texas*
1019 Congress, 15th Floor
Houston, TX 77002

SYLVIA HINDS-RADIX
  *Corporation Counsel*
  *City of New York*
100 Church Street
New York, NY 10007

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Elizabeth A. Brody, an attorney in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,367 words and complies with the typeface requirements and length limits of Rules 29 and 32(a)(5)-(7) and the corresponding local rules.

  _/s/ Elizabeth A. Brody_____

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, the foregoing motion and brief for amici curiae were filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated:  New York, NY
        August 22, 2023

_/s/ Elizabeth A. Brody_