NO. 23-60069

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS *et al.*,

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY *et al.*,

*Respondents.*

**BRIEF OF AIR ALLIANCE HOUSTON, CLEAN WISCONSIN, DOWNWINDERS AT RISK, AND SIERRA CLUB AS *AMICI CURIAE* IN SUPPORT OF RESPONDENTS**

Neil Gormley
Seth L. Johnson
Kathleen Riley
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-797-5239
202-797-5245
202-745-5227
ngormley@earthjustice.org
sjohnson@earthjustice.org
kriley@earthjustice.org

*Counsel for Sierra Club, Downwinders at Risk, and Air Alliance Houston*

*Additional Counsel listed on inside cover*

Joshua D. Smith
Sierra Club
2101 Webster St., Ste. 1300
Oakland, California 94612
415-977-5560
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

Hayden Hashimoto
Shaun Goho
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
617-624-0234
hhashimoto@catf.us
sgoho@catf.us

*Counsel for Clean Wisconsin*

Filed: August 22, 2023

# Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Abrams, Michael R., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

2. Air Alliance Houston (Proposed Amicus Curiae)

3. Association of Electric Companies of Texas (Petitioner)

4. The Association of Electric Companies of Texas ("AECT") represents electric generators, transmission & distribution utilities, fully-integrated utilities and retail electric providers that span Texas. Its members generate power from diverse resources, including natural gas, coal, wind and solar, plus investments in energy storage.

5. Baake, David R. (Counsel for Amicus Curiae New Mexico Environmental Department)

6. Baake Law, LLC (Counsel for Amicus Curiae New Mexico Environment Department)

7. Balch & Bingham LLP (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County

i

Power Company, LLC and Petitioner Mississippi Power Company)

8.  Baker Botts L.L.P. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA, Petitioner Entergy Louisiana, L.L.C., and Petitioner Texas Lehigh Cement Company, LP)

9.  Barber, Julia B. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

10. BCCA Appeal Group (Petitioner)

11. Berge, Megan H. (Counsel for Petitioner Texas Lehigh Cement Company)

12. Blackman, Daniel (Region 4 Administrator, United States Environmental Protection Agency)

13. Brookfield Asset Management Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

14. Burdette, Courtney J., Executive Counsel, Louisiana Department of Environmental Quality (Counsel for Petitioner Louisiana Department of Environmental Quality)

15. Burgess Diaz, Daria (Counsel for Amicus Curiae Louisiana Public Service Commission)

16. Clark, Jill C., General Counsel, Louisiana Department of Environmental Quality (Counsel for Petitioner Louisiana Department of Environmental Quality)

17. Clean Wisconsin (Proposed Amicus Curiae)

18.   Coleto Creek Power, LLC (Petitioner)

19.   Cole, Williams F., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

20.   Davis, Bill, Deputy Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

21.   Downwinders at Risk (Proposed Amicus Curiae)

22.   Eagle Materials Inc. (Parent Company of Petitioner Texas Lehigh Cement Company)

23.   Ennis, Bradley A. (Counsel for Petitioner Mississippi Power Company)

24.   Ennis Power Company, LLC (Petitioner)

25.   Entergy Louisiana, L.L.C. (Petitioner)

26.   Fabish, Zachary (Counsel for Proposed Amici Sierra Club)

27.   Fitch, Lynn, Attorney General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

28.   Garland, Merrick B., Attorney General, United States Department of Justice (Counsel for Respondents)

29.   Gidiere, P. Stephen III (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

30. Goho, Shaun (Counsel for Proposed Amicus Curiae Clean Wisconsin)

31. Gormley, Neil (Counsel for Proposed Amici Air Alliance Houston, Downwinders at Risk, Sierra Club)

32. Hall, Machelle, Assistant Attorney General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

33. Harbourt, Maureen N. (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group LLC)

34. Hashimoto, Hayden (Counsel for Proposed Amicus Curiae Clean Wisconsin)

35. Hays Energy, LLC (Petitioner)

36. Izfar, Sarah, Trial Attorney, United States Department of Justice, Environment & Natural Resources Division, Environmental Defense Section (Counsel for Respondents)

37. Jezouit, Debra J. (Counsel for Petitioner Entergy Louisiana, L.L.C.)

38. Johnson, Seth L. (Counsel for Proposed Amici Air Alliance Houston, Downwinders at Risk, Sierra Club)

39. Kean Miller, L.L.P. (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group LLC)

40. Kelly, Daniel J. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power

Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Vice President and Deputy General Counsel for Vistra Corp.)

41. Kim, Todd, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice (Counsel for Respondents)

42. Kollmeyer, Josiah, M. (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group LLC)

43. Kuryla, Matthew L. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

44. Landry, Jeff, Attorney General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

45. Lee, Jin Hyung (Counsel for Respondents)

46. Lee, Joshua (Counsel for Petitioner Entergy Louisiana, L.L.C.)

47. Lehotsky Keller Cohn LLP (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

48. Lestelle, Evan (Counsel for Amicus Curiae Louisiana Public Service Commission)

49. Lipscomb, Whitney H., Deputy Attorney General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

50. Little, J. Mark (Counsel for Petitioner Texas Lehigh Cement Company)

51. Louisiana Chemical Association (Petitioner)

52. Louisiana Department of Environmental Quality (Petitioner)

53. Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

54. Louisiana Electric Utility Environmental Group, L.L.C. (Petitioner)

55. Louisiana Mid-Continent Oil and Gas Association (Petitioner)

56. Louisiana Public Service Commissions (Amicus Curiae)

57. Luminant Generation Company LLC (Petitioner)

58. Mansinghani, Mithun (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

59. Matheny, Justin L., Deputy Solicitor General, Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

60. Mazzara, Joseph N., Assistant Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

61. McPhee, Shae, Deputy Solicitor General, Louisiana Department of Justice, Office of the Attorney General (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

62. Midlothian Energy, LLC (Petitioner)

63. Mississippi Department of Environmental Quality (Petitioner)

64. Mississippi Power Company (Petitioner)

65. Mitchell, David W. (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Senior Counsel, Environmental for Vistra Corp.)

66. Moore, C. Grady III (Counsel for Petitioner Mississippi Power Company)

67. Moore, Stephanie Zapata (Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC and Executive Vice President and General Counsel for Vistra Corp.)

68. Murrill, Elizabeth B., Solicitor General, Louisiana Department of Justice (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

69. Nance, Earthea (Regional Administrator for Respondent United States Environmental Protection Agency)

70. New Mexico Environment Department (Amicus Curiae)

71. Oak Grove Management Company LLC (Petitioner)

72. Office of the Attorney General for the State of Louisiana (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

73. Office of the Attorney General for the State of Mississippi (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

74. Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

75. Paxton, Ken, Attorney General of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

76. Prieto, Jeffrey M. (General Counsel for Respondent United States Environmental Protection Agency)

77. Public Utility Commission of Texas (Petitioner)

78. Railroad Commission of Texas (Petitioner)

79. Regan, Michael S., Administrator, United States Environmental Protection Agency (Respondent)

80. Riley, Kathleen (Counsel for Proposed Amici Air Alliance Houston, Downwinders at Risk, Sierra Club)

81. Rucinski, Lauren (Counsel for Petitioners Louisiana Chemical Association, Louisiana Mid-Continent Oil and Gas Association, and Louisiana Electric Utility Environmental Group, LLC)

82. Schon, Michael B. (Counsel for Petitioners State of Mississippi and Mississippi Department of Environmental Quality)

83. Shelton, Dana Marie (Counsel for Amicus Curiae Louisiana Public Service Commission)

84. Sierra Club (Proposed Amicus Curiae)

85.  Shurden, Shawn (Counsel for Petitioner Mississippi Power Company)

86.  Smith, Joshua (Counsel for Proposed Amici Sierra Club)

87.  Southern Company (Parent Company of Petitioner Mississippi Power Company)

88.  State of Louisiana (Petitioner)

89.  State of Mississippi (Petitioner)

90.  State of Texas (Petitioner)

91.  St. John, Joseph S., Deputy Solicitor General, Louisiana Department of Justice, Office of the Attorney General (Counsel for Petitioners State of Louisiana and Louisiana Department of Environmental Quality)

92.  Stone, Judd, Solicitor General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

93.  Streett, Aaron M. (Counsel for Petitioners AECT, BCCA Appeal Group, TCC, and TXOGA)

94.  Stutts, Susan Scaggs (Counsel for Petitioner Mississippi Power Company)

95.  Swain, Justin A.(Counsel for Amicus Curiae Louisiana Public Service Commission)

96.  Texas Chemical Council (Petitioner)

97.  Texas Commission on Environmental Quality (Petitioner)

98.  Texas Lehigh Cement Company (Petitioner)

99.   Texas Oil & Gas Association (Petitioner)

100.  The Vanguard Group, Inc. (together with its affiliates and managed entities owns 10% or more of Vistra Corp.'s stock)

101.  United States Environmental Protection Agency (Respondent)

102.  Vistra Asset Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

103.  Vistra Corp. (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

104.  Vistra Intermediate Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

105.  Vistra Operations Company LLC (Parent company of Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC)

106.  Webster, Brent, First Assistant Attorney General, Office of the Attorney General for the State of Texas (Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality)

107.  Wise County Power Company, LLC (Petitioner)

x

Respectfully submitted,

*/s/ Neil Gormley*
Neil Gormley

# Table of Contents

Certificate of Interested Persons ................................................i

Table of Contents...................................................................xii

Table of Authorities..............................................................xiii

Background ............................................................................1

Summary of Argument............................................................1

Argument ................................................................................3

   I.    Texas, Louisiana, and Mississippi failed to control their pollution, harming people and the environment downwind and violating the Good Neighbor Provision................................3

   II.   Venue does not lie in this Court................................11

      A.    The action at issue is nationally applicable..........................12

      B.    EPA lawfully and rationally found and published that its action is based on a determination of nationwide scope or effect...................................................................18

   III.   The Disapproval Rule is a proper exercise of EPA's statutory authority...............................................................23

      A.    The Act authorizes and requires EPA to disapprove plan submissions that fail to satisfy the Good Neighbor Provision....................................................................23

      B.    EPA acted within its statutory authority in determining that plan submissions by Texas, Louisiana, and Mississippi failed to meet the requirements of the Good Neighbor Provision....................................................................30

   IV.   If the Court finds fault with EPA's disapproval, it should remand without vacatur...........................................33

Conclusion..............................................................................36

# Table of Authorities

<u>CASES</u>                                                                                <u>PAGES(S)</u>

*Amoco Prod. Co. v. Vill. of Gambell,*
<u>480 U.S. 531</u> (1987).................................................................... 34

*ATK Launch Sys. v. EPA,*
<u>651 F.3d 1194</u> (10th Cir. 2011)................................... 13, 17, 21

*Cent. & S.W. Servs. v. EPA,*
<u>220 F.3d 683</u> (5th Cir. 2000).............................................. 33

*City of Seabrook v. EPA,*
<u>659 F.2d 1349</u> (5th Cir. 1981)............................................ 32

*EPA v. EME Homer City Generation, L.P.,*
<u>572 U.S 489</u> (2014)................................................ 25, 26, 29

*Fla. Power & Light v. Costle,*
<u>650 F.2d 579</u> (5th Cir. 1981)......................................... 24, 27

*Luminant Generation v. EPA,*
<u>675 F.3d 917</u> (5th Cir. 2012)......................................... 27, 30

*McFadden v. United States,*
<u>576 U.S. 186</u> (2015)........................................................ 20

*Michigan v. EPA*
<u>213 F.3d 663</u> (D.C. Cir. 2000).......................................... 27, 28

*North Carolina v. EPA,*
<u>550 F.3d 1176</u> (D.C. Cir. 2008)........................................... 34

*NRDC v. EPA,*
<u>777 F.3d 456</u> (D.C. Cir. 2014)............................................. 6

*O'Reilly v. U.S. Army Corps of Engineers,*
    477 F.3d 225 (5th Cir. 2007) ................................................... 33

*Polselli v. IRS,*
    143 S. Ct. 1231 (2023) ............................................................ 21

*Pugin v. Garland,*
    143 S. Ct. 1833 (2023) ............................................................ 26

*RMS of Ga. v. EPA,*
    64 F.4th 1368 (11th Cir. 2023) ............................................... 13

*S. Ill. Power Coop. v. EPA,*
    863 F.3d 666 (7th Cir. 2017) ................................................... 13

*SEC v. Chenery,*
    332 U.S. 194 (1947) ................................................................ 29

*Seth B. ex rel. Donald B. v. Orleans Parish School Bd.,*
    810 F.3d 961 (5th Cir. 2016) ................................................... 15

*Sierra Club v. EPA,*
    294 F.3d 155 (D.C. Cir. 2002) ................................................. 35

*Sierra Club v. EPA,*
    926 F.3d 844 (D.C. Cir. 2019) ................................................. 13

*Wisconsin v. EPA,*
    938 F.3d 303 (D.C. Cir. 2019) ................................................... 6

*Texas v. EPA,*
    No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011) ... 13, 14, 16, 22

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) ........................................ 13, 20, 26

*Texas v. EPA*,
   706 F. App'x 159 (5th Cir. 2017) ..................................................... 18, 21

*Texas v. EPA*,
   983 F.3d 826 (5th Cir. 2020) ............................................................ 13, 18

*Train v. NRDC*,
   421 U.S. 60 (1975) ...................................................... 6, 26, 27, 35

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) .......................................................................... 21

*Union Elec. v. EPA*,
   427 U.S. 246 (1976) ................................................................. 25, 26

**STATUTES:**

1 U.S.C. § 1 ........................................................................................ 15

42 U.S.C. § 7410(a) ..................................................................... 15, 16

42 U.S.C. § 7410(a)(2)(D)(i)(I) ...................................... 10, 25, 27, 30, 31

42 U.S.C. § 7410(c)(1) ...................................................................... 11

42 U.S.C. § 7410(k)(1) ...................................................................... 15

42 U.S.C. § 7410(k)(2) ................................................................. 15, 24, 25

42 U.S.C. § 7410(k)(3) ................................................................. 24, 25

42 U.S.C. § 7410(k)(5) ................................................................. 16, 28

42 U.S.C. § 7511(a)(1) ........................................................................ 6

42 U.S.C. § 7602(q) ........................................................................... 28

42 U.S.C. § 7607(b)(1) ..................................................... 11, 12, 19, 20, 22

42 U.S.C. § 7607(d)(3) ............................................................................ 20

**LEGISLATIVE HISTORY**

H.R. Rep. No. 95-294 (1977) .................................................................. 22

**REGULATION**

40 C.F.R. § 51.1303 .................................................................................. 6

**FEDERAL REGISTER NOTICES**

Air Plain Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ........ 4-6, 8, 9, 14, 17, 19, 23, 25, 30-32

Additional Air Quality Designations for the 2015 Ozone National Ambient Air Quality Standards, 83 Fed. Reg. 25,776 (June 4, 2018) ............................................................................................ 6

Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 36,654 (June 5, 2023) ................... 10, 11

Amici Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, and Sierra Club are local and national nonprofit organizations devoted to protecting the health of their members and the environment. *See* Declarations (attached).

No party or party's counsel authored or funded this brief.

## Background

The statutory, regulatory, and procedural background are set forth in EPA's Response Brief ("Resp."), Doc. 397.

## Summary of Argument

Ozone air pollution causes severe health and environmental harms—including death—nationwide. States were required to develop regulations by 2018 to stop sending significant pollution across state lines where it would harm people and impose costs on downwind states. Since 2017, modeling consistently has shown significant pollution flowing to ozone-polluted areas from states including Louisiana, Mississippi, and Texas. Yet they submitted do-nothing plans to EPA. State Petitioners have thus foisted their pollution's costs on downwind states—and people.

To address this harmful interstate pollution, Amici and allied environmental and public health organizations sued to compel EPA to

take overdue action on do-nothing state plan submissions.[1] Now that EPA has finally acted, Petitioners complain about having to reduce their pollution.

Petitioners sue in the wrong court, raising meritless claims. The rule at issue is quintessentially national in applicability, scope, and effect, as EPA found, and thus must be reviewed only in the D.C. Circuit. Petitioners wrongly insist states are free to decide not only <u>how</u> but <u>whether</u> to reduce the pollution they dump on other states. Instead, EPA's action is entirely proper and long overdue. The stay should be lifted and this Court should transfer or dismiss this action, or (if venue were proper here) uphold the Disapproval Rule as to these states. If the Court were to find the Rule arbitrary or unlawful, it should remand without vacatur to avoid disruption to the statutory scheme and serious, irreparable harm to people and the environment.

---

[1] *See* Complaint, Downwinders at Risk, et al. v. Regan, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021).

## Argument

### I.    Texas, Louisiana, and Mississippi failed to control their pollution, harming people and the environment downwind and violating the Good Neighbor Provision.

Texas, Louisiana, and Mississippi are significant contributors to downwind violations of the 2015 ozone standard, harming both people and the environment. According to the states' own submissions to EPA, each routinely contributes more than 0.70 ppb to downwind areas that do not attain, or struggle to maintain, the standard—a contribution that is potentially significant under the court-approved framework that EPA and states have applied for decades. They contribute such pollution many times annually, including on days when downwind states experience unhealthy ozone levels. Polluters in these states have cost-effective ways of reducing ozone-forming pollution. Yet none of these states even analyzed what they could do to prohibit their pollution contribution, much less adopted any measures to do so.

Cross-State Pollution



*Source:* https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs.

EPA's modeling confirms pollution from all three states contributes to ozone attainment problems in downwind states. 88 FR 9,336, 9,356, 9,357-58, 9,360 (Feb. 13, 2023) ("Disapproval Rule"). In fact, all three states are linked to areas whose real-world ozone data show actual violations of the 70 ppb standard: Mississippi contributes between 0.75 and 1.32 ppb to Collin, Dallas, Denton, Galveston, Harris, and Tarrant counties in Texas; Louisiana likewise contributes multiple ppb to Collin, Dallas, and Denton counties, between 4.75 and 5.62 ppb

to Harris county, and 9.51 ppb to Galveston; Texas contributes between 3.59 and 4.74 ppb to Dona Ana county in New Mexico, and more than 1 ppb to counties in Illinois, Indiana, Michigan, and Wisconsin.[2]

Because the uncontrolled pollution from Texas, Louisiana, and Mississippi contributes to ozone standard exceedances, it harms people living downwind, including Amici's members. They face greater risk of lung damage, asthma attacks, and premature death, and are forced to stay indoors, take medication, and miss work or school. The elevated ozone levels even damage trees and crops, harming people's livelihoods.

Seeking to end years of delay by states and EPA, Amici and allied environmental and public health organizations sued to compel EPA to act on state submissions, including State Petitioners'.[3] Amici did so because EPA's inaction on do-nothing submissions delayed necessary interstate pollution reductions and threatened our members' health and welfare.

---

[2] EPA-HQ-OAR-2021-0663-0070; 88 FR at 9,352, tbl.III.B.3 (identifying violating monitors); EPA, 2022 Ozone Design Values tbl.1a, https://www.epa.gov/system/files/documents/2023-05/O3_DesignValues_2020_2022_FINAL_05_22_23.xlsx.

[3] *Supra* 2, n.1.

Despite Amici's efforts to hold states and EPA to account, clean air that meets the 2015 ozone standard is "several years delayed." 88 FR at 9,362. EPA and states were required to implement the Good Neighbor Provision consistent with statutory timeframes for attainment of the ozone standard downwind—namely, "as expeditiously as practicable" and no later than the 2021 attainment deadline. 42 U.S.C. §§ 7410(a)(2)(D)(i)(I), 7511(a)(1); *Wisconsin v. EPA,* 938 F.3d 303, 313-15 (D.C. Cir. 2019); 88 FR at 9,362; 40 C.F.R. § 51.1303; 83 FR 25,776 (June 4, 2018) (making most nonattainment designations). With that deadline missed, the next deadline is in 2024, and 2023 is the last year that determines whether areas will meet it. 40 C.F.R. § 51.1303; *see NRDC v. EPA*, 777 F.3d 456, 467-68 (D.C. Cir. 2014). As the Supreme Court has instructed, these attainment deadlines are "the heart" of the Act. *Train v. NRDC*, 421 U.S. 60, 66 (1975); *accord Wisconsin,* 938 F.3d at 316.

Despite the statutory mandate, over 100 million Americans live, work, and recreate in areas where ozone levels are dangerous to

breathe.[4] As reflected below, unhealthy ozone levels persist along the

eastern seaboard, as well as in the Great Lakes region, the Rocky

Mountains, the Southwest, and Texas.

<u>Monitoring sites violating the 2015 Ozone Standard as of 2022</u>



*Source*:
https://epa.maps.arcgis.com/apps/mapviewer/index.html?layers=7670ef1
bbf9e47f786de9e5c428a1eed.

Worse still, air pollution is trending the wrong way in several

states. At least 16 monitors in areas that are not currently designated

as being in nonattainment, including El Paso, Texas and Dona Ana

---

[4] *See* https://www3.epa.gov/airquality/greenbook/jncty.html.

County, New Mexico, are now violating the standard.[5] And actual ozone measurements in many places are significantly higher than EPA's optimistic projections. 88 FR at 9,342, 9,352, tbl.III.B.3. For example, EPA projects 2023 average design values of 68-75 ppb for monitors in the Houston area and 70 in the Dallas area.[6] However, the most recent official data shows the 2022 ozone design value was 78 ppb for the Houston area and 77 ppb for the Dallas area, which for both areas represents a 1 ppb increase over 2021.[7] Pollution in both areas continues to worsen: Texas's own, thus far unofficial data, shows the Houston and Dallas areas' preliminary 2023 design values are both 79 ppb.[8]

---

[5] *See* EPA, 2022 Ozone Design Values tbl.2, https://www.epa.gov/system/files/documents/2023-05/O3_DesignValues_2020_2022_FINAL_05_22_23.xlsx.

[6] EPA-HQ-OAR-2021-0663-0070.

[7] EPA, 2022 Ozone Design Values tbl.1a, https://www.epa.gov/system/files/documents/2023-05/O3_DesignValues_2020_2022_FINAL_05_22_23.xlsx. *See id.* tbl.3a. EPA gives this official data in parts per million. Multiplication by 1,000 converts it to parts per billion.

[8] TCEQ, Compliance with Eight-Hour Ozone Standard, https://www.tceq.texas.gov/cgi-bin/compliance/monops/8hr_attainment.pl (last updated Aug. 16, 2023).

Pollution from upwind states like Texas, Louisiana, and Mississippi represents a "substantial" fraction of the ozone problem in downwind areas,[9] where Amici's members live, work, and recreate. Between fifteen and eighteen percent of the ozone problem in Dallas and Houston comes from upwind states, including Louisiana and Mississippi.[10] The out-of-state fraction is even higher, ranging from twenty-five to fifty-seven percent, in many places that receive pollution from Texas, including Illinois, Indiana, New Mexico, and Michigan.[11]

Yet Texas, Louisiana, and Mississippi's plan submissions failed to adopt any pollution controls. In fact, <u>none</u> of the states that submitted a Good Neighbor plan "concluded that any emissions reductions beyond existing controls were necessary to satisfy" the statutory mandate. RTC 436. On this record, EPA correctly disapproved the state plans submitted by Texas, Mississippi, Louisiana, and eighteen other states.

---

[9] EPA, Response to Comments ("RTC") 304, EPA-HQ-OAR-2021-0663-0083.

[10] EPA, Technical Support Document ("TSD") at C-2 to 8, EPA-HQ-OAR-2021-0663-0017; *accord* RTC 319.

[11] TSD at C-2 to 8; EPA-HQ-OAR-2021-0663-0070; 88 FR at 9,352, tbl.III.B.3 (identifying violating monitors); *accord* RTC 319.

Their submissions did not "contain adequate provisions … prohibiting" emissions that "contribute significantly to nonattainment in, or interfere with maintenance by, any other State." 42 U.S.C. § 7410(a)(2)(D)(i)(I).

Because EPA correctly disapproved the do-nothing submissions, the Clean Air Act required EPA to do what the states refused to do by promulgating an implementation plan itself. *Id.* § 7410(c)(1). EPA accordingly developed and issued the Good Neighbor Rule to address the unmet obligations of 23 states throughout the contiguous United States, 88 FR 36,654 (June 5, 2023). That separate rule, not at issue in this case, promises major health benefits for people throughout the country. EPA projects that, if implemented,  the Good Neighbor Rule will save 1,300 lives, prevent millions of asthma attacks, and keep hundreds of thousands of adults and children from missing work or school because of breathing problems, in 2026 alone.[12] Amici's members, who endure breathing problems that send them to the hospital, and

---

[12] EPA, EPA's "Good Neighbor" Plan Cuts Ozone Pollution – Overview Fact Sheet 4, https://www.epa.gov/system/files/documents/2023-03/Final%20Good%20Neighbor%20Rule%20Fact%20Sheet_0.pdf.

must avoid outdoor activities when air pollution levels are elevated, will
be among the beneficiaries. *See* Declarations.

Though the Good Neighbor Rule is not at issue here, the
Disapproval Rule is a legal predicate for important parts of it. *See* 42
U.S.C. § 7410(c)(1); 88 FR at 36,656. Thus, this case—along with the
dozens of other challenges to the Disapproval Rule that have been filed
in multiple regional circuits and the D.C. Circuit, Resp. 50-51 n.27—
will determine whether millions of people throughout our nation will
finally have the healthful air the Clean Air Act promises us.

## II.    Venue does not lie in this Court.

In the Disapproval Rule, EPA took a coherent, single action that
has direct legal effect in states throughout the contiguous United
States—a collection that forms no mere local or regional area—and
based that action on several determinations of nationwide scope or
effect—including, for example, a consistent, nationwide approach to
determining what constitutes interference with maintenance under the
statute. As EPA and Judge Douglas explain, venue is not proper in this
Circuit under 42 U.S.C. § 7607(b)(1)'s controlling test because the
Disapproval Rule is "nationally applicable" on its face; even if it weren't,

the Disapproval Rule is "based on a determination of nationwide scope or effect," and EPA so found and published. Resp. 58-76; Order 25-29, Doc. 269 ("*May Order*") (Douglas, J., dissenting); 42 U.S.C. § 7607(b)(1).

Contrary to Petitioners' suggestion, Miss. Pet'rs' 3, Doc. 335, La. Pet'rs' 4, Doc. 332, this Court has not finally resolved where venue lies. The *May Order* expressly "do[es] not bind the merits panel," but simply resolved the then-pending motions. *May Order* 25. Amici here add important support for why this case must be transferred to the D.C. Circuit or dismissed.

## A.   The action at issue is nationally applicable.

The Act expressly directs that challenges to "any" nationally applicable final action "may be filed only" in the D.C. Circuit. 42 U.S.C. § 7607(b)(1). As this Court has repeatedly explained, section 7607(b)(1) divides challenges into three categories: (1) petitions for review of nationally applicable action (proper only in the D.C. Circuit); (2) petitions for review of locally or regionally applicable action (generally proper only the appropriate regional circuit courts of appeal); and (3) petitions for review of locally or regionally applicable action based on a determination that has nationwide scope or effect, where EPA so finds

12

and publishes (proper only in the D.C. Circuit). *Texas v. EPA*, <u>829 F.3d 405, 418</u> (5th Cir. 2016) ("*Texas 2016*"); *see also Texas v. EPA*, <u>983 F.3d 826, 833</u> (5th Cir. 2020) ("*Texas 2020*"); *Texas v. EPA*, No. 10-60961, <u>2011 WL 710598</u>, at *3 (5th Cir. Feb. 24, 2011) ("*Texas 2011*"). Moreover, this Court has correctly recognized that state implementation plan ("SIP") actions can be "nationally applicable," when, as here, they do <u>not</u> "run only to one air quality control region." *Texas 2011*, <u>2011 WL 710598</u>, at *3-4 (SIP call requiring 13 widely dispersed states to submit new SIPs is nationally applicable) (emphasis removed) (cited for this point in *Texas 2016*, <u>829 F.3d at 419</u>). And it is well-established in this Circuit and others that applicability depends solely on the face of the action at issue, with the petitioner's challenge playing no role.[13]

EPA correctly explains the Disapproval Rule is nationally applicable. Resp. 59-66; *see also May Order* 25-28 (Douglas, J., dissenting). At base, the Disapproval Rule addresses a single issue—

---

[13] *E.g.*, *RMS of Ga. v. EPA*, <u>64 F.4th 1368, 1372-73</u> (11th Cir. 2023); *Sierra Club v. EPA*, <u>926 F.3d 844, 849</u> (D.C. Cir. 2019); *S. Ill. Power Coop. v. EPA*, <u>863 F.3d 666, 671</u> (7th Cir. 2017); *Texas 2016*, <u>829 F.3d at 419</u>; *ATK Launch Sys. v. EPA*, <u>651 F.3d 1194, 1199</u> (10th Cir. 2011).

state compliance with the Good Neighbor Provision—and has direct legal effect on states throughout the country, from California to New Jersey, and Texas to Minnesota. 88 FR at 9,336. Applying on its face to a "far-flung collection of states [that] comprises no 'region' of which we are aware," the Disapproval Rule cannot be locally or regionally applicable; thus, it is nationally applicable. *Texas 2011*, 2011 WL 710598, at *3, 5 (an "EPA rule need not span from 'sea to shining sea' to be nationally applicable." (cleaned up)).

The arguments against national applicability miss the mark. First, the Act provides no basis for splitting the Disapproval Rule into separate decisions on individual submissions, each subject to challenge in different venues, *see May Order* 7-9; *see also* Tex. Ind. Pet'rs' 1, Doc. 329 (relying exclusively on *May Order* to argue venue lies here); La. Ind. Pet'rs' 1, Doc. 333 (same). The *May Order* majority concluded that because section 7410(k)(1)-(3) speaks of EPA action on a submission from "'the State,' singular," "the relevant 'action'" for venue purposes must, categorically, be "EPA's individual SIP denials." *May Order* 8-9. But this conclusion overlooks the Dictionary Act, which expressly provides that "[i]n determining the meaning of any Act of Congress,

unless the context indicates otherwise…words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1; *see Seth B. ex rel. Donald B. v. Orleans Parish School Bd.*, 810 F.3d 961, 975 n.52 (5th Cir. 2016) ("It is a basic rule of statutory construction that the singular includes the plural.").

Nothing about section 7410(k)(1)-(3)'s context suggests that the singular "State" should be read to exclude the plural "States" when EPA acts on submitted plans. Indeed, Congress put EPA on tight timeframes for approving or disapproving SIP submissions, 42 U.S.C. § 7410(k)(1)-(2), and EPA must act on submissions in a rational, consistent way. It would disserve the Act to limit EPA's ability to achieve both speed and consistency by taking a single, unified action addressing many states' submissions. *See also* Resp. 63-65. To be sure, "'each State'" must submit its own plan to implement a standard, *May Order* 8 (quoting 42 U.S.C. § 7410(a)), but that says nothing about whether EPA must, may, or may not act on multiple submitted plans together—and it is only EPA's ultimate action that determines venue.

Further, the *May Order* majority's textual approach could lead to conflicts with this Court's decisions regarding venue for review of SIP

calls. In that context, analogous to the SIP disapproval context, "each State" has submitted a SIP that EPA has approved, and EPA has then required "the State to revise the plan." 42 U.S.C. § 7410(a), (k)(5). Under this Court's decisions, such a SIP call can be a nationally applicable action. *Texas 2011*, 2011 WL 710598, at \*3-4; *see also May Order* 9-10 (accepting *Texas 2011*'s outcome). But the *May Order* majority's textual analysis would seem to apply equally to SIP calls, indicating that the relevant EPA action for venue purposes in the context of a SIP call would be the SIP call to each individual state. As this Court has already correctly recognized, that result cannot be right, and the *May Order* must thus be wrong.

Second, the Disapproval Rule is not merely an artificial collection of separate locally or regionally applicable actions, *see, e.g.*, Tex. Pet'rs' Joint Response to Resps.' Mot. to Transfer or Dismiss 9-10, Doc. 102; *see also May Order* 9 (describing EPA as having merely "packaged" many disapprovals together). To the contrary, on its face, the Disapproval Rule is a unified action that addresses a single topic (state compliance with the Good Neighbor Provision) and resolves specific questions of compliance with often cross-cutting analysis. For example, EPA defined

16

a consistent approach to identifying areas that will not attain or will struggle to maintain the standard, adopted 0.70 ppb as a threshold below which state contributions are not significant, and made nationwide photochemical grid modeling the "primary basis" for EPA's assessment of air quality. 88 FR at 9,341-42, 9,380. Thus, the Disapproval Rule is a single, coherent action.[14]

The Disapproval Rule is functionally indistinguishable from the types of actions other circuits have found nationally applicable, like initial air quality designations, where courts rejected petitioners' attempts to carve out pieces of a unified, nationally applicable action and call the pieces locally or regionally applicable. *S. Ill. Power*, 863 F.3d at 671-74; *ATK Launch*, 651 F.3d at 1197-1200. EPA, by contrast, can and does determine venue by the scope of the final action it takes. This Court has twice held that EPA's decision to act separately on initial air quality designations for a subset of areas makes the action locally or regionally applicable—and did not suggest EPA's action was improper. *Texas 2020*, 983 F.3d at 833; *Texas v. EPA*, 706 F. App'x 159,

---

[14] Accordingly, the proper venue for challenges to wholly separate actions that EPA publishes in one notice is not at issue here.

163-64 (5th Cir. 2017) ("*Texas 2017*") ("EPA made the unusual choice to publish four Texas designations in a separate final rule, and that rule is the only one Petitioners challenge").

Finally, despite the overwhelming consensus in this Circuit and others that applicability turns on the face of the rule "as a whole," not the petitioner's challenge, *see supra* 14 n.13 (citing cases), arguments against venue lying in the D.C. Circuit depend on Petitioners' limiting their challenges just to EPA's disapproval of specific states' submissions. Such an argument flies in the face of all governing, published precedent.[15] Simply examining the face of the rule serves judicial efficiency, and eases matters for litigants, who know where to go to timely protect their rights.

## B. EPA lawfully and rationally found and published that its action is based on a determination of nationwide scope or effect.

Even if EPA's disapproval of Texas's, Louisiana's, and Mississippi's submissions alone were the relevant EPA actions for venue purposes, venue would still lie in the D.C. Circuit because those

---

[15] The Seventh Circuit overruled the sole exception *sua sponte. S. Ill. Power*, 863 F.3d 666 (overruling *Madison Gas v. EPA*, 4 F.3d 529 (7th Cir. 1993)).

actions are based on a determination of nationwide scope or effect, and EPA so found and published. 88 FR at 9,380; 42 U.S.C. § 7607(b)(1). In its brief, EPA identifies numerous such determinations that are core to the Disapproval Rule generally and to the disapproval of the Texas, Louisiana, and Mississippi submissions. Resp. 68-70. Other such determinations include that nationwide photochemical grid modeling should be the primary basis for assessing future air quality and that maximum design values above the standard indicate maintenance problems. 88 FR at 9,341-43, 9,380-81; RTC 392. It is undisputable that EPA found and published in the Disapproval Rule that its final action was based on such determinations. 88 FR at 9,380-81.

The Act authorizes EPA to direct review of a locally or regionally applicable action to the D.C. Circuit if even just one determination upon which the final action is based is of nationwide scope or effect. 42 U.S.C. § 7607(b)(1) (so authorizing EPA "if such action is based on a determination of nationwide scope or effect") (emphasis added); *see also Texas 2016*, 829 F.3d at 421 (rule under review was "not based on any determinations that have nationwide scope or effect" (emphasis added)). "When used as an indefinite article, 'a' means 'some undetermined or

unspecified particular.'" *McFadden v. United States*, <u>576 U.S. 186, 191</u> (2015). Section 7607(b)(1)'s text thus does not require that whatever determination is of nationwide scope or effect be the only determination in the action, so long as it is "a determination" the action "is based on." *See Texas 2016*, <u>829 F.3d at 419</u> (determinations an action is based on may not be "peripheral or extraneous" to it). Nor does the text require that the action be based solely on determinations of nationwide scope or effect. To the contrary, when Congress in section 7607 wanted to hone in on a single basis, or all the main bases, it did so expressly. Congress required EPA to summarize "<u>the major</u> legal interpretations and policy considerations underlying the proposed rule" when it issues certain proposed rules under the Act. <u>42 U.S.C. § 7607(d)(3)</u> (emphasis added); *see also* Resp. 74-75 (explaining Congress required in § 7607(b)(1) that certain petitions be "'based <u>solely</u> on'" certain grounds (emphasis in EPA's brief)). Congress's choice not to include such language in the nationwide scope or effect exception must be given effect. *E.g.*, *Polselli v. IRS*, <u>143 S. Ct. 1231, 1237</u> (2023).

Thus, that EPA based the Disapproval Rule—even if taken state by state—on just one determination of nationwide scope or effect

authorizes EPA to direct review to the D.C. Circuit. This Court acknowledged as much in *Texas 2017*, where it found that EPA's nonattainment designations could be based on at least one nationwide determination, even though EPA's designations must also rely on highly local determinations, like air quality at a specific location. 706 F. App'x at 165; *S. Ill. Power*, 863 F.3d at 669 (describing factual determinations underlying designations under same standard); *ATK Launch*, 651 F.3d at 1196 (similar). Indeed, conditioning review in the D.C. Circuit of a locally or regionally applicable action on the action's not being based on any determinations of local or regional scope or effect would virtually if not entirely read the nationwide scope or effect exception out of the Act. *See* Resp. 75-76. Congress carefully crafted the exception, and it would be improper to effectively erase it from the Act. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (cleaned up)).

Though section 7607(b)(1)'s text alone suffices, the legislative history further confirms that EPA lawfully and rationally invoked the

exception here. EPA explains how the legislative history expressly

agreed with calls for "centraliz[ing] review of 'national' SIP issues in the

D.C. Circuit, … facilitating an orderly development of the basic law

under the Act." 41 FR 56,767, 56,769 (Dec. 30, 1976); *see* Resp. 70-71

(discussing this legislative history); H.R. Rep. No. 95-294, at 324 (1977)

(citing 41 FR at 56,768-69). This Court has endorsed and relied on this

legislative history. *Texas 2011*, 2011 WL 710598, at *4. As explained

above, the Disapproval Rule is replete with national SIP issues,

rendering D.C. Circuit review entirely consistent with congressional

intent.

The overlapping, multi-circuit review of the Disapproval Rule

exemplifies why Congress authorized EPA to centralize judicial review

of such rules. The very same determinations of nationwide scope and

effect are pending before multiple circuits. *See* Resp. 72-73. To give just

one example of several, the one percent contribution threshold—which

Alabama, Arkansas, Kentucky, Louisiana, Mississippi, Missouri,

Oklahoma, and Utah argued against—is now at play in the Fifth, Sixth,

Eighth, Tenth, and Eleventh Circuits. 88 FR at 9,373; RTC 295-300.

The inconsistent resolution of these determinations would deprive

people in one judicial circuit of protections they would receive if they lived within another circuit, "utterly defeating" the Act's obvious goal of ensuring centralized, consistent review of national issues and harming people's health, including Amici's members. *S. Ill. Power*, 863 F.3d at 673.

## III.  The Disapproval Rule is a proper exercise of EPA's statutory authority.

Despite abundant record evidence that Texas, Louisiana, and Mississippi contribute large quantities of pollution to downwind areas that do not attain, or struggle to maintain, the ozone standard, their state plan submissions, like all the submissions EPA disapproved, failed to require any emissions reductions. *Supra* 3-4, 9-10. These do-nothing plans did not satisfy State Petitioners' obligations under the Good Neighbor Provision, and EPA acted well within its statutory authority in disapproving them.

### A.  The Act authorizes and requires EPA to disapprove plan submissions that fail to satisfy the Good Neighbor Provision.

The Act charges EPA with reviewing state plan submissions and provides that EPA shall approve a plan only if it "meets all of the applicable requirements of" the Act, including the Good Neighbor

Provision. *42 U.S.C. § 7410(k)(2)-(3)*. *See Fla. Power & Light v. Costle*, 650 F.2d 579, 581 (5th Cir. 1981) ("EPA is required to review each SIP to determine whether it meets the criteria for achievement and maintenance … of national air quality standards.") (citing 42 U.S.C. § 7410(a)(2)). Thus it is proper for EPA to evaluate whether submitted state plans satisfy the Good Neighbor Provision and disapprove those that do not, as EPA did here.

Petitioners' argument that EPA was obligated to defer to states' claims that they satisfied the Good Neighbor Provision, when the record before EPA showed the opposite, lacks any support in the Act or the cases on which Petitioners rely. While the Act gives states discretion in formulating plans, it also places limits on that discretion. Indeed, the Act "reflect[s] congressional dissatisfaction with the progress of existing air pollution programs and a determination to take a stick to the States." *Union Elec. v. EPA*, 427 U.S. 246, 249 (1976) (cleaned up).

Consistent with that dissatisfaction, after *Union Electric*, Congress amended the Act in 1977 and again in 1990 to increase the Good Neighbor Provision's effectiveness at compelling states to control the pollution they export downwind. *EPA v. EME Homer City*

24

*Generation, L.P.*, 572 U.S. 489, 498-99 (2014). Accordingly, the Act provides explicitly that state plans purporting to implement the Good Neighbor Provision must "contain adequate provisions … prohibiting" emissions that will "contribute significantly to nonattainment in, or interfere with maintenance by, any other State." 42 U.S.C. § 7410(a)(2)(D)(i)(I). Thus, when states that contribute significantly to downwind air quality violations submit plans that do nothing to prohibit that pollution, EPA can—and must—disapprove the submissions. *Id.* § 7410(k)(2)-(3).

If EPA were required to defer to each state that claims it has no Good Neighbor obligations—which is all of them, *supra* 9—the Good Neighbor Provision would be "rendered ineffective." 88 FR at 9,375. That would negate Congressional intent and allow polluting states to "reap[] the benefits of the economic activity causing the pollution without bearing all the costs." *Homer City*, 572 U.S. at 496. Rather than "conclude that Congress enacted a self-defeating statute," *Pugin v. Garland*, 143 S. Ct. 1833, 1841 (2023), the court should reject Petitioners' argument.

The cases on which Petitioners rely confirm that the discretion the Act affords to states does not extend to adopting plans inconsistent with the Good Neighbor Provision. *Train* held EPA has a secondary role as to "specific, source-by-source emission limitations" under certain provisions of the Act,[16] but also that state plans must meet the Act's requirements and "provide[] for the timely attainment and subsequent maintenance of the standards." 421 U.S. at 79. *Union Electric* held the Act "place[s] the primary responsibility for formulating pollution control strategies on the States, but nonetheless subject[s] the States to strict minimum compliance requirements," including a requirement to "provide for the attainment of the NAAQS." 427 U.S. at 249, 256-57. This Court's decisions confirm these limits on state discretion. *Texas 2016*, 829 F.3d at 411 (quoting *Train*); *Luminant Generation v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (same); *Fla. Power*, 650 F.2d at 586 (EPA may not reject "state-selected emissions limitations" "if they are part of a plan which satisfies the standards of § [74]10(a)(2)") (emphasis added)). And here, because the submissions at issue purport to

---

[16] The Court identified several provisions of the Act that afford EPA a primary role even in setting source-specific emissions limitations. *Train*, 421 U.S. at 79 n.16.

implement the Good Neighbor Provision, the major limit on state

discretion—equivalent to the requirement to "provide[] for the timely

attainment and subsequent maintenance of [the NAAQS]" in-state,

*Train*, 421 U.S. at 79—is the requirement for states to prohibit

significant contributions to nonattainment and interference with

maintenance downwind. 42 U.S.C. § 7410(a)(2)(D)(i)(I).

Thus, this Court should follow the D.C. Circuit in rejecting the

argument that EPA lacks authority to determine whether states satisfy

the Good Neighbor Provision. *Michigan v. EPA* considered claims that

an EPA SIP call "impermissibly intruded on the statutory rights of

states to fashion their [plans]" by determining the amount of pollution

each state could emit in compliance with the Good Neighbor Provision,

while allowing states to develop the emission reduction measures. 213

F.3d 663, 670, 687 (D.C. Cir. 2000). Applying *Train*, the D.C. Circuit

held the Act grants EPA authority to determine "whether states have

reduced emissions sufficiently" to satisfy the Good Neighbor Provision,

and only bars EPA from mandating a control scheme. *Michigan*, 213

F.3d at 687. EPA's authority when reviewing a SIP submission must be

at least as great as its authority when issuing a SIP call under section

7410(k)(5): for Congress to authorize EPA to demand states revise their SIPs on a given basis, but bar them from disapproving submissions on that same basis, would render the Clean Air Act incoherent and self-defeating. *See* Resp. 82.

Petitioners' baseless suggestion (Tex. Pet'rs' 24, Doc. 328) that EPA must enforce the Good Neighbor Provision via SIP calls fails for the same reason. The SIP call process applies only to the "applicable implementation plan," defined as an EPA-approved plan, not one whose approval (or disapproval) may be pending. 42 U.S.C. §§ 7410(k)(5), 7602(q). Accordingly, for Petitioners' preferred approach to function, EPA would have to approve SIP submissions that EPA knows fail to satisfy statutory requirements, only to then turn around and call for revisions. If the next submissions gave novel justifications for refusing to reduce pollution, EPA would have to approve them also, then issue yet another call for revised submissions. Because EPA's authority and obligation to issue a federal plan is triggered only by non-submittal, incompleteness, or disapproval, not by a SIP call, *id.* § 7410(c)(1), the Act's FIP provision would be vitiated, and this futile process could continue indefinitely, with the public exposed to unlawfully and

dangerously elevated pollution all the while. Nothing in the Act requires or even permits such a senseless approach.

Nor was EPA required to promulgate a separate regulation before disapproving the submitted plans, *see* La. Pet'rs' 29-30, 44; Texas Ind. Pet'rs' 37; Miss. Pet'rs' 31; *see also* La. Ind. Pet'rs' 24 (similar argument regarding deference). It is black letter administrative law that an agency has broad flexibility to proceed by general regulation or case-by-case: "the choice … lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery*, 332 U.S. 194, 201-03 (1947). EPA's authority and responsibility to implement the statute remains fully intact regardless. *Id.* at 201-02 (rejecting notion that agency's "failure … to promulgate a general rule withdrew all power from that agency to perform its statutory duty"); *cf. Homer City*, 572 U.S. at 510 ("nothing in the statute places EPA under an obligation to provide specific metrics to States before they undertake to fulfill their good neighbor obligations"). And, of course, here EPA proceeded via rulemaking anyhow. Resp. 79 n.40.

**B.    EPA acted within its statutory authority in determining that plan submissions by Texas, Louisiana, and Mississippi failed to meet the requirements of the Good Neighbor Provision.**

Unlike in *Luminant*, where EPA's disapproval decision was "[un]tether[ed] to any applicable provision of the [Act]," 675 F.3d at 924, here EPA disapproved the state submissions because they do not satisfy the Good Neighbor Provision. EPA determined compliance in four steps, each of which is rooted in the text of the provision. First, EPA identified locations that will not attain, or will struggle to maintain, the 2015 ozone NAAQS. *See* 88 FR at 9,341-42; 42 U.S.C. § 7410(a)(2)(D)(i)(I) (referring to "nonattainment" and "maintenance" of the NAAQS). Second, EPA identified upwind states that contribute at least one percent of the NAAQS, or 0.70 ppb, to at least one such downwind location. *See* 88 FR at 9,342; 42 U.S.C. § 7410(a)(2)(D)(i)(I) (referring to emissions that significantly "contribute" to nonattainment or "interfere" with maintenance). Third, EPA determined whether the identified contributions are "significant," in part by considering the availability of cost-effective controls that upwind states have not yet implemented. *See* 88 FR at 9,342-43; 42 U.S.C. § 7410(a)(2)(D)(i)(I) (referring to emissions that contribute "significantly"). Fourth, EPA evaluated whether state

submissions prohibit all such significant contributions. *See* 88 FR at 9,343; 42 U.S.C. § 7410(a)(2)(D)(i)(I) (requiring provisions "prohibiting" such emissions). EPA determined that twenty-one states' submissions fail to satisfy the Good Neighbor Provision because the states are linked to downwind attainment problems, yet failed to evaluate or adopt pollution controls. 88 FR at 9,369, 9,375; RTC 435. Petitioners' arguments that EPA's action was based on non-statutory considerations (Tex. Ind. Pet'rs' 28; La. Pet'rs' 34; La. Ind. Pet'rs' 25) are therefore refuted by the record. *See also* RTC 434 ("EPA has consistently analyzed good neighbor SIP submissions for compliance with the statute.").

That EPA gave due consideration to various state attempts to justify these do-nothing submissions does not change the conclusion that EPA's action determines compliance with the Good Neighbor Provision, and thus falls within its statutory authority. Both administrative law principles and cooperative federalism call for EPA to engage with state submissions. Accordingly, EPA allowed states to use alternative approaches, provided that they were legally and technically justified under the Good Neighbor Provision. 88 FR at 9,370. EPA

"evaluated the merits of each state's arguments as to why no additional emissions reduction requirements are needed to satisfy their obligations under [the Good Neighbor Provision]," 88 FR at 9,369, "considering the core statutory objective of ensuring elimination of all significant contribution to nonattainment or interference with maintenance of the NAAQS in other states." *Id.* at 9,374. Doing so required EPA to evaluate state arguments about maintenance monitors, back trajectories, wind roses, and more. *See City of Seabrook v. EPA*, 659 F.2d 1349, 1359 (5th Cir. 1981) ("In deciding whether a particular state's plan satisfies the statutory requirements ... the EPA must at many points make factual determinations."). Ultimately, however, EPA found that "[t]he contributions from no state covered by this action ... are so small that the states have proven they do not significantly contribute to nonattainment or interfere with maintenance." RTC 319. Therefore, EPA determined "in each case that what these states submitted was not approvable." 88 FR at 9,375. This review of state submissions for consistency with the Good Neighbor Provision was a proper exercise of EPA's statutory authority.

32

**IV.   If the Court finds fault with EPA's disapproval, it should remand without vacatur.**

Even if the Court finds some error in EPA's Disapproval Rule, vacatur is unwarranted because (1) there is "a serious possibility that the [agency] will be able to substantiate" the Disapproval Rule if given an opportunity to do so; and (2) vacating would be "disruptive" and would thwart Congress's objectives in protecting public health and the environment. *Cent. & S.W. Servs. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000) (cleaned up); *see also O'Reilly v. U.S. Army Corps of Engineers*, 477 F.3d 225, 239 (5th Cir. 2007) (quoting *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[o]nly in 'rare circumstances' is remand for agency reconsideration not the appropriate solution.").

As EPA explains (Resp. 211-15), the agency can correct each procedural and factual error Petitioners allege, if the Court finds fault with the Disapproval Rule. More fundamentally, vacatur is inappropriate because it would seriously disrupt implementation of the Good Neighbor Provision, causing serious, irreparable health harms. EPA estimates that starting in 2026, the Good Neighbor Plan will "prevent approximately 1,000 premature deaths, 2,400 hospital and emergency room visits, 1.3 million cases of asthma symptoms, and

470,000 school absence days," *every year*.[17] But vacatur here would prevent EPA from implementing the Good Neighbor Plan in Texas, Louisiana, and Mississippi, allowing health harms to persist.

These serious adverse health effects are irreparable: a person who is killed or sickened by air pollution is not compensated by the fact that the air is cleaned up later. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable."); *see also North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (remanding EPA's 2005 good neighbor regulation because vacatur "would at least temporarily defeat ... the enhanced protection of the environmental values covered by [the rule]."). Because it would mean irreparable losses to public health, vacatur is unwarranted, even if the Disapproval Rule were flawed.

Vacatur would also disrupt achievement of the Act's attainment deadlines and impede its core purpose to ensure expeditious attainment

---

[17] EPA, EPA's "Good Neighbor" Plan Cuts Ozone Pollution – Overview Fact Sheet 4, https://www.epa.gov/system/files/documents/2023-03/Final%20Good%20Neighbor%20Rule%20Fact%20Sheet_0.pdf.

of the NAAQS. As discussed, *supra* 6, an area designated nonattainment for ozone must attain standards as expeditiously as practicable and no later than fixed deadlines, and the next relevant deadline is in 2024. Attainment of clean air by these Congressionally imposed deadlines is "the heart of the [Act]." *Train*, 421 U.S. at 66; *see also Sierra Club v. EPA*, 294 F.3d 155, 161-62 (D.C. Cir. 2002) (refusing to extend statutory ozone attainment deadlines because doing so would "subvert the purposes of the Act").

Despite Amici's legal efforts, there have already been extreme—and unlawful—delays in implementing basic statutory requirements. EPA issued the health-based ozone standard at issue here eight years ago, yet over 100 million people across the country live in communities that have yet to attain the standard, due in part to pollution from beyond their borders. EPA's Good Neighbor Rule establishes the emissions reductions EPA has determined are required to enable downwind states to attain and maintain the standard as expeditiously as practicable. Any order vacating the Disapproval Rule would further delay those necessary reductions, contrary to the Act's text and purpose.

## Conclusion

The stay should be lifted and this Court should transfer or dismiss the petitions. If the Court reaches the merits, it should deny the petitions. If the Court finds the Rule unlawful or arbitrary, it should remand without vacatur.

Respectfully submitted,

/s/ Joshua D. Smith
Joshua D. Smith
Sierra Club
2101 Webster St., Ste. 1300
Oakland, California 94612
415-977-5560
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

/s/ Neil Gormley
Neil Gormley
Seth L. Johnson
Kathleen Riley
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-797-5239
ngormley@earthjustice.org
sjohnson@earthjustice.org
kriley@earthjustice.org

*Counsel for Sierra Club,
Downwinders at Risk, and Air
Alliance Houston*

/s/ Hayden Hashimoto
Hayden Hashimoto
Shaun Goho
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
617-624-0204
hhashimoto@catf.us
sgoho@catf.us

*Counsel for Clean Wisconsin*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Fed. R. App. P. 29(a)(5) because it contains 6,422 words, excluding the caption, signature block, and required certifications, as counted by a word processing system and, therefore, is within the word limit. The motion also complies with typeface requirements of Fed. R. App. 32(a)(5) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated August 22, 2023                    */s/ Neil Gormley*
                                         Neil Gormley