No. 23-60069

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; ENTERGY LOUISIANA, L.L.C.; LOUISIANA CHEMICAL ASSOCIATION; MID-CONTINENT OIL AND GAS ASSOCIATION; LOUISIANA ELECTRIC UTILITY ENVIRONMENTAL GROUP, L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP,

*Petitioners*,

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

On Petitions for Review of a Final Action
of the United States Environmental Protection Agency

## REPLY BRIEF FOR TEXAS STATE PETITIONERS

(*Counsel Listed on Inside Cover*)

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LANORA C. PETTIT
Principal Deputy Solicitor General

BILL DAVIS
Deputy Solicitor General
Bill.Davis@oag.texas.gov

MICHAEL R. ABRAMS
WILLIAM F. COLE
Assistant Solicitors General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for the State of Texas, Texas
Commission on Environmental
Quality, Public Utility Commission of
Texas, and Railroad Commission of
Texas

# Table of Contents

Page(s)

Table of Authorities ..................................................................................ii

Glossary ......................................................................................................vi

Introduction ...............................................................................................1

Argument .....................................................................................................2

    I.    EPA's Attempt to Relitigate Venue Is Untimely ......................................2

    II.   EPA's SIP Disapproval Violates Core Administrative-Law Precepts .........4

        A.   EPA failed to account for relevant factors and imposed non-statutory requirements. .........................................................................4

            1.   EPA disregarded the Act's cooperative federalism. ......................5

            2.   EPA imposed a non-statutory one-percent contribution threshold as a proxy for "significant[] contribution." ................ 11

        B.   EPA deprived Texas of fair notice of the standards by which its SIP would be judged. ......................................................................... 15

            1.   EPA failed to explain its policy reversal regarding identification of maintenance receptors. ..................................... 15

            2.   EPA utilized new modeling platforms that were unavailable to Texas as a basis for disapproving Texas's SIP. ....................... 18

    III.  Remand Without Vacatur Is Not the Appropriate Disposition ................. 21

Conclusion ................................................................................................24

Certificate of Service ...............................................................................25

Certificate of Compliance .......................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Alaska Dep't of Env't Conservation v. EPA,*
540 U.S. 461 (2004) ..................................................... 14, 15

*Ali v. Barr,*
951 F.3d 275 (5th Cir. 2020) ........................................... 13

*Am. Great Lakes Ports Ass'n v. Schultz,*
962 F.3d 510 (D.C. Cir. 2020) .......................................... 21

*Arizona ex rel. Darwin v. EPA,*
815 F.3d 519 (9th Cir. 2016) ........................................... 14

*Ass'n of Battery Recyclers, Inc. v. EPA,*
208 F.3d 1047 (D.C. Cir. 2000) ......................................... 9

*BCCA Appeal Grp. v. EPA,*
355 F.3d 817 (5th Cir. 2003) ........................................... 5

*Chevron v. Nat. Res. Def. Council, Inc.,*
467 U.S. 837 (1984) ........................................ 12, 13, 14, 15

*City of Arlington v. FCC,*
569 U.S. 290 (2013) ................................................... 13

*Data Mktg. P'Ship, LP v. DOL,*
45 F.4th 846 (5th Cir. 2022) ................................. 10, 21, 23

*DHS v. Regents of the Univ. of Cal.,*
140 S. Ct. 1891 (2020) ............................................ 10, 15

*Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.,*
73 F.4th 322 (5th Cir. 2023) ........................................... 8

*E. Bay Sanctuary Covenant v. Biden,*
993 F.3d 640 (9th Cir. 2021) ........................................... 3

*EME Homer City Generation, L.P. v. EPA,*
795 F.3d 118 (D.C. Cir. 2015) ...................................... 21-22

*Env't Integrity Project v. EPA,*
425 F.3d 992 (D.C. Cir. 2005) ......................................... 16

*EPA v. EME Homer City Generation LP,*
572 U.S. 489 (2014) ..................................... 5, 7, 8, 13, 14

*FCC v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009) ................................................... 15

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ........................................................................ 6

*Fla. Power & Light Co. v. Costle*,
  650 F.2d 579 (5th Cir. Unit B June 1981) ................................... 5

*Gen. Elec. Co. v. EPA*,
  290 F.3d 377 (D.C. Cir. 2002) ..................................................... 17

*Huawei Techs. USA, Inc. v. FCC*,
  2 F.4th 421 (5th Cir. 2021) ........................................................... 19

*Loper Bright Enters. v. Raimondo*,
  143 S. Ct. 2429 (2023) ................................................................... 12

*Luminant Generation Co. v. EPA*,
  714 F.3d 841 (5th Cir. 2013) ........................................................ 14

*Luminant Generation Co. v. EPA*,
  675 F.3d 917 (5th Cir. 2012) ........................................ 4, 5, 10, 11, 17, 20

*Mex. Gulf Fishing Co. v. U.S. Dep't of Com.*,
  60 F.4th 956 (5th Cir. 2023) ........................................................ 18

*Michigan v. EPA*,
  576 U.S. 743 (2015) .......................................................................... 4

*Midship Pipeline Co. v. FERC*,
  45 F.4th 867 (5th Cir. 2022) ........................................................ 13

*Nat'l Lifeline Ass'n v. FCC*,
  921 F.3d 1102 (D.C. Cir. 2019) ................................................... 19

*Nat'l Parks Conservation Ass'n v. EPA*,
  991 F.3d 681 (5th Cir. 2021) .......................................................... 2

*Nken v. Holder*,
  556 U.S. 418 (2009) .......................................................................... 3

*North Dakota v. EPA*,
  730 F.3d 750 (8th Cir. 2013) ........................................................ 14

*R.J. Reynolds Vapor Co. v. FDA*,
  65 F.4th 182 (5th Cir. 2023) .............................................. 6, 15, 18

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
  989 F.3d 368 (5th Cir. 2021) ........................................................ 22

*Texas v. EPA*,
  No. 23-60069 (5th Cir. May 1, 2023) (order) ...................... 2, 4, 16

*Texas v. EPA*,
  983 F.3d 826 (5th Cir. 2020) ........................................................ 11

iii

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) .............................................. 3, 5, 14, 15
*Texas v. EPA,*
    690 F.3d 670 (5th Cir. 2012) ...................................................5
*United States v. Mead Corp.,*
    533 U.S. 218 (2001).............................................................. 13
*United States v. Texas,*
    50 F.4th 498 (5th Cir. 2022) ..................................................22
*United Steel v. Mine Safety & Health Admin.,*
    925 F.3d 1279 (D.C. Cir. 2019) .......................................... 21
*Veasey v. Abbott,*
    870 F.3d 387 (5th Cir. 2017).................................................2
*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 519 (1978) .........................................................7, 8
*Wisconsin v. EPA,*
    938 F.3d 303 (D.C. Cir. 2019) ......................................... 6, 7, 8

**Statutes and Rules:**
5 U.S.C.:
    § 706....................................................................................22
    § 706(2) ............................................................................ 21
42 U.S.C.:
    § 7410(a)(1) ..........................................................................5
    § 7410(a)(2) ....................................................................... 14
    § 7410(a)(2)(D)(i)(I)..............................................................5
    § 7410(k)(2) ....................................................................... 14
    § 7410(k)(3) ....................................................................... 14
    § 7410(k)(5) .......................................................................7, 8
    § 7410(*l*) ...............................................................................5
    § 7509a ...............................................................................20
    § 7607(b)(1) ..........................................................................3
5th Cir. R.:
    27.1 ........................................................................................2
    27.1.1....................................................................................2
Fed. R. App. P.:
    35 ..........................................................................................2
    40..........................................................................................2

**Federal Register Material:**

Air Plan Disapproval; Arkansas, Louisiana, Oklahoma and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022) ............................................................... vi, 9, 10, 11, 12

Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ...................................... vi, 9, 10, 11, 12, 16, 17

Determination of Attainment by the Attainment Date but for International Emissions for the 2015 Ozone National Ambient Air Quality Standard; El Paso–Las Cruces, Texas–New Mexico, 88 Fed. Reg. 14,095 (Mar. 7, 2023) ........................................................................... 20

**Other Authorities:**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012) ................................................................................... 8

Technical Support Document, EPA Evaluation of the Clean Air Act Section 179B(b) Demonstration for the El Paso-Las Cruces, Texas-New Mexico Marginal Ozone Nonattainment Area (Feb. 2023) ....................... 21

# GLOSSARY

| | |
|---|---|
| Act | Clean Air Act, as codified in 42 U.S.C. ch. 85 |
| APA | Administrative Procedure Act, as codified in 5 U.S.C. pt. I |
| Doc. | CM/ECF document number in this case, No. 23-60069 |
| EPA | U.S. Environmental Protection Agency |
| Final Rule | Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023) (C.I. HQ-20) |
| FIP | Federal Implementation Plan |
| March 2018 Transport Guidance | Memorandum from Peter Tsirigotis, Director, EPA Office of Air Quality Planning and Standards, Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I) (Mar. 27, 2018) (C.I. R7-18) |
| NAAQS | National Ambient Air Quality Standard(s) |
| October 2018 Maintenance Receptor Memo | Memorandum from Peter Tsirigotis, Director, EPA Office of Air Quality Planning and Standards, Considerations for Identifying Maintenance Receptors for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards (Oct. 19, 2018) (C.I. R7-11) |
| Proposed Rule | Air Plan Disapproval; Arkansas, Louisiana, Oklahoma and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022) (C.I. R6-1) |
| SIP | State Implementation Plan |
| TCEQ | Texas Commission on Environmental Quality |
| Texas SIP | Texas Commission on Environmental Quality, Federal Clean Air Act Sections 110(a)(1) and (2) Transport State |

| | |
|---|---|
| | Implementation Plan Revision for the 2015 Ozone National Ambient Air Quality Standards (Aug. 8, 2018) (C.I. R6-6) |
| Texas State Petitioners | The State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas |

# Introduction

EPA does not dispute that its disapproval of Texas's SIP for the 2015 ozone NAAQS was issued more than four years after Texas timely submitted its SIP and more than three years after the Clean Air Act ("the Act") required EPA to act. And EPA acknowledges that it developed, and ultimately relied upon, new data, models, and methodologies that were unavailable to Texas at the time of its statutory SIP-submission deadline.

EPA's disapproval violated the Administrative Procedure Act ("APA") in two ways. It exceeded the bounds of EPA's congressionally delegated authority by inverting the Act's cooperative federalism and requiring Texas to meet non-statutory factors. And it deprived Texas of fair notice of the standards by which its submission would be judged. EPA relied on its "non-binding" policy for identifying maintenance receptors, as well as modeling platforms and data, developed *after* Texas timely submitted its SIP.

EPA defends its actions by alternately attempting to rewrite in its appellate brief the bases for agency action that appear in the Federal Register and by blaming *Texas* for failing to conduct a wholesale revision of its SIP in the one year between issuance of the Proposed Rule and the Final Rule. The former is an improper post-hoc rationalization. The latter misconceives the Act's cooperative federalism and the complex, time-consuming nature of the SIP-revision process. The Court should likewise reject EPA's untimely request to relitigate venue and its last-ditch effort to preserve its SIP disapproval through the exceptional remedy of remand without vacatur.

The motions panel correctly concluded that the challenged part of the Final Rule violated the APA, Doc. 269-1 (Order, *Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023) (per curiam) ("*Texas 2023*")), and EPA's responses fail. The Court should grant Texas's petition for review and set aside the part of the Final Rule disapproving Texas's SIP.

## ARGUMENT

## I. EPA's Attempt to Relitigate Venue Is Untimely.

The Court should reject EPA's request to relitigate venue because its request is untimely. The motions panel expressly "denied" EPA's motion to transfer venue. *Texas 2023* at 24. At that point, EPA's recourse was panel reconsideration or else en banc review. *E.g.*, *Nat'l Parks Conservation Ass'n v. EPA*, 991 F.3d 681, 683 (5th Cir. 2021) (per curiam); Fed. R. App. P. 35, 40; 5th Cir. R. 27.1, 27.1.1. EPA did not pursue either of those options, and it would undermine judicial economy to permit parties to perpetually relitigate venue issues at successive stages of appeal.

In an effort to avoid that conclusion, EPA cites (at 51) the final line of the stay order, which states that the panel's determinations "do not bind the merits panel" and are for the purpose of deciding the motions for transfer, to stay, and to dismiss. *Texas 2023* at 24. But the case cited by the motions panel, *Veasey v. Abbott*, 870 F.3d 387 (5th Cir. 2017) (per curiam), shows why EPA is mistaken.

In *Veasey*, the motions panel stated that it "ha[d] addressed only the issues necessary to rule on the motion to stay pending appeal," explaining that its "determinations are for that purpose and do not bind the merits panel." *Id.* at 392. A motions

panel's order does not bind a merits panel in the context of deciding a motion to stay because a stay is an interim measure flowing from the Court's "inherent" power to "preserv[e] rights during the pendency of an appeal" and "ensur[e] that appellate courts can responsibly fulfill their role in the judicial process." *Nken v. Holder*, 556 U.S. 418, 427 (2009). After all, "[a] reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review." *Id.* That standard presupposes a forthcoming final determination of the merits. "That is, the motions panel is predicting rather than deciding what [the] merits panel will decide." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021).

The same cannot be said of the motions panel's venue decision, which did not involve "a probabilistic and discretionary analysis of the *Nken* factors" but instead "a pure question of law," *id.* at 661 n.3, about whether this Court is the proper forum under 42 U.S.C. § 7607(b)(1). This Court has acknowledged as much in a similar context, explaining that while a determination of "likelihood of success on the merits is for the purposes of the stay only and does not bind the merits panel," the Court's "conclusions regarding jurisdiction and venue in evaluating the motion to dismiss or transfer are not preliminary." *Texas v. EPA*, 829 F.3d 405, 425 n.29 (5th Cir. 2016) ("*Texas 2016*"). Departing from that observation would countenance a substantial waste of judicial and party resources, including nearly 200 pages of merits briefing by EPA's counsel.

This fatal forfeiture notwithstanding, even if the Court were to consider EPA's venue arguments afresh, they fail for the reasons explained elsewhere in this sprawling litigation. *See, e.g.*, Doc. 102; Tex. Indus. Reply Br. 2-7; *see Texas 2023* at 6-13.

## II. EPA's SIP Disapproval Violates Core Administrative-Law Precepts.

EPA's disapproval of Texas's SIP violates two tenets of administrative law. First, it fails to account for relevant factors by contravening the Act's cooperative federalism while simultaneously requiring Texas to meet non-statutory factors, such as a one-percent contribution threshold, to gain approval of a SIP. *See* Tex. State Pet. Br. 21-28. And second, EPA deprived Texas of fair notice of the standards by which its SIP would be judged when it disapproved Texas's method for identifying maintenance receptors and evaluated the SIP based on modeling and data developed long after the statutory SIP-submission deadline. *See id.* at 28-39.

### A. EPA failed to account for relevant factors and imposed non-statutory requirements.

The APA requires federal administrative agencies "to engage in reasoned decisionmaking," *Michigan v. EPA*, 576 U.S. 743, 750 (2015), and reasoned decisionmaking must "rest on a consideration of the relevant factors" that Congress identified. *Id.* By the same token, an agency may not "rel[y] on factors which Congress has not intended it to consider." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 930 (5th Cir. 2012) ("*Luminant 2012*"). EPA's disapproval violates both principles, *see* Tex. State Pet. Br. 21-28, and EPA fails to show otherwise.

### 1. EPA disregarded the Act's cooperative federalism.

As Texas previously explained (at 21-25), EPA's disapproval of its SIP disregarded the Clean Air Act's signature cooperative federalism. The Act prescribes differing roles for the States and EPA at the SIP stage. It assigns the States "primary responsibility for ensuring that the ambient air meets the NAAQS." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 822 (5th Cir. 2003). Consequently, States possess "broad authority to determine the methods and particular control strategies they will use to achieve the statutory requirements," *id.*, and "wide discretion in formulating [SIPs]," *Luminant 2012*, 675 F.3d at 921.

By contrast, EPA's "narrow role" at the SIP stage, *Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 578 (5th Cir. Unit B June 1981), is limited to "reviewing SIPs for consistency with the Act's requirements," *Texas 2016*, 829 F.3d at 411; *see* 42 U.S.C. § 7410(a)(1), (*l*). So, if a SIP meets the statutory requirements, "EPA *must* approve it." *Texas v. EPA*, 690 F.3d 670, 676 (5th Cir. 2012) ("*Texas 2012*") (emphasis added). "[O]nly after a State has failed to propose a SIP adequate for compliance with [42 U.S.C. § 7410(a)(2)(D)(i)(I)] is EPA called upon to act." *EPA v. EME Homer City Generation LP*, 572 U.S. 489, 514 n.15 (2014).

EPA overrode this structure. Instead of honoring Congress's "preference that states, not EPA, drive the regulatory process," *Texas 2016*, 829 F.3d at 411, EPA put itself in the driver's seat by disregarding its statutory deadline for acting on Texas's SIP submission, then using the extra time to develop new modeling platforms and data to second-guess TCEQ's technical analysis. *See* Tex. State Pet. Br. 22-25. To be sure, EPA was not required to ignore updated data and modeling. But if it thought

that new information, which became available only because of the agency's lengthy delay, should be considered, it should have issued a SIP call to permit Texas to account for it in the first instance. *See* Tex. State Pet. Br. 24.

EPA makes three attempts to justify its decision to evade the Act's cooperative federalism. None has merit.

**a.** EPA first argues (at 176, 180) that Texas "place[s] undue weight on the procedural deadlines," which cannot "supersede the substantive requirements of the Act," and that "the mere fact that EPA missed procedural deadlines does not permit this Court to invalidate the Disapproval." Yet it is not the "mere fact" of EPA's disregard of its statutory deadline that renders its action unlawful. The problem is what EPA did with that additional time. The agency developed new models and data by which to judge Texas's SIP submission. It is EPA's subversion of the Act's cooperative federalism, not simply its indifference to the Act's procedural deadlines, that renders its action unlawful. *See R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 194 (5th Cir. 2023) (explaining that an "agency . . . may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law'" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000)).

EPA points (at 176-77) to *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019) (per curiam), as support for its theory that the Act's procedural deadlines are akin to mere suggestions that the agency may ignore when they are inconvenient. But that case does not help it. In *Wisconsin*, the D.C. Circuit rejected Delaware's argument that it should have been designated as a nonattaining State for the ozone NAAQS based on

2011 data, thus triggering good-neighbor obligations for upwind States. *Id.* at 322. The Court concluded that Delaware's argument "lean[ed] too heavily on the SIP submission deadline" and that EPA could rely on updated data from 2017 to make its attainment designation since the good-neighbor provision contains forward-looking language. *Id.*

Unlike Delaware, Texas does not argue that EPA must confine itself to outdated data. It instead points out that, if EPA wants to rely on data and modeling that became available only because EPA missed its statutory deadline by a long shot, it should issue a SIP call to allow States to address that newly available information in the first instance. *See* Tex. State Pet. Br. 24.

**b.** EPA contends (at 178, 181-83) that it was not required to issue a SIP call and that States' only "judicial recourse" was to sue EPA to obtain a court-ordered deadline. That is so, according to EPA (at 181-83), for three reasons: *EME Homer* foreclosed Texas's argument; if accepted, Texas's argument would impose "procedural obligations not required by statute" on EPA in violation of *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519 (1978); and Texas was free to revise its SIP in the one year that elapsed between the Proposed Rule and the Final Rule. Each of those arguments fails.

*EME Homer* did not say anything at all about SIP calls under 42 U.S.C. § 7410(k)(5), much less that "EPA was not required to give states a second chance or to issue guidance or instructions *before* disapproving a Good Neighbor SIP submission." EPA Br. 181. Instead, the Court held that *after* EPA disapproves SIPs, it need not wait to give States a "second opportunity to promulgate adequate SIPs"

before issuing FIPs. *EME Homer*, 572 U.S. at 507. Yet this case does not concern what EPA must do *after* validly disapproving a SIP, but rather what it must do *before* disapproving a SIP. *Cf. id.* (confirming that, in the *EME Homer* litigation, "[t]he gravamen of the State respondents' challenge [wa]s *not* that EPA's disapproval of any particular SIP was erroneous").

Similarly, obligating EPA to issue a SIP call if it wants to base its disapproval on new data and modeling—acquired only because EPA missed its statutory deadline—would not layer extra-statutory procedures on the Act in violation of *Vermont Yankee*. After all, a SIP call is a procedure expressly created *by the Act*. *See* 42 U.S.C. § 7410(k)(5). It is also mandatory. *See id.* ("shall"). Texas's interpretation harmonizes the good-neighbor provision's forward-looking language, which allows EPA to consider the most current data and modeling, *Wisconsin*, 938 F.3d at 322, with the Act's structural, cooperative-federalism design that requires States, not EPA, to drive the regulatory process. EPA's approach, by contrast, would isolate the good-neighbor provision from the Act's broader statutory structure, in violation of the "whole text" canon of statutory construction. *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 331 (5th Cir. 2023); *see* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012).

Nor is there any merit to EPA's argument (at 182-83) that Texas should have formulated a new SIP, based on EPA's new modeling and data, in the one year between the Proposed Rule and the Final Rule. As an initial matter, such a practice would defeat the purpose of notice-and-comment rulemaking—"to allow an agency to reconsider, and sometimes change, its proposal based on the comments of affected

persons," *Ass'n of Battery Recyclers, Inc. v. EPA*, 208 F.3d 1047, 1058 (D.C. Cir. 2000)—by treating a proposed rule as a fait accompli. But more importantly, EPA points to nothing in the Act that authorizes it to impose a rolling obligation on the States to continually re-work their SIPs any time EPA develops new data and modeling. And following EPA's advice here would have been futile anyway: EPA based the Texas SIP disapproval in the Final Rule on *yet another* set of modeling data and linkages. *See* 88 Fed. Reg. at 9,359. Nothing in either law or logic supports EPA's attempt to shunt States into a game of regulatory whack-a-mole.

    **c.**   Finally, EPA contends (at 179-80) that even if it did act improperly by subverting the Act's cooperative federalism, doing so was harmless error because Texas's SIP submission was flawed "on [TCEQ's] own set[] of data." Yet EPA's bare assertion that TCEQ's *own* data demonstrated noncompliance with Texas's good-neighbor obligations is incorrect and just shorthand for the agency's unlawful attempt to impose an extra-statutory requirement: that the good-neighbor provision is violated when any downwind receptor meets or exceeds one percent of the NAAQS. *See infra* Part II.A.2.

    Regardless, EPA's counsel's post-hoc attempt to slice, dice, and compartmentalize the agency's analysis strays from the rationale EPA gave in its SIP-disapproval rulemaking. The Proposed Rule stated that, "based on the EPA's evaluation of the information submitted . . . *and* based on the EPA 2016v2 modeling results for 2023, the EPA proposes to find that Texas is linked at Steps 1 and 2 and has an obligation to assess potential emissions reductions from sources or other emissions activity at Step 3 of the 4-Step framework." 87 Fed. Reg. at 9,831 (emphasis added);

*see* Tex. State Pet. Br. 9-10. The agency reiterated that its analysis was "not solely relying on TCEQ's findings of linkages to Colorado and California but [was] *also* relying on *its own* findings of linkages to areas in the Midwest region" generated through its new modeling platform and data. 87 Fed. Reg. at 9,833 (emphasis added). And it "sum[med]" up its analysis by confirming that "EPA's more recent and robust 2016 base year modeling platform indicates that Texas is linked to several receptors in the Midwest Region as does the EPA's earlier 2011 base year modeling." *Id.* at 9,834. The Final Rule rested on EPA's use of the even newer "2016v3" modeling platform, which resulted in different linkages to downwind receptors in other states. *See* 88 Fed. Reg. at 9,359.

EPA's newfound claim that its disapproval can stand *solely* upon its own assessment of TCEQ's data showing linkages at monitors above one percent of the NAAQS is little more than a "post hoc rationalization[]" that fails to comport with "the reasoning articulated by the agency itself." *Data Mktg. P'Ship, LP v. DOL*, 45 F.4th 846, 856 (5th Cir. 2022). Yet "[a]n agency must defend its actions based on the reasons it gave when it acted." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). As a result, the Court "must disregard any *post hoc* rationalizations of the EPA's action and evaluate it solely on the basis of the agency's stated rationale at the time of its decision." *Luminant 2012*, 675 F.3d at 925. Doing so here, EPA's counsel's attempt to rewrite the agency's analysis cannot supply a justification for EPA's disregard of the Act's cooperative federalism.

## 2. EPA imposed a non-statutory one-percent contribution threshold as a proxy for "significant[] contribution."

In addition to disregarding the Act's cooperative federalism, EPA relied on a "factor[] which Congress has not intended it to consider," *Luminant 2012*, 675 F.3d at 930: the one-percent contribution threshold that it treats as a proxy for determining whether a State is "significant[ly] contribut[ing]" to nonattainment or interference with maintenance of the NAAQS within the meaning of the good-neighbor provision. *See* Tex. State Pet. Br. 25-28. As this Court has observed, the "one-percent threshold does not appear in the [statutory] text." *Texas v. EPA*, 983 F.3d 826, 839 (5th Cir. 2020) (*"Texas 2020"*). EPA, therefore, was not at liberty to impose a requirement that all downwind receptors be under the one-percent contribution threshold as a precondition for SIP approval.

EPA does not dispute that its one-percent contribution threshold appears nowhere in the Act. EPA nevertheless maintains (at 28, 99-100, 149-51)—as it long has—that the one-percent threshold is an appropriate screening tool for determining whether a State must proceed to further assess how to reduce emissions. *See* Final Rule, 88 Fed. Reg. at 9,342; Proposed Rule, 87 Fed. Reg. at 9,803; *see also Texas 2020*, 983 F.3d at 839 n.6. In practice, though, EPA deploys the one-percent threshold not as a screening metric but as a conclusive presumption of significant contribution under the good-neighbor provision. *See* Tex. State Pet. Br. 26-27.

Indeed, that was the basis for EPA's disapproval of Texas's SIP. As EPA explained in the Proposed Rule, it considers "significance," as measured by "a persistent and consistent pattern of contribution on several days with elevated ozone," to

be "*already* established by a modeled linkage at [EPA's] Step 2." 87 Fed. Reg. at 9,833 (emphasis added). And EPA acknowledges that its "Step 2 identifies those states that 'should have responsibility for addressing their contribution to the downwind nonattainment and maintenance problems to which they collectively contribute.'" EPA Br. 28 (quoting Final Rule, 88 Fed. Reg. at 9,342). That is how EPA can repeatedly argue (*e.g.*, at 179) that TCEQ's "own set[] of data" shows that Texas was not meeting its good-neighbor obligations—*i.e.*, that TCEQ's own modeling showed downwind linkages at greater than one percent of the NAAQS.

EPA's principal response (at 150-51) is that it was not linkages alone, but rather TCEQ's failure to "prepare an accounting of sources and other emissions activity for relevant pollutants and assess potential additional emissions reduction opportunities and resulting downwind air quality improvements," Proposed Rule, 87 Fed. Reg. at 9,831, that led it to disapprove Texas's SIP. But the assertion that EPA disapproved the SIP because TCEQ did not assess how to *reduce* emissions is a concession that it *is* the linkages alone that anchored EPA's significant-contribution conclusion. After all, under EPA's own view as stated in the Final Rule, without a linkage, there would be no need to perform an assessment of how to reduce emissions. *See* 88 Fed. Reg. at 9,342.

EPA therefore retreats (at 91-93) to a bid for deference under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), defending (at 99-100) its use of the one-percent contribution threshold on the ground that it represents a "reasonable" interpretation of the ambiguous good-neighbor provision. *But see Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (2023) (granting certiorari to consider whether

*Chevron* should be overruled). In so doing, EPA skips straight to Step Two of *Chevron* while bypassing the critical "*Chevron* Step Zero" question: "the initial inquiry whether the *Chevron* framework applies at all." *Ali v. Barr*, 951 F.3d 275, 279 (5th Cir. 2020). This step makes application of *Chevron* turn on "whether 'the agency interpretation claiming deference was promulgated in the exercise of [delegated] authority' to make rules carrying the force of law." *Midship Pipeline Co. v. FERC*, 45 F.4th 867, 874 (5th Cir. 2022) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)). And under *Mead*, "for *Chevron* deference to apply, the agency must have received congressional authority to determine the particular matter at issue in the particular manner adopted." *City of Arlington v. FCC*, 569 U.S. 290, 306 (2013).

EPA's bid for *Chevron* deference falters at Step Zero. The Supreme Court has indicated that, in determining whether "the Good Neighbor Provision delegates [interpretive] authority to EPA" for purposes of *Chevron*, the Court must pay careful attention to the nature of "EPA's task." *EME Homer*, 572 U.S. at 513-14. In *EME Homer*, the task of "reduc[ing] upwind pollution . . . in 'amounts' that push a downwind State's pollution concentrations above the relevant NAAQS" fell to EPA because the agency was promulgating *FIPs*. *Id.* at 514. Yet the Court was careful to note that, although it "sp[oke] . . . of 'EPA's task,' the Good Neighbor Provision is initially directed to upwind States," and "*only* after a State has failed to propose a SIP adequate for compliance with the provision is EPA called upon to act." *Id.* at 514 n.15 (emphasis added).

For that reason, *Chevron* deference was appropriate in *EME Homer*. Not so here. The good-neighbor provision delegates interpretive authority to the *States* in the first

instance at the SIP stage. *See* 42 U.S.C. § 7410(a)(2) ("Each implementation plan submitted *by a State* .... shall ...."). EPA does not get deference for requiring States to meet non-statutory factors at the SIP stage, where the States' role is primary—even if such deference might be appropriate at the FIP stage. *See EME Homer*, 572 U.S. at 514 & n.15; *accord Texas 2016*, 829 F.3d at 428 (holding that "EPA improperly failed to defer to Texas's application of the statutory factors and improperly required a source-specific analysis not found in the Act or . . . Rule").

EPA appears (at 79-82) to stake its bid for *Chevron* deference on Congress's instruction that the agency "act on [a State's SIP] submission" and "approve such submittal as a whole if it meets all of the applicable requirements of [the Act]." 42 U.S.C. § 7410(k)(2), (3). But again, the good-neighbor provision "is initially directed to upwind States," not EPA, at the SIP stage. *EME Homer*, 572 U.S. at 514 n.15. To be sure, Texas does not argue that EPA is limited at the SIP stage to a "box-checking role" or "clerical review" of SIP submissions. EPA Br. 81, 90. And there can be little doubt that EPA can review the "substance" of a State's submission to determine whether the State's analysis "is neither reasoned nor moored to the [Act]'s provisions." *Arizona ex rel. Darwin v. EPA*, 815 F.3d 519, 531, 533 (9th Cir. 2016) (quoting *North Dakota v. EPA*, 730 F.3d 750, 761 (8th Cir. 2013)).

But that "ministerial" review, *Luminant Generation Co. v. EPA*, 714 F.3d 841, 846 (5th Cir. 2013), means that the States are afforded "considerable leeway," *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 490 (2004). EPA should therefore "'accord appropriate deference' to States' . . . determinations" and refrain from "'second guess[ing]' state decisions." *Id.* "Only when a state agency's

14

. . . determination is 'not based on reasoned analysis'" should "EPA step in to ensure that the statutory requirements are honored." *Id.* Nothing about that review authority, however, countenances EPA's attempt to require States to meet non-statutory factors to secure SIP approval under the guise of statutory interpretation entitled to *Chevron* deference. *See Texas 2016*, 829 F.3d at 428-29.

## B. EPA deprived Texas of fair notice of the standards by which its SIP would be judged.

EPA's disapproval of Texas's SIP violated a second core principle of administrative law: fair notice. The agency did so in two ways. First, it rejected Texas's approach for identifying maintenance receptors based on an approach outlined in a purportedly nonbinding memorandum that was issued *after* Texas timely submitted its SIP. *See* Tex. State Pet. Br. 29-34. Second, EPA's disapproval used new modeling platforms, which identified new linkages to downwind receptors, that the agency developed well after Texas's SIP-submission deadline had passed. Tex. State Pet. Br. 34-39. Nothing in EPA's brief excuses those transgressions.

### 1. EPA failed to explain its policy reversal regarding identification of maintenance receptors.

When an agency reverses "prior policy," it must provide a "detailed justification" for doing so, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009), and "must take into account 'serious reliance interests' its 'longstanding policies may have engendered' along with 'alternatives that are within the ambit of existing policy," *R.J. Reynolds*, 65 F.4th at 189 (quoting *Regents*, 140 S. Ct. at 1913). EPA's disapproval disregards this principle.

In the March 2018 Transport Guidance, EPA indicated that States could identify maintenance receptors "using an alternative approach that does not rely on the projection of maximum design values." Tex. State Pet. Br. 30 (quoting C.I. R7-18 at A-2). TCEQ followed that advice. In Texas's SIP submission, it identified maintenance receptors that reflected the most recent three-year average design value over a five-year period, rather than the maximum design value over a five-year period. *Id.* (citing C.I. R6-6 at 3-39 to 3-40). Yet in the October 2018 Maintenance Receptor Memo, EPA changed course by adding a new element for States to include in their SIPs before they could rely on an alternative method for identifying maintenance receptors: evidence of a downward trend since 2011 in ozone concentrations at the receptor site. *Id.* (citing C.I. R7-11 at 4). Although EPA said that the instructions in the October 2018 Maintenance Receptor Memo were not binding or enforceable, *id.* at 31 (citing C.I. R7-11 at 1), EPA ultimately relied on the standards articulated in that memo as a basis for disapproving Texas's SIP, *see id.* (citing Final Rule, 88 Fed. Reg. at 9,364, 9,369-70).

EPA makes three arguments for why this "surprise switcheroo," *Texas 2023* at 20 (quoting *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005)), was not arbitrary and capricious. Each fails.

*First*, citing Texas's SIP submission, EPA argues (at 168) that Texas affirmatively disclaimed any reliance on the March 2018 Transport Guidance when it submitted its SIP, so it "cannot credibly claim" reliance now. But EPA badly misreads the SIP. TCEQ explained in the SIP that "[a]lthough this transport SIP revision was developed prior to the EPA's [March 2018] memo, the approach used in developing

16

this SIP revision *is consistent with* the EPA memo providing states with flexibility in their technical work and submittals." C.I. R.6-6 at 1-2 (emphasis added). Thus, far from disclaiming reliance on that memo, TCEQ accounted for it in Texas's SIP and explained that its submission was consistent with that guidance.

*Second*, EPA contends (at 168-69) that the March 2018 Transport Guidance was "not guidance" but instead "ideas on which EPA merely invited 'feedback.'" Yet "an agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding . . . or is applied by the agency in a way that indicates it is binding." *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) (citation omitted). That was the case here, as Texas has explained. *See* Tex. State Pet. Br. 32.

*Third*, EPA falls back (at 169-70) on the argument that it did not "purport to disapprove any portion of Texas's submission based on the Maintenance Memo." Although it acknowledges making statements in the Final Rule that "no state successfully applied" the criteria in the October 2018 Maintenance Receptor Memo, 88 Fed. Reg. at 9,370; *see also id.* at 9,364, it now attempts to dismiss (at 169-70 & n.74) those statements as "general, broad statements EPA made in the Disapproval that have no specific relevance to Texas" and that are "more applicable to states like Mississippi." But that is another "*post hoc* rationalization[]" of EPA's counsel that the Court "must disregard." *Luminant 2012*, 675 F.3d at 925. Nothing in the Final Rule itself limits EPA's responses to comments on this issue to particular States, much less excludes Texas. Nor could EPA have limited its response in such a way, as TCEQ raised this objection in its comments on the Proposed Rule. C.I. R6-28 at

17

5-6; *see Mex. Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 971-72 (5th Cir. 2023) (explaining that an agency must respond to significant comments).

### 2. EPA utilized new modeling platforms that were unavailable to Texas as a basis for disapproving Texas's SIP.

EPA also failed to provide fair notice in a second way: by judging Texas's SIP submission based on new modeling platforms, which identified different linkages, at each successive stage of the SIP-review process. *See* Tex. State Pet. Br. 34-39. If EPA wanted to rely on this new modeling and data, which became available only because EPA missed its statutory deadline, then TCEQ should have had the opportunity to assess them in the first instance. *Id.* at 35. EPA's failure to do so was arbitrary and capricious. *See R.J. Reynolds*, 65 F.4th at 189.

EPA's primary response (at 185-86) is that its "consideration of the updated 2016-based modeling was not outcome-determinative" because it did not "evaluate submissions based solely on the 2016-based modeling." Instead, it claims (at 201-04) that this updated modeling just "confirmed" Texas's non-compliance with its good-neighbor obligations, as shown by Texas's "chosen modeling and contribution threshold [that] linked a state to receptors." But as noted above, EPA's effort to break its analysis into discrete parts is an improper "*post hoc* rationalization[]" that distorts the rationale given by the agency in the Proposed and Final Rules, where EPA invoked the 2016 modeling as a key part of its analysis. *See supra* pp. 9-10.

EPA also argues (at 192-93) that Texas could not have been surprised by its use of updated modeling platforms and data because the agency provided fair notice that it intended to use the 2016v2 model in the Proposed Rule and the 2016v3 model

18

represents a "logical outgrowth" of the notice-and-comment process. "All that is required," EPA states, "is an opportunity to comment on the proposed rule." EPA Br. 193 (citing *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 447 (5th Cir. 2021)). But the problem here is that, when developing its SIP, Texas could not have prepared a submission that analyzed data and modeling that did not yet exist. It was fundamentally unfair for EPA to sandbag TCEQ by allowing the state agency to invest years of time in crafting its SIP only to have the federal agency judge its submission years later based on modeling and data that was not available at the relevant time.

Nor does the Proposed Rule constitute sufficient notice. After all, EPA acknowledges (at 191-95) that it developed a new modeling platform, new data showing new linkages in different States, and even a new category of receptors ("violating-monitor receptors") in the year between issuance of the Proposed Rule and the Final Rule. EPA characterizes this (at 193) as a "logical outgrowth" of the 2016v2 platform used in the Proposed Rule. Yet the use of an updated platform that generated brand-new linkages and a novel category of receptors hardly "frame[s] the subjects for discussion' such that" TCEQ "'should have anticipated' the agency's final course in light of the initial notice." *Huawei*, 2 F.4th at 447 (quoting *Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1115 (D.C. Cir. 2019)). Indeed, EPA's approach would leave States chasing rainbows: every time a State supplies a SIP with an assessment of current data, EPA could disapprove the SIP based on new platforms, data, and linkages not previously in existence. That demonstrates the impracticability of EPA's suggestion (at 196-97) that Texas should have reworked its SIP in the year between issuance of the Proposed Rule and the Final Rule—and the arbitrariness of EPA's approach

here. *See* Tex. State Pet. Br. 36-37 (explaining that SIP revisions must undergo time-consuming notice-and-comment procedures at the state level).

Finally, EPA denies (at 206-09) any inconsistency between the Final Rule's new linkage of Texas to two receptors in Doña Ana County, New Mexico for purposes of SIP-disapproval and EPA's contemporaneous proposed conclusion under section 179B of the Act, 42 U.S.C. § 7509a, that the El Paso–Las Cruces, Texas–New Mexico nonattainment area "would have attained" the 2015 NAAQS "but for emissions emanating from outside the United States." Tex. State Pet. Br. 37-38 (quoting Determination of Attainment by the Attainment Date but for International Emissions for the 2015 Ozone National Ambient Air Quality Standard; El Paso–Las Cruces, Texas–New Mexico, 88 Fed. Reg. 14,095, 14,095 (Mar. 7, 2023) (proposed rule)). EPA argues (at 207-09) that a determination that a nonattainment area would have been in attainment but for international emissions "does not relieve" States of their obligations to meet other sections of the Act and, regardless, Texas contributes to Doña Ana County's nonattainment problem.

But Texas does not argue that EPA's proposed 179B determination "relieves" the State of its obligations under the good-neighbor provision. Instead, it points out the inconsistency to highlight the real-world consequences of EPA's attempt to skirt fair-notice principles by introducing a new modeling platform that identifies new linkages in different States in the Final Rule. *See* Tex. State Pet. Br. 37-38. EPA's attempt (at 209) to justify this inconsistency underscores the fact that this issue should have been explored through the rulemaking process, rather than through post-hoc rationalizations in an appellate brief. *See Luminant 2012*, 675 F.3d at 925.

After all, the technical support document EPA points to as supposedly inculpating Texas identifies international emissions as the culprit for nonattainment and repeatedly states that "but for" emissions from Mexico, the nonattainment area would have been in attainment. *See* Technical Support Document, EPA Evaluation of the Clean Air Act Section 179B(b) Demonstration for the El Paso-Las Cruces, Texas-New Mexico Marginal Ozone Nonattainment Area 3, 4, 7, 14-15, 27-28, 30, 31, 33 (Feb. 2023), https://tinyurl.com/3hwdbsvk. Although EPA claims (at 209) that this is not what the document says, the document's contents contradict that assertion—which deserved more explanation than a single page in an appellate brief.

## III. Remand Without Vacatur Is Not the Appropriate Disposition.

EPA requests in the alternative (at 211) that if the Court "finds some flaw with the Disapproval," the Court "should remand to EPA but allow the Disapproval to remain in place pending prompt completion of remand proceedings." That would not be a proper disposition of the case.

The APA permits courts to "hold unlawful and set aside" an action. 5 U.S.C. § 706(2). Congress did not authorize remand without vacatur, and this Court has stated that the "default rule is that vacatur is the appropriate remedy." *Data Mktg. P'ship*, 45 F.4th at 859. By contrast, remand without vacatur is an "exceptional remedy" that the D.C. Circuit reserves for "rare cases," *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019), and that is even more rare in this Court. Among other reasons, remand without vacatur "creates a risk that an agency may drag its feet and keep in place an unlawful agency rule." *EME Homer City*

*Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015). Courts therefore weigh "how likely it is the agency will be able to justify its decision on remand" and "the disruptive consequences of the vacatur" in deciding whether to remand without vacatur. *United States v. Texas*, 50 F.4th 498, 529 (5th Cir. 2022). EPA must demonstrate "at least a serious possibility" that it will be able to "substantiate its decision given an opportunity to do so." *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021).

To that end, EPA attempts to characterize (at 212) the flaws that Texas has identified as "procedural defects and record-based deficiencies that EPA could address and correct on remand." But that ignores the "severe," "fundamental substantive defects" underpinning the disapproval. *Texas*, 50 F.4th at 529. As explained above, EPA disregarded basic administrative-law principles and the cooperative federalism that underpins the Clean Air Act. *See supra* Part II. Those are far from mere "procedural defects."

In response, EPA insists that, even if the Court "credit[s]" Texas's cooperative-federalism arguments, "it would be improper to direct EPA *to approve* the SIP submissions." EPA Br. 213. Texas has not requested such relief, nor is it contemplated by the APA. *See* 5 U.S.C. § 706. Indeed, as this Court recently noted, apart from "the constitutional or statutory basis on which the court invalidated an agency action, vacatur neither compels nor restrains further agency decision-making." *Texas*, 50 F.4th at 529 (citation omitted).

As to whether vacatur would be unduly disruptive, EPA claims (at 214) that vacatur "would delay EPA's efforts to implement Congress's mandate to upwind

states to prohibit emissions contributing significantly to nonattainment or interfering with maintenance as expeditiously as practicable." That assertion improperly assumes the merits of EPA's position. Beyond that, EPA's own delay in acting on Texas's timely SIP submission is the root of the agency's present problem. And this Court's stay order (along with similar orders from other circuits, *see* Tex. Indus. Reply Br. 2), have properly prevented implementation of the FIPs that EPA prepared for several States, including Texas. EPA acknowledges as much. EPA Br. 216. To reduce the delay that EPA now asserts warrants remand without vacatur, EPA could have sought relief from the motions panel's stay order from the en banc Court or the Supreme Court. Alternatively, EPA could have sought to expedite this appeal. Having declined each of those options—indeed, having asked to extend the briefing schedule in this appeal by months, Doc. 346—EPA should not now receive the equitable benefit of remand without vacatur. Instead, the Court should follow the "default rule," *Data Mktg. P'ship*, 45 F.4th at 859, and vacate (or, as the APA puts it, set aside) the Texas SIP disapproval.

## Conclusion

The Court should set aside the part of the Final Rule that disapproved Texas's SIP.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Lanora C. Pettit
Principal Deputy Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Bill Davis
Bill Davis
Deputy Solicitor General
Bill.Davis@oag.texas.gov

Michael R. Abrams
William F. Cole
Assistant Solicitors General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for the State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas

## CERTIFICATE OF SERVICE

On September 19, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Bill Davis
BILL DAVIS

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,441 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Bill Davis
BILL DAVIS