No. 23-60069

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; LUMINANT GENERATION COMPANY L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; ENTERGY LOUISIANA, L.L.C.; LOUISIANA CHEMICAL ASSOCIATION; MID-CONTINENT OIL AND GAS ASSOCIATION; LOUISIANA ELECTRIC UTILITY ENVIRONMENTAL GROUP, L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP,**

Petitioners,

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency,**

Respondents.

---

Petition for Review of Action of the U.S. Environmental Protection Agency

---

### REPLY BRIEF OF TEXAS INDUSTRY PETITIONERS

---

*Counsel Listed on Inside Cover*

Aaron M. Streett
Matthew L. Kuryla
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522
aaron.streett@bakerbotts.com

*Counsel for Petitioners Association of
Electric Companies of Texas, BCCA
Appeal Group, Texas Chemical Council,
and Texas Oil & Gas Association*

Megan H. Berge
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233
(202) 639-7733

J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas 77002
(713) 229-1489

*Counsel for Petitioner Texas Lehigh
Cement Company*

P. Stephen Gidiere III
Julia B. Barber
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

Stephanie Z. Moore
Executive Vice President & General
Counsel
Daniel J. Kelly
Senior Vice President & Deputy
General Counsel
David W. Mitchell
Senior Counsel, Environmental
VISTRA CORP.
6555 Sierra Drive
Irving, Texas 75039

*Counsel for Petitioners Luminant
Generation Company LLC, Coleto Creek
Power, LLC, Ennis Power Company,
LLC, Hays Energy, LLC, Midlothian
Energy, LLC, Oak Grove Management
Company LLC, and Wise County Power
Company, LLC*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES .......................................................... iii

INTRODUCTION ........................................................................... 1

ARGUMENT ................................................................................... 2

I.      The Court's Prior Ruling on Venue Was Correct .................... 2

        A.      The Relevant "Action"—EPA's Disapproval of Texas's SIP—Is a
                "Locally or Regionally Applicable" Action Reviewable Only in This
                Court ............................................................................. 3

        B.      The Core Determinations in EPA's Texas-Only Final Action Do
                Not Have Nationwide Scope or Effect ........................... 5

II.     EPA's Brief Applies the Wrong Standard of Review ............. 7

III.    EPA's Disapproval of Texas's SIP Exceeded Its Statutory Authority .......... 7

IV.     EPA's Disapproval of Texas's SIP Is Unlawful Because It Relied on Non-
        Statutory Factors ................................................................. 10

        A.      EPA Unlawfully Imposed Its Preferred 4-Step Framework on
                Texas's SIP ................................................................... 10

        B.      EPA's Unlawful Rejection of Texas's Approach to Maintenance
                Monitors Requires Vacatur .......................................... 16

        C.      EPA's Rejection of Texas's Weight-of-Evidence Analysis Was
                Unlawful ....................................................................... 18

V.      EPA's Disapproval of Texas's SIP Was Arbitrary and Capricious ............. 21

        A.      EPA's Use of "Ballpark Estimates" to Judge Texas's Modeling Was
                a Fatal Flaw .................................................................. 21

        B.      EPA Did Not Treat Like Cases Alike .......................... 23

VI.     Vacatur Is the Appropriate Remedy ................................... 24

CONCLUSION ........................................................................................................... 26

CERTIFICATE OF SERVICE ...................................................................................... 29

CERTIFICATE OF COMPLIANCE ............................................................................ 30

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*ATK Launch Sys., Inc. v. EPA*,
  651 F.3d 1194 (10th Cir. 2011) ................................................................. 5

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2022) ................................................................. 24

*EME Homer City Generation, L.P. v. EPA*,
  696 F.3d 7 (D.C. Cir. 2012) ................................................................. 15

*EME Homer City Generation, L.P. v. EPA*,
  795 F.3d 118 (D.C. Cir. 2015) .......................................................... 13, 15

*EPA v. EME Homer City Generation, L.P.*,
  572 U.S. 489 (2014) ......................................................................... 9, 18

*Exelon Wind 1, L.L.C. v. Nelson*,
  766 F.3d 380 (5th Cir. 2014) ................................................................. 8

*Fla. Power & Light Co. v. Costle*,
  650 F.2d 579 (5th Cir. Unit B June 1981) ............................................... 8

*Fontem US, LLC v. FDA*,
  __ F.4th __, 2023 WL 5536194 (D.C. Cir. Aug. 29, 2023) ........................ 12

*Jama v. Immigration & Customs Enf't*,
  543 U.S. 335 (2005) ................................................................................ 11

*Luminant Generation Co., LLC v. EPA*,
  675 F.3d 917 (5th Cir. 2012) ..................................... 1, 4, 7, 8, 9, 10, 14, 22

*Luminant Generation Co. LLC v. EPA*,
  714 F.3d 841 (5th Cir. 2013) ............................................................... 8, 9

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ............................................................................... 10

*Texas v. EPA*,
    No. 10-6096, 2011 WL 710598 (5th Cir. Feb. 24, 2011) ............................................ 5

*Texas v. EPA*,
    690 F.3d 670 (5th Cir. 2012) ....................................................................................... 14

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ....................................... 1, 3, 6, 7, 8, 12, 13, 21

*Texas v. EPA*,
    983 F.3d 826 (5th Cir. 2020) ............................................................................... 19, 20

*Train v. Nat. Res. Def. Council, Inc.*,
    421 U.S. 60 (1975) .......................................................................................................... 8

*U.S. Steel Corp. v. EPA*,
    595 F.2d 207 (5th Cir. 1979) ................................................................................ 3, 5, 22

*Union Elec. Co. v. EPA*,
    427 U.S. 246 (1976) ........................................................................................................ 9

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Human*
    *Servs.*, 985 F.3d 472 (5th Cir. 2021) ......................................................................... 24

*W. Oil & Gas Ass'n v. EPA*,
    633 F.2d 803 (9th Cir. 1980) ........................................................................................ 5

*Westar Energy, Inc. v. EPA*,
    608 F. App'x 1 (D.C. Cir. 2015) ........................................................................... 13, 15

*Wyoming v. EPA*,
    __ F.4th __, 2023 WL 5214083 (10th Cir. Aug. 15, 2023) ...................... 9, 13, 21, 25

## Federal Statutes

5 U.S.C. §706(2) ........................................................................................................... 24

5 U.S.C. §706(2)(A) ................................................................................................... 7, 22

5 U.S.C. §706(2)(C) ........................................................................................................ 7

42 U.S.C. §7401(a)(3) .......................................................................... 8

42 U.S.C. §7410(a) ............................................................................ 3, 9

42 U.S.C. §7410(a)(2)(A) ..................................................................... 11

42 U.S.C. §7410(a)(2)(D)(i)(I) ........................................................ 11, 18

42 U.S.C. §7410(c)(1) ......................................................................... 25

42 U.S.C. §7410(k)(1)(A) .................................................................... 12

42 U.S.C. §7410(k)(1)-(3) ..................................................................... 3

42 U.S.C. §7410(k)(3) ....................................................... 1, 10, 13, 18

42 U.S.C. §7410(k)(5) ......................................................................... 11

42 U.S.C. §7410(k)(6) ......................................................................... 11

42 U.S.C. §7505a(a) ............................................................................ 17

42 U.S.C. §7607(b)(1) ........................................................................... 6

**Federal Regulations**

40 C.F.R. §§51.1300-51.1318 ............................................................. 12

40 C.F.R. §97.810 ............................................................................... 25

40 C.F.R. Part 51, App. V ................................................................... 12

**Federal Register**

81 Fed. Reg. 15,200 (Mar. 22, 2016) ............................................. 23, 24

82 Fed. Reg. 1,733 (Jan. 6, 2017) ....................................................... 19

82 Fed. Reg. 45,481 (Sept. 29, 2017) ................................................. 16

87 Fed. Reg. 9,798 (Feb. 22, 2022) ....................... 16, 18, 19, 22, 23, 26

88 Fed. Reg. 9,336 (Feb. 13, 2023) .............................................. 1, 4, 5, 7, 14, 16

**Miscellaneous**

EPA, *2015 Ozone NAAQS Interstate SIP Disapprovals – Response to Comment (RTC) Document*, EPA-HQ-OAR-2021-0663-0083 (Jan. 31, 2023) ("RTC") (C.I. HQ-83) ............................................................. 19

EPA, *2016v3 DVs State Contributions*, EPA-HQ-OAR-2021-0663-0070 (Jan 31, 2023) ("2016v3 DVs State Contributions") (C.I. HQ-70) ................... 20

EPA, *Air Quality Modeling Technical Support Document 2015 Ozone NAAQS SIP Disapproval Final Action*, EPA-HQ-OAR-2021-0663-0085 (Jan. 31, 2023) ("Final Air Quality Modeling TSD") (C.I. HQ-85) ..................... 20, 24

EPA Region 6, *2015 8-Hour Ozone Transport SIP Proposal Technical Support Document*, EPA-HQ-OAR-2021-0663-0024 (Feb. 1, 2022) ("Region 6 Texas TSD (Feb. 1, 2022)") (C.I. HQ-24) ........................................ 22

EPA Region 6, *2015 8-Hour Ozone Transport SIP Proposal Technical Support Document*, EPA-R06-OAR-2021-0801-0002 (Feb. 2022) ("Region 6 Texas TSD") (C.I. R6-2) .................................................... 16, 18, 19, 22

Hon. Henry A. Waxman, et al., *Roadmap to Title I of the Clean Air Act Amendments of 1990: Bringing Blue Skies Back to America's Cities*, 21 Envtl. L. 1843 (1991) .......................................................... 11

Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)*, EPA-HQ-OAR-2021-0663-0003 (Mar. 27, 2018) ("EPA March 2018 Transport Guidance") (C.I. HQ-3) ................................................ 9, 16

TCEQ, *Transport State Implementation Plan (SIP) Revision for the 2015 Ozone National Ambient Air Quality Standards (NAAQS)*, EPA-R06-OAR-2021-0801-0006 (Aug. 8, 2018) ("Texas SIP") (C.I. R6-6) .......................................................... 14, 17, 20, 23

## **INTRODUCTION**

EPA's disapproval of Texas's SIP should be vacated. Under the Clean Air Act, if a SIP is "consisten[t] with the Act's requirements," EPA must approve it. *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) ("*Luminant 2012*") (citing 42 U.S.C. §7410(k)(3)). EPA's disapproval here departed from that statutory directive and instead judged Texas's SIP against an EPA-created "4-step framework" found nowhere in the Act or any regulation. As the Stay Panel correctly concluded, because EPA subjected Texas's SIP "to a range of factors 'not found in the Act,'" its disapproval was unlawful. Order at 15, Doc. 269-2, *Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023) ("*Texas 2023*") (quoting *Texas v. EPA*, 829 F.3d 405, 428 (5th Cir. 2016) ("*Texas 2016*")).

In defending the disapproval, EPA's brief relabels these non-statutory factors as "technical methodologies" and claims it simply reviewed Texas's submission for technical errors. But no amount of post hoc recharacterization can change what EPA did. To use EPA's words, it required Texas to "substantially justif[y]" any "deviation" from EPA's non-statutory framework. 88 Fed. Reg. 9,336, 9,340 (Feb. 13, 2023). And EPA's so-called technical assessment was superficial and unsupported—relying, for example, on "ballpark estimates" that the agency itself concluded were not reliable or accurate. EPA's brief tries to walk back these findings, but the disapproval must be judged based on EPA's explanation at the time of its decision, and that explanation fails

to provide any reasonable basis for disapproving Texas's SIP on technical or other grounds.

## **ARGUMENT**

### I.    **The Court's Prior Ruling on Venue Was Correct**

The Court should decline EPA's invitation to revisit the question of venue, which has already been thoroughly addressed.  *See Texas 2023* at 13.   Intervening developments—which EPA's brief ignores—further undermine EPA's position.  In the various cases involving other States' good neighbor ozone SIPs, no other court has accepted EPA's position.  *See*, *e.g.*, Order at 2-6, *Kentucky v. EPA*, No. 23-3216 (6th Cir. July 25, 2023) (denying EPA's motion to transfer because challenge to Kentucky SIP disapproval was locally or regionally applicable and not based on determinations of nationwide scope or effect); Order, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Apr. 25, 2023) (denying EPA's motion to transfer challenge to EPA's disapproval of Arkansas SIP); Order, *Missouri v. EPA*, No. 23-1719 (8th Cir. May 26, 2023) (same for Missouri); Order, *ALLETE, Inc. v. EPA*, No. 23-1776 (8th Cir. May 26, 2023) (same for Minnesota); Order, *Nevada Cement Co. v. EPA*, No. 23-682 (9th Cir. July 3, 2023) (carrying transfer motion with the case for Nevada's SIP); Order, *Utah v. EPA*, No. 23-9509 (10th Cir. Apr. 27, 2023) (same for Utah); Order, *Oklahoma v. EPA*, No. 23-9514 (10th Cir. Apr. 27, 2023) (same for Oklahoma); Order, *Alabama v. EPA*, No. 23-11173 (11th Cir. July 12, 2023) (same for Alabama).

**A.     The Relevant "Action"—EPA's Disapproval of Texas's SIP—Is a "Locally or Regionally Applicable" Action Reviewable Only in This Court**

Like its motion, EPA's brief proceeds from the false premise that EPA took a "single" action on 21 States' SIPs.  Doc. 397 at 59 ("Resp. Br.").  But this Court, not EPA, applies the statutory text to determine the nature of the final action, *see Texas 2016*, 829 F.3d at 421, and the Clean Air Act establishes that "[t]he relevant unit of administrative action here is the EPA's individual SIP denials."  *Texas 2023* at 9; *see also* 42 U.S.C. §7410(a) ("each State" submits its own SIP); *id.* §7410(k)(1)–(3) ("the State," singular).

EPA urges a different rule that would allow it to define the "action" for venue purposes, claiming that its "discretionary choices about how to order its docket" determine venue.  Resp. Br. at 63.  But such a rule would allow EPA to manipulate the Act's venue provision by selective publication.  This Court does not treat EPA's publication choices as controlling venue.  *See, e.g.*, *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 218 (5th Cir. 1979) (vacating EPA designations for Alabama published in a multi-State Federal Register notice); *accord Texas 2023* at 9 ("[T]he EPA's chosen method of publishing an action isn't controlling.").

Regardless, EPA's argument fails as a factual matter—EPA's "docket" for its Texas SIP disapproval was regional and local in nature by EPA's own design.  The disapproval was proposed by EPA's Regional Office, was based exclusively on analysis by Region 6's Lead Regional Modeler, was compiled in a regional docket, and directed

public comments to the Regional Office. *See* Doc. 102 at 6-8. EPA specifically claimed that "the contents of each individual state's submission were evaluated on their own merits." 88 Fed. Reg. at 9,354. EPA's post-hoc characterization of its docket as "national" is contradicted by the record and should be disregarded. *See Luminant 2012,* 675 F.3d at 925.

Even accepting EPA's 21-State characterization, EPA is wrong that, "[o]n its face, the Disapproval is nationally applicable." Resp. Br. at 59. The notice addresses only a *minority* of good neighbor SIPs for the 2015 ozone NAAQS, as the green shading on EPA's own map (at 63) illustrates. Thus, even under EPA's construct, its notice did not address most, much less all, of the nation. EPA separately acted on the good neighbor SIPs from 23 *other* States and the District of Columbia in 20 separate Federal Register notices. 88 Fed. Reg. at 9,362. And EPA "deferr[ed] action" on Tennessee's and Wyoming's SIPs. *Id.* at 9,337. Thus, accepting EPA's argument would mean challenges related to the remaining 26 SIPs would be appropriately decided separately in regional circuits, while challenges related to the 21 States in the notice here would be decided together in the D.C. Circuit—all by mere happenstance of how EPA published its decisions. Such an approach would elevate form over substance.

EPA is wrong that the Stay Panel's ruling "conflicts with … *Texas 2011* [and] the Tenth Circuit's holding in *ATK Launch.*" Resp. Br. at 65. The unpublished *Texas 2011* opinion concluded that EPA's rule there "applie[d] to *all states* whose implementation plans d[id] not apply the Act's [prevention-of-significant-deterioration] program to

greenhouse-gas-emitting sources" and thus was "nationally applicable." *Texas v. EPA*, No. 10-6096, 2011 WL 710598 at *3 (5th Cir. Feb. 24, 2011).  In *ATK Launch Systems, Inc. v. EPA*, the Tenth Circuit found that the challenged rule applied, on its face, to "every state and territory" and was, thus, "nationally applicable." 651 F.3d 1194, 1198-1200 (10th Cir. 2011).  Here, even considering EPA's Federal Register notice as a whole, it applies only to a minority of States and certainly not "every state and territory."

EPA's concern about "inconsistent outcomes" (at 66) is neither well-founded nor relevant.  EPA must analyze "the facts and circumstances of *each particular state's submission*," 88 Fed. Reg. at 9,340 (emphasis added), and EPA identifies no other petition involving *Texas's* SIP in another court.  And despite EPA's concerns about overlapping issues that may arise in reviewing *different* SIPs, courts are experienced in minimizing conflicting decisions and considering the views of sister circuits, even when reviewing different parts of the same Federal Register notice.  *See, e.g.*, *U.S. Steel*, 595 F.2d at 210 (reviewing Alabama portion of multi-State Federal Register notice); *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 807-11 (9th Cir. 1980) (reviewing other portions of same notice and "agree[ing] with the reasoning of the Third and Fifth Circuits.").  And the Supreme Court can resolve any actual, meaningful conflict should it arise.

## B.     The Core Determinations in EPA's Texas-Only Final Action Do Not Have Nationwide Scope or Effect

To overcome the "default presumption" of review in this Court, EPA must show that its Texas SIP disapproval was "based on a determination of nationwide scope or

effect." *Texas 2016*, 829 F.3d at 419 (quoting 42 U.S.C. §7607(b)(1)) (internal quotation marks omitted).  EPA cannot make that showing here.

EPA's review of Texas's SIP was necessarily based on "contextual and variable" State-specific considerations because "SIP approvals or disapprovals are highly fact-dependent actions." *Id.* at 423-24.  Indeed, EPA concedes (at 147) that its disapproval of Texas's SIP was based on "two distinct reasons" unique to Texas—1) the determination that TCEQ's multi-factor weight-of-evidence analysis did not counter EPA's one-percent threshold; and 2) EPA's rejection of Texas's methodology for maintenance monitors.  These are exactly the type of "intensely factual determinations" "all related to the particularities of the emission sources in Texas" that do not have nationwide scope or effect. *Texas 2016*, 829 F.3d at 421; *accord Texas 2023* at 12.  Thus, the Court's venue ruling did not "assum[e]" that Section 7607(b)(1) requires the action to be "'based *solely* on' a determination (or determinations) of nationwide scope or effect."  Resp. Br. at 74-75.  Instead, this Court's ruling was premised on *the exact same determinations* that EPA now holds out as the "distinct reasons" for the disapproval. *Compare Texas 2023* at 12, *with* Resp. Br. at 147.

Finally, EPA's brief argues that its "responses to comments" have nationwide scope and effect.  Resp. Br. at 69.  But these generic discussions are better understood as "[m]erely peripheral or extraneous determinations [that] are not relevant" to venue. *Texas 2016*, 829 F.3d at 419.   And even if they could be considered "core determinations," *id.*, *none* of them has anything to do with Texas.  According to EPA's

6

own description, each of these "responses to comments" addresses States *other than Texas*. Resp. Br. at 69 nn.31-33. EPA's argument fails both legally and factually.

## II.    EPA's Brief Applies the Wrong Standard of Review

EPA would constrain this Court to deciding only whether "the agency's determination was 'reasonable.'" Resp. Br. at 56. But the Court's review is not so narrowly-cabined. This Court will invalidate an EPA Clean Air Act action if it is *either* "not permitted by the statute" *or* "arbitrary [or] capricious[.]" *Texas 2016*, 829 F.3d at 425-26. Under the correct standard, "[t]he reviewing court ... shall hold unlawful and set aside agency action ... not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §706(2)(A), (C). As discussed below, and in the Court's stay order, EPA's disapproval of Texas's SIP was unlawful and must be set aside for at least two independent reasons—1) EPA exceeded its statutory authority, *and* 2) EPA's disapproval was arbitrary and capricious (*i.e.*, unreasonable). *See Texas 2023* at 14.

## III.    EPA's Disapproval of Texas's SIP Exceeded Its Statutory Authority

EPA's brief furthers the "misapprehension by the EPA of its authorized role in the SIP-approval process." *Luminant 2012*, 675 F.3d at 928 n.8. EPA's disapproval openly refused to "defer to [Texas's] choices in the development of good neighbor SIP submissions." 88 Fed. Reg. at 9,375. Doubling down, EPA's brief now claims the *exclusive* authority to *both* interpret and apply the good neighbor provision for purposes of Texas's SIP. Resp. Br. at 91 (EPA can "define[] the 'applicable requirement' SIPs

must meet and provide[] [the] technical framework for evaluating whether SIPs meet it."). EPA would limit the States' role to merely implementing EPA-pre-determined emission limitations. *Id.* at 89-90 (States only "formulat[e] regulatory controls").

EPA's position contradicts this Court's decades-long precedent and the statutory text. As the Stay Panel correctly held, "[t]he CAA's text and our precedent compel that 'the EPA does not possess *any* discretionary authority in th[e] [SIP-approval] process. *Only* the States enjoy discretion in implementing the dictates of the CAA." *Texas 2023* at 16 (quoting *Luminant 2012*, 675 F.3d at 928 n.8) (italics and alterations in original). At the SIP stage, the State is "primary," and EPA is "secondary." 42 U.S.C. §7401(a)(3); *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975) (EPA "is relegated by the Act to a secondary role.").

Thus, contrary to EPA's approach, "Texas's *application* of the [Act's] statutory factors" must also be accorded "deference" by EPA. *Texas 2016*, 829 F.3d at 411, 428 (citing, *inter alia*, *Florida Power & Light Co. v. Costle*, 650 F.2d 579, 581 (5th Cir. Unit B 1981)) (emphasis added). This follows from "the CAA's cooperative federalism framework," *Texas 2023* at 14, and the statute's unique mandate to state regulatory agencies, *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 399 (5th Cir. 2014) (deferring to Texas PUC's implementation of federal statute—"Congress delegated the authority to make this call to the PUC."). Here, Texas's "'wide discretion' in formulating [its] SIP" extends to its application of the "significant contribution" and "interference with maintenance" prongs to Texas's emissions, *Luminant Generation Co. LLC v. EPA*, 714

8

F.3d 841, 845 (5th Cir. 2013) (quoting *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976)), and to Texas's "demonstrat[ion] that the [S]tate's [existing] SIP already contains or sufficiently addresses [those] provisions," EPA March 2018 Transport Guidance (C.I. HQ-3) at 2.

EPA claims (wrongly) that the "multistate nature of ozone pollution"—and the Supreme Court's decision in *EME Homer*—changes the normal order. Resp. Br. at 20-21. But nothing in the text of Section 7410(a) distinguishes good neighbor SIPs from any others. And contrary to EPA's claim (at 87), the Supreme Court's decision *was* "limited to FIPs" and *was decided* with "reference to whether EPA was acting on a SIP or promulgating a FIP[.]" *See EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 503 n.11, 507 (2014) ("[The] State[s'] challenge is not that EPA's disapproval of any particular SIP was erroneous."). It is Clean Air Act canon that "EPA has less discretion when it … reject[s] a SIP than it does when it promulgates a FIP." *Wyoming v. EPA*, __ F.4th __, 2023 WL 5214083 at *4 (10th Cir. Aug. 15, 2023) (internal quotation marks and citations omitted) (alterations in original). In *EME Homer* itself, the Supreme Court confirmed that, for SIPs, the "deference" that EPA would claim for itself runs to the State, not EPA, because "the Good Neighbor Provision is initially directed to upwind States" who are authorized to act *without* "EPA's input." 572 U.S. at 509-510, 514 & n.15. Thus, *EME Homer* is consistent with this Court's precedent that, at the SIP stage, "[o]nly the states enjoy discretion in implementing the [Act]." *Luminant 2012*, 675 F.3d

at 928 n.8.  Because EPA "misconceived the law" as a threshold matter, its disapproval "may not stand."  *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943).

## IV. EPA's Disapproval of Texas's SIP Is Unlawful Because It Relied on Non-Statutory Factors

Properly understood, then, EPA's role is to review a SIP "for consistency with the Act's requirements."  *Luminant 2012*, 675 F.3d at 921 (citing 42 U.S.C. §7410(k)(3)).  EPA overstepped that boundary here and "exceeded its authority under the CAA by giving undue weight to non-statutory factors when evaluating [Texas's SIP]."  *Texas 2023* at 14.  Chief among them were EPA's 4-step framework; its methodology for out-of-State "maintenance" monitors; and its one-percent threshold for determining "significant contribution"—none of which are found in the statutory text or any regulation.  *Id.* at 15-17; Doc. 329 at 35-44 ("Tex. Ind. Pet. Br.").

### A. EPA Unlawfully Imposed Its Preferred 4-Step Framework on Texas's SIP

EPA claims that its "4-step framework does not insert non-statutory requirements into the Good Neighbor Provision."  Resp. Br. at 96.  But EPA effectively made the framework itself mandatory for States as evidenced by EPA's admission that "no state" that deviated from it was able to "submit [an approvable] plan."  Resp. Br. at 3.

EPA attempts to cobble together various unrelated statutory provisions as authority to impose its 4-step framework on SIPs.  *Id.* at 79-83.  But those provisions only confirm that EPA overstepped here.  EPA would equate "adequate provisions" in

10

the interstate transport provision (42 U.S.C. §7410(a)(2)(D)(i)(I)) with "control measures" in a separate provision (*id.* §7410(a)(2)(A)) to argue that Texas's SIP was deficient because it did not "adopt *any* additional emissions-control measures" using EPA's Step 3.  Resp. Br. at 77, 79-80.  But if Congress had intended to require all interstate transport SIPs to include new emission limitations or "control measures," even where the State demonstrates there is no "significant contribution," it would have said so.  *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 341 (2005).

EPA draws mistaken inferences (at 82) from other provisions of the Act that address EPA's authority *after* it has *approved* a SIP.  That EPA may "call" for revision of a previously-approved SIP only where it is later determined to be "substantially inadequate," 42 U.S.C. §7410(k)(5), underscores the State's discretion in determining the contents of its SIP—and EPA's limited review authority—in the first instance.  The same is true for EPA's extremely limited "error correction" authority under 42 U.S.C. §7410(k)(6).  *See* Hon. Henry A. Waxman, et al., *Roadmap to Title I of the Clean Air Act Amendments of 1990: Bringing Blue Skies Back to America's Cities*, 21 Envtl. L. 1843, 1924-25 (1991) ("[Section 7410(k)(6)] is included to enable EPA to deal promptly with clerical errors or technical errors.  It is not intended to offer a route for EPA to reevaluate its policy judgments.").

Nor does EPA's "administrative completeness" review suggest that Congress intended EPA's substantive SIP review to extend beyond express statutory requirements, as EPA claims (at 81).  Quite the opposite—Congress directed that

EPA's completeness "criteria *shall be limited* to the information necessary to enable the Administrator to determine whether the plan submission *complies with the provisions of this chapter*." 42 U.S.C. §7410(k)(1)(A) (emphases added). And EPA's completeness criteria simply list the types of data and information that must be included in a SIP submission so that EPA can subsequently evaluate its statutory sufficiency. *See* 40 C.F.R. Part 51, App. V (listing information such as "evidence that the State has the necessary legal authority under State law to adopt and implement the plan" and "locations of affected sources"). Thus, strictly limiting EPA's SIP review to statutory requirements does not "collapse[]" EPA's completeness review and SIP review (at 81)—it effectuates Congress's clear direction in the statute.

EPA's 4-step framework also does not appear in any regulation. While EPA has issued regulations establishing SIP requirements for some aspects of the 2015 ozone NAAQS, they do *not* include requirements for interstate transport, much less EPA's 4-step framework. *See* 40 C.F.R. §§51.1300-51.1318. Having failed to do so, EPA cannot complain that its review is limited to statutory requirements. *See Fontem US, LLC v. FDA*, __ F.4th __, 2023 WL 5536194 at *6 (D.C. Cir. Aug. 29, 2023) ("The FDA could have promulgated regulations imposing consistent requirements on the composition and manufacturing of tobacco products. Had the agency done so, Fontem's failure to meet those standards would be" a "sufficient ground for denying the application[.]"). Because neither the statute nor any regulations require adherence to EPA's 4-step framework, EPA's disapproval on that basis was unlawful. *See Texas 2016*, 829 F.3d at

12

429; *accord Wyoming*, 2023 WL 5214083 at *7 (EPA cannot "treat[] [technical] guidelines as binding" in reviewing SIP submissions).

With no direct statutory authority, EPA relies on "litigation … address[ing] EPA's SIP disapprovals" (at 17)—namely, the D.C. Circuit's decision on remand in *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015), and its unpublished decision in *Westar Energy, Inc. v. EPA*, 608 F. App'x 1 (D.C. Cir. 2015). Resp. Br. at 86-87, 96. But neither endorsed EPA's 4-step framework as a valid comparator for SIPs—much less a litmus test. The D.C. Circuit in *EME Homer* upheld EPA's SIP disapprovals because the SIPs had relied on a trading program (the Clean Air Interstate Rule) that the court had previously held "to be … invalid" for other reasons—not because they did not follow EPA's 4-step framework. *See* 795 F.3d at 133-35. And in *Westar Energy*, EPA's 4-step framework is not even mentioned— instead, the court held that EPA's disapproval of Kansas's SIP was lawful because Kansas's SIP "failed to provide any analysis at all of the downwind effect of its in-state emissions." 608 F. App'x at *3. No court has held that EPA's 4-step framework is a valid basis for disapproving a SIP.

EPA is wrong (at 88 & n.44) that this Court's precedent only prevents EPA from disapproving a SIP based on "compliance with state law." This Court has enforced Section 7410(k)(3) in all manner of SIP cases where EPA unlawfully used non-statutory factors unrelated to State law. *See, e.g., Texas 2016*, 829 F.3d at 428 (EPA "improperly required a source-specific analysis not found in the Act or the Regional Haze Rule.");

13

*see also Texas v. EPA*, 690 F.3d 670, 679 (5th Cir. 2012) ("EPA's [disapproval] is based … on the Agency's preference for a different drafting style, instead of the standards Congress provided in the CAA[.]"); *Luminant 2012*, 675 F.3d at 927 ("EPA's attempt to graft a 'similar source' rule onto the applicable provisions of the CAA was [unlawful].").

EPA resorts to relabeling its framework as a "technical methodolog[y]." Resp. Br. at 90. But EPA did not simply use its 4-step framework to judge the technical aspects of Texas's SIP. Instead, EPA erroneously equated its own framework with the Act's requirements and required Texas to "substantially justif[y]" any "deviation" from it. 88 Fed. Reg. at 9,340. No amount of renaming can change the substance of what EPA did—"EPA acted unlawfully by considering factors listed nowhere in the CAA." *Texas 2023* at 14.

EPA says it should not be forced to "automatically defer" to States (at 77) or approve a SIP where "the state plainly proceeded without a sufficient factual basis" or acts "without any rationale." Resp. Br. at 97-98 (internal quotation marks omitted). No party here contends that it should. But that strawman does not help EPA here. Texas did not "simply assert that [its] contributions are not significant," as EPA suggests. *Id.* at 94. Texas's application of the good neighbor provision was fully explained and consistent with the text of the statute. *See* Texas SIP (C.I. R6-6) at 3-41–3-42; Tex. Ind. Pet. Br. at 39-40. TCEQ's conclusions were based on extensive technical analysis and

air-quality modeling that the agency was well-qualified to perform.[1]  Thus, contrary to EPA's contention (at 86), this case is not like *Westar Energy*, where "[t]he discussion of interstate transport in Kansas's SIP was only one page long and failed to provide any analysis at all of the downwind effect of its in-state emissions."  608 F. App'x at *3. EPA's worst-case scenario has no application to Texas.

Finally, EPA invokes the "[t]he history of Good Neighbor implementation" (at 94) to argue that it must be given supernumerary authority over interstate transport issues at all stages.  But even if history could somehow alter the legal framework, EPA cites nothing in that history to demonstrate that Texas has ever shirked its good neighbor obligations.  To the contrary, that history teaches that, if left unchecked, EPA will overstep its statutory authority and unlawfully require Texas to reduce *more than* its "significant contribution."  In the last round of good neighbor plans, Texas ultimately prevailed in showing that EPA had unlawfully over-controlled Texas sources.  *See EME Homer City*, 795 F.3d at 129 ("EPA has required Texas 'to reduce emissions by more than the amount necessary to achieve attainment in *every* downwind State to which it is linked,' in clear violation of the Supreme Court's directive.").  And on remand from that decision, EPA had no choice but to remove Texas from one of its Cross-State Air

---

[1] *See EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 49 & n.13 (D.C. Cir. 2012) (Rogers, J., dissenting) ("State air quality divisions are no strangers to complex air quality and meteorological modeling of interstate transport of emissions."  "To cite one example: the State of Texas."), *rev'd on other grounds*, 572 U.S. 489 (2014).

Pollution Rule (CSAPR) FIPs because, under a correct view of the law, Texas's emissions did not "contribute significantly." *See* 82 Fed. Reg. 45,481 (Sept. 29, 2017). Having learned from that history, in this round, Texas proactively developed a robust analysis and technical demonstration for its good neighbor SIP to "demonstrat[e] that the [S]tate's [existing] SIP already contains or sufficiently addresses the [good neighbor] provisions," as is the State's right in its primary role under the statute. *See* EPA March 2018 Transport Guidance (C.I. HQ-3) at 2.

## B.    EPA's Unlawful Rejection of Texas's Approach to Maintenance Monitors Requires Vacatur

EPA urges the Court "not [to] reach" its evaluation of Texas's approach to "maintenance" monitors, claiming it was "inconsequential" to EPA's disapproval. Resp. Br. at 148, 161-62. But EPA's rejection of Texas's approach occupied 34 pages (over one-third) of EPA's Technical Support Document and was featured prominently in EPA's final disapproval. *See* 88 Fed. Reg. at 9,359-60. And the issues are not easily severable, as EPA's brief suggests. Under EPA's view, "all nonattainment receptors are also considered to be maintenance receptors," Region 6 Texas TSD (C.I. R6-2) at 6, and so the error ran through EPA's entire analysis, *see* 87 Fed. Reg. 9,798, 9,831 (Feb. 22, 2022) (claiming that the "precise set of linkages" was irrelevant to EPA's decision). Thus, EPA's maintenance error is an independent basis for vacatur.

On the merits, EPA concedes that "[t]he Good Neighbor Provision does not establish a methodology for how to identify receptors, nor does it even require

identifying them." Resp. Br. at 25. Thus, EPA's preference for different averaging periods to identify maintenance monitors (Tex. Ind. Pet. Br. at 19-20) was an unlawful ground for disapproval. *Texas 2023* at 17.

On the details, EPA mischaracterizes the record. TCEQ did not, as EPA claims (at 164), "[c]onsider only one set of data." TCEQ's methodology included three years of ozone data, including 2012—which EPA does not dispute was one of "the highest ozone years since 2005-2007" and "conducive to ozone formation." Tex. Ind. Pet. Br. at 41-42 n.11. And EPA's premise—that Texas's maintenance methodology must give primary consideration to "interannual meteorological variability"—is a concept that EPA's brief grafts onto the D.C. Circuit's decision in *North Carolina*. Resp. Br. at 162 (inserting that phrase). In any case, TCEQ did account for interannual meteorological variability. Texas SIP (C.I. R6-6) at 3-41–3-42.

Finally, EPA does not contend that Texas's maintenance methodology was inconsistent with the good neighbor provision by taking into account maintenance plans under 42 U.S.C. §7505a(a) and the most recent available emissions data to prevent over-control. Resp. Br. at 166-67. At most, EPA argues that the maintenance prong "is not *limited* to areas subject to maintenance plans," *id.* (emphasis added), but TCEQ never purported to limit its maintenance analysis to only such areas—instead, its approach ensured that "any maintenance plans *that are in place*" are accounted for by using the latest available data, Texas SIP (C.I. R6-6) at 3-42 (emphasis added). Thus, TCEQ did not focus "on only areas that were once in nonattainment," as EPA

contends (at 167). Nor does EPA dispute, or even address, that TCEQ's approach gives meaning to the phrase "maintenance *by* … any *other* State" in Section 7410(a)(2)(D)(i)(I) (emphasis added), by using the latest emissions data that reflect decreasing ozone trends in downwind States to minimize the potential that Texas sources would be required to reduce more than their fair share. *See EME Homer*, 572 U.S. at 515 n.18 (explaining unlawful over-control in the maintenance context). Because TCEQ's approach was consistent with the statute in all respects, EPA was bound to approve it. *See* 42 U.S.C. §7410(k)(3).

## C.   EPA's Rejection of Texas's Weight-of-Evidence Analysis Was Unlawful

EPA claims that it disapproved Texas's weight-of-evidence analysis because it was "not adequately supported by scientific information," Resp. Br. at 147, 149, but its brief does not deny that EPA required that TCEQ "counter" EPA's bright-line one-percent threshold (a non-statutory factor) with "substantial evidence." *See* Region 6 Texas TSD (C.I. R6-2) at 77-78; *see also* 87 Fed. Reg. at 9,831-34. Thus, at the open, EPA's review of Texas's weight-of-evidence analysis applied the wrong standard and is unlawful. *Texas 2023* at 16-17.

EPA's primary defense is that TCEQ's modeling (Step 2) "already determined that Texas 'persistently and consistently' contributed to linked receptors" because it showed linkages at one percent—and thus there was no point to TCEQ's review of other information at Step 3 (like actual monitoring data). Resp. Br. at 149-51. But that

is just another way of saying that EPA's one-percent modeled contribution threshold is controlling. Indeed, EPA's brief does not dispute the agency's prior statement that the 4-step framework "treats a [modeled] contribution from an individual state at or above 1 percent of the NAAQS *as significant*." 82 Fed. Reg. 1,733, 1,740 (Jan. 6, 2017) (emphasis added). In other words, in EPA's view, once modeling showed a one-percent contribution, that contribution was automatically considered "significant," and Texas was powerless to investigate further. But because a one-percent threshold "does not appear in the text of [the interstate transport] provision," *Texas v. EPA*, 983 F.3d 826, 839 (5th Cir. 2020) ("*Texas 2020*"), it was unlawful for EPA to judge Texas's SIP against it.

EPA's argument also rests on a false premise—that TCEQ's modeling (Step 2) had "already factor[ed] in" the same information as its weight-of-evidence analysis (Step 3). Resp. Br. at 149. In fact, TCEQ's weight-of-evidence analysis reviewed *actual real-world data* (over many years) to determine if the *modeled* linkage (based on only one year) actually represented a problem that Texas could address or was better explained by anomalous conditions unlikely to persist. For the Colorado monitors,[2] TCEQ

---

[2] EPA's brief defends its Texas disapproval based *only* on the Colorado monitors, Resp. Br. at 152-53 n.7, and not the other monitors in California, Arizona, Colorado, Illinois, Wisconsin, and Michigan that EPA cited in the disapproval, *see* 87 Fed. Reg. at 9,829, 9,832; *see also* Region 6 Texas TSD (C.I. R6-2) at 13. Those other monitors showed conflicting results, Tex. Ind. Pet. Br. at 22-23, and were unreliable for additional reasons. *See* RTC (C.I. HQ-83) at 152-53 (discussing comments on performance problems at Lake Michigan area monitors due to land-water interface).

demonstrated the latter—that the model base year (2012) was indeed anomalous (the highest over the last ten years); that elevated ozone days overall have been decreasing since; and that ozone levels at those monitors did not change with changes in Texas $NO_X$ emissions.  Texas SIP (C.I. R6-6) at 3-52, 3-60–3-66.  And the record proves Texas was correct.  EPA's own modeling (which EPA now disavows (at 102)) confirms that emissions from Texas *do not* significantly contribute to Colorado nonattainment or maintenance issues, as TCEQ concluded, because *EPA's modeling linked Texas to no Colorado monitor of concern.  See* 2016v3 DVs State Contributions (C.I. HQ-70) (showing EPA's asserted linkages); Final Air Quality Modeling TSD (C.I. HQ-85) at E-2.

EPA argues that Texas was required to "offer [a] *quantitative* basis for when [its significance] standard might be met."  Resp. Br. at 148-49 (emphasis added).  But the very nature of a multi-factor weight-of-evidence analysis is that it "never include[s] numeric thresholds."  *Texas 2020*, 983 F.3d at 839-40.  As this Court has explained, "[w]hen a multi-factor test is involved, discrete data points are not determinative because elevating them ignores the very nature of the test, which is designed to analyze a wide variety of data on a case-by-case basis."  *Id.* at 840 (internal quotation marks and citations omitted).  Thus, imposing a quantitative threshold "would not make sense." *Id.*  Yet that is exactly what EPA did here, unlawfully.

On the technical details, EPA does not dispute the factual accuracy of TCEQ's findings under each factor, nor does it conclude that TCEQ's analysis violated any regulation-based protocol or methodology, but instead complains that TCEQ "should

have" used other approaches that "potentially" "could have" shown Texas's contribution was significant. Resp. Br. at 155-56 (claiming TCEQ should have used a 120-hour period for its back trajectories instead of a 72-hour period). But at the SIP stage, it is "*Texas's* application of the [Act's] statutory factors" that must be accorded "deference" by EPA, not the other way around. *Texas 2016*, 829 F.3d at 428 (emphasis added); *accord Wyoming*, 2023 WL 5214083 at *5, 7-8 (vacating EPA disapproval of Wyoming SIP because the "agency treated [technical] guidelines as binding … and disregarded the state's broad discretion under the Clean Air Act"). Had EPA wanted its technical guidelines to be binding, it should have issued them in duly-promulgated regulations.

## V.     EPA's Disapproval of Texas's SIP Was Arbitrary and Capricious

Because EPA's disapproval applied the wrong legal standard and used non-statutory factors, its disapproval should be vacated without further inquiry. But even were the Court to consider "EPA's technical analysis," as EPA urges the Court to do (at 147), that analysis was arbitrary and capricious on its own—*not* reasonable.

### A.     EPA's Use of "Ballpark Estimates" to Judge Texas's Modeling Was a Fatal Flaw

EPA's brief urges the Court "not [to] consider" EPA's use of "ballpark estimates" to judge the results of Texas's modeling. Resp. Br. at 172-73. EPA's brief claims that the agency "simply documented concerns" that Texas's "modeling

'underestimates future ozone levels'" and "conveyed that this *may* underestimate the amount of receptors and linkages." *Id.* at 172-73 (emphasis added).

EPA's attempt to rewrite the record is understandable. There can be no legitimate basis for disapproving a SIP based on "ballpark estimates" that EPA itself concedes are "*not usable* in any other CAA action" and not even "*a defensible basis* on which to reach any conclusions regarding future air quality conditions." Region 6 Texas TSD (C.I. R6-2) at 40 n.23 (emphases added). But that is exactly what EPA did here. EPA did not merely observe that Texas's modeling "*may* underestimate the amount of receptors and linkages," as its brief contends, Resp. Br. at 172-73 (emphasis added), it concluded that "underprediction biases in TCEQ's modeling" "*are likely* underestimating future year ozone [values] and *likely have* resulted in TCEQ's modeling analysis not identifying [downwind] nonattainment or maintenance receptors," Region 6 Texas TSD (Feb. 1, 2022) (C.I. HQ-24) at 104 (emphasis added); *see also* 87 Fed. Reg. at 9,834 ("[W]e think TCEQ's modeling likely underestimates these issues."). Counsel's attempt to walk back EPA's findings should be disregarded. *See Luminant 2012*, 675 F.3d at 925.

At the last ditch, EPA claims that its error was "not … prejudicial" and "not dispositive to the challenged EPA action." Resp. Br. at 175. But under the APA, "the court shall … hold unlawful and set aside agency action" that is "arbitrary [and] capricious" 5 U.S.C. §706(2)(A). And EPA does not even try to meet the APA's high bar for harmless error. *See U.S. Steel*, 595 F.2d at 215 ("[T]he doctrine of harmless

error … is to be used only when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." (internal quotation marks and citation omitted)). Nor could it—EPA's unsupported conclusion that TCEQ's modeling "underestimates" downwind impacts was not an isolated observation—it was part of EPA's decision "to disapprove" Texas's SIP. 87 Fed. Reg. at 9,834.

## B.    EPA Did Not Treat Like Cases Alike

EPA defends its disapproval based only on certain Colorado monitors (at 152-53 n.70), but it fails to explain why the small collective interstate contribution at those monitors was not "insignificant," as EPA found for other similar western-State monitors. Consistent with EPA's guidance, TCEQ found that the collective contribution from all out-of-State emissions at the Colorado monitors ranged from 9.32% to 10.27%—"a small percentage and not as high as the collective interstate contribution percentages the EPA calculated for monitors in Eastern States [in CSAPR], which ranged from 17% to 67%." Texas SIP (C.I. R6-6) at 3-60. EPA excluded western monitors using this same benchmark in reviewing Arizona's SIP, *see* 81 Fed. Reg. 15,200, 15,203 (Mar. 22, 2016), but rejected Texas's use of it here, *see* 87 Fed. Reg. at 9,833.

EPA's brief supplies no analytical reason to support the disparate treatment—declaring only that "EPA explained that 'receptors in Colorado are heavily impacted.'" Resp. Br. at 159 (internal citation omitted). But EPA failed to engage with its own data

that showed collective interstate ozone contributions at the Colorado monitors as low as 6.7%, Final Air Quality Modeling TSD (C.I. HQ-85) at D-2 (upwind contribution percent for Site ID 80590011), comparable to levels EPA previously found were "negligible," 81 Fed. Reg. at 15,203. And EPA's exclusion of western monitors for Arizona's SIP follows a weight-of-evidence approach similar to Texas's approach to Colorado (*i.e.,* looking beyond a modeled one-percent link). *Id.* EPA's different treatment of Texas was arbitrary and capricious and is an independent basis for vacatur. *See Univ. of Texas M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Human Servs.*, 985 F.3d 472, 479-80 (5th Cir. 2021).

## VI. Vacatur Is the Appropriate Remedy

EPA's request for remand without vacatur (at 211-16) is deeply flawed. Under the APA, "[t]he reviewing court *shall … set aside*" unlawful agency action. 5 U.S.C. §706(2) (emphasis added). Thus, "[t]he default rule is that vacatur is the appropriate remedy" in APA cases. *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). EPA cannot justify an exception to that rule here.

First, EPA is wrong that "Petitioners primarily allege procedural defects and record-based deficiencies" (at 212)—instead, EPA's disapproval of Texas's SIP rests on a fundamental misunderstanding of the law and the relative roles of States and EPA under the statute. Consequently, merely correcting factual errors on remand could not salvage EPA's unlawful disapproval. And contrary to EPA's claim (at 213), vacatur does not amount to a direction to "EPA to approve the [Texas] SIP"—it provides a

clean slate for EPA to take action under the proper standard. *See Wyoming*, 2023 WL 5214083 at *7 ("[W]e … vacate the EPA disapproval [of Wyoming's SIP], and remand for the agency to reconsider Wyoming's [SIP] while giving proper deference to the state and without treating the guidelines as binding.").

Second, EPA complains (at 214) that "[w]ithout the Disapproval, EPA would lack the authority to implement its FIP." But that is exactly the point—unless and until EPA *lawfully* disapproves Texas's SIP, it has no statutory authority for a FIP. *See* 42 U.S.C. §7410(c)(1). Indeed, because EPA's disapproval of Texas's SIP was stayed by this Court when EPA attempted to promulgate its FIP, the FIP was a dead letter that never should have been mailed and cannot be lawfully implemented. EPA concedes (at 216), as it must, that a FIP for Texas would require additional rulemaking with new deadlines and requirements, given the passage of time and changing circumstances. Thus, remanding an unlawful disapproval without vacatur would not restore EPA's authority to issue a FIP.

Finally, public health and environmental concerns do not justify remand without vacatur. Texas's SIP concluded that no further controls were needed to protect air quality, and EPA's unlawful and arbitrary action wrongly judged that conclusion. Plus, even with vacatur of EPA's disapproval, Texas power plants will remain subject to federally-enforceable $NO_X$ reductions. *See* 40 C.F.R. §97.810. And EPA itself concedes

"that ozone levels generally trend downward," even without the further reductions EPA

is attempting to mandate.  87 Fed. Reg. at 9,827.

## <u>CONCLUSION</u>

For these reasons, the Court should vacate EPA's disapproval of Texas's SIP.

Dated: September 19, 2023  Respectfully submitted,

<u>s/ P. Stephen Gidiere III</u>
P. Stephen Gidiere III
Julia B. Barber
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

Stephanie Z. Moore
Executive Vice President & General Counsel
Daniel J. Kelly
Senior Vice President & Deputy General
Counsel
David W. Mitchell
Senior Counsel, Environmental
VISTRA CORP.
6555 Sierra Drive
Irving, Texas 75039

*Counsel for Petitioners Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC*

s/ Aaron M. Streett
Aaron M. Streett
Matthew L. Kuryla
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
Tel.: (713) 229-1234
Fax: (713) 229-1522
aaron.streett@bakerbotts.com

*Counsel for Petitioners Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Council, and Texas Oil & Gas Association*

s/ Megan Berge
Megan H. Berge
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233
(202) 639-7733

J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas 77002
(713) 229-1489

*Counsel for Petitioners Texas Lehigh Cement Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 19th day of September, 2023.


s/ P. Stephen Gidiere III
*Counsel for Luminant Petitioners*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel states that this reply brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 6,495 words, excluding the items allowed to be excluded pursuant to Fed. R. App. P. 32(f), as counted by a word processing system and, therefore, is within the word limit. This reply brief also complies with typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface in 14-point Garamond font.

The undersigned counsel also certifies that, pursuant to paragraph A(6) of this Court's ECF Filing Standards, (1) any required privacy redactions have been made in compliance with 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: September 19, 2023

s/ P. Stephen Gidiere III
*Counsel for Luminant Petitioners*