

**U.S. Department of Justice**

Environment and Natural Resources Division

*Environmental Defense Section*  *Telephone (202) 305-0490*
*P.O. Box 7611*  *Facsimile (202) 514-8865*
*Washington, DC  20044*

November 21, 2023

VIA ELECTRONIC FILING

Lyle W. Cayce, Clerk of the Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130

    Re:   *State of Texas v. EPA*, No. 23-60069 & consolidated cases (challenging 88 Fed. Reg. 9336 (Feb. 13, 2023))

Dear Mr. Cayce:

    EPA writes to inform the Court of an order transferring challenges to EPA's Good Neighbor Plan for interstate ozone transport to the D.C. Circuit, holding that the Plan is nationally applicable and based on determinations of nationwide scope or effect. *Ky. Energy & Env't Cabinet v. EPA*, No. 23-3605, ECF No. 19 (6th Cir. Nov. 9, 2023).  Att. A.

    First, the Sixth Circuit held that the Plan, which applies federal implementation plans to the same States subject to the action challenged here, the Disapproval, 88 Fed. Reg. 9336 (Feb. 13, 2023), "has several hallmarks of national applicability," namely its application to "far-flung" states and grounding in "national analysis and uniform standards." *Id.* at 5.  The court rejected petitioners' attempt to narrow EPA's action to only state-specific portions of the Plan, holding that the scope of a petitioner's challenge does not dictate venue. *Id.* at 6 (citing *ATK Launch Systems v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011)).

    Second, the Sixth Circuit concluded that EPA's "collective approach" to resolving the same interstate obligations for all the States—"even if viewed individually"—was based on determinations of nationwide scope or effect. *Id.* at 8.  In so holding, the court recognized the uniquely interstate nature of ozone pollution and the need to address it in a "coordinated" manner. *Id.*

    A predicate to the Plan, the Disapproval, applies to the same far-flung states, is based

on national analysis and uniform standards, and takes a collective approach to evaluating states' compliance with the Clean Air Act's Good Neighbor Provision. The Sixth Circuit's order supports transferring these petitions for review to the D.C. Circuit. That the Disapproval encompasses action on multiple state plans, rather than promulgation of multiple federal plans, does not make it any less nationally applicable, or any less based on determinations of nationwide scope or effect, under the indicia used in the Sixth Circuit's recent order. *See* EPA Response Br. Arg. I.[1]

                                                 Sincerely,

                                                 */s/ Sarah Izfar*
                                                 Sarah Izfar

cc: Counsel of Record, via CM/ECF

---

[1] The Sixth Circuit's earlier order in *Kentucky v. EPA*, No. 23-3216 (6th Cir. July 25, 2023), ECF No. 39-2, is erroneous for the same reason this Court's May 1, 2023 order, ECF 269, is. EPA Response Br. at 64-66, 74-76.

# Attachment A

Nos. 23-3605/3624/3641/3647

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 9, 2023
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| KENTUCKY ENERGY AND ENVIRONMENT CABINET [No. 23-3605], | ) ) ) |
| COMMONWEALTH OF KENTUCKY [No. 23-3624], | ) ) ) ) |
| ENERGY TRANSFER, LP [No. 23-3641], | ) ) ) ) |
| and | ) ) |
| BUCKEYE POWER, INC. & OHIO VALLEY ELECTRIC CORPORATION [23-3647], | ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) ) |
| Respondents. | ) ) |

O R D E R

Before: CLAY, LARSEN, and NALBANDIAN, Circuit Judges.

In these related matters, Kentucky Energy and Environmental Cabinet, (23-3605), the Commonwealth of Kentucky, (23-3624), Energy Transfer, LP, (23-3641), and Ohio utilities Buckeye Power, Inc., and Ohio Valley Electric Corporation, (23-3647), petition for review of the United States Environmental Protection Agency's *Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards*, 88 Fed. Reg. 36,645 (June 5, 2023). The EPA and its Administrator, Michael S. Regan, move to transfer venue to the United States Circuit Court

for the District of Columbia Circuit. Petitioners respond in opposition, and the EPA replies in support.

The Clean Air Act "requires the EPA to establish and periodically revise national ambient air quality standards, or NAAQS, for certain pollutants to establish maximum permissible concentrations of those pollutants in the outside or ambient air." *Sierra Club v. EPA*, 60 F.4th 1008, 1012 (6th Cir. 2023) (cleaned up); *see also* 42 U.S.C. §§ 7408, 7409. "Each state has 'the primary responsibility' for ensuring that its ambient air meets the NAAQS for the identified pollutants." *Sierra Club*, 60 F.4th at 1013 (quoting 42 U.S.C. § 7407(a)). "As part of this responsibility," states must develop and submit a State Implementation Plan ("SIP") "that 'include[s] enforceable emission limitations and other control measures, means, or techniques' to provide for the implementation, maintenance, and enforcement of NAAQS and 'as may be necessary or appropriate to meet the applicable requirements of' the Act." *Id.* (quoting 42 U.S.C. § 7410(a)(1), (a)(2)(A)). "If [the] EPA determines that a State has failed to submit an adequate SIP, either in whole or in part, the Act requires the Agency to promulgate a Federal Implementation Plan, or FIP . . . ." *EPA v. EME Homer City Gener., L.P.*, 572 U.S. 489, 498 (2014) (citing 42 U.S.C. § 7410(c)(1)).

For decades, the Clean Air Act has included the so-called "Good Neighbor Provision," which requires states to include "adequate provisions" in their SIPs to eliminate emissions created within the state that are carried across state lines in a way that significantly affects a downwind state's ability to meet the NAAQS. 42 U.S.C. § 7410(a)(2)(D)(i). On at least five prior occasions, the EPA has issued a final action enforcing the Good Neighbor Provision: the 1998 NO$_x$ SIP Call,[1]

---

[1] A "SIP call" is the process by which the EPA can require a state to address inadequacies in a SIP that the EPA previously approved. *Sierra Club* , 60 F.4th at 1013.

63 Fed. Reg. 57,356 (Oct. 27, 1998); the Clean Air Interstate Rule, or CAIR, 70 Fed. Reg. 25,162 (May 12, 2005); the Transport Rule, also known as the Cross-State Air Pollution Rule, or CSAPR, 76 Fed. Reg. 48,208 (Aug. 8, 2011); the CSAPR Update, 81 Fed. Reg. 74,504 (Oct. 26, 2016); and the Revised CSAPR Update, 86 Fed. Reg. 23,054 (Apr. 30, 2021).

Among other things, the *Good Neighbor Plan* finalizes FIPs for twenty-three states—including Kentucky, Michigan, and Ohio—intended to correct shortfalls in their SIPs' approaches to reducing the effects of their emissions on downwind states. 88 Fed. Reg. at 36,656–57. The FIPs target interstate transport by two categories of emitters. First, it reduces emissions from energy-generating units ("EGUs") like fossil-fuel-fired power plants through updates to a long-running "allowance-based trading program" in which states are given a budget of allowances that can be banked or traded between EGUs, brokers, and other states. *Id.* at 36,656–57; 36,762–67. Penalties are assessed if emissions outstrip allowances. *Id.* at 36,763. Second, it requires emission-limiting updates by non-EGU "industrial sources" like engines, kilns, furnaces, boilers, combustors, and incinerators in the natural gas, cement, steel, glass, mining, chemical manufacturing, petroleum, coal, paper, and solid-waste industries, beginning in 2026. *Id.* at 36,657–58.

Five entities now petition for review of the *Good Neighbor Plan*. The EPA moves to transfer those petitions to the D.C. Circuit.

Venue for judicial review of EPA action is dictated by the first three sentences of 42 U.S.C. § 7607(b)(1). Petitions for review of any "nationally applicable" action must be filed in the D.C. Circuit. *Id.* Conversely, petitions for review of any action "which is locally or regionally applicable" must be filed in the appropriate United States Court of Appeals. *Id.* That said, if the challenged action is locally or regionally applicable but is "based on a determination of nationwide

scope or effect," any petition for review must be filed in D.C. rather than the local circuit. *Id.* As the Fifth Circuit recognized, "this scheme takes advantage of the D.C. Circuit's administrative law expertise and facilitates the orderly development of the basic law under the [Clean Air Act]" by eliminating "piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results." *Texas v. EPA* (*Texas 2011*), No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (cleaned up). "The court—not EPA—determines both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect." *Texas v. EPA* (*Texas 2020*), 983 F.3d 826, 833 (5th Cir. 2020). And that determination is made *de novo*, according no special deference to the EPA's position. *Id.* (citing *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455–56 (D.C. Cir. 2013) (Kavanaugh, J.)).

National applicability rests on the scope of the challenged action itself, not the scope of the Petitioners' challenges. *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011). The determination "should depend on the location of the persons or enterprises that the action regulates." *New York v. EPA* (*New York 1998*), 133 F.3d 987, 990 (7th Cir. 1998). Thus, we "need look only to the face of the rulemaking, rather than to its practical effects." *Am. Rd. & Transp. Builders*, 705 F.3d at 456.

Courts of appeals have found EPA action to be nationally applicable where it regulated a "far-flung collection of states" representing multiple regions, *Texas 2011*, 2011 WL 710598 at *3, "tackle[d] a problem affecting [a majority] of the country" and applied uniformly to disparate locations, *W. Va. Chamber of Com. v. Browner*, 1998 WL 827315, *7 (4th Cir. Dec. 1, 1998) (table) (per curiam), or was "promulgated pursuant to a common, nationwide analytical method," *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017). By contrast, courts of appeals have found action to be locally or regionally applicable where it was "directed only at four contiguous

Texas counties," *Texas 2020*, 983 F.3d at 833, "could be lawfully applied only to certain development projects within [California]," *Am. Rd. & Transp. Builders*, 705 F.3d at 456 (cleaned up), or was "limited to a cluster of states" around Lake Michigan, *New York 1998*, 133 F.3d at 990.

The *Good Neighbor Plan* has several hallmarks of national applicability: it imposes direct regulation on ozone emitters in nearly two dozen far-flung states, from California to New Jersey and Minnesota to Texas, *see Good Neighbor Plan*, 88 Fed. Reg. at 36,656, 36,662; it tackles an issue affecting more than half of the country (when downwind states are counted), *see id.* at 36,742; and the regulations it promulgates are based on a uniform nationwide analytical method, *id.* at 36,660–61; *see also*, *id.* at 36,717 (listing every state as either above or below the uniform screening threshold), which "allocat[es] responsibility through uniform levels of control across the entire upwind geography," *id.* at 36,691.

Further, the D.C. Circuit has reviewed all five prior Good Neighbor Provision rulemakings, which the agency asserts is evidence that such rules are nationally applicable. *Michigan v. EPA*, 213 F.3d 663, 685 (D.C. Cir. 2000) (per curiam) (1998 $NO_x$ SIP Call); *North Carolina v. EPA*, 531 F.3d 896, 906 (D.C. Cir. 2008) (per curiam) (CAIR); *EME Homer City Gener., L.P. v. EPA*, 795 F.3d 118, 123 (D.C. Cir. 2015) (CSAPR); *New York v. EPA*, 781 F. App'x 4, 6 (D.C. Cir. 2019) (per curiam) (CSAPR Update); *Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 188 (D.C. Cir. 2023) (Revised CSAPR Update). Although the D.C. Circuit did not have occasion to discuss venue in those cases, it routinely dismisses or transfers petitions for review in cases where it finds that the targeted action is not nationally applicable. *See, e.g.*, *Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 388 (D.C. Cir. 2022) (review of an EPA response letter); *Producers of Renewables United for Integrity Truth & Transparency v. EPA*, 778 F. App'x 1, 6 (D.C. Cir. 2019) (per curiam) (review of exemption denials); *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 880 (D.C. Cir. 2015)

(review of EPA's authorization of California regulations); *Am. Rd. & Transp. Builders*, 705 F.3d at 456 (review of EPA's approval of California's revised SIP).

Petitioners assert that they challenge the *Good Neighbor Plan* only as to the obligations in their respective state's FIP, which the EPA implemented after denying the proposed SIP. *See Air Plan Disapprovals; Interstate Transp. of Air Pollution for the 2015 8-Hour Ozone Nat'l Ambient Air Quality Stands.*, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("*SIP Disapproval*"). *But see ATK Launch Sys.*, 651 F.3d at 1197 (ignoring scope of petitioner's challenge in determining national applicability). They say that this case is no different than *Kentucky v. EPA*, Nos. 23-3216/3225 (6th Cir. July 25, 2023) (order). There, the Commonwealth of Kentucky and the Kentucky Energy and Environment Cabinet petitioned for review of the EPA's disapproval of Kentucky's SIP. *Id.* at 1. The EPA moved to transfer the actions to the D.C. Circuit. A panel of this court denied the motion, determining that the SIP disapproval "affect[ed] only Kentucky" and thus was "locally and regionally applicable." *Id.* at *5.

But the *Good Neighbor Plan* appears to be more than the mere mechanical implementation of FIPs as the ministerial follow-up to the SIP Disapproval. For instance, it amends sections of the Code of Federal Regulations that are not state-specific. *See, e.g.*, *Good Neighbor Plan*, 88 Fed. Reg. at 36,809 (adding additional recordkeeping and reporting requirements). Its effects reach "EGUs within the borders of . . . seven states currently covered . . . under existing FIPs or existing SIPs," regulating locations outside the scope of the *SIP Disapproval*. *Id.* at 36,658–59. And, as mentioned previously, the regulations it promulgates are based on a uniform nationwide analytical method, *id.* at 36,660–61, which "allocat[es] responsibility through uniform levels of control across the entire upwind geography," *id.* at 36,691. In sum, while the challenge to the EPA's disapproval of Kentucky's SIP may have concerned only the Commonwealth of Kentucky,

*Kentucky v. EPA*, Nos. 23-3216/3225, at *5, the challenges here reach far beyond the borders of a single state.

Because the *Good Neighbor Plan* seeks to tackle a nationwide issue by regulating states across the country, based on a national analysis and uniform standards, and because it does more than simply install FIPs in the states whose SIPs were disapproved, it is nationally applicable. As such, venue lies in the D.C. Circuit. 42 U.S.C. § 7607(b)(1).

Moreover, the *Good Neighbor Plan* is based on the EPA's determinations of the nationwide scope and effect of downwind emissions transport. While the "nationally applicable" inquiry focuses on the face of the rule itself, *Am. Rd. & Transp. Builders*, 705 F.3d at 456, this inquiry focuses "on the determinations on which the Final Rule is based," *Texas v. EPA*, 829 F.3d 405, 422 (5th Cir. 2016). "These determinations are the justifications the agency gives for the action[,] and they can be found in the agency's explanation of its action." *Id.* at 419.

The stated purpose of the *Good Neighbor Plan* is "to protect public health and the environment by reducing interstate transport of certain air pollutants," which "can be transported over hundreds of miles." 88 Fed. Reg. at 36,658. That purpose is achieved primarily through interrelated FIPs, and, critically, the FIPs are designed to work together. The FIPs impose "emissions control strategies on a uniform basis *across all linked upwind states*," *id.* at 36,741 (emphasis added), relying on "emissions reductions [that] are *assessed collectively* across . . . hundreds of EGU and non-EGU industrial sources," *id.* (emphasis added), and "apportion[ing] the reduction responsibility *among collectively contributing upwind states*," *id.* at 36,719 (emphasis added), to achieve "*cumulative improvements* in ozone levels at downwind receptors," *id.* at 36,741 (emphasis added).

Indeed, when testing whether the FIP obligations were effective without being too onerous, the EPA measured "the *combined effect* of the entire program across all linked upwind states." *Id.* at 36,749 (emphasis added). The EPA cites this collective approach as a way to "effectively address the 'thorny' causation problem" while avoiding "any interdependence and 'which state goes first?' questions," further illustrating the interrelated nature of the *Good Neighbor Plan*'s FIP requirements. *Id.* at 36,741, 36,749; *cf. W. Va. Chamber of Com.*, 1998 WL 827315 at *6 (describing the 1997 Ozone Transport SIP Call as "not merely action on a single state implementation plan or a few state implementation plans," but "a coordinated effort to attack a problem that ignores state boundaries, and is based upon a common core of information and analysis involving 37 states"). As such, even if viewed individually, the Kentucky, Michigan, and Ohio FIPs are based on determinations of nationwide scope or effect. Thus, venue lies in the D.C. Circuit.

Accordingly, the motions to transfer are **GRANTED**. The clerk is directed to transfer these proceedings, together with any documents of record, to the United States Court of Appeals for the District of Columbia Circuit.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk